## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 21, 2016 at 2:00 p.m.**<br>**Objection Deadline: March 14, 2016 at 4:00 p.m.** |

### APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE AND WAIVING CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby move the Court (the "**Application**") pursuant to sections 327(a) and 328(a) of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), Rule 2014(a) of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-

2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "**Local Rules**"), for entry of an order (the "**Order**"),

substantially in the form of **Exhibit A** hereto, (i) authorizing them to employ and retain Moelis

& Company LLC ("**Moelis**") as their investment banker in accordance with the terms and

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

conditions set forth in that certain engagement letter dated as of November 18, 2015 and as amended January 30, 2016 and February 24, 2016 (collectively, the "**Engagement Letter**"), a copy of which is attached as **Exhibit 1** to **Exhibit A**, *nunc pro tunc* to the Petition Date (as defined herein), (ii) approving the terms of Moelis' employment and retention, including the fee and expense structure and indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (iii) waiving certain requirements of Local Rule 2016-2, and (iv) granting such other and further relief as is just and proper.  In support of this Application, the Debtors submit the *Declaration of Adam Keil in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker to the Debtors and Debtors-in-Possession,* Nunc Pro Tunc *to the Petition Date* (the "**Keil Declaration**"), which is attached hereto as **Exhibit B** and incorporated herein.  In further support of this Application, the Debtors respectfully state as follows:

**Status of the Case**

1.      On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examine.  On February 12, 2016, an official committee of unsecured creditors was appointed in these Chapter 11 Cases.

2

## Jurisdiction, Venue and Statutory Predicates

4.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

5.      The statutory predicates for the relief sought herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rules 2014-1 and 2016-2.

## Background

6.      The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture.   The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry, specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad.  Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

7.      Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad.  In addition, Debtors manage large, event-driven nightclubs that serve as venues for performances by key electronic music talent. The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

*NY 245613759v15*

8.     The Debtors and their 120 non-Debtor subsidiaries operate a business that spans the globe, with operations in over 34 countries.  The Debtors constitute substantially all of the domestic companies comprising SFX's business as well as select foreign subsidiaries.  The Debtors have more than 325 employees and, together with the non-Debtor entities, have more than 625 employees.

9.     The Debtors' capital structure is highly levered.  In 2015, the Debtors began to face significant liquidity issues.  While the Debtors attempted to enhance liquidity through a September 2015 financing and potential sales of non-strategic assets, the Debtors concluded that they needed to restructure their liabilities through a bankruptcy process.

10.     Prior to the filing of these Chapter 11 Cases, the Debtors entered into a restructuring support agreement with holders of over 70% of their outstanding secured debt (the "**RSA**").  The RSA provides for a comprehensive restructuring of the Debtors' balance sheet.  As part of that transaction, certain of the holders of the secured debt also agreed to provide the Debtors with debtor-in-possession financing to allow for the Debtors to prosecute these Chapter 11 Cases.  The Debtors intend to use these Chapter 11 Cases to effect their balance sheet restructuring and implement operational improvements.

11.     A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") filed on the Petition Date and incorporated herein by reference.

NY 245613759v15

**Retention of Moelis**

12.     Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis & Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has approximately 650 employees based in 17 offices in North and South America, Europe, the Middle East, Asia and Australia.  Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

13.     Moelis provides a broad range of investment banking and financial advisory services to its clients, including:  (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization professionals have served as investment bankers in numerous cases, including:  *In re American Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re ITR Concession Co. LLC*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. D. Del. Apr. 7, 2014); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*,

