### Exhibit A

**Proposed Order**

*NY 245613759v15*

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*, [1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. __ |

---

**ORDER APPROVING APPLICATION OF THE DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE AND WAIVING CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2**

Upon the application (the "**Application**")[2], filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order (i) authorizing them to employ and retain Moelis & Company LLC ("**Moelis**") as their investment banker, *nunc pro*

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

NY 245613759v15

*tunc* to the Petition Date, (ii) approving the terms of Moelis' employment and retention, including the fee and expense structure and indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter, (iii) waiving certain requirements of Local Rule 2016-2, and (iv) granting such other and further relief as is just and proper; and upon the *Declaration of Adam Keil in Support of the Application of the Debtors for Entry of an Order Authorizing the Employment and Retention of Moelis & Company LLC as Investment Banker to the Debtors and Debtors-in-Possession,* Nunc Pro Tunc *to the Petition Date*, attached to the Application as **Exhibit B** (the "**Keil Declaration**"); and it appearing that this Court has jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and it appearing that venue of these Chapter 11 Cases and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) on which the Court may enter a final order consistent with Article III of the United States Constitution; and this Court being satisfied based on the representations made in the Application and in the Keil Declaration that, as more fully disclosed in the Keil Declaration, (a) Moelis does not hold or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code, and as required by section 327(a) of the Bankruptcy Code; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Application has been given and that no other or further notice is necessary; and after due deliberation thereon; and this Court having reviewed the Application and having heard statements in support of the Application at a hearing held before this Court; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Application is approved as set forth herein.  All objections to the relief requested in the Application, whether filed or not, are hereby overruled.

2.    The Debtors are authorized to retain and employ Moelis as their investment banker in these Chapter 11 Cases, pursuant to the terms and conditions set forth in the Application and the Engagement Letter, *nunc pro tunc* as of the Petition Date.

3.    Except to the extent set forth herein, the Engagement Letter (together with all annexes thereto), a copy of which is attached hereto as **Exhibit 1**, including without limitation the Fee Structure, is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtors are authorized and directed to perform their payment, reimbursement, contribution and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.  Subject to paragraph six of this Order, all compensation, reimbursement of expenses, indemnification, contribution and reimbursement to Moelis and any Indemnified Person (as defined in the Engagement Letter) under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review including but not limited to that set forth in section 330 of the Bankruptcy Code.

4.    The Debtors are authorized to pay Moelis' fees and to reimburse Moelis for its reasonable, documented, out-of-pocket costs and expenses as provided in the Engagement Letter, including but not limited to in-sourced document production costs, travel costs, meals, and the reasonable, actual, documented, out-of-pocket costs, fees, disbursements and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a

professional in these Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).  In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code, and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

5.     Moelis shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court; provided, however, that the requirements of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and Local Rule 2016-2 and any other orders and procedures of this Court are hereby modified such that Moelis' restructuring professionals shall be required only to keep summary time records in hourly increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep any time records, Moelis' restructuring professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

6.     Moelis shall be compensated in accordance with the terms of the Engagement Letter and, in particular, all of Moelis' fees and expenses in these Chapter 11 Cases are hereby

approved pursuant to section 328(a) of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the fees and expenses payable to Moelis pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code except by the U.S. Trustee. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code; provided, however, that 'reasonableness' shall be evaluated by comparing (among other things) the fees payable in these cases to fees paid to comparable investment banking firms with similar experience and reputation offering comparable services in other chapter 11 cases and shall not be evaluated primarily on an hourly or length-of-case based criteria. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Moelis' compensation.

7.    Moelis shall first apply the Retainer to all prepetition invoices and, thereafter, Moelis shall apply any unapplied portion of the Retainer as of the Petition Date against invoices issued to the Debtors for postpetition services rendered under the Engagement Letter until the Retainer is exhausted before Moelis seeks further payment from the Debtors, without further order of the Court.

8.    **[DIP Order language TBD]**

9.    The indemnification, contribution, and reimbursement provisions included in **Annex B** to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

(a)   Moelis shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution, or reimbursement is approved by the Court.

(b)   Notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify any Indemnified Person (as defined in the Engagement Letter), or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, or self-dealing to which the Debtors have not consented; (ii) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of non-public information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, or unconsented self-dealing, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order.

(c)   If, before the earlier of:  (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these Chapter 11 Cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, and/or reimbursement by any Indemnified Persons, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

(d)   Any limitations on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated.  The Indemnified Persons shall retain any rights they may have to contribution at common law.

