**Exhibit B**

**Keil Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF ADAM KEIL IN SUPPORT OF APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MOELIS & COMPANY LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE

I, Adam Keil, being duly sworn, state the following under penalty of perjury:

1.    I am a Managing Director of Moelis & Company LLC ("**Moelis**"). I am duly authorized to make this declaration (the "**Declaration**") on behalf of Moelis and submit this Declaration in accordance with sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**") and Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in connection with the application (the "**Application**") of the above-captioned debtors (collectively, the "**Debtors**"), seeking an order approving the retention of Moelis as investment banker pursuant to sections

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

327(a) and 328(a) of the Bankruptcy Code and effective as of the Petition Date.[2]    Unless

otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein and,

if called as a witness, I would testify thereto.  To the extent that any information disclosed herein

requires subsequent amendment or modification upon Moelis' completion of further analysis or

as additional creditor information becomes available to it, one or more supplemental declarations

will be submitted to the Court reflecting the same.

**Moelis' Qualifications**

2.    I believe that Moelis and the professionals it employs are uniquely qualified to

advise the Debtors in the matters for which Moelis is proposed to be employed.

3.    Moelis is an investment banking firm with its principal office located at 399 Park

Avenue, 5th Floor, New York, New York 10022.  Moelis is a registered broker-dealer with the

United States Securities and Exchange Commission and is a member of the Financial Industry

Regulatory Authority.  Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis

& Company Group LP.  Moelis & Company Group LP, together with its subsidiaries, has

approximately 650 employees based in 17 offices in North and South America, Europe, the

Middle East, Asia and Australia.  Moelis & Company Group LP is a subsidiary of Moelis &

Company, a public company listed on the New York Stock Exchange.

4.    Moelis provides a broad range of financial advisory advice to its clients,

including:  (a) general corporate finance; (b) mergers, acquisitions and divestitures; (c) corporate

restructurings; (d) special committee assignments; and (e) capital raising.  Moelis and its senior

professionals have extensive experience in the reorganization and restructuring of distressed

companies, both out-of-court and in chapter 11 cases.  Moelis' business reorganization

---

[2] Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Application.

professionals have served as investment in numerous cases, including: *In re American Apparel, Inc.*, No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015); *In re Allied Nevada Gold Corp.*, No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015); *In re ITR Concession Co. LLC*, No. 14-34284 (PSH) (Bankr. N.D. Ill. Oct. 28, 2014); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr D. Del. May 30, 2014); *In re MACH Gen, LLC*, No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. D. Del. Apr. 7, 2014); *In re Cengage Learning, Inc.*, No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013); *In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp.*, No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013); *In re Revel AC, Inc.*, No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 20, 2012); *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. Aug. 30, 2012); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. Mar. 7, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Dec. 27, 2011); *In re Gen. Maritime Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. Dec. 15, 2011); *In re Jackson Hewitt Tax Serv., Inc.*, No. 11-11587 (MFW) (Bankr. D. Del. June 30, 2011); *In re Appleseed's Intermediate Holdings LLC*, No. 11-10160 (KG) (Bankr D. Del. Feb. 23, 2011); *In re Innkeepers USA Trust*, No. 10-13800 (SCC) (Bankr. S.D.N.Y. Aug. 12, 2010); *In re Almatis B.V.*, No. 10-12308 (MG) (Bankr. S.D.N.Y. June 9, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Mar. 17, 2010); *In re Int'l Aluminum Corp.*, No. 10-10003 (MFW) (Bankr. D. Del. Jan. 27, 2010); *In re Reader's Digest Ass'n Inc.*, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 24, 2009); *In re NV Broad. LLC*, No. 09-12473 (KG) (Bankr. D. Del. Aug. 5, 2009); *In re Fontainebleau Las Vegas Holdings, LLC*, No. 09-21481 (AJC) (Bankr. S.D. Fla. Nov. 25, 2009); *In re ION Media Networks Inc.*, No. 09-

13125 (JMP) (Bankr. S.D.N.Y. July 13, 2009); *In re JGW Holdco, LLC f/k/a J.G. Wentworth LLC*, No. 09-11731 (CSS) (Bankr. D. Del. June 16, 2009); *In re Source Interlink Cos.*, No. 09-11424 (KG) (Bankr. D. Del. May 21, 2009); *In re Dayton Superior Corp.*, No. 09-11351 (BLS) (Bankr. D. Del. May 18, 2009); *In re Idearc Inc.*, No. 09-31828 (BJH) (Bankr. N.D. Tex. May 27, 2009); *In re Muzak Holdings LLC*, No. 09-10422 (KJC) (Bankr. D. Del. Apr. 6, 2009); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Mar. 18, 2009); *In re Old AII, Inc. f/k/a Aleris Int'l Inc.*, No. 09-10478 (BLS) (Bankr. D. Del. Mar. 16, 2009); *In re XMH Corp. f/k/a Hartmarx Corp.*, No. 09-02046 (BWB) (Bankr. N.D. Ill. Mar. 4, 2009); *In re Lyondell Chemical Co.*, No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 6, 2009).[3]

5.       In 2015, a special committee appointed by the Debtors' board of directors (the "**Special Committee**") was charged with the exclusive authority to consider, negotiate and approve (and recommend to shareholders, if applicable) proposed acquisition transactions, as well as to solicit indications of interest from potential acquirers. The Special Committee retained Moelis on March 9, 2015 to advise on these efforts, including: (a) assisting the Special Committee in negotiating a potential merger agreement with Robert F.X. Sillerman; (b) assisting the Debtors with the preparation of marketing materials; (c) contacting potential buyers as part of a go-shop process; (d) assisting the Debtors with buyer due diligence; and (e) along with the Special Committee, reviewing first round indications of interest by potential bidders in October 2015. This engagement concluded in mid-November 2015. Contemporaneously with the conclusion of the Special Committee engagement, the Debtors retained Moelis to provide investment banking services with respect to a potential restructuring and/or recapitalization of the Debtors. In connection with its work on behalf of the Special Committee and Debtors,

---

[3]  Because of the voluminous nature of the orders cited herein, such orders are not attached to this Application. Copies of these orders are available upon request of the Debtors' proposed counsel.

Moelis received fees in the amount of $1.35 million, as well as reimbursement of certain expenses totaling $96,408.63. Compensation and reimbursement of expenses for Moelis' counsel totaled $128,627.64. Payment for this work was made by Debtor SFX Entertainment, Inc.

6.    The Debtors have selected Moelis as their investment banker based upon, among other things: (a) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases such as these; and (c) Moelis' extensive knowledge of the Debtors, as described below. In light of the size and complexity of these Chapter 11 Cases, Moelis' resources, capabilities, and experience in advising the Debtors are crucial to the Debtors' successful restructuring. An experienced investment banker such as Moelis fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. For these reasons, the Debtors require the services of a capable and experienced investment banker such as Moelis.

7.    Moelis has been advising the Debtors on strategic and restructuring initiatives since its engagement on November 18, 2015. Moelis provided extensive prepetition services in preparation for the Debtors' restructuring efforts, including: (a) assisting management in analyzing potential restructuring transactions; (b) assisting management in analyzing and negotiating restructuring proposals from various constituents; (c) assisting management in conducting extensive meetings and negotiations with various stakeholders; (d) facilitating extensive diligence for interested parties; (e) assisting management in analyzing debtor in possession financing and negotiating its terms; and (f) providing additional investment banking and financial advisory services in preparation of the Debtors' chapter 11 filing. Pursuant to the

Engagement Letter, Moelis advised the Debtors in their negotiations with the Debtors' secured lenders. These negotiations ultimately resulted in the execution of the RSA. The RSA provides for a comprehensive restructuring of the Debtors' balance sheet. In addition, pursuant to the Engagement Letter, Moelis has advised the Debtors in connection with the negotiation and documentation of the terms of a debtor-in-possession facility extended by certain of the holders of the Debtors' secured debt.

