## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.* [1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  March 21, 2016 at 2:00 p.m.**<br>**Objection Deadline:  March 14, 2016 at 4:00 p.m.** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER
### (A) APPROVING BID PROCEDURES RELATING TO THE SALE OF
### ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF BEATPORT, LLC,
### (B) APPROVING NOTICE PROCEDURES, AND (C) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")
hereby move the Court (the "**Motion**"), pursuant to sections 105(a), 363 and 365 of title 11 of
the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004,
6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and
Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United
States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order,
substantially in the form annexed hereto as **Exhibit A** (the "**Bid Procedures Order**"):
(a) approving the bid procedures in the form annexed as **Exhibit 1** to the Bid Procedures Order

---

[1]   The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax
identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions
LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX
North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX
TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings
LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development
LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment
International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954);
SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX
Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate
Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC
(5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC
(0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC
(2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584);
Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands
Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

(as amended or modified, the "**Bid Procedures**") to be implemented in connection with a sale (the "**Sale**") of all or substantially all of the assets of Beatport, LLC (the "**Beatport Assets**"); (b) approving the notice procedures (the "**Notice Procedures**") to advise parties in interest and Potential Bidders (as defined below) of the Bid Procedures, the auction of the Beatport Assets (the "**Auction**"), and the sale hearing for the Beatport Assets (the "**Sale Hearing**"); and (c) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

## Status of the Case

1.      On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On February 12, 2016, an official committee of unsecured creditors (the "**Committee**") was formed in these Chapter 11 Cases.  No request has been made for the appointment of a trustee or examiner.

## Jurisdiction, Venue and Statutory Predicates

4.      The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rules 2002-1 and 6004-1.

## Background

### A. General Background

7.     The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture.   The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry, specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad.   Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

8.     Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad.   In addition, the Debtors manage large, event-driven nightclubs that serve as venues for performances by key electronic music talent. The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

9.     The Debtors and their 120 non-Debtor subsidiaries operate a business that spans the globe, with operations in over 34 countries.   The Debtors constitute substantially all of the domestic companies comprising SFX's business as well as select foreign subsidiaries.   The Debtors have more than 325 employees and, together with the non-Debtor entities, have more than 625 employees.

10.     The Debtors' capital structure is highly levered.   In 2015, the Debtors began to face significant liquidity issues.   While the Debtors attempted to enhance liquidity through a

September 2015 financing and potential sales of non-strategic assets, the Debtors concluded that they needed to restructure their liabilities through a bankruptcy process.

11.     Prior to the filing of these Chapter 11 Cases, the Debtors entered into a restructuring support agreement with holders of over 70% of their outstanding secured debt.  The restructuring support agreement provides for a comprehensive restructuring of the Debtors' balance sheet.  As part of that transaction, certain of the holders of the secured debt also agreed to provide the Debtors with debtor-in-possession financing to allow for the Debtors to prosecute these Chapter 11 Cases.  The Debtors intend to use these Chapter 11 Cases to effect their balance sheet restructuring and implement operational improvements.

12.     A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") [Docket No. 13] filed on the Petition Date and incorporated herein by reference.

### B.  Acquisition of Beatport, LLC

13.     Beatport, LLC ("**Beatport**") was founded in 2004 as an online music store for DJs.  In connection with its acquisition and growth strategy, SFX purchased all of the membership interests in Beatport, pursuant to the Agreement and Plan of Merger, dated as of February 25, 2013, for consideration comprised of stock and cash.  In 2015, SFX added a streaming service component to Beatport, enhancing the online platform for EDM DJs, artists and fans to connect with each other and to purchase, share and stream music components, such as professional-quality audio files, coverage of EDM news and music charts, DJ sets and music clips.

**C. Sale of the Beatport Assets**

14.    After the acquisition, SFX made significant financial investments in Beatport.  While the Beatport Assets are valuable to the SFX enterprise, given SFX's current financial condition, SFX cannot afford to make additional investments in Beatport as may be needed in the future, and therefore, has decided to sell the Beatport Assets.

