Redacted Version

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SFX ENTERTAINMENT, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-10238 (MFW)<br><br>(Jointly Administered)<br><br>**Objection Deadline: March 14, 2016 at 4:00 p.m. (EST)**<br>**Hearing Date: March 21, 2016 at 2:00 p.m. (EST)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER APPROVING THE PAYLOGIC SETTLEMENT AGREEMENT**

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby move the Court (the "**Motion**") for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto, pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for an order approving the Settlement Agreement Within the Meaning of Section 7:900 of the Dutch Civil Code (the "**Settlement Agreement**"), by and among Debtors SFX Entertainment, Inc. ("**SFX Entertainment**") and SFXE Netherlands Holdings B.V. ("**SFXE**", and together with SFX Entertainment, the "**SFX Entities**"), [REDACTED]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[redacted], the "**Individual Parties**", and together with the SFX Entities, the "**Parties**", and each, a "**Party**"), resolving the Parties' claims arising from or related to the Share Purchase Transaction, the Paylogic SPA and the Dutch Action (each as defined herein). The Settlement Agreement represents a fair and reasonable disposition of the disputes at issue and is a proper exercise of the Debtors' business judgment, and should therefore be approved by the Court. In support of this Motion, the Debtors further respectfully state as follows:

## Preliminary Statement[2]

1. The Debtors' operations in Europe are vital to SFX's business. The European entities represent the driving creative force behind the majority of the Debtors' live events and festivals and are generally cash-flow positive. SFX relies on Paylogic, a non-Debtor subsidiary, to support ticket sales for SFX events and festivals, including Sensation, Mysteryland, and TomorrowWorld.

2. The Debtors' festivals attract hundreds of thousands of users to Paylogic's ticketing website when tickets for a festival go on sale. Paylogic is able to handle these peak sales efficiently and in a cost-effective manner. By way of example, Paylogic supplied the ticketing system that made it possible for SFX to sell over 100,000 tickets to the Debtors' Tomorrowland festival within an hour of going on sale.

3. [redacted] Consistently, it constitutes an important component of the Debtors' plans to restructure and successfully emerge from Chapter 11.

[2] Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them below.

Redacted Version

4. Pursuant to the Paylogic SPA entered into by the Parties in late 2013, SFXE committed to purchasing 100% of the capital shares of Paylogic from the Individual Parties. While SFXE currently owns 75% of Paylogic's outstanding capital shares, a dispute has recently arisen concerning SFXE's obligations to purchase the remaining 25% of Paylogic's outstanding capital shares. Citing the Debtors' bankruptcy filing and certain alleged breaches under the Paylogic SPA, the Individual Parties initiated an action against SFXE in the Netherlands shortly after the Petition Date. As a result, the Individual Parties have executed a seizure (in the nature of a pre-judgment attachment) of SFXE's interest in the capital shares of Paylogic and an additional SFXE non-Debtor European subsidiary. The Individual Parties maintain that the Debtors' Chapter 11 Cases and the associated automatic stay do not affect the Individual Parties' ability to enforce their rights in the Netherlands. The Parties to the Paylogic SPA have since engaged in comprehensive negotiations to resolve the disputed claims related to the Share Purchase Transaction and the Paylogic SPA and set a foundation for a business relationship going forward.

5. As explained in more detail below, the proposed Settlement Agreement has two main components: (i) the SFX Entities satisfy the obligations under the Paylogic SPA as set forth in the Settlement Agreement in exchange for obtaining the remaining ownership interest in Paylogic; and (ii) mutual releases of all claims existing between the Parties in connection with the Paylogic SPA and the Share Purchase Transaction.

6. In addition, the Settlement Agreement contemplates the negotiation of employment agreements [redacted]

[REDACTED]. These agreements will ensure continuity in management of this profitable enterprise.

7. The proposed Settlement Agreement is a key step in the Debtors' restructuring strategy: keep the European operations intact and profitable while the Debtors operate through these Chapter 11 Cases. The proposed Settlement Agreement will crystalize the Debtors' ownership interest in a valuable estate asset, eliminate related claims against the Debtors and ensure continuity in management of the successful Paylogic business.

**Status of the Case**

8. On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

9. The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10. No request has been made for the appointment of a trustee or examiner.

11. On February 12, 2016, an official committee of unsecured creditors was appointed in these Chapter 11 Cases (the "**Committee**") [Docket No. 99].

**Jurisdiction, Venue and Statutory Predicates**

12. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

13. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

### A. General Background

14. The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture. The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry, specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad. Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

15. Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad. In addition, Debtors manage large, event driven nightclubs that serve as venues for performances by key electronic music talent. The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

16. The Debtors and their 120 non-Debtor subsidiaries operate a business that spans the globe, with operations in over 34 countries. The Debtors constitute substantially all of the domestic companies comprising SFX's business as well as select foreign subsidiaries. The Debtors have more than 325 employees and, together with the non-Debtor entities, have more than 625 employees.

