**Exhibit A**

**NCU Key Employee Incentive and Retention Plan**

# SFX ENTERTAINMENT, INC.

## KEY EMPLOYEE INCENTIVE AND RETENTION PLAN WITH RESPECT TO BUSINESSES HELD FOR SALE

### SECTION 1. PURPOSE

The purposes of the Key Employee Incentive and Retention Plan (the "**NCU Plan**") of SFX Entertainment, Inc. and its subsidiaries (the "**Company**") are (a) to provide selected key employees of the Company's NCUs (as defined below) with certain payments upon the achievement of specified goals as determined by the CRO (as defined below) in connection with the sale of each such NCU and (b) to provide selected key non-insider employees of the NCUs retention payments, in the sole discretion of the CRO, in connection with the sale of each respective NCU by which such non-insider employees are employed. The awards payable under the NCU Plan are intended to provide an incentive to ensure the continued, collective efforts of the participating key employees.

### SECTION 2. DEFINITIONS

For the purposes of this NCU Plan, the following terms shall have the meanings indicated, unless the context clearly indicates otherwise:

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Cause" shall exist where, in the CRO's sole reasonable discretion, the CRO determines that (i) the Participant has been insubordinate or refused or failed to carry out the instructions of the CRO or the Special Committee relating to the sale of an NCU; (ii) the Participant has engaged in misconduct or negligence in performing the Participant's duties and responsibilities; (iii) the Participant has engaged in conduct which is dishonest, criminal, fraudulent, or otherwise involves moral turpitude, or which is materially injurious to the Company; and/or (iv) the Participant has engaged in activity prohibited by any other agreement between Employee and the Company. For the avoidance of doubt, this definition of Cause shall apply only to this NCU Plan and shall have no effect on any other agreement, plan or policy of the Company that may apply to the Participant and the definition of "cause" contained in such agreement, plan or policy shall control.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"CRO" means Michael Katzenstein.

NY 245683173v11

"Debtors" means the Company and its affiliates who have filed voluntary petitions for relief under the Bankruptcy Code and whose cases are jointly administered with that of the Company.

"Disability" shall have the meaning as provided under Section 409A of the Code.

"NCU" shall have the meaning specified in Section 4.1.

"NCU KEIP" shall have the meaning specified in Section 4.1.

"NCU KEIP Participants" shall have the meaning specified in Section 4.1.

"NCU KEIP Payment" shall have the meaning specified in Section 4.4.

"NCU KEIP Performance Objectives" shall have the meaning specified in Section 4.2.

"NCU KEIP Performance Period" shall have the meaning specified in Section 4.3.

"NCU KERP" shall have the meaning specified in Section 5.1.

"NCU KERP Participants" shall have the meaning specified in Section 5.1.

"NCU KERP Payment" shall have the meaning specified in Section 5.4.

"NCU KERP Performance Objectives" shall have the meaning specified in Section 5.2.

"NCU KERP Performance Period" shall have the meaning specified in Section 5.3.

"Participant" and "Participants" shall have the meaning specified in Section 5.1.

"Special Committee" means the Special Committee of the Board of Directors of SFX Entertainment, Inc., consisting of independent directors John Miller, Michael Meyer, Tim Bishop and Chip Barnes, formed by the Board of Directors of the Company on January 31, 2016 by unanimous consent.

### SECTION 3. ADMINISTRATION

The CRO, in consultation with the Special Committee, shall have the exclusive right, power and authority, in his sole, full and absolute discretion, to interpret any and all of the provisions of the NCU Plan, to supervise the administration and operation of the NCU Plan, to consider and decide conclusively any questions (whether of fact or otherwise) arising in connection with the administration of the NCU Plan or any claim for benefits arising under the NCU Plan, to correct any defect or omission or reconcile any inconsistency in the NCU Plan or any payment to be made hereunder, and to make any other determinations that he believes necessary or advisable in the administration of the NCU Plan. Any decision or action of the CRO shall be conclusive and binding on all Participants. The CRO may elect to delegate some or all of

his administrative responsibilities under the NCU Plan to such person(s) or entities as he shall determine in his sole and absolute discretion. Notwithstanding the foregoing, nothing in this Plan shall be deemed to vary the terms of any order of the Bankruptcy Court approving the NCU Plan.

