## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC. *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 28, 62, 83** |

**FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507 (I) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED PRIMING SUPERPRIORITY POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF**

Upon the motion dated February 1, 2016 [Docket No. 28] (the "**DIP Motion**"),[2] of the

above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-

captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"), pursuant to sections 105,

361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503 and 507 of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the applicable DIP Loan Documents (as defined herein).

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"); and

Upon the Court having entered the *Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 And 507 (I) Authorizing The Debtors To Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief* dated February 3, 2016 [Docket No. 62] (the "**Original Interim Order**"); and

Upon the Debtors' *Notice of Telephonic Hearing* dated February 8, 2016 [Docket No. 77], providing notice of a hearing to consider certain modifications to the DIP Motion (the "**Notice of Hearing**"), and upon the Debtors' notice dated February 9, 2016 (the "**Filing of Proposed Amended Interim Order**") of the Debtors' request for the entry of the *Amended Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 And 507 (I) Authorizing The Debtors To Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens And Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief* dated February 9, 2016 [Docket No. 82] (the "**Amended Interim Order**" and together with the Original Interim Order, the "**Interim Orders**"); and

Upon the Court having entered the Amended Interim Order, which amended and superseded the Original Interim Order; and

2

Upon the Debtors' request in the DIP Motion seeking, *inter alia*, entry of this final order (this "**Final Order**"):

(1)    authorizing the Debtors to obtain senior secured postpetition financing on a priming, superpriority basis (the "**DIP Facility**"; the "first out" tranche A loans under the DIP Facility, the "**Tranche A DIP Loans**" and the "last out" tranche B loans under the DIP Facility, which includes the Incremental Foreign Loans (as defined below), the "**Tranche B DIP Loans**," and together with the Tranche A DIP Loans, the "**DIP Loans**") pursuant to the terms and conditions of this Final Order and (A) any Foreign Loan Amendments (as defined below) providing for the Incremental Foreign Loan Facility (as defined below), as set forth in more detail herein, and (B) a senior secured super-priority debtor-in-possession credit agreement in form and substance satisfactory to the Debtors, the DIP Agent and the DIP Lenders (as may be amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Credit Agreement**", and together with all agreements (including, without limitation, (x) that certain Agreement Among Lenders (the "**DIP Intercreditor Arrangement**"), among the DIP Agent, the initial Tranche A DIP Lenders (defined below) and the Initial Tranche B Lenders (defined below), which shall govern the relative rights and priorities of the Tranche A DIP Loans (defined below) and the Tranche B DIP Loans (defined below) and (y) any Foreign Loan Amendments, other documents, instruments and certificates executed, delivered or filed in connection therewith, as applicable, in each case, as may be further amended, supplemented, restated or otherwise modified from time to time in accordance with the terms thereof, collectively, the "**DIP Loan Documents**"), by and among SFX Entertainment, Inc., as borrower (the "**Borrower**"), each of the other Debtors, as joint and several guarantors in accordance with and to the extent set forth in this Final Order (each, a "**Guarantor**" and collectively, the "**Guarantors**", and together with the Borrower, the "**DIP Loan Parties**"), Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"[3]), and the lenders pursuant to the Tranche A DIP Loans (the "**Tranche A DIP Lenders**") and the Tranche B DIP Loans (the "**Tranche B DIP Lenders**") from time to time (collectively, the "**DIP Lenders**", and together with the DIP Agent, the "**DIP Secured Parties**"), providing for, *inter alia,* a new money senior secured priming superpriority multiple-draw term loan facility, providing for the borrowing of term loans in accordance with the Approved Budget (as defined below) in an aggregate maximum principal amount not to exceed $87.6 million, which shall consist of Tranche A DIP Loans in an amount not to exceed $30 million and Tranche B DIP Loans in an amount not to exceed $57.6 million, of which,

(A) an aggregate principal amount of the DIP Loans up to $43 million (of which $30 million shall be Tranche A DIP Loans and $13 million shall be Tranche B DIP Loans) shall be available to the Debtors upon entry of the Amended Interim Order and shall be drawn in a single draw by the Debtors on the Closing Date (as defined in the DIP Credit Agreement),

---

[3]    The term "DIP Agent" shall also refer to the Successor Foreign Loan Agent with respect to any Incremental Foreign Loan Obligations arising under any Foreign Loan Amendments, as applicable.

(B) up to an additional $16 million in principal amount of the DIP Loans in the form of Tranche B Loans shall be available to the Debtors upon entry of the Amended Interim Order in the sole and absolute discretion of the Required Tranche B Lenders (as defined in the DIP Credit Agreement) and may, if approved by the DIP Lenders, be drawn by the Debtors after the Closing Date, and

(C) one or more additional drawings of the remaining balance of amounts committed under the DIP Facility (including any undrawn amounts provided for in clause (B) above) as reduced, on a dollar for dollar basis, to the extent of the amount set forth in any Foreign Loan Amendments (defined below) that increases the principal amount of the Foreign Loan Facility, as set forth below,

in the case of each of clauses (A), (B) and (C), subject to the satisfaction of each of the conditions precedent contained in the DIP Loan Documents (or the waiver, in the sole and absolute discretion of the Required Lenders (as defined below), of such conditions precedent) and subject to the terms and conditions of the DIP Intercreditor Arrangement; *provided* that the DIP Facility may, with the prior written consent and approval of the Tranche B Lenders, in their sole and absolute discretion, be increased to provide for, in the form and manner to be determined by the Debtors and the Tranche B Lenders, (x) additional uncommitted $15 million in term loans as incremental Tranche B DIP Loans and (y) a letter of credit facility; *provided further*, that all DIP Obligations in respect of the Tranche A DIP Loans shall be senior in right of payment to all DIP Obligations in respect of the Tranche B DIP Loans and the Foreign Loan Facility to the extent set forth in Section 7.08 of the DIP Credit Agreement (with respect to the Tranche B DIP Loans) and the DIP Intercreditor Arrangement;

(2)   authorizing the Debtors to execute, deliver to the DIP Secured Parties, and perform under the DIP Credit Agreement and the other DIP Loan Documents and to perform such other and further acts as may be necessary or desirable in connection with the DIP Loan Documents;

(3)   approving the Assignment Agreement (as defined below) and authorizing (A) the Debtors, the Foreign Loan Parties and the Foreign Loan Lenders (each as defined below), as applicable, (a) to perform all acts, execute such documents and instruments, and undertake such transactions as may be necessary to implement the Assignment Agreement and the Foreign Loan Assignment, and (b) increase the principal amount of, and make other changes to, the Foreign Loan Facility (upon the approval of and with the prior written consent of the Required Lenders (it being understood and agreed that "Required Lenders" for purposes of this clause (3) shall mean both (x) the majority Tranche A DIP Lenders and (y) the lenders constituting the majority Tranche B DIP Lenders plus the majority lenders holding the Foreign Loans (as defined below)), in their sole and absolute discretion) in accordance with and subject to the terms and conditions of one or more Foreign Loan Amendments, as set forth herein;

(4)   authorizing and directing the Debtors to incur and pay all DIP Obligations (as defined below), including the fees specified in the Agency Fee Letter (as defined in the DIP Credit Agreement);

4

(5)    providing for the indefeasible payment in full of the First Lien Obligations (as defined below) due in respect of the First Lien Credit Agreement (as defined below) in the aggregate amount of approximately $33,241,666.66, subject to the terms hereof;

(6)    granting to the DIP Secured Parties, subject to the Carve-Out (as defined below), valid, enforceable, non-avoidable, automatically and fully perfected liens on and security interests in all DIP Collateral (as defined below), including, without limitation, all Cash Collateral (as defined below) to secure the DIP Obligations, which liens and security interests shall be subject to the rankings and priorities set forth herein;

(7)    granting to the DIP Secured Parties allowed superpriority administrative expense claims in respect of all DIP Obligations, subject to the Carve-Out, as set forth herein;

(8)    granting to the Foreign Loan Agent and Foreign Loan Lenders, subject to the Carve-Out (as defined below), (A) valid, enforceable, non-avoidable, automatically and fully perfected liens on and security interests in all DIP Collateral (as defined below), including, without limitation, all Cash Collateral (as defined below) to secure any Incremental Foreign Loan Obligations (as defined below), which liens and security interests shall be subject to the rankings and priorities set forth herein, and (B) allowed superpriority administrative expense claims in respect of any Incremental Foreign Loan Obligations, as set forth herein;

(9)    authorizing the Debtors' use of the proceeds of the DIP Facility and Cash Collateral pursuant to the Approved Budget, this Final Order and the DIP Loan Documents;

(10)    providing adequate protection to the First Lien Agent (as defined below) and the First Lien Lenders (as defined below) for any Diminution in Value (as defined below) of their interests in the Prepetition First Lien Collateral (as defined below), including Cash Collateral;

(11)    providing adequate protection to the Foreign Loan Agent (as defined below) and the Foreign Loan Lenders (as defined below) for any Diminution in Value of their interests in the Prepetition Foreign Loan Collateral (as defined below), including Cash Collateral;

(12)    providing adequate protection to the Second Lien Agent (as defined below) and the Second Lien Noteholders (as defined below) for any Diminution in Value of their interests in the Prepetition Second Lien Collateral (as defined below), including Cash Collateral; and

(13)    vacating and modifying the automatic stay imposed by section 362 to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents, and providing for the immediate effectiveness of this Final Order;

in each case, on a final basis;

Upon the Court's consideration of the DIP Motion, the DIP Loan Documents on file with the Court, the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* and exhibits thereto [Docket No. 13], the Notice of

Hearing, the Filing of Proposed Amended Interim Order, the Interim Orders, the Notice of Final Hearing and Amended Order [Docket No. 87], the pleadings filed with the Court, and the evidence proffered or adduced at the interim hearing held on February 3, 2016 (the "**Interim Hearing**"), the emergency hearing held on February 9, 2016 (the "**Emergency Hearing**") and the final hearing held on March 4, 2016 (the "**Final Hearing**"); and notice of the Interim Hearing, the Emergency Hearing and the Final Hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and the Local Rules and the Interim Orders; and this Court having entered the Interim Orders, and all objections, if any, to the relief requested in the DIP Motion and the Debtors' request for the entry of this Final Order having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief requested in the DIP Motion and this Final Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, represents a sound exercise of the Debtors' business judgment and is essential for the continued operation of the Debtors' businesses; and upon the record of these Chapter 11 Cases; after due deliberation and consideration, and for good and sufficient cause appearing therefor:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]

A.    _Petition Date_.  On February 1, 2016 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing these Chapter 11 Cases.

---

[4]    Where appropriate in this Final Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

B.    _Debtors-in-Possession_.    The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in any of the Chapter 11 Cases.

C.    _Committee Formation_.    On February 12, 2016, the United States Trustee (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Official Committee**").

D.    _Jurisdiction and Venue_.    The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief set forth herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Rules 2002, 4001 and 9014 of the Bankruptcy Rules.  Venue for these Chapter 11 Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

E.    _Debtors' Stipulations_.    In requesting the DIP Facility, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility, and in exchange for and in recognition of the priming of the Prepetition Liens (as defined below), subject to paragraph 31 hereof, the Debtors hereby admit, stipulate, acknowledge and agree that:

(i)    _First Lien Credit Facility_.  (a) Pursuant to the Amended and Restated Credit Agreement, dated as of September 17, 2015 (as amended by the First Forbearance Agreement and First Amendment to Credit Agreement, dated as of December 31, 2015, the "**First Lien Credit Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including the First Lien Guarantee (as defined below) and the Intercreditor Agreement (as defined below), collectively, the "**First Lien Loan Documents**"), among SFX Entertainment, Inc., as borrower (the "**First Lien Obligor**"), Catalyst Fund Limited Partnership V, as administrative agent (the "**First Lien Agent**"), and the lenders party thereto (collectively, the "**First Lien Lenders**"), the First Lien Lenders provided a credit facility (the "**First Lien Credit Facility**"); and (b) pursuant to the First Lien Guarantee and Collateral Agreement dated as of February 7, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**First Lien**

Guarantee") made by each of the guarantors party thereto (the "**First Lien Guarantors**", and together with the First Lien Obligor, the "**First Lien Loan Parties**") the First Lien Guarantors agreed to guarantee the "Obligations" as defined in the First Lien Credit Agreement.

(ii)    *First Lien Obligations.*    As of the Petition Date, without defense, counterclaim, or offset of any kind, the First Lien Loan Parties were jointly and severally indebted to the First Lien Agent and the First Lien Lenders in the aggregate principal amount of $30.0 million, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the First Lien Loan Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, including all "Obligations" as defined in the First Lien Loan Documents, in each case, to the extent provided in the First Lien Loan Documents (collectively, the "**First Lien Obligations**"). The amount of the First Lien Obligations that is due and payable as of the Petition Date (inclusive of principal, accrued but unpaid interest and premiums (if any)) is approximately $33,241,666.66.

(iii)    *First Lien Collateral.*    To secure the First Lien Obligations, the First Lien Loan Parties granted to the First Lien Agent, for the benefit of itself and the First Lien Lenders, for fair consideration and reasonably equivalent value, first-priority liens on and security interests in (collectively, the "**Prepetition First Lien Credit Facility Liens**") all "Collateral" as defined in the First Lien Credit Agreement (collectively, the "**Prepetition First Lien Collateral**").

(iv)    *Initial Foreign Loan Agreement.* Pursuant to the Facility Agreement dated January 14, 2016 (the "**Initial Foreign Loan Agreement**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, collectively, the "**Initial Foreign Loan Documents**"), by and between SFXE Netherlands Holdings Coöperatief U.A., as borrower (the "**Foreign Obligor**"), each of the guarantors party thereto (the "**Initial Foreign Loan Guarantors**," and together with the Foreign Obligor, the "**Initial Foreign Loan Parties**", and together with any additional subsidiary of any of the Debtors that becomes a party to any Foreign Loan Amendment, the "**Foreign Loan Parties**"), Catalyst Media Coöperatief U.A., as facility agent and security agent (the "**Initial Foreign Loan Agent**"), and Catalyst Fund Limited Partnership V, as original lender (the "**Initial Foreign Loan Lenders**"), the Initial Foreign Loan Lenders provided a foreign loan facility (the "**Foreign Loan Facility**" or "**Foreign Loans**").

