## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 5, 2016 at 10:30 a.m.** **Objection Deadline: March 29, 2016 at 4:00 p.m.** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) APPROVING ARTIST CARVE OUT AGREEMENT WITH AGENTS, (II) AUTHORIZING THE ASSUMPTION OF CERTAIN ARTIST AGREEMENTS, AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby move the Court (the "**Motion**") for entry of an order, substantially in the form attached

hereto, pursuant to sections 105(a), 363(b), and 365(a) of title 11 of the United States Code, 11

U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and Rules 6004 and 6006 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) approving the artist carve out agreement

with William Morris Endeavor Entertainment, LLC, AM Only LLC, The Windish Agency, LLC,

Paradigm Talent Agency, LLC, and Paradigm Music, LLC (collectively, the "**Agents**")

substantially in the form annexed hereto as **Exhibit 1** (together with all exhibits thereto, the

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

"**Artist Carve Out Agreement**"),[2] (ii) assuming the Artist Agreements set forth on **Exhibit B** to the Artist Carve Out Agreement (the "**Assumed Agreements**") and pay the cure associated with such assumption as set forth on Exhibit B to the Artist Carve Out Agreement (the "**Cure Payment**"), and (iii) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## Preliminary Statement

1.      The value of the Debtors' estates and their ongoing business depends on their continued successful festivals, events and club shows (the "**Shows**").  The profitability of these Shows hinges, in significant part, on the Artists performing and their ability to attract large numbers of fans.  The pool of Artists that can reliably attract large numbers of fans to the Shows is extremely limited and the vast majority of them are represented by the Agents.  Thus, the Debtors relationship with the Agents and their represented Artists are vital to a successful reorganization.

2.      Since the Petition Date, the Debtors have been negotiating with Agents to ensure that the Artists they represent will continue to perform at SFX's Shows.  The Agents and Artists have required adequate assurance that the Debtors will satisfy their obligations under the Artist Agreements.  Without such assurance, the Artists have stated they will refuse to perform at upcoming SFX festivals and the Agents have refused to book Artists for future Shows.  The Agents and the Artists have required 100% payment cash in advance of Shows and in certain instances 100% payment prior to permitting the Debtors' announcement of a particular Artist as part of the line up for a Show.

3.      In order to provide the Agents and Artists adequate assurance, the Debtors

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Artist Carve Out Agreement.

*NY 245718505v7*

negotiated with their DIP Lenders to provide a carve-out (the "**Operational Carve Out**") for certain postpetition amounts owed by the Debtors to artists, talent agents and credit card processors in an aggregate amount not to exceed $15 million.   The Operational Carve Out, approved by the Court in the DIP Order (defined below), provides for a carve-out from the liens and superpriority claims of the DIP Lenders upon an event of default and subsequent liquidation of the DIP Collateral (as defined in the DIP Order) for payments that are set forth in the then Approved Budget and certified by the Debtors' CRO as an "Operational Carve Out Payment." In order to fully document the specific Artist Agreements that will be included in the Operational Carve Out, the mechanics by which such agreements will be included in the Operational Carve Out, and certain other agreements between the parties described below, the Debtors and the Agents have negotiated the Artist Carve Out Agreement.

4.      To further provide the Artists and Agents assurance that the Artists will be compensated for their postpetition performances, the Debtors have also agreed to assume the Assumed Agreements, which are Artist Agreements entered into prior to the Petition Date for performances after the Petition Date, and the counterparties to those Assumed Agreements have consented to such assumption.  Within five (5) Business Days of entry of the order approving this Motion, the Debtors will pay as the Cure Payment the amounts necessary to cure any prepetition defaults and any unpaid amounts which became due postpetition and will continue to pay any additional amounts as they come due under the Assumed Agreements.

5.      Approval of the Artist Carve Out Agreement and assumption of the Assumed Agreements provides a meaningful benefit to the Debtors' estates and is a sound exercise of their business judgment.   In recognition of the benefits of the approval of the Artist Carve Out Agreement and assumption of the Assumed Agreements, relief sought herein, both the DIP

NY 245718505v7

Lenders and the Committee (defined below) have consented to the relief sought herein.

## Status of the Case

6.  On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

7.  The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.  No request has been made for the appointment of a trustee or examiner.

9.  On February 12, 2016, an official committee of unsecured creditors was appointed in these Chapter 11 Cases (the "**Committee**") [Docket No. 99].

## Jurisdiction, Venue and Statutory Predicates

10.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is core within the meaning of 28 U.S.C. § 157(b)(2).

11.  The statutory predicates for the relief sought herein are sections 105(a), 363(b), and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

## Background

### A.  General Background

12.  The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture.  The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry,

4

specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad.  Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

13.     Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad.  In addition, Debtors manage large, event-driven nightclubs that serve as venues for performances by key electronic music talent. The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

14.     The Debtors and their 120 non-Debtor subsidiaries operate a business that spans the globe, with operations in over 34 countries.  The Debtors constitute substantially all of the domestic companies comprising SFX's business as well as select foreign subsidiaries.   The Debtors have more than 325 employees and, together with the non-Debtor entities, have more than 625 employees.

15.     The Debtors' capital structure is highly levered.  In 2015, the Debtors began to face significant liquidity issues.  While the Debtors attempted to enhance liquidity through a September 2015 financing and potential sales of non-strategic assets, the Debtors concluded that they needed to restructure their liabilities through a bankruptcy process.

16.     A detailed factual background of the Debtors' business and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") [Docket No. 13], which was filed on the Petition Date and incorporated herein by reference.

17.     On March 8, 2016, the Court entered the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (I) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* (as may be amended, the "**DIP Order**") [Docket No. 203].

**B.  Artist Carve Out Agreements and Artist Agreements**

18.     The Debtors do business with the Artists pursuant to short term agreements, without long-term agreements governing their relationships.  Since the commencement of the Chapter 11 Cases, the Agents, and the Artists they represent, have been unwilling to enter into agreements with the Debtors without 100% payment in advance and without assurance that their agreements with the Debtors will be honored.  This has caused disruption in the Debtors' working capital as well as in their ability to promptly announce the Artist line-up at their Shows. To address this problem, the Debtors negotiated with the DIP Lenders for a carve out from the DIP Lenders' liens and claims to provide security to the Agents and Artists.

19.     Paragraph 29 of the DIP Order provides that the term "Carve Out" includes:

> (v) postpetition amounts owed by the Debtors to artists, talent agents and credit card processors that are provided for in the Approved Budget and separately approved in writing and designated by the Debtors' Chief Restructuring Officer as an "Operational Carve Out Payment," in an aggregate amount not to exceed $15 million.

DIP Order ¶ 29.

20.     The Artist Carve Out Agreement is the product of over a month of negotiations between the Debtors and the Agents over the terms by which the Operational Carve Out will apply to the Artist Agreements for Artists represented by the Agents.  In addition to the security

6

being provided to the Artists and Agents through the Operational Carve Out, the Artist Carve Out Agreement also provides benefits to the Debtors in that the Agents have agreed to reasonable Payment Terms for Artist Agreements during the Chapter 11 Cases and the remaining term of the Artist Agreement after consummation of a plan of reorganization for the Debtors. The Agents have further agreed (subject to certain conditions set forth in the Artist Carve Out Agreement), on behalf of their represented Artists to the assumption and/or assignment of the Artist Agreements in a sale or reorganization.

21.     The Artist Carve Out Agreement thus provides a comprehensive solution for a going forward business relationship in these Chapter 11 Cases between and among the Debtors, the Artists and the Agents.

**Relief Requested**

22.     By this Motion, the Debtors seek the entry of an order authorizing the Debtors to enter into the Artist Carve Out Agreement and assume the Assumed Agreements in connection therewith, and granting such other relief as is just and proper.

**Basis for Relief Requested**

23.     The Debtors seek approval of the Artist Carve Out Agreement and authority to assume the Assumed Agreements pursuant to sections 363(b) and 365(a) of the Bankruptcy Code, which provide that the Debtors may enter into outside the ordinary course transactions and assume executory contracts, respectively, provided that the Debtors articulate a valid business justification.  As discussed below, the Debtors submit the Artist Carve Out Agreement and assumption of Assumed Agreements are critical to the Debtors' business operations and a proper exercise of their business judgment.

*NY 245718505v7*

**A. The Artist Carve Out Agreement Is**
**A Valid Exercise of the Debtors' Business Judgment**

24.     Section 363(b) of the Bankruptcy Code permits a debtor-in-possession to use estate property outside "the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  A debtor's decision to enter into an outside the ordinary course transaction is protected by the business judgment rule.  "[T]he business judgment rule is a presumption that in making a business decision, the board of directors 'acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Solomon v. Armstrong*, 747 A.2d 1098, 1111 (Del. Ch. 1999) (quoting *Aronson v. Lewis*, 473 A.2d 805, 812 (1984)).

25.     The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing.  *See Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.");  *In re Filene's Basement, LLC*, Case No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee.").  Moreover, section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code, providing, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

26.     Entering into Artist Carve Out Agreement is a sound exercise of the Debtors' business judgment.  The Artists are an integral part of the Debtors' successful reorganization. These Artists cannot timely or efficiently be replaced given the highly unique nature of the

Artists' popularity and the services they provide.  As noted above, the Artists are the driving force behind the Debtors' Shows; they drive EDM fans to purchase tickets and attend the Shows. The inability to enter into Artist Agreements during these Chapter 11 Cases or to maintain payment terms with the Artists and Agents would severely and negatively impact the Debtors' ability to survive.

27.    The Artist Carve Out Agreement provides a comprehensive solution in these Chapter 11 Cases.  It provides assurances to the Artists and Agents of the Debtors' commitment to honor obligations under the Artist Agreements, which in turn instills confidence in the SFX brand.  It moreover mitigates against the risk of Artist cancellation or loss of Artist contracts to SFX's competitors.

28.    The Artist Carve Out Agreement also provides consent from the Artists for future assignments of their Artist Agreements to the reorganized Debtors or to purchasers of the Debtors' assets.  Moreover, the Payment Terms provided in the Artist Carve Out Agreement for postpetition Artist Agreements are reasonable in the industry and benefit the Debtors' estates. The Debtors are afforded liquidity, as Artists will no longer require upfront payment in full immediately upon confirmation of an agreement if the obligations under their respective Artist Agreement are included in the Operational Carve Out.  Accordingly, the Debtors' decision to enter into Artist Carve Out Agreement satisfies the business judgment rule.

**B. Assumption of the Assumed Agreements Is in the Best Interests of the Debtors' Estates and Is a Sound Exercise of the Debtors' Business Judgment**

29.    The Debtors further seek authority, pursuant to section 365(a) of the Bankruptcy Code, to assume the Assumed Agreements.  Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "The purpose behind allowing

9

NY 245718505v7

the assumption or rejection of executory contracts is to permit the trustee or debtor in possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 *Collier on Bankruptcy* ¶ 365.01[1] (15th ed. 1993)).

30.     The assumption or rejection of an executory contract or unexpired lease is subject to review under the same business judgment standard as discussed above.   If a debtor has exercised "reasonable" business judgment, the court should approve the proposed contract assumption.  *See In re Mkt. Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Comput. Sales Int'l, Inc. v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (Bankr. D. Del. 2003) (explaining that under the business judgment standard, a court should defer to a debtor's contract rejection, "unless that decision is the product of bad faith or a gross abuse of discretion").

31.     The Debtors' decision to assume the Assumed Agreements is an exercise of their sound business judgment.  Assuming the Assumed Agreements maintains the existing business relationships and secures the Artists' performances for upcoming SFX Shows.   The Debtors cannot afford any risk that Artists will not perform at SFX festivals, as such may result in festival cancelation or SFX signing lesser-known artists.   Assumption of the Assumed Agreements counteracts these risks, and allows the Shows to go on.   Assuming the Artist Agreements will thus preserve and maximize the value of the Debtors' estates and is supported by the Debtors' business judgment.

32.     Certain of the Assumed Agreements required payments prior to the Petition Date that remained unpaid as of the Petition Date.   In addition, although the Debtors have continued to

10

honor their Artist Agreements in the ordinary course since the Petition Date, some of the Assumed Agreements have payments that have become due after the Petition Date that have not yet been paid. In connection with the assumption of the Assumed Agreements the Debtors will pay the Cure Payment set forth on Exhibit B to the Artist Carve Out Agreement for each Assumed Agreement.

33.    Ultimately, the Debtors' inability to maintain relationships with the Artists, their most critical creditors, during the pendency of these Chapter 11 Cases, would irreparably harm the Debtors' businesses, and damage the Debtors' going concern value. Accordingly, entry into the Artist Carve Out Agreement and assumption of the related Assumed Agreements are a sound exercise of the Debtors' business judgment and therefore authorized pursuant to sections 363(b) and 365 of the Bankruptcy Code.

### Relief from Bankruptcy Rules 6004(h) and 6006(d)

34.    To the extent Bankruptcy Rules 6004(h) and 6006(d) apply, the Debtors submit that cause exists to waive the stays imposed by these Bankruptcy Rules. The Debtors need immediate access to Artist talent and cannot afford delays in announcing headline acts. As discussed in more detail above, the identities of the Artists are a significant factor that dictates a festival's profitability. A further delay in contracting with Artists impacts ticket sales for SFX festivals and creates more financial risk that a Show will be unprofitable. Accordingly, the Debtors submit that cause exists to waive the stays imposed by Bankruptcy Rules 6004(h) and 6006(d).

### Consent to Jurisdiction

35.    Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors

consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

36.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Lenders and counsel to the Ad Hoc Group; (c) counsel to the Committee; (d) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (e) counsel to the Agents.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

37.     No prior motion for the relief requested herein has been filed in this or any other court; provided however that the relief sought herein relates to the Operational Carve Out which was approved by the Court in the DIP Order.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting the Debtors such other and further relief as is just and proper.

Dated: March 17, 2016                    **GREENBERG TRAURIG, LLP**

                                         */s/ Dennis A. Meloro*
                                         Dennis A. Meloro (DE Bar No. 4435)
                                         The Nemours Building
                                         1007 North Orange Street, Suite 1200
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 661-7000
                                         Facsimile:  (302) 661-7360
                                         Email: melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Maria J. DiConza (admitted *pro hac vice*)
Nathan A. Haynes (admitted *pro hac vice*)
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile:  (212) 801-6400
Email:  mitchelln@gtlaw.com
      diconzam@gtlaw.com
      haynesn@gtlaw.com

*Counsel to the Debtors and*
*Debtors-in-Possession*

NY 245718505v7