# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |

## ORDER (I) APPROVING ARTIST CARVE OUT AGREEMENTS WITH THE AGENTS, (II) AUTHORIZING THE ASSUMPTION OF CERTAIN ARTIST AGREEMENTS, AND (III) GRANTING RELATED RELIEF

Upon the motion, dated March 15, 2016 (the "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363(b), and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), authorizing the Debtors to enter into the Artist Carve Out Agreement with the Agents, substantially in the form annexed hereto as **Exhibit 1**, and assume certain Artist Agreements; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

February 29, 2012; and due and adequate notice of the Motion having been given; and it appearing that no other or further notice need be provided; and the Court having heard the statements of counsel regarding the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested by this Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

 **IT IS HEREBY ORDERED THAT**:

 1. The Motion is GRANTED as set forth herein.

 2. The Debtors are authorized to enter into the Artist Carve Out Agreement, substantially in the form annexed hereto as **Exhibit 1**, which immediately shall be binding on the parties upon execution.  The failure to describe specifically or include any particular provision of the Artist Carve Out Agreements or related documents in the Motion or this Order shall not diminish or impair the effectiveness of such provision.

 3. The Artist Agreements identified on **Exhibit B** to the Artist Carve Out Agreement are hereby deemed assumed, effective upon entry of this Order.  The Assumed Agreements shall be binding and enforceable against the parties thereto in accordance with their terms.

 4. Within five (5) business days of entry of this Order, the Debtors shall pay the Cure Payment and any unpaid amounts which became due postpetition through entry of the Order.  The Debtors' execution of the Artist Carve Out Agreement and payments set forth in this paragraph shall satisfy the requirements of section 365 of the Bankruptcy Code for cure of all defaults under the Assumed Agreement and provide adequate assurance of future performance of

the Assumed Agreements.   After entry of this Order the Debtors shall continue to pay any additional amounts as they come due under the Assumed Agreements.

5.     Notwithstanding anything to the contrary contained herein, any payment made or to be made, and authorization contained in this Order shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any order regarding the Debtors' postpetition financing or use of cash collateral, and any budget in connection therewith.

6.     The terms and the conditions of this Order shall be immediately effective and enforceable upon its entry.

7.     The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief requested in this Order.

8.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order, the DIP Order, and the Artist Carve Out Agreement.

Dated: _____, 2016

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

3

**<u>Exhibit 1</u>**

**Artist Carve Out Agreement**

ARTIST CARVE OUT LANGUAGE
GENERAL TERMS AGREEMENT

SFX Entertainment, Inc., and several of its affiliates (collectively, the "**Company**"), filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on February 1, 2016 (the "**Petition Date**") in the case captioned, *In re SFX Entertainment, Inc., et al.*, Case No. 16-10238 (MFW) (Bankr. D. Del) (jointly administered) (the "**Chapter 11 Cases**").   Through this General Terms Agreement (the "**Agreement**"), the Company and William Morris Endeavor Entertainment, LLC, AM Only LLC, The Windish Agency, LLC, Paradigm Talent Agency, LLC, and Paradigm Music, LLC (separately "**Agent**", together "**Agents**") representing producers and artists that are key to the Company's business (the "**Artists**"), desire to memorialize the terms to be included in existing and all future agreements (together, the "**Artist Agreements**") and state as follows:

1.      On March 8, 2016, the Bankruptcy Court entered the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 and 507 (i) Authorizing the Debtors to Obtain Senior Secured Priming Superpriority Postpetition Financing, (ii) Authorizing Use of Cash Collateral, (iii) Granting Liens And Providing Superpriority Administrative Expense Status, (iv) Granting Adequate Protection, and (v) Modifying the Automatic Stay (as may be amended, the "**DIP Order**") [Dkt. No. 203].    Among other things, the DIP Order provides for a carve-out (the "**Operational Carve Out**") from the liens and superpriority claims of the DIP Lenders (as defined in the DIP Order) for post-petition amounts owed by the Debtors to artists, talent agents and credit card processors (all hereinafter referred to as "**Counterparty**" or "**Counterparties**") that are provided for in the Approved Budget and separately approved in writing and designated by the Company's Chief Restructuring Officer (the "**CRO**") as an "Operational Carve Out Payment," in an aggregate amount not to exceed $15 million (the "**Operational Carve Out Cap**").   For avoidance of doubt, the Operational Carve Out provides only for a carve-out from the liens and superpriority claims of the DIP Lenders upon an event of default and subsequent liquidation of the DIP Collateral (as defined in the DIP Order) and not a guarantee of payment by the DIP Lenders.

2.      If an Artist Agreement is approved in writing and designated by the CRO to be included in the Operational Carve Out, then in order to be included in the Operational Carve Out, each Counterparty must agree as follows: (i) that it will provide services to the Company according to the payment terms agreed to prior to the Petition Date, or if no such terms were agreed to prior to the Petition Date, provided in **Exhibit A** attached hereto (the "**Payment Terms**") during the Chapter 11 Cases, (ii) that it will continue to honor the Payment Terms and other terms of each Artist Agreement included in the Operational Carve Out after consummation of any plan of reorganization in these Chapter 11 Cases that provides for the ongoing operation of the Company, and (iii) that it will consent to the assumption and assignment of their agreements with the Company to the reorganized company or the purchaser of the assets related to the festival, event or club show for the applicable Artist Agreement that has been included in the Operational Carve Out if (x) information is provided that is reasonable under the circumstances to allow the Counterparty to confirm that the assignee has the financial wherewithal to fulfill the Artist Agreement, and (y) the Counterparty is provided with at least seven (7) business days' notice of

the proposed assignment of any Artist Agreement (unless such advance notice is impractical under the circumstances in which case the Company shall use best efforts to provide as much advance notice as possible), and (z) the Counterparty cannot articulate a commercially reasonable basis for refusal to agree to perform for the proposed assignee; provided, however, that in the event the Counterparty does not consent to such assignment, the remaining payments under applicable Artist Agreement (including, but not limited to, any and all rejection damages) will no longer be subject to the Operational Carve Out.  In addition, the Counterparties to the Artist Agreements listed on **Exhibit B** consent to the assumption by the Debtors of such agreements.

3.      As consideration for these promises by the undersigned, the Company represents and warrants as follows:  (i) all amounts due under each Artist Agreement which is included in the Operational Carve Out, including, but not limited to, any and all rejection damages for Operational Carve Out Payments related to contracts that are cancelled by the Company for any reason or no reason, subject to the terms of the applicable Artist Agreement, are less than the Operational Carve Out Cap, (ii) CRO shall (a) confirm in writing the amount remaining available under the Operational Carve Out Cap (the "**Operational Carve Out Balance**") [1] within forty-eight (48) hours of receipt of a request from one or more Counterparties for such information; provided however, that the CRO shall not have to provide such information more than once per week, and (b) provide to Counterparties that have Artist Agreements within the Operational Carve Out notice by email within forty-eight (48) hours after determining that the Operational Carve Out Balance is less than $1.5 million, (iii)  the Company shall assume each and every pre-petition Artist Agreement included in **Exhibit B**, and shall file a motion to assume no later than ten (10) days after execution of this Agreement and diligently pursue its approval and make all past due payments under such assumed Artist Agreement promptly upon receiving Bankruptcy Court approval, (iv) in the event the Company seeks to assume and/or assign any Artist Agreement to a third party, (x) the Company shall inform the Counterparty as soon as practicable upon identifying the assignee, of the name of the proposed assignee(s), and provide any relevant financial information to allow Counterparty to confirm adequate assurance of future performance and (y) if reasonable under the circumstances, the Counterparty may demand adequate assurance of future performance under such Artist Agreement.

4.      Each and every Artist Agreement shall contain the following language or the following language shall be attached to each and every Artist Agreement included in the Operational Carve Out:

---

[1] The Operational Carve Out Balance shall be determined each time the CRO approves an Artist Agreement as an Operational Carve Out Payment.  In determining the Operational Carve Out Balance, the Company shall add all Guarantee amounts for all Artist Agreements approved for inclusion in the Operational Carve Out to provide the Counterparty assurance that the full unpaid Guarantee is included within the Operational Carve Out Cap even if the performance included thereunder is in the future.  New Artist Agreements and Guarantees must be viewed as later in time than an already approved Artist Agreements/Guarantees, even if payment under the newly-presented Artist Agreement is due earlier than the payment to be made under the prior-approved Artist Agreements. The Operational Carve-Out Balance will be reduced automatically by the entire amount of the Guarantee, even if a portion of the Guarantee is not yet due, and the Operational Carve-Out Balance will be increased automatically by any payment made under any Artist Agreement that is an Operational Carve-Out Payment.

"I am the Chief Restructuring Officer of SFX Entertainment, Inc. and its related companies (the "Debtors"), debtors in the bankruptcy cases entitled In re:  SFX Entertainment, Inc., et al., Case No. 16-10238.  Pursuant to the Final DIP Order [Dkt No. 203], I affirm and certify, under penalties of perjury, that the dollar amounts to be paid hereunder (the "**Guarantee**") are provided for in the Approved Budget, and have been hereby separately approved in writing and designated by me, as CRO, as an Operational Carve Out Payment (as defined in the Final DIP Order), and, to date, the aggregate amount of the Operational Carve Out Payments which remain unpaid, inclusive of the payments under this Agreement, do not exceed $15 million.  In addition, on behalf of the estate of the undersigned Debtor, the terms of this Agreement [including the attached Addendum "A" and Artist Rider] are approved."

5.      The Company shall use commercially reasonable efforts to review all new Artist Agreements promptly to determine whether such Artist Agreement shall be included in the Operational Carve Out and to provide the CRO certification no later than two (2) business days of presentment of the applicable Artist Agreement.

6.      In the event any proposed post-Petition Date Artist Agreement is not approved as within the Operational Carve Out and in the event the Company wishes to have the Artist Agreement fulfilled, the Company shall remit full payment of the Guarantee on the earlier of (i) the execution of the Artist Agreement, or (ii) the announcement of the performance described in the Artist Agreement.

7.      Any dispute with respect to this Agreement, the DIP Order and/or the Operational Carve Out shall be determined by the Bankruptcy Court.

8.      Signatories:

a.      The undersigned Agent hereby certifies that it is the duly authorized representative of the Producer (f/s/o Artist) identified in each Artist Agreement submitted for approval for the purpose of binding the Producer (f/s/o Artist) to the terms hereof.

b.      The undersigned CRO hereby certifies that he is the duly authorized representative of the Company and the "Estate" in the Chapter 11 Cases for the purpose of binding the Company and the Estate to the terms hereof.

## Exhibit A

### Payment Terms

**NOTE:   The following payment terms are applicable to all Artist Agreements included in the Operational Carve Out that did not have agreed Payment Terms prior to the Petition Date. For those Post-Petition or Assumed Artist Agreements not included in the Operational Carve Out, Producer (defined herein) shall be entitled to full payment on the earlier of execution of the Artist Agreement or announcement of the performance.**

Festivals and Events (greater than 10,000 capacity):

Headliners

Deposits & Payments:  Provided that Producer (defined as the Artist-loan out organization which is party to the Artist Agreement), is not in breach of any of Producer's material obligations and in consideration for Producer's furnishing the services of Artist's performance (including, but not limited to:  exclusivity of Artist's performance within a certain geographic area and during a certain time; advertising of the performance (including use of Artist's name, likeness, and image); solicitation of sponsorships and ticket sales based upon Artist's name, likeness, and image, and personal performance at the contracted-for engagement) (collectively, the "**Event**"), Company shall pay the fee owed to Producer for Artist's performance (the "**Guarantee**") as follows: 25% before announcement of the lineup; 50% thirty (30) days before the Event Date (herein defined as the date on which the Festival or similar Event commences), and 25% not less than five (5) business days prior to the Event Date. Notwithstanding the foregoing, if Producer fails to perform its obligations (unless such failure is explicitly excused hereunder or in the Artist Agreement) or communicates its intention to not perform its obligations, Company has no obligation to pay the Guarantee.  In any event, Producer shall be entitled to a reasonable opportunity to cure any alleged or actual breach (such cure to occur no later than within two (2) business days prior to the Event Date).  In the event the Company cancels a performance not otherwise excused under the Artist Agreement, the Guarantee shall become due and payable in full immediately.  The foregoing is subject to the standard terms set forth in any Artist Agreement issued on behalf of Producer (including, without limitation, payment in the event the performance or Event is cancelled due to a force majeure event or inclement weather), such terms not to be materially altered or amended unless specifically agreed to in writing.

Non-Headliners

Deposits & Payments:  Provided that Producer is not in breach of any of Producer's material obligations and in consideration for Producer furnishing the services of Artist's performance (including, but not limited to: exclusivity of Artist's performance within a certain geographic area and during a certain time; advertising of the performance (including use of Artist's name, likeness, and image); solicitation of sponsorships and ticket sales based upon Artist's name, likeness, and image, and personal performance at the contracted-for engagement) (collectively, the "**Event**"), Company shall pay the fee owed to Producer for Artist's performance (the "**Guarantee**") as follows: 15% before announcement of the lineup; 40% thirty (30) days before the Event Date, and 45% not less than five (5) business days prior to the Event Date. Notwithstanding the foregoing, if Producer fails to sufficiently perform its obligations (unless such failure is explicitly excused hereunder or in any Artist Agreement) or communicates its intention to not perform its obligations, Company has no obligation to pay the Guarantee. In any event, Producer shall be entitled to a reasonable opportunity to cure any alleged or actual breach (such cure to occur not later than

within two (2) business days prior to the Event Date). In the event the Company cancels a performance not otherwise excused under the Artist Agreement, the Guarantee shall become due and payable in full immediately.  The foregoing is subject to the standard terms set forth in any Artist Agreement on behalf of Producer (including, without limitation, payment in the event the performance or Event is cancelled due to a force majeure event or inclement weather), such terms not to be materially altered or amended unless specifically agreed to in writing.

Events (for venues of 10,000 capacity or less) or Club Shows:

Deposits & Payments:  Provided that Producer is not in breach of any of Producer's material obligations and in consideration for Producer's furnishing the services of Artist's performance (including, but not limited to: exclusivity of Artist's performance within a certain geographic area and during a certain time; advertising of the performance (including use of Artist's name, likeness, and image); solicitation of sponsorships and ticket sales based upon Artist's name, likeness, and image, and personal performance at the contracted-for engagement) (collectively, the "**Event**"), Company shall pay the fee owed to Producer for Artist's performance (the "**Guarantee**") as follows: 20% before announcement of the lineup; 40% thirty (30) days before the Event Date, and 40% not less than five (5) business days prior to the Event Date. Notwithstanding the foregoing, if Producer fails to sufficiently perform his or her obligations (unless such failure is explicitly excused hereunder or in any Artist Agreement) or communicates its intention to not perform its obligations, Company has no obligation to pay the Guarantee. In any event, Producer shall be entitled to a reasonable opportunity to cure any alleged or actual breach (such cure to occur not later than within two (2) business days prior to the Event Date).  In the event the Company cancels a performance not otherwise excused under the Artist Agreement, the Guarantee shall become due and payable in full immediately.  The foregoing is subject to the standard terms set forth in the Artist Agreement on behalf of the Producer (including, without limitation, payment in the event the performance or Event is cancelled due to a force majeure event or inclement weather) such terms not to be materially altered or amended unless specifically agreed to in writing.

**<u>Exhibit B</u>**