# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.* [1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:  April 5, 2016 at 10:30 a.m.**<br>**Objection Deadline:  March 29, 2016 at 4:00 p.m.** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (A) APPROVING BID PROCEDURES RELATING TO THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF FLAVORUS, INC., (B) ESTABLISHING PROCEDURES IN CONNECTION WITH THE ASSUMPTION AND/OR ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) APPROVING NOTICE PROCEDURES, AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**")

hereby move the Court (the "**Motion**"), pursuant to sections 105(a), 363 and 365 of title 11 of

the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 6004,

6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and

Rules 2002-1 and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order,

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

substantially in the form annexed hereto as **Exhibit A** (the "**Bid Procedures Order**"): (a) approving the bid procedures in the form annexed as **Exhibit 1** to the Bid Procedures Order (as amended or modified, the "**Bid Procedures**") to be implemented in connection with a sale (the "**Sale**") of all or substantially all of the assets of Flavorus, Inc. (the "**Flavorus Assets**"); (b) establishing procedures in connection with the Debtors' assumption and/or assignment to the Successful Bidder or Backup Bidder (as such terms are defined below) of certain executory contracts and unexpired leases (each an "**Assumed Contract**" and, collectively, the "**Assumed Contracts**") and the corresponding cure amounts (the "**Cure Amounts**") required to be paid in connection with the assumption and/or assignment, (c) approving the notice procedures (the "**Notice Procedures**") to advise parties in interest and Potential Bidders (as defined below) of the Bid Procedures, the auction of the Flavorus Assets (the "**Auction**"), the sale hearing for the Flavorus Assets (the "**Sale Hearing**"), and the Debtors' intent to assume and/or assign to the Successful Bidder or Backup Bidder the Assumed Contracts and the corresponding Cure Amounts; and (d) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case

1.      On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     On February 12, 2016, an official committee of unsecured creditors (the "**Committee**") was formed in these Chapter 11 Cases.  No request has been made for the appointment of a trustee or examiner.

<u>**Jurisdiction, Venue and Statutory Predicates**</u>

4.     The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.     Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6.     The statutory predicates for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Local Rules 2002-1 and 6004-1.

<u>**Background**</u>

**A.     General Background**

7.     The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture.   The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry, specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad.  Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

8.     Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad.  In addition, the Debtors manage large, event-driven nightclubs that serve as venues for performances by key electronic music talent.

The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

9.      The Debtors and their 120 non-Debtor subsidiaries operate a business that spans the globe, with operations in over 34 countries.  The Debtors constitute substantially all of the domestic companies comprising SFX's business as well as select foreign subsidiaries.  The Debtors have more than 325 employees and, together with the non-Debtor entities, have more than 625 employees.

10.      The Debtors' capital structure is highly levered.  In 2015, the Debtors began to face significant liquidity issues.  While the Debtors attempted to enhance liquidity through a September 2015 financing and potential sales of non-strategic assets, the Debtors concluded that they needed to restructure their liabilities through a bankruptcy process.

11.      Prior to the filing of these Chapter 11 Cases, the Debtors entered into a restructuring support agreement with holders of over 70% of their outstanding secured debt.  The restructuring support agreement provides for a comprehensive restructuring of the Debtors' balance sheet.  As part of that transaction, certain of the holders of the secured debt also agreed to provide the Debtors with debtor-in-possession financing to allow for the Debtors to prosecute these Chapter 11 Cases.  The Debtors intend to use these Chapter 11 Cases to effect their balance sheet restructuring and implement operational improvements.

12.      A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") [Docket No. 13] filed on the Petition Date and incorporated herein by reference.

4

**B.      Acquisition of Flavorus, Inc.**

13.      Flavorus, Inc. ("**Flavorus**"), founded in 1999, is a ticketing company that primarily serves U.S.-based clients.  Flavorus's main revenue source comes from fees on ticket sales, and to a lesser extent, per-ticket fees on tickets sold by companies licensing Flavorus's ticketing platform.   Flavorus's software platform allows for high-volume sales and customizability to serve various types of events.   On April 1, 2014, SFX completed its acquisition of Flavorus.  As part of SFX, Flavorus supports ticket sales of SFX's and third party's events, and provides customer service, on-site operations and marketing.

**C.      Sale of the Flavorus Assets**

14.      Flavorus is no longer viewed by the Debtors as core to the SFX platform on a go forward basis.  The Debtors seek to sell the Flavorus Assets through a sale under section 363 of the Bankruptcy Code.

15.      Moelis has had contact with approximately 16 potential buyers for the Flavorus Assets.  Of those 16 potential buyers, 8 executed non-disclosure agreements and 4 submitted preliminary indications of interest.

16.      Moelis intends to contact those parties who previously expressed an interest in the Flavorus Assets as well as additional parties who may not have been previously contacted.  The Debtors believe that Moelis's continued marketing efforts and the contemplated sale process through section 363 of the Bankruptcy Code will yield the maximum value for the Flavorus Assets.

## Relief Requested

17.    By this Motion, the Debtors seek the entry of the Bid Procedures Order (a) approving the Bid Procedures; (b) approving the proposed Notice Procedures; and (c) granting related relief.[2]

### A.    The Bid Procedures

18.    The Debtors propose the Bid Procedures, which are incorporated herein by reference, in an attempt to maximize the realization of value of the Flavorus Assets for the benefit of the Debtors' estates.  The Debtors are soliciting bids for the Flavorus Assets based on the form of asset purchase agreement (the "**Purchase Agreement**") which the Debtors will provide to interested bidders and, if bids are received in conformance with the Bid Procedures, the Debtors will conduct the Auction to determine the highest and otherwise best bid for the Flavorus Assets.  Specifically, the Bid Procedures provide, in relevant part, as follows[3]:

   a.    Qualified Bidders, Non-Disclosure Agreements and Access to Data Room

   Any person or entity wishing to bid on the Flavorus Assets (each a "**Potential Bidder**") must execute and deliver (unless previously delivered) to the Debtors a confidentiality and non-disclosure agreement (a "**Non-Disclosure Agreement**") in form and substance acceptable to the Debtors.

   The Debtors will afford any Potential Bidder who executes and delivers such Non-Disclosure Agreement such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their

---

[2]  Through the Motion, the Debtors are not currently seeking the approval of bid protections for any potential bidder, as the Debtors have not yet selected a potential bidder to serve as the "stalking horse" (a "**Stalking Horse Bidder**"). However, if the Debtors receive sufficient interest and potential bidders are interested in serving as the Stalking Horse Bidder, and the Debtors, in the exercise of their business judgment, determine that appointing a Stalking Horse Bidder is in the best interest of their estates, the Debtors may negotiate an appropriate asset purchase agreement with a potential bidder interested in serving as the Stalking Horse Bidder.  In the event the Debtors elect to negotiate an asset purchase agreement with a potential bidder to serve as the Stalking Horse Bidder, the Debtors will seek appropriate relief from the Court.

[3]  This description of the Bid Procedures includes excerpts from the terms set forth in the Bid Procedures annexed hereto.  Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the Bid Procedures.  To the extent that this description differs in any way from the terms set forth in the Bid Procedures, the terms of the Bid Procedures shall control.

business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine to be reasonable and appropriate, including, without limitation, access to the Debtors' confidential electronic data room concerning the Flavorus Assets, reasonable access, during normal business hours, to the Debtors' management, and access to all relevant information regarding the Flavorus Assets reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale.  Moelis will coordinate all due diligence access and requests for additional information from such Potential Bidders.  The Debtors shall not be obligated to furnish any due diligence information after the conclusion of the Auction.  Neither the Debtors nor their counsel or advisors are responsible for, or will bear liability with respect to, any information obtained by Potential Bidders in connection with due diligence.  Notwithstanding anything contained herein to the contrary, to the extent the Debtors believe that providing access to Potential Bidders to certain sensitive commercial information is not advisable, the Debtors, in their business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever to any party.

The Debtors shall provide the Required Lenders, the Requisite Noteholders, and the Committee, in each case, including their professionals, with periodic updates every two (2) business days as to which Potential Bidders have entered into Non-Disclosure Agreements.

A "Qualified Bidder" is a Potential Bidder that (a) delivers to counsel to the Debtors a Non-Disclosure Agreement, (b) demonstrates to the Debtors a reasonable certainty of the ability to complete the Sale in a timely manner (including the financial capability of the Potential Bidder to consummate the Sale for the Flavorus Assets and the ability to receive the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (c) submits a Written Offer (as defined below) that is deemed a Qualified Bid as set forth below, *provided*, *however*, that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive one or more requirements for a Qualified Bidder.[4]   The consultation/consent rights of any party that participates in any bid or credit bid for the Flavorus Assets shall be terminated unless and until such bid or credit bid, as applicable, is rejected; *provided* that any such party will have the same rights as any other Qualified Bidder and will retain any rights it has under existing orders regarding debtor-in-possession financing and/or use of cash collateral (to the extent applicable).  As promptly as practicable after a Potential Bidder delivers a Non-Disclosure

---

[4]  Notwithstanding anything to the contrary herein, Wilmington Savings Fund Society, FSB (the "**DIP Agent**"), on behalf of the DIP Lenders, and U.S. Bank National Association (the "**Second Lien Agent**"), on behalf of holders of 9.625% Senior Secured Notes Due 2019 issued by the Debtors (the "**Second Lien Noteholders**"), are hereby determined to be Qualified Bidders for all purposes at the Auction, and shall be permitted, but not obligated, to credit bid to the full extent permitted under section 363(k) of the Bankruptcy Code.

Agreement and submits a Written Offer, and in all events not later than 12:00 p.m. (Eastern Time) two (2) days preceding the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall determine, and the Debtors shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.

b.   Requirements for a Qualified Bid

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to the Debtors, with a copy to counsel to the Debtors, Moelis, counsel to the DIP Lenders, counsel to the Consenting Noteholders, and counsel to the Committee, a written offer (each, a "**Written Offer**"), which is deemed to be a "Qualified Bid". To be deemed a "Qualified Bid", a Written Offer must meet each of the requirements listed below:

(i)    Delivery:  Be delivered no later than 12:00 p.m. (Eastern Time) on April 27, 2016 (the "**Bid Deadline**").

(ii)   Executed Agreement:  Be accompanied by (i) a clean and duly executed and binding Purchase Agreement (together with the exhibits and schedules thereto, a "**Modified Purchase Agreement**"), and (ii) a marked Modified Purchase Agreement reflecting any variations from the Purchase Agreement.

(iii)  Designation of Assumed Contracts and Leases and Adequate Assurance of Future Performance:  Contain a list of any and all Assumed Contracts that are to be assumed and/or assigned in connection with a Sale to the extent such list is not included in the Modified Purchase Agreement.  The Potential Bidder must also include documentation sufficient to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Assumed Contracts on the list.

(iv)  Compliance with the Restrictions on the Transfer of Personally Identifiable Information:  Contain a statement that the Potential Bidder will comply with Flavorus's customer data privacy policy, restricting the transfer of personally identifiable information of its customers, as more fully set forth in the Purchase Agreement.

(v)   Proof of Financial Ability to Perform:  Contain evidence of financing, access to funds or such other financial and other information that will reasonably allow the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the

Committee, to make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, which evidence is satisfactory to the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, including, without limitation, such financial and other information setting forth adequate assurance under section 365 of the Bankruptcy Code in a form requested by the Debtors.

(vi)     Identification of Parties to Participate:    To the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, (i) fully disclose the identity of each entity or person that will be bidding for the Flavorus Assets or otherwise participating in connection with such bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Flavorus Assets, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval in connection with the consummation of any Sale.

(vii)    Irrevocable:  State that the Written Offer is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Flavorus Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) thirty (30) days after the date of the Auction (the "**Backup Bid Expiration Date**").

(viii)   No Break-Up Fee or Expense Reimbursement:  The Written Offer must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment.

(ix)     Contingencies:    The Written Offer must not contain any due diligence or financing contingencies.

(x)      Authorization to Consummate Sale:    Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to the submission, execution, delivery and closing of the Modified

Purchase Agreement to the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.

(xi)  <u>Purchase Price</u>:  Provide that any cash portion of the purchase price shall be payable in U.S. dollars and will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtors, subject to the consent of the Required Lenders[5] and the Requisite Noteholders,[6] and in consultation with the Committee.

(xii)  <u>Good Faith Deposit</u>:  Provide a good faith deposit (the "**Good Faith Deposit**") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions annexed to the Bid Procedures as **<u>Exhibit A</u>**, or such other form as is acceptable to the Debtors in an amount equal to 10% of the purchase price set forth in the Written Offer.

(xiii)  <u>Anticipated Timeline</u>:  Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (xiv) below.

(xiv)  <u>Agreement with Bid Procedures, Provision of Additional Information and Submission to Bankruptcy Court Jurisdiction</u>: Include a written acknowledgement by such Potential Bidder that it (i) agrees to the terms of the Bid Procedures; (ii) agrees to provide such other information as may be reasonably requested in writing by the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to the Auction; and (iii) confirms that the Potential Bidder submits to the jurisdiction of the Bankruptcy Court.

(xv)  <u>Closing Date</u>:  Provide for a closing date (the "**Closing Date**") which shall be no later than 15 days after the entry of an order approving the Sale (the "**Sale Order**") or such other date as is acceptable to the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

The Debtors will promptly (but, in any case, within one (1) calendar day) deliver, after receipt thereof, copies of all Written Offers to the DIP Lenders, the Consenting Noteholders and the Committee, and, in each case, their professionals.

---

[5] "**Required Lenders**" shall have the meaning provided for such term in the DIP Loan Agreement.

[6] "**Requisite Noteholders**" shall have the meaning set forth in the Restructuring Support Agreement.

Between the Bid Deadline and the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may (i) negotiate or seek clarification of any Qualified Bid from a Qualified Bidder, (ii) request information from the Qualified Bidder, (iii) engage in discussions with the Qualified Bidder, or (iv) take such other actions contemplated under these Bid Procedures. Without the consent of the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid. All changes to the form of Purchase Agreement reflected in the Modified Purchase Agreement will be evaluated by the Debtors and must be acceptable to the Debtors, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee. Any Good Faith Deposit accompanying a Written Offer that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine not to be a Qualified Bid shall be returned promptly following such determination. For the avoidance of doubt, the DIP Agent, on behalf of the DIP Lenders, and the Second Lien Agent, on behalf of the Second Lien Noteholders, shall not need to comply with any of the above requirements for becoming a Qualified Bidder and participating in the Auction and are hereby determined to be Qualified Bidders.

c. <u>Bid Deadline</u>

All Qualified Bids must be received by each of the following parties prior to the Bid Deadline: (i) the Debtors, SFX Entertainment, Inc., 902 Broadway, 15th Floor, New York, NY 10010, Attn: Mike Katzenstein, e-mail: Mike.Katzenstein@fticonsulting.com; (ii) the Debtors' counsel, Greenberg Traurig, LLP, 200 Park Avenue, New York, NY 10166, Attn: Maria J. DiConza, fax: (212) 801-6400, e-mail: diconzam@gtlaw.com; (iii) the Debtors' investment banker, Moelis & Company LLC, 399 Park Avenue, 5th Floor, New York, NY 10020, Attn: Adam Keil/Ryan Kitchen, Fax: (212) 880-4260, e-mail: adam.keil@moelis.com/ryan.kitchen@moelis.com; (iv) counsel to the DIP Lenders and Consenting Noteholders: Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038, Attn: Jonathan D. Canfield/Joshua M. Siegel, Fax: (212) 806-6006, e-mail: jcanfield@stroock.com/jsiegel@stroock.com; and (v) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, Wilmington, Delaware 19801, Attn: Brad Sandler/Colin Robinson/Debra Grassgreen, Fax: (302) 652-4400, e-mail: bsandler@pszjlaw.com/crobinson@pszjlaw.com/dgrassgreen@pszjlaw.com.

d. <u>Determination of Qualified Bidders</u>

The Debtors shall, by no later than 12:00 p.m. (Eastern Time) two (2) days prior to the Auction, (i) determine, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, whether a

Potential Bidder is a Qualified Bidder, and (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder.

e.    "As Is, Where Is"

Except as otherwise provided in the Final Purchase Agreement (as defined below), the Sale of the Flavorus Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates except to the extent set forth in the Final Purchase Agreement as approved by the Bankruptcy Court.  Except as otherwise provided in the Final Purchase Agreement, all of the Debtors' right, title and interest in and to the Flavorus Assets subject thereto shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "**Interests**") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Flavorus Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Flavorus Assets prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Flavorus Assets in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Flavorus Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder(s) and the Backup Bidder(s), the terms of the Sale(s) as set forth in the final form of the applicable Modified Purchase Agreement(s) (the "**Final Purchase Agreement**") which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtors, on the other hand, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

f.    Auction

If the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected two or more Qualified Bidders, the Debtors shall conduct an Auction to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reasonably deem relevant and may include, among other things, the following:  (i) the amount and nature of the consideration; (ii) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder in its respective Modified Purchase Agreement; (iii) the extent to which such modifications are likely to delay closing of the Sale of the Flavorus Assets and the cost to the Debtors of such modifications or delay; (iv) the total consideration to

be received by the Debtors; and (v) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction shall commence at 11:00 a.m. (Eastern Time) on May 2, 2016, at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, or such other place as determined by the Debtors, and continue thereafter until completed. The Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, reserve the right to cancel or postpone the Auction. The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reserve the right to not proceed with any Sale.

Except as otherwise permitted in the Debtors' discretion, only the Debtors, the DIP Lenders, the Consenting Noteholders, the Committee, Qualified Bidders, any creditor that submits a written request to attend to the Debtors in advance of the Auction, and, in each case, their respective professionals shall be entitled to attend the Auction. Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i)     Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(ii)    The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any order of the Bankruptcy Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest or otherwise best offer for the Flavorus Assets.

(iii)   The Debtors will arrange for the actual bidding at the Auction to be transcribed. Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

(iv)    Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that it has not engaged in any collusion with the Debtors or any other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Flavorus Assets.

(v)     Prior to the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall identify the highest

and best of the Qualified Bids received (the "**Opening Qualified Bid**"). Subsequent bidding will continue in minimum increments valued at not less than $250,000 in cash and/or noncash consideration, or in such amounts as to be determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to, and announced at, the Auction.  With respect to any subsequent bids, any noncash consideration shall be subject to the consent of the Required Lenders and the Requisite Noteholders.

(vi)     All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest or best bid and, to the extent requested by any Qualified Bidder, use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest or best bid.

(vii)    In the Debtors' discretion, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction, *provided*, *however*, that any such modifications to the Purchase Agreement or Modified Purchase Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors as determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.

(viii)   Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall, as soon as practicable, (i) identify and determine in their business judgment the highest and/or best Qualified Bid for the Flavorus Assets (a "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, and (iii) require the Successful Bidder to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing.

(ix)     In addition, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will determine which Qualified Bid, if any, is the next highest and/or best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale.  A Qualified Bidder that submitted a Qualified Bid that is designated a Backup Bid is a "**Backup Bidder**".  Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

(x)    Following the conclusion of the Auction, the Debtors may resume bidding on such procedures determined by the Debtors in their discretion, and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, for the sale of any Flavorus Assets not sold to the Successful Bidder.

g.   Sole Qualified Bidder

If, by the Bid Deadline, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected only one Qualified Bidder for the Flavorus Assets, then the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, shall not hold an Auction and instead, shall, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine whether to request at the Sale Hearing that the Bankruptcy Court approve the Qualified Bid from the sole Qualified Bidder.  Notwithstanding anything herein to the contrary, nothing herein shall obligate the Debtors to consummate or pursue the Sale of the Flavorus Assets.

h.   Sale Hearing

The Sale Hearing will be held before the Honorable Mary F. Walrath on May 5, 2016 at 10:30 a.m. (Eastern Time) at the United States Bankruptcy Court for the District of Delaware, located in Courtroom 4, Fifth Floor, 824 Market Street, Wilmington, DE 19801.  At the Sale Hearing, the Debtors shall present the results of the Auction, if one is held, to the Bankruptcy Court and may seek approval of the Successful Bid and any Backup Bid.  Further, the Debtors will seek to have any executory contract or unexpired lease that is not designated to become an Assumed Contract, by the Debtors and the Successful Bidder or Backup Bidder, as applicable, be rejected at the Sale Hearing.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Flavorus Assets to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the Successful Bidder and the Debtors shall be authorized to affect such Sale without further order of the Bankruptcy Court.  The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

i.   Return of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders shall be held in a non-interest bearing escrow account.  Except for those of the Successful Bidder and Backup Bidder(s), the Debtors shall promptly return the Good Faith Deposits of (i) all Qualified Bidders after the Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

B.      **Assumption and Assignment/Cure Procedures**

19.      To facilitate and affect the Sale, the Debtors will be required to assume and/or assign certain contracts and leases (the "**Assumed Contracts**") to the Successful Bidder or Backup Bidder, as applicable.  Given the number of executory contracts to which the Debtors are a party, the Debtors seek to establish (a) procedures for determining Cure Amounts through the closing date of the Sale, which amounts shall include all pre- and post-petition amounts the Debtors owe the non-debtor party under each Assumed Contract that have accrued and not been paid prior to the closing date, and (b) a deadline for objections to the assumption and/or assignment of the Assumed Contracts (collectively, the "**Cure Procedures**").

20.      No later than three (3) business days after entry of the Bid Procedures Order, the Debtors shall prepare and distribute to non-Debtor parties to the Assumed Contracts a notice, substantially in the form annexed hereto as **Exhibit 3** (the "**Notice of Assignment and Assumption**"), listing (i) the Assumed Contract(s); and (ii) the Cure Amount(s), if any, to be assigned to the Successful Bidder or Backup Bidder, as applicable.

21.      To facilitate a prompt resolution of cure disputes and objections relating to the assumption and/or assignment of the Assumed Contracts, the Debtors propose the following deadlines and procedures:

        a.      The non-Debtor parties to the Assumed Contracts shall have until **4:00 p.m. (prevailing Eastern Time) on April 28, 2016** (the "**Contract Objection Deadline**"), which deadline may be extended in the discretion of the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, to object (a "**Contract Objection**") to (i) the Cure Amounts listed by the Debtors and to propose alternative Cure Amounts, and/or (ii) the proposed assumption and/or assignment of the Assumed Contracts in connection with the Sale.  The Debtors may amend the Notice of Assignment and Assumption (each a "**Supplemental Notice of Assignment and Assumption**") to add or remove a contract or lease or to reduce the Cure Amount thereof.

b.      Any party objecting to (i) any Cure Amount and/or (ii) the proposed assumption and assignment of any Assumed Contract in connection with the Sale, shall file and serve a Contract Objection, in writing, setting forth with specificity, any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed Contract(s), as applicable, and/or any and all objections to the potential assumption and/or assignment of such agreements, together with all documentation supporting such claim or objection, upon counsel to the Debtors, counsel to the DIP Lenders, counsel to the Ad Hoc Group, and counsel to the Committee so that the Contract Objection is received no later than **4:00 p.m. (prevailing Eastern Time), on the Contract Objection Deadline**. Where a non-Debtor counterparty to an Assumed Contract files an objection asserting a cure amount higher than the proposed Cure Amount (the "**Disputed Cure Amount**"), then (a) to the extent the parties are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, and subject to the written consent of the Successful Bidder or Backup Bidder, as applicable, of such consensual resolution, the Cure Amount shall be revised to be the amount of the consensual resolution; (b) to the extent the parties are unable to consensually resolve the dispute prior to the Sale Hearing, then such objection will be heard at the Sale Hearing; or (c) the Successful Bidder or Backup Bidder, as applicable, may remove the contract to which the Contract Objection relates from the schedule of Assumed Contracts.

c.      Unless a Contract Objection is filed and served before the Contract Objection Deadline, all counterparties to the Assumed Contracts shall be (i) forever barred from objecting to the proposed Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed Contracts, or any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the closing of the Sale, including those constituting Excluded Liabilities, against the Purchaser, any counterclaim, defense, setoff, recoupment, claim of refund or any other claim asserted or against the Debtors, and the Debtors and the Successful Bidder or Backup Bidder, as applicable, shall be entitled to rely solely upon the proposed Cure Amounts set forth in the applicable Notice of Assignment and Assumption; (ii) deemed to have consented to the assumption and assignment; and (iii) forever barred and estopped from asserting or claiming against the Debtors or the Successful Bidder or Backup Bidder, as applicable, that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assumed Contracts, including, without limitation, any consent rights, or that there is any objection or defense to the assumption and assignment of such Assumed Contracts or imposing or charging against the Successful Bidder or Backup Bidder, as applicable, any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and

assignment to the Successful Bidder or Backup Bidder, as applicable, of any Assumed Contract in accordance with the Final Purchase Agreement.

d.      To the extent a non-Debtor party believes that an Assumed Contract requires such party's consent right to the assignment of such Assumed Contract to the Successful Bidder or Backup Bidder, as applicable, such non-Debtor party must raise this issue in its objection which must be filed before the Contract Objection Deadline.  If no timely objection is raised, such other non-Debtor parties to an Assumed Contract shall be barred and estopped from asserting or claiming that their Assumed Contract contains an enforceable consent right.

## C.    Notice Procedures

22.    The Debtors request that the Court approve the following Notice Procedures in connection with providing all parties in interest and Potential Bidders with notice of the Bid Procedures, the Auction Date, the Sale Hearing, and the Debtors' intent to assume and/or assign to the Successful Bidder or Backup Bidder the Assumed Contracts and the corresponding Cure Amounts as follows:

a.      On or before three (3) business days after entry of the Bid Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause (a) a notice in substantially the form annexed as **Exhibit 2** to the Bid Procedures Order (the "**Notice of Bid Procedures, Auction Date and Sale Hearing**"); and (b) a copy of the Bid Procedures Order to be sent by first-class mail postage prepaid, to the following:  (i) the Office of the United States Trustee; (ii) counsel to the DIP Lenders and the Consenting Noteholders; (iii) counsel to the Committee; (iv) all taxing authorities in the states where the Debtors are located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Debtors or which are reasonably expected by the Debtors to have claims, contingent or otherwise, in connection with the ownership of the Flavorus Assets, or to have any known interest in the relief requested by the Motion; (v) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vi) all persons known or reasonably believed by the Debtors to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Flavorus Assets; (vii) the non-Debtor parties to the Assumed Contracts; (viii) all persons known or reasonably believed to have expressed an interest in acquiring the Flavorus Assets within the last four (4) months; (ix) the United States Attorney's office; (x) Attorneys General in the states where the Debtors are located; (xi) any applicable state and local environmental agencies; and (xii) all parties to any litigation involving the Debtors.

   b.  On or before three (3) business days after entry of the Bid Procedures Order, the Debtors will serve the Notice of Bid Procedures, Auction Date and Sale Hearing on all known creditors of the Debtors.

   c.  On or before seven (7) days after entry of the Bid Procedures Order, subject to applicable submission deadlines, the Debtors will publish an abbreviated version of the Notice of Bid Procedures, Auction Date and Sale Hearing once in one or more regional and/or national publications that the Debtors deem appropriate.

   d.  On or before three (3) business days after the entry of the Bid Procedures Order, the Debtors shall serve by first class mail or hand delivery, Notice of Assumption and Assignment, substantially in the form attached to the Bid Procedures Order as **Exhibit 3**, on all non-Debtor parties to the Assumed Contracts.  The Notice of Assumption and Assignment (or a Supplemental Notice of Assumption and Assignment) shall (i) identify the calculation of the Cure Amounts that the Debtors believe must be paid to cure all prepetition defaults under the Assumed Contracts, and (ii) provide instructions for the timing and procedure governing the filing of any objections to (a) the proposed Cure Amounts and (b) the proposed assumption and assignment of any Assumed Contract in connection with the Sale, as approved by the Bankruptcy Court in the Bid Procedures Order.  In addition, if the Debtors identify additional executory contracts or unexpired leases that might be assumed by the Debtors and assigned to the Successful Bidder or Backup Bidder, as applicable, that are not included in the original Notice of Assumption and Assignment, the Debtors shall promptly send a Supplemental Notice of Assumption and Assignment to the applicable counterparties to such additional Assumed Contracts.

   23.    In addition to the foregoing, electronic notification of the Motion, the Bid Procedures Order, the Notice of Bid Procedures, Auction Date and Sale Hearing, and the Notice of Assumption and Assignment will be posted on:  (i) the main case docket on the Bankruptcy Court's electronic case filing (ECF) website; and (ii) the case management website maintained by the Debtors' claims and noticing agent, Kurzman Carson Consultants, LLC, located at www.kccllc.net/sfx.

### Basis for Relief Requested

**A.    The Proposed Bid Procedures are Reasonable and Appropriate**

   24.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l).  Section 363 of the

Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court

to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However,

courts in this Circuit and others have required that the decision to sell assets outside the ordinary

course of business be based upon the sound business judgment of the debtors.  *See In re Moore*,

608 F.3d 253, 263 (5th Cir. 2010), *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir.

1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071

(2d Cir. 1983); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. 2002); *Dai-Ichi

Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding

Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169,

176 (D. Del. 1991).

        25.     In determining the propriety of the sale of assets by a chapter 11 debtor prior to

confirmation of a plan of reorganization, the Second and Sixth Circuits, as well as other courts,

have applied, among other factors required by section 363 of the Bankruptcy Code, a "sound

business purpose" test.  *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986);

*In re Lionel Corp.*, 722 F.2d at 1070-71; *see also Titusville Country Club v. Pennbank (In re

Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).  In *In re Solar Mfg. Corp.*,

the Third Circuit, pursuant to section 116(3) of the Bankruptcy Act of 1938 (the predecessor to

section 363 of the Bankruptcy Code), applied the stricter standards of "emergency" or

"perishability" on a proposed pre-confirmation sale of a chapter 11 debtor's assets.  176 F.2d

493, 494-95 (3d Cir. 1949).  Although the Third Circuit has not specifically addressed the

application of the "sound business purpose" test, in *In re Abbots Dairies of Pa., Inc.*, 788 F.2d

143, 143 (3d Cir. 1986), where the Third Circuit examined a pre-confirmation sale of assets of

chapter 11 debtors, the Court did not mention the *Solar* decision, leading "other courts to [ ] conclu[de] that the Third Circuit follows the 'sound business purpose' test rather than the 'emergency' rule". *See In re Titusville Country Club*, 128 B.R. at 399.

26. The "sound business purpose" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a sound business reason justifies the sale of assets outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith exists with respect to the purchaser of the assets. *Id.*; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). The Debtors submit that the decision to proceed with the approval of the Bid Procedures related to a potential sale is based upon their sound business judgment and should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *In re Lionel*, 722 F.2d at 1071; *In re Montgomery Ward Holding Corp.*, 242 B.R. at 155.

27. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not

contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R 531, 537 (Bankr. W.D. Tenn. 1986) (noting that "the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

28.   The Debtors believe that the proposed Bid Procedures are reasonably designed to enable the Debtors to generate the highest value for the Flavorus Assets. The proposed Auction presents a controlled, fair and open process that the Debtors believe will encourage bidding only from seriously interested parties who possess the financial and operational capacity to purchase the Flavorus Assets. As such, the Bid Procedures promote the primary goal of maximizing the value received by the estates. Courts generally approve procedures that are intended to encourage competitive bidding and are consistent with the goal of maximizing the value received by the estates. *See In re John Joseph Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bidding procedures should facilitate an "open and fair" sale and be "designed to maximize value for the estate").

29.   The Debtors also submit that the implementation of the Bid Procedures, if approved, will satisfy the prongs of the "sound business purpose" test. For purposes of prong

one, the Debtors seek to sell the Flavorus Assets in order to garner value for the benefit of their estates.  The second prong of the "sound business purpose" test will be satisfied because the proposed Notice Procedures are designed to provide adequate notice to all potentially interested parties, including those who previously expressed an interest in purchasing the Flavorus Assets. With respect to the third prong, the Debtors intend to continue to market the Flavorus Assets, to solicit interested bidders and to conduct the Auction in a manner that will yield an adequate price for the Flavorus Assets.  Finally, the Bid Procedures incorporate a good faith requirement of all Qualified Bidders applicable at both the commencement and conclusion of the Auction.

30.      Moreover, the Bid Procedures are designed to maximize the value received for the Flavorus Assets.  The Debtors seek to determine the market for the Flavorus Assets. The process proposed by the Debtors allows for a fair auction process, providing bidders with sufficient time and information to submit a timely bid.  If the Debtors receive sufficient interest in a sale of the Flavorus Assets, the Bid Procedures are designed to ensure that the Flavorus Assets will be sold for the highest or otherwise best possible purchase price under the circumstances.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Flavorus Assets will be fair and reasonable, and the third prong of the "sound business purpose" test satisfied.

31.      The Bid Procedures provide that the Sale may include the transfer of "personally identifiable information," as defined in section 101(41A) of the Bankruptcy Code.  However, no "consumer privacy ombudsman" need be appointed under section 363(b)(1) of the Bankruptcy Code because the Successful Bidder, and any Backup Bidder, as applicable, will have agreed to adhere to any such privacy policies applicable to the Flavorus Assets, as such policies may be

modified in accordance with the terms thereof. *In re Velocity Express Corp.*, Case No. 09-13294 (MFW), 2009 WL 6690931, at *7 (Bankr. D. Del. 2009).

32.     The proposed Bid Procedures are reasonable, appropriate and within the Debtors' sound business judgment.  They provide the Debtors with the best method for obtaining the maximum realizable value for the Flavorus Assets.  Thus, the Bid Procedures should be approved.

**B.     The Cure Procedures in Connection with the Potential Assumption and/or Assignment of Assumed Contracts are Reasonable and Appropriate**

33.     The Debtors believe that the proposed Cure Procedures in connection with the potential assumption and/or assignment of an Assumed Contract are appropriate and reasonably calculated to provide all non-Debtor parties to the Assumed Contracts with timely and proper notice of the Debtors' intent to assume and/or assign the Assumed Contracts.  The Cure Procedures provide the non-Debtor counterparties with an opportunity to challenge the assumption and/or assignment of such Assumed Contracts either as to the proposed Cure Amount or as to the assumption and/or assignment, in general.  Therefore, the Debtors respectfully request the Court approve the proposed Cure Procedures.

**C.     The Notice Procedures are Reasonable and Appropriate**

34.     The Debtors believe that the proposed Notice Procedures are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Bid Procedures to be employed in connection therewith and the Sale Hearing

35.     The Debtors further believe that the Notice of Assumption and Assignment is reasonably calculated to provide all counterparties to the Assumed Contracts with proper notice of the potential assumption and/or assignment of the applicable Assumed Contract and any Cure Amount relating thereto.  Additionally, the Notice of Assumption and Assignment provides

notice to all counterparties to executory contracts and unexpired leases that the Debtors will seek to have any executory contract or unexpired lease that is not designated to become an Assumed Contract, by the Debtors and the Successful Bidder or Backup Bidder, as applicable, be rejected at the Sale Hearing.

36.    The Debtors submit that the proposed Notice Procedures comply with Bankruptcy Rule 2002 and Local Rule 2002-1.  Therefore, the Debtors believe that the Notice Procedures are reasonable, appropriate and should be approved.

### Consent to Jurisdiction

37.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Notice

38.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Lenders and counsel to the Ad Hoc Group; (c) counsel to the Committee; (e) those parties requesting notice pursuant to Bankruptcy Rule 2002; and (h) the non-Debtor parties to the Assumed Contracts.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

39.    No previous application for the relief sought herein has been made to this or any other court.

**Conclusion**

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as is just and proper.

Dated: March 17, 2016                    GREENBERG TRAURIG, LLP

                                         */s/ Dennis A. Meloro*
                                         Dennis A. Meloro (DE Bar No. 4435)
                                         1007 North Orange Street, Suite 1200
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 661-7000
                                         Facsimile   (302) 661-7360
                                         Email:   melorod@gtlaw.com

                                         -and-

                                         Nancy A. Mitchell (admitted *pro hac vice*)
                                         Maria J. DiConza (admitted *pro hac vice*)
                                         Nathan A. Haynes (admitted *pro hac vice*)
                                         200 Park Avenue
                                         New York, New York 10166
                                         Telephone:  (212) 801-9200
                                         Facsimile:  (212) 801-6400
                                         Email:   mitchelln@gtlaw.com
                                                  diconzam@gtlaw.com
                                                  haynesn@gtlaw.com

                                         *Counsel for the Debtors and*
                                         *Debtors-in-Possession*

26