# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 5, 2016 at 10:30 a.m.** |
| | **Objection Deadline: March 29, 2016 at 4:00 p.m.** |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER: (I) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF THE FAME HOUSE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) APPROVING FINAL ASSET PURCHASE AGREEMENT; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), including Debtor, including Debtor SFX Marketing LLC d/b/a Fame House (the "**Seller**"), hereby move the Court (the "**Motion**")[2], pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are: 430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898). The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2] The Debtors are still working with their DIP Lenders and the Ad Hoc Committee of certain Second Lien Noteholders in respect of the terms and conditions of the Sale, and certain revisions may be made to the proposed order as a result of those continuing discussions. The DIP Lenders and the Ad Hoc Committee of certain Second Lien Noteholders accordingly reserve their rights with respect to this Motion and the proposed order.

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form annexed hereto as **Exhibit A** (as may be modified in connection with negotiations with the Successful Bidder[3] and/or Backup Bidder as applicable, the "**Sale Order**"), (i) authorizing the sale of all or substantially all of the assets of the business of Debtor SFX Marketing LLC d/b/a Fame House (the "**Fame House Assets**") outside the ordinary course of business (the "**Sale**") to the applicable Successful Bidder or Backup Bidder free and clear of liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale; (ii) approving the Final Purchase Agreement as filed in advance of the hearing on this Motion (the "**Sale Hearing**")); (iii) authorizing the assumption and assignment of certain executory contracts and unexpired leases to the Successful Bidder and/or Back-Up Bidder, as applicable; and (iv) granting related relief.  In support of this Motion, the Debtors respectfully state as follows:

### Status of the Case

1.      On February 1, 2016 (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors have continued in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[3]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Fame House Bid Procedures (as defined below).

3. On February 12, 2016, an official committee of unsecured creditors (the "**Committee**") was formed in these Chapter 11 Cases. No request has been made for the appointment of a trustee or examiner.

### Jurisdiction, Venue and Statutory Predicates

4. The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief sought herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rule 6004-1.

### Background

**A.     The Chapter 11 Cases**

6. The Debtors along with their non-Debtor affiliates (collectively, "**SFX**") are a leading producer of live events and digital entertainment content focused exclusively on electronic music culture. The Debtors commenced material operations in 2012 with the intent of acquiring and operating companies within the electronic dance music ("**EDM**") industry, specifically those engaged in the promotion and production of live music events, festivals and digital offerings attractive to EDM fans in the United States and abroad. Over the next three years, the Debtors acquired a number of leading EDM brands, such as TomorrowWorld, Beatport, Mysteryland, Sensation and Electric Zoo, and expanded operations worldwide.

7. Today, the Debtors are actively engaged in the production and promotion of EDM festivals and events both domestically and abroad. In addition, the Debtors manage large, event-driven nightclubs that serve as venues for performances by key electronic music talent.

The Debtors also offer an online platform for EDM DJs, artists and fans to purchase, share and stream music components and to connect with each other.

8.     A detailed factual background of the Debtors' businesses and operations, as well as the events precipitating the commencement of these Chapter 11 Cases, is more fully set forth in the *Declaration of Michael Katzenstein in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**") [Docket No. 13], filed on the Petition Date and incorporated herein by reference.

**B.     The Fame House Bid Procedures**

9.     The Debtors no longer view the Fame House Assets as core to the SFX platform. As such, the Debtors determined that the Sale would be in the best interests of the Debtors, their estates, creditors and other parties in interest. After evaluating each of their options, the Debtors, in connection with obtaining debtor-in-possession financing, agreed to sell the Fame House Assets through a sale under section 363 of the Bankruptcy Code.

10.     As a result on February 29, 2016, the Debtors filed the *Motion of the Debtors for Entry of an Order (A) Approving Bid Procedures Relating to the Sale of All or Substantially All of the Assets of the Fame House Business, (B) Approving Notice Procedures, and (C) Granting Related Relief* (the "**Fame House Bid Procedures Motion**") [Docket No. 136].

11.     The Debtors have submitted to the Court a proposed Order (the "**Fame House Bid Procedures Order**"), which, subject to entry by the Court granting the relief requested in the Fame House Bid Procedures Motion, approves a set of bidding procedures for the Sale annexed to the Fame House Bid Procedures Order as Exhibit 1 (the "**Fame House Bid Procedures**"). The Debtors intend to conduct the Sale in accordance with the Fame House Bid Procedures once approved.

12.     Pursuant to the Fame House Bid Procedures the deadline for submission of bids for the Fame House Assets is 12:00 p.m. (Eastern Time) on March 28, 2016 (the "**Bid Deadline**").  In order to submit a Qualified Bid, Potential Bidders must submit, among other things, a clean and duly executed and binding Purchase Agreement marked against the proposed form asset purchase agreement annexed hereto as **Exhibit B**, along with all schedules and exhibits thereto.

13.     The Debtors will select Qualified Bidder(s) no later than 12:00 p.m. (Eastern Time) two (2) days preceding the Auction.  An Auction, if there is more than one Qualified Bid will be held at 11:00 a.m. (Eastern Time) on March 31, 2016 at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, or such other place as determined by the Debtors.

14.     Upon conclusion of the Auction (or if only one Qualified Bid is received and the Auction is cancelled) the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee will (i) identify and determine in their business judgment the highest and/or best Qualified Bid for the Fame House Assets (a "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, and (iii) require the Successful Bidder to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing.  In addition, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will determine which Qualified Bid, if any, is the next highest and/or best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale.  A Qualified Bidder that

submitted a Qualified Bid that is designated a Backup Bid is a "**Backup Bidder**".  Each Backup

Bid shall remain open and binding until the Backup Bid Expiration Date.

## Relief Requested

15.     By this Motion, the Debtors seek the entry of the Sale Order:  (i) authorizing the

Sale free and clear of liens, claims, encumbrances, and interests, to the Successful Bidder or

Backup Bidder, as applicable, pursuant to the Final Purchase Agreement, with such liens, claims,

encumbrances, and interests to attach to the proceeds of the Sale; (ii) approving the Final

Purchase Agreement; (iii) authorizing the assumption and assignment of certain executory

contracts and unexpired leases, pursuant to the Final Purchase Agreement; and (v) granting

related relief.  Through the proposed Auction and Sale process, the Debtors seek to maximize the

realizable value of the Fame House Assets for the benefit of the Debtors' estates.

***The Final Purchase Agreement***

16.     By this Motion, the Debtors request the Court approve the Final Purchase

Agreement.[4]  The following sub-paragraphs summarize key provisions of the form of asset

purchase agreement, attached hereto as **Exhibit B**, including those provisions subject to Local

Rule 6004-1, subject to any modifications which may be set forth in the Final Purchase

Agreement related to the Successful Bid or Backup Bid, as applicable:

> a.      Public Sale/Competitive Bidding.  The Debtors contemplate conducting an auction to solicit competing bids in order to obtain the highest or otherwise best offer for the Fame House Assets.
>
> b.      Good Faith Deposit.  The proposed Purchaser of the Fame House Assets is required to provide a deposit (the "**Deposit**") equal to 10% of the proposed purchase price in order to participate in the auction process.  The Deposit is subject to forfeiture upon termination of the Asset Purchase Agreement by the Seller as set forth in Section 11.2 of the Asset Purchase Agreement.

---

[4]  Capitalized terms used in this section not otherwise defined herein shall have the meanings ascribed to such terms in the Final Purchase Agreement.  To the extent there are any inconsistencies between the summaries provided herein and the provisions of the Final Purchase Agreement, the provisions of the Final Purchase Agreement shall control.

c. <u>Books and Records</u>. The Books and Records, as they relate to the Fame House Business, are a Fame House Asset. Seller's corporate books and records are an Excluded Asset. In accordance with Article 6 of the Asset Purchase Agreement, from the Execution Date through and including the Closing Date, if not earlier terminated, Seller shall provide Purchaser and its Representatives with access, upon reasonable notice, to the Seller's books and records, as such relate to the Fame House Business.

d. <u>Closing and Other Deadlines</u>. The Closing must occur on a Business Day mutually acceptable to the Parties, at 10:00 a.m., New York time, in the offices of the Debtors' counsel. Either Party may terminate the Asset Purchase Agreement if the Closing shall not have occurred by the date that is fifteen (15) days following the date that the Sale Order is entered by the Bankruptcy Court.

e. <u>No Stay</u>. Relief from the fourteen (14) day stay of Bankruptcy Rules 6004(h) and 6006(d) is requested herein.

***Assumption and Assignment of Executory Contracts and Unexpired Leases***

17. To facilitate and effectuate the Sale, the Debtors seek authority to assume and/or assign certain contracts and leases from Seller to the Successful Bidder or Backup Bidder, as applicable, as set forth in the schedules to the Final Purchase Agreement (the "**Assumed Contracts**"). Attached hereto as **Exhibit C** is a list of all contracts of the Seller (the "**Contracts**") which the Successful Bidder or the Backup Bidder my designate as Assumed Contracts under the Final Purchase Agreement and the corresponding pre- and post-petition amounts owed that have accrued and not been paid prior to the closing date (collectively, the "**Cure Amounts**").

18. Contemporaneously with the filing of this Motion, the Debtors will provide notice, substantially in the form annexed hereto as **Exhibit D** (the "**Cure Notice**"), to the non-Debtor parties to the Contracts listed on **Exhibit C** that the Seller may seek to assume an assign such Contract Successful Bidder or Backup Bidder, as applicable, and the corresponding Cure Amount(s), if any, payable if such Contract becomes an Assumed Contract. The Debtors will further provide notice to the non-Debtor parties to the Contracts that any objections to the

assumption and assignment of the Contract and/or the Cure Amounts must file a written objection by no later than 4:00 p.m. (prevailing Eastern Time) on March 29, 2016, the objection deadline for the Sale Hearing.

19.      Prior to the Sale Hearing, the Successful Bidder or Backup Bidder, as applicable, shall determine which contracts it seeks to be Assigned Contracts. The Cure Notice will further provide that those contracts that are not scheduled in the Final Purchase Agreement as Assumed Contracts shall not be assumed and assigned and shall instead be rejected (the "**Rejected Contracts**"). Contemporaneously with the filing of the Final Purchase Agreement, the non-Debtor parties to the Assumed Contracts and the Rejected Contracts will be so notified. By this Motion, the Debtors seek authority to assume and assign the Assumed Contracts and reject the Rejected Contracts.

**Basis for Relief Requested**

**A.      *The Sale is Within the Sound Business Judgment of the Debtors and Should Be Approved***

20.      Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(l). Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors. *See In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010), *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *2 (D. Del. 2002); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding*

*Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

21. The "sound business purpose" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a sound business reason justifies the sale of assets outside the ordinary course of business, (b) that accurate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith exists with respect to the purchaser of the assets. *Id.*; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984); *see also In re Indus. Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. *In re Lionel*, 722 F.2d at 1071; *In re Montgomery Ward Holding Corp.*, 242 B.R. at 155.

22. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See*

*Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R 531, 537 (Bankr. W.D. Tenn. 1986) (noting that "the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

23.     The Debtors submit that sound business justification exists to sell the Fame House Assets to the Successful Bidder or Backup Bidder, as applicable, in accordance with the Final Purchase Agreement.  The Debtors no longer view the Fame House Assets as core assets for the SFX platform.  The Debtors believe that absent the proposed Sale, the value of the Fame House Assets may decline.  Thus, the relief sought herein is not only reasonable, but necessary, to maximize the value of the Debtors' estates for the benefit of their stakeholders.

**B.      The Sale, Free and Clear of All Liens, Claims, Encumbrances, and Interests, is Authorized by Section 363(f) of the Bankruptcy Code**

24.     Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims, encumbrances or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.  11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in

the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

25.     The Debtors expect that one or more of the conditions set forth in section 363(f) of the Bankruptcy Code will be satisfied with respect to the Sale.  Specifically, the Debtors believe that at least section 363(f)(ii) will be satisfied because each of the parties holding liens on the Fame House Assets will consent, or absent any objection to the Sale, will be deemed to have consented to, the Sale.  Alternatively, section 363(f)(v) will be satisfied in that parties asserting a lien, claim or interest can be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest and any liens, claims or interests in, under or to the Fame House Assets transferred in the Sale will attach to the proceeds received by the Debtors in the Sale that are attributable to the property against or in which such liens, claims, or interests are asserted, to the same extent and subject to the same rights, claims and defenses the Debtors or their estates, as applicable, may hold in connection with such liens, claims or interests.  Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325 at \*3, 6 (Bankr. D. Del. March 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  Therefore, approving the sale of the Fame House Assets free and clear of all liens, claims, encumbrances and interests, with such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale, is warranted.

C.      *The Successful Bidder or Backup Bidder, as applicable, is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code*

26.     Section 363(m) of the Bankruptcy Code protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.  The Debtors request that

the Court find that, in connection with the Sale, the Successful Bidder or Backup Bidder, as applicable, is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code.

27.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

28.     The Debtors submit, and will present evidence at the Sale Hearing, if necessary, that the Final Purchase Agreement was an arm's-length transaction, in which the Successful Bidder or Backup Bidder, as applicable, acted in good faith. The proposed auction is to be an open sale process, and the Debtors will have independent legal counsel to negotiate on their behalf throughout the auction and the Sale. Accordingly, the Debtors request that the Court make the finding at the Sale Hearing that the Successful Bidder or Backup Bidder, as applicable, has purchased the Fame House Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

**D.     Assumption and Assignment of Assumed Contracts and Rejection of the Rejected Contracts is Reasonable and Appropriate**

**i.   The Business Judgment Standard**

29.     Section 365(a) of the Bankruptcy Code provides in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). In the Third Circuit, bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease hinges on whether the debtor's reasonable business judgment supports assumption or rejection. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989). Courts

generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract. *See In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *Official Comm. For Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *8 (D. Del. May 20, 2002). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

30.    A court should approve a debtor's business decision unless that decision is the product of bad faith or a gross abuse of discretion. *See In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003). The Debtor's assumption and assignment of the Assumed Contracts to the Successful Bidder or Backup Bidder, as applicable, will likely be necessary for the Successful Bidder or Backup Bidder, as applicable, to conduct business after the completion of the Sale. As such, the Debtor's proposed assumption and assignment of the Assumed Contracts to the Successful Bidder or Backup Bidder, as applicable, is essential to securing the highest or otherwise best offer for the Fame House Assets, and therefore, satisfies the requirements of section 365 of the Bankruptcy Code. Further, after the Closing, the Debtors will no longer have use for the Rejected Contracts.

ii.    **Cure of Defaults and Adequate Assurance of Future Performance under the Assumed Contracts**

31.    Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the Bankruptcy Court, provided that any defaults under such contracts and leases are cured and adequate assurance of future performance is provided. 11 U.S.C. § 365(f)(2). With respect to the Assumed Contracts, the Debtors provide corresponding Cure Amounts, proposed to satisfy any amounts owed, if any,

on such Assumed Contracts. In accordance with the Final Purchase Agreement, the Successful Bidder or Backup Bidder, as applicable, will pay all Cure Amounts in connection with the Assumed Contracts transferred at closing.

32. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (explaining that adequate assurance of future performance is present when the prospective assignee of a lease from the debtor has financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of success). The Debtors or Successful Bidder and/or Backup Bidder, as applicable will provide information at or before the hearing to provide the counterparties to Assumed Contract adequate assurances of future performance under the Assumed Contracts.

33. Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *see also In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist the trustee in realizing the full value of the debtor's assets). Therefore, the Debtors respectfully request the Court authorize the Debtors to assume and assign the Assumed Contracts to the Successful Bidder or Backup Bidder, as applicable.

***D.*** ***The Appointment of a Consumer Privacy Ombudsman***

34.     The Sale may include the transfer of "personally identifiable information" ("**PII**") as defined in section 101(41A) of the Bankruptcy Code.  Under section 363(b)(1) of the Bankruptcy Code, PII may be sold in contravention of a related privacy policy that restricts such transfer of the PII if a consumer privacy ombudsman is appointed to assist the Court in evaluating the risks to consumers associated with the proposed transfer of PII.

35.     By separate motion,[5] the Debtors have requested the Court direct the United States Trustee to appoint a consumer privacy ombudsman to review any transfer of PII that may be made in connection with the Sale.

***F.*** ***Relief from the Fourteen Day Waiting Periods Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate***

36.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  Similarly, Bankruptcy Rule 6006(d) provides that "[a]n order authorizing the [debtor] to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6006(d).

37.     Cause exists to justify a waiver of the fourteen (14) day stays under Bankruptcy Rules 6004(h) and 6006(d), as a prompt closing of the Sale is of critical importance.  The Debtors respectfully request that the Court waive the fourteen-day stay periods under Bankruptcy Rules 6004(h) and 6006(d) so that the Sale Order may be effective immediately upon entry.

---

[5]  On March 10, 2016, the Debtors filed the *Motion of the Debtors for Entry of an Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman* [Docket No. 206].

**Consent to Jurisdiction**

38.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

39.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the DIP Lenders and counsel to the Ad Hoc Group; (c) counsel to the Committee; (d) those parties requesting notice pursuant to Rule 2002; and (e) all non-Debtor counterparties to the Assumed Contracts. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

40.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: March 17, 2016

GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
Email:  melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Maria J. DiConza (admitted *pro hac vice*)
Nathan A. Haynes (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile:  (212) 801-6400
Email: mitchelln@gtlaw.com
         diconzam@gtlaw.com
         haynesn@gtlaw.com

*Counsel for the Debtors and*
*Debtors-in-Possession*