<u>**Exhibit A**</u>

**Proposed Sale Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket No. _____** |

## ORDER (I) AUTHORIZING THE SALE OF ALL OR SUBSTANTIALLY ALL OF THE ASSETS OF THE FAME HOUSE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (II) APPROVING FINAL ASSET PURCHASE AGREEMENT; (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OR REJECTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**"), including Debtor SFX Marketing LLC d/b/a Fame House (the "**Seller**"), for entry of an order, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Final Purchase Agreement, as applicable.

United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the sale of all or substantially all of the assets of the business of Debtor SFX Marketing LLC d/b/a Fame House (the "**Fame House Assets**") outside the ordinary course of business (the "**Sale**") to the applicable Successful Bidder or Backup Bidder free and clear of liens, claims, encumbrances, and interests, with such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale; (ii) approving the Final Purchase Agreement attached hereto as **Exhibit A** between Debtor SFX Marketing LLC d/b/a Fame House and _____ (the "**Purchaser**") (iii) authorizing the assumption and assignment of the Assumed Contracts listed on **Exhibit B** hereto to the Purchaser and the rejection of the Rejected Contracts listed on **Exhibit C** hereto; and (iv) granting related relief; and the Court having entered an order approving the bid procedures (the "**Fame House Bid Procedures**") and granting related relief on _____, 2016 [Docket No.    ] (the "**Fame House Bid Procedures Order**"); [ an Auction having been conducted pursuant to the terms of the Fame House Bid Procedures Order on _____]; and the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders and the Committee, as contemplated by the Fame House Bid Procedures Order, having identified the Successful Bidder and the Backup Bidder at the conclusion of the Auction; and the Court having conducted a hearing on the Motion on [ April 5, 2016] (the "**Sale Hearing**"), at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and adequate and sufficient notice of the Motion, the Sale Hearing, and the Sale and all transactions contemplated thereunder and in this Sale Order having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and jurisdiction existing for the Court to consider the Motion; and upon the statements in support of the Motion presented at the hearing before the Court; and after due deliberation thereon it appearing that the relief requested in the Motion is in the best

interests of the Debtors, their estates, creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found that the Purchaser, has submitted the highest or otherwise best bid for the Fame House Assets; and good and sufficient cause appearing therefor;

THE COURT MAKES THE FOLLOWING FINDINGS[3]:

A.     <u>Jurisdiction and Venue</u>.     This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     <u>Statutory Predicates</u>.  The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

C.     <u>Final Order.</u>   This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

D.  Notice.  Actual written notice of the Motion and the relief requested therein (including the assumption and assignment of the Assumed Contracts to the Purchaser and any Cure Amounts related thereto or rejection of the Rejected Contracts) was provided to the following parties (the "**Notice Parties**"):  (i) the Office of the United States Trustee; (ii) counsel to the DIP Lenders and Consenting Noteholders; (iii) counsel to the Committee; (iv) all taxing authorities in the states where the Seller is located, including the Internal Revenue Service, and all other federal, state and local taxing and regulatory authorities known to the Debtors to assert jurisdiction over the Seller or which are reasonably expected by the Seller to have claims, contingent or otherwise, in connection with the ownership of the Fame House Assets, or to have any known interest in the relief requested by the Motion; (v) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002; (vi) all persons known or reasonably believed by the Sellers to have asserted any lien, claim, encumbrance, right of first refusal, or other interest in or upon any of the Fame House Assets; (vii) all persons known or reasonably believed to have expressed an interest in acquiring the Fame House Assets within the last four (4) months; (viii) the United States Attorney's office; (ix) Attorneys General in the states where the Seller is located; (x) any applicable state and local environmental agencies; (xi) all parties to any litigation involving the Seller; and (x) all counterparties to any executory contract or unexpired lease of the Seller.  Notice was also published in

_____.

E.  Notice of the Motion and the time for filing objections to the Motion was reasonably calculated to provide all interested parties with timely and proper notice of the Sale.

F.  As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Final Purchase Agreement, Sale Hearing, Sale and transactions contemplated thereby, has been provided in accordance with the Fame House Bid Procedures Order, Bankruptcy Code sections 105(a), 363 and 365 and

Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The Debtors have complied with all obligations to provide notice of the Auction and Sale Hearing as required by the Fame House Bid Procedures Order. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Final Purchase Agreement, Sale, assumption of the Assumed Contracts or rejection of the Rejected Contracts is or shall be required. The disclosures made by the Debtors concerning the Motion, the Final Purchase Agreement, Sale, assumption and assignment and rejection were good, complete, and adequate.

G. The Debtors have provided notice of the potential assumption and assignment of the Assumed Contracts to the applicable non-Debtor counterparties. Such notice also identified all defaults and actual pecuniary loss to the non-Debtor party resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the non-Debtor parties can assert under the Assumed Contracts whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assumed Contracts (the foregoing amounts, collectively referred to as the "**Cure Amounts**") upon each non-Debtor counterparty to an Assumed Contract. The service and provision of the notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or the proposed Cure Amount for the respective Assumed Contract. Non-Debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting

performance by, or rendering performance to, the Purchaser, for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline to file an objection has expired and to the extent any such party timely filed an objection, all such objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file an objection, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the corresponding proposed Cure Amount, if any.

H.     The Debtors have provided notice of the potential rejection of the Rejected Contracts to the applicable non-Debtor counterparties. Such notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of the rejection of the Rejected assumption Contracts. Non-Debtor counterparties to the Rejected Contracts have had an adequate opportunity to object to rejection of the applicable Rejected Contract. The deadline to file an objection has expired and to the extent any such party timely filed an objection, all such objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. To the extent that any such party did not timely file an objection, such party shall be deemed to have consented to the rejection of the Rejected Contract.

I.     <u>Limited Liability Company Authority</u>. (i) The Seller has the limited liability company power and authority to execute the Final Purchase Agreement and all other documents contemplated thereby and the Sale of the Fame House Assets has been duly and validly authorized, (ii) the Seller has all of the limited liability company power and authority necessary to consummate the transactions contemplated by the Final Purchase Agreement, (iii) the Seller has taken all limited liability company action necessary to authorize and approve the Final Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the Final Purchase

Agreement, are required for the Seller to consummate such transactions.

J.      The Final Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.   Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Final Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

K.      The Seller is the sole and lawful owners of the Fame House Assets.  Subject to Bankruptcy Code sections 363(f) and 365(a), the transfer of each of the Fame House Assets to the Purchaser in accordance with the Final Purchase Agreement will be, as of the Closing Date (as defined in the Final Purchase Agreement), a legal, valid, and effective transfer of the Fame House Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Fame House Assets free and clear of all liens, claims, encumbrances, and interests, except for the Assumed Liabilities, with such liens, claims, encumbrances, and interests to attach to the proceeds of the Sale.

L.      <u>Sale in Best Interests of the Debtors' Estates.</u>  Good and sufficient reasons for approval of the Sale, the Final Purchase Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Bankruptcy Code section 363(b), outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Successful Bidder or Backup Bidder, as applicable, is necessary and appropriate to maximize the value of the

Debtors' estates and the Sale will provide the means for the Debtors to maximize creditor recoveries.

M.     Time is of the essence in consummating the Sale. Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

N.     The consummation of the Sale and the assumption and assignment of the Assumed Contracts are legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m) and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

O.     <u>Good Faith of Buyer and Seller</u>. The Final Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions and is substantively and procedurally fair to all parties. The Purchaser is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31). Neither any of the Debtors, nor the Purchaser has engaged in any conduct that would cause or permit the Final Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders. The Purchaser is purchasing the Fame House Assets, in accordance with the Final Purchase Agreement, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' Chapter 11 Cases. As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel

made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Fame House Bid Procedures Order and, among other things: (a) the Debtors and the Purchaser complied with the provisions in the Fame House Bid Procedures Order; (b) the Purchaser in no way induced or caused the chapter 11 filing by the Debtors; and (c) all payments to be made by the Purchaser in connection with the Sale have been disclosed.

P.     Highest or Otherwise Best Offer.     [The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Fame House Bid Procedures Order. The Auction established in the Fame House Bid Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Fame House Assets. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Fame House Assets.] The Final Purchase Agreement constitutes the highest or otherwise best offer for the Fame House Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Final Purchase Agreement constitutes the highest or otherwise best offer for the Fame House Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

Q.     Consideration. The consideration provided by the Purchaser pursuant to the Final Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Fame House Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession or the District of Columbia. No other

person or entity or group of entities has offered to purchase the Fame House Assets for greater economic value to the Debtors' estates than the Purchaser. Approval of the Motion, the Final Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

R. <u>No Successor</u>. The transactions contemplated under the Final Purchase Agreement do not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between the Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and the Purchaser; the Purchaser is not a mere continuation of the Debtors or their estates; and the Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including but not limited to under any federal, state or local statute or common law. Except for the Assumed Liabilities, the (i) transfer of the Fame House Assets to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assumed Contracts, do not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

S. <u>Free and Clear</u>. The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Fame House Assets free and clear of any liens, claims, encumbrances, and interests in the property, other than the Assumed Liabilities, with such liens, claims, encumbrances, and interests attaching to the proceed of the Sale.

T. The Purchaser would not have entered into the Final Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Purchaser

and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all liens, claims, encumbrances, and interests other than the Assumed Liabilities. The Debtors may sell the Fame House Assets free and clear of any liens, claims, encumbrances, and interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each entity with a lien, claim, encumbrance, interest or other interest in the Fame House Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of a lien, claim, encumbrance, or interest who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to Bankruptcy Code section 363(f)(2). All holders of liens, claims, encumbrances, or interests are adequately protected by having their liens, claims, encumbrances, or interests attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such liens, claims, encumbrances, or interests are asserted, subject to the terms of such liens, claims, encumbrances, or interests with the same validity, force and effect, and in the same order of priority, which such liens, claims, encumbrances, or interests now have against the Fame House Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

U.    Cure/Adequate Assurance. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Final Purchase Agreement, is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the Debtors' reasonable exercise of sound and prudent business judgment. Payment of the Cure Amounts shall (i) to the extent necessary, cure or

provide adequate assurance of cure, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The Purchaser' financial wherewithal to consummate the transactions contemplated by the Final Purchase Agreement and the evidence presented at the Sale Hearing demonstrating the Purchaser's ability to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

V. Any objections to the assumption and assignment of any of the Assumed Contracts by the Purchaser, in accordance with the Final Purchase Agreement are hereby overruled. To the extent that any counterparty failed to timely object to the proposed Cure Amounts, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Final Purchase Agreement.

W. Any objections to the rejection of any of the Rejected Contracts are hereby overruled. To the extent that any counterparty failed to timely object, such counterparty is deemed to have consented to the rejection of the Rejected Contracts.

X. <u>Personally Identifiable Information</u>. The Transaction may include the transfer of Personally Identifiable Information, as defined in Bankruptcy Code section 101(41A). By separate Motion, the Debtors have requested a Consumer Privacy Ombudsman be appointed under sections 332 and 363(b)(1) of the Bankruptcy Code.

NOW, THEREFORE, IT IS ORDERED THAT:

1. The Motion is GRANTED and the relief requested therein APPROVED, as

set forth herein.

2.      Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, hereby are denied and overruled on the merits with prejudice.

3.      The Final Purchase Agreement, and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in all respects.   Pursuant to Bankruptcy Code sections 363(b) and 363(f), the Debtors are hereby authorized to (a) execute the Final Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Final Purchase Agreement, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Final Purchase Agreement and the instruments to the Final Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Final Purchase Agreement, including the assumption and assignment to the Purchaser (in accordance with the Final Purchase Agreement) of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Final Purchase Agreement and the Sale.

4.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of liens, claims, encumbrances, or other interests in, against or on all or any portion of the Fame House Assets (whether known or unknown), the Purchaser, and all successors and assigns of

the Purchaser and any trustees, if any, subsequently appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. This Sale Order and the Final Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

5.     Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the Debtors are authorized to transfer the Fame House Assets to the Purchaser in accordance with the Final Purchase Agreement and such transfer shall constitute a legal, valid, binding and effective transfer of the Fame House Assets and shall vest the Purchaser with title in and to the Fame House Assets and, other than the Assumed Liabilities, Purchaser shall take title to and possession of the Fame House Assets free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, with all such liens, claims, encumbrances, and interests to attach to the cash proceeds received by the Debtors that are ultimately attributable to the property against or in which such liens, claims, encumbrances or interests are asserted, subject to the terms of such liens, claims, encumbrances or interests with the same validity, force and effect, and in the same order of priority, which such liens, claims, encumbrances or interests now have against the Fame House Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

6.     On the Closing Date, all persons and entities that are in possession of some or all of the Fame House Assets are directed to surrender possession of such Fame House Assets to the Purchaser in accordance with the Final Purchase Agreement.  Additionally, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its liens, claims,

encumbrances, or other interests in the Fame House Assets, if any, as such liens, claims, encumbrances, and interests may have been recorded or may otherwise exist.

7.     If any person or entity which has filed statements or other documents or agreements evidencing liens or encumbrances on, claims against, or interests in, all or any portion of the Fame House Assets (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all liens, encumbrances, claims, or other interests which the person or entity has or may assert with respect to all or any portion of the Fame House Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Fame House Assets.

8.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to the Purchaser of the Debtors' interests in the Fame House Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all liens, claims, encumbrances, or other interests of any kind or nature whatsoever existing as to the Fame House Assets prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.  A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record except those assumed as Assumed Liabilities.

9.     Except for the Assumed Liabilities, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Fame House Assets

including, but not limited to, any liability for any liens, claims, encumbrances or interests whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with or in any way relating to the operation of the Debtors' business prior to the Closing Date.

10.     Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Final Purchase Agreement, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding liens, claims, encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Fame House Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Fame House Assets, the operation of the Fame House business prior to the Closing Date or the transfer of the Fame House Assets to the Purchaser in accordance with the Final Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser its successors or assigns, its property or the Fame House Assets, such persons' or entities' liens, claims, encumbrances or interests in and to the Fame House Assets, including, without limitation, the following actions:     (a) commencing or continuing in any manner any action or other proceeding against the Purchaser its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser its successors, or their assets or properties; (c) creating, perfecting, or enforcing any lien, claim, encumbrance or interest against the Purchaser its successors, their  assets, or their properties; (d) asserting any

setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Fame House Assets or conduct any of business operated with the Fame House Assets.

11.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Fame House Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.

12.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Fame House Assets to the Purchaser in accordance with the terms of the Final Purchase Agreement, and this Sale Order.

13.     The Purchaser has given substantial consideration under the Final Purchase Agreement for the benefit of the Debtors, their estates, and creditors. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential liens, claims, encumbrances or interests pursuant to this Sale Order which releases shall be deemed to have been given in favor of the Purchaser by all holders of liens or encumbrances against or interests in, or claims against any of the Debtors or any of the Fame House Assets, other than with respect to the Assumed Liabilities. The consideration provided by the Purchaser for the Fame House Assets under the Final Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

14.     Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Purchaser arising under the Final Purchase Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their police and regulatory powers.

15.     The Debtors are hereby authorized, in accordance with Bankruptcy Code sections 105(a) and 365, to (a) assume and assign to the Purchaser in accordance with the Final Purchase Agreement, effective upon the Closing Date, the Assumed Contracts free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) and to reject the Rejected Contracts and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts, and the Assumed Liabilities to the Successful Bidder or Backup Bidder, as applicable, in accordance with the Final Purchase Agreement.

16.     With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract or unexpired lease under Bankruptcy Code section 365; (b) the Debtors may assume each of the Assumed Contracts in accordance with Bankruptcy Code section 365; (c) the Debtors may assign each Assumed Contract in accordance with Bankruptcy Code sections 363 and 365, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Purchaser of each Assumed Contract, in accordance

with the Final Purchase Agreement have been satisfied; (e) the Assumed Contracts shall be transferred and assigned to, and following the Closing Date remain in full force and effect for the benefit of, the Purchaser in accordance with the Final Purchase Agreement, notwithstanding any provision in any such Assumed Contract (including those of the type described in Bankruptcy Code sections 365(b)(2) and (f)) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser in accordance with the Final Purchase Agreement; and (f) upon the Closing Date, in accordance with Bankruptcy Code sections 363 and 365, Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

17.     All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts.  To the extent that any counterparty to an Assumed Contract did not object to its Cure Amount by the objection deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Final Purchase Agreement.

18.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, or pursuant to a contract or lease amendment entered into by the Debtors, Purchaser and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the respective Cure Amounts reflect the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults under the Assumed Contracts, if any, and no other amounts are or shall be due in

connection with the assumption by the Debtors and the assignment to the Purchaser of the Assumed Contracts in accordance with the Final Purchase Agreement.

19.     Upon the Debtors' assignment of the Assumed Contracts to the Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts pursuant to Paragraph 18 hereof, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract.  Each non-debtor party to an Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, including those constituting Excluded Liabilities, against the Purchaser any counterclaim, defense, setoff, recoupment or any other Claim asserted or able to be asserted against the Debtors; and (ii) imposing or charging against the Purchaser any rent accelerations, assignment fees,  increases or any other fees as a result of the Debtors' assumption and assignment to the Purchaser of any Assumed Contract in accordance with the Final Purchase Agreement.  The validity of such assumption and assignment of each Assumed Contract shall not be affected by any dispute between the Debtors and any non-Debtor party to an Assumed Contract relating to such contract's respective Cure Amounts.

20.     Except as provided in the Final Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such liens, claims, encumbrances, and interests are forever barred and estopped from asserting such claims against the Debtors,

their successors or assigns, their property or their assets or estates.

21.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

22.     The transactions contemplated by the Final Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in Bankruptcy Code section 363(m) and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts) with the Purchaser unless such authorization is duly stayed pending such appeal.  The Purchaser is a good faith purchaser of the Fame House Assets, and is entitled to all of the benefits and protections afforded by Bankruptcy Code section 363(m).

23.     The failure to include any particular provisions of the Final Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Final Purchase Agreement be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the Final Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.  Likewise, all of the provisions of this Sale Order are nonseverable and mutually dependent.  To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

24.     The Final Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further

order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

25. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Final Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser in accordance with the Final Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement and enforce the provisions of this Sale Order and the Final Purchase Agreement; (b) protect the Purchaser against any liens, claims, encumbrances or other interests in the Debtors or the Fame House Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (c) enter any orders under section 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

26. Any amounts payable by any Debtor under the agreements or any of the documents delivered by any Debtor in connection with the Final Purchase Agreement shall be paid in the manner provided in the Final Purchase Agreement and the Fame House Bid Procedures Order, without further order of this Court, shall be allowed administrative claims in an amount equal to such payments in accordance with Bankruptcy Code sections 503(b) and 507(a)(2), shall have the other protections provided in the Fame House Bid Procedures Order, and shall not be discharged, modified, or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with the Purchaser its successors, or assigns.

27. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these Chapter 11 Cases (including

any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Final Purchase Agreement or this Sale Order.

28.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.   Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.   Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

29.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.     From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Final Purchase Agreement including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Fame House Assets.

Dated: _____, 2016

_____
HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE