# Exhibit A

## Bid Procedures

# BID PROCEDURES FOR FLAVORUS, INC. SALE

These bid procedures (the "**Bid Procedures**") set forth the process by which Flavorus, Inc. ("**Flavorus**" and collectively, with its affiliated debtors and debtors-in-possession, the "**Debtors**"), debtor and debtor-in-possession in the jointly administered chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), Case No. 16-10238 (MFW), shall market to interested parties and conduct a sale (the "**Sale**") by auction (the "**Auction**") of all or substantially all of its assets (the "**Flavorus Assets**").  The Sale will be subject to bidding as set forth herein and subject to the approval of the Bankruptcy Court, pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**").

On March 17, 2016, the Debtors filed the *Motion of the Debtors for Entry of an Order (A) Approving Bid Procedures Relating to the Sale of All or Substantially All of the Assets of Flavorus, Inc., (B) Establishing Procedures in Connection with the Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Notice Procedures, and (D) Granting Related Relief* (the "**Motion**") [Docket No. 244], to be heard by the Bankruptcy Court (i) on April 5, 2016 with respect to the Bid Procedures, and (ii) on May 26, 2016 (or at such other time as the Bankruptcy Court may determine) with regard to all other matters related to the Motion (the "**Sale Hearing**").

On April 5, 2016, the Bankruptcy Court entered an *Order (A) Approving Bid Procedures Relating to the Sale of All or Substantially All of the Assets of Flavorus, Inc., (B) Establishing Procedures in Connection with the Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases, (C) Approving Notice Procedures, and (D) Granting Related Relief* [Docket No. 352] (the "**Bid Procedures Order**"), thereby approving these Bid Procedures.  The Debtors, in consultation with the DIP Lenders,[1] the Consenting Noteholders,[2] and the official committee of unsecured creditors formed on February 12, 2016 (the "**Committee**"), reserve the right to modify the Bid Procedures provided that any such modification shall not be inconsistent with the Bid Procedures Order.

The form of asset purchase agreement (the "**Purchase Agreement**") will serve as the basis for bids in connection with this process.  Capitalized terms used in these Bid Procedures and not otherwise defined shall have the meanings ascribed to such terms in the Purchase Agreement.

---

[1] "**DIP Lenders**" shall have the meaning provided for such term in that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of February 10, 2016, by and among SFX Entertainment, Inc., the guarantors named therein, the Lenders party thereto, and Wilmington Savings Fund Society, FSB (as may be amended, restated, amended and restated, extended, supplemented or otherwise modified in writing from time to time in accordance with its terms) (the "**DIP Loan Agreement**").

[2] "**Consenting Noteholders**" shall have the meaning provided for such term in that certain Restructuring Support Agreement, dated as of January 31, 2016, by and among the Debtors, the beneficial owners (or investment managers or advisors for the beneficial owners) of the Second Lien Notes identified on Schedule 1 thereto, the other beneficial owners (or investment managers or advisors for the beneficial owners) of the Second Lien Notes identified on the signature pages thereto or that become a party thereafter, and Robert F.X. Sillerman (as may be amended, restated, amended and restated, extended, supplemented or otherwise modified in writing from time to time in accordance with its terms) (the "**Restructuring Support Agreement**").

Any party desiring to obtain a copy of the Purchase Agreement, a form of Non-Disclosure Agreement (as defined below) or other information regarding the sale process may do so by contacting the Debtors' investment banker, Moelis & Company LLC ("**Moelis**") at:

>Moelis & Company LLC
>399 Park Avenue, 5th Floor
>New York, NY 10020
>Attn: Adam Keil/Ryan Kitchen
>Fax: (212) 880-4260
>E-mail: adam.keil@moelis.com/ryan.kitchen@moelis.com

The Debtors provide these Bid Procedures for use by Potential Bidders (defined below) and Qualified Bidders (defined below) in submitting bids proposing a transaction to purchase or otherwise acquire the Flavorus Assets, and, as necessary, qualifying for and participating in the Auction.

1. Important Dates

- Bid Deadline: 12:00 p.m. (Eastern Time) on May 19, 2016 (the "**Bid Deadline**");

- Selection of Qualified Bidder(s): no later than 12:00 p.m. (Eastern Time) two (2) days preceding the Auction;

- Auction: 11:00 a.m. (Eastern Time) on May 23, 2016 at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, or such other place as determined by the Debtors;

- Selection of Successful Bidder(s) and Backup Bidder(s) (each as defined below) at the conclusion of the Auction;

- Sale Hearing to seek authorization to sell the Flavorus Assets to such Successful Bidder(s): May 26, 2016 at 10:30 a.m. (Eastern Time); and

- Closing Date: no later than 15 days after the entry of the Sale Order (as defined below).

2. Assets to be Sold

The Debtors seek to sell the Flavorus Assets.

3. Qualified Bidders, Non-Disclosure Agreements and Access to Data Room

Any person or entity wishing to bid on the Flavorus Assets (each a "**Potential Bidder**") must execute and deliver (unless previously delivered) to the Debtors a confidentiality and non-disclosure agreement (a "**Non-Disclosure Agreement**") in form and substance acceptable to the Debtors.

The Debtors will afford any Potential Bidder who executes and delivers such Non-Disclosure Agreement such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors, in their business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine to be reasonable and appropriate, including, without limitation, access to the Debtors' confidential electronic data room concerning the Flavorus Assets, reasonable access, during normal business hours, to the Debtors' management, and access to all relevant information regarding the Flavorus Assets reasonably necessary to enable a Potential Bidder to evaluate the proposed Sale. Moelis will coordinate all due diligence access and requests for additional information from such Potential Bidders. The Debtors shall not be obligated to furnish any due diligence information after the conclusion of the Auction. Neither the Debtors nor their counsel or advisors are responsible for, or will bear liability with respect to, any information obtained by Potential Bidders in connection with due diligence. Notwithstanding anything contained herein to the contrary, to the extent the Debtors believe that providing access to Potential Bidders to certain sensitive commercial information is not advisable, the Debtors, in their business judgment and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will decide what, if any, diligence information to make available to a particular Potential Bidder, and neither the Debtors nor their representatives will be obligated to furnish any information of any kind whatsoever to any party.

The Debtors shall provide the Required Lenders, the Requisite Noteholders, and the Committee, in each case, including their professionals, with periodic updates every two (2) business days as to which Potential Bidders have entered into Non-Disclosure Agreements.

A "Qualified Bidder" is a Potential Bidder that (a) delivers to counsel to the Debtors a Non-Disclosure Agreement, (b) demonstrates to the Debtors a reasonable certainty of the ability to complete the Sale in a timely manner (including the financial capability of the Potential Bidder to consummate the Sale for the Flavorus Assets and the ability to receive the necessary governmental, licensing, regulatory, or other approvals necessary for such Sale, if any), and (c) submits a Written Offer (as defined below) that is deemed a Qualified Bid as set forth below, *provided*, *however*, that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive one or more requirements for a Qualified Bidder.[3] The consultation/consent rights of any party that participates in any bid or credit bid for the Flavorus Assets shall be terminated unless and until such bid or credit bid, as applicable, is rejected; *provided* that any such party will have the same rights as any other Qualified Bidder and will retain any rights it has under existing orders regarding debtor-in-possession financing and/or use of cash collateral (to the extent applicable). As promptly as practicable after a Potential Bidder delivers a Non-Disclosure Agreement and submits a Written Offer, and in all events not later than 12:00 p.m. (Eastern Time) two (2) days preceding the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall

---

[3] Notwithstanding anything to the contrary herein, Wilmington Savings Fund Society, FSB (the "**DIP Agent**"), on behalf of the DIP Lenders, and U.S. Bank National Association (the "**Second Lien Agent**"), on behalf of holders of 9.625% Senior Secured Notes Due 2019 issued by the Debtors (the "**Second Lien Noteholders**"), are hereby determined to be Qualified Bidders for all purposes at the Auction, and shall be permitted, but not obligated, to credit bid to the full extent permitted under section 363(k) of the Bankruptcy Code.

determine, and the Debtors shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate the proposed Sale.

4. Requirements for a Qualified Bid

In order to become a Qualified Bidder and participate in the Auction, if any, a Potential Bidder must deliver to the Debtors, with a copy to counsel to the Debtors, Moelis, counsel to the DIP Lenders, counsel to the Consenting Noteholders, and counsel to the Committee, a written offer (each, a "**Written Offer**"), which is deemed to be a "Qualified Bid". To be deemed a "Qualified Bid", a Written Offer must meet each of the requirements listed below:

    (i) Be delivered prior to the Bid Deadline;

    (ii) Be accompanied by a clean and duly executed and binding Purchase Agreement (together with the exhibits and schedules thereto, a "**Modified Purchase Agreement**");

    (iii) Be accompanied by a marked Modified Purchase Agreement reflecting any variations from the Purchase Agreement;

    (iv) Be accompanied by a list of any executory contracts or unexpired leases that are to be assumed and/or assigned under such Written Offer, to the extent such list is not included in the Modified Purchase Agreement. The Written Offer must also include documentation sufficient to provide adequate assurance of future performance for the benefit of the non-Debtor parties to the Assumed Contracts on the list;

    (v) State that the Potential Bidder will comply with Flavorus's customer data privacy policy, restricting the transfer of personally identifiable information of its customers, as more fully set forth in the Purchase Agreement;

    (vi) Contain evidence of financing, access to funds or such other financial and other information that will reasonably allow the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, to make a determination as to such Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified Purchase Agreement, which evidence is satisfactory to the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors;

(vii) To the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, (i) fully disclose the identity of each entity or person that will be bidding for the Flavorus Assets or otherwise participating in connection with such bid, (ii) the terms of any such participation, and if an entity has been formed for the purpose of acquiring some, or all, of the Flavorus Assets, the parties that will bear liability for any breach by such entity, and (iii) the ability of such parties to obtain government, licensing or regulatory approval in connection with the consummation of any Sale;

(viii) State that the Written Offer is irrevocable until (i) the closing of the Sale, if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Successful Bidder (as defined below), or (ii) if such Potential Bidder is deemed a Qualified Bidder, and such Qualified Bidder is designated as a Backup Bidder (as defined below), until the earlier of (x) two (2) business days after the closing of the transaction(s) by which all of the Flavorus Assets that were subject to such Backup Bid (as defined below) have been transferred to one or more Qualified Bidders pursuant to these Bid Procedures and (y) thirty (30) days after the date of the Auction (the "**Backup Bid Expiration Date**");

(ix) Not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment;

(x) Not contain any due diligence or financing contingencies;

(xi) Provide evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body), if any, with respect to the submission, execution, delivery and closing of the Modified Purchase Agreement to the Debtors' satisfaction, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee;

(xii) Provide that any cash portion of the purchase price shall be payable in U.S. dollars and will be paid in cash, cash equivalents, or such other consideration acceptable to the Debtors, subject to the consent of the Required Lenders[4] and the Requisite Noteholders,[5] and in consultation with the Committee;

(xiii) Provide a good faith deposit (the "**Good Faith Deposit**") submitted via federal wire transfer in immediately available funds in accordance with the wire instructions annexed hereto as **Exhibit A**, or such other form as is acceptable to the Debtors in an amount equal to 10% of the purchase price set forth in the Written Offer;

---

[4] "**Required Lenders**" shall have the meaning provided for such term in the DIP Loan Agreement.

[5] "**Requisite Noteholders**" shall have the meaning set forth in the Restructuring Support Agreement.

5

(xiv) Set forth the anticipated timeframe for (i) obtaining any required government, regulatory or other approvals, and (ii) consummating the Sale within the requirements of subparagraph (p) below;

(xv) Include a written acknowledgement by such Potential Bidder that it agrees to the terms of the Bid Procedures;

(xvi) Agree to provide such other information as may be reasonably requested in writing by the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to the Auction;

(xvii) Confirm that the Potential Bidder submits to the jurisdiction of the Bankruptcy Court; and

(xviii) Provide for a closing date (the "**Closing Date**") which shall be no later than 15 days after the entry of an order approving the Sale (the "**Sale Order**") or such other date as is acceptable to the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

The Debtors will promptly (but, in any case, within one (1) calendar day) deliver, after receipt thereof, copies of all Written Offers to the DIP Lenders, the Consenting Noteholders and the Committee, and, in each case, their professionals.

Between the Bid Deadline and the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may (i) negotiate or seek clarification of any Qualified Bid from a Qualified Bidder, (ii) request information from the Qualified Bidder, (iii) engage in discussions with the Qualified Bidder, or (iv) take such other actions contemplated under these Bid Procedures. Without the consent of the Debtors, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, a Qualified Bidder may not amend, modify or withdraw its Qualified Bid. All changes to the form of Purchase Agreement reflected in the Modified Purchase Agreement will be evaluated by the Debtors and must be acceptable to the Debtors, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee. Any Good Faith Deposit accompanying a Written Offer that the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, determine not to be a Qualified Bid shall be returned promptly following such determination. For the avoidance of doubt, the DIP Agent, on behalf of the DIP Lenders, and the Second Lien Agent, on behalf of the Second Lien Noteholders, shall not need to comply with any of the above requirements for becoming a Qualified Bidder and participating in the Auction and are hereby determined to be Qualified Bidders.

5. <u>Bid Deadline</u>

All Qualified Bids must be received by each of the parties listed below prior to the Bid Deadline.

| | |
|---|---|
| Debtors: | SFX Entertainment, Inc.<br>902 Broadway, 15th Floor<br>New York, NY 10010<br>Attn: Mike Katzenstein<br>E-mail: Mike.Katzenstein@fticonsulting.com |
| Debtors' Counsel: | Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, NY 10166<br>Attn: Maria J. DiConza<br>Fax: (212) 801-6400<br>E-mail: diconzam@gtlaw.com |
| Debtors' Investment Banker: | Moelis & Company LLC<br>399 Park Avenue, 5th Floor<br>New York, NY 10020<br>Attn: Adam Keil/Ryan Kitchen<br>Fax: (212) 880-4260<br>E-mail: adam.keil@moelis.com/ryan.kitchen@moelis.com |
| Counsel to the DIP Lenders and Consenting Noteholders: | Stroock & Stroock & Lavan LLP<br>180 Maiden Lane<br>New York, NY 10038<br>Attn: Jonathan D. Canfield/Joshua M. Siegel<br>Fax: (212) 806-6006<br>E-mail: jcanfield@stroock.com/jsiegel@stroock.com |
| Committee Counsel: | Pachulski Stang Ziehl & Jones LLP<br>919 North Market Street<br>Wilmington, DE 19801<br>Attn: Brad Sandler/Colin Robinson/Debra Grassgreen<br>Fax: (302) 652-4400<br>E-mail: bsandler@pszjlaw.com/crobinson@pszjlaw.com/<br>dgrassgreen@pszjlaw.com |

6. <u>Determination of Qualified Bidders</u>

The Debtors shall, by no later than 12:00 p.m. (Eastern Time) two (2) days prior to the Auction, (i) determine, in their business judgment and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, whether a Potential Bidder is a Qualified Bidder, and (ii) notify each such Potential Bidder that its Written Offer is a Qualified Bid and that such Potential Bidder is a Qualified Bidder.

7. "As Is, Where Is"

Except as otherwise provided in the Final Purchase Agreement (as defined below), the Sale of the Flavorus Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or their estates except to the extent set forth in the Final Purchase Agreement as approved by the Bankruptcy Court. Except as otherwise provided in the Final Purchase Agreement, all of the Debtors' right, title and interest in and to the Flavorus Assets subject thereto shall be sold free and clear of all liens, claims, interests and encumbrances (collectively, the "**Interests**") in accordance with sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Flavorus Assets.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all desired due diligence regarding the Flavorus Assets prior to making its Qualified Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Flavorus Assets in making its Qualified Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Flavorus Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, as to the Successful Bidder(s) and the Backup Bidder(s), the terms of the Sale(s) as set forth in the final form of the applicable Modified Purchase Agreement(s) (the "**Final Purchase Agreement**") which shall be on terms mutually acceptable to the Successful Bidder and Backup Bidder, on the one hand, and the Debtors, on the other hand, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee.

8. Auction

If the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected two or more Qualified Bidders, the Debtors shall conduct an Auction to determine the highest or otherwise best Qualified Bid. This determination shall take into account any factors the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reasonably deem relevant and may include, among other things, the following: (i) the amount and nature of the consideration; (ii) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder in its respective Modified Purchase Agreement; (iii) the extent to which such modifications are likely to delay closing of the Sale of the Flavorus Assets and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; and (v) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof.

The Auction shall commence at 11:00 a.m. (Eastern Time) on May 23, 2016, at the offices of Greenberg Traurig, LLP, MetLife Building, 200 Park Avenue, New York, New York 10166, or such other place as determined by the Debtors, and continue thereafter until completed. The Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, reserve the right to cancel or postpone the Auction. The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, reserve the right to not proceed with any Sale.

Except as otherwise permitted in the Debtors' discretion, only the Debtors, the DIP Lenders, the Consenting Noteholders, the Committee, Qualified Bidders, and all creditors, and, in each case, their respective professionals shall be entitled to attend the Auction. In advance of the Auction, such parties should provide to Debtors' counsel the names of individuals intending to attend the Auction. Only a Qualified Bidder is eligible to participate in the Auction.

The Auction shall be governed by the following procedures:

(i) Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

(ii) The Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, may waive and/or employ and announce at the Auction additional rules that are reasonable under the circumstances for conducting the Auction provided that such rules are (i) not inconsistent with the Bid Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any order of the Bankruptcy Court entered in connection with these Chapter 11 Cases, (ii) disclosed to each Qualified Bidder, and (iii) designed, in the Debtors' business judgment, to result in the highest or otherwise best offer for the Flavorus Assets.

(iii) The Debtors will arrange for the actual bidding at the Auction to be transcribed. Each Qualified Bidder shall designate a single individual to be its spokesperson during the Auction.

(iv) Each Qualified Bidder participating in the Auction must confirm on the record, at the commencement of the Auction and again at the conclusion of the Auction that it has not engaged in any collusion with the Debtors or any other Qualified Bidder regarding these Bid Procedures, the Auction or any proposed transaction relating to the Flavorus Assets.

(v) Prior to the Auction, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall identify the highest and best of the Qualified Bids received (the "**Opening Qualified Bid**"). Subsequent bidding will continue in minimum increments valued at not less than $250,000 in cash and/or noncash consideration, or in such amounts as to be determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, prior to, and announced at, the Auction. With respect to any subsequent bids, any noncash consideration shall be subject to the consent of the Required Lenders and the Requisite Noteholders.

(vi) All Qualified Bidders shall have the right to, at any time, request that the Debtors announce, subject to any potential new bids, the then-current highest or best bid and, to the extent requested by any Qualified Bidder,

use reasonable efforts to clarify any and all questions such Qualified Bidder may have regarding the Debtors' announcement of the then-current highest or best bid.

(vii) In the Debtors' discretion, after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Purchase Agreement or Modified Purchase Agreement, as applicable, at the Auction, *provided*, *however*, that any such modifications to the Purchase Agreement or Modified Purchase Agreement, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors as determined by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee.

(viii) Upon conclusion of the bidding, the Auction shall be closed, and the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, shall, as soon as practicable, (i) identify and determine in their business judgment the highest and/or best Qualified Bid for the Flavorus Assets (a "**Successful Bid**" and the entity or entities submitting such Successful Bid, the "**Successful Bidder**"), (ii) advise the Qualified Bidders of such determination, and (iii) require the Successful Bidder to deliver an executed Final Purchase Agreement, which reflects its bid and any other modifications submitted and agreed to during the Auction, prior to commencement of the Sale Hearing.

(ix) In addition, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, will determine which Qualified Bid, if any, is the next highest and/or best Qualified Bid to the Successful Bid, and will designate such Qualified Bid as a "**Backup Bid**" in the event the Successful Bidder fails to consummate the contemplated Sale. A Qualified Bidder that submitted a Qualified Bid that is designated a Backup Bid is a "**Backup Bidder**". Each Backup Bid shall remain open and binding until the Backup Bid Expiration Date.

(x) Following the conclusion of the Auction, the Debtors may resume bidding on such procedures determined by the Debtors in their discretion, and in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, for the sale of any Flavorus Assets not sold to the Successful Bidder.

9. Sole Qualified Bidder

If, by the Bid Deadline, the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, have selected only one Qualified Bidder for the Flavorus Assets, then the Debtors, subject to the consent of the Required Lenders and the Requisite Noteholders, and in consultation with the Committee, shall not hold an Auction and instead, shall, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee,

determine whether to request at the Sale Hearing that the Bankruptcy Court approve the Qualified Bid from the sole Qualified Bidder.  In the event of the foregoing, the Debtors will file a notice reflecting the selection of a sole Qualified Bidder and cancellation of the contemplated Auction.  Notwithstanding anything herein to the contrary, nothing herein shall obligate the Debtors to consummate or pursue the Sale of the Flavorus Assets.

10. Sale Hearing

The Sale Hearing will be held before the Honorable Mary F. Walrath on May 26, 2016 at 10:30 a.m. (Eastern Time) at the United States Bankruptcy Court for the District of Delaware, located in Courtroom 4, Fifth Floor, 824 Market Street, Wilmington, DE 19801.  At the Sale Hearing, the Debtors shall present the results of the Auction, if one is held, to the Bankruptcy Court and may seek approval of the Successful Bid and any Backup Bid.  Further, the Debtors will seek to have any executory contract or unexpired lease that is not designated to become an Assumed Contract, by the Debtors and the Successful Bidder or Backup Bidder, as applicable, be rejected at the Sale Hearing.

Following the Sale Hearing and entry of a Sale Order approving the Sale of the Flavorus Assets to a Successful Bidder, if such Successful Bidder fails to consummate the Sale for any reason, the Backup Bidder shall be designated the Successful Bidder and the Debtors shall be authorized to affect such Sale without further order of the Bankruptcy Court.  The Successful Bidder and Backup Bidder (if any) should be represented by counsel at the Sale Hearing.

11. Consummation of the Purchase

(i) Closing Date; Good Faith Deposit

The Successful Bidder shall consummate the Sale contemplated by the Successful Bid (the "**Purchase**") on or before the Closing Date.  If the Successful Bidder successfully consummates the Purchase by the Closing Date, such Successful Bidder's Good Faith Deposit shall be applied to the purchase price of the Purchase.

If the Successful Bidder either:  fails to consummate the Purchase on or before the Closing Date, breaches the Final Purchase Agreement, or otherwise fails to perform, the Debtors shall, without further order of the Bankruptcy Court, deem such Successful Bidder to be a "Defaulting Buyer".

The Debtors shall be entitled to (i) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by a Defaulting Buyer, and (ii) seek all available damages from such Defaulting Buyer occurring as a result of such Defaulting Buyer's failure to perform as may be provided for pursuant to the Final Purchase Agreement and the Sale Order.

(b) Backup Purchase

Upon a determination by the Debtors, in consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, that the Successful Bidder is a Defaulting Buyer, the Debtors shall consummate a Sale with the Backup Bidder on the terms and conditions of the Backup Bid (the "**Backup Purchase**") without further order of the Bankruptcy Court.

If the Backup Bidder consummates the Backup Purchase, the Good Faith Deposit of such Backup Bidder will be applied to the purchase price of the Backup Purchase. In the event that the Debtors seek to consummate the Backup Purchase with the Backup Bidder and such Backup Bidder fails to consummate the Backup Purchase, breaches the Final Purchase Agreement or otherwise fails to perform, the Debtors may, in their discretion and after consultation with the DIP Lenders, the Consenting Noteholders, and the Committee, and without further order of the Bankruptcy Court, deem such Backup Bidder to be a "Defaulting Buyer" and shall be entitled to (i) retain the Good Faith Deposit as part of their damages resulting from the breach or failure to perform by the Defaulting Buyer, and (ii) seek all available damages from such Defaulting Buyer occurring as a result of such Defaulting Buyer's failure to perform as may be provided for pursuant to the Purchase Agreement or Modified Purchase Agreement, as applicable, and the Sale Order.

12. <u>Return of Good Faith Deposits</u>

Good Faith Deposits of all Qualified Bidders shall be held in a non-interest bearing escrow account. Except for those of the Successful Bidder and Backup Bidder(s), the Debtors shall promptly return the Good Faith Deposits of (i) all Qualified Bidders after the Auction; and (ii) the Backup Bidder after the Backup Bid Expiration Date.

13. <u>Reservation of Rights</u>

The Debtors shall retain all rights to any of their assets that are not subject to the Sale that is approved by the Bankruptcy Court at the Sale Hearing.

**Exhibit A**

**Good Faith Deposit Wire Instructions**

As promptly as practicable upon provision of a Good Faith Deposit, Potential Bidders must execute and submit to counsel to the Debtors a form escrow agreement. The form escrow agreement and wire instructions for the Good Faith Deposit will be provided by the Debtors' investment banker, Moelis & Company LLC, upon request.