**EXHIBIT A**

*Execution version*

## SETTLEMENT AGREEMENT WITHIN THE MEANING OF SECTION 7:900 et seq. OF THE DUTCH CIVIL CODE

THIS SETTLEMENT AGREEMENT (this "**Agreement**") is made and entered into on May 4, 2016, by and among SFX Entertainment, Inc. ("**SFX**"), SFXE Netherlands Holdings B.V. ("**SFXE**" and together with SFX, the "**Company**"), Alda Holding B.V. ("**Alda**"), Lewis Holding B.V. ("**Lewis Holding**") and Mountain B.V. ("**Mountain**" and together with Lewis Holdings, the "**Sellers**") and David Frederik Marinus Lewis and Allan Johan Hardenberg in their capacities as directors (*bestuurders*) and/or (indirect) shareholders of Alda, Lewis Holding and/or Mountain (together the "**Senior Managers**"). The foregoing shall be referred to collectively as the "**Parties**", and individually as a "**Party**".

WHEREAS, the Company, Alda and the Sellers entered into that certain Share Purchase Agreement, dated November 24, 2014 (as amended or modified from time to time, the "**SPA**"), pursuant to which SFXE acquired certain outstanding shares representing 50% of the outstanding share capital of Alda (the "**Alda Shares**") from the Sellers (capitalized terms used herein without definition shall have the meanings provided for such terms in the SPA);

WHEREAS, in connection with the SPA and the acquisition of the Alda Shares, the Parties entered into several related documents, including, those certain Management Agreements with the Senior Managers, that certain Shareholders' Agreement and that certain Profit Share Agreement (together the "**Transaction Documents**");

WHEREAS, pursuant to and as further set forth in the SPA, SFXE was or may have been obligated to, among other things, (a) make certain Preferred Payments to the Sellers in certain annual Installments (the "**Deferred Payments**"); (b) pay to the Sellers the CS Put Option Price upon Sellers' exercise of the CS Put Option and (c) pay to the Sellers the Put Purchase Price upon Sellers' exercise of the Put Option;

WHEREAS, SFXE defaulted on its obligation to pay the CS Put Option Price of € 10,008,000;

WHEREAS, SFX guaranteed certain of SFXE's obligations under the SPA including the obligation to make the Deferred Payments and pay the CS Put Option Price and/or the Put Purchase Price;

WHEREAS, on February 1, 2016 (the "**Petition Date**"), the Company and certain of their affiliates (collectively, the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), which chapter 11 cases have been jointly administered under case number 16-10238 (MFW) (the "**Chapter 11 Cases**"), and, since the Petition Date, the Debtors have been operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, the Company and the Sellers fundamentally disagree as to, amongst others, whether (a) the remedy set forth in clause 6.2 of the SPA is the sole and exclusive remedy to cure a Put Deficit (as defined in the SPA) in the event the Company defaults on certain of its financial obligations under clause 7 and/or 10 of the SPA and (b) several Warranty Breaches have

occurred as described in, amongst others, that certain letter of SFXE, dated December 8, 2014 (the "**Dutch Dispute**");

WHEREAS, on February 11, 2016, the Sellers have levied prejudgment attachments (the "**Prejudgment Attachments**") on (a) each of the shares held by SFXE in the issued and outstanding capital of ID&T International Holding B.V., Sensation Brazil B.V., SFX Europe B.V. and Alda as well as (b) the positive balance on any bank account SFXE holds with Deutsche Bank Nederland N.V., ING Bank N.V., ABN AMRO Bank N.V. and Coöperatieve Rabobank U.A. pursuant to the leave the Sellers requested from and were granted by the Amsterdam District Court in the Netherlands on February 10, 2016 and in order to, *inter alia*, retain the Prejudgment Attachments and arbitrate the Dutch Dispute the Sellers instituted arbitration proceedings with the Netherlands Arbitration Institute (*Nederlands Arbitrage Instituut*, the "**NAI**") against SFXE on March 10, 2016, registered under number NAI 4440 (the "**Dutch Arbitration**");

WHEREAS, in addition to the issues in the Dutch Arbitration, the Parties also have an outstanding dispute related to an outstanding invoice of Amsterdam Music Festival B.V. to Viagogo AG for an amount of EUR 108,933.63 relating to tickets sold (the "**Viagogo Dispute**");

WHEREAS, the Parties desire to fully and finally compromise and settle all of the claims, disputes and matters in controversy between them including, without limitation, claims, disputes and matters in controversy arising from or related to the SPA, the Transaction Documents, the Deferred Payments, the CS Put Option, the Put Option, the Prejudgment Attachments, the Dutch Dispute, the Dutch Arbitration and the Viagogo Dispute (collectively, the "**Claims**"), and therefore wish to enter into this Agreement (*vaststellingsovereenkomst*) ex article 7:900 et seq. of the Dutch Civil Code (the "**DCC**") on the terms hereinafter set forth.

NOW, THEREFORE, in consideration of the promises and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, it is hereby agreed by and among the Parties as follows:

1. **Recitals**. The Parties hereby agree that the recitals above are true and correct and are material to the terms of this Agreement.

2. **The 9019 Motion**. The Company will promptly file a motion with the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of the terms of this Agreement and authorization of the Company's entry into this Agreement (the "**9019 Motion**").

3. **Effective Date.** Except as otherwise provided in this Paragraph, this Agreement shall become effective and binding upon the Parties and their respective successors, endorsees, transferees, heirs, beneficiaries and assigns, upon the date (the "**Agreement Effective Date**") on which the order entered by the Bankruptcy Court approving the 9019 Motion (the "**9019 Order**") becomes final and non-appealable, which date should in no event be later than July 10, 2016. Subject to approval of the Bankruptcy Court, paragraphs 9, 11 and 12(k) of this Agreement shall be immediately

binding upon execution of this Agreement by all of the Parties listed on the signature pages hereof.

4. **The Transaction**. Following the Agreement Effective Date, in full and final settlement of all the Claims, SFXE (or its designee on its behalf) agrees to:

a. Sell (*verkopen*) the Alda Shares to the Sellers in consideration for a purchase price of € 1 and promptly thereafter (and in no event later than 5 business days after the Agreement Effective Date) transfer (*leveren*) the Alda Shares back to the Sellers (the "**Share Transfer**") pursuant to transfer documentation substantially in the form attached hereto as <u>Annex I</u>; and

b. Pay € 1,100,001, in the aggregate, to the Sellers (the "**Settlement Payment**") on the earlier of (a) July 31, 2016 or (b) the effective date of a plan of reorganization in the Chapter 11 Cases.

5. **Wire Transfer of Settlement Payment**. The Settlement Payment shall be made in cash by wire transfer to

Stichting Beheer Derdengelden Advocatuur NautaDutilh
IBAN number: NL52ABNA0426185323
BIC number: ABNANL2A

free of any counterclaim or set-off and without deduction or withholding of any kind.

6. **Lifting the Prejudgment Attachments**. Within five (5) business days after (i) the completion of the Share Transfer and (ii) the receipt of the Settlement Payment, the Sellers shall take all necessary steps to: (i) lift the Prejudgment Attachments and (ii) dismiss and/or withdraw any action or proceeding against SFXE and/or the Company which the Sellers have commenced in connection with the Claims, including, but not limited to, the Dutch Arbitration.

7. **Seller Releases**. Subject to the lifting of the Prejudgment Attachments and the dismissal and/or withdrawals set forth in paragraph 6 of this Agreement, the Company, together with their respective assigns, predecessors-in-interest, successors-in-interest, divisions, affiliates, agents, officers, directors, employees, members, managers, supervisors, shareholders, representatives, attorneys, partners, joint ventures, each in their capacity as such, and any and all persons or entities who have at any time acted, or purported to act on their behalf (the "**Company Releasing Parties**"), shall release, acquit and forever discharge the Sellers, Senior Managers and Alda, together with their respective assigns, predecessors-in-interest, successors-in-interest, divisions, affiliates, agents, officers, (supervisory) directors, employees, members, managers, supervisors, shareholders, representatives, attorneys, partners, joint ventures, and any and all persons or entities who have at any time acted, or purported to act on their behalf (collectively, "**Seller Parties**"), from any and all claims, actions, causes of action, suits, interest, debts, dues, sums of money, accounts,

reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, and demands whatsoever, in law, admiralty or equity, whether arising in contract, tort, or otherwise, that any of the Company Releasing Parties ever had or now have or in the future may have, whether known or unknown, foreseen or unforeseen, relating to any activity, action or non-action of any kind or manner, including, but not limited to, the Claims; provided however, that notwithstanding the releases set forth in this paragraph 7 of this Agreement, the Parties are permitted to enforce their respective rights and obligations under this Agreement. For the avoidance of doubt, in the event that this Agreement terminates as described in the final sentence of paragraph 9 (Standstill), the Parties expressly agree that the terms of this provision and the releases set forth herein will cease to exist.

8. **Company Releases**. Subject to the occurance of the Share Transfer, the receipt of the Settlement Payment, the lifting of the Prejudgment Attachments and the dismissal and/or withdrawals set forth in paragraph 6 of this Agreement, the Sellers, Senior Managers and Alda, together with their respective assigns, predecessors-in-interest, successors-in-interest, divisions, affiliates, agents, officers, directors, employees, members, managers, supervisors, shareholders, representatives, attorneys, partners, joint ventures, each in their capacity as such, and any and all persons or entities who have at any time acted, or purported to act on their behalf (the "**Seller Releasing Parties**"), shall release, acquit and forever discharge the Company, together with their respective assigns, predecessors-in-interest, successors-in-interest, divisions, affiliates, agents, officers, (supervisory) directors, employees, members, managers, supervisors, shareholders, representatives, attorneys, partners, joint ventures, and any and all persons or entities who have at any time acted, or purported to act on their behalf (collectively, "**Company Released Parties**"), from any and all claims, actions, causes of action, suits, interest, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, and demands whatsoever, in law, admiralty or equity, whether arising in contract, tort, or otherwise, that any of the Seller Releasing Parties ever had or now have or in the future may have, whether known or unknown, foreseen or unforeseen, relating to any activity, action or non-action of any kind or manner, including, but not limited to, the Claims; provided however that notwithstanding the releases set forth in this Paragraph 8 of this Agreement, the Parties are permitted to enforce their respective rights and obligations under this Agreement. For the avoidance of doubt, in the event that this Agreement terminates as described in the final sentence of paragraph 9 (Standstill), the Parties expressly agree that the terms of this provision and the releases set forth herein will cease to exist.

9. **Standstill**. The Parties agree that upon execution of this Agreement by all of the Parties listed on the signature pages hereof, the Parties shall not take any steps to prosecute any actions in connection with the Claims, or take any further actions in connection with the Dutch Arbitration and/or the Prejudgment Attachments and to this effect the Parties will jointly request the Netherlands Arbitration Institute to stay the Dutch Arbitration, unless and until the Bankruptcy Court denies the 9019 Motion.

In case there is no final and non-appealable 9019 Order on July 10, 2016 or the conditions under 4(a), (b) and (c) have not been fulfilled on July 31, 2016, this standstill provision will cease to exist and this Agreement will terminate and, for the avoidance of doubt, any of the Parties may take any further actions in connection with the Dutch Arbitration and/or the Prejudgment Attachments and/or the Viagogo Dispute.

10. **Commercial Arrangements**.    The Parties hereby agree and shall endeavor that their respective subsidiaries and/or affiliates shall agree that, after the Agreement Effective Date, the Parties continued business relationship will be conducted in good faith on commercially reasonable terms. The Parties continued business relationship shall, for the avoidance of doubt, include, without limitation, the Amsterdam Music Festival B.V. and any activities in relation to the promotion and/or organization of certain tours of artist engaged by or associated with any of the Parties and any of their respective subsidiaries and/or affiliates.

11. **Financial Reporting Alda.**    Alda hereby agrees to promptly furnish SFXE with (i) an updated version of the prepared 2015 annual accounts; and (ii) any other financial records or documents SFXE may reasonably require in order to properly prepare its consolidated annual accounts.

12. **Miscellaneous.**

a.  **Amendments**. Except as otherwise expressly provided in this Agreement, this Agreement shall not be amended, modified or supplemented, nor may any term or condition hereof be waived (either generally or in a particular instance and either retroactively or prospectively), except in a writing signed by the Parties.

b.  **No Annulment**. Each of the Parties hereby waives any right it may have to, in whole or in part (*geheel of gedeeltelijk*), nullify (*vernietigen*), rescind (*ontbinden*) or terminate (*opzegging*), whether on the basis of error (*dwaling*) or otherwise, this Agreement or any transaction contemplated hereby.

c.  **Complete Agreement**.    This Agreement constitutes the complete agreement between the Parties to this Agreement with respect to the subject matter hereof and supersedes all prior and contemporaneous negotiations, agreements and understandings, written or oral, with respect to the subject matter hereof.

d.  **Cooperation**. The Parties to this Agreement agree to cooperate and take all steps reasonably necessary to obtain any required approval for any provision of this Agreement from the Bankruptcy Court.

e.  **Confidentiality**. Except as permitted by this Agreement, the Parties agree to treat any information conveyed to the other Parties in connection with this Agreement as confidential and shall not disclose any such confidential information to any third party other than to (i) such Party's officers, directors, employees and advisors, in each case, who may need to know such information for the purpose of

this Agreement contemplated hereby or (ii) as otherwise required to be in compliance with applicable law and, in any case, subject to such third party's agreement to maintain confidentiality with respect to such confidential information; <u>provided</u> <u>however</u>, that (i) the Company shall be permitted to share this Agreement and any related information with (a) the official committee of unsecured creditors appointed in the Chapter 11 Cases and their respective professionals and advisors, (b) the Unites States Trustee for the District of Delaware overseeing the Chapter 11 Cases, and (c) the Company's lenders in the Chapter 11 Cases and their respective professionals and advisors; (ii) the Parties agree the terms of this Agreement may be disclosed in a public filing with the Bankruptcy Court in connection with the 9019 Motion and any related pleadings; and (iii) the Parties agree that each Party may disclose that SFXE is no longer a shareholder of Alda.

f.  **Successors and Assigns**.  This Agreement is intended to bind and inure to the benefit of the Parties to this Agreement and their respective successors, permitted assigns, heirs, executors, administrators and representatives.

g.  **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page by telecopy or an attachment to an e-mail shall be effective as delivery of an executed counterpart.

h.  **Severability**.  If any provision of this Agreement as applied to any of the Parties or to any circumstance shall be adjudged by a court exercising proper jurisdiction to be invalid or unenforceable, that shall not affect: (a) the validity or enforceability in that jurisdiction of any other provision of this Agreement; or (b) the validity or enforceability in any other jurisdiction of the provision found illegal, invalid or unenforceable, or any other provision of this Agreement.

i.  **No Third Party Beneficiaries**.  The benefits provided to the Parties under this Agreement are solely for the benefit of the Parties hereto and are not intended to confer any rights upon any person or entity not a party hereto.

j.  **Arm's Length Transaction**.  Each Party, with the assistance of competent counsel, has participated in the drafting of this Agreement. The Parties agree that this Agreement has been negotiated at arm's length by parties of equal bargaining power, each of whom was represented by competent counsel of its own choosing. None of the Parties shall be considered to be the drafter of this Agreement or any provision for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter.

k.  **No Liability**. It is understood and agreed by the Parties that this Agreement represents a settlement and compromise of disputed claims and neither this Agreement itself, any of the payments or covenants described herein, nor

anything else connected with this Agreement is to be construed as an admission of fault or liability. For the avoidance of doubt, in the event that this Agreement terminates as described in the final sentence of paragraph 9 (Standstill), the Parties expressly agree that the terms of this Agreement and the representation of the respective Parties set forth herein shall not be admissible and may not be relied upon by either Party in any action in connection with the Claims, including in connection with the Dutch Arbitration and/or the Prejudgment Attachments.

l. **Expenses**. Each Party shall bear its own costs and expenses, including the fees and expenses of its legal and other advisers, incurred in connection with the preparation, negotiation and signing of this Agreement.

m. **Authority**. Subject to entry of the 9019 Order, each Party to this Agreement represents and warrants that it (or he) has the authority to enter into this Agreement and to perform the duties and obligations to which they have agreed herein.

n. **Notices**. All notices, requests, demands, claims and other communications hereunder shall be in writing and shall be transmitted by an attachment to an electronic mail message, and by (a) hand delivery, (b) first class mail, or (c) overnight mail, using the addresses set forth below (or in any case, to such other address as the Party addressed shall have previously designated by written notice to the serving Party, given in accordance with this Paragraph 12(p)):

| If to SFX: | If to SFXE: |
|---|---|
| SFX Entertainment, Inc. | SFXE Netherlands Holdings B.V. |
| 902 Broadway, 15th Floor | 902 Broadway, 15th Floor |
| New York, New York 10010, USA | New York, New York 10010, USA |
| Attn: Jason Barr, Deputy GC | Attn: Jason Barr, Deputy GC |
| Telephone: (212) 561 6407 | Telephone: (212) 561 6407 |
| Email: jbarr@sfxii.com | Email: jbarr@sfxii.com |

| With a Copy to: | With a Copy to: |
|---|---|
| Greenberg Traurig, LLP | Greenberg Traurig, LLP |
| The MetLife Building | The MetLife Building |
| 200 Park Avenue | 200 Park Avenue |
| New York, New York 10116 | New York, New York 10116 |
| Attn: Maria J. Diconza, Esq. | Attn: Maria J. Diconza, Esq. |
| Telephone: (212) 801-9200 | Telephone: (212) 801-9200 |
| Email: diconzam@gtlaw.com | Email: diconzam@gtlaw.com |

| If to the Sellers: | If to the Sellers: |
|---|---|
| Lewis Holding B.V. | Mountain B.V. |
| Attn. Mr D.F.M. Lewis | Attn. Mr A.J. Hardenberg |
| Johannes Verhulststraat 126-2 | Siciliëboulevard 214 |

1071 NM Amsterdam                          3059 XT Rotterdam
The Netherlands                            The Netherlands
Email: david@davidlewis.nl                 Email: allan@aldaevents.nl

<u>With a Copy to:</u>
NautaDutilh
Attn.: Rutger Kalsbeek
Weena 800
3000 BC Rotterdam
The Netherlands
Telephone: 0031 10 224 0451
Email:
rutger.kalsbeek@nautadutilh.com

o. **Additional Agreements**. In furtherance of the settlement embodied herein, the Parties may issue, execute or record any agreements and other documents, and shall take, document and/or record any action that may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of this Agreement, including, without limitation, by amending the articles of association of Alda. Upon signing of the Agreement Alda's supervisory board members B will resign.

p. **Settlement Agreement**. In order to avoid uncertainty with respect to the (legal) position of Parties, Parties by executing this Agreement are committed to the rights and obligations and positions at law as set out in this Agreement, which is meant to be effective also if these rights and obligations and positions at law set out in this Agreement are not in accordance with the rights and obligations and positions at law of Parties prior to this Agreement. This Settlement Agreement is a *vaststellingsovereenkomst* in accordance with article 7:900 et seq. of the DCC.

q. **Governing Law**.    This Agreement shall be governed by and construed in accordance with the laws of the Netherlands.

r. **Jurisdiction**.  Any dispute arising out of or in connection with this Agreement is subject to the exclusive jurisdiction of the competent courts in Amsterdam, the Netherlands.

*Execution version*

[Signature Page to Follow]

*Execution version*

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

**SFX ENTERTAINMENT, INC.**

By: _____

Name: Mr. Michael Katzenstein
Title: Chief Restructuring Officer

**SFXE NETHERLANDS HOLDINGS B.V.**

By: _____

Name: Mr. Sheldon Finkel
Title: Director

**LEWIS HOLDING B.V.**

By: _____

Name: Mr. David Frederik Marinus Lewis
Title: Director

**MOUNTAIN B.V.**

By: _____

Name: Mr. Allan Johan Hardenberg
Title: Director

**ALDA HOLDING B.V.**

By: _____

Name: Mr. David Frederik Marinus Lewis
Title: Director

By: _____

Name: Mr. Allan Johan Hardenberg
Title: Director

*Execution version*

## Annex I – Transfer Documentation

*See Attached*