**Exhibit 2**

### EXHIBIT A TO THE PLAN SUPPLEMENT

Amended Composition of the Initial Board of Directors
and Initial Officers of the Reorganized Debtors

## Amended Composition of the Initial Board of Directors and the Initial Officers of the Reorganized Debtors[1]

Pursuant to Sections 5.04 and 5.05 of the *Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc., et al. Under Chapter 11 of the Bankruptcy Code*, dated September 30, 2016 [Docket No. 1078] (the "Plan")[2] and section 1129(a)(5) of the Bankruptcy Code, and subject to confirmation of the Plan and occurrence of the Effective Date, this Plan Supplement sets forth the identities and affiliations of the initial board members and the initial officers of each Reorganized Debtor as of the Effective Date, to the extent known.

### Initial Members of the Board of Directors of the New Equity Issuer and Reorganized SFXE

On the Effective Date, the board of directors of each of the New Equity Issuer and Reorganized SFXE (each referred to herein as, the "Board") shall initially be comprised of five (5) members, constituted as follows: (a) one (1) director shall be the Reorganized Debtors' Chief Executive Officer, Brandon Phillips; (b) one (1) director shall be Andrew Axelrod, as designated by Axar Capital Management, LLC, together with its affiliates ("Axar"); (c) one (1) director shall be Douglas Forsyth, as designated by Allianz Global Investors U.S. LLC, together with its affiliates ("Allianz"); (d) one (1) director shall be Nils Larsen, as designated by consensus of the Tranche A DIP Lenders and Tranche B DIP Lenders,[3] excluding Axar and Allianz; and (e) one (1) independent director shall be Charles Ciongoli until such time as an independent director is designated by Brandon Phillips, with approval by the consensus of the Tranche A DIP Lenders and Tranche B DIP Lenders. All Board designees shall be required to satisfy applicable Sarbanes-Oxley requirements in order to serve.

---

[1]   This Amended Composition of the Initial Board of Directors and the Initial Officers of the Reorganized Debtors is subject to further modification prior to the Effective Date.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

[3]   For the avoidance of doubt, all references herein to the Tranche A DIP Lenders and the Tranche B DIP lenders shall not include Redwood Master Fund, Ltd.

1. <u>Brandon Phillips</u>.  Mr. Phillips was the co-founder and interim Chief Executive Officer of, and subsequent advisor to, Global Entertainment, a "360" model entertainment company providing touring, label, publishing, artist management, branding/sponsorship, and marketing services to artists.  Prior to joining Global Entertainment, Mr. Phillips served for thirteen (13) years as the President & Chief Executive Officer of the live entertainment industry leader, AEG Live, and Executive Vice President of parent AEG where he (i) acquired and/or created successful festivals including Coachella, Stagecoach, New Orleans Jazzfest and Rock-On-The-Range, amongst others; (ii) promoted world tours for artists such as Justin Timberlake, Justin Bieber, Paul McCartney, Bon Jovi, Prince, the Rolling Stones, Enrique Iglesias, Jennifer Lopez and Katy Perry, among other superstars; (iii) oversaw the Las Vegas residency concept for shows by Celine Dion, Bette Midler, Cher, Shania Twain and Rod Stewart; (iv) expanded and managed AEG Live's real estate portfolio, which grew to eighty-six (86) mid-size and small (capacity of six thousand or less) venues and clubs around the world; and (v) produced the films Michael Jackson's "This Is It", Justin Bieber's "Never Say Never" and Katy Perry's "Part Of Me".  Additionally, Mr. Phillips produced the CBS primetime special "Genius: An Evening For Ray Charles", for which he was awarded the coveted NAACP Image Award.  Mr. Phillips has served as personal manager for various artists, including Rod Stewart, Lionel Richie, Usher, Guns & Roses, Prince and Toni Braxton.  Mr. Phillips serves as a director on the advisory board of Oak View, an arena management company owned by James Dolan, Irving Azoff and Tim Leiweke.

2. <u>Andrew Axelrod</u>.          Mr. Axelrod is the Founder, Managing Partner and serves as the Portfolio Manager for Axar Capital Management LP.  Before founding Axar Capital Management LP, Mr. Axelrod was a Partner and Co-Head of North American Investments for Mount Kellett Capital Management ("<u>Mount Kellett</u>"), a private investment organization with over $7 billion of assets under management.  Mr. Axelrod joined Mount Kellett at the firm's inception and worked there for over six (6) years.  Prior to joining Mount Kellett, Mr. Axelrod worked at Kohlberg Kravis Roberts & Co. L.P. and the Goldman Sachs Group, Inc.  Mr. Axelrod graduated *magna cum laude* with a B.S. in Economics from Duke University.

3. <u>Douglas Forsyth</u>.  Mr. Forsyth, CFA, is a portfolio manager, a managing director and Chief Investment Officer US Income & Growth Strategies with Allianz Global Investors, which he joined in 1994.  He is the head of the Income and Growth Strategies team.  Mr. Forsyth has portfolio management, trading and research responsibilities, and oversees all aspects of the Income and Growth platform's business, including product development and implementation.  He has twenty-four (24) years of investment-industry experience.  Mr. Forsyth was previously an analyst at AEGON USA.  He has a B.B.A. from The University of Iowa.

4. <u>Nils E. Larsen</u>.  Mr. Larsen is the President of SZR Consulting, LLC. Mr. Larsen serves as a board member of several businesses including Extreme Reach, Inc., Liberty Tire Recycling and Vantage Drilling International.  Mr. Larsen also serves as a Senior Operating Adviser working with The Carlyle Group's U.S. Equity

Opportunities Fund focusing on the media, technology and telecommunications industries.  Prior to partnering with The Carlyle Group, Mr. Larsen served in a variety of senior executive positions with Tribune Company, including the President and Chief Executive Officer of Tribune Broadcasting and as Co-President of Tribune Company.  Before joining Tribune Company, Mr. Larsen served as a Managing Director of Equity Group Investments, LLC focusing on investments in the media, transportation, energy, retail grocery and member loyalty and rewards sectors.  Mr. Larsen started his career at CS First Boston where he focused on the capital requirements and derivative products needs of U.S. financial institutions and non-U.S. based entities.  Mr. Larsen has significant governance experience in post-bankrupt entities.  Mr. Larsen received his A.B. *summa cum laude* from Bowdoin College.

5.    ~~The remaining member of the Board has not yet been identified and shall be disclosed in an additional Plan Supplement to be filed prior to the Confirmation Hearing.~~Charles Ciongoli.  Previously, Mr. Ciongoli was co-founder, Executive Vice President and Chief Financial Officer of Global Entertainment.  Mr. Ciongoli's prior media-industry work includes: (i) serving as Executive Vice President and Chief Financial Officer of Universal Music Group NA and providing financial oversight of worldwide Music Publishing, where he was employed for twenty-two (22) years, and (ii) investing in and advising various media start-ups.  Mr. Ciongoli is a senior executive with both management and board representation experience who has a proven track record of facilitating change and delivering results in dynamic and turbulent environments.  Through his leadership and management of music entertainment businesses, Mr. Ciongoli has developed strategies related to monetization, information technology, distribution and funding.  Mr. Ciongoli has also led large-scale merger transactions and post-merger integrations, including the $10 billion merger of Universal Music Group with PolyGram, which created the world's largest music company, and the €1.6 billion acquisition and integration of BMG Music Publishing, which established the world's largest publishing company.  During his time at Universal Music Group NA, Mr. Ciongoli drove nearly 50% (€66 million) of a €140 million global overhead cost savings target initiative, successfully integrated and managed the $140 million Univision Latin label acquisition, and successfully divested certain non-core assets to comply with a €500 million divestiture/financing requirement in connection with Universal Music Group NA's acquisition of EMI.

**Initial Officers of the New Equity Issuer and Reorganized SFXE**

The chart below sets forth the names and titles of the initial officers[4] of each of the New Equity Issuer and Reorganized SFXE.  The initial officers of each of the New Equity Issuer and

---

[4]    In accordance with Section 1129(a)(5) of the Bankruptcy Code, each officer identified herein with an asterisk (*) alongside his name is an insider of one or more of the Debtors that will continue to serve as an officer of one or more of the Reorganized Debtors, and it is anticipated that on the Effective Date, each such insider will receive compensation and benefits that are substantially similar to those received by such insider prior to the Effective Date.

Reorganized SFXE shall be subject to terminations and resignations in the ordinary course of business.

| Name | Title |
| --- | --- |
| Brandon Phillips | Chief Executive Officer & President |
| Charles Ciongoli | Executive Vice President & Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President, General Counsel & Corporate Secretary |

### Initial Members of the Board of Directors and Officers of the Reorganized Subsidiaries[5]

The charts below set forth the names of the initial directors, and the names and titles of the initial officers of each Reorganized Debtor that is a subsidiary of Reorganized SFXE (collectively, the "Reorganized Subsidiaries"). The initial officers of the Reorganized Subsidiaries shall be subject to terminations and resignations in the ordinary course of business.

### 1. Reorganized Beatport, LLC

| Name | Title |
| --- | --- |
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Jason Barr* | Secretary |
| Alan Walter* | Senior Vice President |

### 2. Reorganized Core Productions LLC

| Name | Title |
| --- | --- |
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |

---

[5] As set forth in the Description of Structure included in this Plan Supplement, it is anticipated that, on the Effective Date certain of the Debtor entities will be merged into, and consolidated with, other Debtor entities. Accordingly, the following entities are not included in the disclosure below: (i) SFX Marketing LLC; (ii) LETMA Acquisition LLC; (iii) SFX-94 LLC; (iv) 430 Acquisition LLC; (v) SFX-Hudson LLC; (vi) ID&T/SFX Q-Dance LLC; (vii) ID&T/SFX Sensation LLC; (viii) SFX EDM Holdings Corporation; (ix) SFX Intermediate Holdco II LLC; (x) Michigan JJ Holdings LLC; (xi) SFX-Perryscope LLC; (xii) SFX Technology Services, Inc.; (xiii) SFX-EMC, Inc.; and (xiv) SFX Development LLC.

| Name | Title |
|---|---|
| Jason Barr* | Senior Vice President & Secretary |
| Alan Walter* | Senior Vice President |

### 3.   Reorganized EZ Festivals LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Adam Richman* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 4.   Reorganized SFX Holdco, Inc. (f/k/a Flavorus, Inc.)

| Name | Title |
|---|---|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 5.   Reorganized ID&T/SFX Mysteryland LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 6.   Reorganized ID&T/SFX North America LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 7.   Reorganized ID&T/SFX TomorrowWorld LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |

| Name | Title |
|---|---|
| Jason Barr* | Senior Vice President & Secretary |

### 8.  Reorganized Made Event, LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Jason Barr* | Senior Vice President & Secretary |
| Alan Walter* | Senior Vice President |
| Adam Richman* | Senior Vice President |

### 9.  Reorganized SFX Acquisition LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 10. Reorganized SFX Brazil LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 11. Reorganized SFX Canada Inc.

| Name | Title |
|---|---|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 12. Reorganized SFX Entertainment International II, Inc.

| Name | Title |
|---|---|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 13. Reorganized SFX Entertainment International, Inc.

| Name | Title |
|------|-------|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 14. Reorganized SFX Managing Member Inc.

| Name | Title |
|------|-------|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 15. Reorganized SFX Platform & Sponsorship LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 16. Reorganized SFX/AB Live Event Canada, Inc.

| Name | Title |
|------|-------|
| Brandon Phillips | Director, President |
| Charles Ciongoli | Director, Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 17. Reorganized SFX/AB Live Intermediate Holdco LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 18. Reorganized SFX/AB Live Event LLC

- 8-

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 19. Reorganized SFX-Disco Intermediate Holdco LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 20. Reorganized SFX-Disco Operating LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |
| Donnie Estopinal* | Vice President |
| Michele Servais* | Vice President |

### 21. Reorganized SFXE IP LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 22. Reorganized SFX-IDT N.A. Holding II LLC

| Name | Title |
|---|---|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 23. Reorganized SFX-LIC Operating LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |
| Sebastian Solano* | Vice President |
| Eric Fuller* | Vice President |

### 24. Reorganized SFX-IDT N.A. Holding LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 25. Reorganized SFX-Nightlife Operating LLC

| Name | Title |
|------|-------|
| David Grutman* | Chief Executive Officer |
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |

### 26. Reorganized SFX-React Operating LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |
| Nick Karounos* | Vice President |
| Larry Acciari* | Vice President |
| Lucas King* | Vice President |
| Jeff Callahan* | Vice President |

### 27. Reorganized Spring Awakening, LLC

| Name | Title |
|------|-------|
| Brandon Phillips | President |

- 9-

| | |
|---|---|
| Charles Ciongoli | Chief Financial Officer |
| Alan Walter* | Senior Vice President |
| Jason Barr* | Senior Vice President & Secretary |
| Nick Karounos* | Vice President |
| Larry Acciari* | Vice President |
| Lucas King* | Vice President |
| Jeff Callahan* | Vice President |

## 28. Reorganized SFXE Netherlands Holdings Coöperatief U.A.

| Name | Title |
|---|---|
| Sheldon Finkel* | Director |
| Charles Ciongoli | Director |

## 29. Reorganized SFXE Netherlands Holdings B.V.

| Name | Title |
|---|---|
| Sheldon Finkel* | Director |
| Charles Ciongoli | Director |

## EXHIBIT B TO THE PLAN SUPPLEMENT

Description of Structure

DRAFT

## Description of Structure[1]

The following description, together with the diagram attached as Schedule 1 hereto, sets forth certain changes to the corporate structure of the Debtors (to the extent known) expected to be made on or about the Effective Date of the *Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc., et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 1078] (as the same may be amended, supplemented or modified from time to time, "Plan")[2] filed with the United States Bankruptcy Court for the District of Delaware.[3]

1.  A new corporation ("~~New~~ HoldCo"), to be formed prior to the Effective Date under the General Corporation Law of the State of Delaware by the Tranche B DIP Lenders and the Holders of the Original Foreign Loan Claims (and to which the Tranche B DIP Facility Claims (net of amounts paid or payable in cash in accordance with the Plan) and the Original Foreign Loan Claims will be contributed prior to the Effective Date), will receive 100% of the common stock of Reorganized SFXE on the Effective Date in exchange for such Tranche B DIP Facility Claims and Original Foreign Loan Claims. Subject to the preceding sentence and the changes set forth in paragraph 2 below, the corporate structure of Reorganized SFXE, and the other Reorganized Debtors, shall be substantially the same corporate structure that exists immediately before the Effective Date, as filed with the Bankruptcy Court [Docket No. 548].

2.  Each of the following Debtors will be merged into, and consolidated with, its immediate parent entity: (i) SFX Marketing LLC; (ii) LETMA Acquisition LLC; (iii) SFX-94 LLC; (iv) 430 Acquisition LLC; (v) SFX-Hudson LLC; (vi) ID&T/SFX Q-Dance LLC; and (vii) ID&T/SFX Sensation LLC.  Each of the following Debtors will be merged into, and consolidated with, SFX Entertainment, Inc.: (i) SFX EDM Holdings Corporation; (ii) SFX Intermediate Holdco II LLC; (iii) Michigan JJ Holdings LLC; (iv) SFX-Perryscope LLC; (v) SFX Technology Services, Inc.; (vi) SFX-EMC, Inc.; and (vii) SFX Development LLC.

3.  Pursuant to the Plan, ~~New~~ HoldCo will issue to the applicable parties (x) in exchange for the contribution of the Tranche B DIP Facility Claims and the Original Foreign Loan Claims, (i) shares of the New Series A Preferred Stock~~;~~, (ii) shares of the New Series B Preferred Stock~~;~~, (iii) shares of the New Common Stock~~; (iv) the Series A Warrants; (v) the Series B Warrants; (vi) the Series C Warrants; and (vii) the GUC Note.~~ and (iv) the Series C Warrants[4]; and (y) in exchange for the extinguishment of the Prepetition Second Priority Notes and General Unsecured Claims, (i) the Series A Warrants, (ii) the Series B Warrants, (iii) the Litigation Trust Units, and (iv) payments under the GUC Note.  It is

---

[1]   This Description of Structure is subject to further modification prior to the Effective Date.⊥

[2]   Capitalized terms used but not defined herein shall have the meanings set forth in the Plan.
⊥

[3]   For the avoidance of doubt, nothing contained in this Description of Structure shall restrict or impair the Reorganized Debtors' ability to take all actions permitted by the New Governance Documents and other agreements and approved by their respective boards of directors or managers, and otherwise permissible under the laws of their respective jurisdictions of incorporation or formation.⊥

[4]   For the avoidance of doubt, the Series C Warrants shall be deemed automatically transferred to Allianz without any further action by any party pursuant to the terms of the Plan.

-2-

intended that the exchange described in clause (x) above shall be treated as an exchange qualifying under Section 351 of the Internal Revenue Code of 1986, as amended, unless otherwise required by law.

4. On the Effective Date, the New Series A Preferred Stock Investors under the New Series A Preferred Stock Investment Agreement shall acquire shares of the New Series A Preferred Stock and New Common Stock.

5. 4. On or after the Effective Date, Reorganized SFXE, as borrower, and New HoldCo, as guarantor, may (as deemed advisable by the Board of Directors of New HoldCo (the "HoldCo Board") based on the need for liquidity and seasonal and other fluctuations in business activity) obtain a secured revolving loan facility in an aggregate principal amount of up to $15 million.

6. 5. On the Effective Date or as soon as is reasonably practicable thereafter, the HoldCo Board and/or the Board of Directors of Reorganized SFXE (the "SFXE Board") shall adopt and approve a management incentive plan (the "MIP") pursuant to which New HoldCo and Reorganized SFXE will establish an incentive pool for certain members of senior management based on a percentage of net distributable value (as will be defined in the MIP) of New HoldCo upon certain liquidity events as set forth in the MIP. It is anticipated that the MIP will be a liability of Reorganized SFXE, and will provide for payment to the participants of amounts to be determined by the HoldCo Board and/or the SFXE Board based upon specified target disposition thresholds ranging between $0 and $400 million.

**Schedule 1**

DRAFT

## Anticipated Corporate and Capital Structure as of the Effective Date[1]



[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Plan.  For the avoidance of doubt, nothing contained in this corporate and capital structure chart shall restrict or impair the Reorganized Debtors' ability to take all actions permitted by the Governance Documents/agreements and approved by their respective boards of directors or managers, and otherwise permissible under the laws of their respective jurisdictions of incorporation or formation.

[2] A chart illustrating the Debtors' existing corporate structure has been filed with the Bankruptcy Court at Docket #548  (as to be modified as set forth in the Description of Structure).

## EXHIBIT C TO THE PLAN SUPPLEMENT

New Governance Documents

Schedule of New Governance Documents:*

1. SFX HoldCo Certificate of Incorporation

2. SFX HoldCo Bylaws

3. Reorganized SFXE Amended & Restated Certificate of Incorporation

4. Reorganized SFXE Amended & Restated Bylaws

5. Form of Amended & Restated Certificate of Incorporation for Delaware Entities

6. Form of Amended & Restated Limited Liability Company Operating Agreement for Delaware Entities

7. Form of Amended & Restated Bylaws for Delaware Entities

8. Form of Amended & Restated Certificate of Formation for Delaware Entities

9. Form of Amended & Restated Articles of Incorporation for California Entities

10. Form of Amended & Restated Bylaws for California Entities

11. Form of Amended & Restated Articles of Organization for Colorado Entities

12. Form of Amended & Restated Bylaws Limited Liability Company Operating Agreement for Colorado Entities

13. Form of Restated Articles of Organization for Illinois Entities

14. Form of Amended & Restated Limited Liability Company Operating Agreement for Illinois Entities

15. Form of Amended & Restated Certificate of Organization for Massachusetts Entities

16. Form of Amended & Restated Limited Liability Company Operating Agreement for Massachusetts Entities

17. Form of Amended & Restated Articles of Organization for New York Entities

18. Form of Amended & Restated Limited Liability Company Operating Agreement for New York Entities

19. New Governance Documents for Foreign Debtors **

* The New Governance Documents attached hereto are subject to further modification prior to the Effective Date.

** The New Governance Documents for each of the Foreign Debtors shall be modified, if necessary, to comply with the requirements set forth in section 1123(a)(6) of the Bankruptcy Code, and filed with the appropriate governmental or regulatory entity in the Netherlands. However, given that the New Governance Documents for each of the Foreign Debtors will be prepared in Dutch, the Debtors will not file such New Governance Documents with the Bankruptcy Court. To the extent that any party in interest would like to review such New Governance Documents, such documents will be made available upon reasonable request.

[DRAFT 10/26/2016]

## AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### of

### [HOLDCO, INC.][1]

[HOLDCO, INC.], a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

The name of the corporation is [HOLDCO, INC.] (the "Corporation").  The Corporation filed its original Certificate of Incorporation (the "Original Certificate of Incorporation") with the Secretary of State of the State of Delaware on November [ 6], 2016 (the "Original Certificate of Incorporation Date").  This Amended and Restated Certificate of Incorporation (this "Certificate of Incorporation") was duly adopted by the Board of Directors of the Corporation before receipt of payment for stock in accordance with §§ 242241 and 245 of the Delaware General Corporation Law (the "DGCL") and in accordance with a plan of reorganization (the "Plan") of SFX Entertainment, Inc., a Delaware corporation, approved by order dated November [____], 2016 of the United States Bankruptcy Court for the District of Delaware in *In re: SFX Entertainment, Inc.., et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended (the "Bankruptcy Code"), which Plan is expected to become effective on or about November [__], 2016 (the date upon which the Plan becomes effective, the "Plan Effective Date").

The Original Certificate of Incorporation of the Corporation is hereby amended and restated to read in its entirety as follows:

1.      **Name.**  The name of the corporation is [HOLDCO, INC.] (the "Corporation").

2.      **Registered Office and Agent.**  The Corporation's registered office in the State of Delaware is located at [874 Walker Road, Suite C, in the City of Dover, County of Kent, 19904].19904.  The name of its registered agent at such address is [United Corporate Services, Inc.]

3.      **Purpose.**  The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

4.      **Authorized Capital Stock; Number of Shares.**  The total number of shares of all classes of capital stock that the Corporation shall have the authority to issue is [_____] million ([_____]) shares, of which (a) [_____] million ([_____]) shares shall be common stock, $[ 0.01] par value per share ("Common Stock"); and (b) [_____] million ([_____]) shares shall be preferred stock, $[ 0.01] par value per share ("Preferred

---

[1] The Amended and Restated Certificate of Incorporation may also incorporate certain terms which are reflected in the governanceNew Stockholders Agreement term sheet attached as Exhibit [ D] to the Plan Supplement.

NY 76390017v3

Stock"), the terms of which shall be set forth in one or more Certificates of Designation filed with the Secretary of State of the State of Delaware (each, a "Certificate of Designation").

Notwithstanding anything herein to the contrary, the Corporation shall not issue non-voting equity securities of any class, series or other designation to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code; *provided*, *however*, that the foregoing restriction (i) shall have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (ii) shall only have such force and effect to the extent and for so long as such Section 1123(a)(6) is in effect and applies to the Corporation and (iii) may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5.      **Rights of Stockholders.**

5.1     ***Preferred Stock***.  Shares of Preferred Stock may be issued from time to time in one or more series.  The rights and restrictions applicable to ~~any~~the shares of Preferred Stock of any such series shall be set forth in a Certificate of Designation filed by the Corporation with the Secretary of State of the State of Delaware.  Subject to applicable law and to the terms of the Stockholders Agreement of the Corporation to be entered into and dated as of the Plan Effective Date by and among the Corporation and the holders of Preferred Stock and Common Stock of the Corporation (the "Stockholders Agreement") and the provisions of this Certificate of Incorporation, the Board of Directors is authorized to determine the designation of any series of Preferred Stock, to fix the number of shares of any series of the Preferred Stock, and to determine the rights, powers (including voting powers, if any), preferences, privileges, limitations and restrictions granted to or imposed upon any ~~wholly unissued~~ series of Preferred Stock and, within the limits and restrictions stated in any resolution or resolutions of the Board of Directors originally fixing the number of shares constituting any series of Preferred Stock, to increase or decrease (but not below the number of shares of any such series then outstanding) the number of shares of any such series subsequent to the issuance of shares of that series.  If the number of shares of any series of Preferred Stock shall be so decreased, the shares constituting such decrease shall resume the status which they had prior to the adoption of the resolution originally fixing the number of shares of such series.

5.2     ***Common Stock***.

5.2.1   *Relative Rights*. The Common Stock shall be limited by, and subject to, all of the rights, privileges, preferences and priorities of any **outstanding** series of Preferred Stock.

5.2.2   *Dividends*.  Subject to the rights of holders of any outstanding series of Preferred Stock and the terms of the Stockholders Agreement, the Board of Directors may cause dividends to be declared and paid on outstanding shares of Common Stock out of funds legally available for the payment of dividends.  When, as and if dividends on Common Stock are declared by the Board of Directors, whether payable in cash, in property, in stock or otherwise, in accordance with this Certificate of Incorporation and the Bylaws of the Corporation, as in effect from time to time (the "Bylaws"), out of the assets of the Corporation which are at law available therefor, the holders of outstanding shares of Common Stock shall be entitled to share equally in, and to receive in accordance with the number of shares of Common Stock held by each such holder, all such dividends.

2

5.2.3 *Liquidation Rights*.  In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, the holders of issued and outstanding shares of Common Stock shall be entitled to share, ratably according to the number of shares of Common Stock held by each such holder, in the remaining assets of the Corporation available for distribution to its stockholders after the payment, or provision for payment, of all debts and other liabilities of the Corporation and the payment of all outstanding Preferred Stock.

5.2.4 *Stockholder Voting Rights*.  Subject to applicable law and except as otherwise expressly provided elsewhere in this Certificate of Incorporation or the Bylaws, and subject to the rights of holders of any outstanding series of Preferred Stock, each holder of record of one or more issued and outstanding shares of Common Stock shall be entitled to one vote for each share of Common Stock standing in such holder's name on the books of the Corporation.

5.3 ***Consideration***.  Subject to applicable law and except as otherwise provided in this Certificate of Incorporation and the Stockholders Agreement, the capital stock of the Corporation, regardless of class or series, may be issued for such consideration and for such corporate purposes as the Board of Directors may from time to time determine.

5.4 ***Special Approval Requirements for Certain Actions***.  In addition to any other vote of stockholders or approval that may be required by law or by the provisions of this Certificate of Incorporation, so long as the Stockholders Agreement is in effect, whether or not specifically provided for in this Certificate of Incorporation, neither the Corporation nor any of its subsidiaries nor their Board of Directors shall take any action that under the terms of the Stockholders Agreement first requires a vote, consent or approval from one or more Stockholders or members of the Board of Directors to be obtained, without first obtaining such required vote, consent or approval.

5.5 ***Stockholders Agreement***.  To the fullest extent permitted by law, every holder of shares of Common Stock and Preferred Stock shall be subject to, shall be required to enter into, shall be deemed to have entered into, and shall be deemed to be bound by, the Stockholders Agreement (including the transfer restrictions therein), at such time as such holder receives shares of Common Stock or Preferred Stock (whether by sale, gift, inheritance or other Transfer, through the exercise or conversion of ~~warrants,~~ options or other convertible securities, by operation of law or otherwise), regardless of whether any such holder has executed the Stockholders Agreement, and the Stockholders Agreement shall be deemed to be a valid, binding and enforceable obligation of such holder (including any obligation set forth therein to waive or refrain from exercising any appraisal, dissenters or similar rights) even if such holder has not actually executed and delivered a counterpart of the Stockholders Agreement.

If any provisions of this Section ~~5.4~~5.5 or the application thereof to any Person or circumstance is held invalid or unenforceable to any extent, the remainder of this Section ~~5.4~~5.5 and the application of such provision to other Persons and circumstances shall not be affected thereby and such provision shall be enforced to the greatest extent permitted by law.

The Corporation will furnish without charge to each holder of record of shares of Common Stock or Preferred Stock a copy of the Stockholders Agreement upon written request to the Corporation at its principal place of business.

3

6.      **Transfers of Shares.**

6.1     ***Restrictions on Transfer***.  Without limiting any other provisions or restrictions or conditions of this Section 6, unless otherwise waived by the Board of Directors in its sole discretion, no shares of Common Stock or Preferred Stock shall be Transferred by any stockholder (regardless of the manner in which the Transferor initially acquired such shares of Common Stock or Preferred Stock), if:

(i)      such Transfer would, if consummated, result in any violation of the Securities Act or any state securities laws or regulations, or any other applicable federal or state laws or order of any Governmental Authority having jurisdiction over the Corporation;

(ii)     such Transfer would, if consummated (after taking into account any other proposed Transfers for which a notice thereof has been previously delivered to the Board of Directors, but not yet consummated), result in the Corporation having, in the aggregate, 1000 or more holders of record (as such concept is understood for purposes of Section 12(g) of the Exchange Act) of shares of Common Stock and Preferred Stock who are Accredited Investors, unless at the time of such Transfer the Corporation is already subject to the reporting obligations under Sections 13 or 15(d) of the Exchange Act, or such Transfer would, if consummated (after taking into account any other proposed Transfers for which a notice thereof has been previously delivered to the Board of Directors, but not yet consummated), require the Corporation to register its Common Stock or any other equity securities of the Corporation under the Exchange Act (as a result of the number of stockholders or otherwise), unless at the time of such Transfer the Corporation is already subject to the reporting obligations under Sections 13 or 15(d) of the Exchange Act; or

(iii)    such Transfer is to a Competitor or an Affiliate of a Competitor.

6.1.2   *Certificates; Legal Opinion.*  In addition to the restrictions set forth in Section 6.1.1, no shares of Common Stock or Preferred Stock shall be Transferred by any stockholder unless (i) the certificates (if any) representing such shares bear legends as provided in Sections [_____] of the Stockholders Agreement (and, with respect to uncertificated shares, if any, notice of such legends is provided in accordance with applicable law), for so long as such legends are applicable, and (ii) either (A) the Transferee is an Affiliate of the Transferor or (B) prior to such Transfer (1) unless waived by the Board of Directors, the Transferee and the Transferor shall have delivered to the Corporation representation letters in such form as may be approved from time to time by the Board of Directors and available from the Secretary of the Corporation and (2) the Transferor shall have delivered to the Corporation, if requested by the Board of Directors, a legal opinion reasonably acceptable to the Board of Directors, stating that the registration of the shares of Common Stock that are the subject of such proposed Transfer is not required under the Securities Act or any applicable state securities or "blue sky" laws.

6.1.3   *Notice of Transfer.*  Unless otherwise provided by the Board of Directors, any stockholder, or group of stockholders, effecting a Transfer of Common Stock must submit to the Corporation, prior to such Transfer, a written notice (a "Transfer Notice") of such Transfer.  A

4

Transfer Notice shall be mailed or delivered to (i) the Secretary or Chief Financial Officer of the Corporation, or any of their designees, and (ii) the Chairman of the Board (the "Transfer Notice Recipients"), in each case in accordance with Section 11.  A Transfer Notice shall include or be accompanied by (A) the name, address and telephone number of the Transferor and the Transferee, (B) whether the Transferee is an Affiliate of the Transferor and whether the Transferee is an Accredited Investor, (C) the number of shares of Common Stock or Preferred Stock proposed to be Transferred to, and acquired by, the Transferee, (D) the date on which the Transfer is expected to take place, (E) the percentage of the Transferor's total number of shares of Common Stock to be Transferred, (F) a joinder agreement to the Stockholders Agreement, duly completed and executed by the Transferee to the extent such Transferee has not already signed a counterpart of the Stockholders Agreement and (G) a request that the Corporation register the Transfer on the books of the Corporation and inform the Corporation's stock transfer agent of the Transfer.  So long as the other provisions of this Section 6 are satisfied and complied with, the Board of Directors (or an officer of the Corporation to whom such determination has been delegated by the Board of Directors) shall, within ten (10) Business Days after a Transfer Notice is submitted to the Corporation, cause the Transfer to be registered on the books of the Corporation and inform the Corporation's stock transfer agent of such Transfer unless, prior to the expiration of such ten (10) Business Day period, the Board of Directors (or such delegated officer) or any of the Transfer Notice Recipients request information demonstrating that the Transfer complies with this Section 6 (including information demonstrating that the Transferee or any of its Affiliates (other than any Affiliate that is a holder of any of the Convertible Notes on the Effective Date or any Affiliate of any such holder) is not a Competitor), in which case the Transfer shall be registered on the books of the Corporation no later than ten (10) Business Days after the Board of Directors (or such delegated officer) or such Transfer Notice Recipient receives such information, unless the Board of Directors (or such delegated officer) determines that the Transfer is not permitted pursuant to the terms of this Section 6, in which case the Board of Directors (or such delegated officer) shall promptly inform the Transferor of such determination.

6.1.4  *Legends on Certificates*.  All certificates (if any) evidencing shares of Common Stock or Preferred Stock shall conspicuously bear, or shall be deemed to conspicuously bear (even if such certificate does not actually bear such legends), the legends set forth in Sections [___] of the Stockholders Agreement (to the extent the Stockholders Agreement requires such certificates to bear such legends).  Each stockholder shall be deemed to have actual knowledge of the terms, provisions, restrictions and conditions set forth in this Certificate of Incorporation and the Stockholders Agreement (including, without limitation, the restrictions on Transfer set forth in this Section 6 and the restrictions on Transfer set forth in [____] of the Stockholders Agreement) for all purposes of this Certificate of Incorporation, the Stockholders Agreement and applicable law (including, without limitation, the DGCL and the Uniform Commercial Code as adopted and in effect in any applicable jurisdiction), whether or not any certificate evidencing shares of Common Stock owned or held by such stockholder bear the legends set forth in Sections [___] of the Stockholders Agreement or whether or not any such stockholder received a separate notice of such terms, provisions, restrictions and conditions.

6.2  *Prohibited Transfers Void*.  The Corporation shall not record upon its books any sale or other Transfer of ~~Securities~~securities except in accordance with the provisions of this Certificate of Incorporation and the Stockholders Agreement.  Any purported sale or Transfer in

5

violation of such provisions shall be void ab initio and shall not be recognized by the Corporation.

6.3     *Termination*.  Except for the legend requirements set forth in Section ~~6.1.2~~6.1.4 (to the extent still applicable), the provisions of this Section 6 shall terminate automatically upon the consummation of a Qualified Public Offering ~~(as defined in the Stockholders Agreement)~~.

7.       **Directors**.  This Section 7 is inserted for the management of the business and for the conduct of the affairs of the Corporation and it is expressly provided that it is intended to be in furtherance of and not in limitation or exclusion of the powers conferred by applicable law.

7.1     *Number, Election, and Terms of Office of Board of Directors*.  Except as may otherwise be provided in this Certificate of Incorporation, the Bylaws, the Stockholders Agreement or the DGCL, the business of the Corporation shall be managed by the Board of Directors.

7.2     *Composition of the Board of Directors;  Term; Removal*.

7.2.1   As of the date hereof, the Board of Directors shall consist of the ~~seven~~five (~~7~~5) directors whose names ~~and class designation~~ were filed with the Bankruptcy Court (such ~~seven~~five individuals, the "Initial Board").  Except as otherwise provided in the Stockholders Agreement, each member of the Board of Directors shall hold office until the next annual meeting of stockholders and until his or her successor is duly elected and qualified in accordance with the terms of this Certificate of Incorporation, the Bylaws and the Stockholders Agreement, subject to earlier resignation, retirement, death or removal.

7.2.2   Except as otherwise provided by the Stockholders Agreement, and subject to the voting rights, if any, of holders of any outstanding series of Preferred Stock, at each annual meeting of stockholders, directors shall be elected for a one-year term by affirmative vote of a majority of the aggregate combined voting power of the Corporation's then issued and outstanding shares of Common Stock and shares of Preferred Stock having voting rights (voting as a single class), present in person or represented by proxy at a meeting called for the purpose of electing directors.  There shall not be cumulative voting for directors.

7.2.3   Any director may be removed at any time in accordance with the Stockholders Agreement.  However, if the Board of Directors decides to terminate the employment of the chief executive officer for any reason, and such chief executive officer is then serving as a director, the terminated chief executive officer will immediately cease to serve as a director.

7.2.4   Any vacancies in the Board of Directors resulting from death, resignation, incapacitation, retirement, disqualification, removal from office, or other cause, shall be filled as provided in the Stockholders Agreement.  Any director(s) so chosen shall hold office until their respective successors are duly elected at the next annual meeting of stockholders.

8.       **Compromise, Arrangement or Reorganization.**  Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable

6

jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of the DGCL or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of the DGCL, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

9.    **Limitation of Liability.**  To the fullest extent permitted by the DGCL, no director of the Corporation serving in such capacity **on or** after the ~~Plan Effective~~**Incorporation** Date shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director arising from acts or omissions solely occurring from and after the ~~Plan Effective~~**Incorporation** Date, including breaches resulting from such director's grossly negligent behavior, except for liability (a) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) under Section 174 of the DGCL or (d) for any transaction from which the director derived any improper personal benefits. If the DGCL is hereafter amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation arising from acts or omissions solely occurring from and after the ~~Plan Effective~~**Incorporation** Date shall be eliminated or limited to the fullest extent permitted by the DGCL, as so amended. Any amendment, repeal or modification of this <u>Section 8</u> by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at or prior to the time of such amendment, repeal or modification.

10.    **Corporate Opportunity.**  The Corporation hereby renounces, to the fullest extent permitted by law, any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business opportunities that are presented to any of its directors or holders of Securities or any of their respective ~~affiliates~~**Affiliates**. Without limiting the generality of the foregoing, the Corporation specifically renounces any rights the Corporation might have in any business venture or business opportunity of any director or holder of capital stock or any of their respective ~~affiliates~~**Affiliates**, and no director or holder of capital stock or any of their respective ~~affiliates~~**Affiliates** shall have any obligation to offer any interest in any such business venture or business opportunity to the Corporation or otherwise account to the Corporation in respect of any such business ventures or opportunities, even if the business venture or opportunity is one that the Corporation or its subsidiaries might reasonably be deemed to have pursued or had the ability or desire to pursue if granted the opportunity to do so. Furthermore, it shall not be deemed a breach of any fiduciary or other duties, if any, whether express or implied, for any director or holder of capital stock to permit itself or one of its ~~affiliates~~**Affiliates** to engage in a business opportunity in preference or to the exclusion of the

7

Corporation and such director or holder of capital stock or any of their respective ~~affiliates~~Affiliates shall have no obligation to disclose to the Corporation or any of its subsidiaries any information related to its business or opportunities, disclose to the Corporation or the Board of Directors any confidential information regarding any corporate opportunity or other potential investment in ~~such~~ the possession of such director or holder of capital stock even if it is material and relevant to the Corporation and/or the Board of Directors, present business opportunities to the Corporation, refrain from engaging in any line of business, refrain from investing in any person or refrain from doing business with any person. References to a "holder of capital stock" in this paragraph are to each such holder of capital stock in its capacity as such. Any person purchasing or otherwise acquiring any interest in capital stock of the Corporation shall be deemed to have notice of and to have consented to the provisions of this Section 10.

11.    **DGCL Section 203.**  The Company expressly elects not to be governed by Section 203 of the DGCL.

12.    **Indemnification.**

12.1    To the fullest extent permitted by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding ("Proceeding"), whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) with respect to any act or omission solely occurring from and after the ~~Plan Effective~~Incorporation Date, by reason of the fact that the person is or was a director or officer of the Corporation from and after the ~~Plan Effective~~Incorporation Date, or is or was serving at the request of the Corporation from and after the ~~Plan Effective~~Incorporation Date as a director or officer of another corporation, partnership, joint venture, trust or other enterprise ("Other Entity"), against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with such Proceeding if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful.  The termination of any Proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the person's conduct was unlawful.  To the extent specified by the Board of Directors at any time and to the fullest extent permitted by law, the Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor with respect to any act or omission solely occurring from and after the ~~Plan Effective~~Incorporation Date, by reason of the fact that the person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation from and after the ~~Plan Effective~~Incorporation Date as a director, officer, employee or agent of an Other Entity, against expenses (including attorneys' fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such person

8

shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court of Chancery of the State of Delaware (the "Court of Chancery") or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper.

12.2    The Corporation shall, from time to time, reimburse or advance to any director or officer entitled to indemnification hereunder the funds necessary for payment of expenses, including attorneys' fees and disbursements, incurred in connection with any Proceeding, in advance of the final disposition of such Proceeding; *provided*, *however*, that, if required by the DGCL, such expenses incurred by or on behalf of any director or officer may be paid in advance of the final disposition of a Proceeding only upon receipt by the Corporation of an undertaking, by or on behalf of such director or officer, to repay any such amount so advanced if it shall ultimately be determined by final judicial decision from which there is no further right of appeal that such director or officer is not entitled to be indemnified for such expenses.

12.3    The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Section 12 shall not be deemed exclusive of any other rights to which a person seeking indemnification or reimbursement or advancement of expenses may have or hereafter be entitled under any statute, this Certificate of Incorporation, the Bylaws, any agreement (including any policy of insurance purchased or provided by the Corporation under which directors, officers, employees and other agents of the Corporation are covered), any vote of stockholders or disinterested directors or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office.

12.4    The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Section 12 shall continue as to a person who has ceased to be a director or officer and shall inure to the benefit of the executors, administrators, legatees and distributees of such person.

12.5    The Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director or officer of the Corporation from and after the date hereof, or is or was serving at the request of the Corporation from and after the date hereof as a director or officer of an Other Entity, against any liability asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under the provisions of this Section 12, the Bylaws, the Stockholders Agreement or under Section 145 of the DGCL or any other provision of law.

12.6    The provisions of this Section 12 shall be a contract between the Corporation, on the one hand, and each director and officer who serves in such capacity at any time while this Section 12 is in effect, on the other hand, pursuant to which the Corporation and each such director or officer intend to be legally bound.  Notwithstanding anything to the contrary contained in this Certificate of Incorporation, no amendment, repeal or modification of this Section 12 shall affect any rights or obligations with respect to any state of facts then or

9

theretofore existing or any proceeding theretofore or thereafter brought or threatened based in whole or in part upon any such state of facts.

12.7    The rights to indemnification and reimbursement or advancement of expenses provided by, or granted pursuant to, this Section 12 shall be enforceable by any person entitled to such indemnification or reimbursement or advancement of expenses in any court of competent jurisdiction.    Neither the failure of the Corporation (including its Board of Directors, its independent legal counsel and its stockholders) to have made a determination prior to the commencement of such action that such indemnification or reimbursement or advancement of expenses is proper in the circumstances nor an actual determination by the Corporation (including its Board of Directors, its independent legal counsel and its stockholders) that such person is not entitled to such indemnification or reimbursement or advancement of expenses shall constitute a defense to the action or create a presumption that such person is not so entitled. Such a person shall also be indemnified, to the fullest extent permitted by law, for any expenses incurred in connection with successfully establishing his or her right to such indemnification or reimbursement or advancement of expenses, in whole or in part, in any such action.

12.8    Any director or officer of the Corporation serving in any capacity in (i) another corporation of which a majority of the shares entitled to vote in the election of its directors is held, directly or indirectly, by the Corporation or (ii) any employee benefit plan of the Corporation or any corporation referred to in clause (i) shall be deemed to be doing so at the request of the Corporation.

12.9    Any person entitled to be indemnified or to reimbursement or advancement of expenses as a matter of right pursuant to this Section 12 may elect to have the right to indemnification or reimbursement or advancement of expenses interpreted on the basis of the applicable law in effect at the time of the occurrence of the event or events giving rise to the applicable Proceeding, to the extent permitted by law, or on the basis of the applicable law in effect at the time such indemnification or reimbursement or advancement of expenses is sought. Such election shall be made, by a notice in writing to the Corporation, at the time indemnification or reimbursement or advancement of expenses is sought; *provided*, *however*, that if no such notice is given, the right to indemnification or reimbursement or advancement of expenses shall be determined by the law in effect at the time indemnification or reimbursement or advancement of expenses is sought.

12.10   It is the intent that with respect to all advancement, reimbursement and indemnification obligations under this Section 12, the Corporation shall be the indemnitor of first resort (i.e., its obligations to indemnitees under this Certificate of Incorporation are primary and any obligation of any stockholder (or any of its Affiliates) to provide advancement or indemnification for the same losses incurred by indemnitees are secondary), and if a stockholder pays or causes to be paid, for any reason, any amounts otherwise indemnifiable hereunder or under any other indemnification agreement (whether pursuant to this Certificate of Incorporation, the Bylaws, the Stockholders Agreement, contract, law or regulation), then (i) such stockholder (or such Affiliate, as the case may be) shall be fully subrogated to all rights hereunder of the indemnitee with respect to such payment and (ii) the Corporation shall reimburse such stockholder (or such Affiliate, as the case may be) for the payments actually made and waive any

10

right of subrogation, reimbursement, exoneration, contribution or indemnification and any right to participate in any claim or remedy of such stockholder (or such Affiliate, as the case may be).

13.    **Books and Records.**  The books and records of the Corporation may be kept (subject to any provision contained in the DGCL or other applicable law) at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws.

14.    **Notices.**  All notices, requests, waivers and other communications made pursuant to this Certificate of Incorporation shall be in writing and shall be deemed to have been effectively given or delivered (a) when personally delivered to the party to be notified; (b) if given by electronic transmission in the manner provided in Section 232 of the DGCL~~, in accordance with Section 232 of the DGCL~~; (c) three (3) Business Days after deposit in the United States mail, postage prepaid, by certified or registered mail with return receipt requested, addressed to the party to be notified; or (d) one (1) Business Day after deposit with a national overnight delivery service, postage prepaid, addressed to the party to be notified with next-Business Day delivery guaranteed, in each case as follows:  (i) in the case of any stockholder, to such stockholder at its address or facsimile number set forth in the stock records of the Corporation; and (ii) in the case of the Corporation, to the Secretary of the Corporation at the Corporation's principal place of business.  A party may change its address for purposes of notice hereunder by giving notice of such change in the manner provided in this Section 14.

15.    **Amendments.**  The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by the DGCL and in accordance with the terms of the Stockholders Agreement.

16.    **Forum**.  Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery shall, to the fullest extent permitted by law, be the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim for breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (c) any action asserting a claim arising pursuant to any provision of the DGCL, this Certificate of Incorporation or the Bylaws, or (d) any action asserting a claim governed by the internal affairs doctrine, in each case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein.

17.    **Enforceability; Severability**.  Each provision of this Certificate of Incorporation shall be enforceable in accordance with its terms to the fullest extent permitted by law, but in case any one or more of the provisions contained in this Certificate of Incorporation shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Certificate of Incorporation, and this Certificate of Incorporation shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein.

18.    **Bylaws**.  In furtherance and not in limitation of the powers conferred by law and except as otherwise set forth in the Stockholders Agreement, the Board of Directors is expressly authorized and empowered to adopt, amend or repeal any or all of the Bylaws without any action

11

on the part of the stockholders of the Corporation, subject to the power of the stockholders of the Corporation to amend or repeal any Bylaws adopted or amended by the Board of Directors.

19.    **Certain Definitions.**  As used in this Certificate of Incorporation, the following terms shall have the following meanings:

(i)    "Accredited Investor" means an "accredited investor" as such term is defined in Rule 501 under the Securities Act.

(ii)    "Affiliate" means, with respect to any Person, any other Person that (either directly or indirectly) controls, is controlled by, or is under direct or indirect common control with the specified Person, and shall also include (i) any Related Fund of such Person and (ii) in the case of a specified Person who is an individual, any Family Member of such Person.  The term "control" includes the possession, directly or indirectly, of the power to direct the management or policies of a Person, whether through the ownership of voting securities, by contract or otherwise.  No stockholder shall be deemed an Affiliate of another Person solely by virtue of being a party to the Stockholders Agreement or by being a lender to or creditor of such other Person.

(iii)    "Business Day" means any day other than a day which is a Saturday, Sunday or legal holiday on which banks in the City of New York are authorized or obligated by law to close.

(iv)    "Competitor" means a Person that is identified on ~~Schedule [___] to the Stockholders Agreement~~a list maintained by the Board of Directors, which list shall be made available to all stockholders upon reasonable request, and which list may be updated from time to time by the Board of Directors.

(v)    "Exchange Act" means the Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

(vi)    "Family Member" means, with respect to any individual, (i) any Related Person of such individual or (ii) any trust the sole beneficiaries of which are such individual or one or more of such individual's Related Persons.

(vii)    "Person" means an individual, partnership, corporation, unincorporated organization, joint stock company, limited liability company, partnership, association, trust, joint venture or any other entity, or a governmental agency or political subdivision thereof.

(viii)    "Qualified Public Offering" means the first underwritten public offering pursuant to an effective registration statement covering a sale of shares of Common Stock to the public that (x) results in shares of Common Stock being listed on a national securities exchange or quoted on the Nasdaq Stock Market, and (y) in which the number of shares of Common Stock issued by the Corporation or any successor in such public offering is equal to or greater than 25% of the total number of shares of Common Stock that are issued and outstanding immediately after giving effect to such public offering.

NY 76390017v3

(ix)    "Related Fund" means, with respect to any Person, any fund, account or investment vehicle that is controlled or managed by (x) such Person or (y) the same investment manager or advisor as such Person or an Affiliate of such investment manager or advisor.

(x)    "Related Person" means, with respect to any individual, any of such individual's parents, spouse, siblings, children and grandchildren.

(xi)    "Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

(xii)    "Transfer" means any direct or indirect sale, transfer, gift, hypothecation, pledge, assignment, devise or other disposition of Common Stock or Preferred Stock (including (x) the granting of any option or entering into any agreement for the future sale, transfer or other disposition of Common Stock or Preferred Stock, or (y) the sale, transfer, assignment or other disposition of any securities or rights convertible into, or exchangeable or exercisable for, Common Stock or Preferred Stock), whether voluntary or involuntary, whether of record, constructively or beneficially and whether by operation of law or otherwise, including by recapitalization, merger, consolidation, liquidation, dissolution, dividend, distribution or otherwise.  Notwithstanding the foregoing, any transaction in which a stockholder lends or borrows any shares of Common Stock or Preferred Stock to or from brokers, banks, or other financial institutions for the purpose of effecting margin transactions, or pledges or otherwise encumbers shares of Common Stock in connection with such stockholder's financing arrangements, in any case in the ordinary course of business, shall not constitute a Transfer of shares of Common Stock or Preferred Stock for purposes of this Certificate of Incorporation; provided, however, that any foreclosure (including the retention of shares of Common Stock in satisfaction of any obligations) on shares of Common Stock or Preferred Stock by any such broker, bank or other financial institution shall be deemed a Transfer of shares of Common Stock or Preferred Stock for purposes of this Certificate of Incorporation.  The terms "Transferee," "Transferor," "Transferred," and other forms of the word "Transfer" shall have the correlative meanings.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

NY 76390017v3

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated Certificate of Incorporation, which amends and restates the Corporation's Original Certificate of Incorporation, to be made, executed and acknowledged by its duly authorized officer this [__] day of November, 2016, as directed by and provided for in the Order of the United States Bankruptcy Court for the District of Delaware, dated [_____], 2016, confirming the Plan of Reorganization under Chapter 11 of the Bankruptcy Code.

_____
Name:
Title:

Attest:

_____
Secretary

NY 76390017v3

Document comparison by Workshare Compare on Friday, November 04, 2016
11:24:37 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\1 (76390017_3) SFX - Holdco, Inc. Certificate of Incorporation.DOC |
| Description | 1 (76390017_3) SFX - Holdco, Inc. Certificate of Incorporation |
| Document 2 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\1 (76390017_5) SFX - Holdco, Inc. Certificate of Incorporation.DOC |
| Description | 1 (76390017_5) SFX - Holdco, Inc. Certificate of Incorporation |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |

| Insertions | 34 |
|---|---|
| Deletions | 47 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 81 |

DRAFT 10/26/16

# BYLAWS

## OF

## [HOLDCO], INC.

(A Delaware corporation)
(Dated as of November [_____], 2016)


These Bylaws (the "Bylaws") are subject to, and governed by, the General Corporation Law of the State of Delaware (the "General Corporation Law"), the Amended and Restated Certificate of Incorporation **(the "Certificate of Incorporation")** of [Holdco], Inc., a Delaware corporation (the "Corporation"), and the Stockholders Agreement dated as of November [____], 2016 (the "Stockholders Agreement") among the Corporation and the holders of shares of Common Stock and Preferred Stock of the Corporation.


## ARTICLE I

### OFFICES

1.    REGISTERED OFFICE.

1.    The registered office of the Corporation in the State of Delaware shall be at [874 Walker Road, Suite C, in the city of Dover, County of Kent, Delaware 19904].19904.  The registered agent of the Corporation at such address shall be [United Corporate Services, Inc.]  The registered office or registered agent of the Corporation may be changed from time to time by action of the board of directors of the Corporation (the "Board").


2.    OTHER OFFICES.

The Corporation may also have offices at such other places, within or without the State of Delaware, as the Board of Directors may from time to time designate or the business of the Corporation may require.


## ARTICLE II

### STOCKHOLDERS

1.    CERTIFICATES REPRESENTING STOCK.

(a)    The shares of stock of the Corporation shall be uncertificated shares evidenced by a book-entry system maintained by the registrar of such stock; provided that the Board of

NY 76391205v3

Directors may provide by resolution or resolutions that some or all of any class or series shall be represented by physical certificates.   If shares are represented by certificates, such certificates shall be in the form, other than bearer form, approved by the Board of Directors. The certificates representing shares of stock of each class shall be signed by, or in the name of, the Corporation by the Chief Executive Officer or by the President or a Vice-President and by the Treasurer or an Assistant Treasurer or the Secretary or an Assistant Secretary of the Corporation.  If such certificate is countersigned by a transfer agent other than the Corporation or its employee or by a registrar other than the Corporation or its employee, any other signature on the certificate may be a facsimile.  In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.

(b)     Whenever the Corporation shall be authorized to issue more than one class of stock or more than one series of any class of stock, and whenever the Corporation shall issue any shares of its stock as partly paid stock, the certificates representing shares of any such class or series or of any such partly paid stock shall set forth thereon the statements prescribed by the General Corporation Law.  Any restrictions on the transfer or registration of transfer of any shares of stock of any class or series shall be noted conspicuously on the certificate representing such shares.

(c)     The Corporation may issue a new certificate of stock in place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Board of Directors may require the owner of any lost, stolen or destroyed certificate, or such person's legal representative, to give the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of any such new certificate.

2.     FRACTIONAL SHARE INTERESTS.

The Corporation may, but shall not be required to, issue fractions of a share.

3.     STOCK TRANSFERS.

Upon compliance with provisions restricting the transfer or registration of transfer of shares of stock, if any, **set forth in the Certificate of Incorporation, the Stockholders Agreement or in these Bylaws,** transfers or registration of transfer of shares of stock of the Corporation shall be made only on the stock ledger of the Corporation by the registered holder thereof, or by such person's attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the Corporation or with a transfer agent or a registrar, if any, and on surrender of the certificate or certificates for such shares of stock properly endorsed and the payment of all taxes due thereon.

4.     RECORD DATE FOR STOCKHOLDERS.

- 2-

NY 76391205v3

(a)     In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty nor less than ten days before the date of such meeting.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty days prior to such action.  If no record date has been fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

5.     MEANING OF CERTAIN TERMS.

As used herein in respect of the right to notice of a meeting of stockholders or a waiver thereof or to participate or vote thereat or to consent or dissent in writing in lieu of a meeting, as the case may be, the term "share" or "shares" or "share of stock" or "shares of stock" or "stockholder" or "stockholders" refers to an outstanding share or shares of stock and to a holder or holders of record of outstanding shares of stock when the Corporation is authorized to issue only one class of shares of stock, and said reference is also intended to include any outstanding share or shares of stock and any holder or holders of record of outstanding shares of stock of any class upon which or upon whom the Certificate of Incorporation confers such rights where there are two or more classes or series of shares of stock or upon which or upon whom the General Corporation Law confers such rights notwithstanding that the Certificate of Incorporation may provide for more than one class or series of shares of stock, one or more of which are limited or denied such rights thereunder; provided, however, that no such right shall vest in the event of an increase or a decrease in the authorized number of shares of stock of any class or series which is otherwise denied voting rights under the provisions of the Certificate of Incorporation, including any preferred stock which is denied voting rights under the provisions of the resolution or resolutions adopted by the Board of Directors with respect to the issuance thereof.

6.     STOCKHOLDER MEETINGS.

NY 76391205v3

(a)     TIME.  Unless directors are elected by written consent of stockholders in lieu of an annual meeting in accordance with the provisions of these Bylaws, applicable law and the Stockholders Agreement, an annual meeting of the stockholders shall be held for the purpose of electing directors and conducting such other proper business as may properly be brought before the meeting.  The date, time and place, if any, and/or the means of remote communication, of the annual meeting shall be determined by the Board of Directors.

(b)     PLACE.  The Board of Directors may designate any place, either within or without the State of Delaware, and/or by means of remote communication, as the place of meeting for any annual meeting or for any special meeting called by the Board of Directors or the holders of shares entitled to cast not less than a majority of the votes at the meeting.  If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal executive office of the Corporation.

(c)     SPECIAL MEETINGS.  Except as otherwise required by applicable law or provided in the Certificate of Incorporation, special meetings of stockholders for any purpose or purposes (including, without limitation, the filling of board vacancies and newly created directorships)  may be called only by the Chairman of the Board or the President, by the Board of Directors, or by the Secretary at the request in writing of stockholders holding shares representing not less than 20% of the voting power of the outstanding shares entitled to vote on the matter for which such meeting is to be called. The Secretary shall call such a meeting upon receiving such a written request.  The date, time and place, if any, and/or the means of remote communication, of any special meeting shall be determined by the Board of Directors or such stockholders, as applicable, and shall be stated in the Corporation's notice of the meeting.

(d)     NOTICE OR WAIVER OF NOTICE.  Whenever stockholders are required or permitted to take any action at a meeting, written or printed notice stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of special meetings, the purpose or purposes, of such meeting, shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.  All such notices shall be delivered, either personally, by mail, or by a form of electronic transmission consented to by the stockholder to whom the notice is given (including pursuant to the notice provisions of the Stockholders Agreement), by or at the direction of the Board, the President or the Secretary, and if mailed, such notice shall be deemed to be delivered when deposited in the United States mail, postage prepaid, addressed to the stockholder at his, her or its address as the same appears on the records of the Corporation or when delivered in accordance with the notice provisions of the Stockholders Agreement.  If given by electronic transmission, such notice shall be deemed to be delivered (a) if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice; (b) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice; (c) if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (1) such posting and (2) the giving of such separate notice; and (3) if by any other form of electronic transmission, when directed to the stockholder.  Any such consent shall be revocable by the stockholder by written

- 4-

notice to the Corporation.  Notwithstanding the foregoing, notice shall be validly delivered to any stockholder that is party to the Stockholders Agreement if such notice is delivered to such stockholder in accordance with the Stockholders Agreement, and each such stockholder shall be deemed to have consented thereto, which consent shall be irrevocable.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the General Corporation Law, the Certificate of Incorporation or these Bylaws shall be effective if given by a single written notice to stockholders who share an address and is consented to by the stockholders at that address to whom such notice is given.  Any stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation.

(e)    STOCKHOLDER LIST.  There shall be prepared and made, at least ten days before every meeting of stockholders, a complete list of the stockholders, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.  The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the stock ledger, the list required by this section or the books of the Corporation, or to vote at any meeting of stockholders.

(f)    CONDUCT OF MEETING.  Meetings of the stockholders shall be presided over by one of the following officers in the order of seniority and if present and acting:  the Chairman of the Board, if any, the Vice-Chairman of the Board, if any, the President, a Vice President, a chairman for the meeting chosen by the Board of Directors or, if none of the foregoing is in office and present and acting, by a chairman to be chosen by the stockholders.  The Secretary of the Corporation or, in such person's absence, an Assistant Secretary, shall act as secretary of every meeting, but if neither the Secretary nor an Assistant Secretary is present the chairman for the meeting shall appoint a secretary of the meeting.

(g)    PROXY REPRESENTATION.  Every stockholder may authorize another person or persons to act for such stockholder by proxy in all matters in which a stockholder is entitled to participate, whether by waiving notice of any meeting, voting or participating at a meeting, or expressing consent or dissent without a meeting.  Every proxy must be signed by the stockholder or by such person's attorney-in-fact.  No proxy shall be voted or acted upon after three years from its date unless such proxy provides for a longer period.  A duly executed proxy shall be irrevocable if it states that it is irrevocable and, if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power.  A proxy may be made irrevocable

- 5-

regardless of whether the interest with which it is coupled is an interest in the stock itself or an interest in the Corporation generally.

(h)     INSPECTORS AND JUDGES.  The Board of Directors, in advance of any meeting, may, but need not, appoint one or more inspectors of election or judges of the vote, as the case may be, to act at the meeting or any adjournment thereof.  If an inspector or inspectors or judge or judges are not appointed by the Board of Directors, the person presiding at the meeting may, but need not, appoint one or more inspectors or judges.  In case any person who may be appointed as an inspector or judge fails to appear or act, the vacancy may be filled by appointment made by the person presiding thereat. Each inspector or judge, if any, before entering upon the discharge of such person's duties, shall take and sign an oath faithfully to execute the duties of inspector or judge at such meeting with strict impartiality and according to the best of his ability.  The inspectors or judges, if any, shall determine the number of shares of stock outstanding and the voting power of each, the shares of stock represented at the meeting, the existence of a quorum and the validity and effect of proxies, receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the result, and do such other acts as are proper to conduct the election or vote with fairness to all stockholders.  On request of the person presiding at the meeting, the inspector or inspectors or judge or judges, if any, shall make a report in writing of any challenge, question or matter determined by such person or persons and execute a certificate of any fact so found.

(i)     QUORUM.  Except as the General Corporation Law, these ~~By-Laws~~**Bylaws** or the Stockholders Agreement may otherwise provide, the holders of a majority of the outstanding shares of stock entitled to vote shall constitute a quorum at a meeting of stockholders for the transaction of any business.  The stockholders present may adjourn the meeting despite the absence of a quorum.  When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholders.

(j)     VOTING.  Each holder of common stock ("Common Stock") of the Corporation shall be entitled to one (1) vote, in person or by proxy, for each share of Common Stock entitled to vote held by such stockholder.  Each holder of Series A Preferred Stock or Series B Preferred Stock (collectively, "Preferred Stock") of the Corporation shall be entitled to twenty (20) votes, in person or by proxy, for each share of such Preferred Stock entitled to vote held by such stockholder.  Any action shall be authorized by a majority of the votes cast except where the Stockholders Agreement, the Certificate of Incorporation or the General Corporation Law prescribes a higher percentage of votes and/or a different exercise of voting power. When a quorum is present, the affirmative vote of the majority of the voting power of the shares cast by stockholders present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders, unless the question is one upon which by express provisions of an applicable law, the Stockholders Agreement, these Bylaws or the Certificate of Incorporation a different vote is required, in which case such express provision shall govern and control the decision of such question.  The Corporation shall not directly or indirectly vote any shares of its own stock; provided, that the Corporation may vote shares that it

NY 76391205v3

holds in a fiduciary capacity to the extent permitted by law. Voting by ballot shall not be required for corporate action except as otherwise provided by the General Corporation Law.

7.    STOCKHOLDER ACTION WITHOUT MEETINGS.

Any action required to be taken, or any action which may be taken, at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of the outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

8.    ACTION BY FACSIMILE, EMAIL OR OTHER ELECTRONIC TRANSMISSION CONSENT.

A facsimile, email or other electronic transmission by a stockholder or proxyholder (or by any person authorized to act on such person's behalf, including pursuant to the Stockholders Agreement) of a proxy or a written consent to an action to be taken (including the delivery of such a document in the .pdf, .tif, .gif, .peg or similar format attached to an email message) shall be deemed to be written, signed, dated and delivered to the Corporation for the purposes of this ARTICLE II; provided that any such facsimile, email or other electronic transmission sets forth or is delivered with information from which the Corporation can determine (or the Corporation is otherwise aware) (A) that the facsimile, email or other electronic transmission was transmitted by the stockholder or proxyholder or by a person authorized to act for the stockholder or proxyholder and (B) the date on which such stockholder or proxyholder or authorized person transmitted such facsimile, email or other electronic transmission. The date on which such facsimile, email or other electronic transmission is transmitted shall be deemed to be the date on which such consent or proxy was signed. Any such facsimile, email or other electronic transmission of a consent or proxy shall be treated in all respects as an original executed consent or proxy and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of the Board, the President or the Secretary of the Corporation, each stockholder, proxyholder or other authorized person who delivered a consent or proxy by facsimile, email or other electronic transmission shall re-execute the original form thereof and deliver such original to the Corporation at its registered office in the State of Delaware, its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded; provided that no such request shall invalidate, or affect the date of, the proxy or written consent as initially transmitted.

- 7-

ARTICLE III

DIRECTORS

1.    FUNCTIONS AND DEFINITION.

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by applicable law, these Bylaws or the Certificate of Incorporation required to be exercised or done by the stockholders or are not otherwise restricted by the terms of the Certificate of Incorporation or the Stockholders Agreement.  The use of the phrase "whole Board" herein refers to the total number of Directors which the Corporation would have if there were no vacancies.

2.    QUALIFICATIONS AND NUMBER.

A Director need not be a stockholder, a citizen of the United States, or a resident of the State of Delaware.  The initial Board of Directors shall consist of five (5) persons. Thereafter the number of Directors constituting the whole board shall be established from time to time by resolutiona vote of two-thirds of the Board of Directors then in office and approved by a majority vote of the voting power of shares of stock then outstanding in accordance with the Stockholders Agreement, provided that, the Board of Directors shall at all times consist of at least five (5) persons and no more than seven (7) persons.

3.    ELECTION AND TERM.

Directors shall be elected in accordance with the Stockholders Agreement.  No decrease in the number of directors shall shorten the term of any incumbent director, unless such director is otherwise removed from the Board.  Each director elected shall hold office until a successor is duly elected and qualified or until his or her earlier death, resignation or removal as provided herein or in the Stockholders Agreement.

Except as otherwise provided in the Certificate of Incorporation or the Stockholders Agreement, the following shall apply to the election and term of the Board of Directors:

The Board of Directors shall be elected by majority vote of the stockholders and shall hold office until their successors have been elected and qualified or until their earlier resignation or removal.  Any Director may resign at any time upon written notice to the Corporation.  Thereafter, Directors who are elected at an annual meeting of stockholders, and Directors who are elected in the interim to fill vacancies and newly created Directorships, shall hold office until the next annual meeting of stockholders and until their successors have been elected and qualified or until their earlier resignation or removal.  In the interim between annual meetings of stockholders or of special meetings of stockholders called for the election of Directors and/or for the removal of one or more Directors and for

- 8-

NY 76391205v3

the filling of any vacancies in the Board of Directors, including vacancies resulting from the removal of Directors for cause or without cause, any vacancy in the Board of Directors may be filled by the vote of a majority of the remaining Directors then in office, although less than a quorum, or by the sole remaining Director.

4.    DIRECTOR NOMINATIONS.

Except for the Directors which are nominated pursuant to the terms set forth in the Stockholders Agreement and subject to the terms of the Stockholders Agreement, Directors may be nominated by action of the Board or by the proposal of a stockholder, if such proposal by a stockholder satisfies the following conditions:

(A)  The stockholder proposes the nomination for an election to be held at an annual meeting of stockholders or at a special meeting of stockholders called for such purpose;

(B)  The stockholder holds at least ten percent (10%) of the total voting power of the outstanding stock of the Corporation and is a record holder on the record date for determining stockholders entitled to receive notice of and to vote at such annual meeting or special meeting (a "Proposing Stockholder");

(C)  The Proposing Stockholder delivers written notice identifying such nominees to the Corporation's Secretary at the Corporation's principal place of business at least seven (7) business days prior to the meeting by (i) personal delivery, (ii) facsimile transmission, (iii) registered or certified mail, postage prepaid, return receipt requested, or (iv) nationally recognized overnight or other express courier service.  All notices shall be effective and shall be deemed delivered (a) if by personal delivery, on the date of delivery if delivered during normal business hours of the Corporation, and if not delivered during such normal business hours, on the next business day following delivery, (b) if by facsimile transmission, on the next business day following dispatch of such facsimile, (c) if by courier service, on the second business day after dispatch of a notice addressed to the Corporation, and (d) if by mail, on the fifth day after deposit in the mail, addressed to the Corporation;

(D)  The Proposing Stockholder's notice includes: (i) the name and address of the Proposing Stockholder, as they appear on the Corporation's books, and the telephone number at which the Proposing Stockholder may be contacted during normal business hours through the time for which the meeting is scheduled, (ii) the class and number of shares of Common Stock which are owned by the Proposing Stockholder, and (iii) the names and qualifications of the Proposing Stockholder's nominees; and

(E)  The Proposing Stockholder must also provide such other information as any officer of the Corporation shall reasonably deem relevant with respect to the nominees within such time limits as any officer of the Corporation shall reasonably impose for such information.

- 9-

**5.**   **4.** MEETINGS.

(a)   TIME.  The Board of Directors will meet at least once each quarter. In addition, the Chairman of the Board or any two (2) Directors may call a special meeting at any time.

(b)   PLACE.  The Board of Directors may designate any place, either within or without the State of Delaware, and/or by means of remote communication, as the place of meeting both annual and special.  If no designation is made, or if a special meeting is otherwise called, the place of meeting shall be the principal executive office of the Corporation.

(c)   CALL.  No call shall be required for regular meetings for which the time and place have been fixed.

(d)   NOTICE OR ACTUAL OR CONSTRUCTIVE WAIVER.  No notice shall be required for regular meetings for which the time and place have been fixed.  Written, oral or any other mode of notice of the time and place shall be given for special meetings at least twenty-four hours prior to the meeting; notice may be given by telephone, facsimile or electronic transmission (in which case it is effective when given) or by mail (in which case it is effective seventy-two hours after mailing by prepaid first class mail).  The notice of any meeting need not specify the purpose of the meeting.  Any requirement of furnishing a notice shall be waived by any Director who signs a written waiver of such notice before or after the time stated therein. Attendance of a Director at a meeting of the Board shall constitute a waiver of notice of such meeting, except when the Director attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

(e)   QUORUM AND ACTION.  Except as otherwise provided in the Stockholders Agreement, a majority of the whole Board shall constitute a quorum except when a vacancy or vacancies prevents such majority, whereupon a majority of the Directors in office shall constitute a quorum, provided that such majority shall constitute at least one-third (1/3) of the whole Board. Any Director may participate in a meeting of the Board by means of a conference telephone or similar communications equipment by means of which all Directors participating in the meeting can hear each other, and such participation in a meeting of the Board shall constitute presence in person at such meeting.  A majority of the Directors present, whether or not a quorum is present, may adjourn a meeting to another time and place. Except as herein otherwise provided, and except as otherwise provided by the General Corporation Law or the Stockholders Agreement, the act of the Board shall be the act by vote of a majority of the Directors present at a meeting, a quorum being present.  The quorum and voting provisions herein stated shall not be construed as conflicting with any provisions of the General Corporation Law and these **By-Laws**Bylaws which govern a meeting of Directors held to fill vacancies and newly created Directorships in the Board.

(f)   CHAIRMAN OF THE MEETING.  The Chairman of the Board, if any and if present and acting, shall preside at all meetings.  Otherwise, the Vice-Chairman of the Board, if

-10-

NY 76391205v3

any and if present and acting, or the President, if present and acting, or any other Director chosen by the Board, shall preside.

**6.**    ~~5.~~ REMOVAL OF DIRECTORS.

Directors may be removed in the manner provided in the Stockholders Agreement.

**7.**    ~~6.~~ COMMITTEES.

The Board of Directors will establish an Audit Committee and a Compensation Committee which shall have and may exercise the powers of the Board of Directors with respect to the powers delegated to it, and may authorize the seal of the Corporation to be affixed to all papers which may require it.  The Board of Directors ~~and~~ may also establish, by resolution passed by a majority of the whole Board, one or more other Board committees, provided that such committees' authority will be limited to making recommendations to the full Board of Directors for their approval. Each committee shall consist of one or more of the Directors of the Corporation.  The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of any member of any such committee or committees, the members thereof present at any meeting and not disqualified from voting, whether or not they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

**8.**    ~~7.~~ ACTION IN WRITING.

Any action required or permitted to be taken at any meeting of the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee.

**9.**    ~~8.~~ COMPENSATION.

Directors not employed by the Company will receive market rate compensation by the Corporation. All Directors will be reimbursed for reasonable expenses.

ARTICLE IV

OFFICERS

1.    EXECUTIVE OFFICERS.

The Board of Directors shall elect a President/Chief Executive Officer and may elect or appoint a Chairman of the Board of Directors, one or more Vice Presidents (which may be

-11-

NY 76391205v3

denominated with additional descriptive titles), a Secretary, one or more Assistant Secretaries, a Treasurer, one or more Assistant Treasurers and such other officers as it may determine. Any number of offices may be held by the same person.

2.    ELECTION; TERM OF OFFICE.

The officers of the Corporation shall be elected or appointed by the Board from time to time in its discretion.   Subject to the provisions of the Stockholders Agreement, vacancies may be filled or new offices created and filled at any meeting of the Board. Each officer shall hold office until a successor is duly elected or appointed and qualified or until his or her earlier death, resignation or removal as hereinafter provided.

3.    REMOVAL.

Any officer or agent may be removed with or without cause, at any time by the Board, but such removal shall be without prejudice to the contract rights, if any, of the person so removed and shall be in compliance with the Stockholders Agreement.

4.    COMPENSATION.

Compensation of all officers shall be fixed by the Board or a committee thereof, and no officer shall be prevented from receiving such compensation by virtue of his or her also being a director of the Corporation.

5.    AUTHORITY AND DUTIES.

All officers, as between themselves and the Corporation, shall have such authority and perform such duties in the management of the Corporation as may be provided in these By-LawsBylaws, or, to the extent not so provided, by the Board of Directors.

6.    THE CHAIRMAN OF THE BOARD OF DIRECTORS.

The Chairman of the Board of Directors, if present and acting, shall preside at all meetings of the Board of Directors, otherwise, the President, if present, shall preside, or if the President does not so preside, any other Director chosen by the Board shall preside.

7.    THE CHIEF EXECUTIVE OFFICER/ PRESIDENT.

The President shall be the Chief Executive Officer of the Corporation; shall preside at all meetings of the stockholders and the Board at which he is present and at which the Chairman of the Board is not present; subject to the powers of the Board, shall have general charge of the

-12-

business, affairs and property of the Corporation, and control over its officers, agents and employees; and shall see that all orders and resolutions of the Board are carried into effect. The President shall execute bonds, mortgages and other contracts requiring a seal, under the seal of the Corporation, except where required or permitted by law to be otherwise signed and executed and except where the signing and execution thereof shall be expressly delegated by the Board to some other officer or agent of the Corporation. The President shall have such other powers and perform such other duties as may be prescribed by the Board or as may be provided in these Bylaws.

8. VICE PRESIDENTS.

Any Vice President that may have been appointed, in the absence or disability of the President, shall perform the duties and exercise the powers of the President, in the order of their seniority, and shall perform such other duties as the Board of Directors shall prescribe.

9. THE SECRETARY.

The Secretary shall keep in safe custody the seal of the Corporation and affix it to any instrument when authorized by the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors. The Secretary (or in such officer's absence, an Assistant Secretary, but if neither is present another person selected by the Chairman for the meeting) shall have the duty to record the proceedings of the meetings of the stockholders and Directors in a book to be kept for that purpose.

10. THE TREASURER.

The Treasurer shall have the care and custody of the corporate funds, and other valuable effects, including securities, and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors. The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and Directors, at the regular meetings of the Board, or whenever they may require it, an account of all transactions as Treasurer and of the financial condition of the Corporation. If required by the Board of Directors, the Treasurer shall give the Corporation a bond for such term, in such sum and with such surety or sureties as shall be satisfactory to the Board for the faithful performance of the duties of such office and for the restoration to the Corporation, in case of such person's death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in such person's possession or under such person's control belonging to the Corporation.

-13-

## ARTICLE V

## CORPORATE SEAL
## AND
## CORPORATE BOOKS

The corporate seal shall be in such form as the Board of Directors shall prescribe.  The books of the Corporation may be kept within or without the State of Delaware, at such place or places as the Board of Directors may, from time to time, determine.

## ARTICLE VI

## FISCAL YEAR

The fiscal year of the Corporation shall be fixed, and shall be subject to change, by the Board of Directors.

## ARTICLE VII

## INDEMNITY

(a)    Without limiting the provisions of Article [_____] of the ~~Corporation's Amended and Restated~~ Certificate of Incorporation, any person who was or is a party or threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) with respect to any act or omission solely occurring from and after November [__], 2016, by reason of the fact that he or she is or was a Director, officer, employee or agent of the Corporation from and after November [___], 2016, or is or was serving at the request of the Corporation from and after November [___], 2016 as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including employee benefit plans) (hereinafter an "indemnitee"), shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification than permitted prior thereto), against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such indemnitee in connection with such action, suit or proceeding, if the indemnitee acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe such conduct was unlawful. The termination of the proceeding, whether by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal action or proceeding, had reasonable cause to believe such conduct was unlawful.

-14-

NY 76391205v3

(b)      Any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor with respect to any act or omission solely occurring from and after November [___], 2016, by reason of the fact that he or she is or was a Director, officer, employee or agent of the Corporation from and after November [___], 2016, or is or was serving at the request of the Corporation from and after November [___], 2016, as a director, officer, employee or agent of another Corporation, partnership, joint venture, trust or other enterprise (including employee benefit plans), shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification than permitted prior thereto), against expenses (including attorneys' fees) actually and reasonably incurred by him or her in connection with the defense or settlement of such action or suit if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court in which such suit or action was brought, shall determine, upon application, that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

(c)      All reasonable expenses incurred by or on behalf of the indemnitee in connection with any suit, action or proceeding, may be advanced to the indemnitee by the Corporation.

(d)      The rights to indemnification and to advancement of expenses conferred in this article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Certificate of Incorporation, a ~~By-Law~~**Bylaw** of the Corporation, agreement, vote of stockholders or disinterested Directors or otherwise.

(e)      The indemnification and advancement of expenses provided by this article shall continue as to a person who has ceased to be a Director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

(f)      In addition to the indemnification rights of directors, officers, employees or agents of the Corporation, the Corporation shall have the power to, in the sole discretion of the Board, indemnify any other person made a party to any action, suit or proceeding who the Corporation may indemnify under Section 145 of the General Corporation Law.

(g)      The provisions of this ARTICLE VII shall be deemed to be contract rights based upon good and valuable consideration between the Corporation and each director and officer or other person entitled to indemnification who serves in any such capacity at any time while this ARTICLE VII and the relevant provisions of the General Corporation Law or other applicable law are in effect, and such person may bring suit as if the provisions of this ARTICLE VII were set forth in a separate written contract between such person and the Corporation. Such contract right shall vest for each director and officer or other person entitled to indemnification at the time such person is elected or appointed to such position or is requested to serve in the capacity that

NY 76391205v3

entitled such person to indemnification under this ARTICLE VII, and no repeal or modification of this ARTICLE VII or any such law shall affect any such vested rights or obligations of any current or former director or officer  or other person with respect to any state of facts or proceeding regardless of when occurring.

(h)    For purposes of this ARTICLE VII, references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger that, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is or was or agreed to be a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, limited liability company, trust, association, employee benefit plan or other enterprise, shall stand in the same position under this ARTICLE VII with respect to the resulting or surviving corporation as he or she would have with respect to such constituent corporation if its separate existence had continued.

ARTICLE VIII

GENERAL PROVISIONS

1.    DIVIDENDS.

Dividends upon the capital stock of the corporation, subject to the provisions of the Certificate of Incorporation, if any, may be declared by the Board at any regular or special meeting, pursuant to law and in accordance with the Stockholders Agreement.  Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the Certificate of Incorporation and the Stockholders Agreement.  Before payment of any dividend, there may be set aside out of any funds of the Corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or any other purpose and the directors may modify or abolish any such reserve in the manner in which it was created.

2.    CHECKS, DRAFTS AND ORDERS.

All checks, drafts, or other orders for the payment of money by or to the Corporation and all notes and other evidences of indebtedness issued in the name of the Corporation shall be signed by such officer or officers, agent or agents of the Corporation, and in such manner, as shall be determined by resolution of the Board or a duly authorized committee thereof.

3.    CONTRACTS.

-16-

NY 76391205v3

Subject to the Stockholders Agreement, the Board may authorize any officer or officers, or any agent or agents, of the Corporation to enter into any contract or to execute and deliver any instrument in the name of and on behalf of the Corporation, and such authority may be general or confined to specific instances.

4.    LOANS.

Subject to the Stockholders Agreement, the Corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the Corporation or of its subsidiary, including any officer or employee who is a director of the Corporation or its subsidiary, whenever, in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the Corporation.  The loan, guaranty or other assistance may be with or without interest, and may be unsecured or secured in such manner as the Board shall approve, including, without limitation, a pledge of shares of stock of the Corporation.  Nothing in this Section 4 shall be deemed to deny, limit or restrict the powers of guaranty or warranty of the Corporation at common law or under any statute.

5.    VOTING SECURITIES OWNED BY THE CORPORATION.

Voting securities in any other corporation or other entity  held by the Corporation shall be voted as directed by the Chief Executive Officer or President, unless the Board specifically confers authority to vote with respect thereto, which authority may be general or confined to specific instances, upon some other person or officer.  Any person authorized to vote securities shall have the power to appoint proxies, with general power of substitution.

6.    INSPECTION OF BOOKS AND RECORDS.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the Corporation's stock ledger and a list of its stockholders.  A proper purpose shall mean any purpose reasonably related to such person's interest as a stockholder.  In every instance where an attorney or other agent shall be the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent to so act on behalf of the stockholder. The demand under oath shall be directed to the Corporation at its registered office in the State of Delaware or at its principal place of business.

7.    EXCLUSIVE JURISDICTION.

Unless otherwise waived by resolution of the Board, the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary

-17-

duty owed by any director or officer of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim against the Corporation arising pursuant to any provision of the General Corporation Law or the ~~Corporation's certificate~~**Certificate** of Incorporation or Bylaws or (iv) any action asserting a claim against the Corporation governed by the internal affairs doctrine, except, as to each of (i) through (iv), for any claim for which the Court of Chancery of the State of Delaware determines there is an indispensable party not subject to its jurisdiction (and such party does not consent to such jurisdiction within ten (10) days of such determination).

8.    SECTION HEADINGS.

Section headings in these Bylaws are for convenience of reference only and shall not be given any substantive effect in limiting or otherwise construing any provision herein.

9.    INCONSISTENT PROVISIONS.

In the event that any provision of these Bylaws is or becomes inconsistent with any provision of the Certificate of Incorporation, the General Corporation Law or any other applicable law, the provision of these Bylaws shall not be given any effect to the extent of such inconsistency but shall otherwise be given full force and effect.

ARTICLE IX

AMENDMENTS

~~These~~**So long as the Stockholders Agreement is in effect, these** Bylaws may be amended in accordance with the provisions of the Stockholders Agreement.  **At any time the Stockholders Agreement is not in effect, these Bylaws may be amended by the vote of a majority of the voting power of the shares of stock of the Corporation then outstanding.**

NY 76391205v3

Document comparison by Workshare Compare on Friday, November 04, 2016 9:20:41 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\2OLD (76391205_3) By-Laws - Holdco, Inc..DOC |
| Description | 2OLD (76391205_3) By-Laws - Holdco, Inc. |
| Document 2 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\2 (76391205_4) By-Laws - Holdco, Inc. 11-4.doc |
| Description | 2 (76391205_4) By-Laws - Holdco, Inc. 11-4 |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| **Deletion** | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 23 |
| Deletions | 23 |
| Moved from | 0 |

| Moved to | 0 |
|---|---|
| Style change | 0 |
| Format changed | 0 |
| Total changes | 46 |

DRAFT

## [DRAFT 10/26/2016]AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### SFX ENTERTAINMENT, INC.

SFX ENTERTAINMENT, INC., a corporation organized and existing under the laws of the State of Delaware, hereby certifies as follows:

The name of the corporation is SFX ENTERTAINMENT, INC. (the "Corporation"). The Corporation filed its original Certificate of Incorporation with the Secretary of State of the State of Delaware on June 5, 2012 (the "Current Certificate of Incorporation"). This Amended and Restated Certificate of Incorporation (as amended, amended and restated, supplemented or otherwise modified from time to time, this "Certificate of Incorporation") was duly adopted, without the need for approval of the Board of Directors or the stockholders of the Corporation, in accordance with §§ 242, 245 and 303 of the Delaware General Corporation Law (the "DGCL") and in accordance with a plan of reorganization of the Corporation (the "Plan") approved by order dated November [___], 2016 of the United States Bankruptcy Court for the District of Delaware in *In re: SFX Entertainment, Inc.., et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended (the "Bankruptcy Code"), which Plan is expected to become effective on or about November [___], 2016 (the date upon which the Plan becomes effective, the "Plan Effective Date").

The Current Certificate of Incorporation of the Corporation is hereby amended and restated to read in its entirety as follows:

**FIRST**:  The name of this Corporation (hereinafter called the "Corporation") is SFX Entertainment, Inc.

**SECOND**:  The Corporation's registered office in the State of Delaware is located at [874 Walker Road, Suite C, in the City of Dover, County of Kent, 19904].19904.  The name of its registered agent at such address is [United Corporate Services, Inc.]

**THIRD**:  The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the DGCL.

**FOURTH**:  The total number of shares of stock which the Corporation shall have authority to issue is _____ (_____) shares, all of which are of a par value of _____ ($.__) each, and all of which are of one class and are designated as Common Stock. Notwithstanding anything herein to the contrary, the Corporation shall not issue non-voting equity securities of any class, series or other designation to the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code; *provided*, *however*, that the foregoing restriction (i) shall have no further force and effect beyond that required under Section 1123(a)(6) of the Bankruptcy Code, (ii) shall only have such force and effect to the extent and for so long as such Section

1123(a)(6) is in effect and applies to the Corporation and (iii) may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

**FIFTH**:  Whenever a compromise or arrangement is proposed between this Corporation and its creditors or any class of them and/or between this Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this Corporation under the provisions of Section 291 of the DGCL or on the application of trustees in dissolution or of any receiver or receivers appointed for this Corporation under the provisions of Section 279 of the DGCL, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this Corporation, as the case may be, and also on this Corporation.

**SIXTH**:  The personal liability of the persons serving as directors of the Corporation for acts or omissions solely occurring from and after the Plan Effective Date is hereby eliminated to the fullest extent permitted by the provisions of paragraph (7) of subsection (b) of  Section 102 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented.  Neither the amendment or repeal of this Article, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article shall adversely affect any right or protection of a director of the Corporation existing at the time of such amendment, repeal or adoption.

**SEVENTH**:  The Corporation shall, to the fullest extent permitted by Section 145 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented, or by any successor thereto, indemnify any and all persons serving in the capacity of an officer, director, employee or agent of the Corporation from and after the Plan Effective Date, or serving at the request of the Corporation from and after the Plan Effective Date as an officer, director, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, from and against any and all of the expenses, liabilities or other matters referred to in or covered by said section, in each case, only to the extent such expenses, liabilities or other matters arise from acts or omissions solely occurring from and after the Plan Effective Date.  The Corporation shall advance expenses for the benefit of any such indemnified person to the fullest extent permitted by said section.  Such right to indemnification and advancement of expenses shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such a person.  The indemnification and advancement of expenses provided for herein shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any By-Law, agreement, vote of stockholders or disinterested directors or otherwise.

2

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

NY 76389520v3

IN WITNESS WHEREOF, the Corporation has caused this Amended and Restated Certificate of Incorporation, which amends and restates the Corporation's Current Certificate of Incorporation, to be made, executed and acknowledged by its duly authorized officer this [___] day of November, 2016, as directed by and provided for in the Order of the United States Bankruptcy Court for the District of Delaware, dated [_____], 2016, confirming the Plan under Chapter 11 of the Bankruptcy Code.

_____
Name:
Title:

Attest:

_____
Secretary

Document comparison by Workshare Compare on Friday, November 04, 2016
7:48:28 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\3 (76389520_3) Reorganized SFXE - A&R Certificate of Incorporation.DOC |
| Description | 3 (76389520_3) Reorganized SFXE - A&R Certificate of Incorporation |
| Document 2 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\(76389520_4) Reorganized SFXE - A&R Certificate of Incorporation.DOC |
| Description | (76389520_4) Reorganized SFXE - A&R Certificate of Incorporation |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |

| Insertions | 2 |
|---|---|
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 13 |

DRAFT 10/26/16

**AMENDED AND RESTATED BYLAWS**

**OF**

**SFX ENTERTAINMENT, INC.**

(A Delaware corporation)
(As amended November [__], 2016)

These Amended and Restated Bylaws (the "Bylaws") are subject to, and governed by, the General Corporation Law of the State of Delaware (the "General Corporation Law") and the Amended and Restated Certificate of Incorporation of SFX Entertainment, Inc. **(the "Certificate of Incorporation")**, a Delaware corporation (the "Corporation"), **and the Stockholders Agreement dated as of November [___], 2016 (the "Stockholders Agreement") among [Holdco, Inc.], a Delaware corporation and the sole owner of the Corporation (["Holdco"]), and the stockholders of [Holdco].**

ARTICLE I

OFFICES

1.    REGISTERED OFFICE.

The registered office of the Corporation in the State of Delaware shall be at [874 Walker Road, Suite C, in the city of Dover, County of Kent, Delaware 19904].19904.  The registered agent of the Corporation at such address shall be [United Corporate Services, Inc.]

2.    OTHER OFFICES.

The Corporation may also have offices at such other places, within or without the State of Delaware, as the Board of Directors may from time to time designate or the business of the Corporation may require.

ARTICLE II

STOCKHOLDERS

1.    CERTIFICATES REPRESENTING STOCK.

(a)    The shares of stock of the Corporation shall be represented by certificates; provided that the Board of Directors may provide by resolution or resolutions that some or all of any class or series shall be uncertificated shares that may be evidenced by a book-entry system

NY 76391201v3

maintained by the registrar of such stock. If shares are represented by certificates, such certificates shall be in the form, other than bearer form, approved by the Board of Directors. The certificates representing shares of stock of each class shall be signed by, or in the name of, the Corporation by the Chairman or Vice-Chairman of the Board of Directors, if any, or by the President or a Vice-President and by the Treasurer or an Assistant Treasurer or the Secretary or an Assistant Secretary of the Corporation.  If such certificate is countersigned by a transfer agent other than the Corporation or its employee or by a registrar other than the Corporation or its employee, any other signature on the certificate may be a facsimile.  In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the date of issue.

(b)      Whenever the Corporation shall be authorized to issue more than one class of stock or more than one series of any class of stock, and whenever the Corporation shall issue any shares of its stock as partly paid stock, the certificates representing shares of any such class or series or of any such partly paid stock shall set forth thereon the statements prescribed by the General Corporation Law.  Any restrictions on the transfer or registration of transfer of any shares of stock of any class or series shall be noted conspicuously on the certificate representing such shares.

(c)      The Corporation may issue a new certificate of stock in place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Board of Directors may require the owner of any lost, stolen or destroyed certificate, or such person's legal representative, to give the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of any such new certificate.

2.      FRACTIONAL SHARE INTERESTS.

The Corporation may, but shall not be required to, issue fractions of a share.

3.      STOCK TRANSFERS.

Upon compliance with provisions restricting the transfer or registration of transfer of shares of stock, if any, transfers or registration of transfer of shares of stock of the Corporation shall be made only on the stock ledger of the Corporation by the registered holder thereof, or by such person's attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the Corporation or with a transfer agent or a registrar, if any, and on surrender of the certificate or certificates for such shares of stock properly endorsed and the payment of all taxes due thereon.

4.      RECORD DATE FOR STOCKHOLDERS.

NY 76391201v3

(a)    In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty nor less than ten days before the date of such meeting.  If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

(b)    In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty days prior to such action.  If no record date has been fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

5.    MEANING OF CERTAIN TERMS.

As used herein in respect of the right to notice of a meeting of stockholders or a waiver thereof or to participate or vote thereat or to consent or dissent in writing in lieu of a meeting, as the case may be, the term "share" or "shares" or "share of stock" or "shares of stock" or "stockholder" or "stockholders" refers to an outstanding share or shares of stock and to a holder or holders of record of outstanding shares of stock when the Corporation is authorized to issue only one class of shares of stock, and said reference is also intended to include any outstanding share or shares of stock and any holder or holders of record of outstanding shares of stock of any class upon which or upon whom the Certificate of Incorporation confers such rights where there are two or more classes or series of shares of stock or upon which or upon whom the General Corporation Law confers such rights notwithstanding that the Certificate of Incorporation may provide for more than one class or series of shares of stock, one or more of which are limited or denied such rights thereunder; provided, however, that no such right shall vest in the event of an increase or a decrease in the authorized number of shares of stock of any class or series which is otherwise denied voting rights under the provisions of the Certificate of Incorporation, including any preferred stock which is denied voting rights under the provisions of the resolution or resolutions adopted by the Board of Directors with respect to the issuance thereof.

6.    STOCKHOLDER MEETINGS.

NY 76391201v3

(a)     TIME.  The annual meeting shall be held on the date and at the time fixed, from time to time, by the Board of Directors.  A special meeting shall be held on the date and at the time fixed by the Board of Directors.

(b)     PLACE.  Annual meetings and special meetings shall be held at such place, within or without the State of Delaware, as the Board of Directors may, from time to time, fix. Whenever the Board of Directors shall fail to fix such place, the meeting shall be held at the registered office of the Corporation in the State of Delaware.

(c)     CALL.  Annual meetings and special meetings may be called by the Board of Directors or by any officer instructed by the Board of Directors to call the meeting.

(d)     NOTICE OR WAIVER OF NOTICE.  Written notice of all meetings shall be given, stating the place, date and hour of the meeting.  The notice of an annual meeting shall state that the meeting is called for the election of Directors and for the transaction of other business which may properly come before the meeting, and shall (if any other action which could be taken at a special meeting is to be taken at such annual meeting), state such other action or actions as are known at the time of such notice.  The notice of a special meeting shall in all instances state the purpose or purposes for which the meeting is called.  If any action is proposed to be taken which would, if taken, entitle stockholders to receive payment for their shares of stock, the notice shall include a statement of that purpose and to that effect.  Except as otherwise provided by the General Corporation Law, a copy of the notice of any meeting shall be given, personally or by mail, not less than ten days nor more than sixty days before the date of the meeting, unless the lapse of the prescribed period of time shall have been waived, and directed to each stockholder at such person's address as it appears on the records of the Corporation.  Notice by mail shall be deemed to be given when deposited, with postage thereon prepaid, in the United States mail.  If a meeting is adjourned to another time, not more than thirty days hence, and/or to another place, and if an announcement of the adjourned time and place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting unless the Board of Directors, after adjournment, fixes a new record date for the adjourned meeting.  Notice need not be given to any stockholder who submits a written waiver of notice before or after the time stated therein. Attendance of a person at a meeting of stockholders shall constitute a waiver of notice of such meeting, except when the stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice.

(e)     STOCKHOLDER LIST.  There shall be prepared and made, at least ten days before every meeting of stockholders, a complete list of the stockholders, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten days prior to the meeting either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or if not so specified, at the place where the meeting is to be held.  The list shall also be produced and kept at the time and

NY 76391201v3

place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.  The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the stock ledger, the list required by this section or the books of the Corporation, or to vote at any meeting of stockholders.

(f)     CONDUCT OF MEETING.  Meetings of the stockholders shall be presided over by one of the following officers in the order of seniority and if present and acting:  the Chairman of the Board, if any, the Vice-Chairman of the Board, if any, the President, a Vice President, a chairman for the meeting chosen by the Board of Directors or, if none of the foregoing is in office and present and acting, by a chairman to be chosen by the stockholders.  The Secretary of the Corporation or, in such person's absence, an Assistant Secretary, shall act as secretary of every meeting, but if neither the Secretary nor an Assistant Secretary is present the chairman for the meeting shall appoint a secretary of the meeting.

(g)     PROXY REPRESENTATION.  Every stockholder may authorize another person or persons to act for such stockholder by proxy in all matters in which a stockholder is entitled to participate, whether by waiving notice of any meeting, voting or participating at a meeting, or expressing consent or dissent without a meeting.  Every proxy must be signed by the stockholder or by such person's attorney-in-fact.  No proxy shall be voted or acted upon after three years from its date unless such proxy provides for a longer period.  A duly executed proxy shall be irrevocable if it states that it is irrevocable and, if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power.  A proxy may be made irrevocable regardless of whether the interest with which it is coupled is an interest in the stock itself or an interest in the Corporation generally.

(h)     INSPECTORS AND JUDGES.  The Board of Directors, in advance of any meeting, may, but need not, appoint one or more inspectors of election or judges of the vote, as the case may be, to act at the meeting or any adjournment thereof.  If an inspector or inspectors or judge or judges are not appointed by the Board of Directors, the person presiding at the meeting may, but need not, appoint one or more inspectors or judges.  In case any person who may be appointed as an inspector or judge fails to appear or act, the vacancy may be filled by appointment made by the person presiding threat. Each inspector or judge, if any, before entering upon the discharge of such person's duties, shall take and sign an oath faithfully to execute the duties of inspector or judge at such meeting with strict impartiality and according to the best of his ability.  The inspectors or judges, if any, shall determine the number of shares of stock outstanding and the voting power of each, the shares of stock represented at the meeting, the existence of a quorum and the validity and effect of proxies, receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the result, and do such other acts as are proper to conduct the election or vote with fairness to all stockholders.  On request of the person presiding at the meeting, the inspector or inspectors or judge or judges, if any, shall make a report in writing of any challenge, question or matter determined by such person or persons and execute a certificate of any fact so found.

- 5-

NY 76391201v3

(i)      QUORUM.  Except as the General Corporation Law or these ~~By-Laws~~**Bylaws** may otherwise provide, the holders of a majority of the outstanding shares of stock entitled to vote shall constitute a quorum at a meeting of stockholders for the transaction of any business. The stockholders present may adjourn the meeting despite the absence of a quorum.  When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholders.

(j)      VOTING.  Each stockholder entitled to vote in accordance with the terms of the Certificate of Incorporation and of these ~~By-Laws~~**Bylaws**, or, with respect to the issuance of preferred stock, in accordance with the terms of a resolution or resolutions of the Board of Directors, shall be entitled to one vote, in person or by proxy, for each share of stock entitled to vote held by such stockholder.  In the election of Directors, a plurality of the votes present at the meeting shall elect.  Any other action shall be authorized by a majority of the votes cast except where the Certificate of Incorporation or the General Corporation Law prescribes a different percentage of votes and/or a different exercise of voting power.

Voting by ballot shall not be required for corporate action except as otherwise provided by the General Corporation Law.

7.      STOCKHOLDER ACTION WITHOUT MEETINGS.

Any action required to be taken, or any action which may be taken, at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of the outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

8.      ACTION BY FACSIMILE, EMAIL OR OTHER ELECTRONIC TRANSMISSION CONSENT.

A facsimile, email or other electronic transmission by a stockholder or proxyholder (or by any person authorized to act on such person's behalf) of a proxy or a written consent to an action to be taken (including the delivery of such a document in the .pdf, .tif, .gif, .peg or similar format attached to an email message) shall be deemed to be written, signed, dated and delivered to the Corporation for the purposes of this <u>ARTICLE II</u>; <u>provided</u> that any such facsimile, email or other electronic transmission sets forth or is delivered with information from which the Corporation can determine (or the Corporation is otherwise aware) (A) that the facsimile, email

NY 76391201v3

or other electronic transmission was transmitted by the stockholder or proxyholder or by a person authorized to act for the stockholder or proxyholder and (B) the date on which such stockholder or proxyholder or authorized person transmitted such facsimile, email or other electronic transmission.  The date on which such facsimile, email or other electronic transmission is transmitted shall be deemed to be the date on which such consent or proxy was signed.  Any such facsimile, email or other electronic transmission of a consent or proxy shall be treated in all respects as an original executed consent or proxy and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  At the request of the Board, the President or the Secretary of the Corporation, each stockholder, proxyholder or other authorized person who delivered a consent or proxy by facsimile, email or other electronic transmission shall re-execute the original form thereof and deliver such original to the Corporation at its registered office in the State of Delaware, its principal place of business or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded; provided that no such request shall invalidate, or affect the date of, the proxy or written consent as initially transmitted.

NY 76391201v3

ARTICLE III

DIRECTORS

1.      FUNCTIONS AND DEFINITION.

The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors of the Corporation.  The use of the phrase "whole Board" herein refers to the total number of Directors which the Corporation would have if there were no vacancies.

2.      QUALIFICATIONS AND NUMBER.

A Director need not be a stockholder, a citizen of the United States, or a resident of the State of Delaware.  The initial Board of Directors shall consist of [one] personfive (5) persons.  Thereafter the number of Directors constituting the whole board shall be at least [one]five (5) and not more than seven (7).  Subject to the foregoing limitation and except for the first Board of Directors, such number may be fixed from time to time by action of the stockholders or of the Board of Directors, or, if the number is not fixed, the number shall be [three]five (5).  The number of Directors may be increased or decreased by action of the stockholders or of the Board of Directors.

3.      ELECTION AND TERM.

Except as otherwise provided in the Corporation's Amended and Restated Certificate of Incorporation or the Stockholders Agreement, the Board of Directors shall be elected by majority vote of the stockholders and shall hold office until their successors have been elected and qualified or until their earlier resignation or removal.  Any Director may resign at any time upon written notice to the Corporation.  Thereafter, Directors who are elected at an annual meeting of stockholders, and Directors who are elected in the interim to fill vacancies and newly created Directorships, shall hold office until the next annual meeting of stockholders and until their successors have been elected and qualified or until their earlier resignation or removal.  In the interim between annual meetings of stockholders or of special meetings of stockholders called for the election of Directors and/or for the removal of one or more Directors and for the filling of any vacancies in the Board of Directors, including vacancies resulting from the removal of Directors for cause or without cause, any vacancy in the Board of Directors may be filled by the vote of a majority of the remaining Directors then in office, although less than a quorum, or by the sole remaining Director.

4.      MEETINGS.

(a)      TIME.  Regular meetings shall be held at such time as the Board shall fix.  Special meetings may be called upon notice.

- 8-

NY 76391201v3

(b)     FIRST MEETING.  The first meeting of each newly elected Board may be held immediately after each annual meeting of the stockholders at the same place at which the meeting is held, and no notice of such meeting shall be necessary to call the meeting, provided a quorum shall be present.  In the event such first meeting is not so held immediately after the annual meeting of the stockholders, it may be held at such time and place as shall be specified in the notice given as provided for special meetings of the Board of Directors, or at such time and place as shall be fixed by the consent in writing of all of the Directors.

(c)     PLACE.  Meetings, both regular and special, shall be held at such place within or without the State of Delaware as shall be fixed by the Board.

(d)     CALL.  No call shall be required for regular meetings for which the time and place have been fixed. Special meetings may be called by or at the direction of the Chairman of the Board, if any, the Vice-Chairman of the Board, if any, or the President, or of a majority of the Directors.

(e)     NOTICE OR ACTUAL OR CONSTRUCTIVE WAIVER.  No notice shall be required for regular meetings for which the time and place have been fixed.  Written, oral or any other mode of notice of the time and place shall be given for special meetings at least twenty-four hours prior to the meeting; notice may be given by telephone, facsimile or electronic transmission (in which case it is effective when given) or by mail (in which case it is effective seventy-two hours after mailing by prepaid first class mail).  The notice of any meeting need not specify the purpose of the meeting.  Any requirement of furnishing a notice shall be waived by any Director who signs a written waiver of such notice before or after the time stated therein.  Attendance of a Director at a meeting of the Board shall constitute a waiver of notice of such meeting, except when the Director attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

(f)     QUORUM AND ACTION.  A majority of the whole Board shall constitute a quorum except when a vacancy or vacancies prevents such majority, whereupon a majority of the Directors in office shall constitute a quorum, provided that such majority shall constitute at least one-third (1/3) of the whole Board.  Any Director may participate in a meeting of the Board by means of a conference telephone or similar communications equipment by means of which all Directors participating in the meeting can hear each other, and such participation in a meeting of the Board shall constitute presence in person at such meeting.  A majority of the Directors present, whether or not a quorum is present, may adjourn a meeting to another time and place.  Except as herein otherwise provided, and except as otherwise provided by the General Corporation Law, the act of the Board shall be the act by vote of a majority of the Directors present at a meeting, a quorum being present.  The quorum and voting provisions herein stated shall not be construed as conflicting with any provisions of the General Corporation Law and these ~~By-Laws~~**Bylaws** which govern a meeting of Directors held to fill vacancies and newly created Directorships in the Board.

(g)     CHAIRMAN OF THE MEETING.  The Chairman of the Board, if any and if present and acting, shall preside at all meetings.  Otherwise, the Vice-Chairman of the Board, if

- 9-

any and if present and acting, or the President, if present and acting, or any other Director chosen by the Board, shall preside.

5.     REMOVAL OF DIRECTORS.

Any or all of the Directors may be removed for cause or without cause by the stockholders.

6.     COMMITTEES.

The Board of Directors may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Directors of the Corporation.  The Board may designate one or more Directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  Any such committee, to the extent provided in the resolution of the Board, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it.  In the absence or disqualification of any member of any such committee or committees, the members thereof present at any meeting and not disqualified from voting, whether or not they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

7.     ACTION IN WRITING.

Any action required or permitted to be taken at any meeting of the Board of Directors or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee.

ARTICLE IV

OFFICERS

1.     EXECUTIVE OFFICERS.

The Board of Directors may elect or appoint a Chairman of the Board of Directors, a President, one or more Vice Presidents (which may be denominated with additional descriptive titles), a Secretary, one or more Assistant Secretaries, a Treasurer, one or more Assistant Treasurers and such other officers as it may determine.  Any number of offices may be held by the same person.

2.     TERM OF OFFICE:  REMOVAL.

-10-

NY 76391201v3

Unless otherwise provided in the resolution of election or appointment, each officer shall hold office until the meeting of the Board of Directors following the next annual meeting of stockholders and until such officer's successor has been elected and qualified or until the earlier resignation or removal of such officer.  The Board of Directors may remove any officer for cause or without cause.

3.     AUTHORITY AND DUTIES.

All officers, as between themselves and the Corporation, shall have such authority and perform such duties in the management of the Corporation as may be provided in these ~~By-Laws~~**Bylaws**, or, to the extent not so provided, by the Board of Directors.

4.     THE CHAIRMAN OF THE BOARD OF DIRECTORS.

The Chairman of the Board of Directors, if present and acting, shall preside at all meetings of the Board of Directors, otherwise, the President, if present, shall preside, or if the President does not so preside, any other Director chosen by the Board shall preside.

5.     THE PRESIDENT.

The President shall be the chief executive officer of the Corporation.

6.     VICE PRESIDENTS.

Any Vice President that may have been appointed, in the absence or disability of the President, shall perform the duties and exercise the powers of the President, in the order of their seniority, and shall perform such other duties as the Board of Directors shall prescribe.

7.     THE SECRETARY.

The Secretary shall keep in safe custody the seal of the Corporation and affix it to any instrument when authorized by the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors.  The Secretary (or in such officer's absence, an Assistant Secretary, but if neither is present another person selected by the Chairman for the meeting) shall have the duty to record the proceedings of the meetings of the stockholders and Directors in a book to be kept for that purpose.

8.     THE TREASURER.

The Treasurer shall have the care and custody of the corporate funds, and other valuable effects, including securities, and shall keep full and accurate accounts of receipts and

NY 76391201v3

disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and Directors, at the regular meetings of the Board, or whenever they may require it, an account of all transactions as Treasurer and of the financial condition of the Corporation.  If required by the Board of Directors, the Treasurer shall give the Corporation a bond for such term, in such sum and with such surety or sureties as shall be satisfactory to the Board for the faithful performance of the duties of such office and for the restoration to the Corporation, in case of such person's death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in such person's possession or under such person's control belonging to the Corporation.

## ARTICLE V

### CORPORATE SEAL
### AND
### CORPORATE BOOKS

The corporate seal shall be in such form as the Board of Directors shall prescribe.  The books of the Corporation may be kept within or without the State of Delaware, at such place or places as the Board of Directors may, from time to time, determine.

## ARTICLE VI

### FISCAL YEAR

The fiscal year of the Corporation shall be fixed, and shall be subject to change, by the Board of Directors.

## ARTICLE VII

### INDEMNITY

(a)      Without limiting the provisions of Article [_____] of the Corporation's Amended and Restated Certificate of Incorporation, any person who was or is a party or threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) with respect to any act or omission solely occurring from and after November [__], 2016, by reason of the fact that he or she is or was a Director, officer, employee or agent of the Corporation from and after November [____], 2016, or is or was serving at the request of the Corporation from and after November [____], 2016 as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including employee

-12-

NY 76391201v3

benefit plans) (hereinafter an "indemnitee"), shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification than permitted prior thereto), against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such indemnitee in connection with such action, suit or proceeding, if the indemnitee acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Corporation, and with respect to any criminal action or proceeding, had no reasonable cause to believe such conduct was unlawful. The termination of the proceeding, whether by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal action or proceeding, had reasonable cause to believe such conduct was unlawful.

(b)       Any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor with respect to any act or omission solely occurring from and after November [__], 2016, by reason of the fact that he or she is or was a Director, officer, employee or agent of the Corporation from and after November [___], 2016, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise (including employee benefit plans) from and after November [___], 2016, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification than permitted prior thereto), against expenses (including attorneys' fees) actually and reasonably incurred by him or her in connection with the defense or settlement of such action or suit if he or she acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Court in which such suit or action was brought, shall determine, upon application, that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which such court shall deem proper.

(c)       All reasonable expenses incurred by or on behalf of the indemnitee in connection with any suit, action or proceeding, may be advanced to the indemnitee by the Corporation.

(d)       The rights to indemnification and to advancement of expenses conferred in this article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Certificate of Incorporation, a ~~By-Law~~Bylaw of the Corporation, agreement, vote of stockholders or disinterested Directors or otherwise.

NY 76391201v3

(e)    The indemnification and advancement of expenses provided by this article shall continue as to a person who has ceased to be a Director, officer, employee or agent and shall inure to the benefit of the heirs, executors and administrators of such person.

**ARTICLE VIII**

**AMENDMENTS**

**These Bylaws may be amended by the vote of a majority of the voting power of the shares of stock of the Corporation then outstanding.**

-14-

NY 76391201v3

Document comparison by Workshare Compare on Friday, November 04, 2016 9:20:09 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\4OLD (76391201_3) By-Laws - SFX Entertainment, Inc..DOC |
| Description | 4OLD (76391201_3) By-Laws - SFX Entertainment, Inc. |
| Document 2 ID | file://C:\Users\muchnikl\Desktop\Plan Supplement\SECOND PLAN SUPPLEMENT FILING\Revised Ex. C - New Governance Documents, with Redline (with SSL corporate)\Redline\To Redline\4 (76391201_3) By-Laws - SFX Entertainment, Inc. 11-4.doc |
| Description | 4 (76391201_3) By-Laws - SFX Entertainment, Inc. 11-4 |
| Rendering set | GT-1 |

| Legend: | |
|---|---|
| **Insertion** | |
| ~~Deletion~~ | |
| ~~Moved from~~ | |
| Moved to | |
| Style change | |
| Format change | |
| ~~Moved deletion~~ | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 14 |
| Deletions | 16 |

| Moved from | 0 |
|---|---|
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 30 |

**DRAFT**

**[FORM OF AMENDED AND RESTATED CERTIFICATE FOR SFX CORP. SUBSIDIARIES]**

AMENDED AND RESTATED
CERTIFICATE OF INCORPORATION
OF
[    ]

(Pursuant to Sections ~~242~~**242, 245** and ~~245~~**303** of the
General Corporation Law of the State of Delaware)

[    ], a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "**General Corporation Law**"),

**DOES HEREBY CERTIFY:**

**1.**    That the name of this corporation is [    ], and that this corporation was originally incorporated pursuant to the General Corporation Law on [    , 201 ] under the name [    ].

**2.**    That ~~the Board of Directors duly adopted resolutions proposing to amend and restate the Certificate of Incorporation of this corporation, declaring said amendment and restatement to be advisable and in the best interests of this corporation and its stockholders, and authorizing the appropriate officers of this corporation to solicit the consent of the stockholders therefor, which resolution setting forth the proposed amendment and restatement is as follows:~~**this amended and restated Certificate of Incorporation was duly adopted after receipt of payment for stock and without the need for approval of the Board of Directors or the stockholders of the Corporation, in accordance with Sections 242, 245 and 303 of the General Corporation Law and in accordance with a plan of reorganization (the "Plan") of SFX Entertainment, Inc., a Delaware corporation and a parent entity of the Corporation, approved by order dated November [___], 2016 of the United States Bankruptcy Court for the District of Delaware in *In re: SFX Entertainment, Inc., et al.*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended, which Plan is expected to become effective on or about November [___], 2016.**

**RESOLVED**, that the Certificate of Incorporation of this corporation be amended and restated in its entirety to read as follows:

**ARTICLE FIRST
NAME**

**1.1**    The name of the corporation is [    ] (hereinafter called the "Corporation").

**ARTICLE SECOND
NAME AND ADDRESS OF REGISTERED AGENT**

**2.1**    The address of the Corporation's registered office in the State of Delaware is 874 Walker Road, Suite C, City of Dover 19904, County of Kent. The name of the Corporation's registered agent at such address is United Corporate Services, Inc.

NY 76402413v1

## ARTICLE THIRD
## NATURE OF BUSINESS

**3.1**    The nature of the business or purposes to be conducted or promoted by the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

## ARTICLE FOURTH
## CAPITAL STOCK

**4.1    Authorized Stock.**  The total number of shares of stock which the Corporation shall have authority to issue is [    ] ([#]) shares of common stock, par value $0.001 per share (the "<u>Common Stock</u>").

**4.2    Common Stock Voting Rights.**  Subject to the provisions of any applicable law, the holders of outstanding shares of Common Stock shall exclusively possess voting power for the election of directors and for all other purposes, each holder of record of shares of Common Stock being entitled to one vote for each share of Common Stock standing in his name on the books of the Corporation.

**4.3 Limitation on Issuance of Non-Voting Equity Securities.** Notwithstanding any other provision in this Article 4, pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Corporation shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

**4.4    Common Stock Dividends.**  The holders of Common Stock shall be entitled to receive such dividends as from time to time may be declared by the Board of Directors.

**4.5    Rights of Common Stock Upon Liquidation, Etc.**  In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, the holders of Common Stock shall be entitled to share, ratably according to the number of shares of Common Stock held by them, in all remaining assets of the Corporation available for distribution to its stockholders.

## ARTICLE FIFTH
## MANAGEMENT

**5.1**    The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors.  The Board of Directors of the Corporation shall have at all times at least one (1) director.  The number of directors shall be determined in the manner provided in the By-Laws.

- 2 -

## ARTICLE SIXTH
## DURATION OF EXISTENCE

**6.1**   The Corporation is to have perpetual existence.

## ARTICLE SEVENTH
## POWERS OF THE BOARD OF DIRECTORS

**7.1**   In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to adopt, amend or repeal the By-Laws of the Corporation without the assent or vote of the stockholders.

## ARTICLE EIGHTH
## ELECTION OF DIRECTORS

**8.1**   Elections of directors need not be by written ballot unless the By-Laws of the Corporation shall so provide.

**8.2**   Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws of the Corporation.

## ARTICLE NINTH
## LIABILITY OF DIRECTORS

**9.1**   A director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director arising from acts or omissions solely occurring from and after November [__], 2016, except for liability:

**(i)**      for any breach of the director's duty of loyalty to the Corporation or its stockholders,

**(ii)**      for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation or the law,

**(iii)**      under Section 174 of the General Corporation Law of Delaware, or

**(iv)**      for any transaction from which the director derived an improper personal benefit.

**9.2**   If the General Corporation Law of Delaware is amended, changed or modified to authorize corporate action further eliminating or limiting the personal liability of directors to the Corporation, its stockholders or third parties, then the liability of the directors of the Corporation arising from acts and omissions solely occurring from and after November [__], 2016 shall be eliminated or limited to the fullest extent permitted by the General Corporation Law of Delaware,

- 3 -

NY 76395197v2NY 76402413v1

as so amended, changed or modified.  Any repeal, amendment or modification of the provisions of this Article Ninth by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation relating to claims arising in connection with events which took place prior to the date of such repeal, amendment or modification.

**ARTICLE TENTH**
**INDEMNIFICATION**

**10.1**     The Corporation shall indemnify any person who was or is a party or witness, or is threatened to be made a party or witness, to any threatened, pending or completed action, suit or proceeding (including, without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative or investigative (including a grand jury proceeding), with respect to any act or omission solely occurring from and after November [__], 2016, by reason of the fact that he or she (i) is or was a director or officer of the Corporation or, (ii) as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, agent, partner or trustee (or in any similar position) of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the fullest extent permitted by the General Corporation Law of Delaware and any other applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding, or in connection with any appeal thereof; *provided, however*, that, except as provided in Section 10.2 of this Article with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such person in connection with an action, suit or proceeding (or part thereof) initiated by such person only if the initiation of such action, suit or proceeding (or part thereof) was authorized by the Board of Directors.  Such right to indemnification shall include the right to payment by the Corporation of expenses incurred in connection with any such action, suit or proceeding in advance of its final disposition; *provided, however*, that the payment of such expenses incurred by a director or officer in advance of the final disposition of such action, suit or proceeding shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it should be determined ultimately that such director or officer is not entitled to be indemnified under this Article or otherwise.

**10.2**     Any indemnification or advancement of expenses required under this Article shall be made promptly, and in any event within sixty (60) days, upon the written request of the person entitled thereto.   If a determination by the Corporation that the person is entitled to indemnification pursuant to this Article is required, and the Corporation fails to respond within sixty (60) days to a written request for indemnity, the Corporation shall be deemed to have approved such request.  If the Corporation denies a written request for indemnity or advancement of expenses, in whole or in part, of if payment in full pursuant to such request is not made within sixty (60) days, the right to indemnification and advancement of expenses as granted by this Article shall be enforceable by the person in any court of competent jurisdiction.  Such person's costs and expenses incurred in connection with successfully establishing his or her right to indemnification, in whole or in part, in any such action or proceeding shall also be indemnified

- 4 -

by the Corporation.  It shall be a defense to any such action (other than an action brought to enforce a claim for advancement of expenses pursuant to this Article where the required undertaking has been received by the Corporation) that the claimant has not met the standard of conduct set forth in the General Corporation Law of Delaware, but the burden of proving such defense shall be on the Corporation.  Neither the failure of the Corporation (including the Board of Directors, independent legal counsel or the stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the General Corporation Law of Delaware, nor the fact that there has been an actual determination by the Corporation (including the Board of Directors, independent legal counsel or the stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

**10.3**    The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office, and shall continue as to any person who has ceased to be a director, officer, employee or agent, and shall inure to the benefit of the heirs, executors and administrators of such a person.  Any repeal or modification of the provisions of this Article Tenth shall not affect any obligations of the Corporation or any rights regarding indemnification and advancement of expenses of a director, officer, employee or agent with respect to any threatened, pending or completed action, suit or proceeding for which indemnification or the advancement of expenses is requested, in which the alleged cause of action accrued at any time prior to such repeal or modification.

**10.4**    The Corporation may purchase and maintain insurance, at its expense, to protect itself and any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify him or her against such liability under the provisions of this Article, the General Corporation Law of Delaware or otherwise.

**10.5**    If this Article or any portion thereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify each director and officer of the Corporation as to expenses (including attorneys' fees), judgments, fines and amounts paid in settlement with respect to any action, suit or proceeding, whether civil, criminal, administrative or investigative, including, without limitation, a grand jury proceeding and an action, suit or proceeding by or in the right of the Corporation, to the fullest extent permitted by any applicable portion of this Article that shall not have been invalidated, by the General Corporation Law of Delaware or by any other applicable law.

**ARTICLE ELEVENTH**
**COMPROMISE WITH CREDITORS**

- 5 -

**11.1**    Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of them and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware, may, in a summary fashion, upon the application of the Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for the Corporation under the provisions of Section 291 of the Delaware General Corporation Law or on the application of trustees in dissolution or of any receiver or receivers appointed for the Corporation under the provisions of Section 279 of the Delaware General Corporation Law, order a meeting of the creditors or class of creditors, and/or of the stockholders or a class of stockholders of the Corporation, as the case may be, to be summoned in such manner as the said court directs.  If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of the Corporation, as the case may be, and also on this Corporation.

### ARTICLE TWELFTH
### CERTAIN BUSINESS COMBINATIONS

**12.1**    The Corporation expressly elects not to be governed by Section 203 of the General Corporation Law of the State of Delaware, as amended from time to time, relating to business combinations with interested stockholders.

NY 76395197v2NY 76402413v1

- 7 -

\* \* \* \* \* \* \* \* \* \* \* \*

IN WITNESS WHEREOF, the undersigned, being a duly authorized officer of this Corporation, has executed, signed and acknowledged this Certificate of Incorporation this [   ]$^{th}$ day of November, 2016.

_____

Name:        Jason M. Barr
Title:   Authorized Officer

NY 76395197v2NY 76402413v1

**DRAFT**

**[FORM OF AMENDED AND RESTATED SINGLE MEMBER LIMITED LIABILITY COMPANY FOR SFX DE LLC SUBSIDIARIES]**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY**

**OPERATING AGREEMENT**

**OF**

**[    ], LLC**

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement") of [    ] LLC, a Delaware limited liability company (the "Company"), is made and entered into as of [    ], 2016, by [    ], a [    ] [    ], as the sole member (the "Member"), pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101, et seq.), as amended from time to time (the "Act").

A.    The Company was formed on [    ], 201[    ] (the "Formation Date"), pursuant to its certificate of formation (the "Certificate of Formation") filed on the Formation Date with the Secretary of State of the State of Delaware, pursuant to and in accordance with the Act (the "Required Filing").

B.    The Parties desire that this Agreement constitute a "limited liability company agreement," as defined under the Act.

NOW, THEREFORE, the undersigned Member agrees as follows:

1.    Name.  The name of the limited liability company formed hereby is [    ], LLC.

2.    Certificates.  The Company came into existence under the Act by the Required Filing.  The Member or such other person designated by the Member as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company desires to conduct business.

3.    Purposes.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act.

4.      Powers.  The Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

5.      Principal Business Office.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.      Registered Office.  The address of the registered office of the Company in the State of Delaware is c/o United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, Kent County, DE 19904.

7.      Registered Agent.  The name and address of the registered agent in Delaware for service of process is United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, Kent County, DE 19904.

8.      Member.  The name and the mailing address of the Member is:

| Name | Address |
|------|---------|
| [   ] | 524 Broadway, 11th Floor |
|      | New York, NY 10012 |

9.      Qualification in Other Jurisdiction.  The Member shall cause the Company to be registered or qualified under its own name or under an assumed or fictitious name pursuant to a foreign limited liability company statute or similar laws in any jurisdiction in which the Company owns property or transacts business if such registration or qualification is necessary to protect the limited liability of the Member or to permit the Company to lawfully own property or transact business in such jurisdictions.

10.     Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated

personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

11.    Capital Contributions.  The Member is not required to make any capital contributions to the Company.  However, the Member may at any time make capital contributions to the Company.

12.    Allocation of Profits and Losses.  The Company's profits and losses shall be allocated to the Member.

13.    Distributions.  Distributions shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

14.    Management.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware.  The Member shall have the authority to bind the Company.  Notwithstanding any other provision of this Agreement to the contrary, the Member is authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other person.

15.    Officers.  The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 15 may be revoked at any time by the Member.  An Officer may be removed with or without cause by the Member.  As of the date hereof, the Officers of the Company are the following persons:

| Name | Title |
|------|-------|
| [   ] | **Chief Executive Officer and** President |
| [   ] | Chief Financial Officer |

NY 76395045v2
NY 76402426v1

[  ]                                          Secretary

16.     Other Business.  The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

17.     Exculpation and Indemnification.  Neither the Member nor any Officer shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission solely occurring from and after November [__], 2016 and performed or omitted by the Member or any such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or any such Officer by this Agreement, except that the Member or such Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's or such Officer's willful misconduct.  To the full extent permitted by applicable law, the Member or such Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member or such Officer by reason of any act or omission solely occurring from and after November [__], 2016 and performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that neither the Member nor such Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 17 shall be provided out of and to the extent of Company assets only, and neither the member nor such Officer shall have personal liability on account thereof.

18.     Assignments.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 18, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

19.     Admission of Additional Members.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20.     Dissolution.

(a)     The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) at any time there are no

members of the Company unless, within ninety (90) days of the occurrence of the event that terminated the continued membership of the last remaining member of the Company (the "Termination Event"), the personal representative of the last remaining member agrees in writing to continue the Company and to the admission of the Company of such personal representative or its nominee or designee as a member, effective as of the occurrence of the Termination Event, and such successor or its nominee or designee shall be admitted upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, or (iii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)     The bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21.     Separability of Provisions.  Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

22.     Entire Agreement.  This Agreement constitutes the entire Agreement of the Member with respect to the subject matter hereof.

23.     Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

24.     Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25.     Sole Benefit of Member.  The provisions of this Agreement (including Section 11) are intended solely to benefit the Member (and with respect to Section 17 hereof, any Officer) and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

[Signature page follows.]

NY 76395045v2
**NY 76402426v1**

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

MEMBER:

[   ]

By:_____
    Name:
    Title:

Signature page to Amended and Restated Limited Liability Company Operating Agreement of
[   ]

NY 76395045v2
NY 76402426v1

DRAFT

**[FORM OF AMENDED AND RESTATED BY-LAWS FOR SFX DE CORP SUBSIDIARIES]**

**AMENDED AND RESTATED BY-LAWS**

**OF**

**[   ]**

**(a Delaware corporation)**

**ARTICLE I**
**OFFICES**

The registered office of [    ] (the "<u>Corporation</u>") shall be located in Dover, Delaware.  The principal office of the Corporation shall be in the state of New York.  The Corporation may also have offices at such other places within or without the State of Delaware as the Board may from time to time determine or the business of the Corporation may require.

**ARTICLE II**
**STOCKHOLDERS**

2.1.    **Place of Meetings.**

Meetings of stockholders shall be held at the principal office of the Corporation or at such place within or without the State of Delaware as the Board of Directors of the Corporation (the "<u>Board</u>") shall designate.

2.2.    **Annual Meeting.**

The annual meeting of the stockholders for the election of directors and for the transaction of any other proper business, shall be held at such date and time during the first four (4) months of each calendar year as shall be determined by the Board.  If no specific date is designated by the Board for the annual meeting, it shall be held on the first Monday in April of each year, if not a legal holiday under the laws of the State where such meeting is to be held, and if a legal holiday under the laws of such State, then on the next succeeding business day not a legal holiday under the laws of such State.

2.3.    **Special Meetings.**

Special meetings of the stockholders may be called by the Board, the Chairman, or the President, and shall be called by the President or the Secretary at the request in writing of a majority of the Board or at the request in writing by stockholders owning a majority in amount of the shares issued and outstanding.  Such request shall state the purpose or purposes of the proposed meeting.  Business transacted at a special meeting shall be confined to the purpose or purposes stated in the notice provided for such meeting.

**2.4.    Fixing Record Date.**

For the purpose of determining the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to or dissent from any proposal without a meeting, or for the purpose of determining stockholders entitled to receive payment of any dividend or the allotment of any rights, or for the purpose of any other action, the Board shall fix, in advance, a date as the record date for any such determination of stockholders.  Such date shall not **be** less than ten (10) nor more than sixty (60) days before the date of such meeting, nor more than sixty (60) days prior to any other action.  If no record date is fixed, it shall be determined in accordance with the provisions of law.

**2.5.    Notice of Meetings of Stockholders.**

Written notice of each meeting of stockholders shall state the purpose or purposes for which the meeting is called, the place, date, and hour of the meeting and, unless it is the annual meeting, shall indicate that it is being issued by or at the direction of the person or persons requesting or calling the meeting.  Notice shall be given either personally or by mail to each stockholder entitled to vote at such meeting, not less than ten (10) nor more than sixty (60) days before the date of the meeting.  If action is proposed to be taken that might entitle the stockholders to payment for their shares, the notice shall include a statement of that purpose and to that effect.  If mailed, the notice shall be deemed given when deposited in the United States mail, with postage thereon prepaid, directed to a stockholder at his, her or its address as it appears on the record of stockholders, or, if he, she or it shall have filed with the Secretary a written request that notices to him, her or it be mailed to some other address, then directed to him, her or it at such other address.  Unless the Board shall fix after the adjournment a new record date for an adjourned meeting, notice of such adjourned meeting need not be given if the time and place to which the meeting shall be adjourned is announced at the meeting at which the adjournment was taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

**2.6.    Waivers.**

Notice of meeting need not be given to any stockholder who signs a waiver of notice, in person or by proxy, whether before or after a stockholders meeting.  The attendance of any stockholder at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by him, her or it.

**2.7.    Quorum of Stockholders.**

Unless the Corporation's Certificate of Incorporation (the "Certificate of Incorporation") provides otherwise, the holders of a majority of the shares entitled to vote shall

2

constitute a quorum at a meeting of stockholders for the transaction of any business, provided that when a specified item of business is required to be voted on by a class or classes, the holders of a majority of the shares of such class or classes shall constitute a quorum for the transaction of such specified item of business. When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholders. The stockholders present at a given meeting may adjourn the meeting despite the absence of a quorum.

### 2.8. Proxies.

Every stockholder entitled to vote at a meeting of stockholders or to express consent or dissent without a meeting may authorize another person or persons to act for him, her or it by proxy. Every proxy must be signed by the stockholder or his, her or its attorney-in-fact. No proxy shall be valid after expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the stockholder executing it, except as otherwise provided by law.

### 2.9. Qualification of Voters.

Every stockholder of record shall be entitled at every meeting of stockholders to one vote for every share standing in his name on the record of stockholders, unless otherwise provided in the Certificate of Incorporation.

### 2.10. Vote of Stockholders.

Except as otherwise required by statute or by the Certificate of Incorporation:

(a) directors shall be elected by a plurality of the votes cast at a meeting of stockholders by the holders of shares entitled to vote in the election; and

(b) all other corporate action shall be authorized by a majority of the votes cast.

### 2.11. List of Stockholders.

The officer who has charge of the stock ledger of the Corporation, or the transfer agent of the Corporation's stock, if there be one then acting, shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, at the place where the meeting is to be held, or at the office of the transfer agent. A list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

NY 76395028v2

NY 76402583v1

**2.12.   Inspectors.**

The Board may, in advance of any meeting of stockholders, appoint one or more inspectors to act at such meeting or any adjournment thereof.  If the inspectors shall not be so appointed, or if any of them shall fail to appear or act, the chairman of the meeting may, and on the request of any stockholder entitled to vote threat shall, appoint inspectors.  Each inspector, before entering upon the discharge of his duties, shall take and sign an oath to faithfully execute the duties of inspector at such meeting with strict impartiality and according to the best of his or her ability.  The inspectors shall determine the number of shares outstanding and the voting power of each share, the number of shares represented at the meeting, the existence of a quorum, and the validity and effect of proxies, and shall receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the results of voting, and do such other acts as are proper to conduct the election or the vote with fairness to all stockholders.  On request of the chairman of the meeting or any stockholder entitled to vote threat, the inspectors shall make a report in writing of any challenge, request or matter determined by them and shall execute a certificate of any fact found by them.  No director or candidate for the office of director shall act as inspector at an election of directors.  Inspectors need not be stockholders.

**2.13.   Written Consent of Stockholders.**

Any action that may be taken by vote may be taken without a meeting or a vote via a written consent, setting forth the action so taken, signed by the holders of all the outstanding shares entitled to vote thereon or by at least the minimum number of shares that would be necessary to take the corporate action via a vote at a duly held meeting of the stockholders with respect thereto, and shall be filed with the Secretary as part of the corporate records.

**ARTICLE III**
**DIRECTORS**

**3.1.   Board of Directors.**

Subject to any provision in the Certificate of Incorporation, the business of the Corporation shall be managed by its Board, each member of which shall be at least eighteen years of age and need not be a stockholder.

**3.2.   Number of Directors.**

The number of directors shall be not less than one (1) nor more than five (5).  The number of directors shall be fixed by the Board from time to time.

**3.3.   Election and Term of Directors.**

At each annual meeting of stockholders, the stockholders shall elect directors to hold office until the next annual meeting.  Each director shall hold office until the expiration of

4

the term for which he is elected and until his successor has been elected and qualified, or until his prior resignation or removal.

### 3.4.    Newly Created Directorships and Vacancies.

**(a)**    Newly created directorships resulting from an increase in the authorized number of directors and vacancies occurring in the Board for any reason, except the removal of directors without cause, may be filled by the affirmative vote of a majority of the directors then in office, although less than a quorum exists.  Vacancies occurring by reason of the removal of directors without cause shall be filled by vote of the stockholders.  A director elected to fill a vacancy caused by resignation, death, or removal shall be elected to hold office for the unexpired term of his predecessor.

**(b)**    If at any time, by reason of death or resignation or other cause, the Corporation should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder may call a special meeting of stockholders in accordance with the provisions of these By-Laws.  Each director elected to fill a vacancy shall hold office until the next succeeding annual meeting of stockholders and until his successor is elected and has qualified or until his earlier displacement from office by resignation, removal, replacement or otherwise.

### 3.5.    Removal of Directors.

Any or all of the directors may be removed for cause by vote of the stockholders or by action of the Board.  Directors may be removed without cause only by vote of the stockholders.

### 3.6.    Resignation.

A director may resign at any time by giving written notice to the Board, the President, or the Secretary of the Corporation.  Unless otherwise specified by the notice, the resignation shall take effect upon receipt thereof by the Board or such officer, and the acceptance of the resignation shall not be necessary to make it effective.

### 3.7.    Quorum of Directors.

Unless otherwise provided in the Certificate of Incorporation, a majority of the entire Board shall constitute a quorum for the transaction of business or of any specified item of business.  In the absence of a quorum at any meeting of the Board, a majority of the directors present thereat, or, if no director be present, the Secretary, may adjourn such meeting to another time and place, or such meeting, unless it be the annual meeting of the Board need not be held.  At any adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally called.  Except as provided in Section 3.11 of these By-Laws, the directors shall act only as a Board and the individual directors shall have no power as such.

NY 76395028v2

NY 76402583v1

**3.8.    Action of the Board; Written Consent and Telephone Communication.**

**(a)**    Unless otherwise required by law, the vote of a majority of the directors present at the time of the vote, if a quorum is present at such time, shall be the act of the Board. Each director present shall have one vote regardless of the number of shares, if any, which he may hold.

**(b)**    Whenever any action is required or permitted to be taken by the Board or any committee thereof, such action may be taken without a meeting if all members of the Board or the committee consent in writing to the adoption of a resolution authorizing the action. The resolution and the written consent thereto by members of the Board or committee shall be filed with the minutes of the proceedings of the Board or committee. Meetings may also be held by conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting in such manner shall constitute presence in person at such meeting.

**3.9.    Place and Time of Board Meetings; Notice; Adjournment.**

**(a)**    The Board may hold its meetings at the office of the corporation or at such other places, either within or without the State of Delaware, as it may, from time to time, determine.

**(b)**    An annual meeting of the Board shall be held immediately following the annual meeting of stockholders at the place of such annual meeting of stockholders.

**(c)**    Regular meetings of the Board may be held without notice at such time and place as it from time to time shall determine.

**(d)**    Special meetings of the Board shall be held upon notice to the directors and may be called by the President or Chairman, upon three days' prior notice given to each director either personally or by mail or e-mail; or upon 24 hours prior notice to each director, if given by telephone, fax, cable, or wireless. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail, postage prepaid. Special meetings shall be called by the President, Chairman or Secretary in a like manner on written request by a majority of directors. Notice of a meeting need not be given to any director who submits a waiver of notice whether before or after the meeting or who attends the meeting without protesting prior thereto or at its commencement, the lack of notice to him or her. Except as otherwise specifically required by these By-Laws, a notice or waiver of notice of any regular or special meeting need not state the purposes of such meeting.

**(e)**    A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place. Notice of the adjournment shall be given to all directors who were absent at the time of the adjournment and, unless such time and place are announced at the meeting, to the other directors.

6

**3.10.    Chairman and Secretary of Meeting.**

At all meetings of the Board, the Chairman or, in his or her absence, the President or, in his or her absence, a chairman chosen by the majority of the Board shall preside.  The Secretary, or in his or her absence or inability to act, any person appointed by the chairman of the meeting, shall act as secretary of the meeting and keep the minutes thereof.

**3.11.    Executive and Other Committees.**

**(a)**    The Board, by resolution adopted by a majority of the entire Board, may designate from among its members an executive committee and other committees, each consisting of one or more directors.  Each such committee shall serve at the pleasure of the Board.

**(b)**    Any such committee, to the extent provided in the resolution by which it is established, shall have and may exercise the powers of the Board and the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; provided, however, that no other such committee of the Board shall have the power or authority to:

(i)  amend the Certificate of Incorporation;

(ii)  adopt an agreement of merger or consolidation;

(iii) recommend to the shareholders the sale, lease or exchange of all or substantially all of the Corporation's property and assets;

(iv) recommend to the shareholders a dissolution of the Corporation or a revocation of a dissolution; or

(v)  amend these By-Laws.

**(c)** In the absence or disqualification of any member of such committee or committees, the member ~~of~~**or** members thereof present at any meeting, and not disqualified from voting, whether or not he, she or they constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.  Each committee shall keep minutes of its proceedings and shall report such minutes to the Board when required.  All such proceedings shall be subject to revision or alteration by the Board, provided, however, that third parties shall not be prejudiced by such revision or alteration.

**(d)**    A majority of any committee may determine its action and fix the time and place of its meetings, unless the Board shall otherwise provide.  Notice of such meetings shall be given to each member of the committee in the manner provided for in Section 3.9 of these By-Laws.  The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

7

**3.12.    Compensation.**

The Board may fix an amount per annum or fees to be paid by the Corporation to directors for attendance at meetings of the Board or of any committee, or both, as the Board shall from time to time determine.  The Board may likewise provide that the Corporation shall reimburse each director or committee member for any expenses incurred by him or her on account of his or her attendance at any such meeting.  In addition, the Board shall also have power, in its discretion, to provide for and pay to directors rendering services to the Corporation not ordinarily rendered by the directors, as such, special compensation appropriate to the value of such services, as determined by the Board from time to time.  Nothing contained in this Section shall preclude any director from serving the Corporation in any other capacity and receiving compensation thereof.

**3.13.    Liability of Directors in Certain Cases.**

In case of any willful or negligent violation of the provisions of Sections 160 or 173 of the Delaware General Corporation Law (the "GCL"), the directors under whose administration the same may happen may be jointly and severally liable to the Corporation, and to its creditors in the event of its dissolution or insolvency, for the full amount of the dividend unlawfully paid, or for the full amount unlawfully paid for the purchase or redemption of the Corporation's stock, with interest from the time such liability accrued.  Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself or herself from such liability by causing his or her dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after he or she has notice of the same.

**3.14    Access to Books and Records.**

Any director shall have the right to examine the Corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to his or her position as a director.  A director shall, in the performance of his or her duties be fully protected in relying in good faith upon the books of account or reports made to the Corporation by any of its officers, or by an independent certified accountant, or by an appraiser selected with reasonable care by the Board, or in relying in good faith upon other records of the Corporation.

**ARTICLE IV**
**OFFICERS**

**4.1.    Offices, Election, Term.**

(a)    The Board may elect or appoint a Chairman of the Board (the "Chairman of the Board" or "Chairman"), a President, one or more Vice Presidents, a Secretary, a Treasurer and such other officers as it may determine, who shall have such duties, powers, and functions as hereinafter provided.

8

NY 76395028v2

NY 76402583v1

**(b)**      All officers shall be elected or appointed to hold office until the meeting of the Board following the annual meeting of stockholders and until their successors have been elected or appointed and qualified.

### 4.2.      Removal, Resignation, Salary.

**(a)**      Any officer elected or appointed by the Board may be removed by the Board with or without cause.

**(b)**      In the event of the death, resignation, or removal of an officer, the Board in its discretion may elect or appoint a successor to fill the unexpired term.

**(c)**      Any two or more offices may be held by the same person, except the offices of President and Secretary.

**(d)**      The salaries of all officers shall be fixed by the Board.

### 4.3.      Chairman of the Board.

The Chairman of the Board shall be ~~the chief executive officer of the Corporation~~**a director selected by the Board**.  Subject to the control of the Board, he or she shall have general charge of the business and affairs of the Corporation; shall have the direction of all other Officers, agents and employees; and shall be an *ex officio* member of all committees of the Board.  The Chairman of the Board shall, subject to the limitations contained in the Certificate of Incorporation, have the power to execute and deliver deeds, leases, contracts, mortgages, bonds, debentures, checks, drafts and other orders for the payment of money and other documents for and in the name of the Corporation.

### 4.4.      President and Chief Executive Officer.

The President shall be the chief operating officer of the Corporation.  Subject to the control of the Board and to the supervision of the Chairman of the Board, he or she shall have active charge of the day-to-day business and affairs of the Corporation and shall appoint, supervise and discharge employees and agents and shall fix their compensation (other than Officers appointed by the Board).  The President shall perform all duties incident to that office and such other duties as from time to time may be assigned to him by the Board or these ~~by~~**By**-laws.  The President shall, subject to the limitations contained ~~in~~**therein, have** the **power to execute** mortgages, bonds, debentures, checks, drafts and other orders for the payment of money and other documents for and in the name of the Corporation.  At the request of the Chairman of the Board, at the direction of the Board, the President shall perform the duties of Chairman of the Board and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Chairman of the Board.

### 4.5.      Vice-Presidents.

Each Vice President shall have such powers and duties as shall be prescribed by the Board. At the direction of the President, the Vice President designated shall perform such duties of

9

~~NY 76395028v2~~

**NY 76402583v1**

President so authorized and when so acting shall have all the powers of, and be subject to all the restrictions upon, the President.  Unless and until a resolution is subsequently adopted by the Board and subject to the limitations contained in the Certificate of Incorporation, any Vice President who is also the General Counsel for the Corporation shall have the power to execute leases, mortgages and other contracts, agreements and instruments for the payment of money for and in the name of the Corporation.

**4.6.    Secretary.**

The Secretary shall:

**(a)**    attend all meetings of the Board and of the stockholders;

**(b)**    record all votes and minutes of all proceedings in a book to be kept for that purpose;

**(c)**    give or cause to be given notice of all meetings of stockholders and of special meetings of the Board;

**(d)**    keep in safe custody the seal of the Corporation and affix it to any instrument when authorized by the Board;

**(e)**    when required, prepare or cause to be prepared and available at each meeting of stockholders a certified list in alphabetical order of the names of the stockholders entitled to vote thereat, indicating the number of shares of each respective class held by each;

**(f)**    keep all of the documents and records of the Corporation as required by law or otherwise in a proper and safe manner; and

**(g)**    perform such other duties as may be prescribed by the Board.

**4.7.    Assistant Secretaries.**

During the absence or disability of the Secretary, the Assistant Secretary or, if there are more than one, the one so designated by the Secretary or the Board, shall have all of the powers and functions of the Secretary.

**4.8.    Treasurer.**

The Treasurer shall be the chief financial officer of the Corporation.  The Treasurer shall:

**(a)**    have the custody of the corporate funds and securities;

**(b)**    keep full and accurate accounts of receipts and disbursements in the corporate books;

10

(c)     deposit all money and other valuables in the name and to the credit of the Corporation in such depositories as may be designated by the Board;

(d)     disburse the funds of the Corporation as may be ordered or authorized by the Board and preserve proper vouchers for such disbursements;

(e)     render to the President, the Chairman and Board at the regular meetings of the Board, or whenever they require it, an account of all of his or her transactions as Treasurer and of the financial condition of the Corporation;

(f)     render a full financial report at the annual meeting of the stockholders if so requested;

(g)     be furnished by all corporate officers and agents, at his or her request, with such reports and statements as he or she may require as to all financial transactions of the Corporation; and

(h)     perform such other duties as are given to him or her by these By-Laws or as from time to time are assigned to him or her by the Board, the President or the Chairman.

### 4.9.    Assistant Treasurer.

During the absence or disability of the Treasurer, the Assistant Treasurer or, if there are more than one, the one so designated by the Treasurer or by the Board, shall have all the powers and functions of the Treasurer.

### 4.10.    Sureties and Bonds.

In case the Board shall so require, any officer or agent of the Corporation shall execute to the Corporation a bond in such sum and with such surety or sureties as the Board may direct, conditioned upon the faithful performance of his or her duties to the Corporation and including responsibility for negligence and for the accounting for all property, funds, or securities of the Corporation which may come into his or her hands.

## ARTICLE V
## CERTIFICATES FOR SHARES

### 5.1.    Certificates.

The shares of the Corporation shall be represented by certificates.   Share certificates shall be numbered and entered in the books of the Corporation as they are issued. Such certificates shall exhibit the holder's name and the number of shares and shall be signed by the Chairman of the Board, the President, Treasurer, or a Vice President, on the one hand, and the Secretary or an Assistant Secretary, on the other hand, and shall bear the corporate seal.  The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned

11

by a transfer agent or registered by a registrar other than the Corporation itself or its employee, or if the shares are listed on a registered national securities exchange or interdealer quotation system.  In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he or she were such officer at the date of its issue.

A certificate representing shares shall not be issued until the full amount of consideration therefor has been paid or received in accordance with law except as Sections 152 and 153 of the GCL may otherwise permit.

### 5.2.    Books and Account and Record of Stockholders.

The books and records of the Corporation may be kept at such places within or without the State of Delaware as the Board may from time to time determine.  The stock record books and the blank stock certificate books shall be kept by the Secretary or by any other officer or agent designated by the Board.

### 5.3.    Lost or Destroyed Certificates.

The Board may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation, alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate to be lost or destroyed.  When authorizing such issue of a new certificate or certificates, the Board may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his, her or its legal representative, to advertise the same in such manner as the Board shall require and/or give the Corporation a bond in such sum and with such surety or sureties as the Board may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.  Anything herein to the contrary notwithstanding, the Board, in its absolute discretion, may refuse to issue any such new certificate, except pursuant to legal proceedings under the laws of the State of Delaware.

### 5.4.    Transfers of Shares.

**(a)**    Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, and cancel the old certificate.  Every such transfer shall be entered on the transfer book of the Corporation which shall be kept at its principal office.  No transfer shall be made within ten (10) days next preceding the annual meeting of stockholders.

**(b)**    The Corporation shall be entitled to treat the holder of record of any share as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person, whether or not it shall have express or other notice thereof, except as expressly provided by the laws of the State of Delaware.

12

NY 76395028v2

NY 76402583v1

### 5.5.    Regulations.

The Board may make such additional rules and regulations, not inconsistent with these By-Laws, as it may deem expedient concerning the issue, transfer and registration of certificates for shares of stock of the Corporation.  It may appoint, or authorize any officer or officers to appoint, one or more transfer agents or one or more transfer clerks and one or more registrars and may require all certificates for shares of stock to bear the signature or signatures of any of them.

### 5.6.    Closing Transfer Books.

The Board shall have the power to close the share transfer books of the Corporation for a period of not more than ten (10) days during the thirty (30) day period immediately preceding (i) any stockholders' meeting, or (ii) any date upon which stockholders shall be called upon to, or have a right to, take action without a meeting, or (iii) any date fixed for the payment of a dividend or any other form of distribution, and only those stockholders of record as of the time the transfer books are closed shall be recognized as such for the purpose of (A) receiving notice of, or voting at, such meeting, or (B) taking appropriate action, or (C) being entitled to receive any dividend or other form of distribution.

### ~~5.7.    Fixing of Record Date.~~

~~In order that the Corporation may determine the stockholders entitled to notice of, or to vote at, any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights, or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix, in advance, a record date, which shall be not less than ten (10) nor more than sixty (60) days prior to such meeting or to any other such action.  A determination of stockholders of record entitled to notice of, or to vote at, a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for an adjourned meeting, and must fix a new record date for an adjourned meeting that is reconvened thirty (30) days or more after the original meeting date.~~

### ARTICLE VI
### DIVIDENDS

Subject to the provisions of the Certificate of Incorporation and to applicable law, dividends on the outstanding shares of the Corporation may be declared in such amounts and at such time or times as the Board may determine.  Before payment of any dividend, there may be set aside out of the net profits of the Corporation available for dividends such sum or sums as the Board, from time to time, in its absolute discretion deems proper as a reserve fund to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the Board shall think conducive to the interests of the Corporation, and the Board may modify or abolish any such reserve.

~~NY 76395028v2~~

**NY 76402583v1**

## ARTICLE VII
## CORPORATE SEAL

The corporate seal shall have inscribed thereon the name of the Corporation and the words "Corporate Seal, Delaware." The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or may be used in any other lawful manner.

## ARTICLE VIII
## EXECUTION OF INSTRUMENTS

**8.1.    Execution of Contracts.**

Except as otherwise required by statute, the Certificate of Incorporation or these By-Laws, any contracts or other instruments may be executed and delivered in the name and on behalf of the Corporation by such officer or officers (including any assistant officer) of the Corporation as the Board may from time to time direct. Such authority may be general or confined to specific instances as the Board may determine. Unless authorized by the Board or expressly permitted by these By-Laws, an officer or agent or employee shall not have the power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it pecuniarily liable for any purpose or in any amount.

**8.2.    Loans.**

Unless the Board shall otherwise determine, either (a) the Chairman of the Board, or the President, or (b) a Vice President, together with the Treasurer, may effect loans and advances at any time for the Corporation or guarantee any loans and advances to any subsidiary or parent corporation of the Corporation, from any bank, trust company or other institution, or from any firm, corporation or individual, and for such loans and advances may make, execute and deliver promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, or guarantee of indebtedness of parent or subsidiary corporations of the Corporation, but no officer or officers shall mortgage, pledge, hypothecate or transfer any securities or other property of the Corporation, except when authorized by the Board.

**8.3.    Checks, Drafts, etc.**

All checks, drafts, bills of exchange or other orders for the payment of money out of the funds of the Corporation, and all notes or other evidences of indebtedness of the Corporation, shall be signed in the name and on behalf of the Corporation by such persons and in such manner as shall from time to time be authorized by the Board.

**8.4.    Deposits.**

All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board may from time to time designate or as may be designated by any officer or officers of the

14

NY 76395028v2

NY 76402583v1

Corporation to whom such power of designation may from time to time be delegated by the Board.  For the purpose of deposit and for the purpose of collection for the account of the Corporation, checks, drafts and other orders for the payment of money which are payable to the order of the Corporation may be endorsed, assigned and delivered by any officer or agent of the Corporation, or in such manner as the Board may determine by resolution.

### 8.5.    General and Special Bank Accounts.

The Board may from time to time authorize the opening and keeping of general and special bank accounts with such banks, trust companies or other depositories as the Board may designate or as may be designated by any officer or officers of the Corporation to whom such power of designation may from time to time be delegated by the Board.  The Board may make such special rules and regulations with respect to such bank accounts, not inconsistent with the provisions of these By-Laws, as it may deem expedient.

### 8.6.    Proxies in Respect of Securities of Other Corporations.

Unless otherwise provided by resolution adopted by the Board, the Chairman of the Board, the President, or a Vice President may from time to time appoint an attorney or attorneys or agent or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes which the Corporation may be entitled to cast as the holder of stock or other securities in any other corporation, any of whose stock or other securities may be held by the Corporation, at meetings of the holders of the stock or other securities of any such other corporation, or to consent in writing, in the name of the Corporation as such holder, to any action by such other corporation, and may instruct the person or persons so appointed as to the manner of casting such votes or providing such consent, and may execute or cause to be executed in the name and on behalf of the Corporation and under its corporate seal, or otherwise, all such written proxies or other instruments as he or she may deem necessary or proper in the premises.

## ARTICLE IX
## FISCAL YEAR

The Corporation's fiscal year shall begin on the first day of January and conclude on the final day of December in each year at such other time as may be designated by the Board.

## ARTICLE X
## REFERENCES TO CERTIFICATE OF INCORPORATION

Reference to the Certificate of Incorporation in these By-Laws shall include all amendments thereto or changes thereof unless specifically excepted.

## ARTICLE XI
## MISCELLANEOUS

### 11.1.    Interested Directors.

15

NY 76395028v2

NY 76402583v1

Any director or officer of the Corporation shall not be disqualified by his or her office from dealing or contracting with the Corporation as a vendor, purchaser, employee, agent, lessor, lessee or otherwise.

No transaction contract or other act of the Corporation shall be void or voidable or in any way affected or invalidated by reason of the fact that any director or officer, or any firm or corporation in which such director or officer is a member or is a stockholder, director or officer, is in any way interested in such transaction, contract or other act provided (i) the fact that such director, officer, firm or corporation is so interested shall be disclosed or shall be known to the Board or such members thereof as shall be present at any meeting of the Board at which action upon any such transaction, contract or other act shall be taken; and (ii) no other approval for such transaction is required under these By-Laws; nor shall any such director or officer be accountable or responsible to the Corporation for or in respect of any such transaction, contract or other act of the Corporation or for any gains or profits realized by him or her by reason of the fact that he, she or any firm of which he or she is a member, or any corporation of which he or she is a stockholder, director or officer is interested in such transaction, contract or other act; and any such director may be counted in determining the existence of a quorum at any meeting of the Board which shall authorize or take action in respect of any such transaction, contract or other act, and may vote thereat to authorize, ratify or approve any such transaction, contract or other act with like force and effect as if he, she or any firm of which he or she is a member or any corporation of which he or she is a stockholder, director or officer were not interested in such transaction, contract or other act.

### 11.2.   Ratification.

Any transaction questioned in any stockholders' derivative suit on the grounds of lack of authority, defective or irregular execution, adverse interest of a director, officer or stockholder, nondisclosure, miscomputation, or the application of improper principles or practices of accounting, may be ratified before or after judgment, by the Board or by the stockholders in case less than a quorum of directors are qualified, and, if so ratified, shall have the same force and effect as if the questioned transaction had been originally duly authorized, and said ratification shall be binding upon the Corporation and its stockholders and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

**ARTICLE XII**
**INDEMNIFICATION**

The Corporation shall, to the fullest extent permitted by the GCL, indemnify any and all persons whom it shall have power to indemnify against any and all of the costs, expenses, liabilities or other matters incurred by them, with respect to any act or omission solely occurring from and after November [__], 2016, by reason of having been officers, directors, employees, or other agents of the Corporation, any subsidiary of the Corporation or of any other corporation for which they acted in such capacity at the request of the Corporation.

**ARTICLE XIII**
**BY-LAW CHANGES**
**AMENDMENT, REPEAL, ADOPTION, ELECTION OF DIRECTORS**

16

NY 76395028v2

NY 76402583v1

**13.1**     Except as otherwise provided in the Certificate of Incorporation, the By-Laws may be amended, repealed, or adopted by vote of the holders of the shares at the time entitled to vote in the election of any directors.  By-Laws may also be amended, repealed, or adopted by the Board; however, any By-Law adopted by the Board may be amended by the stockholders entitled to vote thereon as herein above provided.

**13.2**     If any By-Law regulating an impending election of directors is adopted, amended, or repealed by the Board, there shall be set forth in the notice of the next meeting of stockholders for the election of directors the By-Law so adopted, amended, or repealed, together with a concise statement of the changes made.

17

NY 76395028v2

NY 76402583v1

**DRAFT**

**[FORM OF AMENDED AND RESTATED CERTIFICATE FOR SFX LLC SUBSIDIARIES]**

**AMENDED AND RESTATED
CERTIFICATE OF FORMATION
OF
[   ]**

This Amended and Restated Certificate of Formation of [   ] (the "Company"), is being filed pursuant to Section 18-208 of the Delaware Limited Liability Company Act (the "Act"), to amend and restate the original Certificate of Formation of the Company, which was filed on [   ], 201[   ], with the Secretary of State of the State of Delaware (the "Certificate").

The undersigned, being duly authorized to execute and file this Amended and Restated Certificate of Formation, does hereby certify as follows:

FIRST.  The name of the limited liability company formed hereby is [   ].

SECOND.  The address of the registered office of the LLC in the State of Delaware is c/o United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, Kent County, Delaware 19904.

THIRD.  The name and address of the registered agent of the LLC for service of process on the LLC in the State of Delaware is 874 Walker Road, Suite C, Dover, Kent County, Delaware 19904.

FOURTH. Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Company shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation as of the date first above written.

[   ]

By:_____
Name:_____
Title:  _____

DRAFT

RESTATED ARTICLES OF INCORPORATION

The undersigned certify that:

1.      They are the president and the secretary, respectively, of [   ].

**2.      These amended and restated Articles of Incorporation are being filed pursuant to** California Corporations Code**, Section 1400, and shall become effective pursuant to the Plan of Reorganization of SFX Entertainment, Inc., filed with the Delaware Bankruptcy Court on September 30, 2016 and amended and restated on [_____], without further action** by the board of directors **or shareholders of the Corporation pursuant to the Bankruptcy Court Confirmation Order dated on or about November [__], 2016.**

**3.**      2. The Articles of Incorporation of this corporation are amended and restated to read as follows:

**ARTICLE FIRST**
**NAME**

1.1      The name of the corporation is [   ] (hereinafter called the "Corporation").

**ARTICLE SECOND**
**NAME AND ADDRESS OF REGISTERED AGENT**

2.1      The street address of the Corporation's registered office in the State of California is [   ]. The name of the Corporation's registered agent at such address is [   ].

**ARTICLE THIRD**
**NATURE OF BUSINESS**

3.1      The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the California Corporations Code of California (the "California Corporations Code") other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

**ARTICLE FOURTH**
**CAPITAL STOCK**

4.1      **Authorized Stock.**  The total number of shares of stock which the Corporation shall have authority to issue is [   ] ([#]) shares of common stock, par value $0.001 per share (the "Common Stock").

4.2      **Common Stock Voting Rights.**  Subject to the provisions of any applicable law, the holders of outstanding shares of Common Stock shall exclusively possess voting power for the election of directors and for all other purposes, each holder of record of shares of Common Stock being entitled to one vote for each share of Common Stock standing in his name on the books of the Corporation.

NY 76402613v1

**4.3 Limitation on Issuance of Non-Voting Equity Securities.** Notwithstanding any other provision in this Article 4, pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Corporation shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

**4.4     Common Stock Dividends.**  The holders of Common Stock shall be entitled to receive such dividends as from time to time may be declared by the Board of Directors.

**4.5     Rights of Common Stock Upon Liquidation, Etc.**  In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, the holders of Common Stock shall be entitled to share, ratably according to the number of shares of Common Stock held by them, in all remaining assets of the Corporation available for distribution to its stockholders.

**ARTICLE FIFTH**
**MANAGEMENT**

**5.1**     The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors.  The Board of Directors of the Corporation shall have at all times at least one (1) director.  The number of directors shall be determined in the manner provided in the By-Laws.

**ARTICLE SIXTH**
**DURATION OF EXISTENCE**

**6.1**     The Corporation is to have perpetual existence.

**ARTICLE SEVENTH**
**POWERS OF THE BOARD OF DIRECTORS**

**7.1**     In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to adopt, amend or repeal the By-Laws of the Corporation without the assent or vote of the stockholders.

**ARTICLE EIGHTH**
**ELECTION OF DIRECTORS**

**8.1**     Elections of directors need not be by written ballot unless the By-Laws of the Corporation shall so provide.

- 2 -

**8.2**     Meetings of stockholders may be held within or without the State of California, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of California at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws of the Corporation.

## ARTICLE NINTH
## LIABILITY OF DIRECTORS

**9.1**     To the fullest extent permissible under California law, a director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director arising from acts or omissions solely occurring from and after November [__], 2016, except for liability:

**(i)**     for any breach of the director's duty of loyalty to the Corporation or its stockholders,

**(ii)**     for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation or the law, or

**(iii)**     for any transaction from which the director derived an improper personal benefit.

**9.2**     If the California Corporations Code is amended, changed or modified to authorize corporate action further eliminating or limiting the personal liability of directors to the Corporation, its stockholders or third parties, then the liability of the directors of the Corporation arising from acts or omissions solely occurring from and after November [__], 2016 shall be eliminated or limited to the fullest extent permitted by the California Corporations Code, as so amended, changed or modified.  Any repeal, amendment or modification of the provisions of this Article Ninth by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation relating to claims arising in connection with events which took place prior to the date of such repeal, amendment or modification.

## ARTICLE TENTH
## INDEMNIFICATION

**10.1**     The Corporation shall indemnify any person who was or is a party or witness, or is threatened to be made a party or witness, to any threatened, pending or completed action, suit or proceeding (including, without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative or investigative (including a grand jury proceeding), with respect to any act or omission solely occurring from and after November [__], 2016, by reason of the fact that he or she (i) is or was a director or officer of the Corporation or, (ii) as a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, agent, partner or trustee (or in any similar position) of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the

- 3 -

NY 76402613v1

fullest extent permitted by the California Corporations Code and any other applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than said law permitted the Corporation to provide prior to such amendment), against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with such action, suit or proceeding, or in connection with any appeal thereof; *provided, however*, that, except as provided in Section 10.2 of this Article with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify any such person in connection with an action, suit or proceeding (or part thereof) initiated by such person only if the initiation of such action, suit or proceeding (or part thereof) was authorized by the Board of Directors.  Such right to indemnification shall include the right to payment by the Corporation of expenses incurred in connection with any such action, suit or proceeding in advance of its final disposition; *provided, however*, that the payment of such expenses incurred by a director or officer in advance of the final disposition of such action, suit or proceeding shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it should be determined ultimately that such director or officer is not entitled to be indemnified under this Article or otherwise.

**10.2**   Any indemnification or advancement of expenses required under this Article shall be made promptly, and in any event within sixty (60) days, upon the written request of the person entitled thereto.  If a determination by the Corporation that the person is entitled to indemnification pursuant to this Article is required, and the Corporation fails to respond within sixty (60) days to a written request for indemnity, the Corporation shall be deemed to have approved such request.  If the Corporation denies a written request for indemnity or advancement of expenses, in whole or in part, of if payment in full pursuant to such request is not made within sixty (60) days, the right to indemnification and advancement of expenses as granted by this Article shall be enforceable by the person in any court of competent jurisdiction.  Such person's costs and expenses incurred in connection with successfully establishing his or her right to indemnification, in whole or in part, in any such action or proceeding shall also be indemnified by the Corporation.  It shall be a defense to any such action (other than an action brought to enforce a claim for advancement of expenses pursuant to this Article where the required undertaking has been received by the Corporation) that the claimant has not met the standard of conduct set forth in the California Corporations Code, but the burden of proving such defense shall be on the Corporation.  Neither the failure of the Corporation (including the Board of Directors, independent legal counsel or the stockholders) to have made a determination prior to the commencement of such action that indemnification of the claimant is proper in the circumstances because he or she has met the applicable standard of conduct set forth in the California Corporations Code, nor the fact that there has been an actual determination by the Corporation (including the Board of Directors, independent legal counsel or the stockholders) that the claimant has not met such applicable standard of conduct, shall be a defense to the action or create a presumption that the claimant has not met the applicable standard of conduct.

- 4 -

NY 76402613v1

**10.3**    The indemnification and advancement of expenses provided by, or granted pursuant to, this Article shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office, and shall continue as to any person who has ceased to be a director, officer, employee or agent, and shall inure to the benefit of the heirs, executors and administrators of such a person.  Any repeal or modification of the provisions of this Article Tenth shall not affect any obligations of the Corporation or any rights regarding indemnification and advancement of expenses of a director, officer, employee or agent with respect to any threatened, pending or completed action, suit or proceeding for which indemnification or the advancement of expenses is requested, in which the alleged cause of action accrued at any time prior to such repeal or modification.

**10.4**    The Corporation may purchase and maintain insurance, at its expense, to protect itself and any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify him or her against such liability under the provisions of this Article, the California Corporations Code or otherwise.

**10.5**    If this Article or any portion thereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify each director and officer of the Corporation as to expenses (including attorneys' fees), judgments, fines and amounts paid in settlement with respect to any action, suit or proceeding, whether civil, criminal, administrative or investigative, including, without limitation, a grand jury proceeding and an action, suit or proceeding by or in the right of the Corporation, to the fullest extent permitted by any applicable portion of this Article that shall not have been invalidated, by the California Corporations Code or by any other applicable law.

### ARTICLE ELEVENTH
### COMPROMISE WITH CREDITORS

**11.1**    Whenever a compromise or arrangement is proposed between the Corporation and its creditors or any class of them and/or between the Corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of California, may, in a summary fashion, upon the application of the Corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for the Corporation in accordance with the California Corporations Code or on the application of trustees in dissolution or of any receiver or receivers appointed for the Corporation in accordance with the California Corporations Code, order a meeting of the creditors or class of creditors, and/or of the stockholders or a class of stockholders of the Corporation, as the case may be, to be summoned in such manner as the said court directs.  If a majority in number representing three-fourths in value of the creditors or class

- 5 -

NY 76402613v1

of creditors, and/or of the stockholders or class of stockholders of the Corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of the Corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of the Corporation, as the case may be, and also on this Corporation.

**11.2** The foregoing amendment and restatement of Articles of Incorporation has been duly approved by the board of directors.

**11.3** The foregoing amendment and restatement of Articles of Incorporation has been adopted without the need for approval of the Board of Directors or the stockholders of the Corporation in accordance with Section 1400, California Corporations Code.

We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge.

Date: _____

                                            _____
                                      [_____]**, President**

                                            _____
                                    [_____]**Jason M. Barr, Secretary**

- 6 -

NY 76402613v1

DRAFT

**AMENDED AND RESTATED BY-LAWS**

**OF**

**[   ]**

**(a California corporation)**

## ARTICLE I
## OFFICES

The registered office of [    ] (the "Corporation") shall be located in [   ].  The principal office of the Corporation shall be in the state of New York.  The Corporation may also have offices at such other places within or without the State of California as the Board may from time to time determine or the business of the Corporation may require.

## ARTICLE II
## STOCKHOLDERS

### 2.1.   Place of Meetings.

Meetings of stockholders shall be held at the principal office of the Corporation or at such place within or without the State of California as the Board of Directors of the Corporation (the "Board") shall designate.

### 2.2.   Annual Meeting.

The annual meeting of the stockholders for the election of directors and for the transaction of any other proper business, shall be held at such date and time during the first four (4) months of each calendar year as shall be determined by the Board.  If no specific date is designated by the Board for the annual meeting, it shall be held on the first Monday in April of each year, if not a legal holiday under the laws of the State where such meeting is to be held, and if a legal holiday under the laws of such State, then on the next succeeding business day not a legal holiday under the laws of such State.

### 2.3.   Special Meetings.

Special meetings of the stockholders may be called by the Board, the Chairman, or the President, and shall be called by the President or the Secretary at the request in writing of a majority of the Board or at the request in writing by stockholders owning a majority in amount of the shares issued and outstanding.  Such request shall state the purpose or purposes of the proposed meeting.  Business transacted at a special meeting shall be confined to the purpose or purposes stated in the notice provided for such meeting.

NY 76395019v1
NY 76402587v1

**2.4.    Fixing Record Date.**

For the purpose of determining the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to or dissent from any proposal without a meeting, or for the purpose of determining stockholders entitled to receive payment of any dividend or the allotment of any rights, or for the purpose of any other action, the Board shall fix, in advance, a date as the record date for any such determination of stockholders.  Such date shall not **be** less than ten (10) nor more than sixty (60) days before the date of such meeting, nor more than sixty (60) days prior to any other action.  If no record date is fixed, it shall be determined in accordance with the provisions of law.

**2.5.    Notice of Meetings of Stockholders.**

Written notice of each meeting of stockholders shall state the purpose or purposes for which the meeting is called, the place, date, and hour of the meeting and, unless it is the annual meeting, shall indicate that it is being issued by or at the direction of the person or persons requesting or calling the meeting.  Notice shall be given either personally or by mail to each stockholder entitled to vote at such meeting, not less than ten (10) nor more than sixty (60) days before the date of the meeting.  If action is proposed to be taken that might entitle the stockholders to payment for their shares, the notice shall include a statement of that purpose and to that effect.  If mailed, the notice shall be deemed given when deposited in the United States mail, with postage thereon prepaid, directed to a stockholder at his, her or its address as it appears on the record of stockholders, or, if he, she or it shall have filed with the Secretary a written request that notices to him, her or it be mailed to some other address, then directed to him, her or it at such other address.  Unless the Board shall fix after the adjournment a new record date for an adjourned meeting, notice of such adjourned meeting need not be given if the time and place to which the meeting shall be adjourned is announced at the meeting at which the adjournment was taken.  At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting.  If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

**2.6.    Waivers.**

Notice of meeting need not be given to any stockholder who signs a waiver of notice, in person or by proxy, whether before or after a stockholders meeting.  The attendance of any stockholder at a meeting, in person or by proxy, without protesting prior to the conclusion of the meeting the lack of notice of such meeting, shall constitute a waiver of notice by him, her or it.

**2.7.    Quorum of Stockholders.**

Unless    the    Corporation's    ~~Certificate~~**Articles**    of    Incorporation    (the "~~Certificate~~**Articles** of Incorporation") provides otherwise, the holders of a majority of the shares

2

entitled to vote shall constitute a quorum at a meeting of stockholders for the transaction of any business, provided that when a specified item of business is required to be voted on by a class or classes, the holders of a majority of the shares of such class or classes shall constitute a quorum for the transaction of such specified item of business.  When a quorum is once present to organize a meeting, it is not broken by the subsequent withdrawal of any stockholders.  The stockholders present at a given meeting may adjourn the meeting despite the absence of a quorum.

**2.8.    Proxies.**

Every stockholder entitled to vote at a meeting of stockholders or to express consent or dissent without a meeting may authorize another person or persons to act for him, her or it by proxy.  Every proxy must be signed by the stockholder or his, her or its attorney-in-fact.  No proxy shall be valid after expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy.  Every proxy shall be revocable at the pleasure of the stockholder executing it, except as otherwise provided by law.

**2.9.    Qualification of Voters.**

Every stockholder of record shall be entitled at every meeting of stockholders to one vote for every share standing in his name on the record of stockholders, unless otherwise provided in the ~~Certificate~~**Articles** of Incorporation.

**2.10.    Vote of Stockholders.**

Except as otherwise required by statute or by the ~~Certificate~~**Articles** of Incorporation:

**(a)**    directors shall be elected by a plurality of the votes cast at a meeting of stockholders by the holders of shares entitled to vote in the election; and

**(b)**    all other corporate action shall be authorized by a majority of the votes cast.

**2.11.    List of Stockholders.**

The officer who has charge of the stock ledger of the Corporation, or the transfer agent of the Corporation's stock, if there be one then acting, shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order and showing the address of each stockholder and the number of shares registered in the name of each stockholder.  Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, at the place where the meeting is to be held, or at the office of the transfer agent.  A list shall also be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present.

NY 76395019v1
NY 76402587v1

**2.12.   Inspectors.**

The Board may, in advance of any meeting of stockholders, appoint one or more inspectors to act at such meeting or any adjournment thereof.  If the inspectors shall not be so appointed, or if any of them shall fail to appear or act, the chairman of the meeting may, and on the request of any stockholder entitled to vote thereat shall, appoint inspectors.  Each inspector, before entering upon the discharge of his duties, shall take and sign an oath to faithfully execute the duties of inspector at such meeting with strict impartiality and according to the best of his or her ability.  The inspectors shall determine the number of shares outstanding and the voting power of each share, the number of shares represented at the meeting, the existence of a quorum, and the validity and effect of proxies, and shall receive votes, ballots or consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate all votes, ballots or consents, determine the results of voting, and do such other acts as are proper to conduct the election or the vote with fairness to all stockholders.  On request of the chairman of the meeting or any stockholder entitled to vote thereat, the inspectors shall make a report in writing of any challenge, request or matter determined by them and shall execute a certificate of any fact found by them.  No director or candidate for the office of director shall act as inspector at an election of directors.  Inspectors need not be stockholders.

**2.13.   Written Consent of Stockholders.**

Any action that may be taken by vote may be taken without a meeting or a vote via a written consent, setting forth the action so taken, signed by the holders of all the outstanding shares entitled to vote thereon or by at least the minimum number of shares that would be necessary to take the corporate action via a vote at a duly held meeting of the stockholders with respect thereto, and shall be filed with the Secretary as part of the corporate records.

**ARTICLE III**
**DIRECTORS**

**3.1.   Board of Directors.**

Subject to any provision in the ~~Certificate~~**Articles** of Incorporation, the business of the Corporation shall be managed by its Board, each member of which shall be at least eighteen years of age and need not be a stockholder.

**3.2.   Number of Directors.**

The number of directors shall be not less than one (1) nor more than five (5).  The number of directors shall be fixed by the Board from time to time.

4

NY 76395019v1
**NY 76402587v1**

**3.3.    Election and Term of Directors.**

At each annual meeting of stockholders, the stockholders shall elect directors to hold office until the next annual meeting.  Each director shall hold office until the expiration of the term for which he is elected and until his successor has been elected and qualified, or until his prior resignation or removal.

**3.4.    Newly Created Directorships and Vacancies.**

**(a)**    Newly created directorships resulting from an increase in the authorized number of directors and vacancies occurring in the Board for any reason, except the removal of directors without cause, may be filled by the affirmative vote of a majority of the directors then in office, although less than a quorum exists.  Vacancies occurring by reason of the removal of directors without cause shall be filled by vote of the stockholders.  A director elected to fill a vacancy caused by resignation, death, or removal shall be elected to hold office for the unexpired term of his predecessor.

**(b)**    If at any time, by reason of death or resignation or other cause, the Corporation should have no directors in office, then any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder may call a special meeting of stockholders in accordance with the provisions of these By-Laws.  Each director elected to fill a vacancy shall hold office until the next succeeding annual meeting of stockholders and until his successor is elected and has qualified or until his earlier displacement from office by resignation, removal, replacement or otherwise.

**3.5.    Removal of Directors.**

Any or all of the directors may be removed for cause by vote of the stockholders or by action of the Board.  Directors may be removed without cause only by vote of the stockholders.

**3.6.    Resignation.**

A director may resign at any time by giving written notice to the Board, the President, or the Secretary of the Corporation.  Unless otherwise specified by the notice, the resignation shall take effect upon receipt thereof by the Board or such officer, and the acceptance of the resignation shall not be necessary to make it effective.

**3.7.    Quorum of Directors.**

Unless otherwise provided in the ~~Certificate~~**Articles** of Incorporation, a majority of the entire Board shall constitute a quorum for the transaction of business or of any specified item of business.  In the absence of a quorum at any meeting of the Board, a majority of the directors present threat, or, if no director be present, the Secretary, may adjourn such meeting to another time and place, or such meeting, unless it be the annual meeting of the Board need not be held.  At any adjourned meeting at which a quorum is present, any business may be transacted

5

which might have been transacted at the meeting as originally called. Except as provided in Section 3.11 of these By-Laws, the directors shall act only as a Board and the individual directors shall have no power as such.

### 3.8. Action of the Board; Written Consent and Telephone Communication.

**(a)** Unless otherwise required by law, the vote of a majority of the directors present at the time of the vote, if a quorum is present at such time, shall be the act of the Board. Each director present shall have one vote regardless of the number of shares, if any, which he may hold.

**(b)** Whenever any action is required or permitted to be taken by the Board or any committee thereof, such action may be taken without a meeting if all members of the Board or the committee consent in writing to the adoption of a resolution authorizing the action. The resolution and the written consent thereto by members of the Board or committee shall be filed with the minutes of the proceedings of the Board or committee. Meetings may also be held by conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting in such manner shall constitute presence in person at such meeting.

### 3.9. Place and Time of Board Meetings; Notice; Adjournment.

**(a)** The Board may hold its meetings at the office of the corporation or at such other places, either within or without the State of California, as it may, from time to time, determine.

**(b)** An annual meeting of the Board shall be held immediately following the annual meeting of stockholders at the place of such annual meeting of stockholders.

**(c)** Regular meetings of the Board may be held without notice at such time and place as it from time to time shall determine.

**(d)** Special meetings of the Board shall be held upon notice to the directors and may be called by the President or Chairman, upon three days' prior notice given to each director either personally or by mail or e-mail; or upon 24 hours prior notice to each director, if given by telephone, fax, cable, or wireless. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail, postage prepaid. Special meetings shall be called by the President, Chairman or Secretary in a like manner on written request by a majority of directors. Notice of a meeting need not be given to any director who submits a waiver of notice whether before or after the meeting or who attends the meeting without protesting prior thereto or at its commencement, the lack of notice to him or her. Except as otherwise specifically required by these By-Laws, a notice or waiver of notice of any regular or special meeting need not state the purposes of such meeting.

**(e)** A majority of the directors present, whether or not a quorum is present, may adjourn any meeting to another time and place. Notice of the adjournment shall be given to

6

NY 76395019v1
NY 76402587v1

all directors who were absent at the time of the adjournment and, unless such time and place are announced at the meeting, to the other directors.

### 3.10.   Chairman and Secretary of Meeting.

At all meetings of the Board, the Chairman or, in his or her absence, the President or, in his or her absence, a chairman chosen by the majority of the Board shall preside.  The Secretary, or in his or her absence or inability to act, any person appointed by the chairman of the meeting, shall act as secretary of the meeting and keep the minutes thereof.

### 3.11.   Executive and Other Committees.

**(a)**      The Board, by resolution adopted by a majority of the entire Board, may designate from among its members an executive committee and other committees, each consisting of one or more directors.  Each such committee shall serve at the pleasure of the Board.

**(b)**      Any such committee, to the extent provided in the resolution by which it is established, shall have and may exercise the powers of the Board and the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; provided, however, that no other such committee of the Board shall have the power or authority to:

(i)  amend the ~~Certificate~~**Articles** of Incorporation;

(ii)  adopt an agreement of merger or consolidation;

(iii)  recommend to the shareholders the sale, lease or exchange of all or substantially all of the Corporation's property and assets;

(iv)  recommend to the shareholders a dissolution of the Corporation or a revocation of a dissolution; or

(v)  amend these By-Laws.

**(c)**  In the absence or disqualification of any member of such committee or committees, the member ~~of~~**or** members thereof present at any meeting, and not disqualified from voting, whether or not he, she or they constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.  Each committee shall keep minutes of its proceedings and shall report such minutes to the Board when required.  All such proceedings shall be subject to revision or alteration by the Board, provided, however, that third parties shall not be prejudiced by such revision or alteration.

**(d)**      A majority of any committee may determine its action and fix the time and place of its meetings, unless the Board shall otherwise provide.  Notice of such meetings shall be given to each member of the committee in the manner provided for in Section 3.9 of these By-Laws.  The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

7

~~NY 76395019v1~~
**NY 76402587v1**

**3.12.    Compensation.**

The Board may fix an amount per annum or fees to be paid by the Corporation to directors for attendance at meetings of the Board or of any committee, or both, as the Board shall from time to time determine.  The Board may likewise provide that the Corporation shall reimburse each director or committee member for any expenses incurred by him or her on account of his or her attendance at any such meeting.  In addition, the Board shall also have power, in its discretion, to provide for and pay to directors rendering services to the Corporation not ordinarily rendered by the directors, as such, special compensation appropriate to the value of such services, as determined by the Board from time to time.  Nothing contained in this Section shall preclude any director from serving the Corporation in any other capacity and receiving compensation thereof.

**3.13.    Liability of Directors in Certain Cases.**

In case of any willful or negligent violation of the provisions of Sections 500 or 501 of the ~~General Corporation Law~~**California Corporations Code** of the State of California (the "~~GCL~~**CCC**"), the directors under whose administration the same may happen may be jointly and severally liable to the Corporation, and to its creditors in the event of its dissolution or insolvency, for the full amount of the dividend unlawfully paid, or for the full amount unlawfully paid for the purchase or redemption of the Corporation's stock, with interest from the time such liability accrued.  Any director who may have been absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself or herself from such liability by causing his or her dissent to be entered on the books containing the minutes of the proceedings of the directors at the time the same was done, or immediately after he or she has notice of the same.

**3.14    Access to Books and Records.**

Any director shall have the right to examine the Corporation's stock ledger, a list of its stockholders and its other books and records for a purpose reasonably related to his or her position as a director.  A director shall, in the performance of his or her duties be fully protected in relying in good faith upon the books of account or reports made to the Corporation by any of its officers, or by an independent certified accountant, or by an appraiser selected with reasonable care by the Board, or in relying in good faith upon other records of the Corporation.

**ARTICLE IV**
**OFFICERS**

**4.1.    Offices, Election, Term.**

**(a)**    The Board may elect or appoint a Chairman of the Board (the "Chairman of the Board" or "Chairman"), a President, one or more Vice Presidents, a Secretary, a Treasurer and such other officers as it may determine, who shall have such duties, powers, and functions as hereinafter provided.

8

**(b)** All officers shall be elected or appointed to hold office until the meeting of the Board following the annual meeting of stockholders and until their successors have been elected or appointed and qualified.

### 4.2. Removal, Resignation, Salary.

**(a)** Any officer elected or appointed by the Board may be removed by the Board with or without cause.

**(b)** In the event of the death, resignation, or removal of an officer, the Board in its discretion may elect or appoint a successor to fill the unexpired term.

**(c)** Any two or more offices may be held by the same person, except the offices of President and Secretary.

**(d)** The salaries of all officers shall be fixed by the Board.

### 4.3. Chairman of the Board.

The Chairman of the Board shall be ~~the chief executive officer of the Corporation~~**a director selected by the Board**. Subject to the control of the Board, he or she shall have general charge of the business and affairs of the Corporation; shall have the direction of all other Officers, agents and employees; and shall be an *ex officio* member of all committees of the Board. The Chairman of the Board shall, subject to the limitations contained in the ~~Certificate~~**Articles** of Incorporation, have the power to execute and deliver deeds, leases, contracts, mortgages, bonds, debentures, checks, drafts and other orders for the payment of money and other documents for and in the name of the Corporation.

### 4.4. President and Chief Executive Officer.

The President shall be the chief operating officer of the Corporation. Subject to the control of the Board and to the supervision of the Chairman of the Board, he or she shall have active charge of the day-to-day business and affairs of the Corporation and shall appoint, supervise and discharge employees and agents and shall fix their compensation (other than Officers appointed by the Board). The President shall perform all duties incident to that office and such other duties as from time to time may be assigned to him by the Board or these ~~by~~**By**-laws. The President shall, subject to the limitations contained ~~in~~**therein, have** the **power to execute** mortgages, bonds, debentures, checks, drafts and other orders for the payment of money and other documents for and in the name of the Corporation. At the request of the Chairman of the Board, at the direction of the Board, the President shall perform the duties of Chairman of the Board and when so acting shall have all the powers of, and be subject to all the restrictions upon, the Chairman of the Board.

### 4.5. Vice-Presidents.

Each Vice President shall have such powers and duties as shall be prescribed by the Board. At the direction of the President, the Vice President designated shall perform such duties of

9

President so authorized and when so acting shall have all the powers of, and be subject to all the restrictions upon, the President.  Unless and until a resolution is subsequently adopted by the Board and subject to the limitations contained in the ~~Certificate~~**Articles** of Incorporation, any Vice President ~~who is also the General Counsel for the Corporation~~ shall have the power to execute leases, mortgages and other contracts, agreements and instruments for the payment of money for and in the name of the Corporation.

**4.6.    Secretary.**

The Secretary shall:

**(a)**    attend all meetings of the Board and of the stockholders;

**(b)**    record all votes and minutes of all proceedings in a book to be kept for that purpose;

**(c)**    give or cause to be given notice of all meetings of stockholders and of special meetings of the Board;

**(d)**    keep in safe custody the seal of the Corporation and affix it to any instrument when authorized by the Board;

**(e)**    when required, prepare or cause to be prepared and available at each meeting of stockholders a certified list in alphabetical order of the names of the stockholders entitled to vote thereat, indicating the number of shares of each respective class held by each;

**(f)**    keep all of the documents and records of the Corporation as required by law or otherwise in a proper and safe manner; and

**(g)**    perform such other duties as may be prescribed by the Board.

**4.7.    Assistant Secretaries.**

During the absence or disability of the Secretary, the Assistant Secretary or, if there are more than one, the one so designated by the Secretary or the Board, shall have all of the powers and functions of the Secretary.

**4.8.    Treasurer.**

The Treasurer shall be the chief financial officer of the Corporation.  The Treasurer shall:

**(a)**    have the custody of the corporate funds and securities;

**(b)**    keep full and accurate accounts of receipts and disbursements in the corporate books;

NY 76395019v1
NY 76402587v1

(c)     deposit all money and other valuables in the name and to the credit of the Corporation in such depositories as may be designated by the Board;

(d)     disburse the funds of the Corporation as may be ordered or authorized by the Board and preserve proper vouchers for such disbursements;

(e)     render to the President, the Chairman and Board at the regular meetings of the Board, or whenever they require it, an account of all of his or her transactions as Treasurer and of the financial condition of the Corporation;

(f)     render a full financial report at the annual meeting of the stockholders if so requested;

(g)     be furnished by all corporate officers and agents, at his or her request, with such reports and statements as he or she may require as to all financial transactions of the Corporation; and

(h)     perform such other duties as are given to him or her by these By-Laws or as from time to time are assigned to him or her by the Board, the President or the Chairman.

### 4.9.   Assistant Treasurer.

During the absence or disability of the Treasurer, the Assistant Treasurer or, if there are more than one, the one so designated by the Treasurer or by the Board, shall have all the powers and functions of the Treasurer.

### 4.10.   Sureties and Bonds.

In case the Board shall so require, any officer or agent of the Corporation shall execute to the Corporation a bond in such sum and with such surety or sureties as the Board may direct, conditioned upon the faithful performance of his or her duties to the Corporation and including responsibility for negligence and for the accounting for all property, funds, or securities of the Corporation which may come into his or her hands.

**ARTICLE V**
**CERTIFICATES FOR SHARES**

### 5.1.   Certificates.

The shares of the Corporation shall be represented by certificates.  Share certificates shall be numbered and entered in the books of the Corporation as they are issued. Such certificates shall exhibit the holder's name and the number of shares and shall be signed by the Chairman of the Board, the President, Treasurer, or a Vice President, on the one hand, and the Secretary or an Assistant Secretary, on the other hand, and shall bear the corporate seal.  The signatures of the officers upon a certificate may be facsimiles if the certificate is countersigned

11

by a transfer agent or registered by a registrar other than the Corporation itself or its employee, or if the shares are listed on a registered national securities exchange or interdealer quotation system. In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he or she were such officer at the date of its issue.

A certificate representing shares shall not be issued until the full amount of consideration therefor has been paid or received in accordance with law except as the ~~GCL~~**CCC** may otherwise permit.

### 5.2. Books and Account and Record of Stockholders.

The books and records of the Corporation may be kept at such places within or without the State of California as the Board may from time to time determine. The stock record books and the blank stock certificate books shall be kept by the Secretary or by any other officer or agent designated by the Board.

### 5.3. Lost or Destroyed Certificates.

The Board may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation, alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate to be lost or destroyed. When authorizing such issue of a new certificate or certificates, the Board may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his, her or its legal representative, to advertise the same in such manner as the Board shall require and/or give the Corporation a bond in such sum and with such surety or sureties as the Board may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed. Anything herein to the contrary notwithstanding, the Board, in its absolute discretion, may refuse to issue any such new certificate, except pursuant to legal proceedings under the laws of the State of California.

### 5.4. Transfers of Shares.

**(a)** Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, and cancel the old certificate. Every such transfer shall be entered on the transfer book of the Corporation which shall be kept at its principal office. No transfer shall be made within ten (10) days next preceding the annual meeting of stockholders.

**(b)** The Corporation shall be entitled to treat the holder of record of any share as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share on the part of any other person, whether or not it shall have express or other notice thereof, except as expressly provided by the laws of the State of California.

~~NY 76395019v1~~
**NY 76402587v1**

**5.5.    Regulations.**

The Board may make such additional rules and regulations, not inconsistent with these By-Laws, as it may deem expedient concerning the issue, transfer and registration of certificates for shares of stock of the Corporation.  It may appoint, or authorize any officer or officers to appoint, one or more transfer agents or one or more transfer clerks and one or more registrars and may require all certificates for shares of stock to bear the signature or signatures of any of them.

**5.6.    Closing Transfer Books.**

The Board shall have the power to close the share transfer books of the Corporation for a period of not more than ten (10) days during the thirty (30) day period immediately preceding (i) any stockholders' meeting, or (ii) any date upon which stockholders shall be called upon to, or have a right to, take action without a meeting, or (iii) any date fixed for the payment of a dividend or any other form of distribution, and only those stockholders of record as of the time the transfer books are closed shall be recognized as such for the purpose of (A) receiving notice of, or voting at, such meeting, or (B) taking appropriate action, or (C) being entitled to receive any dividend or other form of distribution.

~~5.7.    Fixing of Record Date.~~

~~In order that the Corporation may determine the stockholders entitled to notice of, or to vote at, any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or to receive payment of any dividend or other distribution or allotment of any rights, or to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix, in advance, a record date, which shall be not less than ten (10) nor more than sixty (60) days prior to such meeting or to any other such action.  A determination of stockholders of record entitled to notice of, or to vote at, a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for an adjourned meeting, and must fix a new record date for an adjourned meeting that is reconvened thirty (30) days or more after the original meeting date.~~

**ARTICLE VI**
**DIVIDENDS**

Subject to the provisions of the ~~Certificate~~**Articles** of Incorporation and to applicable law, dividends on the outstanding shares of the Corporation may be declared in such amounts and at such time or times as the Board may determine.  Before payment of any dividend, there may be set aside out of the net profits of the Corporation available for dividends such sum or sums as the Board, from time to time, in its absolute discretion deems proper as a reserve fund to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the Board shall think conducive to the interests of the Corporation, and the Board may modify or abolish any such reserve.

13

## ARTICLE VII
## CORPORATE SEAL

The corporate seal shall have inscribed thereon the name of the Corporation and the words "Corporate Seal, California."  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or may be used in any other lawful manner.

## ARTICLE VIII
## EXECUTION OF INSTRUMENTS

### 8.1.    Execution of Contracts.

Except as otherwise required by statute, the ~~Certificate~~**Articles** of Incorporation or these By-Laws, any contracts or other instruments may be executed and delivered in the name and on behalf of the Corporation by such officer or officers (including any assistant officer) of the Corporation as the Board may from time to time direct.  Such authority may be general or confined to specific instances as the Board may determine.  Unless authorized by the Board or expressly permitted by these By-Laws, an officer or agent or employee shall not have the power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it pecuniarily liable for any purpose or in any amount.

### 8.2.    Loans.

Unless the Board shall otherwise determine, either (a) the Chairman of the Board, or the President, or (b) a Vice President, together with the Treasurer, may effect loans and advances at any time for the Corporation or guarantee any loans and advances to any subsidiary or parent corporation of the Corporation, from any bank, trust company or other institution, or from any firm, corporation or individual, and for such loans and advances may make, execute and deliver promissory notes, bonds or other certificates or evidences of indebtedness of the Corporation, or guarantee of indebtedness of parent or subsidiary corporations of the Corporation, but no officer or officers shall mortgage, pledge, hypothecate or transfer any securities or other property of the Corporation, except when authorized by the Board.

### 8.3.    Checks, Drafts, etc.

All checks, drafts, bills of exchange or other orders for the payment of money out of the funds of the Corporation, and all notes or other evidences of indebtedness of the Corporation, shall be signed in the name and on behalf of the Corporation by such persons and in such manner as shall from time to time be authorized by the Board.

### 8.4.    Deposits.

All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board may from time to time designate or as may be designated by any officer or officers of the

14

NY 76395019v1
NY 76402587v1

Corporation to whom such power of designation may from time to time be delegated by the Board.  For the purpose of deposit and for the purpose of collection for the account of the Corporation, checks, drafts and other orders for the payment of money which are payable to the order of the Corporation may be endorsed, assigned and delivered by any officer or agent of the Corporation, or in such manner as the Board may determine by resolution.

**8.5.    General and Special Bank Accounts.**

The Board may from time to time authorize the opening and keeping of general and special bank accounts with such banks, trust companies or other depositories as the Board may designate or as may be designated by any officer or officers of the Corporation to whom such power of designation may from time to time be delegated by the Board.  The Board may make such special rules and regulations with respect to such bank accounts, not inconsistent with the provisions of these By-Laws, as it may deem expedient.

**8.6.    Proxies in Respect of Securities of Other Corporations.**

Unless otherwise provided by resolution adopted by the Board, the Chairman of the Board, the President, or a Vice President may from time to time appoint an attorney or attorneys or agent or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes which the Corporation may be entitled to cast as the holder of stock or other securities in any other corporation, any of whose stock or other securities may be held by the Corporation, at meetings of the holders of the stock or other securities of any such other corporation, or to consent in writing, in the name of the Corporation as such holder, to any action by such other corporation, and may instruct the person or persons so appointed as to the manner of casting such votes or providing such consent, and may execute or cause to be executed in the name and on behalf of the Corporation and under its corporate seal, or otherwise, all such written proxies or other instruments as he or she may deem necessary or proper in the premises.

**ARTICLE IX**
**FISCAL YEAR**

The Corporation's fiscal year shall begin on the first day of January and conclude on the final day of December in each year at such other time as may be designated by the Board.

**ARTICLE X**
**REFERENCES TO ~~CERTIFICATE~~ARTICLES OF INCORPORATION**

Reference to the ~~Certificate~~**Articles** of Incorporation in these By-Laws shall include all amendments thereto or changes thereof unless specifically excepted.

**ARTICLE XI**
**MISCELLANEOUS**

**11.1.    Interested Directors.**

15

~~NY 76395019v1~~
**NY 76402587v1**

Any director or officer of the Corporation shall not be disqualified by his or her office from dealing or contracting with the Corporation as a vendor, purchaser, employee, agent, lessor, lessee or otherwise.

No transaction contract or other act of the Corporation shall be void or voidable or in any way affected or invalidated by reason of the fact that any director or officer, or any firm or corporation in which such director or officer is a member or is a stockholder, director or officer, is in any way interested in such transaction, contract or other act provided (i) the fact that such director, officer, firm or corporation is so interested shall be disclosed or shall be known to the Board or such members thereof as shall be present at any meeting of the Board at which action upon any such transaction, contract or other act shall be taken; and (ii) no other approval for such transaction is required under these By-Laws; nor shall any such director or officer be accountable or responsible to the Corporation for or in respect of any such transaction, contract or other act of the Corporation or for any gains or profits realized by him or her by reason of the fact that he, she or any firm of which he or she is a member, or any corporation of which he or she is a stockholder, director or officer is interested in such transaction, contract or other act; and any such director may be counted in determining the existence of a quorum at any meeting of the Board which shall authorize or take action in respect of any such transaction, contract or other act, and may vote thereat to authorize, ratify or approve any such transaction, contract or other act with like force and effect as if he, she or any firm of which he or she is a member or any corporation of which he or she is a stockholder, director or officer were not interested in such transaction, contract or other act.

**11.2.    Ratification.**

Any transaction questioned in any stockholders' derivative suit on the grounds of lack of authority, defective or irregular execution, adverse interest of a director, officer or stockholder, nondisclosure, miscomputation, or the application of improper principles or practices of accounting, may be ratified before or after judgment, by the Board or by the stockholders in case less than a quorum of directors are qualified, and, if so ratified, shall have the same force and effect as if the questioned transaction had been originally duly authorized, and said ratification shall be binding upon the Corporation and its stockholders and shall constitute a bar to any claim or execution of any judgment in respect of such questioned transaction.

**ARTICLE XII**
**INDEMNIFICATION**

The Corporation shall, to the fullest extent permitted by the ~~GCL~~CCC, indemnify any and all persons whom it shall have power to indemnify against any and all of the costs, expenses, liabilities or other matters incurred by them, with respect to any act or omission solely occurring from and after November [__], 2016, by reason of having been officers, directors, employees, or other agents of the Corporation, any subsidiary of the Corporation or of any other corporation for which they acted in such capacity at the request of the Corporation.

**ARTICLE XIII**
**BY-LAW CHANGES**
**AMENDMENT, REPEAL, ADOPTION, ELECTION OF DIRECTORS**

16

**13.1**    Except as otherwise provided in the ~~Certificate~~**Articles** of Incorporation, the By-Laws may be amended, repealed, or adopted by vote of the holders of the shares at the time entitled to vote in the election of any directors.  By-Laws may also be amended, repealed, or adopted by the Board; however, any By-Law adopted by the Board may be amended by the stockholders entitled to vote thereon as herein above provided.

**13.2**    If any By-Law regulating an impending election of directors is adopted, amended, or repealed by the Board, there shall be set forth in the notice of the next meeting of stockholders for the election of directors the By-Law so adopted, amended, or repealed, together with a concise statement of the changes made.

17

NY 76395019v1
NY 76402587v1

**DRAFT**

## Amended and Restated Articles of Organization
filed pursuant to §7-90-301, et seq. and §7-90-304.5 of the Colorado Revised Statutes (C.R.S.)

ID number:                                                            [    ]

1. Entity name:                                                    [    ]

2. New Entity name:
   (if applicable)

3. Use of Restricted Words *(if any of these*
   *terms are contained in an entity name, true*        "bank" or "trust" or any derivative thereof
   *name of an entity, trade name or trademark*          "credit union"           "savings and loan"
   *stated in this document, mark the applicable*        "insurance", "casualty", "mutual", or "surety"
   *box)*:

4. If the limited liability company's
   period of duration as amended is
   less than perpetual, state the date
   on which the period of duration
   expires:
                                                                  *(mm/dd/yyyy)*

   **OR**

   If the limited liability company's period of duration as amended is perpetual, mark this box:      x

5 The amended and restated constituent filed document is attached.

6. *(Optional)*  Delayed effective date:      _____
                                                           *(mm/dd/yyyy)*

Notice:

Causing this document to be delivered to the secretary of state for filing shall constitute the affirmation or acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the individual's act and deed, or that the individual in good faith believes the document is the act and deed of the person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic statutes, and that the individual in good faith believes the facts stated in the document are true and the document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the secretary of state, whether or not such individual is named in the document as one who has caused it to be delivered.

NY 76402625v1

7. Name(s) and address(es) of the
individual(s) causing the document
to be delivered for filing:

| Barr | Jason | M. | |
|------|-------|-----|--------|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

524 Broadway, 11th Floor

*(Street name and number or Post Office Box information)*

| New York | NY | 10012 |
|----------|-----|-------|
| *(City)* | *(State)* | *(Postal/Zip Code)* |

NY 76402625v1

## RESTATED ARTICLES OF ORGANIZATION
## OF
## [   ]

**FIRST**:  The name of the limited liability company is [   ] (the "Company").

**SECOND**:   The Company shall operate in perpetuity, unless sooner dissolved in accordance with its Operating Agreement.

**THIRD**:  The Company is organized for any legal and lawful purpose pursuant to the Colorado Limited Liability Company Act.

**FOURTH**:  The principal office address of the Company is [   ].

**FIFTH**:  The name and street address of the registered agent of the Company within the State of Colorado is [   ].

**SIXTH**:  The management of the Company shall be vested in one or more managers.

**SEVENTH**:  There is at least one member of the Company.

**EIGHTH**:  Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Company shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

[   ]

By:_____
Name:_____
Title:  _____

**DRAFT**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY**

**OPERATING AGREEMENT**

**OF**

**[    ]**

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement") of [      ], a Colorado limited liability company (the "Company"), is made and entered into as of [   ], 2016, by [  ], a [   ] [   ], as the sole member (the "Member"), pursuant to and in accordance with the Colorado Limited Liability Company Act, as amended from time to time (the "Act").

A.      The Company was formed on [   ] (the "Formation Date"), pursuant to the filing of its articles of organization on the Formation Date with the Secretary of the State of Colorado, pursuant to and in accordance with the Act (the "Required Filing").

B.      The Company desires that this Agreement constitute a "limited liability company agreement," as defined under the Act.

NOW, THEREFORE, the undersigned Member agrees as follows:

1.      Name.  The name of the limited liability company formed hereby is [   ].

2.      Certificates.  The Company came into existence under the Act by the Required Filing.  The Member or such other person designated by the Member as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company desires to conduct business.

3.      Purposes.  The Company is formed for the purpose of engaging in any lawful business permitted by the Act or the laws of any jurisdiction in which the Company may do business.

4.      Powers.  The Company, the Member and the Managers shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

NY 76402430v1

5.    Principal Business Office.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.    Registered Office.  The address of the registered office of the Company in the State of Colorado is c/o [   ].

7.    Registered Agent.  The name and address of the registered agent in Colorado for service of process is [   ].

8.    Member.  The name and the mailing address of the Member is:

| Name | Address |
| --- | --- |
| [   ] | 524 Broadway, 11th Floor |
|  | New York, NY 10012 |

9.    Qualification in Other Jurisdiction.  The Member shall cause the Company to be registered or qualified under its own name or under an assumed or fictitious name pursuant to a foreign limited liability company statute or similar laws in any jurisdiction in which the Company owns property or transacts business if such registration or qualification is necessary to protect the limited liability of the Member or to permit the Company to lawfully own property or transact business in such jurisdictions.

10.    Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

11.    Capital Contributions.  The Member is not required to make any capital contributions to the Company.  However, the Member may at any time make capital contributions to the Company.

12.      Allocation of Profits and Losses.  The Company's profits and losses shall be allocated to the Member.

13.      Distributions.  Distributions (including a return of all or any capital contributions) shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

14.      Management.  In accordance with Section 7-80-402 of the Act, management of the Company shall be vested in the managers (the "Managers"), who shall be appointed by the Member.  As of the date hereof, the Managers shall be [   ].  The Managers shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by managers of a limited liability company under the laws of the State of Colorado.  The Managers shall have the authority to bind the Company.  Notwithstanding any other provision of this Agreement to the contrary, the Managers are authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other person.

15.      Action by Written Consent. Any action required or permitted to be taken by the Member or the Managers, either at a meeting or otherwise, may be taken without a meeting if the Member or the Managers, as the case may be, holding the requisite vote required hereunder (or under the Act) for approval of such action, consent thereto in writing and the writing or writings are filed with the minutes of proceedings of the Member or the Managers, as the case may be.

16.      Officers.  The Managers may, from time to time as they deem advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  Unless the Managers decide otherwise, if the title is one commonly used for officers of a business corporation formed under the Colorado Business Corporation Act, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 16 may be revoked at any time by the Managers.  An Officer may be removed with or without cause by the Managers.  As of the date hereof, the Officers of the Company are the following persons:

| Name | Title |
|------|-------|
| [   ] | **Chief Executive Officer and** President |

NY 76402430v1

[    ]                                    Chief Financial Officer

[    ]                                    Secretary


In addition to, and not in limitation of, what is stated above in this Section 16, the Officers shall have, and are hereby granted, the power and authority to act on behalf of and bind the Company, and to execute, file and deliver any and all certificates, agreements, power of attorneys, contracts and any other instruments, or take any other action for and on behalf of the Company, as any Officer may deem desirable.


17.    Other Business.  The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.


18.    Exculpation and Indemnification.  Neither the Member, the Managers nor any Officer shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission solely occurring from and after November [___], 2016 performed or omitted by the Member, the Managers or any such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member, the Managers or any such Officer by this Agreement, except that the Member, the Managers or such Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's, the Managers' or such Officer's willful misconduct.  To the fullest extent permitted by applicable law, the Member, the Managers or such Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member, the Managers or such Officer by reason of any act or omission solely occurring from and after November [___], 2016 performed or omitted by the Member, the Managers or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member, the Managers or such Officer by this Agreement, except that neither the Member, the Managers nor such Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member, the Managers or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 shall be provided out of and to the extent of Company assets only, and neither the Member, the Managers nor such Officer shall have personal liability on account thereof.


19.    Banking Matters.  The Managers and each Officer and any agent or employee of the Company, or other person designated by any Manager or Officer, is hereby authorized and empowered (i) to (A) establish one or more domestic or international accounts (including but not limited to, depository, checking, disbursement, custodian or investment accounts) and other accounts as deemed necessary or expeditious for the business purposes of the Company

("Accounts"), in the name of the Company with any bank, trust company, savings and loan institution, brokerage firm or other financial institution which any Manager or Officer shall from time to time designate as a depository of funds, securities or other property of the Company, for any purpose and on terms and conditions deemed appropriate buy such person on behalf of the Company; and (B) close Accounts of the Company now or hereafter established; and (ii) to assign, limit or revoke any and all authority of any agent or employee of the Company, or other person designated by any Manager or Officer, to (i) sign checks, drafts and orders for the payment of money drawn on the Company's Accounts, and all notes of the Company and all acceptances and endorsements of the Company; (ii) execute or initiate electronic fund transfers; (iii) execute or initiate foreign currency exchange transactions; (iv) execute or initiate the investment of monies; and (iv) initiate requests for information for any Account of the Company.

20.     Assignments.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 20, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

21.     Admission of Additional Members.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

22.     Term.  The term of the Company shall commence on the Formation Date and shall continue until the Company is dissolved and its affairs are wound up in accordance with the Act.

23.     Dissolution.

(a)     The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) at any time there are no members of the Company unless, within ninety (90) days of the occurrence of the event that terminated the continued membership of the last remaining member of the Company (the "Termination Event"), the personal representative of the last remaining member agrees in writing to continue the Company and to the admission of the Company of such personal representative or its nominee or designee as a member, effective as of the occurrence of the Termination Event, and such successor or its nominee or designee shall be admitted upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, or (iii) the entry of a decree of judicial dissolution pursuant to the Act.

NY 76402430v1

(b)    The bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, as determined by the Member in accordance with the Act.

24.    Separability of Provisions.  Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

25.    Entire Agreement.  This Agreement constitutes the entire Agreement of the Member with respect to the subject matter hereof.

26.    Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Colorado (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

27.    Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

28.    Sole Benefit of Member.  The provisions of this Agreement (including Section 11) are intended solely to benefit the Member (and with respect to Section 18 hereof, the Managers and any Officer) and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

[Signature page follows.]

NY 76402430v1

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

MEMBER:

[   ]

By:_____
    Name:
    Title:

| | |
|---|---|
| Form **LLC-5.30**<br>May 2012<br>**Secretary of State**<br>Department of Business Services<br>Limited Liability Division<br>501 S. Second St., Rm. 351<br>Springfield, IL  62756<br>217-524-8008<br>www.cyberdriveillinois.com | Illinois<br>Limited Liability Company Act<br>**Restated Articles of Organization** |

**Payment may be made by check payable to Secretary of State. If check is returned for any reason this filing will be void.**

**SUBMIT IN DUPLICATE**
Type or print clearly.

**This space for use by Secretary of State.**

**Filing Fee:** $500
**Approved:**

**FILE #**

This space for use by Secretary of State.

1. Limited Liability Company Name: _____

   _____

   The LLC name must contain the words Limited Liability Company, L.L.C. or LLC, and cannot contain the terms Corporation, Corp., Incorporated, Inc., Ltd., Co., Limited Partnership, or LP.

2. Limited Liability Company Name as originally filed with the Secretary of State: _____

   _____

3. Address of Principal Place of Business: (P.O. Box alone or c/o is unacceptable.) _____

   _____

4. The original Articles of Organization were effective on: _____

   Month, Day, Year

5. Registered Agent's Name and Registered Office Address:

   Registered Agent: _____
   First Name          Middle Initial          Last Name

   Registered Office:_____
   (P.O. Box alone or          Number          Street          Suite #

   c/o is unacceptable.) _____  **IL** _____
   City          ZIP Code

6. Purpose(s) for which the LLC is organized: **The transaction of any or all lawful business for which Limited Liability Companies may be organized under this Act.** (LLCs organized to provide professional services must list the address(es) from which those services will be rendered if different from item 3. If more space is needed, use additional sheets of this size.)

**LLC-5.30**

7. The duration of the company is perpetual unless otherwise stated. If the operating agreement provides for a dissolution date, enter that date here: _____

Month, Day, Year

8. Optional provisions for regulation of internal affairs of the LLC per Section 5-5 (a) (8) maybe included as an attachment.

9. The Limited Liability Company (Check either a or b below.)

   ☐  a)  Management is vested in the manager(s):

        List all manager names and business addresses:

        _____

        _____

        _____

        _____

   ☐  b)  Management is vested by the member(s):

        List all member names and business addresses:

        _____

        _____

        _____

        _____

10. The undersigned affirms, under penalties of perjury, having authority to sign hereto, that these Restated Articles of Organization are executed pursuant to Section 5-30 of the Limited Liability Company Act and to the best of my knowledge and belief, true, correct and complete.

Dated _____ , _____

Month & Day               Year

_____

Signature

_____

Name and Title (type or print)

_____

If applicant is a Company or other Entity, state Name of Company and indicate
whether it is a member or manager of the LLC.

**DRAFT**

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY

## OPERATING AGREEMENT

## OF

## [   ]

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement") of [      ], an Illinois limited liability company (the "Company"), is made and entered into as of [   ], 2016, by [   ], a [   ] [   ], as the sole member (the "Member"), pursuant to and in accordance with the Illinois Limited Liability Company Act, as amended from time to time (the "Act").

A.      The Company was formed on [   ] (the "Formation Date"), pursuant to the filing of its certificate of organization on the Formation Date with the Secretary of the State of Illinois, pursuant to and in accordance with the Act (the "Required Filing").

B.      The Company desires that this Agreement constitute a "limited liability company agreement," as defined under the Act.

NOW, THEREFORE, the undersigned Member agrees as follows:

1.      Name.  The name of the limited liability company formed hereby is [   ].

2.      Certificates.  The Company came into existence under the Act by the Required Filing.  The Member or such other person designated by the Member as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company desires to conduct business.

3.      Purposes.  The Company is formed for the purpose of engaging in any lawful business permitted by the Act or the laws of any jurisdiction in which the Company may do business.

4.      Powers.  The Company and the Member shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

NY 76394999v2
NY 76402434v1

5.      Principal Business Office.  The principal business office of the Company shall be located at [   ] or at such other location as may hereafter be determined by the Member.

6.      Registered Office.  The address of the registered office of the Company in the State of Illinois is [   ].

7.      Registered Agent.  The name and address of the registered agent in Illinois for service of process is [   ].

8.      Member.  The name and the mailing address of the Member is:

| Name | Address |
|------|---------|
| [   ] | 524 Broadway, 11th Floor |
|       | New York, NY 10012 |

9.      Qualification in Other Jurisdiction.  The Member shall cause the Company to be registered or qualified under its own name or under an assumed or fictitious name pursuant to a foreign limited liability company statute or similar laws in any jurisdiction in which the Company owns property or transacts business if such registration or qualification is necessary to protect the limited liability of the Member or to permit the Company to lawfully own property or transact business in such jurisdictions.

10.     Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

11.     Capital Contributions.  The Member is not required to make any capital contributions to the Company.  However, the Member may at any time make capital contributions to the Company.

12.     Allocation of Profits and Losses.  The Company's profits and losses shall be allocated to the Member.

13.     Distributions.  Distributions (including a return of all or any capital contributions) shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

14.     Management.  In accordance with Section 15-1 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Illinois.  The Member shall have the authority to bind the Company.  Notwithstanding any other provision of this Agreement to the contrary, the Member is authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other person.

15.     Officers.  The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Illinois Business Corporation Act of 1983, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 15 may be revoked at any time by the Member.  An Officer may be removed with or without cause by the Member.  As of the date hereof, the Officers of the Company are the following persons:

| Name | Title |
|------|-------|
| [ ] | **Chief Executive Officer and** President |
| [ ] | Chief Financial Officer |
| [ ] | Secretary |

In addition to, and not in limitation of, what is stated above in this Section 15, the Officers shall have, and are hereby granted, the power and authority to act on behalf of and bind the Company,

NY 76394999v2
**NY 76402434v1**

and to execute, file and deliver any and all certificates, agreements, power of attorneys, contracts and any other instruments, or take any other action for and on behalf of the Company, as any Officer may deem desirable.

16.    Other Business.  The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

17.    Exculpation and Indemnification.  Neither the Member nor any Officer shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission, solely occurring from and after November [__], 2016 and performed or omitted by the Member or any such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or any such Officer by this Agreement, except that the Member or such Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's or such Officer's willful misconduct.  To the fullest extent permitted by applicable law, the Member or such Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member or such Officer by reason of any act or omission, solely occurring from and after November [__], 2016 and performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that neither the Member nor such Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 17 shall be provided out of and to the extent of Company assets only, and neither the Member nor such Officer shall have personal liability on account thereof.

18.    Banking Matters.  The Member and each Officer and any agent or employee of the Company, or other person designated by such Member or Officer, is hereby authorized and empowered (i) to (A) establish one or more domestic or international accounts (including but not limited to, depository, checking, disbursement, custodian or investment accounts) and other accounts as deemed necessary or expeditious for the business purposes of the Company ("Accounts"), in the name of the Company with any bank, trust company, savings and loan institution, brokerage firm or other financial institution which such Member or Officer shall from time to time designate as a depository of funds, securities or other property of the Company, for any purpose and on terms and conditions deemed appropriate buy such person on behalf of the Company; and (B) close Accounts of the Company now or hereafter established; and (ii) to assign, limit or revoke any and all authority of any agent or employee of the Company, or other person designated by such Member or Officer, to (i) sign checks, drafts and orders for the payment of money drawn on the Company's Accounts, and all notes of the Company and all acceptances and endorsements of the Company; (ii) execute or initiate electronic fund transfers; (iii) execute or initiate foreign currency exchange transactions; (iv) execute or initiate the investment of monies; and (iv) initiate requests for information for any Account of the Company.

19.     Assignments. The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 19, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

20.     Admission of Additional Members. One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

21.     Term. The term of the Company shall commence on the Formation Date and shall continue until the Company is dissolved and its affairs are wound up in accordance with the Act.

22.     Dissolution.

(a)     The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) at any time there are no members of the Company unless, within ninety (90) days of the occurrence of the event that terminated the continued membership of the last remaining member of the Company (the "Termination Event"), the personal representative of the last remaining member agrees in writing to continue the Company and to the admission of the Company of such personal representative or its nominee or designee as a member, effective as of the occurrence of the Termination Event, and such successor or its nominee or designee shall be admitted upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, or (iii) the entry of a decree of judicial dissolution under Section 35-1 of the Act.

(b)     The bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 35-10 of the Act.

23.     Separability of Provisions. Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or

illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

26.  26. Entire Agreement.  This Agreement constitutes the entire Agreement of the Member with respect to the subject matter hereof.

25.  Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Illinois (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

26.  Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

27.  Sole Benefit of Member.  The provisions of this Agreement (including Section 11) are intended solely to benefit the Member (and with respect to Section 17 hereof, any Officer) and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

[Signature page follows.]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

MEMBER:

[   ]

By:_____
    Name:
    Title:

Signature page to Amended and Restated Limited Liability Company Operating Agreement of
[   ]

**DRAFT**

Federal Employer
Identification Number: _____

**AMENDED AND RESTATED CERTIFICATE OF ORGANIZATION**

**OF**

**[    ]**

Pursuant to the provisions of the Massachusetts Limited Liability Company Act, the undersigned hereby certifies as follows:

1.  The name of the limited liability company is:

[    ]

2.    The date the original Certificate of Organization was filed in the Commonwealth of Massachusetts is:  [   ]

3.  The text of the Certificate of Organization, as amended heretofore, is hereby restated as further amended to read as herein set forth in full in the order provided in 950 CMR 112.03:

"CERTIFICATE OF ORGANIZATION

OF

[    ]

Pursuant to the provisions of the Massachusetts Limited Liability Company Act, the undersigned hereby certifies as follows:

1.  The name of the limited liability company is:

[    ]

2.    The address of the office of the limited liability company in the Commonwealth of Massachusetts required to be maintained by Section 5 of this act is [ ].

3.    The name and address of the resident agent for service of process for the limited liability company is [United Corporate Services, Inc., 18 Tremont Street, Boston, Massachusetts 02108].

4.  The limited liability company does not have a specific date of dissolution.

NY 76402595v1

5. (a)  The name and address of each manager of the limited liability company at the time of formation, if any, are:

Name                                              Address


5.  (b)  The name and address of one or more persons authorized to execute any documents to be filed with the Office of the Secretary of State, if there are no managers at the time of the formation, or in addition (if any) to the manager(s) are:

Name                                              Address
Jason M. Barr                                     524 Broadway, 11th Floor
                                                  New York, NY 10012

6.  The general character of the limited liability company's business is: to engage in any lawful activity.

7.  Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Company shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

**IN WITNESS WHEREOF,** the undersigned hereby affirms under the penalties of perjury that the facts stated herein are true this [   ] day of [   ], 2016.


By: _____
    Jason M. Barr, Authorized Person

**DRAFT**

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY**

**OPERATING AGREEMENT**

**OF**

**[    ]**

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement") of [      ], a Massachusetts limited liability company (the "Company"), is made and entered into as of [    ], 2016, by [    ], a [    ] [    ], as the sole member (the "Member"), pursuant to and in accordance with the Massachusetts Limited Liability Company Act, as amended from time to time (the "Act").

A.       The Company was formed on [    ] (the "Formation Date"), pursuant to the filing of its certificate of organization on the Formation Date with the Secretary of the Commonwealth of Massachusetts, pursuant to and in accordance with the Act (the "Required Filing").

B.       The Company desires that this Agreement constitute a "limited liability company agreement," as defined under the Act.

NOW, THEREFORE, the undersigned Member agrees as follows:

1.       Name.  The name of the limited liability company formed hereby is [    ].

2.       Certificates.  The Company came into existence under the Act by the Required Filing.  The Member or such other person designated by the Member as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company desires to conduct business.

3.       Purposes.  The Company is formed for the purpose of engaging in any lawful business permitted by the Act or the laws of any jurisdiction in which the Company may do business.

4.       Powers.  The Company and the Member shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

5.        Principal Business Office.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.        Registered Office.  The address of the registered office of the Company in the Commonwealth of Massachusetts is c/o [   ].

7.        Registered Agent.  The name and address of the registered agent in Massachusetts for service of process is [   ].

8.        Member.  The name and the mailing address of the Member is:

Name                                              Address

[   ]                                                 524 Broadway, 11th Floor

                                                       New York, NY 10012

9.        Qualification in Other Jurisdiction.  The Member shall cause the Company to be registered or qualified under its own name or under an assumed or fictitious name pursuant to a foreign limited liability company statute or similar laws in any jurisdiction in which the Company owns property or transacts business if such registration or qualification is necessary to protect the limited liability of the Member or to permit the Company to lawfully own property or transact business in such jurisdictions.

10.        Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

11.        Capital Contributions.  The Member is not required to make any capital contributions to the Company.  However, the Member may at any time make capital contributions to the Company.

12.    Allocation of Profits and Losses.  The Company's profits and losses shall be allocated to the Member.

13.    Distributions. Distributions (including a return of all or any capital contributions) shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

14.    Management.  In accordance with Section 24(a) of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the Commonwealth of Massachusetts.  The Member shall have the authority to bind the Company.  Notwithstanding any other provision of this Agreement to the contrary, the Member is authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other person.

15.    Officers.  The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Massachusetts Business Corporations Act, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 15 may be revoked at any time by the Member.  An Officer may be removed with or without cause by the Member.  As of the date hereof, the Officers of the Company are the following persons:

| Name | Title |
|---|---|
| [    ] | **Chief Executive Officer and** President |
| [    ] | Chief Financial Officer |
| [    ] | Secretary |

In addition to, and not in limitation of, what is stated above in this Section 15, the Officers shall have, and are hereby granted, the power and authority to act on behalf of and bind the Company,

NY 76402439v1

and to execute, file and deliver any and all certificates, agreements, power of attorneys, contracts and any other instruments, or take any other action for and on behalf of the Company, as any Officer may deem desirable.

16.     Other Business.  The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

17.     Exculpation and Indemnification.  Neither the Member nor any Officer shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission solely occurring from and after November [___], 2016 performed or omitted by the Member or any such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or any such Officer by this Agreement, except that the Member or such Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's or such Officer's willful misconduct.  To the fullest extent permitted by applicable law, the Member or such Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member or such Officer by reason of any act or omission solely occurring from and after November [___], 2016 performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that neither the Member nor such Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 17 shall be provided out of and to the extent of Company assets only, and neither the Member nor such Officer shall have personal liability on account thereof.

18.     Banking Matters.  The Member and each Officer and any agent or employee of the Company, or other person designated by such Member or Officer, is hereby authorized and empowered (i) to (A) establish one or more domestic or international accounts (including but not limited to, depository, checking, disbursement, custodian or investment accounts) and other accounts as deemed necessary or expeditious for the business purposes of the Company ("Accounts"), in the name of the Company with any bank, trust company, savings and loan institution, brokerage firm or other financial institution which such Member or Officer shall from time to time designate as a depository of funds, securities or other property of the Company, for any purpose and on terms and conditions deemed appropriate buy such person on behalf of the Company; and (B) close Accounts of the Company now or hereafter established; and (ii) to assign, limit or revoke any and all authority of any agent or employee of the Company, or other person designated by such Member or Officer, to (i) sign checks, drafts and orders for the payment of money drawn on the Company's Accounts, and all notes of the Company and all acceptances and endorsements of the Company; (ii) execute or initiate electronic fund transfers; (iii) execute or initiate foreign currency exchange transactions; (iv) execute or initiate the investment of monies; and (iv) initiate requests for information for any Account of the Company.

19.     Assignments.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 19, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

20.     Admission of Additional Members.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

21.     Term.  The term of the Company shall commence on the Formation Date and shall continue until the Company is dissolved and its affairs are wound up in accordance with the Act.

22.     Dissolution.

(a)     The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) at any time there are no members of the Company unless, within ninety (90) days of the occurrence of the event that terminated the continued membership of the last remaining member of the Company (the "Termination Event"), the personal representative of the last remaining member agrees in writing to continue the Company and to the admission of the Company of such personal representative or its nominee or designee as a member, effective as of the occurrence of the Termination Event, and such successor or its nominee or designee shall be admitted upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, or (iii) the entry of a decree of judicial dissolution under Section 44 of the Act.

(b)     The bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 46 of the Act.

23.     Separability of Provisions.  Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or

NY 76402439v1

illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

24.     Entire Agreement.  This Agreement constitutes the entire Agreement of the Member with respect to the subject matter hereof.

25.     Governing Law.  This Agreement shall be governed by, and construed under, the laws of the Commonwealth of Massachusetts (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

26.     Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

27.     Sole Benefit of Member.  The provisions of this Agreement (including Section 11) are intended solely to benefit the Member (and with respect to Section 17 hereof, any Officer) and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

[Signature page follows.]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

MEMBER:

[   ]


By:_____
   Name:
   Title:

DRAFT

**RESTATED**

**ARTICLES OF ORGANIZATION**

**OF**

**[   ]**

**Under Section 214 of the Limited Liability Company Law of the State of New York**

The undersigned being an authorized person of the Limited Liability Company does hereby certify:

**FIRST**: The name of the limited liability company is:  [   ]

**SECOND**:   The date when the articles of organization were filed by the Department of State is [   ].

**THIRD**:  The articles of organization are amended (or changed) to effect one or more of the following amendments (or changes) as follows:

Paragraph 4 of the Articles of Organization, dealing with the issuance of non-voting securities.

The text of the articles of organization, as amended heretofore, are hereby restated as further amended (or changed) to read as herein set forth in full:

**FIRST**.  The name of the limited liability company is [   ] (the "<u>Company</u>").

**SECOND**.   The county within the State of New York in which the principal office of the Company is to be located is New York.

**THIRD**.   The Secretary of State is designated as agent of the Company upon whom process against the Company may be served.  The post office address within or without the State of New York to which the Secretary of State shall mail a copy of any process against the Company served upon such Secretary of State is [   ].

**FOURTH**. Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the Company shall not issue non-voting equity securities; provided, however, that this provision (i) shall have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (ii) shall have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (iii) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

**IN WITNESS WHEREOF**, I hereunto sign my name this [   ] day of [   ] 2016.


**[   ]**


_____
Jason M. Barr, Authorized Signatory

NY 76402597v1

DRAFT

**AMENDED AND RESTATED LIMITED LIABILITY COMPANY**

**OPERATING AGREEMENT**

**OF**

**[   ]**

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement") of [     ], a New York limited liability company (the "Company"), is made and entered into as of [   ], 2016, by [   ], a [   ] [   ], as the sole member (the "Member"), pursuant to and in accordance with the New York Limited Liability Company Law, as amended from time to time (the "Act").

A.      The Company was formed on [   ] (the "Formation Date"), pursuant to the filing of its certificate of organization on the Formation Date with the Secretary of the State of New York, pursuant to and in accordance with the Act (the "Required Filing").

B.      The Company desires that this Agreement constitute a "limited liability company agreement," as defined under the Act.

NOW, THEREFORE, the undersigned Member agrees as follows:

1.      Name.  The name of the limited liability company formed hereby is [   ].

2.      Certificates.  The Company came into existence under the Act by the Required Filing.  The Member or such other person designated by the Member as an authorized person, within the meaning of the Act, shall execute, deliver and file, or cause the execution, delivery and filing of, any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any jurisdiction in which the Company desires to conduct business.

3.      Purposes.  The Company is formed for the purpose of engaging in any lawful business permitted by the Act or the laws of any jurisdiction in which the Company may do business.

4.      Powers.  The Company and the Member shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company.

5.      Principal Business Office.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.      Registered Office.  The address of the registered office of the Company in the State of New York is 524 Broadway, 11th Floor, New York, NY 10012, except if changed by the Member from time to time.

7.      Registered Agent.  The name and address of the registered agent in New York for service of process is 524 Broadway, 11th Floor, New York, NY 10012, except if changed by the Member from time to time.

8.      Member.  The name and the mailing address of the Member is:

Name                                          Address

[   ]                                          524 Broadway, 11th Floor

                                               New York, NY 10012

9.      Qualification in Other Jurisdiction.  The Member shall cause the Company to be registered or qualified under its own name or under an assumed or fictitious name pursuant to a foreign limited liability company statute or similar laws in any jurisdiction in which the Company owns property or transacts business if such registration or qualification is necessary to protect the limited liability of the Member or to permit the Company to lawfully own property or transact business in such jurisdictions.

10.      Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

11.     Capital Contributions.  The Member is not required to make any capital contributions to the Company.    However, the Member may at any time make capital contributions to the Company.

12.     Allocation of Profits and Losses.  The Company's profits and losses shall be allocated to the Member.

13.     Distributions. Distributions (including a return of all or any capital contributions) shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or other applicable law.

14.     Management.  In accordance with Section 401 of the Act, management of the Company shall be vested in the Member.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of New York.  The Member shall have the authority to bind the Company.  Notwithstanding any other provision of this Agreement to the contrary, the Member is authorized to execute and deliver any document on behalf of the Company without any vote or consent of any other person.

15.     Officers.  The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the New York Business Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 15 may be revoked at any time by the Member.  An Officer may be removed with or without cause by the Member.  As of the date hereof, the Officers of the Company are the following persons:

| Name | Title |
| --- | --- |
| [   ] | **Chief Executive Officer and** President |
| [   ] | Chief Financial Officer |
| [   ] | Secretary |

In addition to, and not in limitation of, what is stated above in this Section 15, the Officers shall have, and are hereby granted, the power and authority to act on behalf of and bind the Company, and to execute, file and deliver any and all certificates, agreements, power of attorneys, contracts and any other instruments, or take any other action for and on behalf of the Company, as any Officer may deem desirable.

16.     Other Business.  The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

17.     Exculpation and Indemnification.  Neither the Member nor any Officer shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission solely occurring from and after November [____], 2016 performed or omitted by the Member or any such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or any such Officer by this Agreement, except that the Member or such Officer shall be liable for any such loss, damage or claim incurred by reason of the Member's or such Officer's willful misconduct.  To the fullest extent permitted by applicable law, the Member or such Officer shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member or such Officer by reason of any act or omission solely occurring from and after November [____], 2016 performed or omitted by the Member or such Officer in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on the Member or such Officer by this Agreement, except that neither the Member nor such Officer shall be entitled to be indemnified in respect of any loss, damage or claim incurred by the Member or such Officer by reason of willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 17 shall be provided out of and to the extent of Company assets only, and neither the Member nor such Officer shall have personal liability on account thereof.

18.     Banking Matters.  The Member and each Officer and any agent or employee of the Company, or other person designated by such Member or Officer, is hereby authorized and empowered (i) to (A) establish one or more domestic or international accounts (including but not limited to, depository, checking, disbursement, custodian or investment accounts) and other accounts as deemed necessary or expeditious for the business purposes of the Company ("Accounts"), in the name of the Company with any bank, trust company, savings and loan institution, brokerage firm or other financial institution which such Member or Officer shall from time to time designate as a depository of funds, securities or other property of the Company, for any purpose and on terms and conditions deemed appropriate buy such person on behalf of the Company; and (B) close Accounts of the Company now or hereafter established; and (ii) to assign, limit or revoke any and all authority of any agent or employee of the Company, or other

person designated by such Member or Officer, to (i) sign checks, drafts and orders for the payment of money drawn on the Company's Accounts, and all notes of the Company and all acceptances and endorsements of the Company; (ii) execute or initiate electronic fund transfers; (iii) execute or initiate foreign currency exchange transactions; (iv) execute or initiate the investment of monies; and (iv) initiate requests for information for any Account of the Company.

19.     Assignments.  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 19, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

20.     Admission of Additional Members.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

21.     Term.  The term of the Company shall commence on the Formation Date and shall continue until the Company is dissolved and its affairs are wound up in accordance with the Act.

22.     Dissolution.

(a)     The Company shall dissolve and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) at any time there are no members of the Company unless, within ninety (90) days of the occurrence of the event that terminated the continued membership of the last remaining member of the Company (the "Termination Event"), the personal representative of the last remaining member agrees in writing to continue the Company and to the admission of the Company of such personal representative or its nominee or designee as a member, effective as of the occurrence of the Termination Event, and such successor or its nominee or designee shall be admitted upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, or (iii) the entry of a decree of judicial dissolution under Section 702 of the Act.

(b)     The bankruptcy of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 704 of the Act.

23.    Separability of Provisions.  Each provision of this Agreement shall be considered separable, and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement that are valid, enforceable and legal.

24.    Entire Agreement.  This Agreement constitutes the entire Agreement of the Member with respect to the subject matter hereof.

25.    Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of New York (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

26.    Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

27.    Sole Benefit of Member.  The provisions of this Agreement (including Section 11) are intended solely to benefit the Member (and with respect to Section 17 hereof, any Officer) and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

[Signature page follows.]

NY 76402445v1

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first above written.

MEMBER:

[   ]


By:_____
   Name:
   Title:

**EXHIBIT D TO THE PLAN SUPPLEMENT**

New Stockholders' Agreement

DRAFT

**<span style="color:blue">REORGANIZED SFXE</span>**

**Principal Terms of Proposed New Stockholders' Agreement[1]
for ~~Reorganized SFXE~~<span style="color:blue">New Equity Issuer</span>[2]**

HoldCo Structure:

On the Effective Date, Reorganized SFXE ("SFX") will become a wholly owned subsidiary of a newly formed Delaware corporation ("HoldCo").  Pursuant to the Plan of Reorganization, HoldCo will adopt an amended and restated Certificate of Incorporation and amended Bylaws (the "HoldCo Governance Documents") and will issue shares of HoldCo's Series A Preferred Stock ("Series A Preferred"), Series B Preferred Stock ("Series B Preferred") and common stock ("Common Stock").  All parties receiving HoldCo Series A Preferred, Series B Preferred or Common Stock (collectively, "HoldCo Stock") will be required to enter into a Stockholders Agreement as of the Effective Date reflecting the provisions set forth in this outline (the "Stockholders Agreement").

Voting Rights:

HoldCo's Series A Preferred and Series B Preferred will have full voting rights on all matters on which holders of Common Stock are entitled to vote, with each share of Series A Preferred and Series B Preferred being entitled to 20 votes per share and each share of Common Stock being entitled to one vote per share.  (In this outline, references to "Majority Stockholder Approval" mean the approval of holders of shares representing a majority of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock.)

Ranking of Preferred Stock and Future Issuances:

The Series A Preferred will have payment priority over the Series B Preferred upon redemption or liquidation.  The issuance of additional shares of Series A Preferred or any new series of preferred stock that ranks senior to, or *pari passu* with, the Series A Preferred will require approval of HoldCo's Board of Directors (the "Board") and approval of holders of at least sixty percent (60%) of the outstanding Series A Preferred and the Series B Preferred, taken together.  The issuance of additional shares of Series B Preferred or any new series of preferred stock that ranks junior to the Series A Preferred but senior to, or *pari passu* with, the Series B Preferred will require Board approval and approval of holders of at least sixty percent (60%) of the outstanding Series B Preferred.

Composition of the Board:

*Initial Board*:  The initial Board will consist of five directors.  On the Effective Date, the Board members will be (i) Brandon Phillips (the CEO), (ii) one director selected by Allianz Global Investors U.S. LLC,

---

[1]  Capitalized terms used but not defined herein have the meanings assigned to such terms in the *Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* filed with the United States Bankruptcy Court for the District of Delaware in Case #16-10238-MFW on September 30, 2016 [Docket No. 1078] (the "Plan of Reorganization").

[2]  The terms of the New Stockholders' Agreement that are reflected herein are subject to further modification prior to the Effective Date.

~~NY 76347589v10~~

together with its affiliates ("Allianz"), (iii) one director selected by Axar Capital Management, LLC, together with its affiliates ("Axar"), (iv) one director selected by consensus of the remaining Tranche A DIP Lenders and Tranche B DIP Lenders (other than Redwood Master Fund, Ltd.)[3] and (v) one independent director selected by Mr. Phillips and approved by consensus of the Tranche A DIP Lenders and Tranche B DIP Lenders (including Allianz and Axar); provided, however, that until such selection is made by Mr. Phillips and approved by the consensus of the Tranche A DIP Lenders and Tranche B DIP Lenders, Charles Ciongoli shall serve as an interim Board member.

*Future Boards*:  Future Boards will be elected annually.  The Board will continue to consist of five directors (unless the size of the Board is increased or decreased by a vote two-thirds of the directors then in office with Majority Stockholder Approval, except that the Board will not have fewer than five or more than seven members).  Mr. Phillips will continue to be a Board member so long as he serves as CEO.  Each of Allianz and Axar will continue to be entitled to designate one director for election to the Board so long as Allianz or Axar, as applicable, continues to hold at least 50% of the HoldCo Stock such entity originally received (respectively) on the Effective Date.   The former Tranche A DIP Lenders and Tranche B DIP Lenders (other than Allianz or Axar to the extent they designate their own directors under the preceding sentence) will continue to be entitled to designate one director for election to the Board so long as such former DIP Lenders continue collectively to hold at least 50% of the HoldCo Stock such DIP Lenders originally received on the Effective Date.  These rights to designate Board members will not be transferable.

Any Board seats not filled by designation of stockholders in accordance with the preceding paragraph will be filled by Majority Stockholder Approval, with the candidates for election to be (i) those candidates proposed by the Board and (ii) any other candidate proposed by any holder(s) of shares representing at least 10% of the total voting power of the outstanding HoldCo Stock (pursuant to nomination procedures to be set forth in the Bylaws).

| Chairman of the Board: | The director selected by Axar shall serve as Chairman of the Board for the first year.  Thereafter, the Board will elect a Chairman annually.  The Chairman will not be the CEO. |
| --- | --- |
| Board Observers: | There will be up to five (5) non-voting observers to the Board. Each of Knighthead Capital Management, LLC ("Knighthead"), Kildonan Castle Asset Management, LP ("Kildonan"), Roystone Capital Master Fund Ltd. ("Roystone") and DW Partners, LP ("DW", and together with Knighthead, Kildonan and Roystone, the "Initial Minority Shareholders") shall be entitled to appoint a non-voting observer to the Board so long as an officer or employee of such Initial Minority |

---

[3]  For the avoidance of doubt, all references in this outline to approval by the Tranche A DIP Lenders and Tranche B DIP Lenders shall not include Redwood Master Fund, Ltd.

NY 76347589v10

Shareholder is not also then serving as a Board member; provided, however, that if at any time any of the Initial Minority Shareholders (in each case together with its respective affiliates) ceases to hold at least 50% of the Series A Preferred and Series B Preferred such entity originally received (respectively) on the Effective Date, such Initial Minority Shareholder shall immediately and irrevocably lose its respective right to have a non-voting observer to the Board.  The right of any Initial Minority Shareholder to appoint a Board observer will not be transferable.  In addition to the foregoing Board observers, the Chief Financial Officer shall also be a non-voting Board observer so long as the Chief Financial Officer is not serving as a Board member (for the avoidance of doubt, the initial Chief Financial Officer will be Charles Ciongoli).  Subject to execution of a confidentiality agreement, such Board observers will receive all materials distributed to members of the Board (including all notices given to the Board).

Board Committees:

The Board will establish an Audit Committee and a Compensation Committee and may establish one or more other Board committees (but the authority of any such other committee will be limited to making recommendations to the full Board).

Board Vacancies:

At any time, a director may be removed for cause by Majority Stockholder Approval.  In addition, the stockholder(s) entitled to designate a director will have the sole right to remove and replace that director at any time, with or without cause.  For the first three (3) years following the Effective Date, removal of any director (other than a director  designated by one or more specific stockholders) without cause shall require the approval of holders of shares representing at least 75% of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock ("Supermajority Stockholder Approval").  After the first three (3) years, any director (other than a director designated by one or more specific stockholders) may be removed by Majority Stockholder Approval, without cause.  If a director resigns, is removed, dies or becomes incapacitated, or if there is a vacancy on the Board for any other reason, a replacement director will be promptly elected by a majority of the directors then in office until the vacancy is filled by the stockholder(s) entitled to designate the replacement director or the vacancy is otherwise filled by Majority Stockholder Approval.

Board Voting:

Except as otherwise stated in this outline, Board approval of any action or decision will require unanimous written consent of all directors then in office or approval of a majority of the directors then in office at a validly convened meeting.

Board Meetings:

The Board will meet at least once each quarter.  In addition, the Chairman of the Board or any two (2) directors may call a special Board meeting at any time.

NY 76347589v10

| | |
|---|---|
| Board Compensation: | Directors not employed by the Company will receive market rate compensation by the Company.  All directors will be reimbursed for reasonable expenses. |
| Approval of Related Party Transactions: | Related Party Transactions will require approval of a majority of the disinterested directors then in office.  A "Related Party Transaction" will mean any transaction, agreement or arrangement involving more than $200,000 in any fiscal year between SFX (or any subsidiary) and a Related Party (as defined below), other than certain types of routine transactions.  A "Related Party" will mean: (i) a director or executive officer of HoldCo or SFX (or a member of the immediate family of any such director or executive officer); (ii) any company or other entity of which any such person is a partner, director or executive officer; (iii) any person beneficially owning, or otherwise controlling (or sharing control of), more than 10% of the voting power of HoldCo's outstanding voting stock; (iv) any affiliate of a person described in clause (iii); or (v) any director or executive officer of a person described in clause (iii) or (iv) (or a member of the immediate family of any such director or executive officer). |
| Key Decisions: | HoldCo and SFX will not take any of the following actions without first obtaining both (i) Board approval and (ii) Majority Stockholder Approval (except that Majority Stockholder Approval will not be required if there are no Board vacancies and the action is unanimously approved by all directors): |

(1)  a consolidation or merger of HoldCo or SFX with or into another corporation or entity (other than a wholly owned subsidiary);

(2) a direct or indirect sale or other disposition (other than by way of merger or consolidation), in one transaction or a series of related transactions, of all or substantially all of the assets of HoldCo and its subsidiaries, taken as a whole (other than to a wholly-owned subsidiary);

(3) entry by HoldCo or SFX into any transaction that will result in a change of control (to be defined in the Stockholders Agreement);

(4) a material acquisition of assets by HoldCo, SFX or their subsidiaries;

(5) a sale of equity securities by HoldCo or SFX entitling the holders to voting rights representing more than 2% of the voting power of the then-outstanding HoldCo Stock or SFX stock (as the case may be), or, in the case of a sale of preferred stock, having a liquidation value of more than $5 million;

(6) incurrence of indebtedness in a principal amount greater than $5 million;

-4-

NY 76347589v10

(7) a material amendment, modification or repeal of any provision of the HoldCo Governance Documents;

(8) adoption of any stockholder rights plan, share purchase rights plan or similar plan (a "Poison Pill") which is designed to impede the acquisition of a block of the Common Stock in excess of a specified threshold; or

(9) a liquidation of HoldCo or SFX.

Transfers:

Unless HoldCo Stock becomes publicly traded, shares of HoldCo Stock can be transferred only to accredited investors in private transactions exempt from registration requirements under federal and state securities laws (and subject to delivery to HoldCo of customary representation letters from the transferor and the transferee and, if requested by the Board, a customary legal opinion).  Any transfer that could result in HoldCo having more than 1,000 stockholders who are accredited investors or being required to register its stock with the Securities and Exchange Commission under the Securities Exchange Act of 1934 will be prohibited.  In addition, transfers will be subject to the drag-along and tag-along rights and right of first offer described below, and any transfer to a competitor of SFX (to be identified on a schedule attached to the Stockholders Agreement, a list of which shall be maintained by the Board and shall be made available to all holders of HoldcCo Stock upon reasonable request, and which schedule may be updated from time to time by the Board with Supermajority Stockholder Approval) will be prohibited.  Any transferee that is not already a party to the Stockholders Agreement will be required, as a condition of the transfer, to execute a joinder to the Stockholders Agreement in a form attached to the Stockholders Agreement.

Right of First Offer:

Prior to the earliest to occur of (i) a Company Stock Sale (as defined below), (ii) a Company Asset Sale (as defined below) and (iii) a public offering of the HoldCo Stock, if any stockholder seeks to transfer HoldCo Stock (other than a permitted transfer to a related party or pursuant to Tag-Along Rights, Drag-Along Rights or transfers among initial HoldCo Stockholders), such HoldCo Stock contemplated to be transferred shall be subject to a right of first offer on the part of HoldCo and, if HoldCo elects not to exercise such right, each HoldCo stockholder that (together with its affiliates) holds shares representing at least 5% of the total voting power of the HoldCo Stock.  If the right of first offer is exercised and the stockholder seeking to transfer its HoldCo Stock does not accept such offer, such stockholder may not subsequently sell its HoldCo Stock to a third party at a price less than 110% of the price that was offered pursuant to the right of first offer without re-commencing the right of first offer process.  In addition, if a sale to a third party does not occur within 180 days after notice of the right of first offer is given, a sale to a third party cannot be consummated after such 180-day period without re-commencing the right of first offer

NY 76347589v10

process.  If the right of first offer is exercised and the offer is accepted, the proportions to be sold to each participating stockholder in any such right of first offer will be based on such holder's ownership of the outstanding shares divided by the aggregate ownership of all such stockholders so participating.

Preemptive Rights:

Each HoldCo stockholder that (together with its affiliates) holds shares representing at least 5% of the total voting power of the HoldCo Stock shall have the right to participate in any future offering of debt securities or equity securities of HoldCo on a basis reflecting such stockholder's *pro rata* share of outstanding HoldCo Stock, subject to limited exceptions for equity interests issued in connection with acquisitions or pursuant to any management incentive plan, in each case as approved by the Board.

Tag-Along Rights:

If one or more holders of HoldCo Stock (the "Initiating Stockholders") agree to sell to a single third-party purchaser (or a group of related third-party purchasers), in a single transaction or a series of transactions over a 24-month period, shares representing more than 35% of the total voting power of the then-outstanding HoldCo Stock, the Initiating Stockholders must arrange for each other HoldCo stockholder to have an opportunity to include in such sale a corresponding percentage of such other stockholder's HoldCo Stock, on the same terms and at the same price as the Initiating Stockholders (as adjusted to take account of differences in voting power, payment terms and priority among the Series A Preferred, Series B Preferred and Common Stock).

Drag-Along Rights:

If one or more holders of HoldCo Stock agree, at any time after the first anniversary of the Effective Date, to sell (by sale or by merger or in any other manner) to a single third-party purchaser (or a group of related third-party purchasers) shares representing more than 50% of the total voting power of the then-outstanding HoldCo Stock in a transaction approved by the Board, by majority vote of the disinterested directors (a "Company Stock Sale"), then either such stockholders (the "Dragging Stockholders") or the Board will have the right to require all other holders of HoldCo Stock (the "Dragged Stockholders") (i) to sell to such purchaser a corresponding percentage of the HoldCo Stock held by the Dragged Stockholders, on the same terms and at the same price as the Dragging Stockholders (as adjusted to take account of differences in voting power, payment terms and priority among the Series A Preferred, Series B Preferred and Common Stock); (ii) to vote the Dragged Stockholders' shares in favor of the Company Stock Sale; (iii) to enter into appropriate agreements with the purchaser to sell the shares of the Dragged Stockholders in the Company Stock Sale and to obtain any required consents; (iv) to waive appraisal or dissenters rights; and (v) to take any and all reasonably necessary action in furtherance of the Company Stock Sale, at the Company's expense.

In addition, if the Board decides, with approval of the Dragging Stockholders, to effect a sale or transfer to a single third-party purchaser

-6-

NY 76347589v10

(or a group of related third-party purchasers), in one transaction or a series of related transactions, of all or substantially all of the consolidated assets of HoldCo and SFX and their subsidiaries (a "Company Asset Sale"), the Dragged Stockholders will be obligated to vote their shares in favor of the Company Asset Sale.

The Dragging Stockholders may decide in their sole discretion whether to consummate a proposed Company Stock Sale or Company Asset Sale.

Registration Rights:

After 12 months following the Effective Date, holders of shares representing more than 50% of the total voting power of the outstanding HoldCo Stock will have demand registration rights, subject to customary qualifications and limitations. In addition, if such holders exercise their demand registration rights, or if the Board decides to have HoldCo file a registration statement with the Securities and Exchange Commission for a public offering of HoldCo Stock for cash, all stockholders will have piggyback rights to include in the public offering any shares that are not already freely tradeable under the federal securities laws, subject to the right of HoldCo to sell shares first in any such public offering and other customary cutback provisions.

Confidentiality:

Subject to certain permitted disclosures (including disclosures to a potential permitted transferee who enters into a non-disclosure agreement in a form approved by the Board), each HoldCo stockholder will be required to maintain the confidentiality of any non-public information such stockholder receives for a period of one year from the date such information is received.

Reporting:

Subject to the confidentiality provisions referred to above, each HoldCo stockholder will be entitled to receive (i) an annual report containing audited annual consolidated financial statements of the Company, certified by a national accounting firm and prepared in accordance with GAAP, along with a brief management's discussion and analysis in narrative form ("MD&A") commenting on such financial statements, (ii) a quarterly report containing unaudited quarterly condensed consolidated financial statements, along with MD&A, and other information approved by the Board. In addition, from time to time, certain other materials approved by the Board shall be made available to each holder of the HoldCo Stock.

Amendments:

In addition to any applicable requirements set forth above under "Key Decisions", any material amendments to the HoldCo Governance Documents or any amendments to the Stockholders Agreement will require Board approval, Majority Stockholder Approval and, under the circumstances listed below, the following additional approvals:

1. Any amendment that adversely affects holders of both Series A Preferred and Series B Preferred will require approval of holders of at least seventyeighty five percent (7585%) of the outstanding Series A Preferred and Series B Preferred (voting together).

-7-

2. Any amendment that adversely affects holders of only one series of preferred stock will require approval of holders of at least ~~seventy~~eighty five percent (~~75~~85%) of the outstanding shares of the affected series.

3. Any material amendment to the provisions of the Stockholders Agreement regarding stockholder approval for key actions, related party transactions, information rights, drag-along rights, tag-along rights ~~and/or~~, registration rights and/or preemptive rights will require either (i) approval of each stockholder that (together with its affiliates) received on the Effective Date shares representing at least 5% of the total voting power of the HoldCo Stock, for so long as such stockholder (together with its affiliates) continues to hold at least 35% of the HoldCo Stock such stockholder (and its affiliates) originally received on the Effective Date or (ii) ~~Supermajority Stockholder Approval~~the approval of holders of shares representing at least 85% of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock.

4. Any material amendments to the amendment provisions of the Stockholders Agreement will require approval of each party to the Stockholders Agreement.

Termination of the
Stockholders Agreement:                 The Stockholders Agreement may be terminated by obtaining all of the following:  (i) Board approval, (ii) Majority Stockholder Approval and (iii) either (A) approval of each stockholder that (together with its affiliates) received on the Effective Date shares representing at least 5% of the total voting power of the HoldCo Stock, for so long as such stockholder (together with its affiliates) continues to hold at least 35% of the HoldCo Stock such stockholder (and its affiliates) originally received on the Effective Date or (B) ~~Supermajority Stockholder Approval~~the approval of holders of shares representing at least 85% of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock.  In addition, the Stockholders Agreement will terminate automatically upon a qualified public offering or a Company Stock Sale, Company Asset Sale or other change in control (as defined in the Stockholders Agreement).

-8-

~~NY 76347589v10~~

## <u>EXHIBIT E TO THE PLAN SUPPLEMENT</u>

Terms of New Series A Preferred Stock Certificate

DRAFT

**REORGANIZED SFXE**

**SERIES A PREFERRED STOCK TO BE ISSUED BY NEW HOLDING COMPANY**

***SUMMARY OF TERMS***[1]

| | |
|---|---|
| Issuer | A new Delaware corporation ("**Holdco**"), to be formed prior to the Effective Date[2] of the Plan of Reorganization to serve as the new parent company for reorganized SFX Entertainment, Inc. ("**Reorganized SFXE**"). |
| Securities to be Issued | Shares of Holdco's Series A Preferred Stock, $~~1.00~~0.01 par value per share (the "**Series A Preferred**"). |
| Date of Issuance | Effective Date of the Plan of Reorganization |
| Initial Holders of Series A Preferred | ~~Axar Capital Management, LLC; Allianz Global Investors U.S. LLC; DW Partners, LP; Kildonan Castle Asset Management, LP; Knighthead Capital Management, LLC;~~Certain of the Tranche B DIP Lenders, and/or their respective affiliates and related funds. |
| Total Face Amount on Effective Date | $[•][3] |
| Issuance Price Per Share | $[100.00] per share. |
| Shares to be Issued on Effective Date | A number of shares equal to (a) the Total Face Amount on the Effective Date, divided by (b) 100. Certain of these shares will be issued pursuant to the Plan of Reorganization to holders of Incremental Tranche B DIP Accordion Claims. The balance of these shares will be issued to accredited investors purchasing shares of Series A Preferred for cash pursuant to the Series A Preferred Stock Investment |

---

[1] This Series A Preferred Stock Term Sheet is subject to further modification prior to the Effective Date.

[2] Capitalized terms used but not defined herein have the meanings assigned to such terms in the *Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* of SFX Entertainment, Inc., filed with the United States Bankruptcy Court for the District of Delaware in Case #16-10238-MFW on September 30, 2016 [Docket No. 1078] (the "**Plan of Reorganization**").

[3] The Total Face Amount on the Effective Date will be equal to 102% of the sum of (1) the amount, as of the Effective Date, of Incremental Tranche B DIP Accordion Claims, net of amounts paid or payable in Cash in accordance with the Plan of Reorganization, and (2) the amount by which $50.6 million exceeds the funded principal amount of the Incremental Tranche B DIP Accordion as of the Effective Date. For the avoidance of doubt, the Total Face Amount is expected to be approximately $52,260,115.15, assuming an Effective Date on or about November 25, 2016.

Agreement.

| | |
|---|---|
| Total Shares of Series A Preferred to be Authorized | [_____] shares |
| Preference | With respect to the payment of dividends and the making of distributions, whether upon a Liquidity Event (as defined below), a liquidation of Holdco or otherwise, the Series A Preferred will rank senior to Holdco's Series B Preferred Stock (the "**Series B Preferred**") and Holdco's Common Stock (the "**Common Stock**").  No dividends can be paid or distributions made on any Series B Preferred or Common Stock (or on any future series of Holdco's preferred stock that ranks junior to the Series A Preferred as to dividend rights or rights upon liquidation) at any time while shares of Series A Preferred continue to be outstanding; provided, however, that dividends or distributions may be paid or made on shares of Series B Preferred or Common Stock (or on any future series of Holdco's preferred stock that ranks junior to the Series A Preferred as to dividend rights or rights upon liquidation) in the form of shares of Common Stock, Series B Preferred or any other series of Holdco's preferred stock ranking junior to the Series A Preferred. |
| Dividends; Accrual | Holdco may elect, by majority vote of its Board of Directors (the "**Board**"), to pay dividends, either in cash ("**Cash Dividends**") or in the form of additional shares of Series A Preferred ("**PIK Dividends**"), on the outstanding shares of Series A Preferred on one or more semi-annual payment dates (May 1 and November 1) at an annual rate of 15%.  To the extent Holdco does not elect to pay either Cash Dividends or PIK Dividends, amounts accrued and unpaid will accrue dividends at an annual rate of 15%, compounded semi-annually on each May 1 and November 1, until paid.

At any time Holdco may elect, by majority vote of its Board, to declare a special cash dividend to pay all or any portion of the unpaid accrued dividends on the Series A Preferred. |
| Series A Preferred Liquidation Preference | Upon the occurrence of a Liquidity Event, the holders of outstanding Series A Preferred will be entitled to receive (either from Holdco or from a third party entering into the transaction with Holdco constituting such Liquidity Event), prior to and in preference to any distribution to holders of Holdco's Series B Preferred or Common Stock (or any future series of Holdco's preferred stock that ranks junior to the Series A Preferred as to rights |

2

upon liquidation), an amount (the "**Series A Preferred Liquidation Preference**"), payable (at the option of the Board) in cash, securities or other property (or a combination thereof), equal to the greater of (x) the then-current face amount of the Series A Preferred plus all accrued and unpaid dividends on the Series A Preferred and any other fees, charges or premiums payable on the Series A Preferred, and (y) (i) in the case of a Liquidity Event occurring through the day preceding the second anniversary of the Effective Date, an amount equal to (A) the product of (1) 1.60 and (2) the initial face amount of the Series A Preferred as of the Effective Date, minus (B) the amount (if any) of cash dividends previously paid on the outstanding Series A Preferred prior to the consummation of such Liquidity Event, (ii) in the case of a Liquidity Event occurring from and after the second anniversary of the Effective Date through the day preceding the third anniversary of the Effective Date, an amount equal to (A) the product of (1) 1.70 and (2) the initial face amount of the Series A Preferred as of the Effective Date, minus (B) the amount (if any) of cash dividends previously paid on the outstanding Series A Preferred prior to the consummation of such Liquidity Event,  or (iii) in the case of a Liquidity Event occurring from and after the third anniversary of the Effective Date, an amount equal to (A) the product of (1) 1.75 and (2) the initial face amount of the Series A Preferred as of the Effective Date, minus (B) the amount (if any)  of cash dividends previously paid on the outstanding Series A Preferred prior to the consummation of such Liquidity Event.

Upon payment to holders of the full amount of the Series A Preferred Liquidation Preference, all outstanding shares of Series A Preferred shall be cancelled and retired.

Liquidity Event ........................................................ Defined as:

(i) the sale, transfer, conveyance or other disposition to an unaffiliated third party (in one transaction or a series of related transactions) of all or substantially all of the assets of Holdco and its subsidiaries (or their respective successors holding in the aggregate all or substantially all of such assets) taken as a whole (including any such sale, transfer, conveyance or other disposition effected by any mergers, share exchanges, consolidations or other business combinations of Holdco and its subsidiaries (or their respective successors holding in the aggregate all or substantially all of such assets, taken as a whole) with or into a unaffiliated

3

third party);

(ii) any merger, share exchange, consolidation or other business combination involving Holdco in which transaction the holders of Holdco's voting preferred stock and Common Stock immediately prior to such transaction, together with their affiliates, in the aggregate, own immediately after such transaction less than 50% of the total voting power of the voting securities of Holdco (or, if Holdco is not the resulting or surviving entity in such transaction, such resulting or surviving entity (or the entity owning 100% of such resulting or surviving entity));

(iii) the acquisition (in one transaction or a series of related transactions) of voting securities of Holdco representing in the aggregate more than 80% of the total voting power of the voting securities of Holdco (after such acquisition) by any Person or "group" (as such term is used in Section 13(d)(3) of the Securities Exchange Act) of Persons, other than any Person or group of Persons that owned or held more than 10% of the total voting power of the voting securities of Holdco immediately prior to such acquisition or any affiliates of any such Person(s);

(iv) the consummation of a Qualified Public Offering;

(v) a liquidation of Holdco in which the net assets of Holdco, if any, are distributed to holders of Holdco's Common Stock (other than a liquidation occurring in connection with a Liquidity Event described in another clause of this definition); and

(vi) Holdco ceases to own a majority of the total voting power of the voting securities of Reorganized SFXE.

| | |
|---|---|
| Restrictions on Redemption or Repurchase of Series A Preferred and Junior Equity | Except for any redemptions or repurchases required pursuant to an incentive plan and the applicable award agreement thereunder, Holdco shall not, and shall not permit any Subsidiary thereof to, (i) redeem or repurchase any shares of Series A Preferred until the full Series A Preferred Liquidation Preference has been distributed or paid with respect to all outstanding shares of Series A Preferred or (ii) redeem or repurchase any Series B Preferred or Common Stock (or shares of any future series of Holdco's preferred stock that ranks junior to the Series A Preferred upon liquidation) or any equity interests in any of Holdco's Subsidiaries or make any distributions (other than |

4

NY 76372442v11

intercompany distributions) with respect thereto until the full Series A Preferred Liquidation Preference has been distributed or paid with respect to all outstanding shares of Series A Preferred.

Voting Rights

Holders of Series A Preferred will have full voting rights on all matters on which holders of Holdco Common Stock are asked to vote, with each share of Series A Preferred being entitled to 20 votes per share (as compared to each share of Common Stock being entitled to one vote per share).

Conversion

The Series A Preferred will not be convertible.

Protective Provisions:

Consent of the holders of a majority of the outstanding Series A Preferred, voting as a single class, shall be required for: (i) any amendment or change of the rights, preferences, privileges or powers of, or the restrictions provided for the benefit of, the Series A Preferred; (ii) any amendment of Holdco's Certificate of Incorporation that adversely affects the rights of the Series A Preferred; (iii) the declaration or payment of a dividend on the Common Stock or the Series B Preferred, or on any future series of Holdco's preferred stock ranking junior to the Series A Preferred (other than a dividend payable solely in shares of Common Stock, Series B Preferred or such junior series of preferred stock); (iv) any material changes in Holdco's line of business; and (v) any amendment of Reorganized SFXE's Certificate of Incorporation that adversely affects the Series A Preferred.

In addition, any future issuance of additional shares of Series A Preferred (with certain exceptions) or any new series of Holdco's preferred stock that ranks senior to, or *pari passu* with, the Series A Preferred will require approval of holders of at least sixty percent (60%) of the outstanding Series A Preferred and Series B Preferred, taken together.

Transfer Restrictions

Unless Holdco's stock becomes publicly traded, Series A Preferred can be transferred only to accredited investors in private transactions exempt from registration requirements under federal and state securities laws (and subject to delivery to Holdco of customary representation letters from the transferor and the transferee and, if requested by the Board, a customary legal opinion). Any transfer that could result in Holdco having more than 1,000 stockholders who are accredited investors or being required to register its stock with the Securities and Exchange Commission under the Securities Exchange Act of 1934 will be prohibited. In addition, transfers will be subject to the drag-along and tag-along rights and right of

5

first offer described in the New Stockholders Agreement Term Sheet, and any transfer to a competitor of Reorganized SFXE (to be identified on a schedule attached to the Stockholders Agreement (as defined below), which schedule may be updated from time to time by the Board with approval of holders of shares representing at least 75% of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock) will be prohibited if not approved by the Board.  Any transferee that is not already a party to the Stockholders Agreement will be required, as a condition of the transfer, to execute a joinder to the Stockholders Agreement in a form attached to the Stockholders Agreement.

Stockholders Agreement ........................................................

Holders of Series A Preferred will be required to enter into the Stockholders Agreement on the Effective Date, which will set forth the relative rights among the holders of the Series A Preferred, Series B Preferred and Common Stock and will contain the transfer restrictions described above and in the Stockholders Agreement Term Sheet, including drag-along and tag-along rights and rights of first offer.  The Stockholders Agreement will also contain pre-emptive rights and registration rights that would apply to holders of Series A Preferred holding the requisite percentage of shares.

Preferred Stock Purchase Agreement ............................

Prior to the Confirmation Hearing, parties making new investments to acquire shares of Series A Preferred will be required to enter into a Preferred Stock Purchase Agreement with Holdco containing customary terms and conditions.

6

## EXHIBIT F TO THE PLAN SUPPLEMENT

Terms of New Series A Preferred Stock Investment Agreement

DRAFT

# REORGANIZED SFXE

## SERIES A PREFERRED STOCK INVESTMENT AGREEMENT[1]

### *SUMMARY OF TERMS*[2]

| | |
|---|---|
| Parties to the Agreement | A new Delaware corporation ("**Holdco**") to be formed to serve as the new parent company for reorganized SFX Entertainment, Inc. ("**Reorganized SFXE**"), as issuer and seller, and ~~the following investors: Knighthead Capital Management, LLC, Kildonan Castle Asset Management, LP, DW Partners, LP, Allianz Global Investors U.S. LLC, Axar Capital Management, LLC~~certain of the Tranche B DIP Lenders and/or their respective affiliates and related funds, as investors (collectively, the "**Investors**"). |
| Agreement | Pursuant to the Series A Preferred Stock Investment Agreement (the "**Agreement**") Holdco will agree to issue and sell, and the Investors will agree (severally and not jointly) to purchase from Holdco, shares of Holdco's Series A Preferred Stock ("**Series A Preferred**"), on the terms and subject to the conditions set forth in the Agreement and the Plan of Reorganization. |
| Date of Agreement | The Agreement will be executed and dated as of, and will become effective on, the business day preceding the Confirmation Hearing (expected to occur on or about November 9, 2016). |
| Closing Date | The sale and issuance by Holdco of shares of Series A Preferred pursuant to the Agreement will be consummated on the Effective Date of the Plan of Reorganization. |

---

[1]   This Series A Preferred Stock Investment Agreement Term Sheet is subject to further modification prior to the Effective Date.

[2]   Capitalized terms used but not defined herein have the meanings assigned to such terms in the *Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* filed with the United States Bankruptcy Court for the District of Delaware in Case #16-10238-MFW on September 30, 2016 [Docket No. 1078] (the "**Plan of Reorganization**").

NY 76391223v3

| | |
|---|---|
| Shares to be Issued on Effective Date | A total of [•] shares of Series A Preferred will be issued and sold to the Investors in the respective amounts to be set forth on Exhibit A to the Agreement. The Series A Preferred will have the rights and restrictions described in the Series A Preferred Stock Term Sheet included as Exhibit E to the Plan Supplement. In connection with their commitments to purchase the Series A Preferred, the Investors will also receive shares of New Common Stock (based on their *pro rata* allocation of the New Common Stock Additional Amount as provided in the Plan) being issued on the Effective Date. |
| Aggregate Purchase Price | The aggregate purchase price and face amount for the shares of Series A Preferred issued and sold pursuant to the Agreement will be $[•].[3] Each Investor will pay the amount to be set forth opposite such Investor's name on Exhibit A to the Agreement. |
| Purchase Price Per Share | $100.00 per share. |
| Payment of Consideration | On the Effective Date, the Investors will pay the purchase price for the Series A Preferred, by wire transfer, in cash or other immediately available funds. |
| Representations and Warranties of Holdco | Holdco will make certain representations and warranties to the Investors in the Agreement, including, but not limited to, (i) customary representations regarding Holdco's due organization, good standing, corporate power and qualification; due authorization; capitalization; subsidiaries; absence of conflicts; and valid issuance of shares and (ii) certain representations regarding the accuracy and completeness of information relating to SFXE provided to the Investors. |

Representations and Warranties of the

---

[3] The total face amount and purchase price of Series A Preferred issued on the Effective Date pursuant to the Agreement will be equal to the amount by which $50.6 million exceeds the funded principal amount of the Incremental Tranche B DIP Accordion as of the Effective Date.

2

NY 76391223v3

| | |
|---|---|
| Investors | Each Investor will, severally and not jointly, make certain representations and warranties to Holdco in the Agreement, including, but not limited to, representations regarding such Investor's due organization, good standing, corporate power and qualification; due authorization; investment purpose; and "Accredited Investor" status. |
| Conditions to Closing | The Agreement will contain customary closing conditions, including accuracy of representations and warranties as of the Effective Date and the conditions to the Effective Date set forth in the Plan of Reorganization having been satisfied (or waived by the Investors in their sole discretion). The Agreement will also contain as a condition to closing that (i) the Confirmation Order with respect to the Plan of Reorganization, in form and substance reasonably acceptable to the Investors, has been entered by the Bankruptcy Court on or before November 30, 2016, and (ii) the Effective Date of the Plan of Reorganization occur on or before December 31, 2016. |
| Stockholders Agreement | The Agreement will require each Investor to execute and deliver the Stockholders Agreement on the Effective Date as a condition of receiving such Investor's shares. |
| Assignment | The Agreement shall contain other customary provisions including, without limitation, those related to performance, authorization, assignments of rights, retention of commitment liability, disclosures, and no public market. |
| Governing Law | The Agreement will be governed by New York law. |

3

NY 76391223v3

## EXHIBIT G TO THE PLAN SUPPLEMENT

Terms of New Series B Preferred Stock Certificate

DRAFT

**REORGANIZED SFXE**

**SERIES B PREFERRED STOCK TO BE ISSUED BY NEW HOLDING COMPANY**

***SUMMARY OF TERMS*[1]**

| | |
|---|---|
| Issuer | A new Delaware corporation ("**Holdco**"), to be formed prior to the Effective Date[2] of the Plan of Reorganization to serve as the new parent company for reorganized SFX Entertainment, Inc. ("**Reorganized SFXE**"). |
| Securities to be Issued | Shares of Holdco's Series B Preferred Stock, $~~1.00~~0.01 par value per share (the "**Series B Preferred**"). |
| Date of Issuance | Effective Date of the Plan of Reorganization |
| Initial Holders of Series B Preferred | Axar Capital Management, LLC; Allianz Global Investors U.S. LLC; DW Partners, LP; Kildonan Castle Asset Management, LP; Knighthead Capital Management, LLC; Roystone Capital Master Fund Ltd; and/or their respective affiliates and related funds. |
| Total Face Amount on Effective Date | $[•][3] |
| Issuance Price Per Share | $[100.00] per share. |
| Shares to be Issued on Effective Date | A number of shares equal to (a) the Total Face Amount on the Effective Date, divided by (b) 100. These shares will be issued pursuant to the Plan of Reorganization to holders of Tranche B DIP Facility Claims. |
| Total Shares of Series B Preferred to be Authorized | [_____] shares |
| Preference | With respect to the payment of dividends and the making of distributions, whether upon a Liquidity |

---

[1]  This Series B Preferred Term Sheet is subject to further modification prior to the Effective Date.

[2]  Capitalized terms used but not defined herein have the meanings assigned to such terms in the *Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* of SFX Entertainment, Inc., filed with the United States Bankruptcy Court for the District of Delaware in Case #16-10238-MFW on September 30, 2016 [Docket No. 1078] (the "**Plan of Reorganization**").

[3]  The Total Face Amount on the Effective Date will be equal to 102% of the sum of (1) the amount, as of the Effective Date, of Tranche B DIP Facility Claims (exclusive of the Incremental Tranche B DIP Accordion Claims), net of amounts paid or payable in Cash in accordance with the Plan of Reorganization, and (2) the amount of the Original Foreign Loan Claims. For the avoidance of doubt, the Total Face Amount is expected to be approximately $93,742,276.22, assuming an Effective Date on or about November 25, 2016.

NY 76392564v2

Event (as defined below), a liquidation of Holdco or otherwise, the Series B Preferred will rank junior to Holdco's Series A Preferred Stock (the "**Series A Preferred**") and senior to Holdco's Common Stock (the "**Common Stock**"). No dividends can be paid or distributions made on any Common Stock (or on any future series of Holdco's preferred stock that ranks junior to the Series B Preferred as to dividend rights or rights upon liquidation) at any time while shares of Series B Preferred continue to be outstanding; provided, however, that dividends or distributions may be paid or made on shares of Common Stock (or on any future series of Holdco's preferred stock that ranks junior to the Series B Preferred as to dividend rights or rights upon liquidation) in the form of shares of Common Stock or any other series of Holdco's preferred stock ranking junior to the Series B Preferred.

Dividends; Accrual

Holdco may elect, by majority vote of its Board of Directors (the "**Board**"), to pay dividends, either in cash ("**Cash Dividends**") or in the form of additional shares of Series B Preferred ("**PIK Dividends**"), on the outstanding shares of Series B Preferred on one or more semi-annual payment dates (May 1 and November 1) at an annual rate of 15%. To the extent Holdco does not elect to pay either Cash Dividends or PIK Dividends, amounts accrued and unpaid will accrue dividends at an annual rate of 15%, compounded semi-annually on each May 1 and November 1, until paid.

At any time Holdco may elect, by majority vote of its Board, to declare a special cash dividend to pay all or any portion of the unpaid accrued dividends on the Series B Preferred.

So long as any shares of Series A Preferred remain outstanding, the payment of Cash Dividends (including any special cash dividend) will be subject to the restrictions on payment of the Series B Preferred contained in the Series A Preferred.

Series B Preferred Liquidation Preference

Upon the occurrence of a Liquidity Event, the holders of outstanding Series B Preferred will be entitled to receive (either from Holdco or from a third party entering into the transaction with Holdco constituting such Liquidity Event), prior to and in preference to any distribution to holders of Holdco's Common Stock (or any future series of Holdco's preferred stock that ranks junior to the Series B Preferred as to rights upon liquidation), an amount (the "**Series B Preferred Liquidation**

2

NY 76392564v2

**Preference**"), payable (at the option of the Board) in cash, securities or other property (or a combination thereof), equal to the greater of (x) the then-current face amount of the Series B Preferred plus all accrued and unpaid dividends on the Series B Preferred and any other fees, charges or premiums payable on the Series B Preferred, and (y) an amount equal to (A) the product of (1) 1.75 and (2) the initial face amount of the Series B Preferred as of the Effective Date, minus (B) the amount (if any) of cash dividends previously paid on the outstanding Series B Preferred prior to the consummation of such Liquidity Event.

Upon payment to holders of the full amount of the Series B Preferred Liquidation Preference, all outstanding shares of Series B Preferred shall be cancelled and retired.

Liquidity Event............................................................

Defined as:

(i) the sale, transfer, conveyance or other disposition to an unaffiliated third party (in one transaction or a series of related transactions) of all or substantially all of the assets of Holdco and its subsidiaries (or their respective successors holding in the aggregate all or substantially all of such assets) taken as a whole (including any such sale, transfer, conveyance or other disposition effected by any mergers, share exchanges, consolidations or other business combinations of Holdco and its subsidiaries (or their respective successors holding in the aggregate all or substantially all of such assets, taken as a whole) with or into a unaffiliated third party);

(ii) any merger, share exchange, consolidation or other business combination involving Holdco in which transaction the holders of Holdco's voting preferred stock and Common Stock immediately prior to such transaction, together with their affiliates, in the aggregate, own immediately after such transaction less than 50% of the total voting power of the voting securities of Holdco (or, if Holdco is not the resulting or surviving entity in such transaction, such resulting or surviving entity (or the entity owning 100% of such resulting or surviving entity));

(iii) the acquisition (in one transaction or a series of related transactions) of voting securities of Holdco representing in the aggregate more than 80% of the total voting power of the voting securities of Holdco (after such acquisition) by any Person or "group" (as such term is used in Section 13(d)(3) of the Securities Exchange Act) of

3

NY 76392564v2

Persons, other than any Person or group of Persons that owned or held more than 10% of the total voting power of the voting securities of Holdco immediately prior to such acquisition or any affiliates of any such Person(s);

(iv) the consummation of a Qualified Public Offering;

(v) a liquidation of Holdco in which the net assets of Holdco, if any, are distributed to holders of Holdco's Common Stock (other than a liquidation occurring in connection with a Liquidity Event described in another clause of this definition); and

(vi) Holdco ceases to own a majority of the total voting power of the voting securities of Reorganized SFXE.

| | |
|---|---|
| Restrictions on Redemption or Repurchase of Series B Preferred and Junior Equity | Except for any redemptions or repurchases required pursuant to an incentive plan and the applicable award agreement thereunder, Holdco shall not, and shall not permit any Subsidiary thereof to, (i) redeem or repurchase any shares of Series B Preferred until the full Series B Preferred Liquidation Preference has been distributed or paid with respect to all outstanding shares of Series B Preferred or (ii) redeem or repurchase any Common Stock (or shares of any future series of Holdco's preferred stock that ranks junior to the Series B Preferred upon liquidation) or any equity interests in any of Holdco's Subsidiaries or make any distributions (other than intercompany distributions) with respect thereto until the full Series B Preferred Liquidation Preference has been distributed or paid with respect to all outstanding shares of Series B Preferred. |
| Voting Rights | Holders of Series B Preferred will have full voting rights on all matters on which holders of Holdco Common Stock are asked to vote, with each share of Series B Preferred being entitled to twenty (20) votes per share (as compared to each share of Common Stock being entitled to one vote per share). |
| Conversion | The Series B Preferred will not be convertible. |
| Protective Provisions: | Consent of the holders of a majority of the outstanding Series B Preferred, voting as a single class, shall be required for: (i) any amendment or change of the rights, preferences, privileges or powers of, or the restrictions provided for the benefit of, the Series B Preferred; (ii) any amendment of Holdco's Certificate of Incorporation that |

4

adversely affects the rights of the Series B Preferred; (iii) the declaration or payment of a dividend on the Common Stock, or on any future series of Holdco's preferred stock ranking junior to the Series B Preferred (other than a dividend payable solely in shares of Common Stock or such junior series of preferred stock); (iv) any material changes in Holdco's line of business; and (v) any amendment of Reorganized SFXE's Certificate of Incorporation that adversely affects the Series B Preferred.

In addition, (i) any future issuance of additional shares of Series A Preferred (with certain exceptions) or any new series of Holdco's preferred stock that ranks senior to, or *pari passu* with, the Series A Preferred will require approval of holders of at least sixty percent (60%) of the outstanding Series A Preferred and Series B Preferred, taken together, and (ii) any future issuance of additional shares of Series B Preferred (with certain exceptions) or any new series of Holdco's preferred stock that ranks junior to the Series A Preferred and senior to, or *pari passu* with, the Series B Preferred will require approval of holders of at least sixty percent (60%) of the outstanding Series B Preferred.

Transfer Restrictions

Unless Holdco's stock becomes publicly traded, Series B Preferred can be transferred only to accredited investors in private transactions exempt from registration requirements under federal and state securities laws (and subject to delivery to Holdco of customary representation letters from the transferor and the transferee and, if requested by the Board, a customary legal opinion). Any transfer that could result in Holdco having more than 1,000 stockholders who are accredited investors or being required to register its stock with the Securities and Exchange Commission under the Securities Exchange Act of 1934 will be prohibited. In addition, transfers will be subject to the drag-along and tag-along rights and right of first offer described in the New Stockholders Agreement Term Sheet, and any transfer to a competitor of Reorganized SFXE (to be identified on a schedule attached to the Stockholders Agreement (as defined below), which schedule may be updated from time to time by the Board with approval of holders of shares representing at least 75% of the total combined voting power of the Series A Preferred, Series B Preferred and Common Stock) will be prohibited if not approved by the Board.  Any transferee that is not already a party to the Stockholders Agreement will be required, as a condition of the transfer, to execute a joinder to the Stockholders Agreement in a form attached to the Stockholders Agreement.

5

NY 76392564v2

| | |
|---|---|
| Stockholders Agreement | Holders of Series B Preferred will be required to enter into the Stockholders Agreement on the Effective Date, which will set forth the relative rights among the holders of the Series A Preferred, Series B Preferred and Common Stock and will contain the transfer restrictions described above and in the Stockholders Agreement Term Sheet, including drag-along and tag-along rights and rights of first offer.  The Stockholders Agreement will also contain pre-emptive rights and registration rights that would apply to holders of Series B Preferred holding the requisite percentage of shares. |

NY 76392564v2

# EXHIBIT H TO THE PLAN SUPPLEMENT

Terms of Warrant Agreement Governing New Warrants

DRAFT

## REORGANIZED SFXE

## *WARRANT TERM SHEET[1]*

| | |
|---|---|
| **Issuer:** | A new Delaware corporation ("Holdco") to be formed prior to the Effective Date[2] of the Plan of Reorganization to serve as the new parent company for SFX Entertainment, Inc. ("SFXE") upon emergence from bankruptcy. |
| **Warrants:** | On the Effective Date, pursuant to the Plan of Reorganization, Holdco will issue and distribute three series of warrants (collectively, the "Warrants") as follows:[3] |
| | A. Series A Warrants will be distributed to holders of Allowed Class 4 Claims who do not elect the Cash Payment Option and Allowed Class 5 Claims (2019 Debtors), in their respective *pro rata* amounts, in accordance with the methodology set forth in Sections 3.02(d) and 3.02(e) of the Plan of Reorganization ("Series A Warrants"). |
| | B. Series B Warrants will be distributed to holders of Allowed Class 4 Claims who do not elect the Cash Payment Option and Allowed Class 5 Claims (2019 Debtors), in their respective *pro rata* amounts, in accordance with the methodology set forth in Sections 3.02(d) and 3.02(e) of the Plan of Reorganization ("Series B Warrants"). |
| | C. Series C Warrants will be distributed to holders of Allowed Tranche B DIP Facility Claims, in their respective *pro rata* amounts (disregarding any Incremental Tranche B DIP Accordion Claims), and shall be deemed automatically transferred to Allianz without any further action by any party, in accordance with Section 3.01(c)(A)(I) of the Plan of Reorganization ("Series C Warrants"). |
| | Holders of Series A Warrants, Series B Warrants and/or Series C Warrants are collectively referred to herein as "Holders". |
| | To the extent the total amount of Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors) has not been determined on the Effective |

---

[1] This Warrant Term Sheet is subject to further modification prior to the Effective Date.

[2] Capitalized terms used but not defined in this Warrant Term Sheet have the meanings assigned to such terms in the *Fifth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* filed with the United States Bankruptcy Court for the District of Delaware in Case #16-10238-MFW on September 30, 2016 [Docket No. 1078] (the "Plan of Reorganization").

[3] The Debtors, the Creditors' Committee and the Required Tranche B DIP Lenders shall discuss changes to this Warrant Term Sheet, the Warrant Agreement (defined below) and the structure of the Warrants (defined below) to allow for adjustments in the event that the New Preferred Stock is converted into New Common Stock on or after the Effective Date. For the avoidance of doubt, any such changes in structure as to be agreed upon by the parties shall result in the same relative economic rights for the Holders and the holders of the New Preferred Stock, including, without limitation, preserving the priority of distributions upon a Liquidity Event (as described below).

|  | Date, the Series A Warrants and the Series B Warrants will be issued to a third party agent or nominee selected by the Debtors (with the consent of the Required Tranche B DIP Lenders), or maintained by the Reorganized Debtors, in either case, for the benefit of the Holders of Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors).  Upon final adjudication or final determination of all Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors), the Series A Warrants and Series B Warrants will be distributed by such third party agent or nominee, or the Reorganized Debtors (as applicable), to the Holders of Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors) in their respective *pro rata* amounts; provided, however, that any Series A Warrants and Series B Warrants that were allocated pursuant to the Plan of Reorganization to Holders who elected the Cash Payment Option (if any), shall not be distributed to such Holders, and instead will be canceled.<br><br>Holdco (or its warrant agent) shall maintain a register identifying each Holder and the amount of Warrants of each series held by such Holder |
|---|---|
| **Expiration Date:** | All Warrants will terminate and expire on the earlier to occur of (i) the 5th anniversary of the Effective Date, and (ii) the consummation of a Liquidity Event (as defined below), subject, in both cases, to the right of the Holders to receive any consideration that may be owing in respect of a Liquidity Event that occurs concurrently with such termination.<br><br>Distributions on account of the Warrants will be made only upon a Liquidity Event in accordance with the Plan of Reorganization and the terms of the Warrants (as provided in the Warrant Agreement).  If prior to the expiration of the Warrants on the 5th anniversary of the Effective Date no Liquidity Event occurs in which distributions are required to be made on account of the Warrants, the Warrants will terminate, expire and cease to exist and Holders will receive no value on account of the Warrants. |
| **No Dividends, Voting Rights or Other Stockholder Rights:** | The Warrants will not (i) bear any stated rate of interest or dividends; (ii) entitle the Holders to vote or receive dividends or to be deemed the holders of capital stock or any other securities of Holdco which may at any time be distributable thereunder for any purpose; or (iii) confer upon the Holders (in their capacity as Holders of the Warrants) any of the rights of stockholders of Holdco (including appraisal rights, any right to vote for the election of directors or upon any matter submitted to stockholders of a Holdco at any meeting thereof, to receive notice of meetings or other information provided to stockholders, or to receive dividends or subscription rights or otherwise). |
| **Distributions Upon a Liquidity Event:** | Upon the occurrence of a Liquidity Event prior to the termination and expiration of the Warrants which results in distributions to holders of New Series A Preferred Stock and New Series B Preferred Stock (or, in the |

2

NY 76381015v7

event shares of New Series A Preferred Stock and/or New Series B Preferred Stock have previously been voluntarily converted or exchanged into New Common Stock by the holders of such shares, then upon the occurrence of a Liquidity Event prior to the termination and expiration of the Warrants which results in distributions to holders of New Common Stock), the Holders shall be entitled to receive (either from Holdco or from a third party entering into the transaction constituting such Liquidity Event) distributions (payable in cash, securities or other property (or a combination thereof), at the option of Holdco (provided that securities or other property may be included in such distribution only to the extent distributions to holders of New Series A Preferred Stock, New Series B Preferred Stock or New Common Stock are made in the form of such securities or property)), equal to each respective Holder's *pro rata* allocation of the following:

| Series | Consideration |
|---|---|
| Series A Warrants | 12.5% of the amount by which the aggregate Fair Market Value (as defined below) of the New Common Stock in such Liquidity Event exceeds the First Equity Value Threshold (as defined below) |
| Series B Warrants | 10% of the amount by which the aggregate Fair Market Value of the New Common Stock in such Liquidity Event exceeds the Second Equity Value Threshold (as defined below) |
| Series C Warrants | 1% of the amount by which the aggregate Fair Market Value of the New Common Stock in such Liquidity Event exceeds the Second Equity Value Threshold |

The Series B Warrants and the Series C Warrants shall dilute the Series A Warrants above the Second Equity Value Threshold.

"Liquidity Event" means:

(i) the sale, transfer, conveyance or other disposition to an unaffiliated third party (in one transaction or a series of related transactions) of all or substantially all of the assets of Holdco and its Subsidiaries (or their respective successors holding in the aggregate all or substantially all of such assets) taken as a whole (including any such sale, transfer, conveyance or other disposition effected by any mergers, share exchanges, consolidations or other business combinations of Holdco and its Subsidiaries (or their respective successors holding in the aggregate all or

3

NY 76381015v7

substantially all of such assets, taken as a whole) with or into a unaffiliated third party);

(ii) any merger, share exchange, consolidation or other business combination involving Holdco in which transaction the holders of the Voting Securities of Holdco immediately prior to such transaction, together with their affiliates, in the aggregate, own immediately after such transaction less than 50% of the total voting power of the Voting Securities of Holdco (or, if Holdco is not the resulting or surviving entity in such transaction, such resulting or surviving entity (or the entity owning 100% of such resulting or surviving entity));

(iii) the acquisition (in one transaction or a series of related transactions) of Voting Securities of Holdco representing in the aggregate more than 80% of the total voting power of the Voting Securities of Holdco (after such acquisition) by any Person or "group" (as such term is used in Section 13(d)(3) of the Securities Exchange Act) of Persons, other than any Person or group of Persons that owned or held more than 10% of the total voting power of the Voting Securities of Holdco immediately prior to such acquisition or affiliates of any such Person(s);

(iv) the consummation of a Qualified Public Offering; or

(v) a liquidation of Holdco in which the net assets of Holdco are distributed to holders of New Common Stock (other than a liquidation occurring in connection with a Liquidity Event described in another clause of this definition); and

(vi) Holdco ceases to own Voting Securities of Reorganized SFXE representing in the aggregate a majority of the total voting power of the Voting Securities of Reorganized SFXE.

"Fair Market Value" means, with respect to a Liquidity Event, the aggregate fair market value of the New Common Stock of Holdco, determined on the basis of the total consideration actually received by the holders of New Common Stock in such Liquidity Event in respect of such New Common Stock, adjusted (if, by the terms of the Liquidity Event, less than all of the New Common Stock is intended to participate) to take into account the percentage of the New Common Stock participating in such Liquidity Event; provided, however, in the case of a Liquidity Event (a) that is a Qualified Public Offering, the Fair Market Value shall equal the public offering price per share of New Common Stock sold in the Qualified Public Offering multiplied by the number of shares of New Common Stock that are issued and outstanding immediately prior to such Qualified Public Offering, and (b) that results in non-cash consideration, the Fair Market Value shall be determined by the Board of Directors of Holdco acting reasonably and in good faith.

4

NY 76381015v7

| | |
|---|---|
| | "First Equity Value Threshold" means either (i) so long as no shares of New Series A Preferred Stock or New Series B Preferred Stock have been voluntarily converted or exchanged into New Common Stock by the holders of such shares, zero, or (ii) in the event shares of New Series A Preferred Stock or New Series B Preferred Stock have previously been voluntarily converted or exchanged into New Common Stock by the holders of such shares and are no longer outstanding at the time of a Liquidity Event, an amount equal to (x) the aggregate New Series A Preferred Stock Liquidation Preference of all shares of New Series A Preferred Stock and/or the aggregate New Series B Preferred Stock Liquidation Preference of all New Series B Preferred Stock, in each case, so converted or exchanged at the time of such conversion or exchange, *less* (y) the sum of (i) the aggregate fair market value of any distributions (other than as a result of a stock split or similar event that does not impact the total value of the stock) made by Holdco to holders of shares of New Common Stock issued upon such conversion or exchange solely in respect of such shares of New Common Stock prior to the consummation of a Liquidity Event and (ii) net consideration paid by Holdco for repurchases of shares of New Common Stock issued upon such conversion or exchange prior to the consummation of a Liquidity Event. <br><br> "Second Equity Value Threshold" means the First Equity Value Threshold, *plus* $95,000,000, *less* the sum of (i) the aggregate fair market value of any distributions (other than as a result of a stock split or similar event that does not impact the total value of the stock) made by Holdco to holders of the New Common Stock solely in respect of shares of New Common Stock prior to the consummation of a Liquidity Event (other than any such distributions already deducted in calculating the First Equity Value Threshold) and (ii) net consideration paid by Holdco for repurchases of New Common Stock prior to the consummation of a Liquidity Event (other than any such net consideration already deducted in calculating the First Equity Value Threshold). |
| **Series A Warrant Put** | In the event that upon an occurrence of a Liquidity Event prior to the termination and expiration of the Series A Warrants, the consideration distributable to Holders of the Series A Warrants as a result of such Liquidity Event on account of the Series A Warrants does not in the aggregate exceed a value of $500,000, then at such Holders' option, which shall be deemed automatically exercised, Holdco shall be obligated to purchase all outstanding Series A Warrants for a total of $500,000, *less* the consideration received (if any) by the Holders of Series A Warrants upon such Liquidity Event, payable in cash. Upon such an event, Holders of Series B Warrants and Series C Warrants will not receive any distributions or other consideration on account of the Series B Warrants or Series C |

5

| | Warrants. |
|---|---|
| **Warrant Agreement:** | The Warrants will be governed by a Warrant Agreement between Holdco and a warrant agent selected by Holdco setting forth the rights of Holders in respect of the Warrants, the duties of the warrant agent and other customary terms and conditions as may be agreed among the Holders, Holdco, SFXE, the Debtors, Allianz, the Required Tranche B DIP Lenders and the Creditors' Committee.  The Warrant Agreement will provide that any modifications or amendments in any manner materially adverse to the Holders shall not be made without the express prior written consent of a majority of Holders so adversely affected. <br><br> The Warrant Agreement shall also include a summary waterfall outlining distributions at various valuations in a Liquidity Event. |
| **Transferability:** | The Warrants and/or the Warrant Agreement will contain restrictions on transfers of Warrants that would prevent transfers of Warrants, if Holdco believes, in good faith, that such transfer could require Holdco to become a reporting entity under Section 12 of the Securities Exchange Act.  Subject to the foregoing, the Warrants will be transferable (other than to a competitor of Reorganized SFXE) after first providing Holdco with written notice at least 5 Business Days prior to the proposed transfer. |
| **Governing Law:** | New York. |

6

NY 76381015v7

## EXHIBIT I TO THE PLAN SUPPLEMENT

Schedule of Executory Contracts and Unexpired Leases
To be Assumed, with Respective Cure Amounts

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SFX ENTERTAINMENT, INC., *et al.*,[1] | Case No. 16-10238 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** November 9, 2016, at 10:00 a.m. |
| | **Objection Deadline:** November 2, 2016 at 4:00 p.m. |

**NOTICE OF ASSUMPTION OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES PURSUANT TO SECTIONS 7.01 TO 7.03 OF THE PLAN**

PLEASE TAKE NOTICE that on September 30, 2016, the Debtors filed their *Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc. et al. Under Chapter 11 of the Bankruptcy Code* (the "**Plan**")[2] [Docket No. 1078] in which they seek, *inter alia*, authority from the Bankruptcy Court to assume certain Executory Contracts and Unexpired Leases (collectively, the "**Assumed Contracts**") identified in the Plan Supplement filed on October 26, 2016, a copy of such schedule of Assumed Contracts is attached hereto as **Exhibit 1**.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Plan, which has not yet been confirmed, on the Effective Date, except as otherwise provided in the Plan, or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, each of the Debtors' Executory Contracts and Unexpired Leases not previously assumed or rejected pursuant to an order of the Bankruptcy Court shall be deemed rejected as of the Effective Date, except for an Executory Contract or Unexpired Lease that: (i) is listed, either specifically or by category, on the schedule of Assumed Contracts identified in the Plan Supplement; (ii) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date; (iii) previously expired or was terminated pursuant to its own terms; or (iv) is the subject of a motion to assume, assume and

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four (4) digits of each Debtor's federal tax identification number, if applicable, are:  430R Acquisition LLC (7350); Beatport, LLC (1024); Core Productions LLC (3613); EZ Festivals, LLC (2693); Flavorus, Inc. (7119); ID&T/SFX Mysteryland LLC (6459); ID&T/SFX North America LLC (5154); ID&T/SFX Q-Dance LLC (6298); ID&T/SFX Sensation LLC (6460); ID&T/SFX TomorrowWorld LLC (7238); LETMA Acquisition LLC (0452); Made Event, LLC (1127); Michigan JJ Holdings LLC (n/a); SFX Acquisition, LLC (1063); SFX Brazil LLC (0047); SFX Canada Inc. (7070); SFX Development LLC (2102); SFX EDM Holdings Corporation (2460); SFX Entertainment, Inc. (0047); SFX Entertainment International, Inc. (2987); SFX Entertainment International II, Inc. (1998); SFX Intermediate Holdco II LLC (5954); SFX Managing Member Inc. (2428); SFX Marketing LLC (7734); SFX Platform & Sponsorship LLC (9234); SFX Technology Services, Inc. (0402); SFX/AB Live Event Canada, Inc. (6422); SFX/AB Live Event Intermediate Holdco LLC (8004); SFX/AB Live Event LLC (9703); SFX-94 LLC (5884); SFX-Disco Intermediate Holdco LLC (5441); SFX-Disco Operating LLC (5441); SFXE IP LLC (0047); SFX-EMC, Inc. (7765); SFX-Hudson LLC (0047); SFX-IDT N.A. Holding II LLC (4860); SFX-LIC Operating LLC (0950); SFX-IDT N.A. Holding LLC (2428); SFX-Nightlife Operating LLC (4673); SFX-Perryscope LLC (4724); SFX-React Operating LLC (0584); Spring Awakening, LLC (6390); SFXE Netherlands Holdings Coöperatief U.A. (6812); SFXE Netherlands Holdings B.V. (6898).  The Debtors' business address is 902 Broadway, 15th Floor, New York, NY 10010.

[2]  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan.

assign, or reject filed by the Debtors on or before the Confirmation Date (in any such case, with the approval of the Required DIP Lenders), except as otherwise provided in the Plan.

PLEASE TAKE FURTHER NOTICE that the Assumed Contracts will be assumed as of the Effective Date by the Reorganized Debtors pursuant to the Plan.

PLEASE TAKE FURTHER NOTICE that the hearing on the confirmation of the Plan has been set for **November 9, 2016, at 10:00 a.m. prevailing Eastern Time** (the "**Confirmation Hearing**") before the Honorable Mary F. Walrath, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 4, Wilmington Delaware 19801.

PLEASE TAKE FURTHER NOTICE that the Debtors will deliver a copy of the Plan and Disclosure Statement to any party requesting a copy by facsimile, electronic mail, or overnight delivery if such a request is made to Kurtzman Carson Consultants, LLC ("**KCC**") by: (a) calling KCC at (888) 201-2205, or if calling from outside the United States and Canada, at (310) 751-1839; or (b) sending a written request to SFX Ballot Processing Center, c/o Kurtzman Carson Consultants, LLC, 2335 Alaska Avenue, El Segundo, California 90245.  Such request must specify how the information is to be transmitted.  In addition, copies of the Plan and the Disclosure Statement may be obtained at or viewed free of charge on the Debtors' case website (http://www.kccllc.net/sfx)  or  for  a  fee  at  the  Bankruptcy  Court's  website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.

PLEASE TAKE FURTHER NOTICE that the Debtors assert that any and all Cure amounts due for each of the Assumed Contracts have been listed as set forth in the Plan Supplement.  If no amount has been listed, the Cure amount due is $0.

PLEASE TAKE FURTHER NOTICE that any objections regarding the Cure amount or assumption of the Assumed Contracts must (i) be in writing, filed with the Clerk of the United States Bankruptcy for the District of Delaware together with proof of service thereof, (ii) set forth the name and address of the objecting party and identify the Executory Contract or Unexpired Lease, (iii) state the legal and factual basis for such objection, and (iv) **be served upon the following so as to be** <u>**received**</u> **no later than 4:00 p.m. prevailing Eastern Time on November 2, 2016:**

(i)      Counsel to the Debtors:

Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Attn:   Dennis A. Meloro, Esq.

and

2

Greenberg Traurig, LLP
The MetLife Building
200 Park Avenue
New York, New York 10166,
Attn:    Maria J. DiConza, Esq. and Matthew L. Hinker, Esq.


(ii)     Counsel to the DIP Lenders and the Ad Hoc Group:

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038
Attn:   Kristopher M.  Hansen, Esq., Jonathan D. Canfield, Esq., and
          Elizabeth Taveras, Esq.

and

Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801
Attn:   Matthew Lunn, Esq. and Ashley Jacobs, Esq.

(iii)    Counsel to the Official Committee of Unsecured Creditors:

Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111
Attn:   Debra I. Grassgreen, Esq. and Joshua M. Fried, Esq.

and

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Attn:   Bradford J. Sandler, Esq. and Colin R. Robinson, Esq.


(iv)    Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn:   Hannah McCollum, Esq.

3

**AN OBJECTION MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT UNLESS IT IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE.**

Dated:  October 26, 2016                          GREENBERG TRAURIG, LLP


*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile:  (302) 661-7360
Email: melorod@gtlaw.com

-and-

Nancy A. Mitchell (admitted *pro hac vice*)
Maria J. DiConza (admitted *pro hac vice*)
Nathan A. Haynes (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile:  (212) 801-6400
Email: mitchelln@gtlaw.com
        diconzam@gtlaw.com
        haynesn@gtlaw.com

*Counsel for the Debtors and Debtors-in-Possession*

4

**Exhibit 1**

Schedule of Executory Contracts and Unexpired Leases
To be Assumed, with Respective Cure Amounts

| Debtor | Contract Counterparty | Executory Contract or Unexpired Least to be Assumed | Sum of Cure Amount |
|---|---|---|---|
| 430R Acquisition LLC | SFX Entertainment | Agreement and Plan of Merger by an Among SFX Entertainment, Inc., 430 Acquisition LLC, ARC90, Inc., and The Stockholders of ARC90, Inc. dated 11/12/13. | $ - |
| 430R Acquisition LLC | TriNet HR Corporation | Services Agreement | $ - |
| BEATPORT, LLC | Amazon Web Services, Inc | AWS Beta Test Participation Agreement | $ 112,015.51 |
| BEATPORT, LLC | Backupify | IT & Website Services | $ 1,040.00 |
| BEATPORT, LLC | Bitly | IT & Website Services | $ 2,985.00 |
| BEATPORT, LLC | Cancel Monday, LTD | Professional Services Agreement | $ - |
| BEATPORT, LLC | Cedexis | Purchase Order | $ - |
| BEATPORT, LLC | Cedexis, Inc | Cedexis Master Services Agreement | $ 1,500.00 |
| BEATPORT, LLC | CenturyLink | IT & Website Services | $ 817.86 |
| BEATPORT, LLC | CenturyLink Sales Solutions, Inc | CenturyLink Total Advantage Express Agreement | $ - |
| BEATPORT, LLC | CyberSource Corporation | CyberSource Payment Solutions Agreement and Amendments | $ - |
| BEATPORT, LLC | Darren Hoyt | Separation and Release Agreement | $ - |
| BEATPORT, LLC | Dirtybird LLC | Beatport Synchronization and Mater Use License Agreement | $ - |
| BEATPORT, LLC | Dynect | IT & Website Services | $ 900.00 |
| BEATPORT, LLC | Exact Target Inc., | Exact Target Email Services Agreement | $ - |
| BEATPORT, LLC | Fastly | IT & Website Services | $ 24,825.00 |
| BEATPORT, LLC | Google Apps | IT & Website Services | $ 784.24 |
| BEATPORT, LLC | Google Apps | Domain management | $ 242.79 |
| BEATPORT, LLC | Internap Network Services, Corp | Sales Order | $ 12,393.97 |
| BEATPORT, LLC | PayPal (Europe) S.a.r.l & Cie, S.C.A | European Agreement | $ - |
| BEATPORT, LLC | Sony Music Entertainment International Limited | Short-Form Digital Sales Agreement (as amended) | $ - |
| BEATPORT, LLC | Stackdriver | IT & Website Services | $ 3,944.00 |
| BEATPORT, LLC | Taxi Building III, LLC | Office lease for Denver Property | $ - |
| BEATPORT, LLC | Thomson Licensing (SAS) | Supplemental Letter Agreement on Paid-Up Royalty for mp3 License Agreement | $ - |
| BEATPORT, LLC | TriNet HR Corporation | Services Agreement | $ - |
| BEATPORT, LLC | WPEngine | IT & Website Services | $ 6,419.16 |
| BEATPORT, LLC | Zayo/Latisys | IT & Website Services | $ 38,870.73 |
| BEATPORT, LLC | Zendesk | Service Order Form | $ - |
| Core Productions LLC | Brye, Inc | Master Services Agreement | $ - |
| EZ Festivals LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| EZ Festivals LLC | Hotels for Hope | Agreement for Services | $ - |
| ID&T/SFX Mysteryland LLC | Bethel Performing Arts Center, LLC | Venue License Agreement | $ - |
| ID&T/SFX Mysteryland LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| ID&T/SFX North America LLC | TriNet HR Corporation | Services Agreement | $ - |
| ID&T/SFX Sensation LLC | AB, Anheuser-Busch Mexico Holding | Sponsorship and Promotion Agreement | $ - |
| ID&T/SFX TomorrowWorld LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| LETMA Acquisition, LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX Acquisition LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX Entertainment, Inc. | Advanced Concert Productions LLC | Asset Contribution Agreement | $ - |
| SFX Entertainment, Inc. | American Express | American Express/Concur Third Party Vendor Form | $ - |
| SFX Entertainment, Inc. | American Express Travel Related Services Company, Inc | Global Data Protection Authorization and Direction | $ - |
| SFX Entertainment, Inc. | Anheuser-Busch Inbev S.A. | Sponsorship Agreement | $ - |
| SFX Entertainment, Inc. | Anheuser-Busch Invbev S.A. | Corona Sunsets Music Events Agreement | $ - |
| SFX Entertainment, Inc. | ASCAP | Settlement and Release Agreement | $ - |
| SFX Entertainment, Inc. | Concur Technologies, Inc | Authorization to Deliver Customer Data | $ 22,070.96 |
| SFX Entertainment, Inc. | CR 8 LLC | Independent Contractor Agreement | $ - |
| SFX Entertainment, Inc. | CR 8 LLC | Limited Liability Company Operating Agreement | $ - |
| SFX Entertainment, Inc. | Fidelity Management Trust Company | Fidelity Advisor 401(k) Retirement Plan Service Agreement | $ 4,275.00 |
| SFX Entertainment, Inc. | Fierman Eduard Van Duijn | Quota Purchase Agreement | $ - |
| SFX Entertainment, Inc. | Filipe Fernandes Chulam | 1st Amended and Restated Share Purchase Agreement of Rock City S.A. (current denomination of A.H.O.S.P.E. Empreendimentos e Participacoes S.A.) - dated 2/12/14 | $ - |
| SFX Entertainment, Inc. | Filipe Fernandes Chulam | Shareholders' Agreement of Rock City S.A. - dated 2/12/14 | $ - |
| SFX Entertainment, Inc. | Filipe Fernandes Chulam | Rock City S.A. Share Pledge Agreement and Amendments | $ - |
| SFX Entertainment, Inc. | I-Motion Besitz- und Verwaltungsgesellschaft mbH & Co KG | Share Purchase Agreement and Amendment | $ - |
| SFX Entertainment, Inc. | James Donald Estopinal | Asset Contribution Agreement | $ - |
| SFX Entertainment, Inc. | Lightserve | Dataroom services | $ - |
| SFX Entertainment, Inc. | MasterCard | Master Framework Agreement | $ - |
| SFX Entertainment, Inc. | Monumental  Productions Beheer B.V. | Share Purchase Agreement | $ - |
| SFX Entertainment, Inc. | NetSuite Inc | Statement of Work | $ 5,435.26 |
| SFX Entertainment, Inc. | One of US Holding B.V./ID& T | Stock Purchase Agreement (as amended) | $ - |
| SFX Entertainment, Inc. | Pita II LLC | Agreement and Plan of Merger | $ - |
| SFX Entertainment, Inc. | SESAC | SESAC Settlement and License Agreements | $ - |
| SFX Entertainment, Inc. | SFX Entretenimento Do Brasil Participações Ltda. | Contracto Social Da LH1015 Participacoes Ltda | $ - |
| SFX Entertainment, Inc. | SFX-IDT N.A. Holding LLC | TRANSFER AGREEMENT AND AMENDMENT | $ - |
| SFX Entertainment, Inc. | Team VI, LLC | Separation and Settlement Agreement | $ - |
| SFX Entertainment, Inc. | TriNet HR Corporation | Services Agreement | $ - |
| SFX Entertainment, Inc. | Viagogo AG | Indemnification Agreement | $ - |
| SFX Entertainment, Inc. | Viagogo AG | International Marketing Sponsorship Agreement | $ - |
| SFX Entertainment, Inc. | Wink Party-Artwork | Creative Services Agreement | $ - |
| SFX Entertainment, Inc. | YouTube | YouTube Channel Content Ownership Transfer - Life In Color | $ - |
| SFX Entertainment, Inc. | YouTube | YouTube Channel Content Ownership Transfer - Stereosonic | $ - |
| SFX Holding Corporation | James Donald Estopinal | Employment Agreement | $ - |
| SFX Managing Member Inc. | Team VI, LLC | Membership Interest Purchase Agreement | $ - |
| SFX Marketing LLC | ExactTarget, Inc | Purchase Order | $ 23,253.61 |
| SFX Marketing LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX-Disco Intermediate Holdco LLC | Beafour Development LLC | Co-Promotion Agreement | $ - |
| SFX-Disco Intermediate Holdco LLC | Europe Night Club | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Gilt Nightclub | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | House of Blues | First AMENDMENT TO THE VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Label Night Club | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Livewire | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Lizard Lounge | First AMENDMENT TO THE VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Lux Management, LLC | Co-Promotion Agreement | $ - |
| SFX-Disco Intermediate Holdco LLC | Rumor Nightclub | First AMENDMENT TO THE VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Intermediate Holdco LLC | Silver Bullet Events, LLC | Co-Promotion Agreement | $ - |
| SFX-Disco Intermediate Holdco LLC | Ultimo Productions | Co-Promotion Agreement | $ - |
| SFX-Disco Operating LLC | 2720 Cherokee | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | All In One Consultants, LLC d/b/a Venue 578 | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Amphitheatre | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Amphitheatre Events, LLC | Services Agreement | $ - |
| SFX-Disco Operating LLC | Beafour Development LLC | Co-Promotion Agreement | $ - |
| SFX-Disco Operating LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| SFX-Disco Operating LLC | Club Rio | Venue Insurance and Indemnity Agreement | $ - |
| SFX-Disco Operating LLC | Coliseum Tallahassee | Venue Insurance and Indemnity Agreement (Word document) | $ - |
| SFX-Disco Operating LLC | Europe Night Club | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Findor, Inc. | Travel Portal Agreement | $ - |
| SFX-Disco Operating LLC | Flannagan's Dublin | Services Agreement | $ - |
| SFX-Disco Operating LLC | Global Groove Production Inc. | Co-Promotion Agreement | $ - |
| SFX-Disco Operating LLC | James Donald Estopinal | Asset Contribution Agreement | $ - |
| SFX-Disco Operating LLC | Leverage RH LLC | Services Agreement | $ - |
| SFX-Disco Operating LLC | Leverage RH LLC | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

| Debtor | Contract Counterparty | Executory Contract or Unexpired Least to be Assumed | Sum of Cure Amount |
|---|---|---|---|
| SFX-Disco Operating LLC | Live Entertainment  d/b/a Buchanan's Event Centre | Venue Insurance and Indemnity Agreement Buchanans | $ - |
| SFX-Disco Operating LLC | Maya Day & Nightclub | Services Agreement | $ - |
| SFX-Disco Operating LLC | Maya Day and Nightclub | FIRST AMENDMENT  VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | New Caps, LLC (dba CAPS, LLC) | Amendment to CAPS Payroll Services Agreement | $ - |
| SFX-Disco Operating LLC | Old Rock House | FIRST AMENDMENT  VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Pagent Concert Nightclub | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Rumor Nightclub | Services Agreement | $ - |
| SFX-Disco Operating LLC | Scottsdale Beach Club/ Maya Day & Night Club | First Amendment to the Services Agreement | $ - |
| SFX-Disco Operating LLC | Sisu Uptown LLC | Venue License Agreement | $ - |
| SFX-Disco Operating LLC | Skully's Bar & Grill, (nc. | Venue License Agreement | $ - |
| SFX-Disco Operating LLC | Soundgarden Hall | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Soundgarden Hall | Services Agreement | $ - |
| SFX-Disco Operating LLC | Stereo Live | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | Texas Motor Speedway, Inc. | Venue Agreement | $ - |
| SFX-Disco Operating LLC | The Bomb Factory Dallas, LP | Insurance and Indemnification Agreement | $ - |
| SFX-Disco Operating LLC | The Pageant Concert Nightclub | Service Agreement | $ - |
| SFX-Disco Operating LLC | The Pageant Concert Nightclub | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-Disco Operating LLC | The Store Room at theVillages L.L.C. | Self Storage Lease Agreement | $ - |
| SFX-Disco Operating LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX-Disco Operating LLC | True Vizions LTD (The Avalon) | Services Agreement | $ - |
| SFX-Disco Operating LLC | Usability Dynamics | IT & Website Services | $ 17,015.48 |
| SFX-Disco Operating LLC | Vulcan Gas Co. | Services Agreement | $ - |
| SFX-Disco Operating LLC | Vulcan Gas Company | VENUE INSURANCE AND INDEMNITY AGREEMENT | $ - |
| SFX-LIC Operating LLC | ASCAP | Concerts and Recitals-Blanket License Agreement  Fee Schedule 2015 | $ - |
| SFX-LIC Operating LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| SFX-LIC Operating LLC | Concur Technologies, Inc | Sales Order Form Standard Edition | $ - |
| SFX-LIC Operating LLC | Dayglow | Trademark Assignment | $ - |
| SFX-LIC Operating LLC | Dayglow LLC | Asset Contribution Agreement | $ - |
| SFX-LIC Operating LLC | Sebastian Solano | Asset Contribution Agreement | $ - |
| SFX-LIC Operating LLC | Sebastian Solano | | |
| | Paul Campbell | | |
| | Patryk Tracz | | |
| | Lukasz Tracz | | |
| | Eric Fuller | | |
| | Collyns Stenzel | | |
| | c/o Advanced Concert Productions, LLC | Asset Contribution Agreement amongst several individuals and companies | $ - |
| SFX-LIC Operating LLC | SFX Entertainment Inc. | International Event Format and Licensing Agreement | $ - |
| SFX-LIC Operating LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX-Nightlife Operating LLC | AT&T Corp | Multi-Service Agreement | $ - |
| SFX-Nightlife Operating LLC | Miami Dolphins, Ltd | Services Agreement and Amendments | $ - |
| SFX-Nightlife Operating LLC | South Florida Stadium, LLC | First Amendment to Services Agreement | $ - |
| SFX-Nightlife Operating LLC | The Vectrocon Computer Consulting Corporation | IT Support Agreement 2016 | $ - |
| SFX-Nightlife Operating LLC | TriNet HR Corporation | Services Agreement | $ - |
| SFX-React Operating LLC | Big Chicago, Inc. | Management Agreement | $ - |
| SFX-React Operating LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| SFX-React Operating LLC | Club 2047, LLC | Venue License Agreement | $ - |
| SFX-React Operating LLC | Jeffery Callahan | Employment Agreement | |
| SFX-React Operating LLC | Lucas King | Employment Agreement | |
| SFX-React Operating LLC | Nick Karounos | Employment Agreement | |
| SFX-React Operating LLC | Paper Tiger Document Solutions | Service Agreement | $ - |
| SFX-React Operating LLC | TriNet HR Corporation | Services Agreement | $ - |
| **SFX-React Operating LLC** | **Club 2047 LLC** | **Management Agreement** | **$ -** |
| **SFX-React Operating LLC** | **306 N. Halstead Inc.** | **Management Agreement** | **$ -** |
| Spring Awakening, LLC | CAPS, LLC | CAPS Payroll Service Agreement | $ - |
| | | | **$ 278,788.57** |

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

**Beatport PRO's To Be Assumed**

| PRO/Society Counterparty | Executory Contract to be Assumed | Cure Amount |
|---|---|---|
| ARESA | PRO Agreement | $ - |
| ASCAP | PRO Agreement | $ - |
| BMI | PRO Agreement | $ - |
| CSI | PRO Agreement | $ - |
| SABAM | PRO Agreement | $ - |
| SACEM/UMPI | PRO Agreement | $ - |
| SOCAN | PRO Agreement | $ - |

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

**Beatport Label Agreements to be Assumed**

| Supplier Name | Executory Contract to be Assumed | Cure Amount |
|---|---|---|
| Freak N Chic | Label agreement | 11,142.45 |
| Premier Muzik International Corp | Label agreement | 6,223.42 |
| Rising Music LLC | Label agreement | 6,191.00 |
| Loopboutique | Label agreement | 5,194.08 |
| Sandwell District | Label agreement | 4,437.05 |
| BOOM Library | Label agreement | 3,760.32 |
| Send Records | Label agreement | 3,543.49 |
| Intrenze | Label agreement | 3,214.99 |
| novamute | Label agreement | 3,197.29 |
| Peace Bisquit | Label agreement | 3,118.31 |
| Persona Records | Label agreement | 3,075.32 |
| Maurice Lamar Herd | Label agreement | 2,763.48 |
| S.C Roton S.R.L | Label agreement | 2,634.48 |
| Motivbank | Label agreement | 2,576.75 |
| FAX +49-69 450 464 | Label agreement | 2,408.48 |
| r-loops | Label agreement | 2,196.09 |
| X-Mix | Label agreement | 2,054.18 |
| Accelerate | Label agreement | 2,038.25 |
| Thrive Music | Label agreement | 2,018.88 |
| Nicholas Allen | Label agreement | 1,999.31 |
| Oleksii Ponomarov | Label agreement | 1,965.82 |
| Join The Dots Ltd | Label agreement | 1,964.86 |
| Psyload | Label agreement | 1,963.70 |
| Space House Records LLC | Label agreement | 1,894.79 |
| Unlove Recordings | Label agreement | 1,880.90 |
| Istmo Music | Label agreement | 1,716.74 |
| Felipe Undurraga Schmidt | Label agreement | 1,654.86 |
| South Records | Label agreement | 1,653.87 |
| Go Ventures, Inc. | Label agreement | 1,629.18 |
| Loco Records | Label agreement | 1,557.88 |
| Sureplayer Records | Label agreement | 1,496.32 |
| Lucky Spin Music Ltd. | Label agreement | 1,418.66 |
| PF Urban Agency (Plural Form) | Label agreement | 1,404.69 |
| Shaboom Black | Label agreement | 1,374.79 |
| Slopshop Music Group | Label agreement | 1,356.83 |
| Hugo Manuel De Oliveira Quintas | Label agreement | 1,296.07 |
| 1152316 Ontario Inc. (83 West) | Label agreement | 1,288.26 |
| Epsilonlab | Label agreement | 1,286.39 |
| Traut Muzik | Label agreement | 1,277.61 |
| Fox Samples | Label agreement | 1,250.23 |
| OK Music | Label agreement | 1,213.15 |
| Boss Records LTD | Label agreement | 1,193.48 |
| Funk Farm (AND Press - 360 Group) | Label agreement | 1,184.72 |
| Progressive Form | Label agreement | 1,181.42 |
| Michele Pinna | Label agreement | 1,180.06 |
| Aula Magna Records | Label agreement | 1,172.01 |
| Sly City Entertainment | Label agreement | 1,146.75 |
| LessThan3 LLC | Label agreement | 1,128.35 |

\* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

| Supplier Name | Executory Contract to be Assumed | Cure Amount |
|---|---|---|
| Siam Records | Label agreement | 1,095.98 |
| CARLOS ALBERTO PERDOMO LLANOS | Label agreement | 1,094.78 |
| Magniz Media Service | Label agreement | 1,081.85 |
| APM Productions | Label agreement | 1,081.47 |
| ULTRA-VYBE, INC. | Label agreement | 1,035.70 |
| Valve Recordings | Label agreement | 1,024.63 |
| Labrok Records | Label agreement | 1,013.32 |
| Deadfish | Label agreement | 940.78 |
| Lazer Disk | Label agreement | 917.81 |
| The Loop Loft | Label agreement | 911.89 |
| Uplifting & Mumtazz Eventos LTD | Label agreement | 899.82 |
| BERK DOGAN | Label agreement | 871.02 |
| MTheory Artist Ventures | Label agreement | 861.97 |
| Forcetracks Ltd. | Label agreement | 859.10 |
| Intrinsic Design Records | Label agreement | 852.47 |
| Merge Media, LLC | Label agreement | 848.72 |
| Huume Recordings | Label agreement | 816.93 |
| John Anderson Gomez | Label agreement | 806.22 |
| Khazuma Recordings SL | Label agreement | 803.83 |
| Bot Records, Inc | Label agreement | 779.01 |
| Bollywoodsounds | Label agreement | 776.74 |
| Sudden Def Recordings Ltd. | Label agreement | 766.59 |
| Digital Sound Factory | Label agreement | 762.06 |
| Bad Pony Records | Label agreement | 760.52 |
| Incognet | Label agreement | 760.22 |
| Pitch Music Publishing | Label agreement | 759.06 |
| Falco Music | Label agreement | 754.63 |
| Sevensenses Recordings | Label agreement | 752.72 |
| Catch 22 Recordings | Label agreement | 748.88 |
| Marcelo Andres Domancich | Label agreement | 732.84 |
| Barcode Recordings Ltd | Label agreement | 731.11 |
| Soundtrax | Label agreement | 730.27 |
| Hot N Spycy | Label agreement | 724.93 |
| Buffalo Jams BVBA | Label agreement | 718.39 |
| New Media Station Ltd | Label agreement | 715.17 |
| OVA Records | Label agreement | 714.08 |
| C.A.S.E. Entertainment Inc. (Southside Recordings) | Label agreement | 706.08 |
| Yoruba Records | Label agreement | 703.81 |
| NO SMOKING RECORDINGS | Label agreement | 699.44 |
| Mas Volumen SA de CV | Label agreement | 688.48 |
| Sandy Rivera Ltd. | Label agreement | 678.65 |
| KAZUHIRO HONDA | Label agreement | 672.10 |
| Junkbeats Productions | Label agreement | 662.69 |
| Cubism | Label agreement | 660.70 |
| Three-O-Five Digital LLC | Label agreement | 653.89 |
| Colour Music Corporation S.A.S | Label agreement | 653.33 |
| HGNY LLC | Label agreement | 652.95 |
| Earforce Rec / Dos Palomas Negras | Label agreement | 645.75 |
| Max Ernst | Label agreement | 644.80 |
| Roberto Carlos LLoreda Cruz | Label agreement | 640.89 |

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

| Supplier Name | Executory Contract to be Assumed | Cure Amount |
|---|---|---|
| Karmarouge Records | Label agreement | 636.88 |
| Kummba Productions / Blaze Imprints | Label agreement | 634.19 |
| Empro Music | Label agreement | 632.61 |
| Black Octopus Sound | Label agreement | 629.18 |
| Ambition Management Group | Label agreement | 627.42 |
| Holophon | Label agreement | 623.37 |
| Bad Baby Records | Label agreement | 619.64 |
| Lost Souls | Label agreement | 618.95 |
| Distraekt Productions | Label agreement | 618.21 |
| Stereopole | Label agreement | 617.98 |
| Casa Del Soul Media | Label agreement | 607.86 |
| Whose Haus | Label agreement | 604.84 |
| USB Records / KJR Productions | Label agreement | 603.23 |
| Scandium Records | Label agreement | 593.64 |
| Audio Delikatesa d.o.o. | Label agreement | 593.03 |
| Tuneless Ltd | Label agreement | 587.71 |
| Ninechannel Multimedia | Label agreement | 584.24 |
| Piekup Records | Label agreement | 584.00 |
| Presslab Records | Label agreement | 582.95 |
| Eric William Mirshak | Label agreement | 581.94 |
| SOCO Audio | Label agreement | 580.72 |
| Below | Label agreement | 577.91 |
| Art Of Dance Records | Label agreement | 573.96 |
| Anthony Rother Production | Label agreement | 570.21 |
| Soul Motive Records Ltd | Label agreement | 569.76 |
| NewBorn Records | Label agreement | 569.50 |
| Metatron | Label agreement | 568.61 |
| Wandu Records | Label agreement | 568.30 |
| Polka | Label agreement | 567.37 |
| SARL Twist My DJ | Label agreement | 566.22 |
| No-mad Industries LLC | Label agreement | 565.15 |
| U-Freqs | Label agreement | 553.51 |
| Unlock Recordings | Label agreement | 553.36 |
| Slash Label | Label agreement | 549.98 |
| Hochokai | Label agreement | 547.22 |
| Ourvision Recordings | Label agreement | 545.83 |
| Radioactiva Records | Label agreement | 544.41 |
| Glack Audio | Label agreement | 544.19 |
| Downbeat Productions | Label agreement | 541.12 |
| Terratraxx Recording Group | Label agreement | 539.62 |
| Disciple Recordings | Label agreement | 536.40 |
| Mashtronic Music | Label agreement | 532.82 |
| Loungin' Records | Label agreement | 532.36 |
| Dogs On Acid (DOA) | Label agreement | 529.99 |
| Media Records Ltd. | Label agreement | 528.23 |
| Central Avenue Productions (Barcoda) | Label agreement | 521.46 |
| Musiciz Recordings | Label agreement | 516.93 |
| Mushroom Recordings | Label agreement | 515.62 |
| Super Superb Recordings | Label agreement | 514.61 |
| Audiotent | Label agreement | 513.98 |

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

| Supplier Name | Executory Contract to be Assumed | Cure Amount |
|---|---|---|
| Mahjong Music | Label agreement | 513.10 |
| Material Series | Label agreement | 512.40 |
| Kahvi Records | Label agreement | 509.33 |
| Frequency 8 Records | Label agreement | 508.53 |
| Nulogic Records | Label agreement | 508.52 |
| Zeta Zero sarl (NO2 Records) | Label agreement | 507.03 |
| KYR Records | Label agreement | 503.91 |
| O Recordings | Label agreement | 500.16 |
| All other Beatport Label Agreements with $0 owed** | Label agreement | - |
| | **Total** | **187,073.28** |

** Please note that the Debtors have removed the Label Agreement between Beatport and Art & Music, S.R.L.; that Label Agreement shall be deemed rejected as of the Effective Date.

* This Schedule of Executory Contracts and Unexpired Leases, with Respective Cure Amounts is subject to further modification prior to the Effective Date.

## EXHIBIT J TO THE PLAN SUPPLEMENT

Litigation Trust Agreement

DRAFT

# LITIGATION TRUST AGREEMENT[1]

**THIS LITIGATION TRUST AGREEMENT** (the "Litigation Trust Agreement"), dated as of November __, 2016, by and among SFX Entertainment, Inc., and its undersigned subsidiaries (collectively, as the context requires, the "Debtors" or the "Reorganized Debtors") and _____ (the "Litigation Trustee"), is hereby executed to establish a litigation trust (the "Litigation Trust") pursuant to the *Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc., et al. Under Chapter 11 of the Bankruptcy Code* [Docket No. 1078] (as the same may be amended, supplemented, or modified from time to time, the "Plan"). Unless the context otherwise provides, capitalized terms used in this Litigation Trust Agreement and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## RECITALS

WHEREAS, on February 1, 2016, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, on September 30, 2016, the Debtors filed the Plan with the Bankruptcy Court;

WHEREAS, on November __, 2016 the Bankruptcy Court entered the Confirmation Order [Docket No. __] (the "Confirmation Order");

WHEREAS, the Plan provides for the establishment of the Litigation Trust to enforce and pursue the Litigation Trust Claims (as defined in Section 2.3 below) for the benefit of the Litigation Trust Beneficiaries and each of their permitted successors, assigns, and heirs (collectively hereinafter, the "Beneficiaries");

WHEREAS, the Confirmation Order provides for the appointment of the Litigation Trustee as the representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code for, among other purposes, the enforcement of the Litigation Trust Claims on behalf of and in the right of the Estates;

WHEREAS, the Confirmation Order further provides for the appointment of the Litigation Trustee to serve as the Disbursing Agent for the purposes set forth in the Plan;

WHEREAS, the Litigation Trustee has agreed to serve as trustee of the Litigation Trust and as Disbursing Agent upon the terms and subject to the conditions set forth in this Litigation Trust Agreement and the Plan;

WHEREAS, the Litigation Trust is intended to qualify as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and as a "grantor trust" pursuant to the Internal Revenue Code sections 671-677 for United States federal income tax purposes, with the Beneficiaries treated as the grantors and owners of the Litigation Trust Assets; and

---

[1] This Form of Litigation Trust Agreement is subject to further modification prior to the Effective Date.

*NY 246182807v5*

NOW, THEREFORE, in accordance with the Plan and in consideration of the promises and mutual covenants and agreements contained herein, the validity and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## ESTABLISHMENT OF TRUST

Section 1.1    <u>Name of Trust</u>.  The trust created by the Litigation Trust Agreement shall be known as the "SFX Litigation Trust" and shall be referred to herein as the Litigation Trust. The Litigation Trust shall have a separate existence from the Reorganized Debtors.  The Litigation Trustee shall use his or her best efforts to conspicuously show that the Litigation Trustee represents the Litigation Trust, which should not be confused with the Reorganized Debtors.  The Litigation Trust is the trust created pursuant to Article VI of the Plan.

Section 1.2    <u>Declaration of Trust</u>.  In consideration of the confirmation and consummation of the Plan under the Bankruptcy Code, the Debtors, the Reorganized Debtors and the Litigation Trustee have executed this Litigation Trust Agreement.  Effective on the Effective Date of the Plan, in accordance with Article VI of the Plan (i) the Debtors and the Estates are deemed to have irrevocably assigned, transferred, conveyed and delivered to the Litigation Trust all right, title and interest of the Debtors and the Estates in and to the Litigation Trust Claims (subject to Section 2.3 of this Litigation Trust Agreement), to have and to hold in trust for the benefit of the Beneficiaries, (ii) the GUC Note shall be issued to the Litigation Trustee to be held ~~in~~<u>by</u> the Litigation Trust ~~to have and to hold~~ in trust for the benefit of the applicable Beneficiaries, (iii) the Reorganized Debtors shall make the initial $250,000 payment of the Litigation Trust Funding Amount (the "<u>Initial Litigation Trust Funding Amount</u>") to the Litigation Trust to have and to hold in trust to fund the Litigation Trust for the benefit of the Beneficiaries, and (iv) the Litigation Trust shall be entitled to receive the balance of the Litigation Trust Funding Amount up to $650,000 (the "<u>Remaining Litigation Trust Funding Amount</u>"), to have and to hold in trust to fund the Litigation Trust for the benefit of the Beneficiaries, in accordance with Section 3.1 of this Litigation Trust Agreement .  The use and distribution of the Litigation Trust Assets shall be made in accordance with, and subject to the terms and conditions of, this Litigation Trust Agreement and the Plan.  Except as set forth in Section 2.7 and Section 3.1 of this Litigation Trust Agreement, none of the Debtors, the Estates or the Reorganized Debtors shall have any reversionary interest whatsoever in the Litigation Trust Assets.

Section 1.3    <u>Purpose of Trust.</u>  The Litigation Trust is established solely for the purposes of holding, administering and liquidating the Litigation Trust Assets and making distributions to the Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business.  The Litigation Trustee shall be the exclusive trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and Internal Revenue Code section 6012(b)(3).

Section 1.4    <u>Transfer of Litigation Trust Assets.</u>  Except with respect to the Remaining Litigation Trust Funding Amount, which shall be governed by Section 3.1 of this Litigation Trust Agreement, in accordance with the provisions of the Plan, on the Effective Date, the Debtors and the Reorganized Debtors hereby irrevocably and absolutely transfer, assign, convey, and deliver

2

and are deemed to have irrevocably and absolutely transferred, assigned, conveyed, and delivered to the Litigation Trust, without recourse, all of their respective rights, title, and interest (whether legal, beneficial, or otherwise) in and to all of the Litigation Trust Assets (including any such assets comprising or subject to attorney-client, work product protection or other privilege or immunity attaching to any documents or communications, whether written or oral, with respect to the Litigation Trust Assets).  Except with respect to the Remaining Litigation Trust Funding Amount, which shall be governed by to Section 3.1 of this Litigation Trust Agreement, the Litigation Trust Assets are, and are hereby deemed, transferred to the Litigation Trust effective as of the Effective Date and all of the foregoing transferred assets shall automatically vest solely in the Litigation Trust free and clear of all Claims, Liens, encumbrances or Interests, subject only to the Plan and the Confirmation Order.  Pursuant to Section 5.10 of the Plan, the transfer of the Litigation Trust Assets to the Litigation Trust shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax or governmental assessment.

Section 1.5    Estate Representative.  On the Effective Date, the Litigation Trustee shall be deemed to have been designated as a representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to (a) enforce and pursue the Litigation Trust Claims, and (b) resolve Disputed Class 5 Claims (2019 Debtors).  To the extent that any Litigation Trust Asset cannot be transferred to the Litigation Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, the Litigation Trustee shall be deemed to have been designated as a representative of the Reorganized Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Litigation Trust Assets.  Notwithstanding the foregoing, all proceeds of such Litigation Trust Assets shall be transferred to the Litigation Trust to be distributed to the Beneficiaries consistent with the terms of the Plan and the Litigation Trust Agreement.  The Litigation Trustee shall be deemed the successor to the Creditors' Committee with respect to (i) adversary proceedings or contested matters pending as of the Effective Date to which the Creditors' Committee is a party, (ii) any motions by the Creditors' Committee seeking to enforce the Plan and the transactions contemplated thereunder or the Confirmation Order, and (iii) any pending appeals and related proceedings.

Section 1.6    Vesting of Privileges.  The Litigation Trustee shall be vested with any attorney-client, work product protection or other privilege or immunity ("Privileges") belonging to the Debtors or the Reorganized Debtors as of the Effective Date attaching to any documents or communications (whether written or oral) related to the Litigation Trust Claims, subject to the provisions of Section 2.6 of this Litigation Trust Agreement.  The Reorganized Debtors and the Litigation Trustee shall take all necessary actions to effectuate the transfer of such privileges, protections and immunities.  The Litigation Trust's holding of the Privileges associated with the Litigation Trust Claims shall not operate as a waiver of other privileges possessed or retained by the Debtors or Reorganized Debtors.  The Litigation Trustee shall be entitled to waive any Privilege with respect to the Litigation Trust Claims as may be necessary or appropriate in the discretion of the Litigation Trustee **[(with the consent of the Litigation Trust Oversight Committee)]**; provided, however, that, the Litigation Trustee may not waive any Privilege if such waiver would impair **any** other privilege held by the Debtors or the Reorganized Debtor.

Section 1.7    Acceptance by the Litigation Trustee.  The Litigation Trustee is willing,

3

*NY 246182807v5*

and hereby accepts the appointment, to serve as Litigation Trustee pursuant to this Litigation Trust Agreement and the Plan, and agrees to observe and perform all duties and obligations imposed upon the Litigation Trustee by this Litigation Trust Agreement and the Plan, including, without limitation, to accept, hold, and liquidate the Litigation Trust Assets, make distributions to Beneficiaries and to otherwise carry out the purpose of the Litigation Trust in accordance with the terms and subject to the conditions set forth herein and in the Plan and the Confirmation Order.  Under no circumstance shall the Litigation Trustee be authorized or contend he is authorized to incur liability on behalf of the Estates or the Reorganized Debtors, and any and all liability incurred by the Litigation Trustee, whether for expenses of prosecution, payment of sanctions, or otherwise, shall be the exclusive liability of the Litigation Trust and not the liability of the Estates or the Reorganized Debtors.

**ARTICLE II**
**LITIGATION TRUST CLAIMS**

Section 2.1     Enforcement of Litigation Trust Claims.  The Litigation Trustee shall, **[with the approval of the Litigation Trust Oversight Committee,]** have the exclusive right, authority and discretion to investigate, institute, prosecute, abandon, transfer, sell, settle or compromise any and all Litigation Trust Claims, and to decline to do any of the foregoing, without the consent or approval of any third party (including any Creditor) and without further notice, order or authorization of the Bankruptcy Court**, in each case, in accordance with the terms of this Litigation Trust Agreement**.  The Litigation Trustee shall be permitted, in its good faith business judgment **[and with the consent of the Litigation Trust Oversight Committee,]**, to settle any Litigation Trust Claims or to otherwise reduce the Litigation Trust Claims to Litigation Trust Proceeds in accordance with the terms of this Litigation Trust Agreement.

Section 2.2     Manner of Liquidation.  The Litigation Trustee and the Litigation Trust Oversight Committee shall consult with the New SFXE Board prior to the commencement or pursuit of any Litigation Trust Claim against a vendor, service provider, or operator with whom the Reorganized Debtors continue to do business.  Among other oversight responsibilities set forth in this Litigation Trust Agreement, the Litigation Trust Oversight Committee shall consider the impact of the Litigation Trustee's investigation and prosecution of the Litigation Trust Claims on the Reorganized Debtors' operations.

Section 2.3     Litigation Trust Claims.  For purposes of this Litigation Trust Agreement, the term "Litigation Trust Claims" shall mean all Causes of Action held by the Debtors or the Reorganized Debtors that relate to conduct occurring prior to the Petition Date against any Person or Entity; provided, however, that notwithstanding anything to the contrary under the Plan, the Confirmation Order or this Litigation Trust Agreement, the Litigation Trust Claims shall not include: (i) those Causes of Action expressly released or subject to exculpation pursuant to Sections 12.02 and 12.05 of the Plan, respectively; (ii) those Causes of Action arising under assumed Executory Contracts and Unexpired Leases identified in the Plan Supplement; **and [**(iii) those Causes of Action **that are identified on Schedule 2.3 of this Litigation Trust Agreement and any Causes of Action relating to M&M or ID&T; and (iv) those Causes of Action** (other than Avoidance Actions) arising in the ordinary course of the Debtors' or Reorganized Debtors' ~~business~~**businesses** against ~~the~~ vendors and employees (collectively, the

4

"Excluded Claims") **that (a) constitute breach of contract or commercial tort claims relating to the provision of goods or services to the Debtors or Reorganized Debtors that arose in the ordinary course of operations, including recoupments or setoffs related thereto (other than claims against current or former directors or officers of the Debtors or affiliates of such individuals); (b) constitute claims against an employee (solely in such person's capacity as such) that is not a current or former director or officer of the Debtors; or (c) those Causes of Action which have been settled by the Debtors, or have been fully adjudicated by a court of competent jurisdiction or similar proceeding (including, without limitation, arbitration), in either case, prior to the Effective Date and in connection therewith, payment or other compensation has been made, or may otherwise be due in the future, to the Debtors or the Reorganized Debtors.**]   None of the Excluded Claims shall be transferred or assigned to the Litigation Trust but shall be vested in the Reorganized Debtors pursuant to Section 5.09 of the Plan.   **For the avoidance of doubt, Litigation Trust Claims shall include all such claims of any nature held by the Debtors or Reorganized Debtors that relate to conduct occurring prior to the Petition Date against Digidollars, LLC, Function(x) (formerly doing business as DraftDay Fantasy Sports, Inc. and prior thereto as Viggle, Inc.), Sillerman, Slater, Finkel (to the extent not released by Section 12.02 of the Plan) and Tytel.**

Section 2.4   [No Covenant Regarding Certain Litigation Trust Claims.   ~~The Creditors' Committee has been unable to determine, in good faith, that the conditional limitation on the enforcement of claims set forth in Section 6.02 of the Plan will not impair coverage under applicable insurance policies.   Therefore, notwithstanding~~ **Notwithstanding** any implication to the contrary under Section 6.02 of the Plan, there shall be no restriction on, or any covenant limiting, the enforcement of any Litigation Trust Claims against any of the Specified Parties.]**; *provided* that if the applicable insurers confirm, to the reasonable satisfaction of the Creditors' Committee (prior to the Effective Date) or the Litigation Trustee (after the Effective Date), that such a restriction will not impair coverage under the applicable insurance policies, recoveries by the Litigation Trust on any Litigation Trust Claims against the Specified Parties will only be enforced against available proceeds of insurance, and will not be enforced as a personal liability of such individuals.**

Section 2.5   Information Agreements with Designated Officers and Directors.  The Litigation Trustee is empowered to formulate an agreement in substantially the form attached as **Exhibit A** to this Litigation Trust Agreement ("Information Agreement") for execution by each of the Designated Officers and Directors as a condition to the release granted to such individuals pursuant to Section 12.02 of the Plan.  The Litigation Trustee shall have the option, in its discretion, to dispense with the requirement that a Designated Officer and Director execute an Information Agreement as a condition to such individual receiving a release pursuant to Section 12.02 of the Plan as a Designated Officer and Director.

5

Section 2.6    Books and Records.

(a)    The Debtors' and the Creditors' Committee's counsel, financial advisors and other professionals **(each in its capacity as such)** shall provide to the Litigation Trustee the documents and other information gathered, and relevant work product developed, during the Chapter 11 Cases in connection with their respective investigation or analysis of the Litigation Trust Claims~~[; provided, however, that this Section 2.6 shall not apply to the documents and information gathered, and relevant work product developed, by Kaye Scholer LLP solely in its capacity as counsel to the individual directors of SFX Entertainment, Inc.]~~ **. Nothing in this Section 2.6 is intended to limit or expand any parties' privileges and accompanying rights under applicable law.**

(b)    The Reorganized Debtors will preserve and maintain their books and records related to the Litigation Trust Claims ("Trust Books and Records") for the duration of the Litigation Trust.  The Reorganized Debtors will, on the reasonable request of the Litigation Trustee, deliver copies of Trust Books and Records that are responsive to such reasonable requests, subject to appropriate confidentiality restrictions, and will assist the Litigation Trust with any evidentiary requirements related to such records.  The Litigation Trustee will not disclose Trust Books and Records to any third party (except for Professionals (as defined in Section 6.6 below)) without the prior written consent of the Reorganized Debtors, which consent shall not be unreasonably withheld. Any dispute regarding whether consent is unreasonable shall be resolved on motion to the Bankruptcy Court.

(c)    The Debtors, the Reorganized Debtors, the Litigation Trust Oversight Committee (including its members) and the Litigation Trustee agree that they share a common interest with regard to information related to the Litigation Trust Claims (which shall include the Trust Books and Records) (the "Common Interest Information"), and they desire, intend and mutually agree that the exchange of Common Interest Information is not intended to, and shall not, waive any evidentiary privileges, protections or immunities, including without limitation the Privileges attaching to any such documents or information (whether written or oral).

(d)    Notwithstanding anything to the contrary herein: (i) the Litigation Trustee does not have possession, custody or control over any of the books and records of the Reorganized Debtors within the meaning of the Federal Rules of Civil Procedure and shall have no power over the books and records of the Debtors or Reorganized Debtors beyond the rights granted herein; (ii) the Reorganized Debtors ~~(and any other party that provides cooperation and/or delivers documents and/or information hereunder)~~ shall be entitled to reimbursement from the Litigation Trust for the reasonable and documented out-of-pocket expenses  (excluding professional fees) incurred in connection with ~~such party's~~**the Reorganized Debtors'** compliance with its cooperation and/or delivery obligations in this Litigation Trust Agreement, provided, however, that this reimbursement provision shall not be applicable to those Designated Officers and Directors that have entered into an Information Agreement; and (iii) except pursuant to an Information Agreement, the Litigation Trust or Litigation Trustee shall not solicit or approach any person employed (as of the time of the solicitation or approach) by the Reorganized Debtors absent prior written consent of the Reorganized Debtors.

Section 2.7    Distribution of Litigation Trust Proceeds.  ~~Subject to the approval of the~~

*NY 246182807v5*

~~Litigation Trust Oversight Committee, the~~The Litigation Trustee shall distribute the Litigation Trust Proceeds, if any, as, when, and to the extent provided for under the Plan and in a manner consistent with this Litigation Trust Agreement after the receipt of such proceeds or property. When the Litigation Trustee makes a distribution to the Beneficiaries, the Litigation Trustee shall make distributions from the Litigation Trust Proceeds in accordance with the following priority of distribution:

(a)     First, payment to the Reorganized Debtors of fifty percent (50%) of the Litigation Trust Funding Amount;

(b)     Second, payment to holders of the Litigation Trust Primary Recovery Units;

(c)     Third, payment to the Reorganized Debtors of the remaining fifty percent (50%) of the Litigation Trust Funding Amount; and

(d)     Fourth, payment to the holders of the Litigation Trust Secondary Recovery Units.

## ARTICLE III
## FUNDING OF LITIGATION TRUST

Section 3.1     Litigation Trust Funding.  The Reorganized Debtors shall provide the Initial Litigation Trust Funding on the Effective Date.  The Reorganized Debtors shall provide the Remaining Litigation Trust Funding Amount at such times and in such amounts contemplated by the Plan and the Litigation Trust Budget, which funding amount shall not be reduced by the Litigation Trust Proceeds; provided, however, that the Litigation Trustee shall consult with the Reorganized Debtors to ensure that any request for, and provision of, the funding obligations set forth in clause (ii) of Section 1.108 of the Plan following the Effective Date (A) shall be made as needed, and (B) will not cause liquidity constraints for the Reorganized Debtors and/or result in potential defaults on any of the Reorganized Debtors' obligations or indebtedness.  After provision of the Litigation Trust Funding Amount, which, for the avoidance of doubt, shall be capped at $900,000, neither the Debtors, the Reorganized Debtors nor their respective Affiliates shall be liable for any further funding contributions (in Cash or in kind) to the Litigation Trust.  For the avoidance of doubt, any costs and expenses in excess of the Litigation Trust Funding Amount, including, without limitation, the fees and expenses of the Litigation Trustee, shall be paid solely from the Litigation Trust Proceeds (and not from the GUC Note or GUC Account as defined in Section 4.3 of this Litigation Trust Agreement).  If at the time of the termination of the Litigation Trust any of the Litigation Trust Funding Amount remains unused, such unused portion shall be returned to the Reorganized Debtors and any obligation to provide the Litigation Trust Funding Amount shall terminate.

Section 3.2     Litigation Trust Expenses.  All Litigation Trust expenses, including all fees and costs of the Litigation Trustee and the Professionals (as defined in Section 6.6 of this Litigation Trust Agreement), and any applicable insurance premiums required by the Litigation Trust, shall be funded solely from the Litigation Trust Funding Amount and Litigation Trust

7

Proceeds, and not from the GUC Note or GUC Account. For the avoidance of doubt, the Debtors' or the Reorganized Debtors' sole obligation to fund the Litigation Trust shall be to provide the Litigation Trust Funding Amount and neither the Debtors, the Reorganized Debtors nor their respective Affiliates shall have any other obligation to fund the Litigation Trust.  From and after the Effective Date, the Litigation Trustee, on behalf of the Litigation Trust, shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable expenses incurred by the Litigation Trust, and any Professionals retained by the Litigation Trust.  The Litigation Trust shall not require any Beneficiary to fund expenses of the Litigation Trust and the Litigation Trust shall not make any cash calls from the Beneficiaries.  The Litigation Trustee (except as otherwise set forth in section 6.11(e) of this Litigation Trust Agreement), the Litigation Trust Oversight Committee, and all Professionals shall have no personal liability in the event there are insufficient funds to pay the Litigation Trust expenses.

Section 3.3     Litigation Trust Budget.  As soon as practicable following the Effective Date, the Litigation Trustee shall formulate a budget for review and approval by the Litigation Trust Oversight Committee and, in connection with the obligations set forth in Section 3.1, in consultation with the Reorganized Debtors.  The budget shall set forth the projected funding needs of the Litigation Trust, including the fees, costs, and expenses related to the investigation and prosecution of the Litigation Trust Claims and the resolution of Class 5 Claims (2019 Debtors).  From time to time, the Litigation Trustee may amend or revise the budget to reflect (i) the progress of the Litigation Trust (ii) modifications based on consultation with the Reorganized Debtors with respect to any Litigation Trust Funding Amount or (iii) changes in the Litigation Trust's activities and priorities, in which case the Litigation Trustee shall submit such amended or revised budget for review and approval to the Litigation Trust Oversight Committee, and, in connection with the obligations set forth in Section 3.1, in consultation with the Reorganized Debtors.

## ARTICLE IV
## DISBURSING AGENT ROLE

Section 4.1     Disbursing Agent.  The Litigation Trustee shall serve as the Disbursing Agent for (a) distribution of the Litigation Trust Proceeds to Holders of Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors) that receive Litigation Trust Units in accordance with the provisions of the Plan and the Litigation Trust Agreement; (b) distribution of Cash on account of the GUC Note to Holders of Allowed Class 5 Claims (2019 Debtors); and (c) any other distribution to Holders of Allowed Class 4 Claims and Allowed Class 5 Claims (2019 Debtors) as may be agreed to between the Debtors or the Reorganized Debtors and the Litigation Trustee.

Section 4.2     Assistance.  The Disbursing Agent may employ or contract with other persons or entities to perform the payment, tax withholding and remittance obligations created under the Plan.  The Disbursing Agent may delegate any of its rights and responsibilities under the Plan to other persons or entities as necessary or appropriate to carry out speedy and inexpensive Distributions to Creditors under the Plan.  Such persons or entities may receive reasonable compensation for services rendered and reimbursement for expenses incurred in connection with this Plan or any functions or responsibilities adopted under the Plan, provided that, such compensation and reimbursement shall not be made from the GUC Note or the GUC

8

NY 246182807v5

Account but from the Litigation Trust Funding Amount and any Litigation Trust Proceeds.

Section 4.3    GUC Note.  The Litigation Trustee shall be the payee of the GUC Note and shall be empowered to exercise all right and remedies under the GUC Note.  As soon as practicable following the Effective Date, the Disbursing Agent shall establish a segregated account (the "GUC Account") for the purpose of holding the payments made under the GUC Note for subsequent Distribution to the holders of Allowed Class 5 Claims (2019 Debtors).  Neither the GUC Note nor any amounts deposited to the GUC Account shall be used to meet the fees, costs, and expenses related to the investigation and prosecution of Litigation Trust Claims or the resolution of any Disputed Class 5 Claims (2019 Debtors).  Notwithstanding the foregoing, if necessary, the Disbursing Agent may use funds in the GUC Account to enforce and collect the GUC Note (which funds will be reimbursed from any award of attorneys' fees and/or other costs made pursuant to the GUC Note or related litigation).  All amounts to be distributed by the Disbursing Agent on account of the GUC Note shall be remitted in such amounts and at such times as is reasonably prudent.  The Disbursing Agent shall be authorized to (i) defer Distributions from the GUC Account until the GUC Note has been fully satisfied, and (ii) combine Distributions from the GUC Account with Distributions of Litigation Trust Proceeds if practicable.  The Disbursing Agent shall be further authorized to invest the GUC Account as may be reasonably prudent and any earnings on the GUC Account shall be Distributed to the holders of Allowed Class 5 Claims (2019 Debtors).

## ARTICLE V
## RESOLUTION OF CLASS 5 CLAIMS

Section 5.1    Disputed Claims.

(a)    [Pursuant to Section 9.01(iii) of the Plan, after the Effective Date, the Reorganized Debtors and the Litigation Trustee shall each have standing and the authority to File objections to Class 5 Claims (2019 Debtors), including such Claims held or Filed by any of the Specified Parties or Designated Officers and Directors notwithstanding Section 12.02(a) of the Plan, and to decline to do any of the foregoing, without the consent or approval of any third party (including any Creditor) and without further notice, order or authorization of the Bankruptcy Court; provided, that each of the Reorganized Debtors shall obtain the written consent of the Litigation Trustee (which consent shall not be unreasonably withheld) prior to filing any objection to such Class 5 Claims (2019 Debtors), other than as set forth in Section 9.03 of the Plan.  The Litigation Trustee and the Reorganized Debtors, respectively, may litigate to judgment their Filed objections to such Claims. The Reorganized Debtors (with the written consent of the Litigation Trustee, which consent shall not be unreasonably withheld) and the Litigation Trustee, respectively, may settle, compromise, or withdraw any objection to a Disputed Class 5 Claim (2019 Debtors) in their respective good faith business judgment and without approval of the Bankruptcy Court and the.  The Reorganized Debtors shall be deemed to consent to any proposed settlement or compromise of any Disputed Class 5 Claim (2019 Debtors) made by the Litigation Trustee.  Notwithstanding the foregoing, the Litigation Trustee and the Litigation Trust Oversight Committee shall consult with the New SFXE Board prior to the settlement of, or objection to, a Class 5 Claim (2019 Debtors) asserted by a vendor, service provider, or operator with whom the Reorganized Debtors continue to do business.]

9

NY 246182807v5

(b)    Notwithstanding anything to the contrary in this Litigation Trust Agreement, in accordance with Section 9.03 of the Plan, the Reorganized Debtors shall maintain the exclusive right to object to, settle, or otherwise resolve M&M's and/or ID&T's Claims; provided, however, if any such settlement or resolution of M&M's and/or ID&T's Claims provides M&M and/or ID&T with an Allowed Class 5 Claim (2019 Debtors), then the Reorganized Debtors shall obtain the written consent of the Litigation Trustee (which consent shall not be unreasonably withheld) for that portion of the proposed settlement or resolution that provides M&M and/or ID&T with such Allowed Class 5 Claim (2019 Debtors); provided, further, that the Reorganized Debtors may seek relief from the Bankruptcy Court if the Litigation Trustee does not provide his/her consent.

Section 5.2    Objection Deadline.  The Litigation Trustee will file objections to any Disputed Class 5 Claims (2019 Debtors) by the Claims Objection Bar Date.  The Litigation Trustee may seek an extension of the Claims Objection Bar Date pursuant to Bankruptcy Rule 9006(b)(1) and Section 9.01 of the Plan.

Section 5.3    Maximum Distributions.  Notwithstanding anything to the contrary in this Litigation Trust Agreement, no Creditor shall receive any Distribution from the Litigation Trust Assets that exceeds payment in full, plus interest (including default interest, fees, costs, expenses, charges, and any other amounts that might otherwise be due and payable), on account of the Allowed Claim held by such Creditor.  If and to the extent there remains a surplus of any Litigation Trust Assets after the payment in full to the Beneficiaries and the satisfaction in full of any expenses incurred by the Litigation Trust, and such surplus is not a *de minimis* amount, the Litigation Trustee shall petition the Bankruptcy Court for instructions with respect to the disposition of such surplus.

Section 5.4    Timing of Distributions.  In accordance with the Plan, distributions to the Beneficiaries, in accordance with their respective interests in the Litigation Trust and pursuant to this Litigation Trust Agreement, shall be made on such dates selected by the Litigation Trustee ~~with the approval of the Litigation Trust Oversight Committee~~ (each such date, an "Initial or Subsequent Distribution Date", or a "Distribution Date")~~; [provided, however, that net income plus all net proceeds from the sale of assets shall be distributed at least annually, except~~**.** **The Litigation Trustee shall comply with all applicable taxing laws and regulations and shall make distributions as and when may be required to ensure** that the Litigation Trust ~~may retain an amount reasonably necessary to maintain the value of its assets or to meet claims and contingent liabilities (including Disputed Claims).]~~**shall be treated as "grantor trust" for tax purposes.**  The Litigation Trustee shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; provided, however, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or this Litigation Trust Agreement.

Section 5.5    No Interest.  Except to the extent required under Section 5.3 of this Litigation Trust Agreement, for purposes of computing distributions under the Plan, no Allowed Class 4 Claim or Allowed Class 5 Claim (2019 Debtors) shall include any interest, penalty, premium or late charge accruing on such claim from and after the Petition Date, or by a Final Order of the Bankruptcy Court.

10

NY 246182807v5

Section 5.6     Reserve for Disputed Claims.

(a)     In accordance with Section 8.14 of the Plan, the Litigation Trustee , shall maintain and administer a separate reserve (each, a "Reserve") for each Class of Claims and/or type of Distribution remaining to be made after the Effective Date (if and to the extent necessary).

(b)     [To the extent that Reserves are established and maintained in accordance with this Section 5.6(a), such Reserves shall be established based on the Distributions that would have been made to the Holder of a Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the amount of the Disputed Claim, (ii) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum Allowed amount of such Claim, or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Reorganized Debtors. The Reserve shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulations section 1.468B-9.  In addition, the Litigation Trustee will pay from the applicable Litigation Trust Funding Amount or Litigation Trust Proceeds on a current basis any taxes owed on any net income or gain of such Reserve.]

(c)     As soon as practicable following the Effective Date, the Distributions allocable to a Class of Claims hereunder shall be made by the Reorganized Debtors to an appropriate Reserve, and made available for interim Distributions.  Cash held in a Reserve shall only be invested consistent with section 345 of the Bankruptcy Code.  A Reserve shall be closed upon the determination that all relevant distributions required to be made under the Plan have been made in accordance with the terms of this Litigation Trust Agreement, the Plan and the Confirmation Order.  Notwithstanding anything contained herein to the contrary, to the extent that the amount of a distribution is contingent on the final determination of all Allowed Claims in a particular Class or Classes, no final Distributions shall be made to the relevant Holders until the applicable amount of Allowed Claims are determined and the amount of the applicable Distributions calculated.

Section 5.7     Delivery of Distributions.  Distributions shall be made to the Beneficiaries at the addresses set forth on the Schedules, unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001 (or at the last known addresses of such holders if the Litigation Trustee has been notified in writing of a change of address).

Section 5.8     No Partial Distributions.  The Litigation Trustee shall not be required to make any partial distributions to any holder of any Disputed Claims pending resolution of such Disputed Claims, provided that, the foregoing shall not limit, impair or otherwise affect the right of such holder to receive, in accordance with the Plan and this Litigation Trust Agreement, a distribution in respect of any other claims of such holder that are Allowed Claims [that are not subject to Section 5.6 of this Litigation Trust Agreement.] .

Section 5.9     Undeliverable Distributions.  If any distribution from the Litigation Trust is returned as undeliverable, the Litigation Trustee may, but is not obligated to, make such efforts

NY 246182807v5

to determine the current address of the Beneficiary to whom such distribution should be made as the Litigation Trustee deems appropriate, but no further distribution shall be made unless and until the Litigation Trustee has determined current, valid address for such Beneficiary, at which time the distribution to such Beneficiary shall be made to such Beneficiary without interest. If the Litigation Trustee is unable to determine a current, valid address for a Beneficiary, any Litigation Trust distribution that is returned as undeliverable shall become the property of the Litigation Trust and the entitlement by the Beneficiary to such distribution or any subsequent distribution on account of such Beneficiary's claim shall be extinguished and forever barred. All funds or other property that revert to the Litigation Trust pursuant to this section shall be treated as unclaimed property in accordance with Section 5.12 of this Litigation Trust Agreement.

Section 5.10    Fractional Cents. The Litigation Trustee shall not be required to make distributions or payments of fractions of cents. Whenever any payment of a fraction of a cent under this Litigation Trust Agreement would otherwise be called for, the actual payment shall be rounded down to the nearest whole cent.

Section 5.11    Minimum Distributions. The Litigation Trustee shall not be required to, but may in its sole and absolute discretion, make an initial or interim distribution to any Beneficiary in an amount less than $100 (but shall withhold such amount(s) pending a final distribution). In addition, the Litigation Trustee shall not be required to, but may in its sole and absolute discretion, make any payment to a Beneficiary in the event that the cost of making such payment exceeds the amount of such payment.

Section 5.12    Unclaimed Property. Any distribution of Cash under this Litigation Trust Agreement that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall become the property of the Litigation Trust, notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the Beneficiary to such distribution or any subsequent distribution on account of such Beneficiary's claim shall be extinguished and forever barred. Nothing contained in the Plan, the Confirmation Order or this Litigation Trust Agreement shall require the Litigation Trustee to attempt to locate any Beneficiary. All funds or other property that revert to the Litigation Trust pursuant to this Article shall be distributed by the Litigation Trustee to the other Beneficiaries in accordance with the provisions of the Plan and this Litigation Trust Agreement.

## ARTICLE VI
## RIGHTS, POWERS AND DUTIES OF LITIGATION TRUSTEE

Section 6.1    Appointment. Pursuant to Article VI of the Plan, the Litigation Trustee shall become the Litigation Trustee as of the Effective Date.

Section 6.2    Legal Title. The Litigation Trust shall hold legal title to the Litigation Trust Assets except that the Litigation Trustee may cause legal title or evidence of title to any of the Litigation Trust Assets to be held by any nominee or person, on such terms, in such manner and with such power as the Litigation Trustee may determine advisable.

Section 6.3    Bonding of Litigation Trustee. The Litigation Trustee shall not be

12

obligated to obtain a bond but may do so, in his or her sole discretion, in which case the expense incurred for such bond shall be paid by the Litigation Trust.

Section 6.4    Fiduciary Duties of Litigation Trustee.  Pursuant to the Plan and the Litigation Trust Agreement, the Litigation Trustee shall act in a fiduciary capacity on behalf of the interests of the beneficiaries of the Litigation Trust.  The Litigation Trustee's actions with respect to disposition of the Litigation Trust Assets shall in all events be taken in a manner so as reasonably to maximize the value of the Litigation Trust Assets and distributions to the Beneficiaries, giving due regard to the cost, risk and delay of any course of action.

Section 6.5    General Powers.

(a)    Except as otherwise provided in the Plan, the Confirmation Order or in this Litigation Trust Agreement, and subject to the retained jurisdiction of the Bankruptcy Court as provided for herein, in the Plan or the Confirmation Order, the Litigation Trustee may control and exercise authority over the Litigation Trust Assets, the acquisition, management and disposition thereof and the management and conduct of the affairs of the Litigation Trust, provided, however, that such control and authority over the Litigation Trust Assets shall be subject to the provisions of this Litigation Trust Agreement and the approval of the Litigation Trust Oversight Committee as required under this Litigation Trust Agreement.  The Litigation Trustee shall execute all agreements and other documents with the signature "_____ in his or her capacity as the Litigation Trustee of the SFX Litigation Trust" and shall commence or appear in any civil action or proceeding in his or her capacity as the Litigation Trustee of the SFX Litigation Trust.

(b)    Except as provided in the Plan, the Confirmation Order or otherwise specified in this Litigation Trust Agreement, the Litigation Trustee need not obtain an order or approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court.  Notwithstanding the foregoing, the Litigation Trustee shall have the right to submit to the Bankruptcy Court any questions the Litigation Trustee or the Litigation Trust Oversight Committee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Litigation Trust Assets, the Litigation Trust, this Litigation Trust Agreement, the Plan, or the administration and distribution of the Litigation Trust Assets, provided, however, that any specific action proposed to be taken by the Litigation Trustee shall otherwise be in accordance with the terms of this Litigation Trust Agreement and the Plan;

(c)    In connection with the management of the Litigation Trust Assets, except as otherwise expressly limited in this Litigation Trust Agreement, the Litigation Trustee shall have the power and authority, subject to the terms of this Litigation Trust Agreement, and approval by the Litigation Trust Oversight Committee, as necessary, to:

(i)    administer, liquidate, and monetize the Litigation Trust Assets;

(ii)    formulate a Litigation Trust Budget from time to time for review and approval by the Litigation Trust Oversight Committee;

(iii)    investigate, pursue, litigate, settle, or abandon any Litigation Trust

13

NY 246182807v5

Claims;

(iv)     object to and otherwise resolve Disputed Class 5 Claims (2019 Debtors);

(v)     establish and maintain one or more depository, escrow, or other accounts to hold Cash or cash equivalents constituting Litigation Trust Assets;

(vi)     serve as Disbursing Agent and make distributions in accordance with the terms of the Plan and this Litigation Trust Agreement;

(vii)     adopt, execute, deliver or file all plans, agreements, certificates and other document and instruments necessary or appropriate to implement the Litigation Trust;

(viii)     maintain appropriate books and records;

(ix)     make investments as permitted in Section 6.10 hereof, and as deemed appropriate by the Litigation Trustee;

(x)     file appropriate tax returns and other reports on behalf of the Litigation Trust or with respect to its assets or income and pay taxes or other obligations owed by the Litigation Trust or with respect to its assets or income; and

(xi)     exercise such other powers and duties as necessary or appropriate, in accordance with this Litigation Trust Agreement, the Plan and the Confirmation Order, to accomplish the purposes of the Litigation Trust as set out herein and therein.

Section 6.6     Retention of Attorneys, Accountants and Other Professionals.  ~~Subject to approval of the Litigation Trust Oversight Committee, the~~**The** Litigation Trustee may retain the following professionals (the "Professionals") to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and this Litigation Trust Agreement:

(a)     Law firm(s) which the Litigation Trustee determines are necessary to perform such functions as may be appropriate to carry out the primary purposes of the Litigation Trust.  The Litigation Trustee may engage such law firm(s) on a contingent fee basis as permitted by applicable law.

(b)     An independent public accounting firm to, if necessary, audit the financial books and records of the Litigation Trust, to prepare and file all federal, state and local tax returns and related tax forms on behalf of the Litigation Trust that the Litigation Trustee is obligated to prepare, provide and file, and to perform such other reviews and/or audits as the Litigation Trustee may deem advisable to carry out the primary purposes of the Litigation Trust.

(c)     Such other attorneys, forensic accountants, experts, advisors, consultants, investigators, appraisers, auctioneers or other professionals as are advisable to carry out the purposes of the Litigation Trust.

14

Section 6.7    Compensation of Professionals.  ~~Subject to approval of the Litigation Trust Oversight Committee, the~~The Litigation Trustee may commit the Litigation Trust to and shall pay all such Professionals reasonable compensation from the Litigation Trust Assets or other available funds for services rendered and expenses incurred in accordance with this Litigation Trust Agreement (other than the GUC Note and any amounts deposited to the GUC Account).   The Litigation Trustee may also enter into a litigation funding or financing arrangement if the Litigation Trustee~~, with the approval of the Litigation Trust Oversight Committee,~~ deems it necessary to sufficiently prosecute the Litigation Trust Claims.

Section 6.8    Compensation of Litigation Trustee.  ~~Subject to approval of the Litigation Trust Oversight Committee, the~~The Litigation Trustee shall be entitled to the payment of reasonable compensation from the Litigation Trust Assets **(other than the GUC Note and any amounts deposited to the GUC Account)** for services rendered and expenses incurred in fulfilling its duties pursuant to this Litigation Trust Agreement.

Section 6.9    Review of Compensation.  On or before the last day of each month: (i) the Litigation Trustee shall provide a monthly statement to the Litigation Trust Oversight Committee of the compensation and reimbursement of expenses that the Litigation Trustee is entitled to for the preceding month for services provided under the Litigation Trust Agreement; and (ii) each Professional shall provide a monthly statement to the Litigation Trustee and the Litigation Trust Oversight Committee of the compensation and reimbursement of expenses incurred for the preceding month for services provided under the Litigation Trust Agreement; provided, however, that failure of any of the Litigation Trustee or Professionals to serve a monthly statement on the Litigation Trustee and the Litigation Trust Oversight Committee for any one or more months shall not waive or impair the right of such Professionals to subsequently seek compensation for all or any number of such months in a later statement delivered to the Litigation Trustee and the Litigation Trust Oversight Committee.   The Litigation Trust Oversight Committee and the Litigation Trustee will have thirty (30) days from the date such statement(s) are received to review the statement(s) and object to any payments by serving a written objection on the Litigation Trustee or Professional, as applicable, which objection shall set forth the precise nature of the objection and the amount at issue.   The parties shall attempt to resolve objections consensually, if any, to any monthly statement.  If the parties are unable to reach a consensual resolution of any such objection, either party may bring such dispute before the Bankruptcy Court upon proper notice to the other party, and the disputed portion of the invoice shall not be paid until the dispute is resolved.   The undisputed portion of such fees and expenses shall be paid as provided above.

Section 6.10    Limitation on Investment Powers of Litigation Trustee.  Other than funds maintained in operating accounts in an amount deemed appropriate by the Litigation Trust to pay the current costs, expenses and obligations of the Litigation Trust, the Litigation Trustee may invest any monies held at any time as a part of the Litigation Trust, *provided, however,* that any such investments shall be only in interest-bearing deposits, certificates of deposit, or repurchase obligations of any federally insured banking institution or short term investments and obligations of, and unconditionally guaranteed as to payment by, the United States of America and its agencies or instrumentalities, pending the need to make disbursements thereof in payment of costs, expenses, and liabilities of the Litigation Trust or to make a distribution to the Beneficiaries and shall in any event be limited to such permissible investments described in IRS

15

*NY 246182807v5*

Revenue Procedure 94-45 (or successor guidance) of a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d).

Section 6.11    Limitations of Liability.

(a)    No Liability for Acts of Predecessors.  No successor Litigation Trustee shall be in any way responsible for the acts or omissions of any Litigation Trustee in office prior to the date on which such successor becomes the Litigation Trustee, unless a successor Litigation Trustee expressly assumes such responsibility.

(b)    No Implied Obligations.  The Litigation Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Litigation Trust Agreement against the Litigation Trustee.

(c)    No Liability for Good Faith Error of Judgment.  The Litigation Trustee shall not be liable for any error of judgment made in good faith, unless it shall be proved that the Litigation Trustee was grossly negligent or acting with willful misconduct in ascertaining the pertinent facts.

(d)    Reliance by Litigation Trustee on Documents and Professional Advice. Except as otherwise provided herein, the Litigation Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Litigation Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Litigation Trustee also may engage and consult with Professionals for the Litigation Trust and other agents and advisors and shall not be liable for any action taken or suffered by the Litigation Trustee in reliance upon the advice of such Professionals, agents or advisors.

(e)    Limitation on Liability. Except for acts of reckless or willful misconduct, fraud or gross negligence, willful disregard of the Litigation Trustee's duties or material breach of this Litigation Trust Agreement, Persons dealing with the Litigation Trustee, or seeking to assert claims against the Litigation Trust, shall look only to the Litigation Trust Assets to satisfy any liability incurred by the Litigation Trustee to any such person in carrying out the terms of this Litigation Trust Agreement, and the Litigation Trustee and any of his/her designees, partners, affiliates, agents, employees, representatives and Professionals shall have no personal, individual obligation or recourse of any nature or kind whatsoever to satisfy any such liability.

Section 6.12    Indemnification, Exculpation and Reimbursement. The Litigation Trustee and the Litigation Trust Oversight Committee shall perform the duties and obligations imposed on the Litigation Trustee and the Litigation Trust Oversight Committee by this Litigation Trust Agreement with reasonable diligence and care under the circumstances.  Neither the Litigation Trustee nor the Litigation Trust Oversight Committee members shall be personally liable to the Litigation Trust, to any Beneficiary, holder of a Claim or any other Person (or any predecessor or successor thereto) for any reason whatsoever, except for such of their own acts or omissions as shall constitute reckless or willful misconduct, fraud, gross negligence or willful disregard of their duties resulting in a material breach of this Litigation Trust Agreement.    Except as

16

NY 246182807v5

aforesaid, the Litigation Trustee and the Litigation Trust Oversight Committee members shall be defended, held harmless and indemnified from time to time from the Litigation Trust Assets (but not from or by the Beneficiaries or any of the parties released under the Plan), against any and all losses, claims, costs, expenses and liabilities to which the Litigation Trustee may be subject by reason of the Litigation Trustee's and/or the Litigation Trust Oversight Committee member's execution in good faith of their duties under this Litigation Trust Agreement.  Without limiting the generality of the foregoing, the Litigation Trustee and/or the Litigation Trust Oversight Committee members shall have no liability to any Beneficiary or holder of a Claim against the Debtors or Reorganized Debtors on account of the Litigation Trustee's investment or non-investment of any Litigation Trust Assets or any losses with respect to any such investments of Litigation Trust Assets, provided such investments are made, or the Litigation Trustee's decision not to invest any Litigation Trust Assets in any case is made, in accordance with the terms of this Litigation Trust Agreement.  The Litigation Trustee and/or the Litigation Trust Oversight Committee members shall not be obligated to give any bond or surety or other security for the performance of any of its duties, unless ordered by the Court.  All amounts payable pursuant to this Section 6.12 to the Litigation Trustee and/or the Litigation Trust Oversight Committee members shall be paid solely from the Litigation Trust Assets.

Section 6.13    Action Upon Instructions.  If in performing the Litigation Trustee's duties under this Litigation Trust Agreement [that do not require approval of the Litigation Trust Oversight Committee], the Litigation Trustee is required to decide between alternate courses of action, or the Litigation Trustee is unsure of the application of any provision of the Litigation Trust Agreement or the Plan, then the Litigation Trustee may promptly deliver a notice to the Litigation Trust Oversight Committee requesting written instructions as to the course of action to be taken by the Litigation Trustee.  If the Litigation Trustee does not receive such written directions within fourteen (14) days after the Litigation Trustee has delivered such notice, the Litigation Trustee may, but shall be under no duty to, take or refrain from taking such action not inconsistent with the Litigation Trust Agreement as the Litigation Trustee shall deem advisable.

Section 6.14    Tax Matters.

(a)    Tax Filings and Notices.  The Litigation Trustee shall prepare and provide to, or file with, the appropriate taxing authorities and other required parties such notices, tax returns and other filings, including all federal, state and local tax returns for the Litigation Trust, as may be required under the Bankruptcy Code, the Plan, or by other applicable law, including, if required under applicable law, notices required to report interest or dividend income ("Tax Reports").  The Litigation Trustee shall be responsible for payment, solely out of the Litigation Trust Assets, of any taxes imposed on the Litigation Trust or the Litigation Trust Assets.  The Litigation Trustee may request an expedited determination of the taxes owed by the Litigation Trust under section 505(b) of the Bankruptcy Code for any tax return for which such determination may be requested.  To the extent required by applicable law and, if not so required, then when specifically requested by a Beneficiary in writing, the Litigation Trustee shall provide such Beneficiary with such tax information as is necessary for the preparation by such Beneficiary of such Beneficiary's income tax return.  If such tax information is provided at the specific request of a Beneficiary (and not as required by applicable law), then such Beneficiary shall pay a reasonable fee to the Litigation Trustee, in an amount to be determined by the Litigation Trustee, together with all costs and expenses incurred by the Litigation Trustee in

17

NY 246182807v5

providing such tax information to such Beneficiary.  In connection with the Litigation Trustee's performance of its duties pursuant to this Litigation Trust Agreement, the Litigation Trustee may require any Beneficiary to furnish to the Litigation Trustee its employer or taxpayer identification number as assigned by the Internal Revenue Service, together with such other information, returns or forms as the Litigation Trustee may determine are required, and the Litigation Trustee may condition any distribution to any Beneficiary upon such receipt of such identification number, any other information and returns and forms as are required for the Litigation Trustee to comply with **the requirements of the** Internal Revenue Service or ~~requirements of~~ any other governmental authority ~~requirements~~.

(b)     Liquidating Trust.  The Litigation Trustee will file tax returns pursuant to Treasury Regulations section 1.671-4(a) on the basis that Litigation Trust is a grantor trust that is a "liquidating trust" within the meaning of Treasury Regulations section 301.7701-4(d) and related regulations.  Pursuant to such provisions, for federal income tax purposes the Litigation Trustee will allocate to the Beneficiaries their applicable shares of any income, gain, deduction, loss and credit of such grantor trust, and such Beneficiaries will be subject to tax thereon on a current basis.  As soon as reasonably practicable after the close of each calendar year, the Litigation Trustee will send each affected Beneficiary a statement setting forth such Beneficiary's share of the Litigation Trust's income, gain, deduction, loss and credit for the year and will instruct the holder to report all such items on its tax return for such year and pay any tax due with respect thereto.

(c)     Withholdings.  The Litigation Trustee shall (i) withhold, deduct, and pay over to the appropriate governmental authority any amount required to be withheld under tax laws with respect to any distribution pursuant to this Litigation Trust Agreement and (ii) comply with any reporting requirements imposed by any federal, state, local, or foreign taxing authority. The Litigation Trustee may withhold all or the appropriate portion of any distribution due to any Beneficiary until such time as such Beneficiary provides the necessary information to comply with any withholding requirements of any governmental authority.  Any tax withheld shall be treated as distributed and received by the applicable Beneficiary for all purposes of this Litigation Trust Agreement and the Plan.  [If a Beneficiary fails to provide the information necessary to comply with any withholding requirements of any governmental authority, then such Beneficiary's distribution may be treated as unclaimed property in accordance with Section 5.12 of this Litigation Trust Agreement.]

(d)     Tax Year.  The taxable year of the Litigation Trust shall, unless otherwise required by the Internal Revenue Code, be the calendar year.

(e)     Valuation of Litigation Trust Assets.  As such time as may be necessary or appropriate following the Effective Date (i) the Litigation Trustee~~, with approval of the Litigation Trust Oversight Committee,~~ will determine the fair market value of the Litigation Trust Assets (other than Cash) as of the Effective Date, based on a good faith determination and the advice of any Professional retained by the Litigation Trustee for such purpose and (ii) the Litigation Trustee shall notify the Beneficiaries of the valuation of each Beneficiary's portion of the Litigation Trust Assets.  The Debtors, the Litigation Trust, the Litigation Trustee, the Litigation Trust Oversight Committee and the Beneficiaries will use such values consistently for all federal income tax purposes

18

NY 246182807v5

(f)     Purpose and Tax Treatment.  The Litigation Trust shall be established solely for the purpose of holding and administering the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  For all United States federal income tax purposes, among other purposes, all parties (including, without limitation, the Debtors, the Litigation Trustee, and the Beneficiaries) shall treat the transfer of the Litigation Trust Assets to the Litigation Trust as (i) a transfer by each Debtor of the Litigation Trust Assets (subject to any obligations relating to those assets) directly to the Beneficiaries in full satisfaction (together with such other consideration to be Distributed pursuant to the Plan) of the Holders' Claims against the Debtors followed by (ii) the transfer by such Beneficiaries to the Litigation Trust of the Litigation Trust Assets in exchange for such Beneficiaries' respective interest in the Litigation Trust Assets.  Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial and local income tax purposes.

Section 6.15    Records of Litigation Trustee.  The Litigation Trustee shall maintain accurate records of receipts and disbursements and other activity of the Litigation Trust.  TheSubject to Section 13.19 of the Plan relating to books and records relevant or potentially relevant to the Guevoura Action (as defined in the Plan), the books and records maintained by the Litigation Trustee, as well as any and all other books and records obtained from the Debtors or the Reorganized Debtors may be disposed of by the Litigation Trustee at such time as the Litigation Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Litigation Trust or the Beneficiaries, or upon the dissolution of the Litigation Trust, all after consultation with the parties who provided the books and records and approval of the Litigation Trust Oversight Committee.

Section 6.16    Timely Performance.  The Litigation Trustee will make continuing efforts to prosecute, collect, compromise and settle the Litigation Trust Claims and administer, maintain and make timely distributions to the Beneficiaries, and not unduly prolong the duration of the Litigation Trust.

Section 6.17    Litigation Trust Oversight Committee Consultation and Approval.  The Litigation Trustee shall consult with the Litigation Trust Oversight Committee regularly and at all such times when the Litigation Trustee deems it necessary or appropriate in connection with carrying out the purposes of the Litigation Trust and shall obtain approval from the Litigation Trust Oversight Committee as required under this Litigation Trust Agreement.  The actions and deliberations of the Litigation Trustee and the Litigation Trust Oversight Committee shall be held confidential.  Furthermore, and notwithstanding anything to the contrary.  Subject to Section 6.18 hereof, and notwithstanding any other provision set forth in this Litigation Trust Agreement to the contrary, the Litigation Trustee shall obtain the prior consent from a majority (unless unanimity is expressly required pursuant to the terms of this Litigation Trust Agreement or in the Confirmation Order) of the Litigation Trust Oversight Committee in connection with all material decisions to be made in connection with the Litigation Trust, including, without limitation, for the following matters to the extent material:

19

NY 246182807v5

(i)    to **investigate****institute**, prosecute, **abandon, transfer, sell,** settle**, or** compromise**, abandon any** and **release the****all** Litigation Trust Claims**, and to decline to do any of the foregoing**; provided, however, that: (**i****a**) no member of the Litigation Trust Oversight Committee may cast a vote with respect to any matter to which it is a party (if applicable); and (**ii****b**) the Litigation Trustee may seek Bankruptcy Court approval of a proposed settlement of a Litigation Trust Claim if the Litigation Trust Oversight Committee fails to consider a proposed settlement within thirty (30) days of receiving notice of such proposed settlement;

~~(ii)    to file judicial or administrative proceedings for any of the Litigation Trust Claims as proposed by the Litigation Trustee or any member of the Litigation Trust Oversight Committee;~~

**(ii)**    **(iii)** to retain any Professionals the Litigation Trustee may deem advisable in connection with the administration of the Litigation Trust or the exercise of his or her other powers set out herein and to compensate and**/or** reimburse such Professionals from the Litigation Trust Assets **in accordance with Sections 6.6, 6.7 and 6.9 hereof;**

**(iii)    to compensate and/or reimburse the Litigation Trustee from the Litigation Trust Assets in connection with Sections 6.8 and 6.9 hereof;**

**(iv)    to enter any litigation funding or financing arrangement if the Litigation Trustee deems it advisable in connection with Sections 6.7 and 6.9 hereof**;

**(v)**    **(iv)** to purchase insurance indemnifying the Litigation Trustee and the members of the Litigation Trust Oversight Committee and to indemnify (and purchase insurance indemnifying) the employees, agents, Professionals and representatives of the Litigation Trust, the Litigation Trust Oversight Committee, or the Litigation Trustee, to the fullest extent that a corporation organized under the laws of the Litigation Trust's domicile is from time to time entitled to indemnify its directors, officers, employees, agents and representatives;

**(vi)    to determine the fair market value of the Litigation Trust Assets (other than Cash) as of the Effective Date in accordance with Section 6.14(e) hereof;**

**(vii)    to dispose of any books and records in accordance with Section 6.15 hereof;**

**(viii)    the timing and amount of distributions of the Litigation Trust Proceeds in connection with Sections 2.7 and 5.4 hereof and/or a determination that any such proceeds should not be distributed and should instead be retained by the Litigation Trustee for funding or otherwise;**

**(ix)    to approve the Litigation Trust budget, including any amendments or revisions thereto, in each case, in accordance with, among other things, Sections 3.1, 3.2 and 3.3 hereof;**

**(x)**    **(v)** to delegate any or all of the discretionary power and authority herein conferred at any time with respect to all or any portion of the Litigation Trust to any one

20

or more reputable individuals without liability for any action taken or omission made because of such delegation, except for such liability as is expressly provided for in this Litigation Trust Agreement; and

(xi)    (vi) to **terminate or otherwise** dissolve the Litigation Trust **in connection with Section 9.1 hereof**.

**For the avoidance of doubt, the actions and deliberations of the Litigation Trustee and the Litigation Trust Oversight Committee shall be confidential.**

Section 6.18    Exceptions to Litigation Trust Oversight Committee Approval. Notwithstanding any provision to the contrary in this Litigation Trustee Agreement (except for the consultation obligations with the New SFXE Board pursuant to Sections 2.2 and [6.17] of this Litigation Trust Agreement), the Litigation Trustee shall not be required to obtain the **prior written** approval of the Litigation Trust Oversight Committee for [(a) an objection to a Disputed Class 5 Claim (2019 Debtors) in an amount less than $500,000,**1,000,000,** (b) the resolution of a Disputed Class 5 Claim (2019 Debtors) that would entail the allowance of a claim in an amount less than $500,000,**1,000,000,** (c) the commencement of **any Cause of Action in connection with** a Litigation Trust Claim ~~with~~**for** an amount at issue less than $500,000, or (d) the settlement of a **Cause of Action in connection with a** Litigation Trust Claim ~~with~~**for** an amount at issue less than $500,000]. **500,000.**

Section 6.19    Resignation of Litigation Trustee. The Litigation Trustee may resign as Litigation Trustee by giving written notice of its resignation to the Reorganized Debtors and the Litigation Trust Oversight Committee. The Litigation Trustee shall continue to serve as trustee for the shorter of (i) ninety (90) days following the date of the notice of resignation, and (ii) the date the appointment of a successor Litigation Trustee shall become effective in accordance with Section 6.20 of this Litigation Trust Agreement.

Section 6.20    Removal of Litigation Trustee. The Litigation Trust Oversight Committee may remove the Litigation Trustee for, among other reasons: (1) fraud, gross negligence, or willful misconduct in connection with the affairs of the Litigation Trust, (2) for such physical or mental disability as substantially prevents the Litigation Trustee from performing the duties of Litigation Trustee in accordance with the Plan or the Litigation Trust Agreement, or (3) for cause, which shall include a breach of fiduciary duty, an unresolved conflict of interest, acts or omissions from which an improper personal benefit was received, or other failure to competently fulfill the duties of Litigation Trustee pursuant to this Litigation Trust Agreement, the Plan or the Confirmation Order.

Section 6.21    Appointment of Successor Litigation Trustee. In the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation or removal of the Litigation Trustee, the Litigation Trust Oversight Committee shall designate a successor Litigation Trustee by [unanimous consent]. Such appointment shall specify the date when such appointment shall be effective. Every successor Litigation Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the predecessor Litigation Trustee and the Professionals for the Litigation Trust an instrument accepting the appointment and shall

21

additionally file an affidavit demonstrating that such Person is disinterested, as defined by section 101(14) of the Bankruptcy Code, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the predecessor Litigation Trustee.  If the Litigation Trust Oversight Committee members cannot agree on the choice of a successor Litigation Trustee, upon motion the Bankruptcy Court will appoint the successor Litigation Trustee from candidates proposed by the Litigation Trust Oversight Committee members.

## ARTICLE VII
## LITIGATION TRUST OVERSIGHT COMMITTEE

Section 7.1    Establishment of Litigation Trust Oversight Committee.  On the Effective Date, the Litigation Trust Oversight Committee shall be established, using the procedures described herein.

Section 7.2    Composition and Replacement.  The Litigation Trust Oversight Committee shall be initially constituted with (3) individuals, two (2) of whom shall be appointed by the Creditors' Committee, and one (1) of whom shall be appointed by the Required Tranche B DIP Lenders, or the Reorganized Debtors (as applicable).  The initial members of the Litigation Trust Oversight Committee are: (1) _____; (2) _____; and (3) _____.  If one of the two Creditors' Committee-appointed members resigns, then the other Creditors' Committee-appointed member may choose his/her replacement. If the Required Tranche B DIP Lenders/Reorganized Debtors-appointed member resigns, then the Required Tranche B DIP Lenders or the Reorganized Debtors (as applicable) may choose his/her replacement.  The Litigation Trust Oversight Committee will continue to fully function even while a position on the Litigation Trust Oversight Committee remains vacant.

Section 7.3    By-Laws.  The Litigation Trust Oversight Committee shall govern its proceedings through the adoption of by-laws, which the Litigation Trust Oversight Committee shall adopt by majority vote.  In the event the Litigation Trust Oversight Committee is deadlocked in any vote, the Litigation Trustee shall decide the issue.

Section 7.4    Role of Litigation Trust Oversight Committee.  The Litigation Trust Oversight Committee shall (a) oversee the Litigation Trustee's investigation and prosecution of the Litigation Trust Claims and the resolution of Class 5 Claims (2019 Debtors), and (b) monitor the compensation of the Litigation Trustee and Professionals  under terms and conditions that it may establish from time to time.  The rights and duties of the Litigation Trust Oversight Committee shall be those set forth in this **Litigation Trust** Agreement and the Plan.  The Litigation Trustee shall limit its actions on behalf of the Litigation Trust in accordance with the limits established by those provisions.

Section 7.5    Expense Reimbursement.

(a)    Each member of the Litigation Trust Oversight Committee shall be entitled to reimbursement of the member's reasonable and necessary expenses (but not third party professional fees) in carrying out his or her duties as a member of the Litigation Trust Oversight Committee.  The members of the Litigation Trust Oversight Committee shall not be

NY 246182807v5

entitled to receive a salary in connection with service on such committee.  The reimbursement of expenses of the Litigation Trust Oversight Committee members shall be paid out of the Litigation Trust Funding Amount or Litigation Trust Proceeds.

(b)     On or before the last date of each month following the month for which reimbursement is sought, each member of the Litigation Trust Oversight Committee shall serve upon the Litigation Trustee and the other members of the Litigation Trust Oversight Committee a monthly statement of expenses incurred in carrying out the member's duties, *provided, however,* that failure of any of the members of the Litigation Trust Oversight Committee to serve a monthly statement for any one or more months shall not waive or impair the right of such Litigation Trust Oversight Committee to subsequently seek compensation for all or any number of such months in a later statement.  The Litigation Trustee and the other members of the Litigation Trust Oversight Committee will have thirty (30) days from the date such statement is received to review the statement and object to such statement by serving a written objection on the member of the Litigation Trust Oversight Committee making the request, which objection shall set forth the precise nature of the objection and the amount at issue.  At the expiration of the thirty (30) day period, the Litigation Trustee shall promptly pay 100% of the amounts requested, except for the portion of such expenses to which an objection has been made.  The parties shall attempt to consensually resolve objections, if any.  If the parties are unable to reach a consensual resolution of any such objection, the party which received an objection may seek payment by filing a motion with the Court with notice to the Litigation Trustee.

Section 7.6     Standard of Care; Exculpation.  Neither the Litigation Trust Oversight Committee nor any of its members or any duly designated agent or representatives of any such party shall be liable for the act, default or misconduct of any other member of the Litigation Trust Oversight Committee or the Litigation Trustee, nor shall any member be liable for anything other than such member's own gross negligence or willful misconduct.  The Litigation Trust Oversight Committee may, in connection with the performance of its duties, and in its sole and absolute discretion, consult with its counsel, accountants or other Professionals, and shall not be liable for anything done or omitted or suffered to be done in accordance with the advice or opinions of such advisors.  If the Litigation Trust Oversight Committee determines not to consult with counsel, accountants or other Professionals, it shall not be deemed to impose any liability on the Litigation Trust Oversight Committee, or its members and/or designees.  Litigation Trust Oversight Committee members shall be receive the indemnification, exculpation and reimbursement rights as provided in Section 6.12 above.

Section 7.7     Termination of the Litigation Trust Oversight Committee.  Upon the dissolution of the Litigation Trust, the members of the Litigation Trust Oversight Committee shall be deemed discharged from any further duties and responsibilities.

23

*NY 246182807v5*

## ARTICLE VIII
## JURISDICTION

Section 8.1     Retention of Jurisdiction.  The Bankruptcy Court shall retain such jurisdiction as is legally permissible as set forth in this Litigation Trust Agreement, the Plan and in the Confirmation Order, including, but not limited to, jurisdiction to hear and determine disputes arising in connection with the interpretation, implementation, administration or enforcement of the Litigation Trust Agreement.

Section 8.2     Aid and Recognition.  The Litigation Trust shall, as needed to effect the terms hereof, request the aid and recognition of any court or judicial, regulatory or administrative body in any nation or state.

## ARTICLE IX
## TERMINATION

Section 9.1     Termination.  The Litigation Trust shall continue for a term terminating on the earlier to occur of the date that (a) all of the Litigation Trust Assets have been distributed pursuant to this Plan and the Litigation Trust Agreement, (b) the Litigation Trustee determines, with the approval of the Litigation Trust Oversight Committee, that the administration of any remaining Litigation Trust Assets is not likely to yield sufficient additional proceeds to justify further pursuit of such property, or (c) all distributions required to be made by the Litigation Trustee under the Plan and the Litigation Trust Agreement have been made; provided, however, in no event shall the Litigation Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth (5th) anniversary of the Effective Date (or within the six-month period prior to the end of any extension period), determines that a further extension of the term of the Litigation Trust is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets.

Section 9.2     Charitable Donation.  If at any time the Litigation Trustee determines, in consultation with the Litigation Trust Oversight Committee, that the expense of administering the Litigation Trust so as to make a final distribution to the Beneficiaries is likely to exceed the value of the Litigation Trust Assets then remaining in the Litigation Trust, the Litigation Trustee may (x) reserve any amount necessary to satisfy the outstanding liabilities of the Litigation Trust and to dissolve the Litigation Trust, (y) donate any balance to a charitable organization described in section 501(c)(3) of the Internal Revenue Code; provided, that the Litigation Trustee, members of the Litigation Trust Oversight Committee and/or any Reorganized Debtor do not have any connections to such charitable organization, and (z) terminate the Litigation Trust.

Section 9.3     Residual Powers.  Notwithstanding the termination of the Litigation Trust, the Litigation Trustee shall have the power to exercise all the powers, authorities and discretions herein conferred solely for the purpose of winding up the affairs of the Litigation Trust.  The Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may be destroyed at any time after one (1) year from the date of termination of the Litigation Trust after providing 30 days' notice of such intent to destroy to the Reorganized Debtors to the extent the Debtors or Reorganized Debtors delivered such records or documents to

24

the Litigation Trust or Litigation Trustee.

## ARTICLE X
## MISCELLANEOUS

Section 10.1    Notices.  All notices, requests or other communications required or permitted to be made in accordance with this Litigation Trust Agreement shall be in writing and shall be delivered personally or by facsimile transmission or by email; and unless delivered personally, shall also be mailed by first class mail or by overnight delivery service:

If to the Litigation Trustee, at:

[        ]

with copies to:

Pachulski Stang Ziehl & Jones LLP
Attn: **Debra Grassgreen**
**150 California Street**
**15th Floor**
**San Francisco, CA 94111**
Tel: **415-263-7000**
Fax: **415.263.7010**
Email: **dgrassgreen@pszjlaw.com**

If to the Debtors or Reorganized Debtors, at:

Greenberg Traurig, LLP
Attn: Dennis A. Meloro
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Tel:    (302) 661-7000
Fax:    (302) 661-7360

-and-

Greenberg Traurig, LLP
Attn:    Nathan A. Haynes
            Leo Muchnik
MetLife Building
200 Park Avenue
New York, New York 10166
Tel:    (212) 801-9200

25

Fax:    (212) 801-6400
Email:  haynesn@gtlaw.com; muchnikl@gtlaw.com

If to the Litigation Trust Oversight Committee:

[                    ]

Notices sent out by facsimile transmission shall be deemed delivered when actually received, notices sent by first-class mail shall be deemed delivered three (3) Business Days after mailing and notices sent by overnight delivery service shall be deemed delivered the next Business Day after mailing.

Section 10.2    Effectiveness.  This Litigation Trust Agreement shall become effective on the Effective Date.

Section 10.3    Investment Company Act.  The Litigation Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Litigation Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company", as such terms are defined in the Investment Company Act.

Section 10.4    Counterparts.  This Litigation Trust Agreement may be executed in one or more counterparts (via facsimile or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

Section 10.5    Governing Law.  This Litigation Trust Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Delaware, including all matters of construction, validity and performance, and without taking into consideration the conflict of laws provisions of such state.

Section 10.6    Construction with the Plan. The Plan and the Confirmation Order are each hereby incorporated fully by reference and made a part hereof for all purposes. Other than with respect to the definition of "Litigation Trust Claims", which shall be governed by Section 2.3 of this Litigation Trust Agreement, in the event of any inconsistency or conflict between the terms, conditions and provisions of this Litigation Trust Agreement and the terms, conditions and provisions of the Plan and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) this Litigation Trust Agreement; and (3) the Plan.

Section 10.7    Jurisdiction.  The Bankruptcy Court shall have jurisdiction over the Litigation Trust, Litigation Trustee, and Litigation Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Litigation Trust. The Bankruptcy Court shall have exclusive jurisdiction and venue to hear and finally determine all matters among the Parties arising out of or related to this Litigation Trust Agreement or the administration of the Litigation Trust.

Section 10.8    Headings.  Sections, subheadings and other headings used in this Litigation Trust Agreement are for convenience only and shall not affect the construction of this Litigation Trust Agreement.

Section 10.9    Interpretative Provisions.

(a)    All references to the plural herein shall also mean the singular and to the singular shall also mean the plural unless the context otherwise requires.

(b)    All references to the Debtors, the Reorganized Debtors and the Litigation Trustee pursuant to the definitions set forth in the recitals hereto, or to any other Person herein, shall include their respective successors and assigns.

(c)    The words "hereof", "herein", "hereunder", "this Trust Litigation Agreement" and words of similar import when used in this Litigation Trust Agreement shall refer to this Litigation Trust Agreement as a whole and not any particular provision of this Litigation Trust Agreement and as this Litigation Trust Agreement now exists or may hereafter be amended, modified, supplemented, extended, renewed, restated or replaced.

(d)    The word "including" when used in this Litigation Trust Agreement shall mean "including, without limitation".

Section 10.10    Severability.  Any provision of this Litigation Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions of this Litigation Trust Agreement, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

Section 10.11    Amendments.  This Litigation Trust Agreement may be amended from time to time by written instrument executed by the Litigation Trust Oversight Committee and upon notice to the Beneficiaries, provided that (i) the Litigation Trust Oversight Committee shall have reasonably determined in good faith that such amendment is in the best interests of the Beneficiaries, and (ii) any amendment of this Litigation Trust Agreement that adversely affects the rights or obligations, or increases the burdens hereunder, of the Reorganized Debtors shall require the written consent of the Reorganized Debtors, and must be approved by the Bankruptcy Court; provided, however, that such amendment cannot conflict with the provisions of the Plan. Would propose that amendments should not be permitted without consent of affected Beneficiary if amendment conflicts with the Plan] Notwithstanding anything contained in the Plan, Confirmation Order, or this Litigation Trust Agreement, all amendments to the Litigation Trust AgreementsAgreement shall require unanimous consent of the Litigation Trust Oversight Committee.  Notwithstanding this Section 10.11, any amendments to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an orderly manner the Litigation Trust Assets in accordance with Treasury Regulation section 301.7701-4(d).  In the event that the Litigation Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulation section 301.7701-4(d), this Litigation Trust Agreement may be amended by the Litigation Trustee to the extent necessary for the Litigation Trustee to take such action as it shall deem appropriate to have the Litigation Trust

27

classified as a partnership for federal tax purposes under Treasury Regulation section 301.7701-3 (but not a publicly traded partnership under section 7704 of the Internal Revenue Code).

Section 10.12  Beneficial Interests.

(a)    All interests of the Beneficiaries of this Litigation Trust shall be uncertificated and no security of any sort will be distributed to the Beneficiaries with respect to their interest in the Litigation Trust.  Interests in the Litigation Trust shall be non-assignable during the term of this Litigation Trust Agreement, except in the case a transfer is triggered by (i) operation of law, (ii) merger of the holder of the interest in the Litigation Trust into another Entity, (iii) sale of the holder of the interest in the Litigation Trust to another Entity, or (iv) an event that causes an involuntary transfer of the interest in the Litigation Trust.

(b)    The rights to a beneficial interest hereunder shall not entitle any Beneficiary to (i) any title in or to the Litigation Trust Assets as such (which title is vested in the Litigation Trustee) or to any right to call for a partition or division of the Litigation Trust Assets or to require an accounting, except for tax purposes pursuant to treatment as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), or (ii) any voting rights with respect to the administration of the Litigation Trust and the actions of the Litigation Trustee in connection therewith.

(c)    This Litigation Trust Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns hereunder.

Section 10.13  Binding Effect; No Third Party Beneficiaries.  This Litigation Trust Agreement shall be binding upon and inure to the benefit of each of the parties hereto and, additionally, shall inure to the benefit of the Litigation Trust Oversight Committee and its successors and assigns and the Beneficiaries and each of their respective successors and assigns and, except as provided hereunder, nothing herein is intended or shall be construed to give any other Person any right, remedy or claim under, to or in respect of this Litigation Trust Agreement, the Litigation Trust Assets or the Litigation Trust or any part thereof.

Section 10.14  No Suits by Beneficiaries and Claimholders.  No Beneficiary or holder of a Claim shall have any right by virtue of any provision of this Litigation Trust Agreement to institute any action or proceeding in law or in equity against any party other than the Litigation Trustee or Litigation Trust Oversight Committee Members on or under or with respect to the Litigation Trust Assets.

Section 10.15  Irrevocability.  The Litigation Trust is irrevocable, but is subject to amendment as provided for herein.

Section 10.16  Trust Continuance.  The death, dissolution, resignation, incompetency or removal of the Litigation Trustee shall not operate to terminate the Litigation Trust created by this Litigation Trust Agreement or to revoke any existing agency created under the terms of this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee. In the event of the resignation or removal of the Litigation Trustee, the Litigation Trustee shall promptly (i) execute and deliver such documents, instruments and other writings as may be requested by the Court or reasonably requested by a successor Litigation Trustee to effect the

28

termination of the Litigation Trustee's capacity under this Litigation Trust Agreement and the conveyance of the Litigation Trust Assets then held by the Litigation Trustee to the successor, (ii) deliver to the Court or the successor Litigation Trustee all documents, instruments, records and other writings related to the Litigation Trust as may be in the possession of the Litigation Trustee and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Litigation Trustee.

NY 246182807v5

IN WITNESS WHEREOF, the parties have executed this Litigation Trust Agreement as of the date first above written.

SFX ENTERTAINMENT, INC.

By:_____
Name:
Title:
Date:

[ADD ALL DEBTORS]

[LITIGATION TRUSTEE]


_____
[Name]
Date:

30

NY 246182807v5

**<u>Exhibit A to Litigation Trust Agreement</u>**

Information Agreement

## AGREEMENT TO CONSULT AND COOPERATE WITH LITIGATION TRUSTEE

This Agreement to Consult and Cooperate with Litigation Trustee ("Agreement"), is dated as of November [  ], 2016, and is entered into by and between [      ] as the Litigation Trustee of the SFX Litigation Trust and ("Trustee") and [    ] ("SFX Individual ) in connection with the SFX Litigation Trust ("Litigation Trust") and the *Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc. et al. Under Chapter 11 of the Bankruptcy Code* ("Plan").  Capitalized terms not otherwise defined herein shall have the meanings given to them in the Litigation Trust and the Plan.

## RECITALS

A.      The Plan was confirmed by an order of the Bankruptcy Court of [    ].

B.      SFX Individual is a Designated Officer and Director as that term is defined in section 1.44 of the Plan.  Under the terms of the Plan, each Designated Officer and Director is entitled to a release pursuant to section 12.02 of the Plan on the condition that, at the request of the Litigation Trustee, he or she executes an agreement, and performs thereunder, to consult with, and provide information and documents to, the Litigation Trustee related to any Litigation Trust Claim.

C.      The Litigation Trustee has determined that it is in the best interests of the Litigation Trust that SFX Individual execute this Agreement and perform thereunder and that SFX Individual shall not be entitled to the release under section 12.02 of the Plan unless this Agreement is executed and faithfully performed.

NOW, THEREFORE, based on the terms of the Plan and the forgoing recitals, the parties hereto agree as follows:

1.      Within 30 days of receipt of a written request by the Litigation Trustee or its counsel, SFX Individual shall make available for inspection and copying any documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations, stored in any medium from which information can be reasonably obtained ("Documents"), relating to the Litigation Trust Claims identified by the Litigation Trustee and which are in his or her possession, custody or control. SFX Individual shall disclose to the Litigation Trustee any knowledge that he or she may have concerning the existence of Documents or information requested by the Litigation Trustee that are not in his or her possession, custody or control, the location of such materials, and the person or entity in possession, custody or control of such materials.  The Litigation Trustee shall reimburse SFX Individual for reasonable and documented out-of-pocket costs (but excluding professional fees) incurred by SFX Individual in providing Documents and information requested by the Litigation Trustee.

2.      Within 30 days of receipt of a written request by the Litigation Trustee or its counsel, SFX Individual shall make himself or herself available for an in-person interview, at a location reasonably convenient to the SFX Individual, not to exceed 7 hours in duration and shall

-2-

exercise his or her best good faith efforts to fully and truthfully answer all questions posed by the Litigation Trustee or his attorneys relating to any Litigation Trust Claims.

3.    Within 30 days of receipt of a written request by the Litigation Trustee, SFX Individual shall respond to reasonable follow-up or supplemental questions or requests for Documents and information, relating to the Litigation Trust Claims.

4.    The Litigation Trustee will consider reasonable requests for extensions of time made by SFX Individual to respond to requests for documents and information.

5.    SFX Individual shall be under a duty to promptly supplement his or her prior disclosures to the Litigation Trustee upon (i) upon learning that information previously provided to the Litigation Trustee is incomplete or incorrect; and (ii) coming into possession of new Documents or information responsive to the Litigation Trustee's prior requests.

6.    SFX Individual shall not assert any privilege belonging to the Debtors or the Debtors' estates as a basis for not responding to any question or information request by the Litigation Trustee, to the extent that the Litigation Trustee has been vested with such privilege.

7.    The obligations of SFX Individual under this Agreement shall be in addition to any discovery obligations that SFX Individual may have under any applicable federal, state or local law, rule or procedure.

8.    In making requests for documents and information to the SFX Individual, the Litigation Trustee shall consider, among other things, the relative access of the Litigation Trustee to the information and documents from other sources and the best interests of the Litigation Trust in promptly obtaining the information and maximizing the value of the Litigation Trust Claims.

**[This Space Intentionally Left Blank]**

-2-

-3-

IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed as of the date first written above.

[                    ]


By:_____

Litigation Trustee


By:_____

Print Name:_____

DOCS_SF:92249.4 76896/002

## **<u>EXHIBIT L TO THE PLAN SUPPLEMENT</u>**

GUC Note

DRAFT

DRAFT
**[New HoldCo]**
**PROMISSORY NOTE[1]**

$1,000,000.00 aggregate principal amount                    Issue Date: [●], 2016
New York, New York

FOR VALUE RECEIVED, the undersigned, [New HoldCo] ("**Debtor**") hereby unconditionally promises to pay to the order of [Litigation Trustee], in [his/her] capacity as litigation trustee under that certain Litigation Trust Agreement, dated November [__] 2106, by and among SFX Entertainment, Inc., and its subsidiaries that are signatories thereto, and [the litigation trustee] ("**Payee**"), at Payee's principal office at [litigation trustee address] ("**Principal Office**") or at such other place or places as Payee may from time to time designate in writing in accordance with this Promissory Note (the "**Note**"), the principal sum of One Million Dollars ($1,000,000.00), plus interest from the date hereof until paid in full on the unpaid principal balance at the interest rate, and payable in the manner, set forth below.

1.      Interest Rate.  The unpaid principal balance of this Note shall bear interest at the rate of five percent (5%) per annum.  All interest shall be computed on the basis of a 360-day year and charged for the actual number of days elapsed.  Interest shall accrue under this Note until the principal amount of this Note is paid in full.  After the occurrence and during the continuance of an Event of Default, interest shall, at the option of Payee, be payable on demand.

2.      Maturity Date.  The unpaid principal balance of this Note then outstanding, together with all accrued and unpaid interest thereon, shall be due and payable by Debtor to Payee on December 31, 2017 (the "**Maturity Date**").  Debtor and Payee agree that the principal balance of this Note shall be payable by Debtor to Payee in four installments of $250,000 (plus any accrued and unpaid interest) on (i) March 31, 2017, (ii) June 30, 2017, (iii) September 30, 2017, and (iv) the Maturity Date.

3.      Payment Prior to Maturity Date.  This Note may be prepaid in whole or in part at any time prior to the Maturity Date, without premium or penalty.  Any prepayments (i) will be credited first against outstanding principal due under this Note in order of maturity, and (ii) will not extend the Maturity Date.

4.      Making of Payments.  Each payment (including any prepayments) of principal or any other amounts of any kind with respect to this Note shall be made by Debtor to Payee at Payee's Principal Office (or at any other place in the United States which Payee may hereafter designate for such purpose in a notice duly given to Debtor hereunder), by five p.m., Eastern Time, on the date due therefor. Any payments received after five p.m., Eastern Time, shall be deemed to have been received by Payee on the next following business day.  Whenever any payment to be made under this Note shall be stated to be due on a date which is not a business day, the due date thereof shall be extended to the next succeeding business day.  All payments and prepayments hereunder

---

[1] This Promissory Note is subject to further modification prior to the Effective Date.

shall (i) be paid in immediately available funds and in such coin or currency of the United States of America as at the time of payment is legal tender for the payment of all public and private debts, and (ii) be made by wire transfer to Payee according to wire instructions delivered by Payee to Debtor.

5.    Valid Obligation; Non-Contravention.  Debtor hereby represents and warrants that all acts, conditions and things required to be done and performed and to have occurred precedent to the execution and delivery of this Note and to render this Note a valid obligation of Debtor in accordance with its terms have been done, performed and have occurred in compliance with all applicable laws.  Debtor represents and warrants that Debtor's issuance and delivery of this Note does not conflict with, result in the termination of any material provisions of, constitute a default under, or accelerate or increase any obligation arising under any agreement to which Debtor is a party or by which Debtor is bound.

6.    Default; Remedies.  A failure by Debtor to make any payment of principal or interest when due in accordance with the terms of this Note, if not cured within a five (5) business day grace period, shall constitute an "**Event of Default**" under this Note. Upon the occurrence of any Event of Default hereunder, unless waived by Payee, the entire outstanding principal balance under this Note shall, at the option of Payee hereof, upon written notice to the Debtor immediately become and be due and payable in full.  In such event, Payee shall have and may exercise any and all rights and remedies available at law or in equity.

7.    Additional Liabilities.  Following an Event of Default, should Payee incur any costs of enforcing this Note or otherwise exercising its rights and remedies under this Note, Debtor shall be liable to Payee for all such costs, including reasonable attorneys' fees incurred in any litigation, any appellate proceedings, or any bankruptcy case.

8.    Captions.  Any headings or captions in this Note are inserted for convenience of reference only.  Such headings or captions shall not be deemed to constitute a part hereof, nor shall they be used to construe or interpret the provisions of this Note.

9.    Modifications.  This Note may not be supplemented, extended, modified, amended or terminated except by an agreement in writing signed by Debtor and Payee.

10.    Transfer; Assignment.  ~~Neither~~This Note may be assigned by the Payee upon prior written notice to the Debtor; provided, however, that this Note ~~nor any of the rights, interests or obligations hereunder may be assigned by either Debtor or Payee without the prior written consent of the other~~may not be assigned to any person or entity that is a competitor of the Debtor or any of its direct or indirect subsidiaries (as determined by the Board of Directors of the Debtor) or is directly or indirectly controlling, controlled by, or under common control with any such competitor.  Any attempted assignment or disposition in violation of this Note shall be null and void *ab initio*. ~~Notwithstanding the foregoing, this Note may be assigned or transferred by Payee~~

- 2 -

~~to any successor Litigation Trustee appointed pursuant to the terms of that certain Litigation Trust Agreement~~.

11.     Notices.  All communications provided hereunder shall be in writing and shall be delivered or mailed by registered or certified mail to the following addresses:  (i) if to Debtor, addressed to [New HoldCo], 524 Broadway, 11th Floor, New York, NY 10012, Attention: General Counsel, and (ii) if to Payee, addressed to Payee at its Principal Office.  Either party may change its address for the purpose of this section by giving the other party written notice of its new address in the manner set forth in the previous sentence.

12.     Waiver.  Debtor, for itself and for its successors and permitted transferees and assigns, hereby irrevocably (i) waives diligence, presentment and demand for payment, protest, notice, notice of protest and nonpayment, dishonor and notice of dishonor and all other demands or notices of any and every kind whatsoever, and (ii) agrees that this Note and any or all payments coming due hereunder may be extended from time to time in the sole and absolute discretion of Payee hereof without in any way affecting or diminishing Debtor's liability hereunder.

No delay in the exercise of any right or remedy hereunder by Payee shall be deemed to be a waiver of such right or remedy, nor shall the exercise of any right or remedy hereunder by Payee be deemed an election of remedies or a waiver of any other right or remedy.  Without limiting the generality of the foregoing, the failure of Payee promptly after the occurrence of any default hereunder to exercise Payee's right to declare the indebtedness remaining unmatured hereunder to be immediately due and payable shall not constitute a waiver of such right while such default continues nor a waiver of such right in connection with any future default.  No waiver or limitation of any right or remedy hereunder by Payee shall be effective unless (and any such waiver or limitation shall be effective only to the extent) expressly set forth in a writing, signed and delivered by Payee to Debtor.

13.     Time of the Essence.  Time is hereby declared to be of the essence of this Note and of every part hereof.

14.     GOVERNING LAW AND JURISDICTION.  THIS NOTE SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS RULES OF CONFLICT OF LAWS.  DEBTOR CONSENTS TO BE SUBJECT TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL COURT SITTING IN THE COUNTY OF NEW YORK, AND THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK IN THE COUNTY OF NEW YORK, IN ANY SUIT, ACTION OR PROCEEDING SEEKING TO ENFORCE ANY PROVISION OF, OR BASED ON ANY MATTER ARISING OUT OF OR IN CONNECTION WITH, THIS NOTE.

15.     Severability.  In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event any one or more of the provisions of this Note operate or

- 4 -

would prospectively operate to invalidate this Note, then, and in either of such events, such provision or provisions only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect.

[Signature page follows]

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note pursuant to proper authority duly granted, as of the date and year first above written.

DEBTOR:

[New HoldCo]

By: _____
Name:
Title: