# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SFX Entertainment, Inc., *et al.*,<br><br>Reorganized Debtors. | Chapter 11<br><br>Case No. 16-10238(MFW)<br>(Jointly Administered)<br><br>Re: Docket Nos. 1768 and 1772<br><br>**Hearing Date: August 21, 2018, at 2:00 p.m. (Eastern)** |

### REPLY IN SUPPORT OF MOTION OF REORGANIZED DEBTOR FOR AN ORDER (I) ENFORCING STATUTORY, PLAN AND CONFIRMATION ORDER DISCHARGE INJUNCTIONS AND (II) AWARDING COMPENSATORY AND COERCIVE DAMAGES FOR CIVIL CONTEMPT OF NIGHTCULTURE, INC.

Disco Donnie Presents, Inc. f/k/a SFX-Disco Operating, LLC ("Debtor," "Reorganized Debtor" or "DDP"), by and through its undersigned counsel, respectfully submits this Reply in Support of its Motion for an Order (I) Enforcing Statutory, Plan and Confirmation Order Discharge Injunctions and (II) Awarding Compensatory and Coercive Damages for Civil Contempt of NightCulture, Inc. ("NightCulture") (the "Motion"). In support thereof, Reorganized Debtor alleges as follows:

### INTRODUCTION[1]

1. NightCulture chose not to file a proof of claim or an administrative claim and did not vote on the Plan, appear or otherwise participate in the Debtor's bankruptcy case. *See* Objection, ¶¶ 2-4. In its bankruptcy case, the Debtor ultimately obtained confirmation of a chapter 11 Plan. The Plan provides that, with limited exceptions, the Debtor was released from all claims, debts, causes of action and liabilities. The Plan enjoined all persons or entities from asserting any such released claim, debt, cause of action or liability.

---

[1] Unless otherwise defined, capitalized terms herein shall have the meaning ascribed to them in the Motion.

2. Having ignored the chapter 11 case, NightCulture now seeks to ignore the terms of the Plan and Confirmation Order, and has asserted Amended Counterclaims against Reorganized Debtor for events, profits and expenses incurred prior to December 2, 2016, the Effective Date of the Plan.

3. In its Objections, NightCulture does not (because it cannot) dispute that the three of the festivals giving rise to its Amended Counterclaims occurred prior to the Effective Date of the Plan. Likewise, NightCulture concedes (as it must) that it deliberately chose not to file a claim in the bankruptcy case. Finally, NightCulture does not (because it cannot) dispute that most (if not all) of its Amended Counterclaims were discharged by the Plan and Confirmation Order.

4. Instead, NightCulture argues that Reorganized Debtor is not entitled to enforce the injunctions in the Plan and Confirmation Order because: (a) Reorganized Debtor and NightCulture agreed, in the Stipulation, ▮▮▮▮▮ and counterclaims asserted in the New York Action;[2] (b) NightCulture may pursue ▮▮▮▮▮ (c) Reorganized Debtor waited 6 months to file the Motion; (d) Reorganized Debtor waived its pre-Effective Date claims against NightCulture by failing to expressly preserve them in the Disclosure Statement, the Plan, or the Confirmation Order; and (e) this Court lacks personal jurisdiction over NightCulture. These arguments fail.

5. *First*, Reorganized Debtor did not waive its right to enforce the injunctions in the Plan and Confirmation Order by executing the Stipulation. Rather, the Stipulation resolved ▮▮▮▮▮ in the Co-Promotion Agreements, the agreements governing this

---

[2] The "New York Action" refers to the lawsuit Reorganized Debtor commenced, on August 23, 2017, against NightCulture in the Supreme Court of the State of New York, County of New York (the "New York Action"). *See Disco Donnie Presents LLC (f/k/a SFX-Disco Operating LLC) et al. v. NightCulture, Inc.*, Index No. 157563/2017).

- 2 -

dispute. To the Contrary, Reorganized Debtor specifically reserved all other "rights" and "remedies" and stated that nothing in the Stipulation "shall constitute a waiver of the same."

6. In any event, the Stipulation was limited to the "claims" and "counterclaims" asserted in the New York Action. Because NightCulture did not assert any counterclaim for money damages in the New York Action—████████████████████████████████████—the Stipulation could not constitute a waiver of Reorganized Debtor's right to enforce the injunction in the Plan and Conformation Order ████████████████████████████████.

7. *Second*, NightCulture's argument ████████████████████████████████ ████████████████████████████████ is wrong for several reasons. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████, the Plan provides an injunction prohibiting the assertion of claims (including rights of setoff) and recoupment rights that have been discharged or released under the Plan. NightCulture's attempt to rely upon Section 12.07 of the Plan is misplaced because it only preserves setoff and recoupment rights of "Creditors." NightCulture, having failed to file a proof of claim in the Bankruptcy case, is not a "Creditor."

8. *Third*, Reorganized Debtor is not estopped from raising the discharge injunction with respect to ████████████████████████████████ Reorganized Debtor has consistently warned NightCulture that its counterclaims may violate the discharge injunction. For example, by letter dated November 15, 2017, ████████████████ ████████████████████████ would violate the discharge injunction in the Confirmation Order. ████████████████████████████████, the Reorganized Debtor again warned NightCulture that it was violating the discharge injunction. Finally, as NightCulture admits, "[o]n June 29, 2018, DDP . . . sent NightCulture a letter

violated the discharge injunction in the Plan and Confirmation Order. NightCulture completely ignored those warnings, and even failed to respond at all to the June 29 letter. Accordingly, Reorganized Debtor consistently warned NightCulture not to assert the Counterclaims and is not estopped from continuing to do so.

9. *Fourth*, *res judicata* does not bar Reorganized Debtor's claims against NightCulture. Those claims were adequately preserved in the Plan. Moreover, any requirement of specificity with respect to the retention of claims under a chapter 11 plan is for the benefit of creditors, not defendants (like NightCulture).

10. *Fifth*, this Court has jurisdiction over NightCulture. NightCulture does not (and cannot) deny minimum contacts with the United States.

Accordingly, for these reasons, and the reasons discussed below, the Motion should be granted.

**REPLY**

**A. The Stipulation Did Not Waive Reorganized Debtor's Right to Enforce the Injunction in the Plan. Regardless, the Stipulation is Inapplicable to NightCulture's**

11. The Stipulation provides that "[a]ll claims and counterclaims asserted in the [New York Action] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" Objection at Exhibit A, ¶ 2.

12. The purpose of the Stipulation was to resolve competing ▇▇▇▇ provisions in the Co-Promotion Agreement dated April 18, 2017 (the "<u>Something Wonderful 2017 Co-Promotion Agreement</u>")[3] (New York Courts for certain disputes; ▇▇▇▇

---

[3] A true and correct copy of the Something Wonderful 2017 Co-Promotion Agreement is attached as **Exhibit L**.

- 4 -

███████████████████████████████████████, the Co-Promotion Agreement for the 2016 Something Wonderful Agreement ██████████████████), and the Co-Promotion Agreement for the 2016 Something Wicked Agreement ██████████████████.[4] The Stipulation was not intended to (and did not) waive Reorganized Debtor's bankruptcy discharge or the related injunction in the Plan and Confirmation Order.

13. In fact, Section 6 of the Stipulation specifically states that it "*shall not* constitute an amendment or modification of any other agreements or understandings" and that "[e]xcept as otherwise indicated above, *all other rights, remedies*, and obligations shall remain in full force and effect and nothing contained herein shall constitute a waiver of the same." (emphasis added). Thus, Reorganized Debtor reserved its right to enforce the injunctions set forth in the Plan and Confirmation Order.

14. Even if the Stipulation can be read to waive any rights (which it cannot), it is axiomatic that the Stipulation is inapplicable to claims *not* asserted in the New York State Action, which were not the subject to the Stipulation. The New York Action did not involve (i) any counterclaim for money damages under any of the Co-Promotion Agreements or (ii) any counterclaim (for any relief) relating to the Co-Promotion Agreement for the 2015 Something Wicked Festival.

15. Specifically, in the New York Action, NightCulture did not seek *any* monetary damages arising out of Reorganized Debtor's purported misconduct. Rather, in the "Prayer for Relief," NightCulture merely sought three non-monetary forms of relief:

---

[4] *Compare* Something Wonderful 2017 Co-Promotion Agreement (Ex. 1) at Terms and Conditions § 8(e)-(f) *with* Something Wonderful 2017 Co-Promotion Agreement (Ex. C to Motion) at Terms and Conditions § 8(e), Something Wicked 2015 Co-Promotion Agreement (Ex. D to Motion) at Terms and Conditions, § 8(e) and Something Wicked 2016 Co-Promotion Agreement (Ex. E to Motion) at § 8(e).

- An order "[d]ismissing the Complaint with prejudice;"

- An order "[s]taying this action so that the parties can pursue arbitration as agreed upon in three Agreements at issue;" and

- An order granting NightCulture "any such further relief as the Court may deem just and proper."

*See* Defendant's Answer to Complaint dated October 16, 2017 at p. 17 (Prayer for Relief), which is attached as **Exhibit M**.[5]

16. NightCulture waited for its ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. F to Motion) at Prayer for Relief ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17. Similarly, in the New York Action, NightCulture did not seek damages (monetary or otherwise) arising out of the Something Wicked 2015 Agreement. *See* Defendant's Answer to Complaint dated October 16, 2017 (Ex. 2) at ¶¶ 91-97 ("Plaintiff owed contractual obligations to abide by the Settlement procedure as stipulated in section III(b) of the 2016 Dallas and 2016 Houston Agreements and section III(c) of the 2017 Agreement"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Counterclaims and Amended Counterclaims (Exs. F and I to Motion) at ¶ 106 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

18. Therefore, even if the Stipulation could constitute a waiver of Reorganized Debtor's right to invoke the injunctions in the Plan and Confirmation Order, the Stipulation is

---

[5] NightCulture plead in the New York Action that, "[a]s a direct and proximate result of Plaintiff's breach of the three Agreements, Defendant is owed damages ranging from $1,107,266.63 to $2,483,193.61, before interest." However, NightCulture never sought that amount in the New York State Action.

inapplicable to NightCulture's (i) claims for money damages under the Co-Promotion Agreements and (ii) all claims arising out of the 2015 Something Wicked Agreement.

**B.** █████████████████████████████████████████ █████████████████████████
█████████████████████████████

19. NightCulture argues (incorrectly) that it is entitled to "setoff" its claims against Reorganized Debtor's claims. NightCulture is wrong for several reasons.

20. ████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████ *See* Amended Counterclaims (Ex. I to the Motion) at pp. 31-33.

21. The Plan and Confirmation Order barred the assertion of such claims. Specifically, the Plan provides that, as of the Effective Date, "all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors … any other or further Claims, Interests, debts, rights, Causes of Action, claims for relief, [or] liabilities, . . . relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date." Plan (Ex. A to Motion), § 12.03(ii), p. 79.

22. Similarly, the Plan provides that, with limited exceptions, the Debtor is released from all claims, debts, causes of action and liabilities. *See, e.g.*, Plan (Ex. A to Motion), § 12.03(i). Specifically, section 12.03(i) of the Plan, entitled "Discharge of Claims and Interests," provides that "all consideration distributed under the Plan shall be . . . in complete satisfaction, settlement, discharge, and release, effective as of the Effective Date, of all. . . Causes of Action of any nature whatsoever, . . . from and after the Petition Date, whether known or unknown, against, liabilities of, . . . obligations of, rights against, . . ., the Debtors . . ...including demands, liabilities and Causes of Action that arose before the Effective Date, . . .

whether or not (a) a Proof of Claim based upon such debt is Filed . . . [or] (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code." Plan (Ex. A to Motion), § 12.03(i), p. 79.

23. Section 12.04(i) of the Plan provides an injunction prohibiting the assertion of claims (including rights of setoff) that have been discharged or released under the Plan, as follows:

> all Persons that have held, currently hold, may hold, or allege that they hold, a Claim . . . or other debt or liability that is discharged pursuant to Section 12.03 of the Plan, . . . are permanently enjoined from: . . . (a) commencing or continuing, in any manner or in any place, any action or other proceeding of any kind; . . . (d) asserting a right of setoff, recoupment or subrogation of any kind against any debt, liability, or obligation due to the Creditor Released Parties . . . .

Plan (Ex. A to Motion), § 12.04(i), pp. 79-80;[6] *see also* Confirmation Order (Ex. B to Motion), ¶ 48 (entitled "Discharge"), p. 47; Confirmation Order (Ex. B to Motion), ¶ 49, p. 47 ("It is hereby ordered that the Bankruptcy Court approves of and grants the releases, . . . injunctions and related provisions set forth in Article XII of the Plan and determines that they are . . . approved after due notice and opportunity for a hearing; and . . . a bar to any of the Holders of Claims and Interests asserting any Claim or Cause of Action thereby released."); Confirmation Order (Ex. B to Motion), ¶ 50, pp. 47-48 (injunction paralleling section 12.04(i) of the Plan).

24. Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NightCulture still violated the Plan and Confirmation Order by doing so.[7] *See* Plan (Ex. A to Motion), § 12.04(i), pp. 79-80 ("all Persons that have held, currently hold, may hold, or allege

---

[6] "Persons" means ""Person" includes "a natural person, individual, partnership [or] corporation (as defined in section 101(41) of the Bankruptcy Code)." Plan (Ex. A. to Motion), § 1.145, p. 19. "Creditor Released Parties" includes "each Debtor and Reorganized Debtor." Plan (Ex. A to Motion), § 1.42(ii), p. 6.

[7] In an attempt to broaden the scope of the Motion, NightCulture argues that "discovery will be needed to determine when the conduct giving rise to each claim occurred to properly determine pre- versus post- confirmation conduct." NightCulture is mistaken as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

that they hold, a Claim . . . or other debt or liability that is discharged pursuant to Section 12.03 of the Plan, . . . are permanently enjoined from: . . . asserting a right of setoff, recoupment or subrogation of any kind against any debt, liability, or obligation due to the Creditor Released Parties . . . .").

25. In paragraph 55 of its Objection, NightCulture asserts as follows:

> Although DDP did not cite this provision in the Motion, the Plan expressly preserved such rights. Specifically, the Plan states:
>
> *Notwithstanding any provision to the contrary* in this Plan, the Confirmation Order, and any documents implementing the Plan, *nothing shall bar any Creditors from asserting its setoff or recoupment rights* to the extent permitted under section 553 or any other applicable provision of the Bankruptcy Code.
>
> *See* Plan (Ex. A to Motion) § 12.07 (emphases added).

26. NightCulture's reliance upon section 12.07 is misplaced for two reasons. First, Reorganized Debtor did not cite to section 12.07 because (as discussed above) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27. Secondly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Counterclaims (Ex. F to Motion), ¶ 17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, NightCulture is *not* a "Creditor" entitled to the benefit of section 12.07. *See* Order (A) Fixing Deadlines for Filing Proofs of Claim and (B) Designating Form and Manner of Notice Thereof [D.I. 351], at ¶ 12, p. 6 ("Any creditor that is required to file a proof of Claim, but fails to do so in a timely manner, with respect to such Claim: (a) shall not be treated as a creditor of the Debtors for purposes of voting upon or receiving distributions under any plan or plans of reorganization or liquidation in these Chapter 11 Cases and (b) shall be forever barred, estopped, and enjoined from asserting

such Claim against the Debtors or thereafter filing a proof of Claim thereto in these Chapter 11 Cases . . . .").

28. The Plan defines "Creditor" as "any Holder of a Claim." *See* Plan (Ex. A to Motion), § 1.41. "Holder" means, in relevant part, "the legal or beneficial holder of a Claim against . . . the Debtors." *See* Plan (Ex. A to Motion), § 1.88. "Claim" is defined as in the Bankruptcy Code. *See* Plan, § 1.27. The Bankruptcy Code defines "claim," in relevant part, as a "right to payment." 11 U.S.C. § 101(5). NightCulture does not hold a "right to payment" because its claim has been disallowed. Therefore, NightCulture does not hold a "claim" and is *not* a "creditor" under the Plan. *See Monk v. LSI Title Co. of Or. LLC (In re Monk)*, 2011 WL 212831, at *4 (Bankr. D. Or. Jan. 21, 2011) ("The debt was disallowed under section 502 and, as provided by § 1328(a), it was discharged. A 'debt' is defined at § 101(12) as 'liability on a claim.' A 'claim' is defined as a "right to payment. . . ." § 101(5)(A). Once the claim was disallowed, PCFS no longer had a right to payment and thus no longer had a 'claim' or a 'debt' [and] cannot use § 1328(a)(1) to except its nonexistent debt from discharge.").

29. As a non-creditor, NightCulture is not entitled to the section 12.07 carve-out for "Creditors" from the general injunction release provision of section 12.04(i), which applies to all "Persons."

30. In summary, NightCulture ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Even if NightCulture did ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ NightCulture would still be violating the Plan and Confirmation Order injunctions by doing so.

**C.** ███████████████████████████████████████████████████████████████
███████████████████████████████████████████

31.  ███████████████████████████████████████████████████████████████ *See* Amended Counterclaims (Exhibit I to the Motion) at pp. 31-33.  ███████████████████████████
███████████████████████

32.  ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
██████████ ████████████████████████████████████████████████████

NightCulture is not a "Creditor" within the purview of section 12.07 of the Plan, but rather is a "Person" bound the injunction against recoupment set forth in section 12.04(i) of the Plan. *See* Plan (Ex. A to Motion), § 12.04(i), pp. 79-80 ("all Persons that have held, currently hold, may hold, or allege that they hold, a Claim . . . or other debt or liability that is discharged pursuant to Section 12.03 of the Plan, . . . are permanently enjoined from: . . . asserting a right of . . . setoff").

**D.  Reorganized Debtor Is Not Estopped from Enforcing the Discharge Injunction.**

33.  NightCulture asserts that Reorganized Debtor is estopped from raising the discharge injunction with respect to NightCulture's assertion of a counterclaim against Reorganized Debtor.  In support of that argument, NightCulture erroneously contends that ████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
*See* Objection, ¶ 28 (emphasis added).  In fact, ██████████████████████████████████
████ ███████████████ ██████ █ ████ ████████ ██ █ ██ ██████ █
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████  █████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████.[8]

34. Furthermore, on June 29, 2018, Reorganized Debtor filed a Reply to Counterclaims. *See* Reply (Ex. J. to Motion). ████████████████████████████████████████████████████████████████████████████████████████ Reply (Ex. 4) at ¶ 2. In fact, the Reorganized Debtor's Second Affirmative Defense states that:

> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████████████████████████████████████
> ████████

*See* Reply (Ex. J. to Motion) at pp. 7 (emphasis added)**.**

35. Additionally, as NightCulture admits, ████ ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[8] NightCulture similarly assert that, ████████████████████████████
████████ *See* Objection, ¶ 2. As indicated *supra*, the counterclaim in the New York State Court did not seek any money damages

36. NightCulture's assertion that it "did not have . . . fair warning that the exercise of such rights, violated the Confirmation Order" (*see* Objection, ¶ 62) is simply untrue. NightCulture had repeated warnings: It choose to ignore them.

37. NightCulture also did not come to this Court and seek guidance despite the multiple warnings provided by Reorganized Debtor. Instead, NightCulture unilaterally flouted the Confirmation Order and charged on with its counterclaims.

38. Finally, any purported "delay" in bringing the motion is understandable because the parties were engaged in settlement negotiations. From February 19, 2018 to June 15, 2018, the parties were engaged in substantial settlement negotiations ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and informally between the parties' principals. Seeking to avoid the cost and expense of further litigating the dispute, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

39. Accordingly, a month after sending the June 29 letter, having received no response and with its patience exhausted, "[o]n July 30, 2018, DDP . . . filed the Motion with the Bankruptcy Court." *See* Objection, ¶ 28.

40. For the foregoing reasons, Reorganized Debtor is not estopped from enforcing its discharge injunction in the Plan and Confirmation Order. The Court should award Reorganized Debtor all of its legal fees and expenses.

**E.     Reorganized Debtor's Claims Against NightCulture Were Properly Retained.**

41. NightCulture asserts that "[t]he Reorganized Debtors waived their pre-Effective Date claims against NightCulture by failing to expressly preserve such claims in any of the Disclosure Statement, the Plan, or the Confirmation Order." Objection, ¶ 43; *id.*, ¶ 49 ("In defining Causes of Action, the Debtors failed to specifically identify NightCulture . . .") and ¶ 4 ("Moreover, the Reorganized Debtors failed to retain their pre-Effective Date causes of action against

NightCulture and res judicata bars commencing any such actions against NightCulture post-Effective Date.").

42. NightCulture is wrong for two independent reasons. First, NightCulture, having chosen not to participate in the bankruptcy case, is not a creditor entitled to any "notice" regarding the Reorganized Debtor's retention of claims and could not have relied upon the Plan to conclude that it would not be sued. As Bankruptcy Judge Peter J. Walsh held:

> Tech Data is not a creditor of the Debtors' estates. Indeed, Tech Data's argument defeats itself. Tech Data was not entitled to receive the Plan and Disclosure Statement and, therefore, presumably did not rely on its terms. And, as pointed out in *Pen Holdings*, § 1123(b)(3) was intended to benefit the creditors of a bankruptcy estate, not the potential defendants of the preserved claims.

*Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 326 B.R. 312, 327 (Bankr. D. Del. 2005)

43. Second, a general reservation of claims and causes of auction is sufficient in this jurisdiction to retain claims under the Bankruptcy Code:

> In my view, absent unusual circumstances, not present here, requiring names and causes of action specific information to be included in confirmation documents places an unnecessary burden on the bankruptcy process and is not required by the Bankruptcy Code.

*Id.* at 325; *id.* at 326 ("[t]he argument in this appeal illustrates the danger of engrafting an unduly burdensome specificity requirement onto the § 1123(b)(3) authorization for the retention and enforcement of claims belonging to the estate. 11 U.S.C. § 1123(b)(3). The statute does not require it.").

44. Therefore, "a subsequent action is not barred by a prior confirmation hearing under the doctrine of res judicata where the disclosure statement and plan contain a general reservation" of the right to pursue claims post-confirmation. *See Cohen v. TIC Financial Sys. (In re Ampace Corp.)*, 279 B.R. 145, 161 (Bankr. D. Del. 2002).

45. Here, as NightCulture acknowledges, the Plan contained a broad retention of claims. The Plan provides that "the Reorganized Debtors or their successors shall retain and may enforce . . . those Causes of Action (and rights with respect thereto) that the Debtors may hold against any Entity . . . ." Plan (Ex. A to Motion), § 5.09, pp. 51-2. In turn, "Causes of Action" is defined as:

> any and all actions, causes of action, Avoidance Actions, claims, defenses, liabilities, obligations, executions, causes in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, and rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

Plan (Ex. A to Motion), § 1.24, p. 4.

46. In summary, NightCulture—which, as a defendant, is not entitle to claim retention notice or to rely on the Plan—cannot challenge the terms of, or rely upon, the terms of the Reorganized Debtor's retention of "Causes of Action. Even if NightCulture could do so (and had not waived that right), a general reservation of Causes of Action is all that is required under the Bankruptcy Code.

**F.     The Court Has Personal Jurisdiction Over NightCulture.**

47. Reorganized Debtor need not show that NightCulture has "minimum contacts" with Delaware in order for this Court to have personal jurisdiction over NightCulture. Instead, NightCulture need only have minimum contacts with the United States. *See Springel v. Prosser & Campbell, P.C. (In re Innovative Commc'n Corp.)*, 2013 WL 1795580, at *3 (Bankr. D.V.I.

Apr. 29, 2013) (MFW) ("In the bankruptcy context, however, the relevant inquiry under the Fifth Amendment is whether the defendant has 'minimum contacts with the United States, rather than with a particular state.'") (quoting *Anheuser-Busch, Inc. v. Paques (In re Paques)*, 277 B.R. 615, 628 (Bankr. E.D. Pa. 2000) (citing *BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000))); *Capmark Fin. Grp. Inc. v. Lin (In re Capmark Fin. Grp. Inc.)*, 479 B.R. 330, 338 (Bankr. D. Del. 2012) ("[t]he proper inquiry as to whether Lin has minimum contacts with the Court is whether he has minimum contacts with the United States — not Delaware as Lin asserts."); *Enron Corp. v. Arora (In re Enron Corp.)*, 316 B.R. 434, 444 (Bankr. S.D.N.Y. 2004) ("After the 1996 Amendments, courts have recognized in federal question cases that no inquiry into a defendant's 'minimum contacts' with the forum state is needed to exercise jurisdiction pursuant to Bankruptcy Rule 7004; rather, only a federal 'minimum contacts' test is required,").

48.     NightCulture does not (and cannot) deny minimum contacts with the United States. Accordingly, this Court has personal jurisdiction over NightCulture.[9]

---

[9] NightCulture's other argument lack merit for the reasons set forth in the Motion and this Reply.

WHEREFORE, Reorganized Debtor respectfully requests that this Honorable Court enter an order (i) granting the Motion, (ii) awarding attorneys' fees and expenses to Reorganized Debtor, (iii) compelling NightCulture to pay Reorganized Debtor the sum of $2,500 per day after entry of an Order granting this Motion until NightCulture withdraws its counterclaims; and (iv) granting such other relief to Reorganized Debtor as is appropriate.

Dated: August 16, 2018  
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ *Kurt F. Gwynne*
Kurt F. Gwynne (No. 3951)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7550
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com

*Counsel for Disco Donnie Presents, Inc. f/k/a SFX-Disco Operating, LLC, Reorganized Debtor*