## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SFX Entertainment, Inc., *et al*., | Case No. 16-10238 (MFW) (Jointly Administered) |
| Reorganized Debtors. | Related Docket Nos. 1768 & 1769 |
| | **Objections Due: August 14, 2018, at 4:00 p.m. (Eastern)** |
| | **Hearing Date: August 21, 2018, at 2:00 p.m. (Eastern)** |

## OBJECTION TO MOTION OF REORGANIZED DEBTOR FOR AN ORDER (I) ENFORCING STATUTORY, PLAN AND CONFIRMATION ORDER DISCHARGE INJUNCTIONS AND (II) AWARDING COMPENSATORY AND COERCIVE DAMAGES FOR CIVIL CONTEMPT OF NIGHTCULTURE, INC.

NightCulture, Inc. ("NightCulture"), by and through its undersigned counsel, hereby objects (the "Objection") to the Motion of Reorganized Debtor, Disco Donnie Presents, Inc. (f/k/a SFX-Disco Operating, LLC) (the "Debtor" or "DDP") for an Order (I) Enforcing Statutory, Plan and Confirmation Order Discharge Injunctions and (II) Awarding Compensatory and Coercive Damages for Civil Contempt of NightCulture, Inc. (Docket Nos. 1768 and 1769) (the "Motion"). In support of this Objection, NightCulture respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1. Approximately one year ago, the Reorganized Debtors brought suit against NightCulture in the New York State Court. NightCulture defended itself and asserted counterclaims against DDP in order to apply its own damages against any amounts that would otherwise be due DDP, and to affirmatively recover on post-Effective Date damages. This dispute, and thereby the amount of any payment owed by DDP or NightCulture under the

---

[1] Capitalized terms used in the preliminary statement, but not defined in the preliminary statement are defined below.

agreement, ██████████████████████████████████████████████████████

████████████████████████████, as further set forth herein.

2.      Approximately six (6) months after NightCulture first asserted the

Counterclaim ███████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████. Specifically, DDP seeks enforcement of the Plan discharge

and Confirmation Order by this Court after having █████████████████████████████

████████████████████. Accordingly, respectfully, the Court should abstain from ruling on the

Motion. Moreover, ████████████████████████████████████, has been

adjudicating the parties' dispute. Consequently, DDP should be estopped from bringing this

Motion in the Bankruptcy Court.

3.      Should the Court nonetheless be inclined to hear the dispute, the

Bankruptcy Court lacks jurisdiction to adjudicate the Motion. As set forth herein, the Court also

does not have personal jurisdiction over NightCulture, a resident of Nevada.

4.      On a substantive level, under the terms of the Plan, the Confirmation

Order, and in accordance with applicable law, NightCulture's Counterclaims, ███████████

████████, are not discharged. Initially, it is undisputed that an unknown portion of the

Counterclaim arose post-Effective Date and remains, therefore, under any interpretation of the

terms of the Plan and/or Confirmation Order unaffected by the Plan and Confirmation Order.

With respect to that portion of the Counterclaim that arose pre-Effective Date, the terms of the

Plan expressly preserved such claims for purposes of setoff/recoupment. Moreover, the

Reorganized Debtors failed to retain their pre-Effective Date causes of action against

NightCulture and <u>res judicata</u> bars commencing any such actions against NightCulture

post-Effective Date.[2] Thus, as set forth herein, not only should this Court not find NightCulture in contempt, to the extent that this Court makes any determination at all in this matter, which it cannot and should not do, the Court should determine that DDP has no right to bring any pre-Effective Date action against NightCulture post-confirmation.

**BACKGROUND**

    **A.    The Bankruptcy Case**

    1.    On February 1, 2016, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") thereby commencing bankruptcy case number 16-10269 (MFW) (the "Bankruptcy Case") jointly administered under bankruptcy case number 16-10238 (MFW).

    2.    On April 5, 2016, the Court entered an Order (A) Fixing Deadlines for Filing Proofs of Claim and (B) Designating Form and Manner of Notice Thereof (Docket No. 351) (the "Bar Date Order"). The Bar Date Order established the general deadline for filing claims as thirty-three (33) days after mailing of the bar date notice or May 17, 2016 (the "Bar Date"). NightCulture did not file a proof of claim in the Bankruptcy Case.

    3.    On November 15, 2016, the Court entered an order (Docket No. 1293) (the "Confirmation Order") confirming the Debtor's Fifth Amended Joint Plan of Reorganization of SFX Entertainment, Inc., et al. under Chapter 11 of the Bankruptcy Code (as Modified) (Confirmation Order Ex. A) (the "Plan"). NightCulture did not vote on the Plan.

---

[2]    The Confirmation Order states "[t]he entry of this Confirmation Order shall not have any res judicata or other preclusive effect with respect to any Causes of Action that are not specifically and expressly released by the terms of the Plan, and the entry of this Confirmation Order shall not be deemed a bar to asserting such Causes of Action. Confirmation Order ¶ 55. However, such reservation does not cure the underlying defects of due notice. To the extent the provision is deemed binding and the Court decides such language overrides existing precedent, NightCulture seeks reconsideration of the Confirmation Order pursuant to Fed. R. Civ. P. 60(b).

4. On December 2, 2016 (the "Effective Date"), the Plan became effective. See Docket No. 1342. The Plan established January 3, 2017, as the deadline to file administrative expense requests. See Plan § 1.5. NightCulture did not file an administrative expense request in the Bankruptcy Case. Indeed, NightCulture never appeared in the Bankruptcy Case until it was compelled to respond to the Motion.

**B.      NightCulture and the Debtor's Relationship**

5. NightCulture produces electronic dance music ("EDM") events. Since its founding in January 2000, NightCulture has been a key figure in Houston's growing EDM market and is a pioneer of online and network marketing within the industry.

6. In 2007, a new management team acquired NightCulture, and under this team, NightCulture grew rapidly. By 2012, NightCulture had grown from a company that conducted approximately a dozen shows annually in Houston to one that conducted over one hundred events annually in several major markets. To date, NightCulture has successfully produced events for some of the largest acts in EDM. NightCulture has conducted EDM events in Houston, Dallas, Austin, San Antonio, and Galveston, TX, as well as in Oklahoma City, OK. NightCulture also operates its own concert venues in Houston and Dallas: Stereo Live and Stereo Live Dallas.

7. In 2011, Robert Sillerman founded SFX Entertainment ("SFX") with the intention of vertically integrating the rapidly growing EDM industry. In order to achieve this goal, SFX paid a premium for EDM companies it believed were necessary in a market, regardless of the financial health of such companies. DDP was one such acquired company.

8. In order to effectuate its role in SFX's rapid growth strategy, ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. During the time that DDP was a

subsidiary of SFX, Stereo Live was the premier EDM venue in Texas, outfitted with world-class lighting and effects, sound, and LED equipment. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

        9.      SFX was more concerned with rapid acquisition and market-share growth than it was with operational profitability. This approach began to infuse DDP's operations, especially in connection with ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████

        10.     In February 2016, DDP and SFX each filed their respective bankruptcy petitions. While DDP was in bankruptcy, NightCulture continued to expand, including by opening its second concert venue, Stereo Live Dallas, in 2016. Despite the bankruptcy filing, DDP continued its cavalier, SFX-era approach to financial discipline it its pursuit of growth.

        11.     This misalignment of priorities eroded ████████████████████████

████████████████████. Of primary concern was DDP's apparent disregard for ████████

██████████████████████████████████████████████. Rather, DDP seemed determined to prioritize unsustainable, rapid growth over profits – ████████████████████

██████████████████████████████████████████████████████████

**C.** **NightCulture and DDP's Post-Effective Date** ███████████

12.     As the Parties began preparing for ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████.

13.     In light of the increased competition and the fact that ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████.

14.     Eventually, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████.

15.    ██████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

16.    █████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

17.    ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████

18.    In July 2017, in light of ███████████████████

███████████████████████████████████████████████████

████████████████████. NightCulture proposed that the parties create ██████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████

19.    Rather than respond to ███████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████

20.    ██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████[3]

### D.    NightCulture and DDP's Club Show Relationship

21.    ███████████████████████████████████████

██████████████. These events usually featured a single artist booked by DDP and occurred at venues either secured or operated by NightCulture.  Although the parties never memorialized

---

[3]    ███████████████████████████████████████████████
██████████████████████████████████████████████████.



their arrangement with regard to club shows, these shows have been conducted under two different models: the joint venture model and the co-promotion model.

22.    For all club shows conducted together, under either model, the parties' understanding was that they would participate in a settlement process.  Accordingly, DDP maintained and controlled a GoogleDoc spreadsheet and Dropbox folder corresponding to each club show.

23.    Under the co-promotion model, the parties shared equally all profits and losses.  Under the joint venture model, NightCulture was the sole party responsible for the revenue streams, bearing all the profits and losses from club shows, which were frequently held at NightCulture-operated Stereo Live or, starting in 2016, Stereo Live Dallas.  Under the joint venture model, NightCulture paid DDP a fee to book an artist.  DDP further served as the ticketing agent and often booked the lodging for the artist.  The only expenses that should have been reflected on each joint venture settlement were: (i) reimbursement to DDP for the full amount tendered to an artist's talent agency; (ii) DDP's artist booking fee; (iii) reimbursement to DDP for the full amount tendered for the artist's lodging, if applicable; and, possibly (iv) an EventBrite ticketing cost incurred by DDP in its role as ticketing agent, if any.

24.    Over the years, it appears that DDP has placed tens of thousands of dollars of unapproved expenses on its joint venture show settlements alone.

**E.    DDP and LIC Sue NightCulture**

25.    Almost nine (9) months after the Effective Date, on August 23, 2017, DDP filed suit (the "New York Action") against NightCulture in the Supreme Court of the State of New York (the "New York State Court").  NightCulture answered the complaint and asserted counterclaims.  ███████████████████████████████████



26.

27.

28.

. On July 30, 2018, DDP and LIC filed the Motion with the Bankruptcy Court.

F.     The Counterclaims

29.     At issue in this dispute are

30.

31.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████

32.   ████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████.

33.   NightCulture asserted in its Counterclaim that ████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████

**OBJECTION**

**I.   DDP Must Be Compelled** ████████████████████████████

34.   ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[5]   NightCulture requires additional discovery to understand the timing of accruals to determine properly what portion of the Counterclaim is used solely to offset DDP's claims and what portion is asserted as due and owing to NightCulture.

35. ██████████████████████████████████████████
████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████

36. ███████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████████

37. ███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████

38.

39.

40. ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

41. ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

42. ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

**II.    The Reorganized Debtors Failed to Retain the Cause of Action Against NightCulture**

43.    The Reorganized Debtors waived their pre-Effective Date claims against NightCulture by failing to expressly preserve such claims in any of the Disclosure Statement, the Plan, or the Confirmation Order.  Accordingly, to the extent that this Court is inclined to decide anything with respect to the claims ██████████████, which it should not do, not only should the Court find that NightCulture is not in contempt, it should find that the Reorganized Debtors should not be permitted to continue their litigation against NightCulture at all with respect to pre-Effective Date claims.

44.    NightCulture filed no claims or administrative expense requests in the above-captioned debtors' bankruptcy cases.  It did this in reliance of the ongoing business relationship with the Debtor and LIC, and, subsequently, the Reorganized Debtors.  Assuming that DDP is correct in its interpretation of the effect of the Plan and the Confirmation Order, which it is not, the Plan did not provide adequate notice to NightCulture that claims against it would be preserved while claims it had against DDP would be discharged, even for purposes of asserting them defensively.  Indeed, as set forth below, the Plan actually provides quite the opposite.

45.    For this reason, the Reorganized Debtors should not now be permitted to assert claims that they failed to preserve adequately in the Plan.  Indeed, where the Plan fails to preserve such claims expressly, the Plan and Confirmation Order are res judicata with respect to such claims and such claims cannot be brought.  See D&K Prop. Crystal Lake v. Mut. Life Ins. Co. of N.Y., 112 F.3d 257, 261-62 (7th Cir. 1997) ("[a] blanket reservation that seeks to reserve

all causes of action reserves nothing. To hold otherwise would eviscerate the finality of a bankruptcy plan containing such reservation, a result at odds with the very purpose of a confirmed bankruptcy plan); In re Kelley, 199 B.R. 698 (9th Cir. B.A.P. 1996) ("[i]f a confirmed plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata does not apply. On the other hand, if the debtor fails to mention the cause of action . . . then he will be precluded from asserting it postconfirmation." (emphasis added)). For res judicata to apply to a dispute, the dispute must (i) be subsequent to a final judgment on the merits rendered by a court of competent jurisdiction in a prior action; (ii) involve the same parties or their privities; and (iii) be based on the same cause of action. Peltz v. Worldnet Corp. (In re USN Comm'cn., Inc.), 280 B.R. 573, 586 (Bankr. D. Del. 2002). This Court entered the Confirmation Order, and that order constitutes a final judgment on the merits with respect to the issues addressed in the Plan, i.e., claims by and against the Debtors in accordance with the terms of the Plan. Id. See also Browning v. Levy, 283 F.3d 761, 772 (6th Cir. 2002) ("confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings.").

46.     The second factor is also satisfied. Both parties had the opportunity to participate in the plan confirmation process. NightCulture was served with relevant pleadings and the Reorganized Debtors' predecessor entities proposed the Plan. Finally, the present dispute involves the same cause of action as the confirmation proceeding and entry of the Confirmation Order. "[C]onfirmation by a bankruptcy court 'has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.'" Browning, 283 F.3d at 772.

47.     The debtors could have raised pre-Effective Date alleged breach of contract issues in the confirmation proceedings. Notwithstanding knowledge of such potential

claims, the Plan failed to (i) describe the specific cause of action, or (ii) identify any factual basis for claims against NightCulture. As a result, the Reorganized Debtors' untimely attempt to raise such arguments should be denied.

48.     The Reorganized Debtors may not escape this result by relying on the reservation of rights in the Plan because such reservation is general in nature. The Plan provides that "the Reorganized Debtors or their successors shall retain and may enforce . . . those Causes of Action (and rights with respect thereto) that the Debtors may hold against any Entity . . . ." Plan § 5.09. Causes of Action are defined as:

> any and all actions, causes of action, Avoidance Actions, claims, defenses, liabilities, obligations, executions, causes in action, controversies, rights (including rights to legal remedies, rights to equitable remedies, and rights to payment), suits, debts, damages, judgments, remedies, demands, setoffs, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, whether known or unknown, reduced to judgment or not reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, choate or inchoate, existing or hereafter arising, suspected or unsuspected, foreseen or unforeseen, and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

Id.

49.     In defining Causes of Action, the Debtors failed to specifically identify NightCulture, an entity with which it had ongoing and long-standing business relationships, as an entity against which it was reserving its rights to pursue causes of action. Nor does the Plan, or any related document, discuss the grounds for any potential claims against NightCulture. Accordingly, the Debtors' reservation of rights language regarding retained Causes of Action in the Plan is insufficient to escape res judicata. Browning, 283 F.3d at 744 ("a general reservation

18

of rights does not suffice to avoid <u>res judicata</u>"); <u>but see</u> <u>In re Meridian Auto. Sys.-Composites</u>

<u>Operations, Inc.</u>, 372 B.R. 710, 724 (Bankr. D. Del. 2007) (the plan language retaining causes of

action was sufficient because it included actions against vendors and referenced Plastech as one

of the five excluded parties against whom the reorganized debtors retained the right to pursue

avoidance actions). No such specific language is included in this Plan, and <u>res judicata</u> should,

therefore, bar the Reorganized Debtors' efforts to revive such claims.[6]

### III.     The Counterclaim Was Not Discharged by the Confirmation Order

50.     If the Court determines that DDP retained the ability to commence the

dispute underlying ███████████, which it did not, NightCulture, under the terms of the Plan

and the Confirmation Order, may still assert the Counterclaim defensively in such litigation. As

set forth herein the Counterclaim was not discharged, and NightCulture's assertion of such

Counterclaim did not violate the Plan and Confirmation Order. Therefore, the Court should not

hold NightCulture in contempt to the Confirmation Order.

51.     First, as admitted by DDP, <u>see</u> Motion at n.4, n.7, an unknown portion of

the Counterclaim is not a claim subject to the Confirmation Order because much of it did not

even arise until after the Effective Date. As set forth herein, the course of conduct between the

parties reflected ███████████████████████████████████████████████████████

███████████ Further, ████████████████████████████████████████████████████

continued beyond the Effective Date. Additional discovery will be needed to determine when

the conduct giving rise to each claim occurred to properly determine pre- versus post-

---

[6]     Perhaps recognizing their failure to properly retain any pre-Effective Date causes of action against
NightCuture, the Debtors included a provision in the Confirmation Order that states "[t]he entry of this
Confirmation Order shall not have any <u>res judicata</u> or other preclusive effect with respect to any Causes of
Action that are not specifically and expressly released by the terms of the Plan, and the entry of this
Confirmation Order shall not be deemed a bar to asserting such Causes of Action. Confirmation Order ¶
55. However, such reservation does not cure the underlying defects in notice. To the extent the provision
is deemed binding and the Court determines that such language overrides existing precedent, NightCulture
seeks reconsideration of the Confirmation Order pursuant to Fed. R. Civ. P. 60(b).

confirmation conduct.  JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.), 607 F.3d 114, 125 (3d Cir. 2010) (a bankruptcy claim arises when the conduct giving rise to the claim occurred).  To the extent that the initial hearing in this matter is evidentiary, which it should not be, NightCulture requests an adjournment to permit it discovery.

52.     Second, any amounts that arose prior to the Petition Date are still available under the terms of the Plan and Confirmation Order, and under applicable law, for purposes of setoff and recoupment.  See In re Univ. Medical Ctr., 973 F.2d 1065, 1079 (3d Cir. 1992) (Bankruptcy Code § 553 provides three conditions must be satisfied before a right of setoff is recognized in bankruptcy: (1) the creditor must hold a claim against the debtor that arose pre-petition; (2) the creditor must owe a debt to the debtor that arose pre-petition; and (3) the claim and the debt must be mutual); Cohen v. Sav. Bldg. Loan Co. (In re Brevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54, 59 (3d Cir. 1990) (to be mutual, the claim and debt must exist between the same parties, the parties must owe each other something in the same capacity, and the obligations must be owed in the same right).  NightCulture may also setoff postpetition amounts due against postpetition amounts owed.  See, e.g., In re Seal, 192 B.R. 442, 457 (Bankr. W.D. Mich. 1996) (recognizing that Bankruptcy Code section 553 is silent on the permissibility to setoff mutual postpetition obligations and holding there is no reason to limit the setoff of mutual postpetition obligations).

53.     NightCulture's recoupment claims are defenses that are not extinguished by the Plan or Bar Date Order.  See, e.g., Folger Adam Sec., Inc. v. Dematteis/MacGregor, JV, 209 F.3d 252, 260-61 (3d Cir. 2000) (a defense or right of recoupment is not itself a claim, so even under the broadest reading of "interest," a defense would not be included).   Whether the causes of action raised ▮▮▮▮▮▮▮▮ are in the nature of recoupment defenses is a matter of

state law.  <u>Claybrook v. AutoZone Tex., L.P. (In re Am. Remanufacturers, Inc.)</u>, 451 B.R. 349, 370 (Bankr. D. Del. 2011).  Recoupment is a common law doctrine.  <u>DHP Holdings II Corp. v. Peter Skop Indus., Inc. (In re DHP Holdings II Corp.)</u>, 435 B.R. 220, 226 (Bankr. D. Del. 2010).  Under applicable New York law,[7] recoupment is permitted when the defendant's counterclaim arises "out of the same transaction or series of transactions that form the basis of, and must be sufficiently related to, the cause of action alleged in the plaintiff's complaint."  <u>See 182 Franklin St. Holding Corp. v. Franklin Pierrepont Assoc.</u>, 217 A.D.2d 508, 509 (N.Y. 1995).  Although recoupment is a common law doctrine that is "not codified in the Bankruptcy Code […it] has been established through decisional law."  <u>In re Flagstaff Realty Assoc.</u>, 60 F.3d 1031, 1035 (3d Cir. 1995).

54.     Recoupment requires that the debts at issue arise out of a single integrated transaction to prevent the debtor from obtaining a windfall unless it performs its obligations under the applicable agreement.  <u>See Univ. Med. Ctr.</u>, 973 F.2d at 1081 (holding that "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.");  <u>In re FormTech Indus., LLC</u>, 439 B.R. 352, 363 (Bankr. D. Del. 2010) (same);  <u>In re WL Homes</u>, 563 B.R. 512, 518 (Bankr. D. Del. 2017) (holding that it would be inequitable to allow the debtor to enjoy a windfall by allowing it to benefit from the return of premiums and relieve it of its burden of the self-insured retention).  The single integrated transaction requirement is not strictly interpreted to apply to only individual transactions within an agreement that contemplates multiple

---

[7]  ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ The parties will need to determine the governing law for those events without written agreements.

transactions. Rather, the court examines the "contractual relationship between the parties and whether the debts on both sides arise from an integrated transaction." In re WL Homes, 563 B.R. at 517 (rejecting argument that recoupment is not permitted because the claim for recoupment arose from discrete and independent units of the insurance policies).

55.     Contrary to the assertions made by DDP in the Motion, the Plan did not extinguish setoff and recoupment rights. Although DDP did not cite this provision in the Motion, the Plan expressly preserved such rights. Specifically, the Plan states:

> Notwithstanding any provision to the contrary in this Plan, the Confirmation Order, and any documents implementing the Plan, nothing shall bar any Creditor[8] from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other applicable provision of the Bankruptcy Code.[9]

See Plan § 12.07 (emphases added). Accordingly, the Plan provides that regardless of anything in the Plan that attempts to restrict recoupment or setoff rights, including discharge and injunction provisions cited by DDP in the Motion, any Creditor may assert such rights so long as the Bankruptcy Code permits such exercise. As set forth above, the Bankruptcy Code permits such exercise.

56.     Even though NightCulture did not exercise its setoff rights prior to confirmation, those rights were preserved under the Plan and applicable law. In Continental Airlines, the United States Court of Appeals for the Third Circuit held that although "a right of

---

[8]     Creditor means any Holder of a Claim. A Holder means the legal or beneficial holder of a Claim against or Interest in the Debtors (and, when used in conjunction with a Class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type). See Plan § 1.41.

[9]     The Confirmation Order similarly provides:

Preservation of Setoff and Recoupment Rights. Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall bar any Creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other applicable provision of the Bankruptcy Code.

Confirmation Order ¶ 52.

set-off is preserved under § 553 in a bankruptcy proceeding . . . we believe that the right must be exercised by the creditor in a timely fashion . . . ." In re Cont'l Airlines, 134 F.3d 536, 541 (3d Cir. 1998). In Continental Airlines, the plan of reorganization proceeded on the assumption that the reorganized debtor faced no setoff claims. Id. Accordingly, timely in that case, would have been to have exercised the setoff rights prior to confirmation of the plan. Id. at 542.

57. In reaching its conclusion in Continental Airlines, the court relied on Norton as precedent. Id. In Norton, the court refused to permit the Internal Revenue Service to setoff overpayments against tax liabilities because a plan was confirmed and the plan provided for how the Internal Revenue Service, as claimant, would be paid. U.S. ex rel. IRS v. Norton, 717 F.2d 767, 774 (3d. Cir. 1983). The court held that "[u]pon confirmation, the IRS became bound to that plan and to the payment schedule that would satisfy its claim in full." Id.

58. In both Continental Airlines and Norton, the reorganized debtors relied on provisions in their respective plans that did not contemplate setoff rights of non-debtors in order to confirm their plans. Unlike Continental Airlines and Norton, the Reorganized Debtors here explicitly allowed creditors to have setoff and/or recoupment rights and defenses post-Effective Date and expressly preserved such rights and defenses notwithstanding any provisions in the Plan to the contrary. See Plan § 12.07. Moreover, NightCulture properly and timely asserted those defenses and claims when DDP filed the lawsuit against NightCulture. Thus, under applicable law and the terms of the Plan itself, NightCulture was permitted to exercise its setoff rights. Its proper exercise of those claims and defenses cannot, therefore, give rise to sanctions.

## IV. Although There Was No Violation of the Confirmation Order, even if There Was a Violation, Sanctions Are Not Warranted

59. The Objectors did not violate the Confirmation Order. There has been no attempt to collect a discharged debt from the Debtor. Rather, through the New York Action and

███████████████, DDP and LIC brought an action against NightCulture and NightCulture is seeking to defend itself as permitted by the Plan, the Confirmation Order, and applicable law.

60.     Further, even if there was a violation of the Confirmation Order (which there was not), a violation of the discharge injunction, unlike a violation of the automatic stay, does not give rise to statutory damages.  Compare 11 U.S.C. § 362(k)(1) (stating that "an individual injured by any willful violation of [the automatic] stay . . . shall recover actual damages  . . . and, in appropriate circumstances, may recover punitive damages") with id. § 524 (lacking any language imposing damages).  Cf. Joubert v. ABN Mortg. Grp., Inc. (In re Joubert), 411 F.3d 452, 456 (3d Cir. 2005) (noting "the weight of circuit authority" holds that section 524 does not give rise to statutory right of action).

61.     Accordingly, sanctions are not automatic and are instead, discretionary. Sanctions in civil contempt cases are imposed for two reasons: (1) to coerce compliance with the court's order and (2) to compensate for losses sustained as a result of the disobedience.  In re Meyers, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006).  DDP and LIC have failed to demonstrate that sanctions are warranted for either reason.  Specifically, NightCulture did not disobey the Confirmation Order.  And, there were no losses sustained by DDP or LIC as a result of any alleged disobedience.  DDP and LIC has not been forced to incur any expenses associated with ███████████, and their filing of the Motion was self-serving.  Under these facts, sanctions are not warranted.

62.     Moreover, the confusion regarding the valid exercise of setoff and/or recoupment rights with respect to pre-Effective Date claims or administrative expenses weighs against the imposition of sanctions.  Setoff and recoupment rights are often litigated and controversial questions.  See Norton, 717 F.2d at 774.  The courts have held that "[a] party

should not be held in contempt unless a court gives fair warning that certain acts are forbidden; any ambiguity in the law should be resolved in favor of the party charged with contempt." Id. In light of the express language of the Plan preserving the ability of Creditors to exercise setoff and recoupment rights, NightCulture did not have had fair warning that the exercise of such rights violated the Confirmation Order (to the extent this Court determines that it is a violation). For this reason, as well, sanctions are not warranted.

## V. Laches Bars the Reorganized Debtors from Asserting that NightCulture Is Not Permitted to Offset the Counterclaim Against the Claims

63. DDP is further barred by the doctrine of laches from its attempt to limit NightCulture's ability to offset the Counterclaim against the Reorganized Debtors' claims. "Laches bars a claim when a defendant has suffered prejudice because of a plaintiff's unreasonable and inexcusable delay in bringing the claim." Legislator 1357 Ltd. v. Metro–Goldwyn–Mayer, Inc., 452 F. Supp.2d 382, 391 (S.D.N.Y. 2006) (internal citations omitted). As set forth above, prior to the Petition Date, during the bankruptcy cases, and after the Effective Date, the parties maintained an ongoing master ledger sheet that tallied the relative amounts owed each other. The parties would then use this master ledger to inform their decisions regarding ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████

64. The Reorganized Debtors should be precluded at this point from unilaterally changing the process and, further, seeking to limit NightCulture's ability to offset amounts due. NightCulture asserted the Counterclaim in its Answer in the New York Action, in its ████████████████████████████████████████████████████████ ████████████████████████████████. The Reorganized Debtors waited over nine (9)

months after NightCulture first asserted the Counterclaim to file the Motion.  The delay is unwarranted and the relief sought in the Motion should, therefore, be denied.

**VI.     Unclean Hands Bars the Reorganized Debtors from Asserting that NightCulture Cannot Offset the Counterclaim Against the Claims.**

65.     An unclean hands defense attempts to "close[] the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." Specialty Minerals, Inc. v. Pluess—Staufer AG, 395 F. Supp.2d 109, 112 (S.D.N.Y. 2005) (quoting Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806, 814 (1945)). "The unclean hands doctrine applies only where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that [plaintiff] seeks in respect of the matter in litigation.'" Id. (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245 (1933)).

66.     The Reorganized Debtors, in this instance, have asserted breach of contract claims against NightCulture and then sought to limit NightCulture's right to defend against the same claims.  ██████████████████████████████████████ ████████████████████████████████  DDP breached this duty by denying NightCulture access to pertinent ████████████████████████████, even after such information was requested by NightCulture.  511 West 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500-01 (N.Y. 2002) (duty of good faith and fair dealing "encompass 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" (internal citations omitted)).  DDP also breached it covenant of good faith and fair dealing by refusing to consider and account for NightCulture's opinions and concerns with respect to ████████████████████.  Id. ("'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the

contract.'" (internal citations omitted)).  It then sought to impose on NightCulture the financial obligations associated with such unilateral decision-making.

67.     DDP should be barred from obtaining the relief it seeks because of the inequitable nature of such proposed relief are because of DDP's inequitable conduct.  See, e.g., Gilpin v. Oswego Builders, Inc., 87 A.D.3d 1396, 1399 (N.Y. 2011) (overruling lower court's award of counterclaims based on breach of restrictive covenants because other party had unclean hands in that it was also in breach of the restrictive covenants).  For this reason as well, the Court should deny the Motion.

## VII.    The Bankruptcy Court Lacks Personal Jurisdiction over NightCulture

68.     Even if the Court were inclined to resolve this dispute rather than ▓▓▓▓▓▓▓▓▓, the Court lacks personal jurisdiction over NightCulture.  NightCulture has not consented to personal jurisdiction in this Court.  NightCulture has not participated or appeared in the Bankruptcy Case other than for the limited purpose of responding to the Motion.  NightCulture has not filed a proof of claim in the Bankruptcy Case.  NightCulture has no direct contacts with the State of Delaware and does no business within the State of Delaware.  As such, NightCulture has never consented to general jurisdiction of this Court.  Consequently, absent minimum contacts with this Court or the State of Delaware, the Court should deny the Motion against NightCulture for lack of personal jurisdiction because permitting the continuation of the action violates the due process clause of the Fifth Amendment of the Constitution.

69.     Specifically, Federal Rule of Civil Procedure 12(b)(2), made applicable herein by Bankruptcy Rule 7012, provides that lack of personal jurisdiction is a defense to any action.  See Fed. R. Civ. P. 12(b) (2).  Personal jurisdiction has its roots in the due process clauses of Fifth and Fourteenth Amendments to the Constitution.  See, e.g., Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 293 (3d Cir. 1985).

70.     Bankruptcy Rule 7004(f) contains three requirements for a bankruptcy court to have personal jurisdiction over a party: (i) service of process has been made in accordance with Bankruptcy Rule 7004 or Federal Rule of Civil Procedure 4; (ii) the court has subject matter jurisdiction under Bankruptcy Code section 1334; and (iii) exercise of jurisdiction is consistent with the Constitution and laws of the United States.  See Fed. R. Bankr. P. 7004(f); see also Finova Capital Corp. v. Cote (In re Finova Capital Corp.), 358 B.R. 113, 118 (Bankr. D. Del. 2006).  NightCulture does not dispute that subsections (i) and (ii) have been satisfied. However, exercise of jurisdiction in this case is not consistent with the Constitution because under the Fifth Amendment, the United States Court of Appeals for the Third Circuit has held that "in the absence of a governing federal statute providing for nationwide service of process, in personam jurisdiction may not rest upon an alien defendant's aggregated contacts with the United States."  Max Daetwyler, 762 F.2d at 300 (emphasis added).  Thus, unless a federal statute provides for nationwide service of process, this Court would only have in personam jurisdiction if NightCulture had sufficient minimum contacts with the State of Delaware to satisfy Delaware's long-arm statute.  See id.  No such federal statute exists and, thus, absent a showing of minimum contacts, this Court lacks personal jurisdiction over Brentwood.

71.     DDP and LIC will likely argue that the Bankruptcy Rule 7004(d), which authorizes service anywhere in the United States, is a federal "statute" and cite decisions in this District in support of that conclusion.  See, e.g., Tribune Media Servs. Inc. v. Beatty (In re Tribune Co.), 418 B.R. 116, 123 (Bankr. D. Del. 2009); Klingher v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 289 (Bankr. D. Del. 2004); JNA-1 Corp. v. Uni-Marts, LLC (In re Uni-Marts, LLC), 404 B.R. 767, 775-76 (Bankr. D. Del. 2009); MAS Litig. Trust v. Plastech

Engineered Prods. (In re Meridian Auto Sys. Composite Operations, Inc.), 2007 WL 4322527, at *2-3 (Bankr. D. Del. Dec. 5, 2007).

72.     These cases, respectfully, were incorrectly decided, having discounted the plain language of 28 U.S.C. §§ 2071-2077 (the "Rules Enabling Act"). The Rules Enabling Act provides, in pertinent part, as follows: "[]he Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11 . . . ." 28 U.S.C. § 2075. Thus, by the plain language, the Supreme Court, not Congress, drafted and approved the Bankruptcy Rules; indeed, Congress delegated to the Supreme Court the authority to prescribe rules. See id. As such, the Bankruptcy Rules are not statutes. See Old Elec., Inc. v. RCP, Inc., 142 B.R. 189, 192 (Bankr. N.D. Oh 1992) ("[I]t would seriously distort the text of Bankruptcy Rule 7004(e) to hold that Bankruptcy Rule 7004(d) is either a statute or an order."); see also Car Care Center of Crystal Lake Ltd. v. Miller (In re Miller), 336 B.R. 408, 412 (Bankr. E.D. Wis. 2005) (Bankruptcy statutes are enacted by Congress, unlike bankruptcy rules which are promulgated by the U. S. Supreme Court); Scroggins v. BP Exploration & Oil (In re Brown Transp. Truckload), 161 B.R. 735, 738 (Bankr. N.D. Ga. 1993) ("The Bankruptcy Code is a federal statute, while the [Bankruptcy Rules] are only rules established by the Bankruptcy Rules Committee.").

73.     Accordingly, because the Bankruptcy Rules are not a federal statute, this Court should not, and, indeed, cannot consistent with due process, rely on Bankruptcy Rule 7004 for asserting personal jurisdiction over NightCulture. Instead, due process requires that DDP establish that NightCulture has minimum contacts with the State of Delaware. See Max Daetwyler, 762 F.2d at 300 (rejecting the national contacts test and thereafter analyzing contacts with the forum state); Int'l Shoe Co. v. Wash., 326 U.S. 310 (1945); cf. End of the Rd. Tr. v.

Terex Corp. (In re Fruehauf Trailer Corp.), 250 B.R. 168, 200 (D. Del. 2000) (noting the split among the Circuit Courts of Appeal and predicting that "[w]hile not free from doubt, the Third Circuit Court of Appeals is likely to apply a national contacts test where the statute provides for nationwide service of process.") (emphasis added); but see Klingher v. Salci (In re Tandycrafts, Inc.), 317 B.R. 287, 289 (Bankr. D. Del. 2004) (holding that "[w]here service is made under Rule 7004(d), the defendant 'need only have minimum contacts with the United States to satisfy Fifth Amendment due process.'").

      74.    DDP has not alleged that NightCulture has minimum contacts or any contacts with the State of Delaware. Under International Shoe and its progeny, this lack of contact means that DDP has failed to establish "minimum contacts" with Delaware or otherwise satisfy the Delaware long-arm statute. See Max Daetwyler, 762 F.2d at 293 ("The fifth amendment has been construed to impose a general fairness test incorporating Int'l Shoe's requirement that 'certain minimum contacts' exist between the non-resident defendant and the forum 'such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"") (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945)); see also Kloth v. S. Christian Univ., 2008 WL 3165902, at n.1 (3d Cir. Aug. 5, 2008) ("The Delaware long-arm statute, 10 Del. C. § 3104(c), confers jurisdiction to the maximum extent possible under the due process clause."); La Nuova D & B, S.P.A. v. Bowe Co., 513 A.2d 764, 767 (Del. 1986)). For this reason as well, the Motion should be denied.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, NightCulture respectfully requests that the Court deny the Motion, and grant NightCulture such further relief as is just and proper.

Respectfully submitted,

Dated: August 14, 2018

*/s/ Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (Del Bar No. 4083)
Ericka F. Johnson (Del Bar No. 5024)
Womble Bond Dickinson (US) LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 661-7738
E-mail: mark.desgrosseilliers@wbd-us.com
E-mail: ericka.johnson@wbd-us.com

Counsel for NightCulture, Inc.

WBD (US) 43645139v2