No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Dec. 27, 2011); *In re Gen. Maritime Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); *In re Jackson Hewitt Tax Serv., Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. June 30, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr D. Del. Feb. 23, 2011); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010); *In re Almatis B.V.*, No. 10-12308 (MG) (Bankr. S.D.N.Y. June 9, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Mar. 17, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010); *In re Reader's Digest Ass'n Inc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 24, 2009); *In re NV Broad. LLC*, No. 09-12473 (KG) (Bankr. D. Del. Aug. 5, 2009); *In re Fontainebleau Las Vegas Holdings, LLC*, No. 09-21481 (AJC) (Bankr. S.D. Fla. Nov. 25, 2009); *In re ION Media Networks Inc.*, No. 09-13125 (JMP) (Bankr. S.D.N.Y. July 13, 2009); *In re JGW Holdco, LLC f/k/a J.G. Wentworth LLC*, No. 09-11731 (CSS) (Bankr. D. Del. June 16, 2009); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); *In re Dayton Superior Corp.*, No. 09-11351 (BLS) (Bankr. D. Del. May 18, 2009); *In re Idearc Inc.*, No. 09-31828 (BJH) (Bankr. N.D. Tex. May 27, 2009); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Mar. 18, 2009); *In re Old AII, Inc. f/k/a Aleris Int'l Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009); *In re XMH Corp. f/k/a Hartmarx Corp.*, No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 4, 2009); *In re Lyondell Chemical Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009).[2]

---

[2]  Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application.

14.    The Debtors have selected Moelis as their investment banker based upon, among other things:  (a) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities, including reviewing, analyzing and negotiating certain strategic transactions;  (b) Moelis' extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as described below.  In light of the size and complexity of these Chapter 11 Cases, Moelis' resources, capabilities and experience in advising the Debtors are important to the Debtors' successful restructuring.  An experienced investment banker such as Moelis fulfills a critical need that complements the services provided by the Debtors' other restructuring professionals.  For these reasons, the Debtors require the services of a capable and experienced investment banker such as Moelis.

15.    In 2015, a special committee appointed by the Debtors' board of directors (the "**Special Committee**") was charged with the exclusive authority to consider, negotiate and approve (and recommend to shareholders, if applicable) a proposed acquisition transaction with affiliates of the Debtor, as well as to solicit indications of interest from potential acquirers.  The Special Committee retained Moelis on March 9, 2015 to advise on these efforts, including: (a) assisting the Special Committee in negotiating a potential merger agreement with Robert F.X. Sillerman; (b) assisting the Debtors with the preparation of marketing materials; (c) contacting potential buyers as part of a go-shop process; (d) assisting the Debtors with buyer due diligence; and (e) along with the Special Committee, reviewing indications of interest by potential bidders in October 2015.  This engagement concluded in mid-November 2015.  Contemporaneously with the conclusion of the Special Committee engagement, the Debtors retained Moelis to provide

---

Copies of these orders are available upon request of the Debtors' proposed counsel.

investment banking services with respect to a potential restructuring and/or recapitalization of the Debtors. In connection with its work on behalf of the Special Committee and Debtors, Moelis received fees in the amount of $1.35 million, as well as reimbursement of certain expenses totaling $96,408.63. Compensation and reimbursement of expenses for Moelis' counsel totaled $128,627.64. Payment for this work was made by Debtor SFX Entertainment, Inc.

16.     Moelis has been advising the Debtors on strategic and restructuring since its engagement on November 18, 2015. Moelis provided extensive prepetition services in preparation for the Debtors' restructuring efforts, including: (a) assisting management in analyzing potential restructuring transactions; (b) assisting management in analyzing and negotiating restructuring proposals from various constituents; (c) assisting management in conducting extensive meetings and negotiations with various stakeholders; (d) facilitating extensive diligence for interested parties; (e) assisting management in analyzing debtor in possession financing and negotiating its terms; and (f) providing additional investment banking services in preparation of the Debtors' chapter 11 filing. Pursuant to the Engagement Letter, Moelis advised the Debtors in their negotiations with the Debtors' secured lenders. These negotiations ultimately resulted in the execution of the RSA. The RSA provides for a comprehensive restructuring of the Debtors' balance sheet. In addition, pursuant to the Engagement Letter, Moelis has advised the Debtors in connection with the negotiation and documentation of the terms of a debtor-in-possession facility extended by certain of the holders of the Debtors' secured debt.

17.     As a result of its work with the Special Committee and the Debtors for more than ten (10) months in the aggregate, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, financial affairs, operations, capital structure and other

material information.  Having worked with the Debtors' management and their other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases.  Accordingly, the Debtors believe Moelis is well-qualified to represent them in a cost-effective, efficient and timely manner, and the Debtors submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors and all parties in interest.

18.     Accordingly, by this Application, the Debtors respectfully request that this Court enter an order authorizing them to employ and retain Moelis as their investment banker in these Chapter 11 Cases, *nunc pro tunc* to the Petition Date.

## Scope of Employment

19.     Throughout Moelis' engagement, Moelis has provided the following services, among others, to the Debtors in connection with their restructuring efforts and will continue to provide such services during these Chapter 11 Cases at the request of the Debtors:[3]

    a.     assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition and business plan;

    b.     assist the Debtors in reviewing and analyzing a potential Restructuring or Sale Transaction (or any combination thereof);

    c.     assist the Debtors in negotiating a Restructuring or Sale Transaction (or any combination thereof);

    d.     advise the Debtors on their preparation of information memorandum for a potential Sale Transaction (each, an "**Information Memo**");

    e.     assist the Debtors in contacting potential Acquirers or purchasers that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about

---

[3]   The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

the Debtors' assets, properties or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

f.     provide such other financial advisory and investment banking services in connection with a Restructuring or Sale Transaction (or any combination thereof) as Moelis and the Debtors may mutually agree upon.

### Moelis' Disinterestedness

20.     Moelis has reviewed the list of parties in interest provided by the Debtors.  To the best of the Debtors' knowledge as of the date hereof, and except to the extent disclosed herein or in the Keil Declaration, Moelis:  (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors or related parties herein except as disclosed in the Keil Declaration.

21.     Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose Moelis' relationships with parties in interest in these Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Keil Declaration.  Moelis will make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

22.     The Debtors are informed that Moelis will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date with any other person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

NY 245613759v15

## **Professional Compensation**

23.    Moelis' decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

24.    As set forth more fully in the Engagement Letter and subject thereto, Moelis will be compensated as follows (the "**Fee Structure**"):

(a)    Monthly Fee:  $100,000 per month (the "**Monthly Fee**"), payable in advance of each month.  The Debtors will pay the Monthly Fee prior to each monthly anniversary of the date of the Engagement Letter; in this case, on the 18th of each month.  Whether or not a Restructuring or Sale Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.  Moelis agreed to credit $200,000 in fees previously paid by the Debtors to Moelis against any Monthly Fees incurred under the Engagement Letter.  Beginning with the commencement of a Bankruptcy Case, 50% of each Monthly Fee shall be offset, to the extent previously paid, or credited, if not yet paid, against the Restructuring Fee or Sale Transaction Fees (each as defined below).

(b)    Restructuring Fee:  $3,000,000 upon the closing of a Restructuring if such Restructuring occurs on or before June 30, 2016 $2,750,000 if such Restructuring occurs after such date (the "**Restructuring Fee**"). For the avoidance of doubt, the Debtors shall only be required to pay one Restructuring Fee of either $3,000,000 or $2,750,000 for any Restructuring and such Restructuring Fee (minus the Credit) shall be payable upon consummation of a Restructuring.

(c)    Sale Transaction Fees:

(i)    The Debtors will pay Moelis a fee for a sale process of Fame House (the "**Fame House Sale Transaction Fee**") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Fame House in an amount equal to or greater than $8,000,000 (a "**Fame House Qualifying Offer**") or (y) if the Debtors complete a sale of Fame House (for any amount).  Such Fame House Sale Transaction Fee will equal $250,000, plus, if the Debtors complete a sale of Fame House, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $8,000,000 up to and including $12,000,000, plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $12,000,000.  The Fame House Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of

11

Fame House or (b) the determination by the Debtors to not pursue a sale after receiving a Fame House Qualifying Offer.  For the avoidance of doubt, in such case that the Debtors receive a Fame House Qualifying Offer but determine not to pursue such offer, Moelis will receive a Fame House Sale Transaction Fee of $250,000.

(ii)    The Debtors will pay Moelis a fee for a sale process of Beatport (the "**Beatport Sale Transaction Fee**") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Beatport in an amount equal to or greater than $17,000,000 (a "**Beatport Qualifying Offer**") or (y) if the Debtors complete a sale of Beatport (for any amount).  Such Beatport Sale Transaction Fee will equal $250,000, plus, if the Debtors complete a sale of Beatport, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $17,000,000 up to and including $25,000,000 plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $25,000,000.  The Beatport Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Beatport or (b) the determination by the Debtors to not pursue a sale after receiving a Beatport Qualifying Offer.  For the avoidance of doubt, in such case that the Debtors receive a Beatport Qualifying Offer but determine not to pursue such offer, Moelis will receive a Beatport Sale Transaction Fee of $250,000.

(iii)    If the Debtors sell or otherwise dispose (regardless of form) of any assets other than Fame House or Beatport (an "**Asset Transaction**"), the Debtors will pay Moelis a fee for any such transaction equal to 2.5% of the Transaction Value, after giving effect to working capital adjustments (the "**Asset Transaction Fee**" and collectively with the Beatport Sale Transaction Fee and the Fame House Sale Transaction Fee, the "**Sale Transaction Fees**").  The Asset Transaction Fee will be payable upon the closing of any such Asset Transaction.

(d)    If, at any time prior to the end of the Tail Period, the Debtors receive a Fame House Qualifying Offer, receive a Beatport Qualifying Offer, completes a sale of Beatport and/or completes a sale of Fame House, the Debtors (or their bankruptcy estates) shall pay Moelis the Fame House Sale Transaction Fee and/or the Beatport Sale Transaction Fee, as applicable, as set forth above.  If, at any time prior to the end of the Tail Period, the Debtors enter into an agreement for an Asset Transaction or the Debtors consummate an Asset Transaction, the Debtors will pay Moelis the Asset Transaction Fee(s) as set forth above.  The Tail Period shall end eighteen months (18) months following the expiration or termination of the Engagement Letter (the "**Tail Period**").

25.    In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for all of its reasonable, actual, documented out-of-pocket expenses as they are incurred in entering

into and performing services under the Engagement Letter, including the costs of Moelis' outside counsel (without the need for such legal counsel to be retained as a professional in these Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

26.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

27.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys, (b) Moelis does not ordinarily keep time records on a "project category" basis, and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, the Debtors respectfully request that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services.  Moelis will present such records to the Court in its fee application(s).  Moreover, the Debtors respectfully request that Moelis' restructuring professionals not be required to keep time records on a "project category" basis,

13

that its non-restructuring professionals and personnel in administrative departments (including

legal) not be required to maintain any time records, and that it not be required to provide or

conform to any schedule of hourly rates.  To the extent that Moelis would otherwise be required

to submit more detailed time records for its professionals by the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures

and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

28.     The Debtors believe the Fee Structure is consistent with, and typical of,

compensation arrangements entered into by Moelis and other comparable firms in connection

with the rendering of similar services under similar circumstances, both in and out of bankruptcy

proceedings.  The Debtors also believe that the Fee Structure reflects a balance between a fixed,

monthly fee, and a deferred amount, which is tied to the consummation and closing of the

transactions and services contemplated by the Debtors and Moelis in the Engagement Letter.  In

determining the Fee Structure and the reasonableness of such compensation, the Debtors

compared Moelis' fee proposal to comparable precedents.  After such comparison, followed by

discussions and arm's-length negotiations, the Debtors believe that the Fee Structure is in fact

reasonable, market-based and designed to compensate Moelis fairly for its work.

29.     Moelis' strategic and financial expertise, as well as its capital markets knowledge,

financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of

which has and will be required by the Debtors during the term of Moelis' engagement, were

important factors to the Debtors in determining the Fee Structure.  The Debtors believe that the

ultimate benefits of Moelis' services hereunder cannot be measured by reference to the number

of hours to be expended by Moelis' professionals in the performance of such services.  The

Debtors and Moelis agreed upon the Fee Structure in anticipation that a substantial commitment

14

of professional time and effort would be required of Moelis and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for Moelis and (b) the actual time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

30.     During the 90-day period prior to the Petition Date, according to the Debtors' books and records, Moelis received $196,408.63 from the Debtors for compensation and reimbursement of expenses. Moelis' external counsel received $30,566.92 in compensation and reimbursement of expenses during this same period. On January 15, 2016, Moelis was paid $101,905.08, which is included within the $196,408.63 above.  $1,905.08 was applied as a reimbursement of pre-petition out-of-pocket expenses.  $60,000 was applied to pre-petition fees incurred from January 15, 2016 until the Petition Date.  The remaining $40,000 is being held by Moelis as a retainer (the "**Retainer**").  Moelis will first apply the Retainer to all prepetition invoices, and thereafter, apply any unapplied portion of the Retainer as of the Petition Date against invoices issued to the Debtors for postpetition services rendered under the Engagement Letter until the Retainer is exhausted before Moelis seeks further payment from the Debtors, without further order of the Court.

### Indemnification and Contribution of Moelis

31.     As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution and reimbursement obligations, set forth in **Annex B** of the Engagement Letter (the "**Indemnification Agreement**"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless Moelis, its affiliates and their respective current and former directors, officers, partners, managers, agents, representatives, or employees (each, an

15

"**Indemnified Person**," and collectively, the "**Indemnified Persons**") from and against Losses (as defined in **Annex B** of the Engagement Letter) incurred by an Indemnified Person in connection with Moelis' engagement, except for any Losses that are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Indemnified Person.

32.     The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and Moelis at arm's-length and in good faith and the Debtors respectfully submit that these indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the proposed Order. The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

## Efforts to Avoid Duplication of Services

33.     The Debtors believe that the services provided by Moelis will complement, not duplicate, the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, Moelis will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

## Supporting Authority

**A.     The Debtors Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code.**

34.     The Debtors seek approval of the retention and employment of Moelis pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code. Section 328(a) provides, in

16

relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

35.    Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants 'reasonable compensation' based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

36.    Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set

forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue. Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause shown.

37.    The Court's approval of the Debtors' retention of Moelis in accordance with the terms and conditions of the Engagement Letter is warranted. First, as discussed above and in the Keil Declaration, Moelis satisfies the disinterestedness standard in section 317(a) of the Bankruptcy Code.[4] Engaged prepetition, Moelis advised the Debtors for a considerable period of time prior to the commencement of these Chapter 11 Cases and has already committed a significant amount of time and effort with respect to the transactions contemplated by the RSA. Moelis is needed postpetition to continue to assist with negotiations, as necessary, to provide expert advice and testimony regarding financial matters related to the proposed transactions, and to enable the Debtors to discharge their duties as debtors and debtors in possession. Moelis has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. Moelis has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts. The Debtors believe that Moelis is well qualified to provide its

---

[4] Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code. Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above. *See* Fed. R. Bankr. P. 2014. Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Keil Declaration attached hereto.

services to the Debtors in a cost effective, efficient and timely manner.  Furthermore, as detailed above, Moelis does not hold or represent an interest adverse to the estate and is disinterested.

38.     In addition, the Debtors believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.   The Fee Structure reflects Moelis' commitment to the variable level of time and effort necessary to perform the restructuring services, Moelis' particular expertise, and the market prices for Moelis' services for engagements of this nature both out of court and in a chapter 11 context.  Indeed, the Debtors believe that the Fee Structure appropriately reflects (i) the nature and scope of services to be provided by Moelis; (ii) Moelis' substantial experience with respect to investment banking services; and (iii) the fee structures typically utilized by Moelis and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.

39.     Also, notwithstanding the foregoing, under the Order, the U.S. Trustee retains all rights to object to Moelis' fee application (including expense reimbursement) pursuant to section 330 of the Bankruptcy Code.

40.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, with certain limited modifications.

41.     The Debtors request that the requirements of Local Rule 2016-2 and applicable U.S. Trustee guidelines be tailored to the nature of Moelis' engagement and its compensation structure.  Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of

its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking or financial advisory firms to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, Moelis' restructuring personnel will keep summary time records in hourly increments describing their daily activities and the identity of persons who performed such tasks.  Apart from the time recording practices described above, however, Moelis' restructuring personnel do not maintain their time records on a "project category" basis.  As such, the Debtors request modification of the requirements under Local Rule 2016-2(h).

42.    Courts in this jurisdiction have approved relief similar to the relief requested in this Application.  *See, e.g.*, *In re Mineral Park, Inc.*, Case No. 14-11996 (Bankr. D. Del. Sept. 23, 2014 & Oct. 2, 2014); *In re Energy Future Holdings Corp.,* Case No. 14-10979 (Bankr. D. Del. Sept. 16, 2014); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Furniture Brands Int'l, Inc.*, No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013); *In re iGPS Co. LLC*, No. 13-11459 (KG) (Bankr. D. Del. July 1, 2013); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); *In re Nebraska Book Co.*, No. 11-12005 (PJW); (Bankr. D. Del. Aug. 10, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); *In re OTC Holdings Corp.*, No. 10-12636 (BLS) (Bankr. D. Del. Sept. 17, 2010).

**B.      The Indemnification and Contribution Terms of the Engagement Letter are Appropriate**

43.      The indemnification and contribution provisions in the Engagement Letter, as modified by paragraph 9 of the Proposed Order attached hereto, were fully negotiated between the Debtors and Moelis.  The Debtors and Moelis believe that the indemnification provisions are customary and reasonable for investment banking and financial advisory engagements both out of court and in chapter 11 cases.   The Debtors are seeking approval of the modified indemnification provisions consistent with other orders of the Court where Moelis has been retained.  *See, e.g.*, *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010).

44.      Accordingly, the Debtors respectfully submit that the terms of the modified indemnification provisions are reasonable and customary and should be approved in these Chapter 11 Cases.

**C.      The Retention of Moelis is Critical to the Debtors' Reorganization Efforts**

45.      The Debtors submit that the retention of Moelis is in the best interests of all parties in interest in these Chapter 11 Cases.  Moelis is a preeminent investment banking and financial advisory firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified professionals who have served them for more than ten (10) months.  Indeed, if the Debtors were

21

forced to engage a new investment banker who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Moelis' extensive engagements, such change would mandate the commitment of significant and costly resources to educate a replacement.  As discussed above, based on services performed to date, Moelis has been integral to preparing the Debtors for these Chapter 11 Cases.  The Debtors have already engaged in numerous and constructive negotiations with each of their major constituencies concerning the parameters of a global financial restructuring.  Moelis, along with the Debtors' other restructuring advisors, has led these negotiations and the interface with the Debtors' major constituencies.  To build upon this momentum and continue a constructive dialogue, it is vital that Moelis continue to lead the charge on the Debtors' behalf.

46.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Moelis in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

### Request for Approval of Retention of Moelis
### *Nunc Pro Tunc* to the Petition Date

47.    The Debtors also believe that employment of Moelis effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these Chapter 11 Cases.  Moelis has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions. *See, e.g.*, *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)); *see also* Del. Bankr. L.R. 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

22

48.    Courts routinely grant *nunc pro tunc* relief in this jurisdiction.  *See, e.g.*, *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (granting *nunc pro tunc* relief); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Vertis Holdings, Inc.*, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (same); *In re WP Steel Venture LLC*, No. 12-11661 (KJC) (Bankr. D. Del. Sept. 18, 2012) (same); *In re Ritz Camera & Image, L.L.C.*, No. 12-11868 (KG) (Bankr. D. Del. July 27, 2012) (same).

## Notice

49.    Notice of this Application has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) the DIP Lenders; (c) the Ad Hoc Group; (d) Catalyst, as the Administrative Agent and Lender to the Debtors' prepetition Credit Agreement and Foreign Loan; (e) U.S. Bank National Association, as Indenture Trustee to the Indenture governing the 2019 Notes; (f) creditors holding the forty (40) largest unsecured claims as set forth in the consolidated list filed with the Debtors' petitions; (g) counsel to the Committee; (h) those parties requesting notice pursuant to Bankruptcy Rule 2002; (i) the Office of the United States Attorney General for the District of Delaware; (j) the Internal Revenue Service; and (k) the Securities and Exchange Commission.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

50.    No previous application for the relief sought herein has been made to this or any other court.

NY 245613759v15

## **Conclusion**

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as is just, proper, and equitable.

DATED this 26th day of February, 2016.


By: /s/ *Michael Katzenstein*
     Michael Katzenstein
     Chief Restructuring Officer of the Debtors