10.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

11.    To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

12.    Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.    This Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.


Dated: _____, 2016

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

## Exhibit 1

**Engagement Letter**

10877 WILSHIRE BOULEVARD
SUITE 500
LOS ANGELES, CALIFORNIA 90024

+ 310 443 2300
+ 310 443 8700

MOELIS & COMPANY

November 18, 2015

CONFIDENTIAL

SFX Entertainment Inc.
902 Broadway, 15th Floor
New York, NY 10010

Attention: Rich Rosenstein, Chief Financial Officer

Dear Rich:

We are pleased to confirm that SFX Entertainment, Inc. (together with its subsidiaries, the "Company" or "you") has engaged Moelis & Company LLC ("Moelis" or "we") to act as its exclusive financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each, as defined below, a "Transaction").

"Restructuring" means any restructuring, reorganization, rescheduling, repayment, refinancing or recapitalization of all or any material portion of the liabilities of the Company (or its subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments.

"Sale Transaction" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries to one or more third parties (including creditors) (an "Acquirer"), (b) the merger or combination of the Company or any of its subsidiaries with an Acquirer (c) an Acquirer's acquisition of all or a significant portion of the assets, properties or business of the Company or any of its subsidiaries, or (d) an Acquirer's acquisition of any business unit, division or specified discrete assets that Moelis may be asked to sell.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

1. As part of our engagement, we will if appropriate and requested:

MOELIS & COMPANY

(a)    assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)    assist the Company in reviewing and analyzing a potential Restructuring, Sale Transaction or Capital Transaction (or any combination thereof);

(c)    assist the Company in negotiating a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof);

(d)    advise the Company on the terms of securities it offers in any potential Capital Transaction.

(e)    advise the Company on its preparation of information memorandum for, a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)    assist the Company in contacting potential Acquirers or purchasers that we and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)    provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services will be made on a reasonable best efforts basis. Moelis' obligations under this agreement are subject to, among other things:  (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.  (a)  As compensation for our services hereunder, the Company agrees to pay us the following nonrefundable cash fees:

Monthly Fee

(i)    During the term of this agreement, a fee of $100,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement.  Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, we shall earn and be paid the Monthly Fee every month during the term of this agreement. Moelis has agreed to credit $200,000 in fees previously paid by the Company to Moelis against any Monthly Fees incurred hereunder.

Restructuring Fee

(ii)    At the closing of a Restructuring, a fee (the "Restructuring Fee") of 1.25% on the principal amount of liabilities of the Company included in the Restructuring.  The

MOELIS ` COMPANY

Company will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

Notwithstanding the foregoing, if the Company pursues a Restructuring pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, in lieu of the Restructuring Fee, we will earn and the Company will pay a fee of 1.25% of the principal amount of liabilities exchanged in any such 3(a)(9) Restructuring (the "Section 3(a)(9) Fee") on the date that definitive offer documents for the exchange offer(s) under Section 3(a)(9) are first distributed to creditors whose claims would be affected thereby. The Section 3(a)(9) Fee is not dependent on the results of the offer or any other contingency.

Sale Transaction Fee

(iii)   At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of 1.25% of Transaction Value (as defined in *Annex A*).

For each Sale Transaction, the Company will pay a separate Sale Transaction Fee equal to (x) the Sale Transaction Fee based on the aggregate Transaction Value for any prior Sale Transactions and the current Sale Transaction less (B) any Sale Transaction Fees the Company previously paid for prior Sale Transactions.

Capital Transaction Fee

(iv)   In the event that the Company pursues a Capital Transaction, a transaction fee (a "Capital Transaction Fee") consistent with market based fees (based on the amount of capital Raised (as defined below) in any such Capital Transaction) that will be mutually agreed upon (in a separate agreement containing customary terms) by the Company and Moelis in good faith.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.   "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

If a Transaction involves both a Restructuring and a Sale Transaction or a Capital Transaction, both a Restructuring Fee and a Sale Transaction Fee or a Capital Transaction Fee shall be payable. In connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) intended to be consummated in connection with a pre-packaged or pre-arranged Plan, (i) we will have earned 100% of the Restructuring Fee, Sale Transaction Fee and or Capital Transaction Fee prior to the commencement of the Bankruptcy Case, and (ii) the Company will pay the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee at the closing of the Restructuring, Sale Transaction or Capital Transaction (or any combination thereof). For purposes of this agreement, a "pre-arranged" Plan means any Plan with respect to which holders of at least one class of claims representing at least 66.67% in dollar amount of the claims in such class have provided written evidence (through a "lock-up agreement" or otherwise) of their intent to vote in favor of such Plan.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) or enters into an agreement or a Plan is filed regarding a Restructuring, Sale Transaction or Capital Transaction (or any

MOELIS · COMPANY

combination thereof) and a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) is subsequently consummated, then the Company (or its bankruptcy estates) shall pay us the appropriate fee specified in Section 2(a) above immediately upon the closing of each such transaction. The "Tail Period" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) consummated out-of-court, 12 months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement. The Company agrees not to object to our request to the Bankruptcy Court and any appellate court to allow such fees.

(b) Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse us for all of our reasonable out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of our legal counsel. In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement. We agree to provide the Company with reasonable support for our expenses at the Company's request or at the Bankruptcy Court's direction. Prior to commencing a Bankruptcy Case, the Company will reimburse all of our reasonable out-of-pocket expenses that we incurred up to such commencement.

(c) The Company's obligation to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

(d) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.  If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all amounts then earned and payable pursuant to this agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy

-4-

Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c) Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex B* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.  The Company will furnish us with all information concerning the Company and, to the extent available to the Company, the Acquirer as we reasonably deem appropriate (collectively, the "Information") to execute this engagement and will provide us with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer. To the extent of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise us promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, we will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. We will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes us to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

We will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to us in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) we may provide nonpublic Information to prospective Transaction parties as

MOELIS COMPANY

contemplated by this agreement. This paragraph shall terminate one year following the date of this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

5.   The Company will not disclose, summarize or refer to any of our advice publicly or to any third party without our prior written consent. In the event disclosure is required by subpoena or court order, the Company will provide us reasonable advance notice and permit us to comment on the form and content of the disclosure. We may, at our option and expense after announcement of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive financial advisor and capital markets advisor to the Company in connection with any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof). If we request, the Company shall include a mutually acceptable reference to us in any public announcement of a Restructuring, Sale Transaction and Capital Transaction.

6.   We are an independent contractor with the contractual obligations described herein owing solely to the Company. We expressly disclaim any fiduciary duty. Since we will be acting on the Company's behalf, the Company and we agree to the indemnity and other provisions set forth in the attached *Annex B*. The Company's obligations set forth therein are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The Company hereby agrees to the acknowledgements and disclosures set forth in *Annex C*.

7.   Either the Company or we may terminate our engagement with or without cause, upon 15 days' prior written notice thereof to the other party and our engagement may be extended by mutual written agreement of the Company and us. In the event of any termination or expiration, (i) we will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) *Annex B*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.   Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the Company's interests. Moelis and its affiliates have no duty to disclose to the Company, or use for the Company's benefit, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

MOELIS    COMPANY

9.  This agreement and any dispute or claim that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and us. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.   This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and us and its and our respective successors and permitted assigns. WE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Company. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name: ADAM KEIL

Title: MANAGING DIRECTOR

Agreed to as of the date first written above:

SFX ENTERTAINMENT INC.

By: _____

Name: Richard Rosenstein

Title: CFO

-8-

MOLLIS    COMPANY

## ANNEX A

"Transaction Value" shall equal the sum of (A) in the case of the sale, issuance or exchange of equity securities, the total consideration received or to be received for such securities (including amounts payable to holders of options, warrants and convertible securities ; (B) in the case of a sale or disposition of assets, the total consideration paid or received or to be paid or received for such assets; (C) (i) in the case of the sale, issuance or exchange of equity securities, the principal amount of all indebtedness for borrowed money as set forth on the most recent consolidated balance sheet (the "Balance Sheet") of the acquired company prior to the consummation of the Sale Transaction (less the amount of cash and cash equivalents up to but not exceeding the total amount of indebtedness set forth on the Balance Sheet) and (ii) without duplication, in the case of a sale or disposition of assets, the principal amount of all indebtedness for borrowed money as set forth on the Balance Sheet that the Acquirer assumes or acquires; and (D) the value implied in the Sale Transaction of any equity or assets retained by the security holders of the acquired company upon consummation of the Sale Transaction (such equity to be valued at the same price per share as paid in the Sale Transaction); and (E) any liabilities of the acquired company (other than indebtedness for borrowed money) on the Balance Sheet or that is assumed or acquired by the Acquirer

Transaction Value also shall include any (i) dividends or other distributions paid on the acquired company's securities, other than normal recurring cash dividends in amounts not materially greater than currently paid; and (ii) amounts the acquired company pays to repurchase any of its securities (excluding repurchases pursuant to and consistent with any current stock repurchase program of the acquired company).

The Company will pay any portion of the Sale Transaction Fee attributable to contingent payments constituting Transaction Value upon consummation of the Sale Transaction, based on the present value of such amounts, using a discount rate and probability of payment that the Company and we mutually agree; provided amounts paid into escrow shall be deemed paid at closing.

For purposes of calculating the Transaction Value, equity securities constituting a part of the consideration payable in the Sale Transaction that are traded on a national securities exchange shall be valued at the closing price thereof on the trading day immediately prior to the closing of the Sale Transaction. Such equity securities that are traded in an over-the-counter market shall be valued at prices on the trading day immediately prior to the closing of the Sale Transaction. Any debt or other securities or other non-cash consideration shall be valued as the Company and we may mutually agree.

MOELIS & COMPANY

## ANNEX B

In the event that Moelis & Company LLC or our affiliates or any of our or our affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any  person controlling us or any of our affiliates) (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein, the Company will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages or liabilities (collectively, "Losses") (A) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents (including the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the engagement) or (B) otherwise arising out of, related to or in connection with this agreement or our performance thereof, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability are for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by us, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company on the one hand and of us on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by us from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by us in connection with this agreement.

The Company will not without our prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action.  The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent.  No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing of its arrangements for the

MOELIS   COMPANY

Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and us.

MOELIS & COMPANY

## ANNEX C

**FINRA Suitability.**  Pursuant to FINRA Rule 2111, the Company acknowledges that (i) the Company is capable of evaluating investment risks independently, both in general and with regard to transactions and investment strategies involving a security or securities and will exercise independent judgment in evaluating recommendations (if any) of Moelis and its associated persons, and (ii) the Company is an Institutional Account as defined in FINRA Rule 4512(c).

**USA Patriot Act.**  Moelis is required to obtain, verify, and record information that identifies the Company in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.

**Business Continuity.**  Moelis maintains a business continuity plan that is reviewed annually and is updated as necessary. Our disclosure statement is available on our website at www.moelis.com and a copy can be requested by contacting us at compliance@moelis.com.

399 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10022

# MOELIS & COMPANY

T  (212) 883 3800
F  (212) 880 4260

January 30, 2016

**CONFIDENTIAL**

SFX Entertainment, Inc.
902 Broadway, 15th Floor
New York, NY 10010

Ladies and Gentlemen:

Reference is made to that letter agreement, dated as of November 18, 2015 (the "Original Engagement"). Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Original Engagement.

For good and valuable consideration, Moelis and the Company have agreed to amend the terms of Section 2(a) of the Original Engagement as follows:

1. 50% of all Monthly Fees paid pursuant to Section 2(a)(i) of the Original Engagement following the Company's commencement of a Bankruptcy Case (the "Credit") shall be credited against the Restructuring Fee, 3(a)(9) Fee or Sale Transaction Fee, as applicable and as modified herein.

2. Each of the Restructuring Fee, the 3(a)(9) Fee and the Sale Transaction Fee are hereby amended to provide for a single fee in the fixed amount of $2,500,000, in lieu of the formulas used to calculate such fees in the Original Engagement. For the avoidance of doubt, the Company shall only be required to pay one $2,500,000 fee for any Restructuring, including a Restructuring pursuant to Section 3(a)(9) of the Securities Act of 1933, or Sale Transaction Fee, and such fee minus the Credit, shall be payable upon consummation of either a Sale Transaction or Restructuring.

3. If the Company commences a Bankruptcy Case, in addition to the Monthly Fees and the fees described in paragraph 2 herein, Moelis shall earn a Capital Transaction Fee of $1,000,000 upon the consummation by the Company of a debtor-in-possession or similar financing. Payment of such fee will be subject to the Bankruptcy Court's approval of Moelis' retention application and fee application or other orders of the Bankruptcy Court.

4. Other than as expressly amended hereby, the Original Engagement shall remain in full force and effect on the terms set forth therein.

Sincerely,

By their signatures below, the parties hereto agree to the amendments to the Original Engagement set forth above.

Moelis & Company, LLC

By: _____

Name: ADAM KEIL

Title: MANAGING DIRECTOR

Agreed to as of the date first written above.

SFX Entertainment, Inc.

By: _____

Name:

Title: CRO

3

399 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10022

MOELIS & COMPANY

T   (212) 883 3800
F   (212) 880 4260

February 24, 2016

CONFIDENTIAL

SFX Entertainment, Inc.
902 Broadway, 15th Floor
New York, NY 10010

Ladies and Gentlemen:

Reference is made to that letter agreement, dated November 18, 2015 (as amended January 30, 2016), between SFX Entertainment, Inc. and Moelis & Company LLC (the "Amended Engagement"). Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Amended Engagement.

For good and valuable consideration, Moelis and the Company have agreed to amend the terms of the Amended Engagement as follows:

1. 50% of all Monthly Fees paid pursuant to Section 2(a)(i) of the Original Engagement following the Company's commencement of a Bankruptcy Case (the "Credit") shall be credited against the Restructuring Fee or Sale Transaction Fee, as applicable and as modified herein.

2. The Restructuring Fee is hereby amended to provide for a single fee in the fixed amount of $3,000,000 if such Restructuring occurs on or before June 30, 2016 and $2,750,000 if such Restructuring occurs after such date, in lieu of the formulas used to calculate such fees in the Amended Engagement. For the avoidance of doubt, the Company shall only be required to pay one Restructuring Fee of either $3,000,000 or $2,750,000 for any Restructuring and such Restructuring Fee (minus the Credit) shall be payable upon consummation of a Restructuring.

3. With respect to Sale Transactions, the parties agree as follows:

(a) The Company will pay Moelis a fee (the "Fame House Sale Transaction Fee") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Fame House in an amount equal to or greater than $8,000,000 (a "Fame House Qualifying Offer") or (y) if the Company completes a sale of Fame House (for any amount). Such Fame House Sale Transaction Fee will equal $250,000, plus, if the Company completes a sale of Fame House, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $8,000,000 up to and including $12,000,000, plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $12,000,000. The Fame House Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Fame House or (b) the determination by the Company to not pursue a sale after receiving a Fame House Qualifying Offer. For the avoidance of doubt, in such case that the Company receives a Fame House Qualifying Offer but determines not to pursue such offer, Moelis will receive a Fame House Sale Transaction Fee of $250,000.

MOELIS & COMPANY

(b) The Company will pay Moelis a fee (the "Beatport Sale Transaction Fee") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Beatport in an amount equal to or greater than $17,000,000 (a "Beatport Qualifying Offer") or (y) if the Company completes a sale of Beatport (for any amount). Such Beatport Sale Transaction Fee will equal $250,000, plus, if the Company completes a sale of Beatport, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $17,000,000 up to and including $25,000,000 plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $25,000,000. The Beatport Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Beatport or (b) the determination by the Company to not pursue a sale after receiving a Beatport Qualifying Offer. For the avoidance of doubt, in such case that the Company receives a Beatport Qualifying Offer but determines not to pursue such offer, Moelis will receive a Beatport Sale Transaction Fee of $250,000.

(c) If the Company sells or otherwise disposes (regardless of form) of any assets other than Fame House or Beatport (an "Asset Transaction"), the Company will pay Moelis a fee for any such transaction equal to 2.5% of Transaction Value, after giving effect to working capital adjustments (the "Asset Transaction Fee"). The Asset Transaction Fee will be payable upon the closing of any such Asset Transaction.

If, at any time prior to the end of the Tail Period, the Company receives a Fame House Qualifying Offer, receives a Beatport Qualifying Offer, completes a sale of Beatport and/or completes a sale of Fame House, the Company (or its bankruptcy estates) shall pay us the Fame House Sale Transaction Fee and/or the Beatport Sale Transaction Fee, as applicable, as set forth above. If, at any time prior to the end of the Tail Period, the Company enters into an agreement for an Asset Transaction or the Company consummates an Asset Transaction, the Company will pay Moelis the Asset Transaction Fee(s) as set forth above.

3. The Capital Transaction Fee is hereby deleted. Moelis shall not be required to provide any services relating to a Capital Transaction under the Amended Engagement.

4. Other than as expressly amended hereby, the Amended Engagement shall remain in full force and effect on the terms set forth therein.

Sincerely,

MOELIS & COMPANY

By their signatures below, the parties hereto agree to the amendments to the Amended Engagement set forth above.

MOELIS & COMPANY LLC

By: _____

Name: Adam Keil

Title: Managing Director

Agreed to as of the date first written above:

SFX ENTERTAINMENT INC.

By: /s/ Michael Katzenstein (RW)

Name: Michael Katzenstein

Title: CRO