8.    As a result of its prepetition work with the Special Committee and the Debtors for more than ten (10) months in the aggregate, Moelis has developed valuable institutional knowledge regarding the Debtors' businesses, operations, capital structure and other material information. Having worked with the Debtors' management and their other advisors, Moelis has developed relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these Chapter 11 Cases. Accordingly, I believe Moelis is well-qualified to represent the Debtors in a cost-effective, efficient and timely manner, and I submit that the employment and retention of Moelis is in the best interests of the Debtors, their creditors, and all parties in interest.

### Scope of Employment

9.    Throughout Moelis' engagement, Moelis has provided the following services, among others, to the Debtors in connection with their restructuring efforts and will continue to provide such services during these Chapter 11 Cases at the request of the Debtors:[4]

a.    assist the Debtors in reviewing and analyzing the Debtors' results of operations, financial condition and business plan;

---

[4]   The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained herein and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

b.  assist the Debtors in reviewing and analyzing a potential Restructuring or Sale Transaction (or any combination thereof);

c.  assist the Debtors in negotiating a Restructuring or Sale Transaction (or any combination thereof); and

d.  advise the Debtors on their preparation of information memorandum for a potential Sale Transaction (each, an "**Information Memo**");

e.  assist the Debtors in contacting potential Acquirers or purchasers that Moelis and the Debtors agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtors' assets, properties or businesses that is acceptable to the Debtors, subject to customary business confidentiality agreements; and

f.  provide such other financial advisory and investment banking services in connection with a Restructuring or Sale Transaction (or any combination thereof) as Moelis and the Debtors may mutually agree upon.

10.  Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors propose to retain Moelis to continue rendering consulting and advisory services as outlined within the Engagement Letter and this Application.  Many of these services began in November 2015, and may continue throughout these Chapter 11 Cases.

11.  If the Debtors request that Moelis perform services not contemplated by the Engagement Letter, Moelis and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval thereof.

## Disinterestedness

12.  Moelis has undertaken to determine whether it has any conflicts or other relationships that might cause it not to be eligible for employment by the Debtors in these cases. Specifically, Moelis obtained from the Debtors the names of individuals and entities that may be parties in interest in these cases.  Moelis then (a) researched its internal records to determine whether Moelis has any connections with the Debtors and the parties listed on **Attachment 2**

hereto (the "**Potential Parties in Interest**") and (b) issued a general inquiry to certain of its

officers with respect to the Debtors and certain Potential Parties in Interest.

13.     Based on the foregoing inquiry, other than in connection with this engagement

and as otherwise disclosed herein, Moelis has no relationships or connections with the Debtors of

which I am aware. In particular, to the best of my knowledge, information and belief, neither I,

Moelis, nor any of its professionals:

       a.      is a creditor, equity security holder or insider of the Debtors;

       b.      is or has been within two years before the Petition Date, a director, officer, or employee of the Debtors; or

       c.      has any interest materially adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

Accordingly, I believe Moelis is a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors

or their estates.

14.     Neither I nor any of the Moelis professionals who will provide services for the

Debtors is related to any Judge of this Court, the U.S. Trustee or Assistant U.S. Trustee for this

District, or the U.S. Trustee trial attorney assigned to these Chapter 11 Cases.

15.     To the extent that I have been able to ascertain to date that Moelis has been

engaged within the last two years or is currently engaged by any of the Potential Parties in

Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are

disclosed on **Attachment 3** hereto. **Attachment 3** also sets forth certain other relationships

Moelis has with certain Potential Parties in Interest. In addition to the facts disclosed on

**Attachment 3**, Moelis may in the future be engaged by parties that are or may become parties in

interest in these cases. As these cases progress, new parties may become parties in interest in

these cases and similarly, Moelis may have been engaged, may be currently engaged and may in the future be engaged by such new parties in interest in matters unrelated to these Chapter 11 Cases. Also, Moelis may have engaged or had mutual clients with, may have a current engagement or have mutual clients with and may in the future engage or have mutual clients with certain law firms, financial advisors, accounting firms and other professionals that are Potential Parties in Interest or may become parties in interest, all in matters unrelated to these cases. In addition, Moelis may have also been engaged by, be currently engaged by or in the future be engaged by persons who are creditors or shareholders of, otherwise have a business relationship with the Debtors, or who are competitors of or customers of the Debtors. Potential Parties in Interest, persons that may become parties in interest in these cases, and persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors, may be: (a) parties in interest in other bankruptcy cases where Moelis is acting as financial advisor or investment banker to the debtors or to other parties in interest; or (b) may be affiliates of or creditors of persons who Moelis may have been engaged, is currently engaged or may in the future be engaged by. In the ordinary course of its business, Moelis may also purchase services or products from Potential Parties in Interest and other persons that are or may become parties in interest in these Chapter 11 Cases.

16.    Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts described above to identify and disclose Moelis' relationships with parties in interest in these Chapter 11 Cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed. In particular, among other things, Moelis may have relationships with persons who are beneficial owners of parties in interest and persons whose beneficial owners include parties in interest or persons who otherwise have relationships with

parties in interest.  Moreover, Moelis' employees may have relationships with Potential Parties in Interest, persons that may become parties in interest in these cases, and/or persons that have business relationships with the Debtors, are competitors of the Debtors or that are customers of the Debtors.  Continued inquiry will be made following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

17.    Moelis' parent company, Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the NYSE.  Moelis & Company is controlled by Kenneth Moelis.    Mr. Moelis also controls a separate private company Moelis Asset Management LP ("**Moelis Asset Management**").    Moelis Asset Management is operated separately from the public company Moelis & Company and its subsidiaries including Moelis. The executive officers of Moelis & Company are different from the executive officers of Moelis Asset Management.

18.    Moelis Asset Management has a separate private equity business ("**Moelis Capital Partners**"), which holds investment positions in various entities, some of which may be parties in interest in these Chapter 11 Cases.  To the best of my knowledge, Moelis Capital Partners does not hold any investment positions that constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.  The Moelis professionals providing services to the Debtors will not share confidential or otherwise non-public information they receive in the course of this engagement with Moelis Capital Partners.    Accordingly, I believe that Moelis Capital Partners' investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

19.    Moelis Asset Management has a separate credit focused investment management business (**"Gracie Credit"**).  Gracie Credit is operated as a separate business from Moelis, and Gracie Credit will continue to be operated in separate legal and operating entities from Moelis. Gracie Credit employees will not work on these cases and Moelis employees working on these cases will not have any involvement in Gracie Credit's investment decisions.  Moelis and Gracie Credit maintain strict compliance information barriers between Moelis on the one hand and Gracie Credit on the other hand to ensure that:   (a) no Moelis employee will disclose any non-public information concerning the Debtors or these cases to any Gracie Credit employee; and (b) no Gracie Credit employee will disclose any non-public information concerning a Gracie Credit position or Gracie Credit's intention with respect to any consent, waiver, tender, or vote decision to any Moelis employee.  Moelis and Gracie Credit currently have separate offices with access to the other's offices physically restricted and use separate Internet email addresses (@moelis.com and @graciecap.com, respectively).  Gracie Credit may in the ordinary course from time to time hold investment positions in the Debtors and parties in interest in these cases. Based on the business separation and compliance information barriers referred to above, Gracie Credit's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

20.    Moelis Asset Management has a separate direct lending business, Freeport Financial Group (**"Freeport"**). Freeport is operated as a separate business from Moelis, and Freeport will continue to be operated in separate legal and operating entities from Moelis. Freeport employees will not be working on these Chapter 11 Cases and Moelis employees working on these Chapter 11 Cases will not have any involvement in Freeport's investment decisions.  Moelis and Freeport maintain strict compliance information barriers

between Moelis on the one hand and Freeport on the other hand to ensure that: (a) no Moelis employee will disclose any non-public information concerning the Debtors or these Chapter 11 Cases to any Freeport employee and (b) no Freeport employee will disclose any non-public information concerning a Freeport position or Freeport's intention with respect to any consent, waiver, tender, or vote decision to any Moelis employee. Moelis and Freeport currently have separate offices with access to the other's offices physically restricted and use separate Internet email addresses (@moelis.com and @freeportfinancial.com, respectively). Freeport may in the ordinary course from time to time hold investment positions in the Debtors and parties in interest in these cases. Based on the business separation and compliance information barriers referred to above, Freeport's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

21.    Moelis Asset Management has a business of managing collateralized loan obligations through a subsidiary Steele Creek Investment Management LLC ("**Steele Creek**"). Steele Creek is operated as a separate business from Moelis, and Steele Creek will continue to be operated in separate legal and operating entities from Moelis. Steele Creek employees will not be working on these Chapter 11 Cases and Moelis employees working on these Chapter 11 Cases will not have any involvement in Steele Creek's investment decisions. Moelis and Steele Creek maintain strict compliance information barriers between Moelis on the one hand and Steele Creek on the other hand to ensure that: (a) no Moelis employee will disclose any non-public information concerning the Debtors or these Chapter 11 Cases to any Steele Creek employee and (b) no Steele Creek employee will disclose any non-public information concerning a Steele Creek position or Steele Creek's intention with respect to any consent, waiver, tender or vote decision to any Moelis employee. Moelis and Steele Creek currently have separate offices.

Moelis and Steele Creek also currently use separate Internet email addresses (@moelis.com and @freeportfinancial.com, respectively). Steele Creek may in the ordinary course from time to time hold investment positions in the Debtors and parties in interest in these cases. Based on the business separation and compliance information barriers referred to above, Steele Creek's investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

22.    To the best of my knowledge, information and belief, some of Moelis' present and future employees may have, or may in the future have, personal investments in funds or other investment vehicles, over whose investment decisions such employees have no input or control. Such entities may have made, or may in the future make, investments in the claims or securities of the Debtors, or those of their creditors, or other parties in interest in these Chapter 11 Cases.

23.    Moelis will not share any compensation to be paid by the Debtors in connection with services to be performed after the Petition Date with any other person, other than other principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code. In the ordinary course of its business, Moelis regularly retains the services of senior advisors with specific industry or other expertise to supplement the investment banking services offered by Moelis' regular employees to Moelis' clients. Upon Moelis' engagement on a particular assignment, a senior advisor may be assigned to assist the other Moelis professionals for such engagement. Such advisors act under the management of the Moelis Managing Director who retains the lead role and primary responsibility for such assignment. The fees and expenses of such senior advisors are paid solely by Moelis. The Debtors submit that such senior advisors are regular associates of Moelis within the meaning of section 504 of the Bankruptcy Code.

## Professional Compensation

24.     Moelis' decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

25.     Specifically, the Engagement Letter provides for the following compensation (the "**Fee Structure**"):

(a)     Monthly Fee:  $100,000 per month (the "**Monthly Fee**"), payable in advance of each month.  The Debtors will pay the Monthly Fee prior to each monthly anniversary of the date of the Engagement Letter; in this case, on the 18th of each month.  Whether or not a Restructuring or Sale Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of the Engagement Letter.  Moelis agreed to credit $200,000 in fees previously paid by the Debtors to Moelis against any Monthly Fees incurred under the Engagement Letter.  Beginning with the commencement of a Bankruptcy Case, 50% of each Monthly Fee shall be offset, to the extent previously paid, or credited, if not yet paid, against the Restructuring Fee or Sale Transaction Fees (each as defined below).

(b)     Restructuring Fee:  $3,000,000 upon the closing of a Restructuring if such Restructuring occurs on or before June 30, 2016 $2,750,000 if such Restructuring occurs after such date (the "**Restructuring Fee**").  For the avoidance of doubt, the Debtors shall only be required to pay one Restructuring Fee of either $3,000,000 or $2,750,000 for any Restructuring and such Restructuring Fee (minus the Credit) shall be payable upon consummation of a Restructuring.

(c)     Sale Transaction Fees:

(i)     The Debtors will pay Moelis a fee for a sale process of Fame House (the "**Fame House Sale Transaction Fee**") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Fame House in an amount equal to or greater than $8,000,000 (a "**Fame House Qualifying Offer**") or (y) if the Debtors complete a sale of Fame House (for any amount).  Such Fame House Sale Transaction Fee will equal $250,000, plus, if the Debtors complete a sale of Fame House, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $8,000,000 up to and including $12,000,000, plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $12,000,000.  The Fame House Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of

Fame House or (b) the determination by the Debtors to not pursue a sale after receiving a Fame House Qualifying Offer.  For the avoidance of doubt, in such case that the Debtors receive a Fame House Qualifying Offer but determine not to pursue such offer, Moelis will receive a Fame House Sale Transaction Fee of $250,000.

(ii)    The Debtors will pay Moelis a fee for a sale process of Beatport (the "**Beatport Sale Transaction Fee**") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Beatport in an amount equal to or greater than $17,000,000 (a "**Beatport Qualifying Offer**") or (y) if the Debtors complete a sale of Beatport (for any amount).  Such Beatport Sale Transaction Fee will equal $250,000, plus, if the Debtors complete a sale of Beatport, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $17,000,000 up to and including $25,000,000 plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Debtors in such a sale in amounts in excess of $25,000,000.  The Beatport Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Beatport or (b) the determination by the Debtors to not pursue a sale after receiving a Beatport Qualifying Offer.  For the avoidance of doubt, in such case that the Debtors receive a Beatport Qualifying Offer but determine not to pursue such offer, Moelis will receive a Beatport Sale Transaction Fee of $250,000.

(iii)    If the Debtors sell or otherwise dispose (regardless of form) of any assets other than Fame House or Beatport (an "**Asset Transaction**"), the Debtors will pay Moelis a fee for any such transaction equal to 2.5% of the Transaction Value, after giving effect to working capital adjustments (the "**Asset Transaction Fee**" and collectively with the Beatport Sale Transaction Fee and the Fame House Sale Transaction Fee, the "**Sale Transaction Fees**").  The Asset Transaction Fee will be payable upon the closing of any such Asset Transaction.

(d)    If, at any time prior to the end of the Tail Period, the Debtors receive a Fame House Qualifying Offer, receive a Beatport Qualifying Offer, completes a sale of Beatport and/or completes a sale of Fame House, the Debtors (or their bankruptcy estates) shall pay Moelis the Fame House Sale Transaction Fee and/or the Beatport Sale Transaction Fee, as applicable, as set forth above.  If, at any time prior to the end of the Tail Period, the Debtors enter into an agreement for an Asset Transaction or the Debtors consummate an Asset Transaction, the Debtors will pay Moelis the Asset Transaction Fee(s) as set forth above.  The Tail Period shall end eighteen months (18) months following the expiration or termination of the Engagement Letter (the "**Tail Period**").

26.    In addition to any fees payable to Moelis, the Debtors will reimburse Moelis for

all of its reasonable, actual, documented, out-of-pocket expenses as they are incurred in entering

into and performing services under the Engagement Letter, including the costs of Moelis' outside counsel (without the need for such legal counsel to be retained as a professional in these Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

27.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines and any other applicable procedures and orders of the Court, including any order granting this Application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

28.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. However, because (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed transaction fees, I respectfully request that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments) and the identity of the restructuring professionals who provided those services. Moelis will present such records to the Court in its fee application(s). Moreover, I respectfully request that Moelis' restructuring professionals not be required to keep time records on a 'project category' basis, that its non-

restructuring professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, I respectfully request that this Court waive such requirements.

29.    I believe the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and out of bankruptcy proceedings. I also believe that the Fee Structure reflects a balance between a fixed, monthly fee, and a deferred amount, which is tied to the consummation and closing of the transactions and services contemplated by the Debtors and Moelis in the Engagement Letter. After discussions and arm's-length negotiations with the Debtors, I believe that the Fee Structure is reasonable, market-based and designed to compensate Moelis fairly for its work.

30.    I understand that Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, restructuring capabilities and mergers and acquisitions expertise, some or all of which has and will be required by the Debtors during the term of Moelis' engagement, were important factors in determining the Fee Structure. I believe that the ultimate benefits of Moelis' services hereunder cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Debtors and Moelis agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Moelis and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for Moelis and (b) the actual

time and commitment required of Moelis and its professionals to perform its services under the Engagement Letter may vary substantially from week-to-week and month-to-month, creating "peak load" issues for Moelis.

31.    During the 90-day period prior to the Petition Date, according to the Debtors' books and records, Moelis received $196,408.63 from the Debtors for compensation and reimbursement of expenses. Moelis' external counsel received $30,566.92 in compensation and reimbursement of expenses during this same period. On January 15, 2016, Moelis was paid $101,905.08, which is included within the $196,408.63 above. $1,905.08 was applied as a reimbursement of pre-petition out-of-pocket expenses. $60,000.00 was applied to pre-petition fees incurred from January 15, 2016 until the Petition Date. The remaining $40,000.00 is being held by Moelis as a retainer that may be applied first against any unreimbursed pre-petition out-of-pocket expenses and second against any post-petition fees earned by Moelis and approved by the Court.

### Indemnification, Contribution and Reimbursement of Moelis

32.    As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution and reimbursement obligations, set forth in **Annex B** of the Engagement Letter (the "**Indemnification Agreement**"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless Moelis, its affiliates and their respective current and former directors, officers, partners, managers, agents, representatives, or employees (each, an "**Indemnified Person**," and collectively, the "**Indemnified Persons**") from and against Losses (as defined in Annex B of the Engagement Letter) incurred by an Indemnified Person in connection with Moelis' engagement, except for any Losses that are finally judicially determined

by a court of competent jurisdiction to have resulted primarily from the bad faith, willful misconduct or gross negligence of such Indemnified Person.

33.     I believe that the Indemnification Provisions are customary and reasonable terms of consideration for investment bankers such as Moelis in connection with in-court and out-of-court restructuring activities.     Moelis negotiated the Engagement Letter, including the Indemnification Provisions, with the Debtors in good faith and at arm's-length.

### Efforts to Avoid Duplication of Services

34.     Moelis believes that the services it provides to the Debtors will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11 Cases. Specifically, Moelis will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on:   February 26, 2016

New York, New York

/s/ Adam Keil
Adam Keil
Managing Director
Moelis & Company LLC

## ATTACHMENT 1

**Engagement Letter**

10877 WILSHIRE BOULEVARD
SUITE 800
LOS ANGELES, CALIFORNIA 90024

T 310 443 2300
F 310 443 8760

M O E L I S & C O M P A N Y

November 18, 2015

CONFIDENTIAL

SFX Entertainment Inc.
902 Broadway, 15th Floor
New York, NY 10010

Attention: Rich Rosenstein, Chief Financial Officer

Dear Rich:

We are pleased to confirm that SFX Entertainment, Inc. (together with its subsidiaries, the "Company" or "you") has engaged Moelis & Company LLC ("Moelis" or "we") to act as its exclusive financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each, as defined below, a "Transaction").

"Restructuring" means any restructuring, reorganization, rescheduling, repayment, refinancing or recapitalization of all or any material portion of the liabilities of the Company (or its subsidiaries), however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments.

"Sale Transaction" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries to one or more third parties (including creditors) (an "Acquirer"), (b) the merger or combination of the Company or any of its subsidiaries with an Acquirer (c) an Acquirer's acquisition of all or a significant portion of the assets, properties or business of the Company or any of its subsidiaries, or (d) an Acquirer's acquisition of any business unit, division or specified discrete assets that Moelis may be asked to sell.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

1.  As part of our engagement, we will if appropriate and requested:

MOELIS & COMPANY

(a)     assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

(b)     assist the Company in reviewing and analyzing a potential Restructuring, Sale Transaction or Capital Transaction (or any combination thereof);

(c)     assist the Company in negotiating a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof);

(d)     advise the Company on the terms of securities it offers in any potential Capital Transaction.

(e)     advise the Company on its preparation of information memorandum for, a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

(f)     assist the Company in contacting potential Acquirers or purchasers that we and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

(g)     provide such other financial advisory and investment banking services in connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services will be made on a reasonable best efforts basis. Moelis' obligations under this agreement are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2.   (a)  As compensation for our services hereunder, the Company agrees to pay us the following nonrefundable cash fees:

Monthly Fee

(i)     During the term of this agreement, a fee of $100,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement.   Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, we shall earn and be paid the Monthly Fee every month during the term of this agreement. Moelis has agreed to credit $200,000 in fees previously paid by the Company to Moelis against any Monthly Fees incurred hereunder.

Restructuring Fee

(ii)     At the closing of a Restructuring, a fee (the "Restructuring Fee") of 1.25% on the principal amount of liabilities of the Company included in the Restructuring.   The

MOELIS ' COMPANY

Company will pay a separate Restructuring Fee in respect of each Restructuring in the event that more than one Restructuring occurs.

Notwithstanding the foregoing, if the Company pursues a Restructuring pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, in lieu of the Restructuring Fee, we will earn and the Company will pay a fee of 1.25% of the principal amount of liabilities exchanged in any such 3(a)(9) Restructuring (the "Section 3(a)(9) Fee") on the date that definitive offer documents for the exchange offer(s) under Section 3(a)(9) are first distributed to creditors whose claims would be affected thereby. The Section 3(a)(9) Fee is not dependent on the results of the offer or any other contingency.

## Sale Transaction Fee

(iii)    At the closing of a Sale Transaction, a non-refundable cash fee (the "Sale Transaction Fee") of 1.25% of Transaction Value (as defined in *Annex A*).

For each Sale Transaction, the Company will pay a separate Sale Transaction Fee equal to (x) the Sale Transaction Fee based on the aggregate Transaction Value for any prior Sale Transactions and the current Sale Transaction less (B) any Sale Transaction Fees the Company previously paid for prior Sale Transactions.

## Capital Transaction Fee

(iv)    In the event that the Company pursues a Capital Transaction, a transaction fee (a "Capital Transaction Fee") consistent with market based fees (based on the amount of capital Raised (as defined below) in any such Capital Transaction) that will be mutually agreed upon (in a separate agreement containing customary terms) by the Company and Moelis in good faith.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs.    "Raised" includes the amount committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

If a Transaction involves both a Restructuring and a Sale Transaction or a Capital Transaction, both a Restructuring Fee and a Sale Transaction Fee or a Capital Transaction Fee shall be payable. In connection with a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) intended to be consummated in connection with a pre-packaged or pre-arranged Plan, (i) we will have earned 100% of the Restructuring Fee, Sale Transaction Fee and or Capital Transaction Fee prior to the commencement of the Bankruptcy Case, and (ii) the Company will pay the Restructuring Fee, Sale Transaction Fee and/or Capital Transaction Fee at the closing of the Restructuring, Sale Transaction or Capital Transaction (or any combination thereof). For purposes of this agreement, a "pre-arranged" Plan means any Plan with respect to which holders of at least one class of claims representing at least 66.67% in dollar amount of the claims in such class have provided written evidence (through a "lock-up agreement" or otherwise) of their intent to vote in favor of such Plan.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) or enters into an agreement or a Plan is filed regarding a Restructuring, Sale Transaction or Capital Transaction (or any

combination thereof) and a Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) is subsequently consummated, then the Company (or its bankruptcy estates) shall pay us the appropriate fee specified in Section 2(a) above immediately upon the closing of each such transaction. The "Tail Period" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof) consummated out-of-court, 12 months following the expiration or termination of this agreement or (ii) otherwise 18 months following the expiration or termination of this agreement. The Company agrees not to object to our request to the Bankruptcy Court and any appellate court to allow such fees.

(b) Whether or not the Company consummates a Restructuring, Sale Transaction or Capital Transaction, the Company will reimburse us for all of our reasonable out-of-pocket expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of our legal counsel. In connection therewith, the Company shall pay Moelis upon execution of this agreement and maintain thereafter a $25,000 expense advance, the unused portion of which Moelis shall return to the Company following termination of this agreement. We agree to provide the Company with reasonable support for our expenses at the Company's request or at the Bankruptcy Court's direction. Prior to commencing a Bankruptcy Case, the Company will reimburse all of our reasonable out-of-pocket expenses that we incurred up to such commencement.

(c) The Company's obligation to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

(d) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3.   If a Bankruptcy Case is commenced:

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all amounts then earned and payable pursuant to this agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy

MOELIS COMPANY

Rules. and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c) Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex B* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis. its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4. The Company will furnish us with all information concerning the Company and, to the extent available to the Company, the Acquirer as we reasonably deem appropriate (collectively, the "Information") to execute this engagement and will provide us with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise us promptly of any material event or change in the business, affairs, condition (financial or otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, we will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. We will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes us to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

We will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to us in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) we may provide nonpublic Information to prospective Transaction parties as

MOELIS . COMPANY

contemplated by this agreement. This paragraph shall terminate one year following the date of this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

5.    The Company will not disclose, summarize or refer to any of our advice publicly or to any third party without our prior written consent. In the event disclosure is required by subpoena or court order, the Company will provide us reasonable advance notice and permit us to comment on the form and content of the disclosure. We may, at our option and expense after announcement of any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive financial advisor and capital markets advisor to the Company in connection with any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof). If we request, the Company shall include a mutually acceptable reference to us in any public announcement of a Restructuring, Sale Transaction and Capital Transaction.

6.    We are an independent contractor with the contractual obligations described herein owing solely to the Company. We expressly disclaim any fiduciary duty. Since we will be acting on the Company's behalf, the Company and we agree to the indemnity and other provisions set forth in the attached *Annex B*. The Company's obligations set forth therein are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The Company hereby agrees to the acknowledgements and disclosures set forth in *Annex C*.

7.    Either the Company or we may terminate our engagement with or without cause, upon 15 days' prior written notice thereof to the other party and our engagement may be extended by mutual written agreement of the Company and us. In the event of any termination or expiration, (i) we will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) *Annex B*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8.    Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the Company's interests. Moelis and its affiliates have no duty to disclose to the Company, or use for the Company's benefit, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

-6-

MOELIS  COMPANY

9.  This agreement and any dispute or claim that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and us. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.  This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and us and its and our respective successors and permitted assigns. WE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

*(Signature page follows)*

MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Company.  Please sign and return the enclosed duplicate of this agreement.  The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name: ADAM KEIL

Title: MANAGING DIRECTOR

Agreed to as of the date first written above:

SFX ENTERTAINMENT INC.

By: _____

Name: Richard Rosenstein

Title: CFO

-8-

MOELIS COMPANY

## ANNEX A

"Transaction Value" shall equal the sum of (A) in the case of the sale, issuance or exchange of equity securities, the total consideration received or to be received for such securities (including amounts payable to holders of options, warrants and convertible securities ; (B) in the case of a sale or disposition of assets, the total consideration paid or received or to be paid or received for such assets; (C) (i) in the case of the sale, issuance or exchange of equity securities, the principal amount of all indebtedness for borrowed money as set forth on the most recent consolidated balance sheet (the "Balance Sheet") of the acquired company prior to the consummation of the Sale Transaction (less the amount of cash and cash equivalents up to but not exceeding the total amount of indebtedness set forth on the Balance Sheet) and (ii) without duplication, in the case of a sale or disposition of assets, the principal amount of all indebtedness for borrowed money as set forth on the Balance Sheet that the Acquirer assumes or acquires; and (D) the value implied in the Sale Transaction of any equity or assets retained by the security holders of the acquired company upon consummation of the Sale Transaction (such equity to be valued at the same price per share as paid in the Sale Transaction); and (E) any liabilities of the acquired company (other than indebtedness for borrowed money) on the Balance Sheet or that is assumed or acquired by the Acquirer

Transaction Value also shall include any (i) dividends or other distributions paid on the acquired company's securities, other than normal recurring cash dividends in amounts not materially greater than currently paid; and (ii) amounts the acquired company pays to repurchase any of its securities (excluding repurchases pursuant to and consistent with any current stock repurchase program of the acquired company).

The Company will pay any portion of the Sale Transaction Fee attributable to contingent payments constituting Transaction Value upon consummation of the Sale Transaction, based on the present value of such amounts, using a discount rate and probability of payment that the Company and we mutually agree; provided amounts paid into escrow shall be deemed paid at closing.

For purposes of calculating the Transaction Value, equity securities constituting a part of the consideration payable in the Sale Transaction that are traded on a national securities exchange shall be valued at the closing price thereof on the trading day immediately prior to the closing of the Sale Transaction. Such equity securities that are traded in an over-the-counter market shall be valued at prices on the trading day immediately prior to the closing of the Sale Transaction. Any debt or other securities or other non-cash consideration shall be valued as the Company and we may mutually agree.

MOELIS & COMPANY

## ANNEX B

In the event that Moelis & Company LLC or our affiliates or any of our or our affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling us or any of our affiliates) (collectively, "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein, the Company will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages or liabilities (collectively, "Losses") (A) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents (including the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the engagement) or (B) otherwise arising out of, related to or in connection with this agreement or our performance thereof, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability are for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by us, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company on the one hand and of us on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by us from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by us in connection with this agreement.

The Company will not without our prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing of its arrangements for the

MOELIS   COMPANY

Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and us.

MOELIS COMPANY

<u>ANNEX C</u>

**FINRA Suitability**. Pursuant to FINRA Rule 2111, the Company acknowledges that (i) the Company is capable of evaluating investment risks independently, both in general and with regard to transactions and investment strategies involving a security or securities and will exercise independent judgment in evaluating recommendations (if any) of Moelis and its associated persons, and (ii) the Company is an Institutional Account as defined in FINRA Rule 4512(c).

**USA Patriot Act**. Moelis is required to obtain, verify, and record information that identifies the Company in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.

**Business Continuity**. Moelis maintains a business continuity plan that is reviewed annually and is updated as necessary. Our disclosure statement is available on our website at www.moelis.com and a copy can be requested by contacting us at compliance@moelis.com.

399 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10022

# MOELIS & COMPANY

T  (212) 883 3800
F  (212) 880 4260

January 30, 2016

**CONFIDENTIAL**

*SFX Entertainment, Inc.*
*902 Broadway, 15th Floor*
*New York, NY 10010*

Ladies and Gentlemen:

Reference is made to that letter agreement, dated as of November 18, 2015 (the "Original Engagement"). Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Original Engagement.

For good and valuable consideration, Moelis and the Company have agreed to amend the terms of Section 2(a) of the Original Engagement as follows:

1. 50% of all Monthly Fees paid pursuant to Section 2(a)(i) of the Original Engagement following the Company's commencement of a Bankruptcy Case (the "Credit") shall be credited against the Restructuring Fee, 3(a)(9) Fee or Sale Transaction Fee, as applicable and as modified herein.

2. Each of the Restructuring Fee, the 3(a)(9) Fee and the Sale Transaction Fee are hereby amended to provide for a single fee in the fixed amount of $2,500,000, in lieu of the formulas used to calculate such fees in the Original Engagement. For the avoidance of doubt, the Company shall only be required to pay one $2,500,000 fee for any Restructuring, including a Restructuring pursuant to Section 3(a)(9) of the Securities Act of 1933, or Sale Transaction Fee, and such fee minus the Credit, shall be payable upon consummation of either a Sale Transaction or Restructuring.

3. If the Company commences a Bankruptcy Case, in addition to the Monthly Fees and the fees described in paragraph 2 herein, Moelis shall earn a Capital Transaction Fee of $1,000,000 upon the consummation by the Company of a debtor-in-possession or similar financing. Payment of such fee will be subject to the Bankruptcy Court's approval of Moelis' retention application and fee application or other orders of the Bankruptcy Court.

4. Other than as expressly amended hereby, the Original Engagement shall remain in full force and effect on the terms set forth therein.

Sincerely,

NEW YORK  |  BEIJING  |  BOSTON  |  CHICAGO  |  DUBAI  |  FRANKFURT  |  HONG KONG  |  HOUSTON  |  LONDON
LOS ANGELES  |  MELBOURNE  |  MUMBAI  |  PALO ALTO  |  PARIS  |  SÃO PAULO  |  SYDNEY  |  WASHINGTON DC

By their signatures below, the parties hereto agree to the amendments to the Original Engagement set forth above.

Moelis & Company, LLC

By: _____
Name: ADAM ICEIC
Title: MANAGING Director

Agreed to as of the date first written above.

SFX Entertainment, Inc.

By: _____
Name: _____
Title: CRO

3

399 PARK AVENUE
5TH FLOOR
NEW YORK, NEW YORK 10022

M O E L I S  &  C O M P A N Y

T  (212) 883 3800
F  (212) 880 4260

February 24, 2016

CONFIDENTIAL

SFX Entertainment, Inc.
902 Broadway, 15th Floor
New York, NY 10010

Ladies and Gentlemen:

Reference is made to that letter agreement, dated November 18, 2015 (as amended January 30, 2016), between SFX Entertainment, Inc. and Moelis & Company LLC (the "Amended Engagement"). Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Amended Engagement.

For good and valuable consideration, Moelis and the Company have agreed to amend the terms of the Amended Engagement as follows:

1. 50% of all Monthly Fees paid pursuant to Section 2(a)(i) of the Original Engagement following the Company's commencement of a Bankruptcy Case (the "Credit") shall be credited against the Restructuring Fee or Sale Transaction Fee, as applicable and as modified herein.

2. The Restructuring Fee is hereby amended to provide for a single fee in the fixed amount of $3,000,000 if such Restructuring occurs on or before June 30, 2016 and $2,750,000 if such Restructuring occurs after such date, in lieu of the formulas used to calculate such fees in the Amended Engagement. For the avoidance of doubt, the Company shall only be required to pay one Restructuring Fee of either $3,000,000 or $2,750,000 for any Restructuring and such Restructuring Fee (minus the Credit) shall be payable upon consummation of a Restructuring.

3. With respect to Sale Transactions, the parties agree as follows:

(a) The Company will pay Moelis a fee (the "Fame House Sale Transaction Fee") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Fame House in an amount equal to or greater than $8,000,000 (a "Fame House Qualifying Offer") or (y) if the Company completes a sale of Fame House (for any amount). Such Fame House Sale Transaction Fee will equal $250,000, plus, if the Company completes a sale of Fame House, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $8,000,000 up to and including $12,000,000, plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $12,000,000. The Fame House Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Fame House or (b) the determination by the Company to not pursue a sale after receiving a Fame House Qualifying Offer. For the avoidance of doubt, in such case that the Company receives a Fame House Qualifying Offer but determines not to pursue such offer, Moelis will receive a Fame House Sale Transaction Fee of $250,000.

MOELIS & COMPANY

(b) The Company will pay Moelis a fee (the "Beatport Sale Transaction Fee") if either (x) a bona fide bid, offer or agreement is made to purchase or acquire Beatport in an amount equal to or greater than $17,000,000 (a "Beatport Qualifying Offer") or (y) if the Company completes a sale of Beatport (for any amount). Such Beatport Sale Transaction Fee will equal $250,000, plus, if the Company completes a sale of Beatport, (i) 3% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $17,000,000 up to and including $25,000,000 plus (ii) 5% of the aggregate consideration, after giving effect to working capital adjustments, to the Company in such a sale in amounts in excess of $25,000,000. The Beatport Sale Transaction Fee will be payable upon the earlier of (a) the completion of the sale of Beatport or (b) the determination by the Company to not pursue a sale after receiving a Beatport Qualifying Offer. For the avoidance of doubt, in such case that the Company receives a Beatport Qualifying Offer but determines not to pursue such offer, Moelis will receive a Beatport Sale Transaction Fee of $250,000.

(c) If the Company sells or otherwise disposes (regardless of form) of any assets other than Fame House or Beatport (an "Asset Transaction"), the Company will pay Moelis a fee for any such transaction equal to 2.5% of Transaction Value, after giving effect to working capital adjustments (the "Asset Transaction Fee"). The Asset Transaction Fee will be payable upon the closing of any such Asset Transaction.

If, at any time prior to the end of the Tail Period, the Company receives a Fame House Qualifying Offer, receives a Beatport Qualifying Offer, completes a sale of Beatport and/or completes a sale of Fame House, the Company (or its bankruptcy estates) shall pay us the Fame House Sale Transaction Fee and/or the Beatport Sale Transaction Fee, as applicable, as set forth above. If, at any time prior to the end of the Tail Period, the Company enters into an agreement for an Asset Transaction or the Company consummates an Asset Transaction, the Company will pay Moelis the Asset Transaction Fee(s) as set forth above.

3. The Capital Transaction Fee is hereby deleted. Moelis shall not be required to provide any services relating to a Capital Transaction under the Amended Engagement.

4. Other than as expressly amended hereby, the Amended Engagement shall remain in full force and effect on the terms set forth therein.

Sincerely,

MOELIS & COMPANY

By their signatures below, the parties hereto agree to the amendments to the Amended
Engagement set forth above.

MOELIS & COMPANY LLC

By: _____

Name: Adam Keil

Title: Managing Director

Agreed to as of the date first written above:

SFX ENTERTAINMENT INC.

By: /s/ Michael Katzenstein (RW)

Name: Michael Katzenstein

Title: CRO

# ATTACHMENT 2

## List of Potentially Interested Parties

**Banks**
Bank Of America
Citi Private Bank Deutsche
Bank
Deutsche Bank Trust Co.
Americas
First Hawaiian Bank
First National Community
Bank
JPMC
Royal Bank of Canada

**Certain Contract Counter-Parties**
AB Inbev AMBEV
American Express*
Anheuser-Busch Inbev N.V S.A
Bacardi U.S.A. Inc.
Clear Channel
Diageo Americas, Inc.
Digidollars, LLC (DD) Eventbrite, Inc
Google
Heineken NL
iHeart Media
Live Entertainment, Inc ( Buchanan's Event
Centre) MasterCard
Microsoft Miller
Coors LLC
Moet Hennessy USA, Inc., MHUSA
Red Bull North America, Inc
Reed Smith
Sillerman Investments Snapchat,Inc.
Steptoe & Johnson*
Stroock & Stroock & Lavan LLP
T-Mobile USA, Inc.
Twitter Co-Sales
Uber Technologies Inc.
V2 Strategic Advisors, LLC
VER
Viagogo AG
Viggle Inc.
WME Entertainment YouTube
Zipcar

**Debtholders**
Allianz Global Investors U.S., LLC
Barclays Bank PLC
Castle Creek Arbitrage, LLC
Catalyst Fund Limited Partnership V
GoldenTree 2004 Trust
GoldenTree Asset Management, L.P.

GoldenTree Credit Opportunities, L.P.
GoldenTree Insurance Fund Series Interests of the Sali
Multi-Series Fund, L.P.
GT NM, L.P.
Guggenheim Investment Management LLC
Kildonan Castle Asset Management, L.P.
Midocean Credit Partners
Oaktree Capital Management, LLC
Octagon Credit Investors, LLC
Pine River Capital Management, LLC
Pioneer Investment Management, Inc.
Redwood Capital Management, LLC
Regiment Capital Advisors, LLC
Roystone Capital Management, L.P.
San Bernardino County Employees Retirement
Association
T. Rowe Price Associates, Inc.
White Mountains Advisors LLC
Catalyst Media Coöperatief U.A.
Knighthead Capital Management, LLC

**Debtors and Non-Debtor Affiliates**
430R Acquisition LLC
A Day At The Park B.V.
Air Events B.V.
Air Festival Holding B.V.
ALDA Events B.V.
ALDA Holding B.V.
AMF B.V.
Amsterdam Music Festival B.V.
Amsterdam Open Air B.V.
Atmozfears B.V.
B2S B.V.
B2S Holding B.V.
B2S Indoor B.V.
B2S Licenties B.V.
B2S Management B.V.
B2S Real Estate B.V.
Backbone Europe B.V.
Backbone International B.V.
Backbone North America Inc.
Bass Productions BVBA
Beatport Europe B.V.
Beatport LLC
Beatport S.à.r.l.
Better World – Comunicação,
Publicidade e Entretenimento
S.A.
Better World SL, Sociedad
Unipersonal

Brok Décor B.V.
Core Production B.V.
Core Productions LLC
Decibel Outdoor B.V.
Dominator Festival B.V.
DTW Holding B.V.
DZIV B.V.
Electronic Family B.V.
Eventions Rigging B.V.
EZ Festivals, LLC*
Flavorus, Inc.
HBS Produções Artísticas e Participações Ltda.
Headliner Entertainment B.V.
Hudson Project LLC
I.D. & T. Events B.V.
ID&Q Licenties, B.V.
ID&T Australia PTY ID&T
Brasil Eventos Ltda
ID&T BVBA*
ID&T Canada Unlimited Liability Company
ID&T Club B.V.
ID&T Design B.V.
ID&T eCommerce B.V.
ID&T Enterprise B.V.
ID&T Holding B.V.
ID&T International Holding B.V.
ID&T Management B.V.
ID&T Merchandise B.V.
ID&T Participations Holding B.V.
ID&T Producoes de Eventos LTDA.
ID&T Trademark B.V.
ID&T Trance Energy B.V.
ID&T Travel B.V.
ID&T/SFX Mysteryland LLC
ID&T/SFX North America LLC
ID&T/SFX Q-Dance LLC
ID&T/SFX Sensation LLC
ID&T/SFX TomorrowWorld LLC
IDQK Group PTY
I-Motion GmbH Events & Communication
Kinetic Art Winches B.V.
Kingsday Festival B.V.
Kingsland B.V.
LETMA Acquisition LLC
Made Event, LLC*
Michigan JJ Holdings LLC
Monumental Productions B.V.
Mysteryland Australia PTY
Mysteryland Holding B.V.
Mysteryland International B.V.
Mysteryland Netherlands B.V.
Nachtlab B.V.*
Olivier Weiter B.V.
One of Us International B.V.
Paylogic Deutschland GmbH
Paylogic Event Services B.V.

Paylogic Holding B.V.
Paylogic Nederland B.V.
Platinum Agency B.V.
Q Artist Management B.V.
Q Big Events B.V.
Q Outdoor Events B.V.
Q Small Events B.V.
Q-Dance Australia PTY
Q-dance B.V.
Q-Dance Licenties B.V.
Q-dance Management B.V.
Q-Dance Partners B.V.
Q-Dance Travel B.V.
Q-International B.V.
Q-Licenties VOF Rock City S.A.
Rock in Rio Madrid S.A.
Rock Official Comércio de Roupas Ltda.
Rock World S.A.
School of House B.V.
Sensation Australia PTY
Sensation Brazil B.V.
Sensation Holding B.V.
Sensation International B.V.
Sensation Netherlands B.V.
Sensation North America B.V.
SF/AB Events ULC
SFX AB Live Event Spain,
S.L. SFX Acquisition LLC
SFX Brazil LLC
SFX Canada. Inc.
SFX Development LLC
SFX EDM Holdings Corporation
SFX Entertainment International II, Inc.
SFX Entertainment International, Inc.
SFX Entertainment UK Limited
SFX Entertainment, Inc.
SFX Entretenimento do Brasil Participações Ltda
SFX Europe B.V.
SFX Europe Management B.V.
SFX Intermediate Holdco II LLC
SFX Managing Member Inc.
SFX Marketing LLC
SFX Platform & Sponsorship LLC
SFX Technology Services, Inc.
SFX/AB Live Event Canada, Inc.
SFX/AB Live Event Company UK Limited
SFX/AB Live Event LLC
SFX/AB Live Event Mexico S. de R.L. de C.V.
SFX/AB Live Intermediate Holdco LLC
SFX-94 LLC
SFX-Disco Intermediate Holdco LLC
SFX-Disco Operating LLC
SFXE Intermediary Holdings B.V.
SFXE International Holdings C.V.
SFXE IP LLC
SFXE Netherlands Holdings B.V.

SFXE Netherlands Holdings Coöperatief U.A.
SFXE-Disco México, S. de R.L. de C.V.
SFX-EMC, Inc.
SFX-Hudson LLC
SFX-IDT N.A. Holding II LLC
SFX-IDT N.A. Holding LLC
SFX-LIC Operating LLC
SFX-Nightlife Operating LLC
SFX-Perryscope LLC
SFX-React Operating LLC
SFX-Totem Operating Pty Ltd
SmartDIGITAL Holdings, Inc.
Sounds to Sample Ltd.
Spring Awakening, LLC
Ttichting Paylogic Foundation
Summer Set Music and Camping Festival LLC
Support Group B.V.
Support Group Holding B.V.
The Good Guyz B.V.
The Qontient BVBA
Thunderdome B.V.
Twisted Heads B.V.
Twisted Heads Events B.V.
Virtue-projects B.V.
Welcome to the Future B.V.
XperienceLAB B.V.

### Director and Officers
Brian Gordon
David Grutman
Dr. Andrew N. Bazos
Greg Consiglio
Howard Tytel
Jacob Smid
Jeff Callahan
Jeroen Jansen
Jonathan Seiden
Larry Acciari
Lucas King
Melissa Bortnick
Nick Karounos
Robert Damon
Robert F.X. Sillerman
Ryan Santomauro
Sheldon Finkel
Todd Sims

### Directors as of 1/2016
Frank E. Barnes III
John Miller
Michael Meyer
Mitchell Slater
Pasquale Manocchia
Timothy H. Bishop

### Equipment Lease
CoActiv Capital Partners Inc.
Dell Financial Services LLLC
Great America Leasing Corporation
Illinois Paper Company
Iron Mountain Secure Shredding, Inc.
One Source Water

### Insurance
Ace American Insurance Company
Allianz
Allied World Assurance Company (U.S.), Inc.
Aon Premium Finance, LLC
Aon/ Alberg G. Ruben Insurance Services
Atlantic Specialty Insurance Co
Federal Insurance Company (Chubb)
Hiscox Syndicates
Illinois National Insurance Company
Illinois Union Insurance Company
Indian Harbor Insurance Company
Ironshore Specialty Insurance Company
Lexington Insurance Company
Lloyd's of London
National Union Fire Insurance Co. of Pittsburgh
Navigators Insurance Company
New York Marine & General
Stockbridge Risk Management, Inc.
Through Trinet Group Inc. (a payroll provider)
XL Insurance America, Inc.

### Landlord
123-29 Chestnut Street Associates
Alan C. Brody and Sherna Brody d/b/a 1000 Building LLC"
May Street Investments, LLC
Optima International
Rosenthal Rosenthal Rasco Kaplan, LLC
Sislin Family Trust
TAXI Building III, LLC

### Litigation
Abbey Spanier, LLP
Andrews Kurth LLP
Cooney & Conway
DiConza Traurig Kadish LLP
Digitalwaves Chicago 1 LLC
Folds & Walker, LLC
Greenberg Traurig, LLP
Hueston Hennigan LLP*
Purple Productions, LLC
RE Stockholders of SFX Entertainment
RE Unknown
RE Unknown - Potential Class Action
RE viagogo AG
The Lynd Company
The Quinlan Law Firm
Whiteman Osterman & Hanna LLP

Whyte Hirschboeck Dudek S.C.

**OCP Party**
Adelman Matz P.C.
BDO USA, LLP*
Blake, Cassels & Graydon
Cassel Salpeter
Cohn Resnisk
Corcoran & Johnston – Government Relations
Cornick Garber
Cullen & Dykman
Deloitte
EisnerAmper LLP
Epiq eDiscovery Solutions (Epiq Systems)
Ernst & Young
Goldman & Schapiro, P.A.
Gonzalez Strategic Affairs
Greenspoon Marder
Holland & Hart LLP
Judge Gary Feess
Kaye Scholer
King & Wood Mallesons
Law Office of Jeffrey B. Gandel
Loyens & Loeff N.V.
Marcum LLP
Michael Kaufman
Mijares Angoita Cortes Y Fuentes
Novack and Macey LLP
Paul Hastings*
Richards Layton Finger
Southern Strategy Group of Georgia
Veirano Advogados
Wilson Elser

**Officers as of 1/2016**
Donnie Estopinal
Eric Fuller
Jason Barr
Jim Murphy
Joroen Jansen
Michael Fiebach
Michael Katzenstein
Michele Servais
Richard Rosenstein
Ritty van Straalen
Rutger Jansen
Sebastian Solano

**Related Parties**
CrowdRx*
DigiDollars
Donnie Estopinal
MJX, LLC
Nightlife Holdings*
Sports & Entertainment Physicians
Spotify

Timothy J. Crowhurst
Viggle, Inc.
White Oak Securities LLC

**Certain Independent Contractors**
Facebook*
Pandora

**Shareholders**
ARTISTS ALLIANCE
DANCING DRAGON B V
DANIEL MILLER
DAVID GRUTMAN INC
DEYSON PTY LTD TR
ESFX LLC
FIERMAN EDUARD VAN DUIJN
FRANK RONALD GROET
JOHN GLUSZAK
JOSEPH N JAFFONI
KEVIN D MORRISON
LUIZ EURICO FLEITLICH KLOTZ
M&M MANAGEMENT BVBA
MATTHEW JOHN RABINOVITCH
MIRJAM GROET
MONUMENTAL PRODUCTIONS BEHEER BV
NORMAN J PERRY
ODDWORLD BEHEER B V
PAUL RICHARD SMITH
ROBERT A ZIADE ROYTOR & CO
SILLERMAN INVESTMENT COMPANY III LLC
SILVIO ROBERTO CONCHON FILHO
SKY CONCEPTS & EVENTS B V
TIMOTHY M MEANEY
TRISTIAN JAMES DORIAN

**Shipper and Warehouseman**
Artist Endeavor
Beyond Logistics Services, LLC
BLS
Brockman Trucking
City Rent A Truck
Dania Distribution Center, Condo Unit #108
EFM Management
Emjay Sales and Leasing Inc.
Endicia Postage
Enterprise Holdings, Inc.
Fed Ex, USPS, UPS
Freight House
Mini U Storage
Music Today
Ozark Mountain Leasing
Portable on Demand Storage
Rock-It Cargo USA LLC (Tait Rentals)
Support Drivers S.L.

**Taxing Authority**
Australian Taxation Office

City of Boulder - Finance Department
City of Miami Beach
City Of North Charleston
City Of Tuscon
Commissioner of Revenue Services
Commonwealth of Massachusetts
Comune Dir Rimini
Connecticut Dept. of Revenue
Default Tax Agency MX
Department of Finance & Administration Director of
Revenue
District of Columbia Sales and Use Tax
Employment Security Department
Indiana Deptartment of Revenue
Michagen Dept of Treasury
Michigan Deptartment of Treasury
Missouri Deptartment of Revenue
N.Y.S. Workers Comp Board
Nebraska Department of Revenue
Nevada Department of Revenue
New York State Dept. of Taxation & Finance
New York State Sales Tax
North Caroline Department of Revenue
Ohio Treasurer
Pennsylvania Dept. of Revenue
Philadelphia Dept. of Revenue
Retailers Sales Tax
RI Division of Taxation
SC Department of Revenue
State of Board of Equalization
State of Florida Deptartment of Revenue
Tax Agency ES
Tax Agency MA
Treasurer-State of Iowa
Washington Department of Revenue

**Utility Vendor**
279 American Express TRS Company Inc.

FPL
LA DWP
Lightower Fiber Networks
Qwest Business Services
Shumate Mechanical LLC
Telstra Corporation Ltd

**Uncategorized (Top 40 Unsecured)**
A2 Live*
AM Only*
Artists Alliance Australasia Pty Ltd*
Beggars Canyon Investments*
Berco Beute*
Deyson Pty Ltd*
Epic Tents*
Fontainebleau Florida Hotel*
Front Gate Ticketing Solutions LLC*
GAIA*
Galmiche Entertainment *
Hoeksema Holdings B.V.*
Jan Willem van der Meer*
Joe Rascoff*
Lewis Holding B.V.*
Mabey, Inc*
Mountain B.V.*
NetSuite*
Peter John Raftopoulos*
Postlight LLC*
Prisa Mexico*
PRS For Music (formerly MCPS)*
React Presents; ClubTix, Inc.*
Sellmark International Pty Ltd*
Sunbelt Rentals*
VistaJet US*
Wesselink Holdings B.V.*
Winston Farm Limited Partnership*

*Indicates the party is in group of top 40 unsecured creditors who are not insiders*

## ATTACHMENT 3

### Relationships With Potentially Interested Parties

- Moelis (and its financial advisory affiliates) has been engaged within the last two years or is currently engaged by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these Chapter 11 Cases (including where the Potential Party in Interest was only a member of an official or an ad hoc creditor committee or an equity committee): Ace American Insurance Company, Bank of America, Barclays Bank PLC, Citi Private Bank, Clear Channel, Dell Financial Services LLC, Deutsche Bank, Federal Insurance Company (Chubb), GoldenTree Asset Management, Heineken NL, iHeart Media, JPMC, Knighthead Capital Management, LLC, Midocean Credit Partners, Moet Hennessey USA, Inc., Oaktree Capital Management LP, Pine River Capital Management, LLC, Redwood Capital Management, LLC, and Regiment Capital Advisors, LLC.