15.    In March of 2015, a special committee appointed by the Debtors' board of directors (the "**Special Committee**") retained Moelis & Company LLC ("**Moelis**") to review strategic alternatives, including to solicit indications of interest from potential acquirers for SFX as a whole or otherwise certain of its assets (the "**Special Committee Engagement**").  In connection with the engagement, Moelis performed the following services:  (i) prepared marketing materials; (ii) contacted potential buyers; (iii) assisted the Debtors with buyer due diligence; and (iv) reviewed indications of interest by potential bidders.  With respect to the Beatport Assets, during the engagement, Moelis was in contact with approximately 24 potential buyers, of which 18 executed non-disclosure agreements and performed due diligence, with 3 potential buyers submitting preliminary indications of interest.  This engagement concluded in mid-November 2015.

16.    Contemporaneously with the conclusion of Moelis's engagement with the Special Committee, the Debtors retained Moelis to provide investment banking services with respect to a potential restructuring and/or recapitalization of the Debtors.  As part of its engagement with the Debtors, Moelis provided extensive prepetition services, including, but not limited to, (i) assisting management in analyzing potential restructuring transactions; and (ii) facilitating extensive due diligence for interested parties.  Specifically with respect to the Beatport Assets, Moelis and Beatport have been in contact with approximately 18 potential buyers, including

certain potential buyers that expressed interest during the Special Committee Engagement. 5 new non-disclosure agreements were executed, and there has been 1 preliminary indication of interest.

17.    In connection with obtaining debtor-in-possession financing, the Debtors agreed to sell certain non-core assets, including, but not limited to, the Beatport Assets, through a sale under section 363 of the Bankruptcy Code.  Moelis has prepared a list of additional parties to contact with respect to the Beatport Assets.  The Debtors believe that Moelis's continued marketing efforts and the contemplated sale process through section 363 of the Bankruptcy Code will yield the maximum value for the Beatport Assets.

## Relief Requested

18.    By this Motion, the Debtors seek the entry of the Bid Procedures Order (a) approving the Bid Procedures; (b) approving the proposed Notice Procedures; and (c) granting related relief.[2]

### A.  The Bid Procedures

19.    The Debtors propose the Bid Procedures, which are incorporated herein by reference, in an attempt to maximize the realization of value of the Beatport Assets for the benefit of the Debtors' estates.  The Debtors are soliciting bids for the Beatport Assets based on the form of asset purchase agreement (the "**Purchase Agreement**") which the Debtors will provide to interested bidders and, if bids are received in conformance with the Bid Procedures,

---

[2]  Through the Motion, the Debtors are not currently seeking the approval of bid protections for any potential bidder, as the Debtors have not yet selected a potential bidder to serve as the "stalking horse" (a "**Stalking Horse Bidder**"). However, if the Debtors receive sufficient interest and potential bidders are interested in serving as the Stalking Horse Bidder, and the Debtors, in the exercise of their business judgment, determine that appointing a Stalking Horse Bidder is in the best interest of their estates, the Debtors may negotiate an appropriate asset purchase agreement with a potential bidder interested in serving as the Stalking Horse Bidder.  In the event the Debtors elect to negotiate an asset purchase agreement with a potential bidder to serve as the Stalking Horse Bidder, the Debtors will seek appropriate relief from the Court.

the Debtors will conduct the Auction to determine the highest and otherwise best bid for the

Beatport Assets.  Specifically, the Bid Procedures provide, in relevant part, as follows[3]:

    a.  <u>Non-Disclosure Agreements, Letters of Intent, Diligence and Qualified Bidders</u>

Any person or entity wishing to bid on the Beatport Assets (each a "**Potential Bidder**") must execute and deliver (unless previously delivered) to the Debtors a confidentiality and non-disclosure agreement (a "**Non-Disclosure Agreement**") in form and substance acceptable to the Debtors.  The Debtors will afford any Potential Bidder who executes and delivers such Non-Disclosure Agreement access to the Debtors' confidential electronic data room concerning the Beatport Assets.

All Potential Bidders must set forth in writing his/her/its, as applicable, intent to bid under the Bid Procedures (each such writing, a "**Letter of Intent**") and deliver such Letter of Intent to the Debtors by the Letter of Intent Deadline.  The Debtors will afford any Potential Bidder who delivers a Letter of Intent by the Letter of Intent Deadline such additional due diligence access or information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine to be reasonable and appropriate, including, without limitation, reasonable access, during normal business hours, to the Debtors' management, and access to any additional information regarding the Beatport Assets reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale.

Moelis will coordinate all due diligence access and requests for additional information from such Potential Bidders.  The Debtors shall not be obligated to furnish any due diligence information after the conclusion of the Auction.  Neither the Debtors nor their counsel or advisors are responsible for, or will bear liability with respect to, any information obtained by Potential Bidders in connection with due diligence.  Notwithstanding anything contained herein to the contrary, the Debtors, in their business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever to any party.

The Debtors shall provide the Required Lenders, the Requisite Noteholders, and the Committee, in each case, including their professionals, with periodic updates

---

[3]  This description of the Bid Procedures includes excerpts from the terms set forth in the Bid Procedures annexed hereto.  Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the Bid Procedures.  To the extent that this description differs in any way from the terms set forth in the Bid Procedures, the terms of the Bid Procedures shall control.

every two (2) business days as to which Potential Bidders have entered into Non-Disclosure Agreements.

A "Qualified Bidder" is a Potential Bidder that (a) delivers to counsel to the Debtors a Non-Disclosure Agreement, (b) delivers to counsel to the Debtors a Letter of Intent by the Letter of Intent Deadline, (c) demonstrates to the Debtors a reasonable certainty of the ability to complete the Sale in a timely manner (including the financial capability of the Potential Bidder to consummate the Sale for the Beatport Assets and the ability to receive the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (d) submits a Written Offer (as defined below) that is deemed a Qualified Bid as set forth below, *provided*, *however*, that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive one or more requirements for a Qualified Bidder.[4]   The consultation/consent rights of any party that participates in any bid or credit bid for the Beatport Assets shall be terminated unless and until such bid or credit bid, as applicable, is rejected; *provided* that any such party will have the same rights as any other Qualified Bidder and will retain any rights it has under existing orders regarding debtor-in-possession financing and/or use of cash collateral (to the extent applicable).  As promptly as practicable after a Potential Bidder delivers a Non-Disclosure Agreement and submits a Written Offer, and in all events not later than 12:00 p.m. (Eastern Time) two (2) days preceding the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall determine, and the Debtors shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.

b.   Requirements for a Qualified Bid

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to the Debtors, with a copy to counsel to the Debtors, Moelis, counsel to the DIP Lenders, counsel to the Consenting Noteholders, and counsel to the Committee, a written offer (each, a "**Written Offer**"), which is deemed to be a "Qualified Bid".  To be deemed a "Qualified Bid", a Written Offer must meet each of the requirements listed below:

(i)    Delivery:  Be delivered no later than 12:00 p.m. (Eastern Time) on April 28, 2016 (the "**Bid Deadline**").

---

[4]  Notwithstanding anything to the contrary herein, Wilmington Savings Fund Society, FSB (the "**DIP Agent**"), on behalf of the DIP Lenders, and U.S. Bank National Association (the "**Second Lien Agent**"), on behalf of holders of 9.625% Senior Secured Notes Due 2019 issued by the Debtors (the "**Second Lien Noteholders**"), are hereby determined to be Qualified Bidders for all purposes at the Auction, and shall be permitted, but not obligated, to credit bid to the full extent permitted under section 363(k) of the Bankruptcy Code.

(ii)     Executed Agreement:  Be accompanied by (i) a clean and duly executed and binding Purchase Agreement (together with the exhibits and schedules thereto, a "**Modified Purchase Agreement**"), (ii) a marked Modified Purchase Agreement reflecting any variations from the Purchase Agreement, and (iii) a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such Written Offer, to the extent such list is not included in the Modified Purchase Agreement.

(iii)    Compliance with the Restrictions on the Transfer of Personally Identifiable Information:  Contain a statement that the Potential Bidder will comply with Beatport's customer data privacy policy, restricting the transfer of personally identifiable information of its customers, as more fully set forth in the Purchase Agreement.

(iv)    Proof of Financial Ability to Perform:  Contain evidence of financing, access to funds or such other financial and other information that will reasonably allow the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, to make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, which evidence is satisfactory to the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors.

(v)     Identification of Parties to Participate:  To the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, (i) fully disclose the identity of each entity or person that will be bidding for the Beatport Assets or otherwise participating in connection with such bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Beatport Assets, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval in connection with the consummation of any Sale.

(vi)    Irrevocable:  State that the Written Offer is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is

deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Beatport Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) thirty (30) days after the date of the Auction (the "**Backup Bid Expiration Date**").

(vii)    No Break-Up Fee or Expense Reimbursement:  The Written Offer must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

(viii)   Contingencies:   The Written Offer must not contain any due diligence or financing contingencies.

(ix)    Authorization to Consummate Sale:   Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement to the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.

(x)    Purchase Price:  Provide that any cash portion of the purchase price shall be payable in U.S. dollars and will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtors, subject to the consent of the Required Lenders[5] and the Requisite Noteholders,[6] and in consultation with the Committee.

(xi)    Good Faith Deposit:  Provide a good faith deposit (the "**Good Faith Deposit**") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions annexed hereto as **Exhibit A**, or such other form as is acceptable to the Debtors in an amount equal to the greater of $2 million or at least 10% of the purchase price set forth in the Written Offer.

(xii)   Anticipated Timeline:   Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (xiv) below.

---

[5] "**Required Lenders**" shall have the meaning provided for such term in the DIP Loan Agreement.

[6] "**Requisite Noteholders**" shall have the meaning set forth in the Restructuring Support Agreement.

(xiii) <u>Agreement with Bid Procedures, Provision of Additional Information and Submission to Bankruptcy Court Jurisdiction</u>: Include a written acknowledgement by such Potential Bidder that it (i) agrees to the terms of the Bid Procedures; (ii) agrees to provide such other information as may be reasonably requested in writing by the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to the Auction; and (iii) confirms that the Potential Bidder submits to the jurisdiction of the Bankruptcy Court.

(xiv) <u>Closing Date</u>:  Provide for a closing date (the "**Closing Date**") which shall be no later than 15 days after the entry of an order approving the Sale (the "**Sale Order**") or such other date as is acceptable to the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

The Debtors will promptly (but, in any case, within one (1) calendar day) deliver, after receipt thereof, copies of all Written Offers to the DIP Lenders, the Consenting Noteholders and the Committee, and, in each case, their professionals.

Between the Bid Deadline and the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may (i) negotiate or seek clarification of any Qualified Bid from a Qualified Bidder, (ii) request information from the Qualified Bidder, (iii) engage in discussions with the Qualified Bidder, or (iv) take such other actions contemplated under these Bid Procedures.  Without the consent of the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid.  All changes to the form of Purchase Agreement reflected in the Modified Purchase Agreement will be evaluated by the Debtors and must be acceptable to the Debtors, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.  Any Good Faith Deposit accompanying a Written Offer that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine not to be a Qualified Bid shall be returned promptly following such determination.  For the avoidance of doubt, the DIP Agent, on behalf of the DIP Lenders, and the Second Lien Agent, on behalf of the Second Lien Noteholders, shall not need to comply with any of the above requirements for becoming a Qualified Bidder and participating in the Auction and are hereby determined to be Qualified Bidders.

c.  Bid Deadline

All Qualified Bids must be received by each of the following parties prior to the Bid Deadline:  (i) the Debtors, SFX Entertainment, Inc., 902 Broadway, 15th

Floor, New York, NY 10010, Attn: Mike Katzenstein, e-mail: Mike.Katzenstein@fticonsulting.com; (ii) the Debtors' counsel, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166, Attn: Maria J. DiConza, fax: (212) 801-6400, e-mail: diconzam@gtlaw.com; (iii) the Debtors' investment banker, Moelis & Company LLC, 399 Park Avenue, 5th Floor, New York, NY 10020, Attn: Adam Keil/Ryan Kitchen, Fax: (212) 880-4260, e-mail: adam.keil@moelis.com/ryan.kitchen@moelis.com; (iv) counsel to the DIP Lenders and Consenting Noteholders: Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Jonathan D. Canfield/Joshua M. Siegel, Fax: (212) 806-6006, e-mail: jcanfield@stroock.com /jsiegel@stroock.com; and (v) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111, Attn: Joshua M. Fried, Fax: (415) 263-7010, e-mail: jfried@pszjlaw.com.

d. <u>Determination of Qualified Bidders</u>

The Debtors shall, by no later than 12:00 p.m. (Eastern Time) two (2) days prior to the Auction, (i) determine, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, whether a Potential Bidder is a Qualified Bidder, and (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder.

e. <u>"As Is, Where Is"</u>

Except as otherwise provided in the Final Purchase Agreement (as defined below), the Sale of the Beatport Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates except to the extent set forth in the Final Purchase Agreement as approved by the Bankruptcy Court. Except as otherwise provided in the Final Purchase Agreement, all of the Debtors' right, title and interest in and to the Beatport Assets subject thereto shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "**Interests**") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Beatport Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Beatport Assets prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Beatport Assets in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Beatport Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder(s) and the Backup Bidder(s), the terms of the Sale(s) as set forth in the final form of the applicable Modified Purchase

Agreement(s) (the "**Final Purchase Agreement**") which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtors, on the other hand, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

f.  Auction

If the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected two or more Qualified Bidders, the Debtors shall conduct an Auction to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reasonably deem relevant and may include, among other things, the following: (i) the amount and nature of the consideration; (ii) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder in its respective Modified Purchase Agreement; (iii) the extent to which such modifications are likely to delay closing of the Sale of the Beatport Assets and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; and (v) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction shall commence at 11:00 a.m. (Eastern Time) on May 3, 2016, at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, or such other place as determined by the Debtors, and continue thereafter until completed. The Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, reserve the right to cancel or postpone the Auction. The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reserve the right to not proceed with any Sale.

Except as otherwise permitted in the Debtors' discretion, only the Debtors, the DIP Lenders, the Consenting Noteholders, the Committee, and Qualified Bidders and, in each case, their respective professionals shall be entitled to attend the Auction. Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i)     Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(ii)    The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any order

of the Bankruptcy Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest or otherwise best offer for the Beatport Assets.

(iii)    The Debtors will arrange for the actual bidding at the Auction to be transcribed.    Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

(iv)    Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that it has not engaged in any collusion with the Debtors or any other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Beatport Assets.

(v)    Prior to the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall identify the highest and best of the Qualified Bids received (the "**Opening Qualified Bid**"). Subsequent bidding will continue in minimum increments valued at not less than $250,000 in cash and/or noncash consideration, or in such amounts as to be determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to, and announced at, the Auction.    With respect to any subsequent bids, any noncash consideration shall be subject to the consent of the Required Lenders and the Requisite Noteholders.

(vi)    All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest or best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest or best bid.

(vii)    In the Debtors' discretion, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction, *provided*, *however*, that any such modifications to the Purchase Agreement or Modified Purchase Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors as determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.

(viii)    Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall, as soon as practicable, (i) identify and determine in their business judgment the highest and/or best Qualified

Bid for the Beatport Assets (a "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, and (iii) require the Successful Bidder to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing.

(ix)    In addition, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will determine which Qualified Bid, if any, is the next highest and/or best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale.  A Qualified Bidder that submitted a Qualified Bid that is designated a Backup Bid is a "**Backup Bidder**".  Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

(x)    Following the conclusion of the Auction, the Debtors may resume bidding on such procedures determined by the Debtors in their discretion, and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, for the sale of any Beatport Assets not sold to the Successful Bidder.

g.  Sole Qualified Bidder

If, by the Bid Deadline, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected only one Qualified Bidder for the Beatport Assets, then the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, shall not hold an Auction and instead, shall, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine whether to request at the Sale Hearing that the Bankruptcy Court approve the Qualified Bid from the sole Qualified Bidder.  Notwithstanding anything herein to the contrary, nothing herein shall obligate the Debtors to consummate or pursue the Sale of the Beatport Assets.

h.  Sale Hearing

The Sale Hearing will be held before the Honorable Mary F. Walrath on May 5, 2016 at 12:00 p.m. (Eastern Time) at the United States Bankruptcy Court for the District of Delaware, located in Courtroom 4, Fifth Floor, 824 Market Street, Wilmington, DE 19801.  At the Sale Hearing, the Debtors shall present the results of the Auction, if one is held, to the Bankruptcy Court and may seek approval of the Successful Bid and any Backup Bid.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Beatport Assets to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the

Successful Bidder and the Debtors shall be authorized to affect such Sale without further order of the Bankruptcy Court.  The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

i.   <u>Return of Good Faith Deposits</u>

Good Faith Deposits of all Qualified Bidders shall be held in a non-interest bearing escrow account.  Except for those of the Successful Bidder and Backup Bidder(s), the Debtors shall promptly return the Good Faith Deposits of (i) all Qualified Bidders after the Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

**B.  Notice Procedures**

20.   The Debtors request that the Court approve the following Notice Procedures in connection with providing all parties in interest and Potential Bidders with notice of the Bid Procedures, the Auction Date and the Sale Hearing as follows:

a.   On or before three (3) business days after entry of the Bid Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed as **<u>Exhibit 2</u>** to the Bid Procedures Order (the "**Notice of Bid Procedures, Auction Date and Sale Hearing**"); and (b) a copy of the Bid Procedures Order to be sent by first-class mail postage prepaid, to the following:  (i) the Office of the United States Trustee; (ii) counsel to the DIP Lenders and the Consenting Noteholders; (iii) counsel to the Committee; (iv) all taxing authorities in the states where the Debtors are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Debtors or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Beatport Assets, or to have any known interest in the relief requested by the Motion; (v) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vi) all persons known or reasonably believed by the Debtors to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Beatport Assets; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Beatport Assets within the last four (4) months; (viii) the United States Attorney's office; (ix) Attorneys General in the states where the Debtors are located; (x) any applicable state and local environmental agencies; and (xi) all parties to any litigation involving the Debtors.

b.   On or before three (3) business days after entry of the Bid Procedures Order, the Debtors will serve the Notice of Bid Procedures, Auction Date and Sale Hearing on all known creditors of the Debtors.

     c.  On or before seven (7) days after entry of the Bid Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing once in one or more regional and/or national publications that the Debtors deem appropriate.

21.    In addition to the foregoing, electronic notification of the Motion, the Bid Procedures Order and the Notice of Bid Procedures, Auction Date and Sale Hearing will be posted on:  (i) the main case docket on the Bankruptcy Court's electronic case filing (ECF) website; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Kurzman Carson Consultants, LLC, located at www.kccllc.net/sfx.

## Basis for Relief Requested

### A.  The Proposed Bid Procedures are Reasonable and Appropriate

22.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors.  *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010), *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. 2002); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

23.    In determining the propriety of the sale of assets by a chapter 11 debtor prior to confirmation of a plan of reorganization, the Second and Sixth Circuits, as well as other courts, have applied, among other factors required by section 363 of the Bankruptcy Code, a "sound business purpose" test.  *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070-71; *see also Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).  In *In re Solar Mfg. Corp.*, the Third Circuit, pursuant to section 116(3) of the Bankruptcy Act of 1938 (the predecessor to section 363 of the Bankruptcy Code), applied the stricter standards of "emergency" or "perishability" on a proposed pre-confirmation sale of a chapter 11 debtor's assets.  176 F.2d 493, 494-95 (3d Cir. 1949).  Although the Third Circuit has not specifically addressed the application of the "sound business purpose" test, in *In re Abbots Dairies of Pa., Inc.*, 788 F.2d 143, 143 (3d Cir. 1986), where the Third Circuit examined a pre-confirmation sale of assets of chapter 11 debtors, the Court did not mention the *Solar* decision, leading "other courts to [ ] conclu[de] that the Third Circuit follows the 'sound business purpose' test rather than the 'emergency' rule".  *See In re Titusville Country Club*, 128 B.R. at 399.

24.    The "sound business purpose" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a sound business reason justifies the sale of assets outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith exists with respect to the purchaser of the assets.  *Id.*; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).  The Debtors submit that the decision to proceed with the approval of the Bid Procedures related to a potential sale is based upon their sound business judgment and should be

approved.  A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987).  Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case.  *In re Lionel*, 722 F.2d at 1071; *In re Montgomery Ward Holding Corp.*, 242 B.R. at 155.

25.     Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R 531, 537 (Bankr. W.D. Tenn. 1986) (noting that "the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

26.    The Debtors believe that the proposed Bid Procedures are reasonably designed to enable the Debtors to generate the highest value for the Beatport Assets.  The proposed Auction presents a controlled, fair and open process that the Debtors believe will encourage bidding only from seriously interested parties who possess the financial and operational capacity to purchase the Beatport Assets.  As such, the Bid Procedures promote the primary goal of maximizing the value received by the estates.  Courts generally approve procedures that are intended to encourage competitive bidding and are consistent with the goal of maximizing the value received by the estates.  *See In re John Joseph Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bidding procedures should facilitate an "open and fair" sale and be "designed to maximize value for the estate").

27.    The Debtors also submit that the implementation of the Bid Procedures, if approved, will satisfy the prongs of the "sound business purpose" test.  For purposes of prong one, the Debtors seek to sell the Beatport Assets in order to garner value for the benefit of their estates.  The second prong of the "sound business purpose" test will be satisfied because the proposed Notice Procedures are designed to provide adequate notice to all potentially interested parties, including those who previously expressed an interest in purchasing the Beatport Assets. With respect to the third prong, the Debtors intend to continue to market the Beatport Assets, to solicit interested bidders and to conduct the Auction in a manner that will yield an adequate price for the Beatport Assets.  Finally, the Bid Procedures incorporate a good faith requirement of all Qualified Bidders applicable at both the commencement and conclusion of the Auction.

28.    Moreover, the Bid Procedures are designed to maximize the value received for the Beatport Assets.  The Debtors seek to determine the market for the Beatport Assets.  The process proposed by the Debtors allows for a fair auction process, providing bidders with

sufficient time and information to submit a timely bid.  If the Debtors receive sufficient interest in a sale of the Beatport Assets, the Bid Procedures are designed to ensure that the Beatport Assets will be sold for the highest or otherwise best possible purchase price under the circumstances.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Beatport Assets will be fair and reasonable, and the third prong of the "sound business purpose" test satisfied.

29.    The Bid Procedures provide that the Sale may include the transfer of "personally identifiable information," as defined in section 101(41A) of the Bankruptcy Code.  However, no "consumer privacy ombudsman" need be appointed under section 363(b)(1) of the Bankruptcy Code because the Successful Bidder, and any Backup Bidder, as applicable, will have agreed to adhere to any such privacy policies applicable to the Beatport Assets, as such policies may be modified in accordance with the terms thereof.  *In re Velocity Express Corp.*, Case No. 09-13294 (MFW), 2009 WL 6690931, at *7 (Bankr. D. Del. 2009).

30.    The proposed Bid Procedures are reasonable, appropriate and within the Debtors' sound business judgment.  They provide the Debtors with the best method for obtaining the maximum realizable value for the Beatport Assets.  Thus, the Bid Procedures should be approved.

**B.  The Notice Procedures are Reasonable and Appropriate**

31.    The Debtors believe that the proposed Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Bid Procedures to be employed in connection therewith and the Sale Hearing.

32.     The Debtors submit that the proposed Notice Procedures comply with Bankruptcy Rule 2002 and Local Rule 2002-1.  Therefore, the Debtors believe that the Notice Procedures are reasonable, appropriate and should be approved.

### Consent to Jurisdiction

33.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Notice

34.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) the DIP Lenders; (c) the Committee; (d) Catalyst, as the successor Administrative Agent and Lender to the Debtors' prepetition Credit Agreement and Foreign Loan; (e) U.S. Bank National Association, as Indenture Trustee to the Indenture governing the 2019 Notes; (f) creditors holding the forty (40) largest unsecured claims as set forth in the consolidated list filed with Debtors' petitions; (g) those parties requesting notice pursuant to Bankruptcy Rule 2002; (h) the Office of the United States Attorney General for the District of Delaware; (i) the Internal Revenue Service; and (j) the Securities and Exchange Commission.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

35.     No previous application for the relief sought herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: February 29, 2016                GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile  (302) 661-7360
Email:  melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Maria J. DiConza (admitted *pro hac vice*)
Nathan A. Haynes (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400
Email:  mitchelln@gtlaw.com
          diconzam@gtlaw.com
          haynesn@gtlaw.com

*Proposed Counsel for the Debtors and
Debtors-in-Possession*