17. The Debtors' capital structure is highly levered. In 2015, the Debtors began to face significant liquidity issues. While the Debtors attempted to enhance liquidity through a

September 2015 financing and potential sales of non-strategic assets, the Debtors concluded that they needed to restructure their liabilities through a bankruptcy process.

18. Prior to the filing of these Chapter 11 Cases, the Debtors entered into a restructuring support agreement with holders of over 70% of their outstanding secured debt. The restructuring support agreement provides for a comprehensive restructuring of the Debtors' balance sheet. As part of that transaction, certain of the holders of the secured debt also agreed to provide the Debtors with debtor-in-possession financing to allow for the Debtors to prosecute these Chapter 11 Cases. The Debtors intend to use these Chapter 11 Cases to effect their balance sheet restructuring and implement operational improvements.

19. A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") [Docket No. 13] filed on the Petition Date and incorporated herein by reference.

**B. Paylogic**

20. Paylogic Holding B.V. ("**Paylogic**") is engaged in the business of event ticketing. Paylogic specializes in handling high-volume peak sales as well as technical and data integrations with several online platforms. Paylogic provides exclusive ticketing services to SFX brands such as Sensation, Mysteryland, Q-dance, Tomorrowland, and TomorrowWorld. Paylogic also provides its ticketing system to non-EDM events, sports events, and performing arts.

*i. The Paylogic SPA*

21. On November 26, 2013, the SFX Entities and the Individual Parties, among other parties, entered into that certain Share Purchase Agreement (as amended or modified from time to time, the "**Paylogic SPA**"), pursuant to which SFXE agreed to acquire 100% of the outstanding share capital (the "**Paylogic Shares**") in Paylogic from the Individual Parties.

22. Pursuant to the Paylogic SPA, SFXE acquired 75% of the Paylogic Shares (the "**Initial Share Purchase Transaction**") at closing and committed to acquire the remaining 25% of the Paylogic Shares in 2016 (the "**Second Share Purchase Transaction**", and together with the Initial Share Purchase Transaction, the "**Share Purchase Transaction**") for a purchase price to be determined as set forth in the Paylogic SPA.[3]

23. [redacted]

*ii. Paylogic Dispute and Related Claims*

24. Concerned that the Debtors' bankruptcy filing would adversely affect their rights in respect of the Second Share Purchase Transaction, on February 4, 2016 , the Individual Parties commenced an action (the "**Dutch Action**") in the District Court of Amsterdam in the Netherlands (the "**Dutch Court**"), requesting that the Dutch Court grant approval to the Individual Parties to levy prejudgment attachments on the Paylogic Shares held by SFXE and on

[3] The Parties initially contemplated that the Second Tranche Purchase Price (as defined in the Paylogic SPA) was to be paid one-third in cash and two-thirds in shares of SFX Entertainment's common stock. Based on the actual price of SFX Entertainment's common stock, it is no longer possible that SFX Entertainment will be able to issue shares to the Individual Parties, and per the terms of the Paylogic SPA, the SFX Entities may be obligated to pay the entire remaining Second Tranche Purchase Price in cash.

all of the shares of SFX Europe B.V. ("**SFX Europe**"), a non-Debtor affiliate of the SFX Entities, that are currently held by SFXE (the "**SFX Europe Shares**"). The Individual Parties assert that pursuant to the Paylogic SPA, SFXE is currently obligated to pay an amount of to the Individual Parties on account of the contemplated Second Share Purchase Transaction. The Individual Parties also assert that under the laws of the Netherlands, the Debtors' Chapter 11 Cases and associated automatic stay do not affect the Individual Parties' ability to enforce their rights in the Netherlands. Although the Debtors' believe the automatic stay does apply, the Debtors recognize that a dispute exists.

25. On the same date that the Dutch Action was commenced, the Dutch Court granted the Individual Parties' request on a preliminary basis and the bailiff for the Dutch Court levied the prejudgment attachments on 75% of the Paylogic Shares and 100% of the SFX Europe Shares that are currently held by SFXE.

### C. The Settlement Agreement Between and Among the SFX Entities and the Individual Parties

26. To resolve fully and finally their ongoing dispute regarding the claims arising from or related to the Paylogic SPA, the Share Purchase Transaction and the Dutch Action (collectively, the "**Claims**"), the SFX Entities and the Individual Parties engaged in extensive, good-faith, arm's length negotiations, which efforts have culminated in the proposed Settlement Agreement.

27. Although the specific terms of the Settlement Agreement are confidential, a copy of the draft Settlement Agreement has been provided to the United States Trustee for the District of Delaware (the "**Trustee**") and to counsel to the Committee, the Debtors' lenders in these Chapter 11 Cases (the "**DIP Lenders**") and the Ad Hoc Group (as defined in the First Day Declaration) on a confidential basis.

28. The salient terms of the Settlement Agreement will be substantially as follows:[4]

- [redacted]
- [redacted]
- [redacted]
- [redacted]

---

[4] The summary of the terms of the Settlement Agreement contained herein is qualified in its entirety by reference to the Settlement Agreement as this Motion is not intended to contain a comprehensive recitation of the terms of the Settlement Agreement. If there are any inconsistencies between this summary and the terms of the Settlement Agreement, the Settlement Agreement shall govern in all respects.

Redacted Version





## Relief Requested

29. By this Motion, the Debtors request the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement.

## Basis for Relief

### A. Applicable Authority to Approve the Settlement Agreement

30. Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlement agreements are generally favored in a bankruptcy setting because they "minimize litigation and expedite the administration of the bankruptcy estate." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).

31. The standards for approval are well settled and require the court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The decision to approve the compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case, and in the best

interest of the debtor's estate. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Martin*, 91 F. 3d at 394; *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) ("[T]he ultimate inquiry is whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted).

32. The analysis required under this standard directs the bankruptcy court to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393. To do so, bankruptcy courts typically weigh the following factors, enunciated in *Martin*: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors. *Id.*; *Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 587 (7th Cir. 1994) (affirming an order approving a compromise and settlement of claims against the estate where it was "unlikely" that the debtor would succeed on the claims, litigation of the claims would involve considerable expense and the claimant would withdraw all claims upon approval of the settlement). A court need not determine each legal and factual issue raised; rather, a court should "canvas the issues" and reject a settlement only if it "fall[s] below the lowest point in the range of reasonableness." *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re Exide Techs.*, 303 B.R. 48, 68 (Bankr. D. Del. 2003).

33. Additionally, section 105(a) of the Bankruptcy Code allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under section 105(a), this Court has expansive

equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of the debtors' assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code") (citation omitted). *See also Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern") (citations omitted); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of their creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws") (citation omitted).

**B. <u>The Settlement Agreement Meets the Applicable Standards</u>**

34. The Debtors, in the exercise of their sound business judgment, have determined that the Settlement Agreement is reasonable and in the best interests of their estates.

35. The Settlement Agreement fully and finally resolves all outstanding issues arising out of and related to the Share Purchase Transaction, the Paylogic SPA and the Dutch Action on favorable terms. [REDACTED] In addition, the Settlement Agreement preserves the employment of two key personnel: [REDACTED]

36. Pursuant to the proposed Settlement Agreement, the Parties will avoid significant expense, uncertainty and delay associated with ongoing judicial proceedings, the considerable

Redacted Version

cost of which would be borne by the Debtors' estates, including the pending Dutch Action. The dispute is unique in that pursuant to the terms of the Paylogic SPA, the Parties consented to adjudicate any associated disputes in the Netherlands. Further, the Individual Parties have taken the position in the Dutch Action that under the laws of the Netherlands, a bankruptcy or insolvency proceeding commenced in another country – such as the Chapter 11 Cases pending before this Court – only has territorial effect in the country in which it is commenced. The Settlement Agreement altogether avoids the uncertainty and inherent risks and costs involved in such a dispute.

37. Protracted litigation between and among the Parties creates risks of damaging the enterprise value of Paylogic and employee departure. The Settlement Agreement obviates these risks and preserves value for Paylogic and SFX as a whole.

38. The Settlement Agreement also provides that the Debtors will ultimately obtain a 100% equity interest in Paylogic. This may benefit the SFX Entities in any future sale transaction of Paylogic. Further, as discussed above, the Settlement Agreement is a key step in the Debtors' restructuring strategy, which contemplates that the European operations will remain intact and profitable while the Debtors navigate these Chapter 11 Cases.

39. For all of the reasons set forth herein, the proposed settlement is fair, reasonable and in the best interests of the creditors. [REDACTED] In addition, the services of key personnel will be retained. The settlement falls well within the range of reasonableness required for approval of the Settlement Agreement under Bankruptcy Rule 9019. Accordingly, the Debtors respectfully

submit that entry into the Settlement Agreement is a proper exercise of the Debtors' business judgment and that this Court should grant this Motion.

**Waiver of Bankruptcy Rule 6004(h)**

40. To the extent Bankruptcy Rule 6004 applies, the Debtors request that this Court order that the stay provided in Bankruptcy Rule 6004 shall not apply to the order granting this Motion and that any order be effective immediately upon entry on the Court's docket.

**Consent to Jurisdiction**

41. Pursuant Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**[5]

42. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) counsel to the Individual Parties; (d) counsel to the DIP Lenders and the Ad Hoc Group; and (e) those parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

43. No previous application for the relief sought herein has been made to this or any other court.

---

[5] Capitalized terms used in the Notice section but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration.

**Conclusion**

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: March 2, 2016

GREENBERG TRAURIG, LLP
*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile (302) 661-7360
Email: melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Maria J. DiConza (admitted *pro hac vice*)
Nathan A. Haynes (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: mitchelln@gtlaw.com
diconzam@gtlaw.com
haynesn@gtlaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*