### SECTION 4. PAYMENT OF NCU INCENTIVE BONUSES

4.1     In General. One or more businesses of the Debtors may be designated by the Special Committee as a Non-Core Unit held for sale (an "**NCU**").  Upon designation of a business unit as an NCU, the CRO may, in his discretion and in consultation with the Special Committee, designate officers and employees of such NCU[1] as eligible to participate in the KEIP applicable only to NCUs (the "**NCU KEIP**"). All employees who are deemed eligible to participate in the NCU KEIP are defined as "**NCU KEIP Participants**."  The CRO may, in his discretion and in consultation with the Special Committee, establish minimum hurdle rates in respect of the sale of any NCU such that an NCU KEIP Payment (as defined below) may only be earned if sale proceeds from the disposition of such NCU exceed a specific dollar threshold.  Except as approved by the CRO in consultation with the Special Committee, to the extent an executive or employee of an NCU participates as a potential purchaser in connection with the sale process for such NCU, such executive or employee shall be ineligible to receive an NCU KEIP Payment.

4.2     NCU KEIP Performance Objectives. An NCU KEIP Participant shall be entitled to NCU KEIP Payments only in the event that (i) such NCU KEIP Participant participates in good faith in the sale process to the satisfaction of the CRO to maximize value for the Debtors' estates, (ii) an NCU KEIP Participant remains employed through the closing of a sale of their NCU, and (iii) the gross purchase price for their NCU meets any minimum hurdle rate for such NCU established by the CRO in consultation with the Special Committee ((i) through (iii) together, the "**NCU KEIP Performance Objectives**").

4.3     NCU KEIP Performance Period.    The term "**NCU KEIP Performance Period**" as to an individual NCU KEIP Participant shall mean the period that begins on the commencement of the sale process in respect of such executive or employee's NCU and will continue until consummation of the sale of such NCU.

4.4     Calculation of Earned Payment Amount. The incentive bonus amount for each NCU KEIP Participant shall be determined on an individual basis by the CRO, in his sole discretion, and only to the extent such NCU KEIP Participant has met the NCU KEIP Performance Objectives during the NCU KEIP Performance Period in respect of the applicable NCU. An amount up to 5% of the gross sale proceeds associated with the sale of each NCU shall be available for the CRO to utilize to make payments to NCU KEIP Participants (an "**NCU KEIP Payment**") in connection with the NCU KEIP.  In respect of the sale of each NCU, the CRO may allocate the applicable pool of sale proceeds among the designated NCU KEIP Participants in his sole discretion, and only to the extent such NCU KEIP Participants have met the NCU KEIP Performance Objectives during the NCU KEIP Performance Period in respect of the applicable NCU. In no event shall any NCU KEIP Participant receive NCU KEIP Payments in an amount excess of $250,000 under the NCU KEIP. NCU KEIP Payments will not exceed

---

[1] Such officers and employees shall be limited to those managing the business of the NCU and shall not include executive officers of SFX Entertainment, Inc.

3

$400,000 per NCU sale, provided however if KEIP Payments utilized in respect of a particular NCU sale do not reach this cap, the CRO may, in consultation with the Special Committee, apply the balance of such funds to KEIP Payments in respect of the sale of another NCU, subject to the $400,000 per NCU and $250,000 individual caps set forth herein, and notwithstanding the 5% sale proceeds set forth above. The aggregate NCU KEIP Payments to be paid under the NCU KEIP shall not exceed $2.2 million without further order of the Bankruptcy Court.

4.5     Bonus Adjustments. To the extent that an NCU KEIP Participant is party to an executory employment agreement and is determined to be entitled to payments of incentive or retention compensation thereunder (whether in connection with payment of a cure amount or otherwise), then any NCU KEIP Payment payable to such NCU KEIP Participant hereunder shall be adjusted and reduced accordingly in the discretion of the CRO.

4.6     Payment of Awards.  Each NCU KEIP Payment shall be paid as promptly as practicable following the closing of the sale of the particular NCU solely from the sale proceeds received by the Debtors in connection with the sale of such NCU (subject to paragraph 4.4, above). Nothing in the NCU KEIP shall create a trust or establish or evidence any executive or employee's claim of any right.

4.7     Termination of Employment. In the event that an NCU KEIP Participant's employment with the Company is terminated by the Company without Cause or due to the NCU KEIP Participant's death or Disability at any time prior to the payment of an incentive bonus, the CRO, in his sole discretion, may pay such NCU KEIP Participant an incentive bonus.  If an NCU KEIP Participant's employment with the Company is terminated other than as described in the preceding sentence prior to payment of an incentive bonus, the NCU KEIP Participant shall not receive an incentive bonus.

## SECTION 5. PAYMENT OF NCU RETENTION BONUSES

5.1     In General. Upon designation of a business unit as an NCU, the CRO may, in his discretion and in consultation with the Special Committee, designate non-insider employees of such NCU as eligible to participate in the KERP applicable only to NCUs (the "**NCU KERP**"). Eligibility for payment of a retention bonus amount shall be for those individual employees of NCUs as may be designated by the Debtors' CRO in his discretion, in consultation with the Special Committee. All employees who are deemed eligible to participate in the NCU KERP are defined as "**NCU KERP Participants**" (collectively with the NCU KEIP Participants, the "**Participants**" and each, individually, a "**Participant**").  The CRO may, in his discretion and in consultation with the Special Committee, establish minimum hurdle rates in respect of the sale of any NCU such that an NCU KERP Payment (as defined below) may only be earned if sale proceeds from the disposition of such NCU exceed a specific dollar threshold.  Except as approved by the CRO in consultation with the Special Committee, to the extent an non-insider employee of an NCU to be sold participates as a potential purchaser in connection with the sale process for such NCU, such employee shall be ineligible to receive an NCU KERP Payment.

5.2     NCU KERP Performance Objectives. An NCU KERP Participant shall be entitled to NCU KERP Payments only in the event that (i) such NCU KERP Participant participates in good

faith in the sale process to the satisfaction of the CRO to maximize value for the Debtors' estates, (ii) an NCU KERP Participant remains employed through the closing of a sale of their NCU, and (iii) the gross purchase price for their NCU meets any minimum hurdle rate for such NCU established by the CRO in consultation with the Special Committee ((i) through (iii) together, the "**NCU KERP Performance Objectives**").

5.3     NCU KERP Performance Period. The term "**NCU KERP Performance Period**" as to an individual NCU KERP Participant shall mean the period that begins on the commencement of the sale process in respect of such employee's NCU and will continue until consummation of the sale of such NCU.

5.4     Calculation of Earned Payment Amount. The bonus payable to any individual NCU KERP Participant (an "**NCU KERP Payment**") upon achievement of the closing of the sale of a particular NCU shall be in an amount determined by the CRO. Bonus payments made to NCU KERP Participants in respect of the sale of an NCU shall not exceed $150,000 in the aggregate per NCU sold, except as otherwise provided herein. Bonus payments to individual NCU KERP Participants shall be contingent on a determination by the CRO, in his sole discretion, that an individual NCU KERP Participant has satisfied the NCU KERP Performance Objectives during the NCU KERP Performance Period in respect of the applicable NCU being sold.

5.5     Rollover of Excess Funds.  In the event the $150,000 threshold is not reached in respect of a particular NCU that is sold, the CRO may, in consultation with the Special Committee, rollover the excess funds for use as NCU KERP payments in connection with another NCU held for sale; *provided however,* in no event shall total bonuses to NCU KERP Participants exceed $250,000 in respect of the sale of any one NCU, inclusive of any excess funds rolled over by the CRO.

5.6     Bonus Adjustments. To the extent that an NCU KERP Participant is party to an executory employment agreement and is determined to be entitled to payments of incentive or retention compensation thereunder, then any bonus payable to such NCU KERP Participant hereunder shall be adjusted and reduced accordingly in the discretion of the CRO.

5.7     Maximum Aggregate Payment Amount. The maximum aggregate amount that will be paid to any individual NCU KERP Participant is $40,000.

5.8     Payment of Awards.  Each bonus shall be paid upon the closing of the sale of the particular NCU solely from the sale proceeds received by the Debtors in connection with the sale of such NCU (subject to paragraph 5.5, above). Each NCU KERP Payment shall be paid as promptly as practicable following the closing of the sale of a particular NCU. Nothing in the NCU KERP shall create a trust or establish or evidence any employee's claim of any right.

5.9     Termination of Employment. In the event that an NCU KERP Participant's employment with the Company is terminated by the Company without Cause or due to the NCU KERP Participant's death or Disability at any time prior to the payment of a retention bonus, the CRO, in his sole discretion, may pay such NCU KERP Participant a retention bonus in an amount to be determined by the CRO.  If an NCU KERP Participant's employment with the Company is

5

terminated other than as described in the preceding sentence prior to the payment of a retention bonus, the NCU KERP Participant shall forfeit any right to a retention bonus.

## SECTION 6. AMENDMENT AND TERMINATION OF NCU PLAN

The CRO, in consultation with the Special Committee, by written instrument may, in his sole discretion, at any time and from time to time amend, modify, suspend or terminate this NCU Plan, in whole or in part, provided that such amendment does not expand any authority granted to the CRO or the Special Committee in connection with any order of the Bankruptcy Court approving the NCU Plan.

## SECTION 7. MISCELLANEOUS

7.1     Unfunded Plan / Participant's Rights. No assets of the Company or its affiliates shall be segregated or earmarked to represent the liability for accrued benefits under the NCU Plan. The right of a Participant to receive any payment hereunder shall be in the sole discretion of the CRO and shall be paid from the proceeds of the sale of the applicable NCU. All amounts that may be set aside by the Company or its affiliates prior to the distribution of the bonus payments under the terms of the NCU Plan remain the property of the Company and its affiliates.

7.2     NCU Plan is Not a Contract of Employment. The existence of this NCU Plan, as in effect at any time or from time to time, or any right to a bonus payment under the NCU Plan, shall not be deemed to constitute a contract of employment between the Company or any of its affiliates and any employee or Participant, nor shall it constitute a right to remain in the employ of the Company or any of its affiliates. Nothing in this NCU Plan shall give a Participant the right to be retained in the service of the Company or its affiliates or to interfere with the rights of the Company or its affiliates to discipline or discharge a Participant at any time. Either party may terminate a Participant's employment at any time, for any reason, with or without cause or notice.

7.3     Successors. All obligations of the Company under the NCU Plan shall be binding upon and inure to the benefit of any successor to the Company, whether the existence of such successor is the result of a direct or indirect purchase, merger, consolidation or otherwise.

7.4     No Guarantee of Benefits. Nothing contained in the NCU Plan shall constitute a guaranty by the Company or any other person or entity that the assets of the Company will be sufficient to pay any benefit hereunder.

7.5     Non-Alienation Provision; Third Party Rights. Subject to the provisions of applicable law, no interest of any person or entity in, or right to receive a benefit or distribution under, the NCU Plan shall be subject in any manner to sale, transfer, assignment, pledge, attachment, garnishment, or other alienation or encumbrance of any kind; nor may such interest or right to receive a distribution be taken, either voluntarily or involuntarily, for the satisfaction of the debts of, or other obligations or claims against, such person or entity, including without limitation claims for alimony, support, separate maintenance and claims in bankruptcy proceedings.

NY 245683173v11

Nothing express or implied in the NCU Plan is intended or may be construed to give any person other than eligible Participants any rights or remedies under the NCU Plan.

7.6     Applicable Law. The NCU Plan shall be construed and administered under the laws of the state of Delaware without regard to its principles of conflicts of laws.

7.7     Taxes. The Company (or such entities delegated by the Company) shall withhold from any bonus payments made pursuant to the NCU Plan such amounts as may be required by federal, state or local law.

7.8     No Impact on Other Benefits. Amounts paid or accrued under the NCU Plan shall not be included in a Participant's compensation for purposes of calculating benefits under any other plan, program or arrangement sponsored by the Company or any of its affiliates, unless such plan, program or arrangement so provides by express reference to the NCU Plan.

7.9     No Limitation on Corporate Actions. Nothing contained in the NCU Plan shall be construed to prevent the Company or any of its affiliates from taking any corporate action which is deemed by it to be appropriate or in its best interest, whether or not such action would have an adverse effect on the NCU Plan or any rights under the NCU Plan. No Participant, employee or other person shall have any claim against the Company or any of its affiliates as a result of any such action.

7.10    Limitation on Liability. The liability of the Company and its affiliates under the NCU Plan is limited to the obligations expressly set forth in the NCU Plan, and no term or provision of this NCU Plan may be construed to impose any further additional duties, obligations, or costs on the Company or its affiliates, the CRO or the Special Committee or any other person or entity except as expressly set forth in the NCU Plan.

7.11    Severability. If any provision of the NCU Plan is held unenforceable, the remainder of the NCU Plan shall continue in full force and effect without regard to such unenforceable provision and shall be applied as though the unenforceable provision were not contained in the NCU Plan.

7.12    Headings. Any headings are included for ease of reference only and are to be ignored in the interpretation of the NCU Plan.

7.13    Section 409A. It is the intention of the Company that awards under the NCU Plan not result in taxation under Section 409A of the Code. Notwithstanding anything to the contrary herein, to the extent that any provision of this NCU Plan would otherwise result in taxation under Section 409A of the Code, such provision shall be deemed null and void. Notwithstanding anything in the NCU Plan to the contrary, the CRO, in consultation with the Special Committee, shall have the authority to amend the NCU Plan to the extent necessary to avoid the imposition of tax under Section 409A of the Code. Notwithstanding anything contained herein to the contrary, a Participant shall not be considered to have terminated employment with the Company for purposes of this NCU Plan, such Participant would be considered to have incurred a "separation from service" from the Company within the meaning of Section 409A of the Code.

Each amount to be paid or benefit to be provided under this NCU Plan shall be construed as a separate identified payment for purposes of Section 409A of the Code, and any payments described in this NCU Plan that are due within the "short-term deferral period" as defined in Section 409A of the Code shall not be treated as deferred compensation unless applicable law requires otherwise.

7.14    <u>Condition Precedent to Plan Effectiveness</u>. The Company's obligations under the NCU Plan, including any obligations to pay any bonus payments, are contingent upon approval by the Bankruptcy Court. In the event that such approval is not obtained, the NCU Plan shall be null and void, and no party shall be entitled to enforce any rights against the Company thereunder.

**<u>Exhibit B</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | Ref Docket No. ____ |

**ORDER APPROVING IMPLEMENTATION OF (I) KEY EMPLOYEE INCENTIVE PLAN AND (II) KEY EMPLOYEE RETENTION PLAN EACH IN CONNECTION WITH THE SALE OF CERTAIN OF THE DEBTORS' NON-CORE BUSINESS UNITS AND AUTHORIZING PAYMENTS THEREUNDER**

Upon consideration of the motion (the "**Motion**")[2] of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for entry of an order (the "**Order**"), pursuant to sections 105(a), 363(b)(1) and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "**Bankruptcy Code**"), (a) the Debtors' proposed performance-based key employee incentive plan applicable to non-core business units held for sale (the "**NCU KEIP**") and (b) the Debtors' proposed key employee retention plan applicable to non-core business units held for sale (the "**NCU KERP**" and, together with the NCU KEIP, the "**NCU Key Employee Programs**"), in connection with the sales of the Debtors' NCUs; and (c)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2] Capitalized terms otherwise not defined herein shall have the meanings ascribed to them in the Motion.

granting administrative expense status to the bonuses paid thereunder; the Court, having reviewed the Motion and having heard the statements of counsel in support of the relief requested in the Motion at the hearing before the Court (the "**Hearing**"), finds that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, this is a core matter pursuant to 28 U.S.C. § 157(b)(2), notice of the Motion and the Hearing were sufficient under the circumstances and that no further notice need be given, the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein, and it appearing that the relief requested by this Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. For the reasons set forth on the record, the Motion is GRANTED as set forth herein.

2. Pursuant to sections 105(a), 363(b) and 503(c)(3) of the Bankruptcy Code, the Debtors are authorized to (a) adopt and implement the NCU Key Employee Programs, (b) make payments consistent with the NCU Key Employee Programs; and (c) take such other actions as may be necessary to implement the NCU Key Employee Programs, including, without limitation, designing and/or altering the NCU Key Employee Programs in any manner necessary to comply with applicable law.

3. Any bonus paid pursuant to the NCU Key Employee Programs shall be allowed as administrative expenses of the Debtors' estates under section 503(b) of the Bankruptcy Code.

4. Neither this Order nor any performance by the Debtors authorized hereunder shall be deemed an assumption of any executory contract or otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract.

5. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

6. This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

7. Notwithstanding anything to the contrary contained herein, any payment made or to be made, and authorization contained in this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.

Dated: _____, 2016

                                                    _____
                                                    HONORABLE MARY F. WALRATH
                                                    UNITED STATES BANKRUPTCY JUDGE