(v)    *Assignment of Foreign Loans Under Foreign Loan Facility.* Pursuant to the Transfer Agreement, dated February 10, 2016, by and among the Initial Foreign Loan Lenders, as assignors, and each of the assignees party thereto (the "**Foreign Loan Lenders**") and the Amendment, Resignation, Waiver, and Appointment Agreement, dated February 10, 2016, by and among Debtor SFXE Netherlands Holdings Coöperatief U.A., the Initial Foreign Loan Lenders, the Foreign Loan Lenders, the Initial Foreign Loan Agent, and the Successor Foreign Loan Agent (as defined below) (together with all other agreements, documents, instruments and

certificates executed or delivered in connection therewith (which documents, for the avoidance of doubt, shall be acceptable to the Initial Foreign Loan Lenders and/or Initial Foreign Loan Agent in their sole discretion, collectively, the "**Assignment Agreements**"), (i) the Initial Foreign Loan Lenders sold and assigned to each of the Foreign Loan Lenders, and each of the Foreign Loan Lenders purchased and assumed from the Initial Foreign Loan Lenders, all of the Initial Foreign Loan Lenders' interests in, and rights and obligations under, the Initial Foreign Loan Documents, and (ii) the Initial Foreign Loan Agent resigned from its role as agent under the Foreign Loan Facility, and Stichting Grabrok was appointed as successor agent (the "**Successor Foreign Loan Agent**") to such roles (together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith (which documents, for the avoidance of doubt, shall be acceptable to the Initial Foreign Loan Lenders and/or Initial Foreign Loan Agent in their sole discretion, collectively, the "**Foreign Loan Assignment**"). For purposes of this Final Order, the terms "**Foreign Loan Agent**" and "**Foreign Loan Lenders**", respectively, refer to (a) prior to giving effect to the Foreign Loan Assignment, the Initial Foreign Loan Agent and the Initial Foreign Lenders, respectively, and (b) after giving effect to the Foreign Loan Assignment, to the Successor Foreign Loan Agent and the Assignees (as defined in the Assignment Agreements) by virtue of such assignment.

(vi)    *Initial Foreign Loan Obligations*. As of the Petition Date (before giving effect to any Foreign Loan Amendment), without defense, counterclaim, or offset of any kind, the Foreign Loan Parties were jointly and severally indebted to the Foreign Agent and the Foreign Loan Lenders in the aggregate principal amount of $20.0 million, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Initial Foreign Loan Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, in each case, to the extent provided in the Initial Foreign Loan Documents (collectively, the "**Initial Foreign Loan Obligations**"). The amount of the Initial Foreign Loan Obligations that is due and payable as of the Petition Date (inclusive of principal, accrued but unpaid interest and premiums (if any)) is approximately $21,936,194.49.

(vii)    *Foreign Loan Collateral*. To secure the Initial Foreign Loan Obligations, the Initial Foreign Loan Parties granted to the Foreign Loan Agent, for the benefit of itself and the Foreign Loan Lenders, for fair consideration and reasonably equivalent value, first ranking liens on and security interests in (collectively the "**Prepetition Foreign Loan Liens**") all or substantially all assets of the Foreign Loan Parties, including the "Transaction Security" as defined in the Initial Foreign Loan Agreement (collectively, the "**Prepetition Foreign Loan Collateral**").

(viii)    *Second Lien Notes*. Pursuant to the Indenture dated as of February 4, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Second Lien Note Indenture**", and together with all other agreements, documents, instruments and certificates executed or delivered in connection therewith, including the Second Lien Collateral Agreement (as defined below) and the Intercreditor Agreement, collectively, the

"**Second Lien Note Documents**", and together with the First Lien Loan Documents and the Initial Foreign Loan Documents, the "**Prepetition Loan Documents**"), among SFX Entertainment, Inc., as issuer (the "**Second Lien Note Issuer**"), the guarantors party thereto (the "**Second Lien Guarantors**", and together with the Second Lien Note Issuer, collectively, the "**Second Lien Note Parties**", and together with the First Lien Loan Parties and Foreign Loan Parties, collectively, the "**Prepetition Obligors**"), and U.S. Bank National Association, as trustee and collateral agent (the "**Second Lien Agent**", and together with the First Lien Agent and Foreign Loan Agent, the "**Prepetition Agents**"), the Second Lien Note Issuer issued the 9.625% Second Lien Senior Secured Notes due 2019 (the "**Second Lien Notes**"; the holders of such Second Lien Notes, the "**Second Lien Noteholders**", and together with the First Lien Lenders, the Initial Foreign Loan Lenders and the Foreign Loan Lenders, collectively, the "**Prepetition Lenders**"), and the Second Lien Guarantors guaranteed the "Obligations" as defined in the Second Lien Note Indenture.

(ix)    *Second Lien Obligations.*  As of the Petition Date, without defense, counterclaim, or offset of any kind, the Second Lien Note Parties were jointly and severally indebted to the Second Lien Agent and the Second Lien Noteholders in the aggregate principal amount of at least approximately $295.0 million, *plus* accrued but unpaid interest, *plus* any other amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Second Lien Note Documents, including, without limitation, principal, accrued and unpaid interest (including at the default rate), premiums, any reimbursement obligations (contingent or otherwise), any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect thereof, including all "Obligations" as defined in the Second Lien Note Indenture (collectively, the "**Second Lien Obligations**", and together with the First Lien Obligations and the Initial Foreign Loan Obligations, collectively, the "**Prepetition Obligations**").

(x)    *Second Lien Collateral.*  To secure the Second Lien Obligations, the Second Lien Note Parties granted to the Second Lien Agent, for the benefit of itself and the Second Lien Noteholders, for fair consideration and reasonably equivalent value, second-priority liens on and security interests in (collectively, the "**Prepetition Second Lien Note Liens**", and together with the Prepetition First Lien Credit Facility Liens and Prepetition Foreign Loan Liens, the "**Prepetition Liens**") all "Collateral" as defined in the Second Lien Note Indenture (collectively, the "**Prepetition Second Lien Collateral**", and together with the Prepetition First Lien Collateral and Prepetition Foreign Loan Collateral, the "**Prepetition Collateral**"), subject to the terms of the First Lien/Second Lien Intercreditor Agreement dated as of February 7, 2014 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "**Intercreditor Agreement**"), among Barclays Bank PLC, as Credit Agreement Agent and First-Priority Collateral Agent, U.S. Bank National Association, as Notes Collateral Agent and Second-Priority Collateral Agent, SFX Entertainment, Inc., and the Subsidiaries of SFX Entertainment, Inc. named therein, which governs the relative rights and priorities of the First Lien Agent (on behalf of itself and the First Lien Lenders) and the Second Lien Agent (on behalf of itself and the Second Lien Noteholders) with respect to their shared interests in the Prepetition Collateral.

(xi)    None of the Prepetition Agents or Prepetition Lenders are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from any of the Prepetition Obligations.

(xii)    *Validity of Prepetition Liens and Prepetition Obligations.*    (a) The Prepetition Liens are valid, binding, enforceable, non-avoidable and perfected liens, with priority over any and all other liens (other than liens expressly permitted under the Prepetition Loan Documents, solely to the extent such permitted liens were existing, valid, enforceable, properly perfected and non-avoidable as of the Petition Date or that are perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code (the "**Permitted Prior Liens**")), subject to the terms of the Intercreditor Agreement; (b) the First Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the First Lien Loan Parties, enforceable in accordance with the terms of the First Lien Loan Documents (other than, to the extent applicable, in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (c) the Initial Foreign Loan Obligations constitute legal, valid, binding and non-avoidable obligations of the Foreign Loan Parties, enforceable in accordance with the terms of the Initial Foreign Loan Documents (other than, to the extent applicable, in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (d) the Second Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Second Lien Note Parties, enforceable in accordance with the terms of the Second Lien Note Documents (other than, to the extent applicable, in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (e) the Debtors and their estates hold no valid or enforceable claims (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, or setoff rights of any kind, and have and hereby are deemed to have waived, discharged and released any right they may have to (A) challenge the validity, enforceability, priority, security and perfection of any of the Prepetition Obligations, the Prepetition Loan Documents or the Prepetition Liens, respectively, (B) assert any and all claims (as defined in the Bankruptcy Code), against the Prepetition Agents or the Prepetition Lenders, and each of their respective officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives (collectively, the "**Released Parties**"), whether arising at law or in equity, including any recharacterization, subordination, avoidance, or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, in each case, arising out of, based upon or related to the Prepetition Loan Documents, the Prepetition Liens or the Prepetition Obligations, as applicable; *provided, however,* that, for the avoidance of doubt, notwithstanding anything contained in the Interim Orders, this Final Order or the DIP Loan Documents to the contrary, none of the Released Parties shall include any of the Debtors, any Sillerman Affiliates (as defined in the DIP Credit Agreement) and any of their respective officers, directors, equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultant, agents, and other representatives, in each case, in their capacities as such (collectively, the "**Excluded Parties**").

(xiii)    *Cash Collateral.* All of the Debtors' cash (and, in the case of the Foreign Loan Facility, all cash of SFXE Netherlands Holdings Cooperatief U.A. and SFXE Netherlands Holdings B.V.), whether existing on the Petition Date or thereafter, including, without limitation,

11

any cash in deposit accounts of the Debtors, or wherever located, constitutes cash collateral of the Prepetition Agents and the Prepetition Lenders, within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

      F.    *Findings Regarding Postpetition Financing*.

         (i)    *Request for Postpetition Financing.*  The Debtors seek authority, on a final basis, to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) enter into the Foreign Loan Assignment, (c) enter into one or more Foreign Loan Amendments, and (d) use Cash Collateral on the terms described herein to administer the Chapter 11 Cases and fund the operation of their businesses.  The Debtors seek final approval of the DIP Loan Documents and the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to this Final Order, and due and proper notice of the Final Hearing and this Final Order have been provided.  Good cause has been shown for the entry of this Final Order.

         (ii)    *Priming of Prepetition Liens.*  The priming of the Prepetition Liens on the Prepetition Collateral under section 364(d)(1) of the Bankruptcy Code, as contemplated by this Final Order and the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and stakeholders.  However, the Prepetition Agents and the Prepetition Lenders are entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) in exchange for the Debtors' use of such Prepetition Collateral (including Cash Collateral), solely to the extent of the diminution in value, if any, of the Prepetition Collateral (including Cash Collateral) resulting from (a) the use, sale or lease by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, (b) the imposition of the DIP Liens (as defined below) and the priming of the Prepetition Liens, and (c) the imposition of the automatic stay pursuant to section

362 of the Bankruptcy Code (collectively, the "**Diminution in Value**"), as more fully set forth herein.

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.*    The Debtors' need to use Cash Collateral on a final basis and to obtain credit pursuant to the DIP Facility as provided for herein on a final basis is urgent and necessary to avoid immediate and irreparable harm to the Debtors, their estates, their creditors and other parties-in-interest, and to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral. Without the ability to access the DIP Facility and the authority to use Cash Collateral, the Debtors, their estates and their creditors would suffer immediate and irreparable harm. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit on More Favorable Terms.*    Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than those provided under the DIP Facility and the DIP Loan Documents. The Debtors have been unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have been unable to obtain sufficient credit (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is

not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Postpetition financing is not otherwise available without granting to the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected priming security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein; (2) superpriority claims and liens; and (3) the other protections set forth in this Final Order. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time, and is in the best interests of all of their stakeholders.

(v)     *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Facility, the extension of credit under the DIP Facility and the authorization to use Cash Collateral (including, without limitation, the proceeds of the DIP Facility), the DIP Agent and the DIP Lenders require, and the Debtors have agreed, that the proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with this Final Order and the Approved Budget, solely (i) for the indefeasible payment in full of the First Lien Obligations in the aggregate amount of approximately $33,241,666.66; (ii) for the payment of prepetition amounts acceptable to the DIP Lenders as authorized by the Court pursuant to orders approving the first day motions filed by the Debtors; (iii) in accordance with the terms of the DIP Loan Documents and this Final Order (A) for general corporate and working capital purposes in the ordinary course of business, (B) for costs and expenses of administration of the Chapter 11 Cases, (C) for the payment of restructuring costs in connection with the Chapter 11 Cases; (iv) to make adequate protection payments required by paragraph 11 hereof; and (v) for the payment of the fees, costs and

expenses related to the DIP Facility and the Agency Fee Letter. For the avoidance of doubt, none of the Debtors will use any proceeds of the DIP Facility, any Foreign Loan Amendment or the Cash Collateral in a manner or for a purpose other than those consistent with the Approved Budget and this Final Order.

> G.    *Adequate Protection.*

> > a.    The First Lien Agent and the First Lien Lenders are each entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against the risk of Diminution in Value of their respective interests in the Prepetition First Lien Collateral only until the Discharge Date (as defined below) in the form of adequate protection liens and claims, and the payment of the reasonable and documented fees, costs and expenses incurred prior to the Discharge Date, including, without limitation, legal and other professionals' fees and expenses of the First Lien Agent and the First Lien Lenders, in each case, subject to the terms and conditions hereof and to the extent provided in the First Lien Documents.

> > b.    The Foreign Loan Agent and the Foreign Loan Lenders are each entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against the risk of Diminution in Value of their respective interests in the Prepetition Foreign Loan Collateral in the form of adequate protection liens and claims, and the payment of the reasonable and documented fees, costs and expenses incurred by the Foreign Loan Agent and the Foreign Loan Lenders, including, without limitation, legal and other professionals' fees and expenses of the Foreign Loan Agent and the Foreign Loan Lenders, in each case, subject to the terms and conditions hereof and to the extent provided in the Initial Foreign Loan Documents, compliance with the Approved Budget (subject to Permitted Variances), Budget and Variance

Reporting (as defined below) and certain other forms of adequate protection, as set forth in more detail herein.

c. The Second Lien Agent and the Second Lien Noteholders are each entitled, pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against the risk of Diminution in Value of their respective interests in the Prepetition Second Lien Collateral, including, among other things, adequate protection liens and claims, the payment of the reasonable and documented fees, costs and expenses of the Second Lien Agent and the Ad Hoc Committee (as defined below) (including, without limitation, legal and other professionals' fees and expenses of the Second Lien Agent and the Ad Hoc Committee), compliance with the Approved Budget (subject to Permitted Variances), Budget and Variance Reporting (as defined below) and certain other forms of adequate protection, in each case, subject to the terms and conditions hereof and as set forth in more detail herein.

H. *New Loan*. The DIP Loans (including the Interim Financing (as defined in the Amended Interim Order)) constitute new loans and financial accommodations from the DIP Lenders to the Debtors, separate and distinct from the loans and financial accommodations provided prior to the Petition Date under the Prepetition Loan Documents, and the proceeds of the DIP Facility and the Incremental Foreign Loan Facility may only be borrowed and such proceeds and the use of Cash Collateral may only be used in compliance with the Approved Budget, this Final Order, the DIP Loan Documents and any Foreign Loan Amendments.

I. *Sections 506(c) and 552(b)*. As a material inducement to the DIP Secured Parties to agree to provide the DIP Facility, and in exchange for (a) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out and the First Lien Deposit (as defined below), and (b) the Prepetition Agents' and the Prepetition

Lenders' agreement to (i) subordinate their Prepetition Liens, First Lien Lender Adequate Protection Liens (as defined below), Foreign Loan Lender Adequate Protection Liens (as defined below) and Second Lien Noteholder Adequate Protection Liens (as defined below) to the DIP Liens and the Carve-Out (and with respect to the Foreign Loan Agent, the Foreign Loan Lenders, the Second Lien Agent and Second Lien Noteholders, in respect of the First Lien Deposit), and (ii) consent to the use of Cash Collateral in accordance with and subject to the Approved Budget and the terms of this Final Order, each of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders are entitled to receive (1) a waiver of any "equities of the case" exceptions or claims under section 552(b) of the Bankruptcy Code, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the DIP Agent and the DIP Lenders that section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to section 364 of the Bankruptcy Code) subject to the terms hereof.

J.     *Good Faith of the DIP Agent and the DIP Lenders.*

(i)     *Willingness to Provide Financing.*  The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to:  (a) the entry by the Court of this Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Loan Documents (including the Approved Budget); (c) satisfaction by the Debtors, or waiver as provided by the DIP Loan Documents, of all conditions precedent set forth in the DIP Loan Documents; (d) authorization to enter into the Foreign Loan Amendments; and (e) entry of findings by the Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending postpetition credit to the Debtors pursuant to the DIP Loan Documents and this Final Order in good faith, and that the DIP Agent's and DIP Lenders'

claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order, the Interim Orders or any other order. In addition, the DIP Lenders have entered into the DIP Intercreditor Arrangement that governs the relative rights and priorities as between the Tranche A DIP Loans, on the one hand, and the Tranche B DIP Loans and the Foreign Loan Obligations, on the other hand (which arrangement shall be enforceable in accordance with its terms), with the parties thereto acknowledging that it constitutes a "subordination agreement" under section 510 of the Bankruptcy Code.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*. The extension of credit under the DIP Facility, governed by the terms and conditions of the DIP Loan Documents, the fees paid and to be paid thereunder, and the Amended Interim Order and this Final Order:  (a) are fair and reasonable; (b) are the best available to the Debtors under the circumstances; (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (d) are supported by reasonably equivalent value and fair consideration. The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Agent and the DIP Lenders. The use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

K.    _Notice_.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties-in-interest, including:  (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' consolidated list of their forty (40) largest unsecured creditors; (v) Pachulski Stang Ziehl & Jones LLP, as counsel to the Official Committee ("**Pachulski**"); (vi) Stroock & Stroock & Lavan LLP, as counsel to the DIP Agent and the DIP Lenders ("**Stroock**"); (vii) Kirkland & Ellis, LLP, as counsel to the Tranche A DIP Lender; (viii) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (ix) all financial institutions at which the Debtors maintain deposit accounts; (x) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; and (xi) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the final relief set forth in this Final Order.

L.    _Necessity of Entry_.  The Court concludes that entry of this Final Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses and enhance the Debtors' prospects for successful reorganization.

Based upon the foregoing findings and conclusions, the DIP Motion and the record made before the Court with respect to the DIP Motion at the Interim Hearing, the Emergency Hearing and the Final Hearing, as applicable, and otherwise, and upon the record of these cases, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, THAT:

1.    <u>DIP Motion Approved</u>.  The DIP Motion is hereby granted on a final basis in accordance with and subject to the terms and conditions set forth in this Final Order.   All objections to the final relief sought in the DIP Motion to the extent not withdrawn or resolved are hereby overruled on the merits.   All actions taken from and after the Petition Date by the Debtors, each of the Debtors' direct and indirect subsidiaries, the Foreign Loan Agent, the Foreign Loan Lenders, the DIP Agent and each of the DIP Lenders in connection with or reliance on the Interim Orders are hereby approved and   reaffirmed in full as if taken in connection with or in reliance on this Final Order.

2.    <u>Authorization of the DIP Facility</u>.

(a)    The DIP Facility is hereby approved on a final basis.  The Debtors were, by the Amended Interim Order, and are hereby expressly and immediately authorized and empowered to establish the DIP Facility, to execute, deliver and perform under and/or continue to be bound by the DIP Loan Documents, and to incur and perform the DIP Obligations (as defined below), in each case, in accordance with and subject to the terms of this Final Order, the Approved Budget and the DIP Loan Documents, and to execute, deliver and perform under any and all other instruments, certificates, agreements and documents which may be required, necessary or prudent for the performance by the applicable Debtors under the DIP Facility and the creation and perfection of the DIP Liens. The Debtors were, by the Amended Interim Order, and are hereby authorized, empowered and shall be obligated to pay, in accordance with this Final Order, the principal, interest, fees, expenses, legal fees and other amounts described in each of the DIP Loan Documents and all other documents comprising the DIP Facility as such become due, including, without limitation, closing fees, commitment fees, servicing fees, audit

fees, facility fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisors, financial advisors, accountants, and other consultants, in each case, to the extent provided in the DIP Loan Documents, which amounts, subject only to paragraph 26 hereof, shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect. Upon execution and delivery, the DIP Loan Documents shall represent, and shall continue to represent, valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates, and the DIP Obligations shall be due and payable, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents. Any DIP Loan Documents entered into from and after the Petition Date by any Debtor, any direct or indirect subsidiary of the Debtors, the Foreign Lien Agent, the Foreign Loan Lenders, the DIP Agent and the DIP Lenders prior to entry of this Final Order in connection with or in reliance upon the Interim Orders are hereby approved and ratified in full as if taken in connection with or reliance upon this Final Order.

(b)    For purposes hereof, the term "DIP Obligations" means (A) all amounts and other obligations and liabilities owing to the DIP Secured Parties under the Agency Fee Letter, the DIP Credit Agreement and all other DIP Loan Documents (including, without limitation, all "Obligations" (as defined in the DIP Credit Agreement) and shall include, without limitation, the principal, interest, fees, commitment fees, administrative agent fees, audit fees, the Agent Expenses (as defined in the DIP Credit Agreement), costs, expenses, charges (including, without limitation, the reasonable and documented fees and disbursements of the DIP Secured Parties, including the reasonable and documented fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants and other consultants), any obligations in respect of indemnity claims, whether contingent or absolute, or any other amounts that are or may become

21

due under the DIP Loan Documents, and (B) all Incremental Foreign Loan Obligations arising under any Foreign Loan Amendments, including, without limitation, all principal, interest, fees, costs, expenses or other amounts arising thereunder.

3.    <u>Authorization to Borrow</u>.  The Interim Financing was, by the Amended Interim Order, and is hereby approved on a final basis.  The Debtors are hereby immediately authorized, on a final basis, to draw upon the DIP Facility and borrow from the DIP Lenders under the DIP Facility in an aggregate principal amount of up to $87.6 million (inclusive of any amounts drawn under the DIP Facility prior to the date hereof in accordance with the Amended Interim Order), as to which committed but undrawn amounts may be reduced, on a dollar for dollar basis, by the principal amount of any Incremental Foreign Loan Obligations after giving effect to any Foreign Loan Amendment (provided that the DIP Facility may, with the prior written consent and approval of the Tranche B Lenders, in their sole and absolute discretion, be increased to provide for, in the form and manner to be determined by the Debtors and the Tranche B Lenders, (x) additional uncommitted $15 million in terms loans incremental Tranche B Loans and (y) a letter of credit facility, subject in each case to the terms and conditions set forth in this Final Order and the DIP Loan Documents.

4.    <u>DIP Obligations</u>.  The DIP Loan Documents shall evidence the DIP Obligations, which DIP Obligations, together with all of the adequate protection granted hereunder in favor of the Prepetition Agents and the Prepetition Lenders, shall be valid, binding and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"), and their creditors and other

parties-in-interest, in each case, in accordance with the terms of this Final Order and the DIP Loan Documents. No obligation, payment, transfer, or grant of security hereunder or under the DIP Loan Documents shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544 and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counter-claim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity. All DIP Obligations in respect of the Tranche A DIP Loans shall be senior in right of payment to all DIP Obligations in respect of the Tranche B DIP Loans to the extent set forth in Section 7.08 of the DIP Credit Agreement and the DIP Intercreditor Arrangement.

     5.    <u>DIP Liens</u>.

     (a)    As security for the DIP Obligations, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, on a final basis, subject to the Carve-Out and the First Lien Deposit, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first-priority security interests in and liens (collectively, the "**DIP Liens**") on all DIP Collateral (as defined below) as collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise of the DIP Obligations). The term "**DIP Collateral**" means all assets and properties (whether tangible, intangible, real, personal or mixed) of the Debtors, and any direct or indirect domestic and foreign subsidiary of each of the

Debtors, whether now owned by or owing to, or hereafter acquired by, or arising in favor of, the Debtors (including under any trade names, styles, or derivations thereof), and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located, before or after the Petition Date, including, without limitation: (i) all Prepetition Collateral;[5] (ii) all cash and cash equivalents; (iii) all funds in the DIP Collateral Deposit Priority Account (as defined below) or any other deposit account, securities account or other account of the Debtors and all cash and other property deposited therein or credited thereto from time to time; (iv) all accounts and other receivables (including for the avoidance of doubt all intercompany receivables owed to the Debtors, including, without limitation, all amounts owed to the Debtors under that certain Promissory Note between SFX-Totem Operating Pty Ltd and SFX Entertainment, Inc., dated February 23, 2016); (v) all contract rights; (vi) all instruments, documents and chattel paper;

---

[5]    Notwithstanding anything contained in this Final Order or the DIP Credit Agreement to the contrary, (A) the grant of any DIP Liens or adequate protection liens hereunder in DIP Collateral or Prepetition Foreign Collateral that constitutes (x) the brands, trade names, designs and other intellectual property currently existing or under request for registration relating to Tomorrowland and TomorrowWorld festivals, including any portion of the databases collected by licensees from Tomorrowland and TomorrowWorld festivals (collectively, the "**Festival IP**") that is the subject of the "Binding Term Sheet" dated June 20, 2014 (the "**Term Sheet**"), by and between M&M Management BVBA ("**M&M**") and SFX Entertainment, Inc., and (y) any and all Shares (as defined in the Term Sheet) and the 100,000 shares in SFX (as defined in the Term Sheet) that the Term Sheet provides are to be transferred to M&M (the "**Term Sheet Shares**"), in each case, shall be limited to the Debtors' (and any non-Debtor's affiliate's or subsidiary's) interests in such Festival IP and Term Sheet Shares, and (B) nothing contained in this Final Order, the DIP Credit Agreement, or any Foreign Loan Amendment shall affect the valid and enforceable rights, if any, of M&M and ID&T BVBA under the Term Sheet or the Joint Venture Agreement between M&M and ID&T International B.V. dated September 9, 2004, or any valid and enforceable interest (if any) that M&M and ID&T BVBA may have under applicable law in property owned by any foreign direct or indirect subsidiary of SFX Entertainment, Inc. that is not, as of the date hereof, a debtor in these chapter 11 cases (and all rights and remedies of the Debtors and each of its direct and indirect subsidiaries and affiliates with respect to the foregoing are hereby expressly preserved). The DIP Liens and the adequate protection liens in the Festival IP and the Term Sheet Shares shall be released if and to the extent each of the formation of TL IP (as defined in the Term Sheet), the transfer of the Term Sheet Shares and the consummation of the other transactions contemplated by the Term Sheet occurs, in each case, in accordance with and subject to the terms and conditions contained in definitive documentation governing each of the foregoing (the "**Definitive Documentation**") (which Definitive Documentation shall be subject in form and substance to the prior written consent of each of the Debtors, M&M and, so long as any DIP Obligations are outstanding, the Required Lenders, which consent, in each case, shall not be unreasonably withheld or delayed), whereupon the DIP Liens and adequate protection liens shall attach to the Debtors' (and any non-Debtor's affiliate's or subsidiary's) interests in TL IP and TL Belgium (as defined in the Term Sheet).

(vii) all securities (whether or not marketable); (viii) all goods, equipment, inventory and fixtures; (ix) all real property interests; (x) all interests in leaseholds, (xi) all franchise rights; (xii) all patents, trade names, trademarks (other than intent-to-use trademarks), copyrights and all other intellectual property; (xiii) all general intangibles; (xiv) all equity interests or capital stock, limited liability company interests, partnership interests and financial assets in domestic and foreign subsidiaries; (xv) all investment property; (xvi) all supporting obligations; (xvii) all letters of credit and letter of credit rights; (xviii) all claims and causes of action (including commercial tort claims) and the proceeds thereof if such claims and causes of actions or proceeds thereof were subject to a valid, binding, enforceable, non-avoidable and perfected Prepetition Lien, but excluding all claims and causes of action arising under Chapter 5 of the Bankruptcy Code and the proceeds thereof; (xix) all books and records (including, without limitation, customers lists, credit files, computer programs, printouts and other computer materials and records); (xx) to the extent not covered by the foregoing, all other assets or properties of the Debtors, whether tangible, intangible, real, personal or mixed; and (xxi) all products, offspring, profits and proceeds of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; *provided, however*, that the DIP Collateral shall not include Excluded Assets (as defined in the DIP Credit Agreement); *provided, further, however*, that the DIP Collateral shall include all proceeds and products of Excluded Assets; *provided, however*, that, with respect to the DIP Credit Agreement only, (x) any pledge of voting equity interests in a foreign subsidiary, or in a domestic holding company substantially all of the assets of which are one or more foreign subsidiaries, in excess of 65% of such voting equity

interests, and (y) any pledge of assets of a foreign subsidiary, shall, in the case of either (x) or (y) (but subject to the immediately following proviso), be void *ab initio* and of no force and effect if such pledge would result in adverse tax consequences (without regard to any existing tax attributes) to the Borrower or any of its subsidiaries as determined by the Required Lenders (it being understood, for the avoidance of doubt, that this proviso shall not apply to the Foreign Loan Facility or the Incremental Foreign Loan Facility); *provided, further, however*, that such pledge shall be valid and enforceable to the maximum extent that would not cause such pledge to result in adverse tax consequences to Borrower or any of its subsidiaries.

(b)    To the fullest extent permitted by applicable law, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or the payment of any fees or obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the DIP Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Final Order or in favor of the Prepetition Agents and the Prepetition Lenders in accordance with this Final Order.

6.    <u>Priority of DIP Liens.</u>

(a)    To secure the DIP Obligations, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, on a

final basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected DIP Liens in the DIP Collateral as follows:

      (i)    pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to a valid, perfected and non-avoidable security interest or lien as of the Petition Date, including all funds in the DIP Collateral Deposit Priority Account or any other account of the Debtors, subject only to the Carve-Out and the First Lien Deposit;

      (ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected junior liens on and security interests in all DIP Collateral, subject only to (x) Permitted Prior Liens, (y) the Carve-Out, and (z) the First Lien Deposit; and

      (iii)    pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority senior priming liens on and security interests in all Prepetition Collateral securing the Prepetition Obligations, wherever located, which senior priming liens and security interests in favor of the DIP Agent for the benefit of the DIP Lenders shall be senior to the Prepetition Liens, First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and the Second Lien Noteholder Adequate Protection Liens granted hereunder, subject only to (x) Permitted Prior Liens, (y) the Carve-Out, and (z) the First Lien Deposit.

      (b)    Except as expressly set forth herein, the DIP Liens and the Superpriority DIP Claim (as defined below): (i) shall not be made subject to or *pari passu* with (A) any lien, security interest or claim heretofore or hereinafter granted in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, any trustee or any other estate representative appointed or elected in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Cases, (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise, and (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

      7.    <u>Superpriority DIP Claim</u>. Effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order,

the DIP Agent and the DIP Lenders are granted, on a final basis, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (the "**Superpriority DIP Claim**"), for all of the DIP Obligations, (a) with priority over any and all administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, (i) administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, (ii) any claims allowed pursuant to the obligations under the Prepetition Loan Documents (other than the claims of the Initial Foreign Loan Agent, First Lien Agent and First Lien Lenders in respect of the First Lien Deposit), and (iii) the First Lien Lender Adequate Protection Claims, the Foreign Loan Lender Adequate Protection Claims, the Second Lien Noteholders' Adequate Protection Claims (as each is defined below), and (b) which shall at all times be senior to the rights of the Debtors or their estates, and any trustee appointed in the Chapter 11 Cases or any Successor Cases to the extent permitted by law. The Superpriority DIP Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral (including, without limitation, any and all claims (including commercial tort claims) and causes of action and the proceeds thereof if such claims and causes of actions or proceeds thereof were subject to a valid, binding, enforceable, non-avoidable and

28

perfected Prepetition Lien), but excluding all claims and causes of action arising under Chapter 5 of the Bankruptcy Code and the proceeds thereof. Notwithstanding the foregoing, the Superpriority DIP Claim shall be subject only to the Carve-Out and the claims of the Initial Foreign Loan Agent, First Lien Agent and the First Lien Lenders, in each case, in respect of the First Lien Deposit.

8.    No Obligation to Extend Credit. The DIP Agent and the DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the Required Lenders (as defined in the DIP Credit Agreement) in their sole and absolute discretion.

9.    Establishment of DIP Collateral Deposit Priority Account; Use of DIP Facility Proceeds; Establishment of First Lien Deposit Account.

(a)    *DIP Collateral Deposit Priority Account.* The Debtors shall deposit the proceeds of any borrowing under the DIP Facility, as well as the proceeds of any DIP Collateral, into a segregated account of the Debtors (the "**DIP Collateral Deposit Priority Account**"), the contents of which shall be invested at all times in cash and Cash Equivalents (as defined in the DIP Loan Documents); provided that (i) proceeds of any borrowing that are attributable to Bankruptcy Fees (as defined below) shall be deposited into the Professional Fee Account (as defined below), and (ii) proceeds of any borrowing that are attributable to the Refinancing (defined below) may be funded directly to the First Lien Agent. The DIP Collateral Deposit Priority Account shall be held at the DIP Agent or shall be subject to a control agreement with a securities intermediary acceptable to the DIP Agent, in form and substance satisfactory to the DIP Agent, which establishes "control" (as defined in the Uniform Commercial Code as in effect

from time to time in the State of New York) in favor of the DIP Agent for the benefit of the DIP Lenders, and withdrawals from such account shall only be used for the purposes permitted hereunder and under the DIP Loan Documents. Under no circumstances may any cash, funds, securities, financial assets or other property held in or credited to the DIP Collateral Deposit Priority Account or the Professional Fee Account or the proceeds thereof held therein or credited thereto be used other than as expressly permitted hereunder or in the DIP Loan Documents. The DIP Agent and the DIP Lenders are hereby authorized, but not required, to take possession of or control over (as defined in the Uniform Commercial Code as in effect from time to time in the State of New York), or take any other action in order to validate and perfect the security interests granted to them in the DIP Collateral Deposit Priority Account and the Professional Fee Account hereunder.

(b)     *Use of DIP Facility Proceeds and Cash Collateral.* From and after the Closing Date, the Debtors shall be permitted to make withdrawals from the DIP Collateral Deposit Priority Account, and the proceeds of the DIP Facility and Cash Collateral shall be used only for the following purposes, in each case, solely in accordance with and subject to this Final Order and the Approved Budget (subject to Permitted Variances): (i) concurrently with the making of the initial draw under the DIP Facility, for the indefeasible payment in full of the First Lien Obligations in the aggregate amount of approximately $33,241,666.66 and the establishment of the First Lien Deposit; (ii) for the payment of prepetition amounts acceptable to the DIP Lenders as authorized by the Court pursuant to orders approving the first day motions filed by the Debtors; (iii) in accordance with the terms of the DIP Loan Documents and this Final Order, (A) for general corporate and working capital purposes in the ordinary course of business; (B) for costs and expenses of administration of the Chapter 11 Cases; (C) for the payment of

restructuring costs in connection with the Chapter 11 Cases; (iv) to make adequate protection payments required by paragraph 11 hereof; and (v) for the payment of the fees, costs and expenses related to the DIP Facility, including, without limitation, as set forth in the Agency Fee Letter. For the avoidance of doubt, none of the Debtors will use any proceeds of the DIP Facility or the Cash Collateral in a manner or for a purpose other than those consistent with the Approved Budget and this Final Order.

(c)     *Payoff of First Lien Obligations and Automatic Termination of Prepetition First Lien Credit Facility Liens.* Effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order), the Debtors were and hereby continue to be authorized to draw on the DIP Facility to pay in full the First Lien Obligations in the aggregate amount of approximately $33,241,666.66, which amounts were paid prior to or concurrently with making the initial draw under the DIP Facility (the "**Refinancing**"), and such payment is hereby approved and ratified in full; *provided, however,* in the event that there is a timely successful Challenge, pursuant to the limitations contained in paragraph 31 hereof, to the validity, enforceability, extent, perfection or priority of the First Lien Obligations then the Court shall have the power to unwind and otherwise modify, after notice and hearing, the Refinancing, as the Court shall determine. The Prepetition First Lien Credit Facility Liens on the Prepetition First Lien Collateral, and the First Lien Lender Adequate Protection shall each automatically and irrevocably terminate, and all First Lien Obligations, the First Lien Lender Adequate Protection Liens and the First Lien Lender Superpriority Claim shall be deemed indefeasibly paid in full and irrevocably (and automatically and without further action) released and discharged (and the First Lien Agent shall execute and deliver such agreements to evidence and effectuate such termination and release as the DIP Agent may request (subject to reimbursement of the

31

reasonable fees and expenses the First Lien Agent may incur in connection therewith), and any rights or remedies provided herein or under any First Lien Loan Documents shall be of no further force and effect, upon the date (the "**Discharge Date**") that is the first day after the expiration of the Challenge Period without a timely Challenge (as defined below) being brought, or upon the final resolution of a Challenge brought in compliance with the provisions of this Final Order and applicable law (where such Challenge did not have the effect of successfully impairing any of the First Lien Obligations, as applicable).  Notwithstanding anything in this Final Order to the contrary, the First Lien Obligations shall not be deemed discharged hereunder or "paid in full" hereunder with respect to any indemnity, unliquidated or contingent claims in accordance with the First Lien Loan Documents that have not been paid, except to the extent provided in such First Lien Loan Documents.

(d)    *First Lien Deposit Account.* The Debtors were, by the Amended Interim Order (effective as of entry of the Original Interim Order), and hereby continue to be authorized to establish with the First Lien Agent an account (the "**First Lien Deposit Account**") into which the sum of $125,000 has been deposited as collateral security for any reasonable and documented fees, costs and expenses (including, without limitation, fees, costs and expenses of the professionals to the Initial Foreign Loan Agent, the First Lien Agent and First Lien Lenders) or reimbursement or indemnity obligations that the Debtors may have to the First Lien Agent or the First Lien Lenders under the terms of the First Lien Loan Documents, as to which a claim or demand for payment is made in writing pursuant to the terms set forth in paragraph 11 hereof prior to the Discharge Date (the "**First Lien Deposit**"), which First Lien Deposit shall (until the date that is one (1) business day after the Discharge Date) be held in escrow by counsel to the First Lien Agent, and the establishment of such account is hereby ratified and approved on a

final basis.  The First Lien Agent (for itself and the First Lien Lenders) and the Initial Foreign

Loan Agent shall have a first-priority lien (the "**First Lien Deposit Account Liens**") on the First

Lien Deposit Account and all amounts held therein.  Upon the Discharge Date, the First Lien

Deposit Account Liens shall automatically terminate and cease to exist, and all remaining

amounts held in the First Lien Deposit Account or credited thereto, after reserve for or

satisfaction of any reimbursement obligations that are incurred prior to the Discharge Date and

are due and payable, shall be released promptly, to the Debtors by wire transfer, in immediately

available funds, to the DIP Collateral Deposit Priority Account as soon as possible, in any event

no later than the date that is one (1) business day after the Discharge Date.

        (e)     *Foreign Loan Assignment.*  The Foreign Loan Assignment was authorized

and approved by the Amended Interim Order on a final basis and is hereby ratified and approved.

Each of the Debtors, the Foreign Loan Parties and the Foreign Loan Lenders, as applicable, were

authorized by the Amended Interim Order to, and did, enter into the Assignment Agreement and

were further authorized by the Amended Interim Order to perform all acts, execute such

documents and instruments, and undertake such transactions as may be necessary to implement

the Foreign Loan Assignment and the Assignment Agreement (and the Initial Foreign Agent and

Initial Foreign Loan Lenders were authorized by the Amended Interim Order to seek

reimbursement of its fees and expenses incurred in connection with the Foreign Loan

Assignment from the First Lien Deposit), each of which, for the avoidance of doubt, is hereby

approved and ratified on a final basis.  Each of the Successor Foreign Loan Agent and Foreign

Loan Lenders was granted by the Amended Interim Order (effective as of entry of the Original

Interim Order), subject to the Carve-Out, (A) valid, enforceable, non-avoidable, automatically

and fully perfected liens on and security interests in all DIP Collateral, including, without

limitation, all Cash Collateral, to secure the Incremental Foreign Loan Obligations, which liens and security interests shall be included in the DIP Liens, subject to the rankings and priorities set forth in paragraph 5 hereof, and (B) allowed superpriority administrative expense claims in respect of all Incremental Foreign Loan Obligations, which shall be included in the Superpriority DIP Claim status set forth in paragraph 7 hereof, and such liens, security interests and allowed super-priority administrative expense claims are, for the avoidance of doubt, hereby approved and ratified on a final basis.

(f)     *Amendment of Foreign Loan Facility.* Each of the Debtors, the Foreign Loan Parties, the DIP Agent and DIP Lenders, the Foreign Loan Agent and Foreign Loan Lenders were, and continue to be, authorized (without the need for further notice, hearing or order of this Court) to add additional Foreign Loan Parties to the Foreign Loan Facility, increase the principal amount of the Foreign Loan Facility (the "**Incremental Foreign Loans**"), amend, supplement and modify the Foreign Loan Facility, and to incur, assume, guarantee and pledge their assets to secure their obligations thereunder (the "**Incremental Foreign Loan Facility**" or the "**Incremental Foreign Loan Obligations**" and together with the Initial Foreign Loan Obligations, the "**Foreign Loan Obligations**"), in accordance with and subject to the terms of one or more written amendments, each of which shall be in form and substance and subject to such terms and conditions that are acceptable to the Debtors, the DIP Lenders and Foreign Loan Lenders in their sole and absolute discretion (each, together with any and all documents, instruments and certificates executed, delivered or filed in connection therewith, a "**Foreign Loan Amendment**", and together with the Initial Foreign Loan Documents, the "**Foreign Loan Documents**"); *provided, however,* that the principal amount of the Foreign Loan Facility may not be increased pursuant to one or more Foreign Loan Amendments by more than the aggregate

principal amount of the committed but undrawn portion of the DIP Facility under the DIP Credit Agreement plus an additional $15 million; *provided further, however,* that the principal amount of any Incremental Foreign Loan Obligations after giving effect to any Foreign Loan Amendment shall reduce, on a dollar for dollar basis, the principal amount available but committed and undrawn under the DIP Facility; *provided further, however,* that the DIP Intercreditor Arrangement shall provide that notwithstanding anything to the contrary in the Foreign Loan Documents, any amendments to the Foreign Loan Documents shall require the consent of both (x) the majority Tranche A DIP Lenders and the majority Tranche B DIP Lenders plus the majority lenders holding the Foreign Loans and the Incremental Foreign Loans.

### Authorization to Use Cash Collateral and Adequate Protection

10.    <u>Authorization to Use Cash Collateral</u>.  The Debtors are authorized to use the Cash Collateral in accordance with and subject to the terms and conditions of the Approved Budget, the DIP Loan Documents and this Final Order.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any of the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order and the DIP Loan Documents and in accordance with the Approved Budget and this Final Order.

11.    <u>Adequate Protection</u>.

(a)    *First Lien Adequate Protection.* In consideration for the Debtors' use of the Prepetition First Lien Collateral (including Cash Collateral), and to protect the First Lien Agent and the First Lien Lenders against the risk of Diminution in Value of their interests in the Prepetition First Lien Collateral, the First Lien Agent and the First Lien Lenders shall receive, solely to the extent of such Diminution in Value, and subject to <u>paragraph 9(c)</u> hereof, the following adequate protection (collectively, the "**First Lien Lender Adequate Protection**"):

i.   *First Lien Lender Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the First Lien Agent and the First Lien Lenders are hereby granted, on a final basis, continuing, valid, binding, enforceable and automatically perfected postpetition liens on all DIP Collateral to the extent of any Diminution in Value of the First Lien Noteholders' interest in the Prepetition Collateral (the "**First Lien Lender Adequate Protection Liens**"), which liens shall be (x) junior only to the DIP Liens, the Permitted Prior Liens (other than the Second Lien Noteholder Adequate Protection Liens and the Prepetition Second Lien Note Liens), the Carve-Out and, as it relates to the First Lien Deposit, the First Lien Deposit Account Liens, and (y) senior in priority to the Second Lien Noteholder Adequate Protection Liens, the Prepetition Second Lien Note Liens, and all other liens, including the Prepetition Liens.  Except for the DIP Liens, the Foreign Loan Lender Adequate Protection Liens, the Carve-Out, the First Lien Deposit Account Liens and Permitted Prior Liens (other than the Second Lien Noteholder Adequate Protection Liens and the Prepetition Second Lien Note Liens), the First Lien Lender Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the First Lien Obligations owed under the First Lien Loan Documents are paid in full.  The First Lien Lender Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be

*pari passu* with or senior to the Prepetition First Lien Credit Facility Liens or the First Lien Lender Adequate Protection Liens.

   ii. *First Lien Lender Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the First Lien Agent and the First Lien Lenders are hereby further granted, on a final basis, an allowed superpriority administrative expense claim (the "**First Lien Lender Superpriority Claim**"), which claim shall be (x) junior to the DIP Superiority Claim, the First Lien Deposit and the Carve-Out, and (y) *pari passu* with the Foreign Loan Lender Superpriority Claim, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, (i) administrative expenses or other claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, or (ii) any claims allowed pursuant to the obligations under the Prepetition Loan Documents.  The First Lien Lender Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral (including, without limitation, any and all claims (including commercial tort claims) and causes of action and the proceeds thereof if such claims and causes of actions or proceeds thereof were

subject to a valid, binding, enforceable, non-avoidable and perfected Prepetition Lien, but excluding all claims and causes of action arising under Chapter 5 of the Bankruptcy Code and the proceeds thereof). Except for the DIP Superiority Claim, the First Lien Deposit and the Carve-Out, the First Lien Lender Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the First Lien Obligations owed under the First Lien Documents are paid in full.

iii. *First Lien Adequate Protection Payments.* The Debtors are authorized and directed, on a final basis, to pay all reasonable and documented prepetition and postpetition fees, costs and expenses of the First Lien Agent and First Lien Lenders incurred prior to the Discharge Date (including all reasonable and documented fees, costs, disbursements and expenses of counsel to the First Lien Agent and First Lien Lenders) first from the First Lien Deposit in the First Lien Deposit Account until the First Lien Deposit is exhausted, in each case, subject to the terms and conditions hereof and to the extent provided in the First Lien Documents. The invoices for such fees and expenses set forth in this paragraph 11(a)(iii) may be redacted to protect against applicable privilege and confidential issues, shall not be required to comply with the U.S. Trustee guidelines and shall be provided to counsel to the Debtors, with a copy to the U.S. Trustee, counsel to the Official Committee and Stroock (collectively, the "**Fee Notice Parties**"). If no objection to payment of the requested fees and expenses are made in writing by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "**Fee Objection Period**"), then, without further order of, or application to, the

Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors first from the First Lien Deposit Account. If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

(b)      *Foreign Lien Adequate Protection.* In consideration for the Debtors' use of the Prepetition Foreign Loan Collateral (including Cash Collateral), and to protect the Foreign Loan Agent and the Foreign Loan Lenders against the risk of Diminution in Value of their interests in the Prepetition Foreign Loan Collateral, the Foreign Loan Agent and the Foreign Loan Lenders shall receive, solely to the extent of such Diminution in Value, and subject to paragraph 9(c) hereof, the following adequate protection (collectively, the "**Foreign Loan Lender Adequate Protection**"):

i.      *Foreign Loan Lender Adequate Protection Liens.*  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the Foreign Loan Agent and the Foreign Loan Lenders are hereby granted, on a final basis, continuing, valid, binding, enforceable and automatically perfected postpetition liens on all DIP Collateral to the extent of any Diminution in Value of the Foreign Loan Lenders' interest in the Prepetition Collateral (the "**Foreign Loan  Lender Adequate Protection Liens**"), which liens will be (x) junior only to the DIP Liens, the Permitted Prior Liens, the Carve-Out and, as it relates to the First Lien Deposit, the First Lien Deposit Account Liens, and (y) senior in priority to all other liens, including the Prepetition Liens.  Except for the DIP Liens, the First

Lien Lender Adequate Protection Liens, the Carve-Out, the First Lien Deposit Account Liens and Permitted Prior Liens, the Foreign Loan Lender Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Foreign Loan Obligations owed under the Foreign Loan Documents are paid in full. The Foreign Loan Lender Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Foreign Loan Credit Facility Liens or the Foreign Loan Lender Adequate Protection Liens.

    ii.  *Foreign Loan Lender Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the Foreign Loan Agent and the Foreign Loan Lenders are hereby further granted, on a final basis, an allowed superpriority administrative expense claim (the "**Foreign Loan Lender Superpriority Claim**"), which claim shall be (x) junior to the Superpriority DIP Claim, the First Lien Deposit and the Carve-Out, and (y) *pari passu* with the First Lien Lender Superpriority Claim, but shall be senior to and have priority over any other administrative expense claims, unsecured claims and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, (i) administrative expenses or other claims of the

kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, or (ii) any claims allowed pursuant to the obligations under the Prepetition Loan Documents.  The Foreign Loan Lender Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all DIP Collateral (including, without limitation, any and all claims (including commercial tort claims) and causes of action and the proceeds thereof if such claims and causes of actions or proceeds thereof were subject to a valid, binding, enforceable, non-avoidable and perfected Prepetition Lien, but excluding all claims and causes of action arising under Chapter 5 of the Bankruptcy Code and the proceeds thereof).  Except for the Superpriority DIP Claim, the First Lien Deposit and the Carve-Out, the Foreign Loan Lender Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Foreign Loan Obligations owed under the Foreign Loan Documents are paid in full.

        iii.    *Foreign Loan Adequate Protection Payments.*  The Debtors are authorized and directed, on a final basis, to pay all documented prepetition and postpetition fees, costs and expenses of the Foreign Loan Agent and the Foreign Loan Lenders (including all documented fees, costs, disbursements and expenses of each counsel, including lead bankruptcy

counsel, local Delaware counsel, and counsel in each other applicable jurisdiction, and any other professional advisor to the Foreign Loan Agent and the Foreign Loan Lenders), in each case, subject to the terms and conditions hereof. The invoices for such fees and expenses set forth in this paragraph 11(b)(iii) may be redacted to protect against applicable privilege and confidential issues and shall not be required to comply with the U.S. Trustee guidelines and shall be provided to counsel to the Debtors, with a copy to the Fee Notice Parties. If no objection to payment of the requested fees and expenses are made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors first from the First Lien Deposit Account. If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

(c)    *Second Lien Noteholder Adequate Protection.* In consideration for the Debtors' use of the Prepetition Second Lien Collateral (including Cash Collateral), and to protect the Second Lien Agent and the Second Lien Noteholders against the risk of Diminution in Value of their interests in the Prepetition Second Lien Collateral, the Second Lien Agent and the Second Lien Noteholders shall receive, solely to the extent of such Diminution in Value, the following adequate protection (collectively, the "**Second Lien Noteholder Adequate Protection**"):

i.    *Second Lien Noteholder Adequate Protection Liens.* Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, effective as of entry of the Original

Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the Second Lien Agent and the Second Lien Noteholders are hereby granted, on a final basis, continuing, valid, binding, enforceable and automatically perfected postpetition liens on all DIP Collateral to the extent of any Diminution in Value of the Second Lien Noteholders' interest in the Prepetition Collateral (the "**Second Lien Noteholder Adequate Protection Liens**"), which liens will be (x) junior only to the DIP Liens, the First Lien Lender Adequate Protection Liens, the Foreign Loan Lender Adequate Protection Liens, the Permitted Prior Liens, the Carve-Out and the First Lien Deposit Account Liens, and (y) senior in priority to all other liens, including the Prepetition Liens. Except for the DIP Liens, the First Lien Lender Adequate Protection Liens, the Foreign Loan Lender Adequate Protection Liens, the Carve-Out, the First Lien Deposit Account Liens and Permitted Prior Liens, the Second Lien Noteholder Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Second Lien Obligations owed under the Second Lien Note Documents are paid in full. The Second Lien Noteholder Adequate Protection Liens shall not be subject to sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Second Lien Note Liens or the Second Lien Noteholder Adequate Protection Liens.

ii.      *Second Lien Noteholder Superpriority Claims.* Pursuant to section 507(b) of the Bankruptcy Code, effective as of entry of the Original Interim Order (as amended

and superseded by the Amended Interim Order) and hereby ratified by this Final Order, the

Second Lien Agent and the Second Lien Noteholders are hereby further granted, on a final basis,

an allowed superpriority administrative expense claim (the "**Second Lien Noteholder**

**Superpriority Claim**"), which claim shall be junior to the DIP Superiority Claim, the First Lien

Lender Superpriority Claims, the Foreign Loan Lender Superpriority Claims, the Carve-Out and

the First Lien Deposit, but shall be senior to and have priority over any other administrative

expense claims, unsecured claims and all other claims against the Debtors or their estates in any

of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or

nature whatsoever, including, without limitation, (i) administrative expenses or other claims of

the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a),

503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and

any other provision of the Bankruptcy Code, whether or not such expenses or claims may

become secured by a judgment lien or other non-consensual lien, levy, or attachment, or (ii) any

claims allowed pursuant to the obligations under the Prepetition Loan Documents.  The Second

Lien Noteholder Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the

Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the

Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable

from and have recourse to all DIP Collateral (including, without limitation, any and all claims

(including commercial tort claims) and causes of action and the proceeds thereof if such claims

and causes of actions or proceeds thereof were subject to a valid, binding, enforceable, non-

avoidable and perfected Prepetition Lien, but excluding all claims and causes of action arising

under Chapter 5 of the Bankruptcy Code and the proceeds thereof).  Except for the DIP

Superiority Claim, the First Lien Lender Superpriority Claim, the Foreign Loan Lender

Superpriority Claim, the Carve-Out and the First Lien Deposit, the Second Lien Noteholder Superpriority Claim shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases until such time as the Second Lien Obligations owed under the Second Lien Note Documents are paid in full.

   iii.  *Second Lien Adequate Protection Payments.* The Debtors are authorized and directed, on a final basis, to pay all prepetition and postpetition fees, costs and expenses of (i) the Second Lien Agent (including all reasonable and documented fees, costs, disbursements and expenses of one outside counsel and one local counsel), and (ii) the members of the ad hoc committee of certain Second Lien Noteholders represented by Stroock (the "**Ad Hoc Committee**"), including all reasonable and documented fees, expenses and disbursements of (A) Stroock, (B) their Delaware local counsel, Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**"), (C) Houlihan Lokey Capital, Inc. ("**Houlihan**"), as financial advisor to the Ad Hoc Committee (pursuant to a letter of engagement among Stroock, Houlihan and certain of the Debtors), (D) RESOR NV ("**RESOR**") and Taylor Wessing LLP ("**Taylor Wessing**"), as foreign counsel to the Ad Hoc Committee, and (E) such other counsel professionals as may be retained by the Ad Hoc Committee in their sole discretion ((A), (B), (C), (D), and (E), collectively, the "**Ad Hoc Committee Professionals**"). The invoices for such fees and expenses set forth in this paragraph 11(c) may be redacted to protect against applicable privilege and confidential issues and shall not be required to comply with the U.S. Trustee guidelines and shall be provided to the Fee Notice Parties. If no objection to payment of the requested fees and

expenses are made, in writing by any of the Fee Notice Parties within the Fee Objection Period, then, without further order of, or application to, the Court or notice to any other party, such fees and expenses shall be promptly paid by the Debtors.  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and the undisputed portion shall be promptly paid by the Debtors.

12.    **Additional Adequate Protection.**  As further adequate protection for the Foreign Loan Agent and the Foreign Loan Lenders, the Second Lien Agent and the Second Lien Noteholders, the Debtors are authorized and directed, on a final basis, as follows:

(a)    *Budget Compliance.*  The Debtors and the Foreign Loan Parties shall comply with the Approved Budget (subject to Permitted Variances), and all Budget Variance Reporting requirements set forth herein and in the DIP Loan Documents.

(b)    *Information; Access to Books and Records.*  The Debtors will provide to the DIP Agent and the DIP Lenders (subject to the execution of appropriate confidentiality agreements), such reports and information required to be delivered pursuant to the DIP Credit Agreement (including, without limitation, pursuant to Article V of the DIP Credit Agreement), and such other reports and information concerning the Debtors and the Foreign Loan Parties as may be reasonably requested by the DIP Agent or the DIP Lenders, with copies to the Official Committee.  In addition, without limiting the rights (if any) of access and information afforded to the First Lien Agent, First Lien Lenders, Foreign Loan Agent, Foreign Loan Agent, Foreign Loan Lenders, Second Lien Agent, the Second Lien Noteholders, the DIP Agent and the DIP Lenders under this Final Order and/or the DIP Loan Documents (including such access and

information required under Article V of the DIP Credit Agreement), the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent, the DIP Lenders, the Second Lien Agent, the Ad Hoc Committee, the Foreign Loan Agent, the Foreign Loan Lenders and the Official Committee reasonable access to the Debtors' premises and their books and records in accordance with this Final Order and/or the DIP Loan Documents and shall reasonably cooperate, consult with, and provide to such persons all such information concerning the Debtors and the Foreign Loan Parties as may be reasonably requested.   In addition, the Debtors authorize their direct and indirect subsidiaries, as well as each of their respective independent certified public accountants, financial advisors, investment bankers, and consultants, to cooperate with, consult with, and provide to the DIP Agent and each of the DIP Lenders, the Second Lien Agent, the Ad Hoc Committee, the Foreign Loan Agent, the Foreign Loan Lenders and the Official Committee (subject to execution of an appropriate confidentiality agreement) all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors and the Foreign Loan Parties.

13.    <u>Adequate Protection Reservation</u>.  The receipt by the First Lien Agent, First Lien Lenders, Foreign Loan Agent, Foreign Loan Lenders, Second Lien Agent and the Second Lien Noteholders of the adequate protection provided pursuant to paragraphs 11 and 12 of this Final Order shall not be deemed an admission that the interests of the First Lien Agent, First Lien Lenders, Foreign Loan Agent, Foreign Loan Lenders, Second Lien Agent and the Second Lien Noteholders are indeed adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the First Lien Agent, First Lien Lenders, Foreign Loan Agent, Foreign Loan Lenders, Second Lien Agent and the Second Lien Noteholders to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection; provided that any such

additional or alternative adequate protection approved by the Court shall at all times be subordinate and junior to the DIP Obligations and the DIP Liens granted under the Amended Interim Order, this Final Order and the DIP Loan Documents, the Carve-Out and the First Lien Deposit. Without limiting the foregoing, nothing herein shall impair or modify the rights of the Prepetition Agents or Prepetition Lenders under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate for any Diminution in Value during any of the Chapter 11 Cases subject to the Carve-Out and the First Lien Deposit.

### Provisions Common to DIP Financing and Use of Cash Collateral Authorization

14.    _Amendments_. The Debtors, the DIP Agent and the DIP Lenders were, and are, hereby authorized and empowered to, on a final basis, enter into the DIP Credit Agreement and any other DIP Loan Documents and implement, in accordance with the terms of the DIP Loan Documents, any nonmaterial modifications (including, without limitation, nonmaterial amendments, supplements, or waivers) of the DIP Loan Documents without further notice and hearing or approval of this Court. The Debtors, the DIP Agent or the DIP Lenders shall provide notice to the Official Committee of any such nonmaterial modifications. No waiver, modification, or amendment of any of the provisions hereof or of the DIP Loan Documents shall be effective unless set forth in writing, signed by the Debtors and the DIP Agent (after having obtained the approval of the Required Lenders). Any proposed material amendment to the DIP Loan Documents, including any Foreign Loan Amendment, shall be filed on the Court's docket and provide counsel to the Official Committee and other parties in interest five (5) business days from the date of filing of such material amendment to object in writing to such amendment, and if no objections are received, shall be submitted under certification of counsel. If no objections

are timely received during such five (5) business day notice period, the Debtors, the DIP Agent and the DIP Lenders are authorized and empowered to implement, in accordance with the terms of the DIP Loan Documents, such material amendment, without further notice, hearing or approval of this Court. Any proposed material amendment to the DIP Loan Documents that is subject to a timely filed objection in accordance with this paragraph shall be subject to further order of this Court.

15.   Budget Covenants.

(a)   *Initial Budget and Approved Budget*. The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders, and the DIP Agent and the DIP Lenders have approved, (x) an initial 13-week budget projecting domestic operations (on a consolidated basis) and an initial 13-week budget projecting foreign operations (on a consolidated basis), and, in each case, containing line-items of sufficient detail to show receipts and disbursements for such 13-week period, including, without limitation, the anticipated weekly uses of the DIP Loans and Cash Collateral for such period, and which provides, among other things, for the payment of the fees and expenses, including professional fees, relating to the DIP Loans, ordinary course expenses, fees and expenses related to the Chapter 11 Cases, and working capital and other general corporate needs, copies of which were attached as Exhibit A to the Original Interim Order, and (y) a projected statement of consolidated cash flows on a monthly basis for the six (6) month period following the Petition Date, in form and substance satisfactory to the Required Lenders (the "**Initial Cash Flow Statement**") ((x) and (y) collectively, the "**Initial Budget**"). The Initial Budget and the Initial Cash Flow Statement, and each subsequent Updated Budget (as defined below) hereunder, shall be deemed the "**Approved Budget**" for all purposes under the DIP Loan Documents until superseded by another Approved Budget pursuant to the provisions

set forth below. The Approved Budget shall also contain the Professional Fee Schedule for the Retained Professionals.

(b)    *Updated Budget*.    On or before 5:00 p.m. New York City time on (i) Thursday February 25, 2016, and (ii) thereafter, the third Thursday of each calendar month (commencing with March 17, 2016), in each case, the Debtors shall deliver to the DIP Agent and the DIP Lenders (1) updated 13-week budgets (or the previously supplemented Approved Budget, as the case may be), covering the 13-week period that commences with the week such updated budgets are delivered, consistent with the form and level of detail of the Initial Budget and otherwise in form and substance satisfactory to the DIP Agent at the direction of the Required Lenders (including, without limitation, disbursements relating to festivals located in North America and selling, general and administrative disbursements for operations located in North America), and (2) an updated cash flow statement covering the six (6) month period that commences with the month such updated statement is delivered, consistent with the form and level of detail of the Initial Cash Flow Statement and otherwise in form and substance satisfactory to the DIP Agent at the direction of the Required Lenders (clauses (1) and (2) collectively, an "**Updated Budget**"). Upon (and subject to) the approval of any such Updated Budget by the DIP Agent (as directed by, and with the prior written consent of, the Required Lenders in their sole discretion), such Updated Budget shall constitute the then-Approved Budget; *provided, however*, that in the event the DIP Agent and Debtors are unable to reach agreement regarding an Updated Budget, then the Approved Budget most recently in effect shall remain the Approved Budget; *provided, further, however*, that the failure of the Debtors to agree with the DIP Agent and the DIP Lenders on an Updated Budget within five (5) calendar days of any date upon which the Debtors are obligated to deliver an Updated Budget shall constitute an

Event of Default under and as defined in the DIP Credit Agreement; *provided, further, however*, that the Debtors shall provide the DIP Lenders with a revised Updated Budget on or before March 18, 2016 that must be acceptable to the Required Lenders. Contemporaneously with delivery of the Updated Budget and other reports required by this Final Order, the Debtors shall deliver the same to counsel for the Official Committee.

(c)    *Variance Reporting*. By no later than 5:00 p.m. New York City time on the Wednesday of each calendar week, commencing with Wednesday, February 10, 2016 (each such date, a **"Variance Report Date"**), the Debtors shall deliver to the DIP Agent and the DIP Lenders a variance report setting forth, in reasonable detail, any differences between actual receipts and disbursements verses proposed receipts and disbursements set forth in the Approved Budget for the prior week, on a line-item and aggregate basis, on a weekly basis and a cumulative basis from the beginning of the period covered by the then-current Approved Budget, together with a statement certifying compliance with the Budget Covenants (as defined below) (with supporting back-up in reasonable detail) explaining in reasonable detail all material variances from the then-current Approved Budget for such week/period and certifying that no disbursements inconsistent with the Approved Budget have been made.

(d)    *Permitted Variances*. The Debtors shall not permit any of the following to occur (the **"Budget Covenants"**): (i) a negative variance to exceed the greater of $1.75 million or 15% from the "Total Operating Receipts" line in the Approved Budget, tested on a cumulative weekly basis over (a) a rolling three-week period for the week ending Saturday, February 20, 2016, (b) a rolling four-week period for the week ending Saturday, February 27, 2016, and (c) a rolling five-week period for each week ending thereafter; (ii) a negative variance to exceed the greater of $2.0 million or 15% from the "Total Operating Disbursements" line in the Approved

Budget, tested on a cumulative weekly basis over (a) a rolling three-week period for the week ending Saturday, February 20, 2016, (b) a rolling four-week period for the week ending Saturday, February 27, 2016, and (c) a rolling five-week period for each week ending thereafter; (iii) a negative variance to exceed the greater of $2.0 million or 15% from the "Domestic Net Cash Flow Before DIP Financing" line, less the "Net Cash Flow from Financing Activities" line, in the Approved Budget, tested on a cumulative weekly basis for the period starting on February 1, 2016 and ending on Saturday of each week, commencing with the week ending Saturday, February 20, 2016; (iv) the "Domestic Net Cash Flow Before DIP Financing" line item, less the "Net Cash Flow from Financing Activities" line, in the Approved Budget, tested on a cumulative monthly basis for the period starting on February 1, 2016 and ending on the last day of each fiscal month to be less than an amount that is equal to the greater of a $2.0 million cushion or a 15% cushion to the applicable amounts included in the Approved Budget; (v) unrestricted cash and cash equivalents of the Borrower's direct and indirect foreign subsidiaries to be less than the following: (x) $5.0 million at any time during February, March or April of 2016, (y) $7.5 million at any time during May 2016 or (z) $10.0 million at any time during June 2016 or any month thereafter; and (vi) any Debtor makes any disbursement not contemplated by the Approved Budget (giving effect to the foregoing variances) without having received the prior written consent of the Required Lenders (which consent may be withheld in their sole discretion).

(e)    *Approval Required for Variances.*  Variances (other than as permitted above), if any, from the Approved Budget, and any proposed changes to the Approved Budget, shall be subject to written agreement by the Debtors and the Required Lenders (in their sole and absolute discretion).  The Official Committee shall be given notice of any such agreement.  Any incurrence or payment by any of the Debtors of expenses (x) other than as set forth in the

Approved Budget and (y) in excess of the permitted variances shall constitute an Event of Default under and as defined in the DIP Credit Agreement; *provided, however*, that disbursements to the Ad Hoc Committee Professionals shall not be included or otherwise considered for such variance testing.

(f)    *Payment of Professional Fees.*  Notwithstanding anything to the contrary herein, the Debtors shall ensure that, for the period from and after the Petition Date (but prior to the occurrence of a DIP Termination Date), the Debtors shall not make payments to the Retained Professionals (defined below) for any fees and expenses incurred by the Retained Professionals in any month in excess of the monthly line item amounts corresponding to each of the respective Retained Professionals' counsel and advisors identified in the then-applicable Approved Budget (or a schedule thereto) (the **"Professional Fee Schedule"**), as applicable; *provided, however*, that counsel for the Retained Professionals shall be entitled to a 10% permitted Professional Fee Schedule variance of the amounts set forth for such Retained Professional in the Professional Fee Schedule, and any unused Professional Fee Schedule amounts in any month (but not any unused variance amount) may be carried over on a cumulative basis (and any such amounts may be utilized or applied in any subsequent period) by such Retained Professional, as applicable.  The foregoing limitation shall not apply to any success or completion fees of the Debtors' financial advisors that are otherwise consented to in writing by the Required Lenders (in their sole and absolute discretion).

16.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtors to grant the DIP Liens and the Superpriority DIP Claim, and to perform such acts as the DIP Agent may request, either in its sole discretion or at the direction of the Required Lenders, to assure the

perfection and priority of the DIP Liens and any other liens granted hereunder; (b) the Debtors to take all appropriate action to grant the First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens, Second Lien Noteholder Adequate Protection Liens, First Lien Lender Superpriority Claims, Foreign Loan Lender Superpriority Claims, the Second Lien Noteholder Superpriority Claims or any other liens or claims set forth herein, and to take all appropriate action to ensure that the First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and Second Lien Noteholder Adequate Protection Liens or any other liens granted thereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations (including all the DIP Obligations), to the Prepetition Agents, the Prepetition Lenders, the Foreign Loan Agent and the Foreign Loan Lenders, the DIP Agent and the DIP Lenders as contemplated under this Final Order and the DIP Loan Documents, and for the Debtors to take all acts and execute such documents and instruments necessary to implement the Assignment Agreement and, to extent applicable, any Foreign Loan Amendment; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents, the DIP Commitment Letter, the Agency Fee Letter and this Final Order; (e) the DIP Secured Parties and the Prepetition Agents and the Prepetition Lenders (including the Ad Hoc Committee) to retain and apply payments made in accordance with the DIP Loan Documents and this Final Order; (f) subject to paragraph 23 hereof, the DIP Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of any Event of Default under the DIP Loan Documents, all rights and remedies provided for in the DIP Loan Documents and take any or all actions provided therein; (g) subject to the DIP Intercreditor Arrangement, the Foreign Loan Agent and Foreign Loan Lenders to exercise the rights and remedies under the Foreign Loan Documents against any foreign assets

held by any non-Debtor affiliates of the Debtors, in each case, to the extent provided therein; and (h) the implementation of all of the terms, rights, benefits, privileges, remedies and provisions of this Final Order and the DIP Loan Documents, in each case, without further notice, motion or application to, or order of, or hearing before, this Court.

17.    Perfection of DIP Liens and Postpetition Liens.    This Final Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all liens granted under the Amended Interim Order and hereunder, including, without limitation, the DIP Liens, the First Lien Lender Adequate Protection Liens, the Foreign Loan Lender Adequate Protection Liens and the Second Lien Noteholder Adequate Protection Liens, without the necessity of executing, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Prepetition Agents, the Prepetition Lenders, the DIP Agent or the DIP Lenders to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agents, without any further consent of any party, is authorized to execute, file or record, and the DIP Agent may require the Debtors (and their non-debtor subsidiaries at the direction of the Debtors) to use their commercially reasonable efforts to execute, file or record, as each, in its sole discretion deems necessary, such financing statements, mortgages, notices of lien, and other similar documents to enable the DIP Agent and the Prepetition Agents to further validate, perfect, preserve and enforce the DIP Liens or other liens and security interests granted hereunder, perfect in accordance with applicable law or to otherwise evidence the DIP Liens, First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens

and/or the Second Lien Noteholder Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been executed, filed or recorded as of the Petition Date; *provided*, *however*, that no such execution, filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and/or the Second Lien Noteholder Adequate Protection Liens.  The Debtors (and each of their direct and indirect subsidiaries) are authorized and shall use their commercially reasonable efforts (but in any event no later than ten (10) business days following any such request or such later date as agreed to by the Required Lenders in their sole and absolute discretion) to execute, file or record, promptly upon the direction of the DIP Agent, and deliver to the DIP Agent or the Prepetition Agents all such financing statements, mortgages, notices, and other documents in each jurisdiction as the DIP Agent or the Prepetition Agents may request.  The DIP Agent or the Prepetition Agents, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

18.    Protection of DIP Lenders' Rights and Adequate Protection Liens.  So long as there are any DIP Obligations outstanding under the DIP Credit Agreement, the Prepetition Agents and the Prepetition Lenders shall (a) have no right to, and take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant to the Prepetition Loan Documents, this Final Order or otherwise seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Prepetition Loan Documents or the First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and Second Lien Noteholder Adequate Protection Liens,

including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Prepetition Loan Documents), (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents, (c) not file any further financing statements, patent filings, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral unless, solely as to this clause (c), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents and/or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing, and (d) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Prepetition Lenders shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Agent and the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and Second Lien Noteholder Adequate Protection Liens on any portion of the DIP Collateral subject to any sale or disposition approved or arranged for by the DIP Agent.

19.    <u>Proceeds of Subsequent Financing</u>.  Without limiting the provisions of the immediately preceding paragraph, if the Debtors, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed in any of the Chapter 11 Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), (c), or (d) of the Bankruptcy Code in violation of this Final Order or the DIP Loan Documents at any time prior to the indefeasible payment in full in cash of all of the Prepetition Obligations and the indefeasible

payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claim, and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility and this Final Order, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then unless otherwise agreed by the DIP Agent (at the direction of the Required Lenders) in its sole discretion, (i) all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied to the DIP Obligations, and (ii) after payment in full of all DIP Obligations, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agents to be applied pursuant to the applicable Prepetition Loan Documents.

20.  **Maintenance of DIP Collateral.**  The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents.  Effective as of entry of the Original Interim Order (as amended and superseded by the Amended Interim Order) and hereby ratified by this Final Order, and to the fullest extent provided by applicable law, the DIP Agent and Required Lenders (on behalf of the DIP Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.  The Debtors shall also maintain the cash management system in effect as of the Petition Date, as modified by this Final Order and any order that may be entered by the Court in accordance with this Final Order which has first been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

21.  **Disposition of or New Liens on DIP Collateral.**  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) other than in the ordinary course of business without the prior

written consent of the DIP Agent (at the direction of the Required Lenders) (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent), except as otherwise provided for in the DIP Loan Documents or otherwise ordered by the Court.

22.    DIP Termination Date. Each of the following shall constitute a termination event under this Final Order and the DIP Loan Documents (each a "**Termination Event**", and the date upon which such Termination Event occurs, the "**DIP Termination Date**"), unless waived in writing by the Required Lenders:

(a)    the occurrence of an "Event of Default" under and as defined in the DIP Credit Agreement (and for purposes of clarity, it is agreed that an "Event of Default" under and as defined in the Foreign Loan Documents shall be deemed an "Event of Default" under the DIP Credit Agreement);

(b)    the occurrence of an "Event of Default" under and as defined in the Foreign Loan Documents (and for purposes of clarity, it is agreed that the DIP Facility shall constitute "Financial Indebtedness" under the Initial Foreign Loan Agreement, and that an "Event of Default" under and as defined in the DIP Credit Agreement shall be deemed included as an "Event of Default" under the Foreign Loan Documents);

(c)    the date of acceleration of the DIP Loans under the DIP Facility in accordance with the DIP Credit Agreement;

(d)    the Termination Date (as defined in the DIP Credit Agreement);

(e)    the Debtors seek any amendment, modification, or extension of this Final Order without the prior written consent of the Required Lenders in their sole and absolute discretion (and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties); or

(f)    the failure by the Debtors to timely perform any of the terms, provisions, conditions, covenants, or other obligations under this Final Order.

23.    <u>Rights and Remedies Upon Termination Event</u>.    Any automatic stay otherwise applicable to the DIP Secured Parties, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, is hereby modified, without further notice to, hearing of, or order from this Court, to the extent necessary to permit the DIP Agent or the Foreign Loan Agent, to exercise the following rights and remedies upon the occurrence and during the continuance of any Termination Event and the delivery of written notice (including by e-mail) by the DIP Agent (at the direction of the Required Tranche A Lenders (as defined in the DIP Credit Agreement) or the Foreign Loan Agent (at the direction of the Required Tranche A Lenders) to counsel to the Debtors, counsel to the Official Committee, and the U.S. Trustee of the occurrence of a Termination Event:    (a) immediately terminate the Debtors' use of any Cash Collateral; (b) terminate the DIP Facility (or the Incremental Foreign Loan Facility) and any DIP Loan Document (or Foreign Loan Amendment) as to any future liability or obligation of the DIP Secured Parties (or Foreign Loan Agent or Foreign Loan Lenders), but without affecting any of the DIP Obligations (or Incremental Foreign Loan Obligations) or the DIP Liens securing the DIP Obligations (or Incremental Foreign Loan Obligations); (c) declare all DIP Obligations (or Incremental Foreign Loan Obligations, as applicable) to be immediately due and payable; (d) freeze monies or balances in the Debtors' accounts (and sweep all funds contained in the DIP Collateral Deposit Priority Account); (e) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent (or the Foreign Loan Agent), or the DIP Lenders (or the Foreign Loan Lenders) against the DIP Obligations (or the Incremental Foreign Loan Obligations), or otherwise enforce any and all rights against the DIP Collateral in the possession

of any of the applicable DIP Lenders (or Foreign Loan Lenders), including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations (or the Incremental Foreign Loan Obligations); and (f) take any other actions or exercise any other rights or remedies permitted under this Final Order, the DIP Loan Documents or applicable law; *provided, however*, that prior to the exercise of any right in clauses (e) or (f) of this paragraph (but subject to paragraph 16(g) hereof), the DIP Agent shall be required to provide five (5) calendar days' written notice to counsel to the Debtors, counsel to the Official Committee and the U.S. Trustee of the DIP Agent's intent to exercise such rights and remedies (the "**Remedies Notice Period**"). Unless the Court orders during the Remedies Notice Period that a Termination Event has not occurred, the DIP Agent, the DIP Lenders, the Foreign Loan Agent and the Foreign Loan Lenders shall be deemed to have received relief from the automatic stay and may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtors' premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 of 362 of the Bankruptcy Code, or otherwise, and the Debtors shall cooperate with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise, shall not challenge or raise any objections to the exercise of such rights and shall waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Agent and the DIP Lenders set forth in this Final Order and in the DIP Loan Documents, other than to challenge the occurrence of a Termination Event; *provided*, that none of the DIP Secured Parties

shall object to a request by the Debtors for an expedited hearing before the Court during the Remedies Notice Period with respect to whether or not a Termination Event has occurred. During the Remedies Notice Period, the Debtors shall have no right to use any proceeds of the DIP Collateral, nor any other Cash Collateral (other than the Carve-Out and the First Lien Deposit Account), without the prior written consent of the Required Lenders.

24.    Landlord Agreements; Access.  Without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to counsel to the Debtors, counsel to the Official Committee, any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property, that a Termination Event has occurred and is continuing, the DIP Agent, (i) may, unless otherwise expressly provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent or Second Lien Agent, as applicable (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph 24 without interference from lienholders or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; *provided, however*, that the DIP Agent (on behalf of the DIP Secured Parties) shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from

the DIP Agent and that accrue during the period of such occupancy or use by DIP Agent calculated on a per diem basis. Nothing herein shall require the Debtors, the DIP Agent or the other DIP Secured Parties, to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to each of the foregoing in this paragraph 24.

25.    <u>Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. The DIP Agent, the DIP Lenders, the Foreign Loan Agent and the Foreign Loan Lenders have acted in good faith in connection with the DIP Facility, the Foreign Loan Assignment and any Foreign Loan Amendment (if any), the Interim Financing, the Refinancing, and with the Interim Orders and this Final Order, and their reliance on this Final Order is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing, the Emergency Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents and the Prepetition Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such modification, reversal, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Agent , the DIP Lenders, the Foreign Loan Agent or the Foreign Loan Lenders arising prior to the effective date of any such modification, reversal, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

26.    <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay, in cash and on a current basis, all reasonable and documented out-of-pocket fees, costs, disbursements and expenses of the DIP Agent and the DIP Lenders incurred at any time, as provided by the DIP Loan Documents and this Final Order, including, without limitation, legal fees and expenses, accounting fees and expenses, collateral examination and monitoring fees and expenses, financial advisory fees and expenses, fees and expenses of other consultants and indemnification and reimbursement of fees and expenses (including, for the avoidance of doubt, all reasonable and documented fees, expenses and disbursements of Stroock, Young Conaway, Houlihan, Kirkland & Ellis LLP (as counsel to the Tranche A DIP Lender), Klehr Harrison Harvey Blanzburg LLP (as local counsel to the Tranche A DIP Lenders), REZOR, Taylor Wessing and such other professionals as may be retained by the DIP Lenders (collectively, the "**Lender Professionals**") as set forth in the DIP Loan Documents and the Agency Fee Letter (it being understood that any such invoices may be redacted to protect against applicable privilege and confidential issues and shall not be required to comply with the U.S. Trustee's guidelines). Payment of all such fees and expenses shall not be subject to review or allowance by the Court, unless otherwise set forth herein.  Such fees and expenses shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

27.    <u>Indemnification</u>.  The Debtors shall jointly and severally indemnify and hold harmless the DIP Agent (solely in its capacity as a DIP Agent), each DIP Lender (solely in its capacity as a DIP Lender) and each of their affiliates and each of their respective officers, directors, employees, controlling persons, agents, advisors, attorneys and representatives of each, in their respective capacities as such (each, an "**Indemnified Party**"), from and against any and all any and all claims, damages, losses, liabilities and expenses (including, without limitation,

fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or relating to the DIP Facility, the DIP Loan Documents, the Foreign Loan Assignment, any Foreign Loan Amendment, or any other transactions contemplated thereby, or any use made or proposed to be made with the proceeds of the DIP Facility or any Foreign Loan Amendments, whether or not such investigation, litigation or proceeding is brought by any Debtor or any of its domestic or foreign subsidiaries, any shareholders or creditors of the foregoing, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or under the DIP Loan Documents are consummated, except to the extent such claim, damage, loss, liability or expense is found in a final non appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.    No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any of its domestic or foreign subsidiaries or any shareholders or creditors of the foregoing for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct.    In no event, however, shall any Indemnified Party be liable on any theory of liability for any special, indirect, consequential or punitive damages.    The foregoing indemnity includes indemnification for the DIP Agent's and the DIP Lenders' exercise of discretionary rights granted under, and in accordance with, this Final Order.    In all such litigation, or the preparation therefor, the DIP Agent and the DIP Lenders shall be entitled to select their own

counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel, unless such claim, damage, loss, liability or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such indemnified party's gross negligence or willful misconduct. Notwithstanding anything contained in the Interim Orders, this Final Order or the DIP Loan Documents to the contrary, none of the Indemnified Parties shall include any of the Excluded Parties.

28.    Proofs of Claim.  The DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Second Lien Agent and the Second Lien Noteholders shall not be required to file proofs of claim in any of the Chapter 11 Cases for any claim allowed herein.  This Final Order shall be deemed to constitute a timely filed proof of claim for any such prepetition claims. Any proof of claim filed by the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Second Lien Agent and the Second Lien Noteholders shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases shall not apply to the DIP Agent, the DIP Lenders, the First Lien Agent, the First Lien Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Second Lien Agent or the Second Lien Noteholders.

29.    Carve-Out; Payment of Retained Professionals.

(a)    *Carve-Out.*  For the purposes of this Final Order, the term **"Carve-Out"** shall mean the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. § 1930(a); (ii) prior to the delivery of a Carve Out Notice (as defined below), to the extent allowed at any time by the Bankruptcy

Court and subject to the Approved Budget (including the Professional Fee Schedule) and paragraph 15(f) hereof, all accrued and unpaid fees and expenses incurred by professionals retained by (x) the Debtors, including the claims and noticing agent, and (y) the Official Committee (collectively, the professionals identified in clauses (x) and (y) above, the "**Retained Professionals**"); (iii) after the date of the delivery of a Carve Out Notice, to the extent allowed by the Bankruptcy Court and subject to the Approved Budget (including the Professional Fee Schedule) and paragraph 15(f) hereof, all unpaid fees and expenses incurred by the Retained Professionals in an aggregate amount not to exceed $500,000; (iv) up to $1.4 million to purchase a tail policy for the Debtors' directors and officers liability insurance, and (v) post-petition amounts owed by the Debtors to artists, talent agents and credit card processors that are provided for in the Approved Budget and separately approved in writing and designated by the Debtors' Chief Restructuring Officer as an "Operational Carve Out Payment," in an aggregate amount not to exceed $15 million. For purposes of the foregoing, "**Carve Out Notice**" shall mean a written notice delivered by the DIP Agent at the direction of the Required Lenders to counsel to the Debtors, the United States Trustee, and counsel to the Official Committee, which notice may be delivered following the occurrence of a Termination Event. All amounts of the Carve-Out that have not been funded or deposited into the Professional Fee Account (as defined below) as of the date of the Carve-Out Notice shall be required to be funded from the proceeds of Collateral. For the avoidance of doubt, all payment hereunder to Retained Professionals shall be made solely from the Professional Fee Account.

(b)    *Payment of Carve-Out*. Until the DIP Termination Date, the Debtors are authorized and directed, without further order of the Court and at the times provided below, to deposit into an account maintained by Debtors' counsel or other party designated by the Debtors

an amount equal to the line items identified in the then-applicable Approved Budget (collectively the "**Bankruptcy Fees**") under the line items for Retained Professionals (such account the "**Professional Fee Account**"), which amounts are part of the Carve-Out.  Upon the next DIP borrowing after the entry of this Final Order, the Debtors shall fund into the Professional Fee Account all Bankruptcy Fees for the Retained Professionals set forth on the Professional Fee Schedule from the Petition Date through the end of the month in which such borrowing is made, to the extent not previously funded.  Thereafter, the Debtors shall draw an amount corresponding to the Bankruptcy Fees forecasted in the Professional Fee Schedule for the next month in advance in each monthly DIP Draw.  Proceeds deposited into the Professional Fee Account shall be held for purposes of paying allowed fees and expenses of the Retained Professionals when allowed by order of this Court (as to which the parties' rights are expressly reserved), subject to paragraph 15(f) hereof.  Any portion of the Professional Fee Account not used to pay allowed fees and expenses of Retained Professionals shall be remitted to the Debtors' estates or their successor (subject to rights of the DIP Lenders) after payment in full of all allowed fees and expenses of Retained Professionals which are part of the Carve-Out subject to paragraph 15(f) hereof.  The foregoing amounts may be paid from the Professional Fee Account notwithstanding the DIP Termination Date (as defined in the DIP Credit Agreement) or the dismissal or conversion of these Chapter 11 Cases to pay to each Retained Professional to the extent of any fees and expenses incurred prior to the Carve-Out Notice that are ultimately allowed.

(c)    For the avoidance of doubt, the Carve-Out shall be senior to all liens and claims (including, without limitation, administrative and superpriority claims) securing the DIP Obligations and the Prepetition Obligations, including the First Lien Lender Adequate Protection Liens, Foreign Loan Lender Adequate Protection Liens and Second Lien Noteholder Adequate

Protection Liens and any and all other forms of adequate protection, liens, security interests and other claims granted herein to the Prepetition Agents, the Prepetition Lenders, the DIP Agent or the DIP Lenders.

(d)     Prior to the occurrence of the Carve-Out Trigger Date, the Debtors are authorized to pay compensation and reimbursement of fees and expenses that are authorized to be paid under sections 330 and 331 of the Bankruptcy Code pursuant to an order of the Court, as the same may be due and payable subject to the Professional Fee Schedule and paragraph 15(f) hereof, and such payments shall not reduce the Carve-Out. Upon the receipt of the Carve-Out Trigger Notice, the Debtors shall provide immediate notice to all Retained Professionals informing them that such notice was delivered and further advising them that the Debtors' ability to pay such Retained Professionals is subject to and limited by the Carve-Out. Any payment or reimbursement made on or after the Carve-Out Trigger Date to a Retained Professional shall permanently reduce the Carve-Out on a dollar-for-dollar basis. To the extent that any payment to a Retained Professional is subsequently disallowed and/or disgorged, the proceeds of any claim against the Retained Professional for amounts so disallowed or disgorged shall constitute DIP Collateral and as such, shall be subject to DIP Liens and Superpriority DIP Claims hereunder. Any funding of the Carve-Out by the DIP Lenders shall be added to and made part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

(e)     None of the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professional incurred in connection with the Chapter 11 Cases under any chapter of the Bankruptcy Code. For the avoidance of doubt, (i) nothing herein shall

be construed as consent to the allowance of the fees, costs and expenses of the Retained Professionals, (ii) nor shall the Approved Budget be deemed a cap on the allowance of the fees, costs, and expenses of the Retained Professionals.

30.    <u>Limitations on the DIP Facility, Foreign Loan Facility Proceeds, the DIP Collateral, the Cash Collateral and the Carve-Out.</u>  No DIP Collateral, Prepetition Collateral, DIP Loans, proceeds of the DIP Facility, the Foreign Loan Facility, the Incremental Foreign Loan Facility, Cash Collateral, proceeds of any of the foregoing, any portion of the Carve-Out, the Professional Fee Account or the First Lien Deposit or any other amounts may be used directly or indirectly by any of the Debtors, the Official Committee, or any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Cases or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith):  (a) to prevent, hinder, or delay the DIP Agent's, the DIP Lenders', the Prepetition Agents' or the Prepetition Lenders' enforcement or realization upon any of the DIP Collateral once a Termination Event occurs (other than with respect to rights otherwise granted herein with respect to the Remedies Notice Period); (b) to use or seek to use Cash Collateral or, except to the extent expressly permitted by the terms of the DIP Loan Documents, selling or otherwise disposing of DIP Collateral, in each case, without the consent of the DIP Agent and the Required Lenders; (c) to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claim; or (d) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, against any of the Released

Parties with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (A) any claims or causes of action arising under Chapter 5 of the Bankruptcy Code, (B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Superpriority DIP Claim, the DIP Liens, the DIP Loan Documents, the First Lien Loan Documents, the First Lien Obligations, the Foreign Loan Documents, the Foreign Loan Obligations, the Second Lien Note Documents or the Second Lien Obligations, (D) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations, the First Lien Obligations, the Foreign Loan Obligations, or the Second Lien Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either the DIP Agent or the DIP Lenders hereunder or under any of the DIP Loan Documents, the First Lien Agent or the First Lien Lenders under any of the First Lien Loan Documents, the Foreign Loan Agent or the Foreign Loan Lenders under any of the Foreign Loan Documents or the Second Lien Agent or the Second Lien Noteholders under any of the Second Lien Note Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's or the DIP Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents and the Amended Interim Order and/or this Final Order (as applicable)), (F) objecting to, contesting, or interfering with, in any way, the DIP Agent's and the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Credit Agreement) has occurred, except that the Debtors may contest whether an Event of Default has occurred or is continuing; *provided*, *however*, that

no more than $100,000 in the aggregate of the DIP Collateral, the Carve-Out, proceeds from the borrowings under the DIP Facility, the Foreign Loan Facility, the Incremental Foreign Loan Facility or any other amounts, may be used solely by the Official Committee to investigate claims and/or liens of the First Lien Agent and the First Lien Lenders under the First Lien Loan Documents, the Foreign Loan Agent and the Foreign Loan Lenders under the Initial Foreign Loan Documents and the Second Lien Agent and the Second Lien Noteholders under the Second Lien Note Documents.

31.  Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)    Subject to paragraph 31(b) hereof, each stipulation, admission, and agreement contained in this Final Order including, without limitation, the Debtors' stipulations, shall be binding upon the applicable Debtors, their estates and any successor thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.

(b)    Nothing in this Final Order shall prejudice the rights of the Official Committee or any other party in interest, if granted standing by the Court within the Challenge Period (as defined below), to seek, solely in accordance with the provisions of this paragraph 31(b), to assert claims against the Released Parties (or their successors or assigns), on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Debtors' stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the mortgages, security interests, and Prepetition Liens of the Prepetition Agents or any Prepetition Lenders (or their successors or assigns), (ii) the validity, allowability, priority, or amount of the Prepetition Obligations, or (iii) any liability of either the Prepetition Agents and/or

any Prepetition Lenders (or their successors or assigns) with respect to anything arising from the Prepetition Loan Documents. The Official Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Released Parties (each, a "**Challenge**") no later than (A) with respect to the Official Committee, the earlier of the date that is (x) ninety (90) days after the Official Committee's formation and (y) the commencement of a hearing for the Court to consider approval of a disclosure statement pursuant to section 1125 of the Bankruptcy Code, or (B) with respect to other parties in interest, no later than the date that is seventy-five (75) days after the entry of the Original Interim Order (such time period shall be referred to as the "**Challenge Period**"). The Challenge Period may only be extended (x) with the prior written consent of each of (i) the First Lien Agent (at the direction of the required First Lien Lenders), solely with respect to any Challenge asserted against the First Lien Agent or the First Lien Lenders arising under or in any way relating to the First Lien Loan Documents, the First Lien Obligations or the Prepetition First Lien Credit Facility Liens, (ii) the Foreign Loan Agent (at the direction of the Foreign Loan Lenders), solely with respect to any Challenge asserted against the Foreign Loan Agent or the Foreign Loan Lenders arising under or in any way relating to the Initial Foreign Loan Documents, the Initial Foreign Loan Obligations or the Prepetition Foreign Loan Liens, and (iii) the Second Lien Agent (at the direction of the Requisite Noteholders (as defined in the Restructuring Support Agreement entered into between the Debtors and certain of the Second Lien Noteholders)) as applicable, prior to the expiration of the Challenge Period, or (y) by further order of the Court for good cause shown; *provided, however*, that the Challenge Period shall be tolled pending the Court's adjudication of a standing motion that is timely filed within

the initial Challenge Period. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (x) any parties in interest, including the Official Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled, or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Official Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Cases), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' stipulations, waivers, releases, affirmations and other stipulations hereunder as to the priority, extent, allowability, validity and perfection as to the Prepetition Liens, the Prepetition Obligations or the Prepetition Loan Documents shall be of full force and effect and forever binding upon the applicable Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (3) any and all claims or causes of action against the Prepetition Agents or the Prepetition Lenders shall be released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases. For the avoidance of doubt, in the event the case is converted to chapter 7 or a chapter 11 trustee is appointed prior to the expiration of the Challenge Period described in this paragraph 31, the Challenge Period (solely as to such trustee) shall not expire until 30 days after such trustee's appointment.

(c)    Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including the Official Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, and all rights to object to such standing are expressly reserved.

32.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary.

33.    <u>Section 506(c)</u>.  In partial consideration for, among other things, the Carve-Out and the payments made under the Approved Budget to administer the Chapter 11 Cases with the use of Cash Collateral, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against any Prepetition Agent or any Prepetition Lenders or any of the Prepetition Obligations or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Prepetition Lenders upon the Prepetition Collateral, as applicable, without the prior express written consent of the affected Prepetition Agent and/or affected Prepetition Lender, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder).

34.    <u>Section 552(b)</u>.  The Prepetition Agents and the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) shall not apply to the Prepetition Agents, the Prepetition Lenders or the Prepetition Obligations.

35.    <u>No Marshaling/Application of Proceeds</u>.  In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agents or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition

Collateral, as applicable, and all proceeds shall be received and applied in accordance with this Final Order.

36.    Right to Credit Bid.  Each of (x) the DIP Agent (at the direction of the Required Tranche A Lenders), (y) the Foreign Loan Agent (at the direction of the Required Tranche A Lenders) and, (z) the Second Lien Agent (at the direction of the Requisite Noteholders (as defined in the Restructuring Support Agreement entered into between the Debtors and certain of the Second Lien Noteholders)), shall have the right to "credit bid" up to the full amount of the DIP Obligations, Foreign Loan Obligations, or the Second Lien Obligations, respectively, in connection with any sale or other disposition of all or any portion of the DIP Collateral or the Prepetition Second Lien Collateral, respectively, to the full extent allowed by section 363 of the Bankruptcy Code, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code and shall automatically be deemed a "qualified bidder" with respect to any disposition of DIP Collateral or Prepetition Second Lien Collateral, respectively, under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.

37.    Discharge Waiver/Release.  The DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash or otherwise treated as provided in the DIP Loan Documents and Foreign Loan Amendments, on or before the effective date of such confirmed plan of

reorganization, or each of the DIP Agent and the DIP Lenders or the Foreign Loan Agent and Foreign Loan Lenders (as applicable) has otherwise agreed in writing. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations in full in cash, or otherwise treated as provided in the DIP Loan Documents or Foreign Loan Amendments (as applicable), on or prior to the earlier to occur of the effective date of such plan of reorganization or sale, without the written consent of the DIP Agent and the DIP Lenders or the Foreign Loan Agent and Foreign Loan Lenders (as applicable).

38.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the rights of the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents or the Prepetition Lenders to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents or the Prepetition Lenders under the DIP Loan Documents, the Foreign Loan Documents and the Prepetition Loan Documents, as applicable, the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any or all of the Cases to a case under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders, the Foreign Loan

Agent, the Foreign Loan Lenders, the Prepetition Agents or the Prepetition Lenders. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence, except as expressly set forth in this Final Order.

39.     <u>Modification of DIP Credit Agreement</u>.  Section 7.01(n)(i) of the DIP Credit Agreement is hereby amended by inserting the following proviso at the end of clause (i) and before the beginning of clause (ii) "; <u>provided</u>, <u>however</u>, that it shall not be a cross-default hereunder with respect to section 5(a)(i)(F) of the Restructuring Support Agreement so long as the RSA Order (as defined in the Restructuring Support Agreement) is entered by the Bankruptcy Court on or before April 5, 2016".

40.     <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Final Order.

41.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents or the Prepetition Lenders to seek relief or otherwise exercise their rights and remedies under this Final Order, the DIP Loan Documents, the Foreign Loan Documents, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of their respective rights hereunder, thereunder or otherwise.

42.     <u>Binding Effect of this Final Order</u>.  Immediately upon entry by the Court, this Final Order shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Foreign

Loan Agent, the Foreign Loan Lenders, the Prepetition Agents and the Prepetition Lenders, and it shall become valid and binding upon the Debtors, the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents and the Prepetition Lenders, any and all other creditors of the Debtors, the Official Committee or other committee appointed in the Chapter 11 Cases, any and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of any of the Debtors in any of the Chapter 11 Cases, or upon dismissal of any of the Chapter 11 Cases. Further, upon entry of the Amended Interim Order (and hereby ratified by this Final Order), the Debtors' stipulations contained herein shall be binding on the Debtors (subject to paragraph 31 hereof), and the DIP Obligations shall constitute allowed claims for all purposes in each of the Chapter 11 Cases.

43.    <u>No Modification to Final Order</u>.    Until and unless the DIP Obligations, the Foreign Loan Obligations, the Prepetition Obligations have been indefeasibly paid in full in cash (or otherwise treated as provided (x) in the DIP Loan Documents or the Foreign Loan Documents, or (y) as the DIP Agent (at the direction of the Required Lenders) or the Foreign Loan Agent (at the direction of the Required Lenders), as applicable, otherwise agrees in writing), the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent (at the direction of the Required Lenders) or the Foreign Loan Agent (at the direction of the Required Lenders), (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the

Chapter 11 Cases, equal or superior to the Superpriority DIP Claim, other than the Carve-Out and the First Lien Deposit; (b) without the prior written consent of the DIP Agent (at the direction of the Required Lenders) or the Foreign Loan Agent (at the direction of the Required Lenders), any order allowing use of Cash Collateral resulting from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agent (at the direction of the Required Lenders) or the Foreign Loan Agent (at the direction of the Required Lenders), any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Loan Documents or the Foreign Loan Documents (as applicable); (d) without the prior written consent of the Second Lien Agent, any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Second Lien Note Liens or the Second Lien Noteholder Adequate Protection Liens; (e) without the prior written consent (such consent not to be unreasonably withheld or delayed) of the First Lien Agent (at the direction of the required First Lien Lenders), incur any lien on any of the Prepetition First Lien Collateral that is senior to the Prepetition First Lien Credit Facility Liens or the First Lien Lender Adequate Protection Liens, which would materially adversely affect the First Lien Agent and the First Lien Lenders; or (f) without the prior written consent (such consent not to be unreasonably withheld or delayed) of the Foreign Loan Agent (at the direction of the Required Lenders), incur any lien on any of the Prepetition Foreign Loan Collateral that is senior to the Prepetition Foreign Loan Liens or the Foreign Loan Lender Adequate Protection Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent (at the direction of the Required Lenders), the First Lien Agent (at the direction of the required First Lien Lenders), solely to the extent the First Lien Agent and First Lien Lenders would be

materially adversely affected thereby, the Foreign Loan Agent (at the direction of Required Lenders), and the Second Lien Agent (at the direction of the required Second Lien Noteholders) and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent, the First Lien Agent, the Foreign Loan Agent or the Second Lien Agent, as applicable.

44.    Priorities among First Lien Agent, First Lien Lenders, Second Lien Agent, and Second Lien Noteholders.  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the First Lien Agent, First Lien Lenders, Second Lien Agent, and Second Lien Noteholders (including, without limitation, the relative priorities and rights of the First Lien Agent, First Lien Lenders, Second Lien Agent, and Second Lien Noteholders with respect to any adequate protection granted hereunder), such priorities and rights shall continue to be governed by the Intercreditor Agreement.

45.    Final Order Controls.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, any other document or any other order of the Court and of this Final Order, the provisions of this Final Order shall govern and control.

46.    Limits on Lender Liability.  Nothing in this Final Order or in any of the DIP Loan Documents, the Prepetition Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents or the Prepetition Lenders of any liability for any claims arising from any and all activities by the Debtors in the operation of their businesses in connection with the Debtors' postpetition restructuring efforts.

47.    Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that

may be entered (a) confirming any plan of reorganization in any of the Chapter 11 Cases, (b) converting any or all of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of the Chapter 11 Cases, or (d) pursuant to which the Court abstains from hearing any of the Chapter 11 Cases. The terms and provisions of this Final Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Lenders pursuant to this Final Order, notwithstanding the entry of any such order, shall continue in any of the Chapter 11 Cases, following dismissal of any of the Chapter 11 Cases, or any Successor Cases, and shall maintain their priority as provided by this Final Order. The DIP Protections (as defined below), and all adequate protection provided to the Prepetition Agents and Prepetition Lenders, as well as the terms and provisions concerning the indemnification of the DIP Agent, the DIP Lenders, the Foreign Loan Agent, the Foreign Loan Lenders, the Prepetition Agents and the Prepetition Lenders, shall continue in any of the Chapter 11 Cases following dismissal of any of the Chapter 11 Cases, termination of the provisions of this Final Order, and/or the indefeasible payment in full of the DIP Obligations.

48.    <u>Dismissal</u>.  If any order dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), that (i) the rights, privileges, benefits and protections afforded herein and in the DIP Loan Documents, including the DIP Liens, the Superpriority DIP Claim (collectively, the "**DIP Protections**"), the First Lien Lender Adequate Protection, the Foreign Loan Lender Adequate Protection and the Second Lien Noteholder Adequate Protection, shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations, First Lien Obligations,

Foreign Loan Obligations and all Second Lien Obligations have been paid in full, respectively (and that all DIP Protections, the First Lien Lender Adequate Protection, the Foreign Loan Lender Adequate Protection and the Second Lien Noteholder Adequate Protection shall, notwithstanding such dismissal, remain binding on all parties in interest until such obligations have been paid in full), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections, the First Lien Lender Adequate Protection, the Foreign Loan Lender Adequate Protection and the Second Lien Noteholder Adequate Protection.

49.     <u>Release of DIP Agent and DIP Lenders</u>.   In consideration of and as a condition to the DIP Agent and the DIP Lenders making advances and providing other credit and financial accommodations to the Debtors pursuant to the provisions of the DIP Loan Documents, the Amended Interim Order and this Final Order, and as a material inducement to the Foreign Loan Assignment, each of the Debtors, on behalf of itself, its estate, its successors and assigns, and other legal representatives (collectively, the "**Releasors**"), hereby absolutely releases, forever discharges and acquits each of the DIP Agent, the Foreign Loan Agent, the DIP Lenders and the Foreign Loan Lenders, and each of their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "**Releasees**") of and from any and all claims, demands, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages, and any and all other claims, counterclaims, defenses rights of set-off, demands and liabilities whatsoever of every kind, name, nature and description, known or unknown, suspected or unsuspected, both at law and in equity, which, including, without limitation, any so-called "lender liability" claims or defenses,

that any Releasor may now or hereafter own, hold, have or claim to have against Releasees, or any of them for, upon, or by reason of any nature, cause or thing whatsoever which has arisen and/or arises at any time during the period from (and including) the Petition Date through (and including) the date upon which this Final Order was entered by the Court, including, without limitation, in respect of the DIP Facility or the Foreign Loan Facility, the DIP Loan Documents or the Foreign Loan Documents or the Debtors' chapter 11 cases, in each case, except to the extent such claim is determined by a final non-appealable order of a court of competent jurisdiction to have resulted primarily from the gross negligence or willful misconduct of such Releasee. Notwithstanding anything contained in the Interim Orders, this Final Order or the DIP Loan Documents to the contrary, none of the Releasees shall include any Excluded Parties.

50.    <u>Entry of this Final Order/Waiver of Applicable Stay</u>. The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of the Court maintained in regard to the Chapter 11 Cases. This Final Order shall be effective upon its entry and not subject to any stay (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

51.    <u>Notice of Entry of this Final Order</u>. The Debtors' counsel shall serve a copy of this Final Order or a suitable notice respecting same on all of the following parties: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the parties included on the Debtors' consolidated list of their forty (40) largest unsecured creditors; (e) Pachulski; (f) Stroock; (g) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (h) all financial institutions at which the Debtors maintain deposit accounts; and (h) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 or requesting to receive notice prior to the date hereof.

52.   <u>Effect of this Final Order</u>.   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

53.   <u>Retention of Jurisdiction</u>.   The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Final Order.

Dated:   March 8, 2016
         Wilmington, Delaware

HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE